IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

JANE DOES 1-9,

    Plaintiffs,

v.                                No: 2:23-cv-00071-TRM-CRW

CITY OF JOHNSON CITY, TENNESSEE, et al.,

    Defendants.
_____/

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

On September 8, 2023, Plaintiffs moved for leave to file a second amended complaint to add Jane Doe 10 and to add class action allegations under Federal Rule of Civil Procedure 23, among other improvements to their pleadings ("Motion"). The proposed amendment made no changes to the named Defendants, the key factual assertions, or the legal theories of liability set forth in the operative complaint. Despite the simplicity and expedience of Plaintiffs' proposed amendments, all Defendants opposed the Motion. ECF 50 (Response of City of Johnson City, Tennessee, Karl Turner, in his individual and in his official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks in his official capacity (collectively, "the Johnson City Defendants")); ECF 51 (Kevin Peters Response); ECF 52 (Justin Jenkins Response); and ECF 53 (Toma Sparks Response).

Defendants' Responses rely entirely on arguments of no moment here. Rather than genuinely engaging in the well-settled factors courts consider when analyzing a motion for leave to amend, Defendants contort the procedural posture of the case to gin up supposed bad faith and

1

prejudice, and then assert that their eventual Rule 12(b)(6) motion will likely succeed in knocking out causes of action. Since Defendants show nothing in their Responses that would warrant denial of Plaintiffs' request, Plaintiffs respectfully ask the Court to grant them leave to amend.

## ARGUMENT

### A. Defendants' Arguments Are Immaterial to a Motion for Leave to Amend

The Parties have no dispute regarding the standard that applies to a motion to amend the pleadings. The four "*Foman* factors" courts consider are whether the proposed amendment (1) is made in bad faith, (2) is unduly delayed, (3) would be futile, and (4) causes prejudice the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs' Motion set forth why each of the *Foman* factors supports granting leave to amend. The Defendants' Responses opposing the amendment argue the Motion should be denied, citing the closeness (as opposed to delay) in time to Plaintiffs' last amendment (ECF 50), the anonymity of the Jane Doe Plaintiffs (ECF 50 & 52), and the fact that Defendants recently filed answers to Plaintiffs' previous complaint (ECF 53). In other words, they make arguments that have nothing to do with the standard for granting leave to amend under the *Foman* factors.

Even if the Court were inclined to entertain Defendants' immaterial arguments, none of them are persuasive. The suggestion that Plaintiffs requested leave to amend too soon relative to their prior amendment[1] is nonsense, and it is certainly not grounds for denying leave to amend. Requesting leave to amend promptly upon appreciating than an amendment is warranted is good

---

[1] Defendants repeatedly emphasize the two-day time window between the filing of the amended complaint and the motion for leave to file the second amended class complaint as evidence of bad faith. But, in fact, the operative time span is the two-week window between August 26, 2023, the date on which Plaintiffs moved to amend the first time (ECF 12), and September 8, 2023, the date Plaintiffs filed the instant motion. During those two weeks, as reflected by the docket, new class counsel made their initial appearance on the case, and a new Plaintiff was identified and added to the second amended class complaint.

2

for all involved because it allows parties to prepare the case for trial without needless delay and unfair surprise. *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 874 (6th Cir. 1973). Defendants would apparently have had Plaintiffs wait *longer* to seek leave to amend. But delay, unlike promptness, actually is grounds for denying leave. *Stewart v. Shelby Tissue, Inc.*, 189 F.R.D. 357, 360 (W.D. Tenn. 1999). The timing of Plaintiffs' second amended complaint is not evidence of bad motive. To the contrary, it demonstrates the adherence to the Court ordered deadlines and an intent to move the litigation forward efficiently with up-to-date pleadings.

Similarly, Defendants repeated contention that leave should be denied because the Jane Doe Plaintiffs have remained anonymous is meritless and moot. The ability to sue anonymously was the subject of separate briefing and has no bearing on the standard for leave to amend. Moreover, pursuant to the Court's instructions, the Parties are currently negotiating a protective order wherein Plaintiffs themselves proposed to disclose their identities within a framework intended to protect their privacy.

Arguments that Defendants are unfairly prejudiced by the cost or effort of filing multiple answers in quick succession are similarly meritless. The same Defendants would be required to file the same answers to the same amended complaint regardless of whether Plaintiffs filed now or later. Like the other arguments made by Defendants, this argument is irrelevant under the *Foman* factor test and is unpersuasive even if it is considered.

### B. Defendants' Arguments Fail on the Merits

As set forth above, the Johnson City Defendants argue against leave to amend because they claim they are likely to prevail on a future motion to dismiss claims under Rule 12(b)(6), or in opposition to a motion for class certification under Federal Rule of Civil Procedure 23. These arguments are premature, as this is not a motion to dismiss or an opposition to class certification.

Courts are generally encouraged to grant motions for leave to amend based on "the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). While Sixth Circuit courts hold that "the futility of proposed amendments is equivalent to the analysis undertaken as part of a Rule 12(b)(6) motion" (s*ee Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000); Sixth Circuit courts also note that judicial economy is often not served when the primary basis of a defendant's opposition to a plaintiff's motion to amend is futility. *Durthaler v. Accts. Receivable Mgmt., Inc.*, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011).[2]

> [R]ather than determining the actual legal sufficiency of the new claim, in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow.

*Id*.; *see also Vanburen v. Ohio Dep't of Pub. Safety*, 2012 WL 5467526, at *4 (S.D. Ohio Nov. 9, 2012). Moreover, courts note that the Supreme Court in *Foman v. Davis* did not mandate that a court *must* deny a proposed amendment even if it concludes the amendment is futile. *Aladdin Temp-Rite, LLC v. Carlisle FoodService Prods. Inc.*, 2014 WL 12774872, at *2 (M.D. Tenn. June 16, 2014) (citing *Foman*, 371 U.S. at 182). Regardless, Plaintiffs' claims here are sound as pleaded and contrary to the Johnson City Defendants' claims, will survive a motion to dismiss.

### Class Certification Arguments

Defendants first argue that Plaintiffs cannot show typicality and commonality of the Conspiracy Survivor Class because the class members will have different harm based on whether

---

[2] *Rose w*as also a case setting forth the standard of review on appeal for determining whether a district court's abuse of discretion in denying the plaintiff's motion for leave to amend was harmless error. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d at 421. That is not the posture here, and therefore not the appropriate standard for this Court to consider in the first instance.

4

they reported their sexual assaults by Williams to JCPD. ECF 50 at 9. Plaintiffs agree that the Conspiracy Survivor Class members may have different damages as a result of many factors, including the level of intimidation and other obstructive conduct they experienced when they reported their crimes to JCPD, as well as the extent of the harm, physical and psychological, resulting from the sexual assaults they endured at the hands of Williams. This is *not*, however, an argument precluding class certification under Federal Rule of Civil Procedure 23(b)(3). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007) (internal quotations and alterations omitted). Here, the common issues of fact and law are whether Defendants conspired with Williams as part of a sex trafficking venture, whether Defendants benefited financially from this venture, and whether Defendants obstructed an investigation into this venture. All of those key legal and factual issues will be common to all Conspiracy Survivor Class members and will decide liability as to all class members. Thus, Defendants' argument against class certification based on individualized damages fails.

Defendants next argue that their statute of limitations defense will be unique to each Conspiracy Survivor Class member based on when the claims accrued and therefore Plaintiffs will not be able to show typicality. ECF 50 at 9. However, the operative statute of limitations for claims brought under 18 U.S.C. § 1595 is ten years. *See* 18 U.S.C. § 1595(c)(1). Thus, a statute of limitations defense will be unavailable to Defendants as to *all* Conspiracy Survivor Class members based on the facts alleged in the amended complaint.

With respect to the Reporter Survivor Class, Defendants argue that Plaintiffs will not be able to show typicality and commonality, contending that class member who reported their crimes of sexual violence and had their cases prosecuted would have suffered no harm. ECF 50 at 10.

5

Experiencing systemic sex discrimination, however, is a harm, regardless of the outcome of the class member's individual case. For example, a class member may have suffered through a traumatizing victim interview or endured sexist and inappropriate comments when reporting her rape—the result of JCPD's discriminatory policies and practices with respect to reports of sexual violence—even though the prosecution of the perpetrator was ultimately successful. This is why "[a]llegations of race or gender discrimination resulting from policies or practices are often 'by their very nature class suits, involving classwide wrongs' and 'common questions of law or fact are typically present.'" *Card v. City of Cleveland*, 270 F.R.D. 280, 293 (N.D. Ohio 2010) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).

Here, Defendants' own expert found that JCPD committed *systematic* discrimination against women reporters of sexual violence based on their sex during the relevant period. ECF 12-1, Am. Compl. ¶¶ 251-283. A pattern and practice of sex discrimination manifested itself across the reporting, investigating, referring, and prosecuting of crimes of sexual violence, as well as in the deficient training and supervision of officers assigned to crimes of sexual violence. *Id.* Plaintiffs bring claims based on these systematic policies and practices, and seek injunctive relief, regardless of the ultimate outcome in any individual case (though the paltry number of prosecutions is also indicative of the systemic failure by JCPD to protect women). *Id.* In sum, the evidence in the Daigle Report is persuasive indicia of both typicality and commonality as to the Reporter Survivor Class.

### *Rule 12(b)(6) Arguments*

Defendants next set forth a series of arguments properly brought in a motion to dismiss. Again, none have merit.

In response to Defendants' contention that Plaintiffs' Title IX claims "do not relate to

education or an educational institution" (ECF 50 p. 11), this argument misses the mark. Under Title IX "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX applies to all aspects of activities by recipients of federal funds—not just funds from the Department of Education. *See* Dep't of Justice, Civil Rights Division, Title IX Legal Manual p. 7-8, 19-20, 29, 38 (January 11, 2001). In response to the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 55, 571, 572 (1984), Congress passed the Civil Rights Restoration Amendments Act of 1987 (CRRA) "to restore the broad scope of coverage and to clarify the application of Title IX…" which clarified that the definition of "program or activity" covers all operations of an entity receiving federal funds. Pub. L. 100-259, S. 557, 100th Cong. (1988).

As amended by the CRRA, Title IX now says in § 1687 that "program or activity" means "*all* of the operations" of the following kinds of entities, "any part of which" is extended federal funding:

- state or local government instrumentalities (20 U.S.C. § 1687(1));
- colleges, universities, postsecondary institutions, public systems of higher education, local educational agencies, vocational education systems, and "other" school systems (*id.* § 1687(2));
- "entire" corporations, partnerships, "other" private organizations, and sole proprietorships *if* assistance is extended to them "as a whole" *or* they're "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation" (*id.* § 1687(3)(A));
- "entire" plants or other "comparable, geographically separate" facilities in the case of "any other" corporation, partnership, private organization, or sole proprietorship not described in subsection (3)(A) (*id.* § 1687(3)(B)); and
- "any other entity" established by "two or more" entities described in subsections (1) through (3) (*id.* § 1687(4)).

No part of Title IX says it reaches only entities 'principally engaged in the business of providing education' Quite the opposite. Section 1687 leaves space aplenty for a variety of entities irrespective of what they're 'principally' engaged in—for example, state and local government instrumentalities, private entities extended

7

assistance as a whole, other private entities' entire plants or separate facilities, and *any* entity established by two or more covered entities.

*Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 555 (3d Cir. 2017). A "program or activity" under § 1687 is an "education program or activity" under § 1681(a) if it has "***features*** such that one could reasonably consider its mission to be, at least in part, educational." *Id*. (citing *O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997)); s*ee also Klinger v. Dep't of Corr.*, 107 F.3d 609, 613-16 & n.5 (8th Cir. 1997) (Title IX applies to state prison systems due to educational programs offered); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881 (1st Cir. 1988) (Title IX applies to university's medical center because of residency program).

The discrimination prohibited by Title IX includes programs or activities like those typically offered by law enforcement like JCPD. 20 U.S.C. § 1687(1)(A) (a 'program' is defined as "a department, agency, special purpose district, or other instrumentality of a State or of a local government"). The Department of Justice recognized that programs as diverse as state park workshops receiving Department of Interior funds, to county park boater education programs receiving funding from the U.S. Coast Guard to vocational training for inmates that receive funds from the Department of Justice are covered. Dep't of Justice, Civil Rights Division, Title IX Legal Manual p. 8. "Generally, it covers all aspects of the educational program, including admissions, treatment of participants, and employment." *Id*.

Plaintiff pled JCPD receives federal funding. ECF 23-1 ¶ 450. Thus, JCPD's practices likewise fall within the purview of Title IX. Here, like a hospital's residency program, JCPD has programs or activities satisfying Title IX's broad reach. Accordingly, drawing all inferences in Plaintiffs' favor, Plaintiffs pled sufficient facts concerning their Title IX claims.

Next, Defendants contend that Plaintiffs have not alleged a claim under 18 U.S.C. §§ 1591(a)(1), (2), because (1) Plaintiffs have not alleged how individual officers could have

8

benefitted financially from the cash seized from Williams; and (2) cash obtained through facially legitimate legal process cannot be the basis for a corrupt, quid-pro-quo payment as part of a sex trafficking conspiracy. Neither argument, however, forms the basis for dismissal of the sex trafficking claims.

It is notable that in their Response, Defendants do not appear to dispute that JCPD took funds from Williams through asset forfeiture. *See* ECF 50 at 13-15. In fact, in Defendant Sparks' answer to the amended complaint, he admits that JCPD seized cash from Williams' safe, but then claims that "all currency was placed back in the safe which was later returned to Wiliams." ECF 39 ¶ 229. In the Johnson City Defendants' answer, it is unclear if they acknowledge the asset seizure or not: "Upon information and belief, no money was seized from the safe seized [sic] and therefore searched pursuant to a properly obtained warrant." ECF 41 at 19. Regardless, Plaintiffs have alleged that the seizure of Williams' cash from his safe was unlawful because it was not done for a legitimate law enforcement purpose, but instead represented a payment to JCPD as part of the sex trafficking conspiracy.

Instead of denying that JCPD benefited from this asset seizure, the Johnson City Defendants argue in their Response that an individual police officer could not personally benefit from such unlawfully obtained funds, and therefore, could not "benefit financially" from the sex trafficking venture. ECF 50 at 13. But, of course, it would be remarkably easy for an officer to benefit personally if he or she were operating corruptly during the seizure of assets: the officer could simply pocket some amount of the cash before logging the remaining amount on the inventory form. No one but the criminal would be able to claim the full amount differed from the logged amount. And, contrary to what Defendants argue, using an otherwise legitimate process to seize the assets would be an excellent cover to shield the officer from accusations of corruption.

9

This case is not at the summary judgment stage, though, and Plaintiffs need only provide Defendants with "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Plaintiffs have alleged that Williams' seized assets were unlawfully and corruptly taken by Defendants as part of the sex trafficking conspiracy. This is sufficient to provide notice to Defendants and to allege beneficiary liability under §§ 1591(a)(1), (2).

Defendants next claim that the legitimate seizure of Williams' assets during a narcotics investigation could not be an overt act as part of the sex trafficking crime. ECF 50 at 14. But it does not matter whether the legal process JCPD used to obtain the cash was "legitimate" on its face. If the purpose was a quid-pro-quo, as Plaintiffs allege, and in return Williams could continue his sex trafficking conspiracy, the act was unlawful. If anything, as noted above, using a legitimate means to gain access to Williams' cash would be a useful way to cover an otherwise unlawful and corrupt act. Moreover, it does not appear that there was ever a narcotics investigation into Williams, or at least, this was not the crime under investigation when Defendant Sparks applied for the search warrant to seize cash from Williams's safe. *See* ECF 23-1 ¶¶ 223-226. Nor did JCPD refer charges for any narcotics crime after the search and seizure of the safe and the currency inside. Thus, Defendants' assertions that the asset seizure was part of a legitimate narcotics investigation are not based on any alleged facts in the complaint or any evidence currently in the record. This is not a basis for dismissal under Rule 12(b)(6).

### *Rule 8(a) Argument*

Defendants next accuse Plaintiffs of violating Federal Rule of Civil Procedure 8(a), by filing a lengthy and complex second amended class complaint. ECF 50 at 15-16. The second amended class complaint is no longer than necessary to allege the facts, however, in a case involving a multi-year sex trafficking conspiracy, obstruction of an investigation into this

conspiracy, as well as civil rights claims under the Equal Protection and Due Process Clauses and Title IX violations. Defendants have not offered any specific basis on which to strike any portion of the second amended class complaint, nor should the Court entertain Defendants' general complaints about the length of the document.

Finally, Defendants claim that they are delayed in responding to Plaintiffs' complaint because they have no way to determine if they have any records made by the Jane Does. ECF 50 at 5. This is incorrect. The complaint in this case includes detailed facts and dates for each Jane Doe, such that it should be relatively easy and quick to cross check the facts alleged and the police reports the Defendant City has involving sexual assault allegations against Sean Williams. In fact, even a review of the public press reports in this case makes it clear that Jane Doe 2 is the victim identified in the June 1, 2023, search warrant affidavit authored by Defendants Sparks seeking Williams' DNA. *See* "Affidavits show JCPD had Sean Williams' computers, didn't check them after rape allegations against him," Jeff Keeling, WJHL.[3]

## CONCLUSION

Accordingly, Plaintiffs request the Court grant Plaintiffs leave to file the second amended class complaint.

Dated this October 25, 2023.   Respectfully submitted,

HMC Civil Rights Law, PLLC
*s/ Heather Moore Collins*

Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027

---

[3] Available at: https://www.wjhl.com/news/local/sean-williams-case/affidavits-show-jcpd-had-sean-williams-computers-didnt-check-them-after-rape-allegations-against-him/?utm_source=ground.news&utm_medium=referral

615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com


Advocates for Survivors of Abuse PC

*/s Vanessa Baehr-Jones*
Vanessa Baehr-Jones (*pro hac vice*)
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com


Erickson Kramer Osborne, LLP

*/s/ Elizabeth Kramer*
Elizabeth Kramer (*pro hac vice*)
Kevin Osborne (*pro hac vice*)
44 Tehama St.
San Francisco, CA 94105
415-635-0631
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Proposed Classes*

12

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on October 25, 2023 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>Email: lisa@hbm-lawfirm.com<br><br>Emily C. Taylor<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>Email: etaylor@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity* | Daniel H. Rader III<br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 N. Jefferson Avenue<br>P.O. Box 3347<br>Cookeville, TN 38502-3347<br>danrader@moorerader.com<br>danny@moorerader.com<br>*Counsel for Kevin Peters in his individual capacity*<br><br>Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>*Counsel for Toma Sparks in his individual capacity*<br><br>Keith H. Grant<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>E-mail: kgrant@rswlaw.com<br>*Counsel for Justin Jenkins in his individual capacity* |

                                         */s Heather Moore Collins*
                                         Heather Moore Collins

13

Case 2:23-cv-00071-TRM-CRW   Document 56   Filed 10/25/23   Page 13 of 13   PageID #: 665