| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, K.T. and M.T., Successors-in-interest to JANE DOE 6, JANE DOE 7, JANE DOE 8, and JANE DOE 9, | ] ] ] ] ] | |
| Plaintiffs, | ] ] | No.: 2:23-cv-00071-TRM-CRW |
| v. | ] ] | PLAINTIFFS' DEMAND JURY TRIAL |
| CITY OF JOHNSON CITY, TN., et al., | ] ] | |
| Defendants. | ] | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Come now the Defendants, City of Johnson City, Tennessee ("City" or "Johnson City"), Karl Turner, in his individual and in his official capacities, Captain Kevin Peters, in his official and individual capacity, and Investigator Toma Sparks in his official and individual capacity and submit the following Response in Opposition to Plaintiffs' Motion for Leave to Amend [Doc. 93].

## PROCEDURAL HISTORY

This lawsuit was originally filed on June 21, 2023. [*See* Compl., Doc. 1, PageID ## 1-38]. In their original complaint, the Plaintiffs alleged violations of Equal Protection pursuant to 42 U.S.C. § 1983 based on an alleged unconstitutional policy (Count I), Equal Protection pursuant to 42 U.S.C. § 1983 based on an alleged violation of substantive rights to due process (Count II), Title IX (Count III), and state-law claims arising under the Tennessee Governmental Tort Liability Act (Counts IV, V, and VI). [Compl., Doc. 1, PageID ## 30-37].

The Plaintiffs did not serve any of the Defendants with the original Complaint [Doc. 1].

1

After sixty (60) days had passed and they still had not been served, on August 25, 2023 and August 28, 2023, the Defendants elected to file answers to the complaint prior to service. [*See* Docs. 10, 11, and 15]. On August 26, 2023, the day after Defendants Toma Sparks, the City of Johnson City, and Carl Turner filed their Answers to the Complaint, the Plaintiffs filed their first Motion to Amend their Complaint and proposed Amended Complaint. [See Doc. 12, PageID# 107-108; Doc. 12-1, PageID# 110]. The proposed First Amended Complaint added twenty pages to the Complaint, an additional Defendant, almost one-hundred and fifty (150) new allegations, a claim for sex trafficking, and an obstruction claim. [Doc. 12-1, PageID# 110].

On or about September 1, 2023[1], before the Defendants had the opportunity to respond to the Motion to Amend, the Court granted Plaintiffs' Motion to Amend and directed the Plaintiffs to file their First Amended Complaint on or before September 8, 2023. [*See* Doc. 20, PageID# 233]. On September 6, 2023, the Plaintiffs filed their First Amended Complaint. [*See* Doc. 21, PageID # 234].

Just two days after the Amended Complaint was filed, on September 8, 2023, the Plaintiffs' filed their Motion to Amend the Amended Complaint and proposed Second Amended Complaint [Docs. 23 and 23-1]. The proposed Second Amended Complaint, much like the Amended Complaint, added pages of new allegations, a three (3) page, non-numbered "introductory" paragraph, a new plaintiff, and class action claims and allegations.

On or about October 18, 2023, the Defendants filed their Response in Opposition to the Plaintiffs' Motion to Amend Complaint [Doc. 50], and on October 25, 2023, the Plaintiffs filed

---

[1] According to the Order granting Plaintiffs' Motion to Amend [Doc. 20], the Court granted the Motion to Amend based on Fed. R. Civ. P. 15(a)(1)(B), which provides that a party may amend a pleading to which a responsive pleading is required once as a matter of course within 21 days after service of a responsive pleading. Since the Defendants' answers were filed less than 21 days prior to Plaintiffs' filing their Motion to Amend, the Court held the Plaintiffs were entitled to amend as a matter of course. [*See* Doc. 20].

their Reply [Doc. 56].

The Motion to Amend [Doc. 23] remained pending until this Court's Scheduling Order was entered on November 28, 2023 [Doc. 86]. In the Scheduling Order, the Court held that the Plaintiffs' currently pending motion to file a second amended complaint [Doc. 23] was moot, and the Plaintiffs were directed to file their "replacement" proposed second amended complaint by December 12, 2023. [Doc. 86, PageID # 1014]. The Plaintiffs sent the Defendants their proposed second amended complaint on December 7, 2023. A copy of the proposed second amended complaint received by counsel for the Defendants on December 7, 2023 is attached hereto as Exhibit 1. On December 12, 2023, counsel for the Defendants indicated to counsel for the Plaintiffs that the Defendants did not consent to the amendment.

On or about December 12, 2023, the Plaintiffs filed the "replacement" Motion to Amend [Doc. 93] and proposed Second Amended Complaint [Doc. 93-1]. Quite notably, the proposed amended complaint filed with the Court [Doc. 93-1] is different than the one counsel for the Plaintiffs sent to counsel for the Defendants on December 7, 2023 in an attempt to satisfy their confer obligations required by this Court's Scheduling Order. Specifically, the proposed second amended complaint filed with the Court contains 424 allegations, while the proposed second amended complaint provided to counsel for the Defendants (Exhibit 1) contains 417 allegations.

As with the other amended complaints, the Plaintiffs' most recent proposed amended complaint is, in effect, a new lawsuit. Through the proposed second amended complaint, the Plaintiffs add two new Defendants, new claims against the Defendants, and a number of new conclusory allegations. The Plaintiffs have also changed how they identify the Plaintiffs, eliminating any reference to "Jane Doe," which has been replaced with the initials for three Plaintiffs and references to Female 1, 2, 3, etc. for other individuals. It appears that some of the

Plaintiffs previously identified as Jane Doe Plaintiffs are now identified as Females in the proposed second amended complaint, including, for example, Female 9, who may be Jane Doe 5 from prior complaints, and Female 12, who may be Jane Doe 7 from prior complaints. However, the Defendants are unable to identify any of the anonymous individuals listed in the proposed second amended complaint, because their identity has not been disclosed to the Defendants or their counsel.

On November 20, 2023, the parties, per the Scheduling Order, exchanged Rule 26 Initial Disclosures. Plaintiffs' disclosures listed under "Individuals likely to have discoverable information," Jane Doe 1, 2, 3, 4, 5, 6, 7, 8, 9, Female 1, 2, and Female 3 with the promise that the names and addresses would be provided "upon entry of a Protective Order." See, Exhibit 2, pp. 1-2 to this Response.

The Protective Order was entered on December 18, 2023. [Doc. 94, PageID #: 1144] The Defendants express no surprise that the Plaintiffs have continued to withhold the names of those making their extraordinary and defamatory allegations against the Defendants. The withholding of the claimants and material witnesses' names and addresses are now more than six (6) months from the filing of the Complaint on June 21, 2023. [Doc. 1, PageID #: 1]

Notwithstanding the Defendants request to Plaintiffs' counsel, then later enhanced to a demand for the withheld names, after the entry of the Protective Order four (4) days ago, the Plaintiffs have not disclosed their identities to the Defendants.

For the reasons set forth below, Plaintiffs' Motion to Amend [Doc. 93] should be denied.

4

## LAW AND ARGUMENT

I.     **PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED BECAUSE THE DEFENDANTS WILL BE UNFAIRLY PREJUDICED IF THE AMENDMENT IS GRANTED AS THE PLAINTIFFS HAVE EXHIBITED BAD FAITH AND THE PROPOSED AMENDMENTS ARE FUTILE.**

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave [to amend] where justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court ...." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) ("The decision as to whether justice requires the amendment is committed to the district court's sound discretion."). Rule 15 reinforces the principle that matters before the court "should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

The Sixth Circuit Court of Appeals has consistently held that in determining whether an amendment should be denied a district court must consider the possibility of undue delay, bad faith, dilatory motive on movant's part, prejudice to the parties, and futility of the proposed amendment. *See Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007); *see also Restocon Corp. v. Metro. Knoxville Airport Authority*, 2023 WL 6614416, at *1 (E.D. Tenn. Aug. 25, 2023). In order to deny a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore*, 790 F.2d at 562; *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

Applying the factors identified in *Prater* to this case and the allegations raised in the proposed Second Amended Complaint, this Court should deny the Motion to Amend because (1) the Defendants are prejudiced by yet another filing of a proposed amended complaint made by unidentified plaintiffs; (2) the Plaintiffs have exhibited bad faith with a dilatory motive in filing their Motion to Amend; and (3) Plaintiffs' proposed Second Amended Complaint is futile.

5

**A. These Defendants will experience significant prejudice if Plaintiffs' most recent Motion to Amend is granted.**

This case has been pending since June, yet the Plaintiffs continue to file amended complaints that add parties, allegations, and claims. The constant amendments have delayed discovery, and particularly since the Plaintiffs have still not identified themselves or most of the individuals referenced in their complaints, impeded the Defendants' ability to defend these claims. The Defendants will continue to experience significant and unfair prejudice if the Court allows Plaintiffs' Second Amended Complaint to be filed. Therefore, this Honorable Court should deny Plaintiffs' motion.

First, the Defendants have been prejudiced by the Plaintiffs' repeated amendments to their complaint without revealing their identities. In their original Complaint, Amended Complaint, and now proposed Second Amended Complaint, the Plaintiffs make inflammatory and damaging allegations against the Defendants, including, for example, ludicrous allegations that the Defendants engaged in a sex trafficking conspiracy. [*See* Doc. 93-1, PageID # 1119]. The Defendants are unable to blindly respond to these allegations. Although the Plaintiffs have indicated that they are willing to reveal the identity of any "Jane Does" identified in their Complaint [*see* Doc. 89, at n. 1][2], the proposed second amended complaint removes any reference to "Jane Doe," and instead refers to three individuals with their initials and other key parties as "Female 1," "Female 2," "Female 3," etc. As of the date of filing the instant Response, the Plaintiffs have still refused to release the identity of any of the unidentified Plaintiffs and "Females" described in the Complaints, despite multiple requests from counsel for the Defendants that they

---

[2] The proposed agreed protective order submitted by the parties only address the identity of the "Jane Doe plaintiffs and others identified by pseudonym." [Doc. 92-1].

do so[3]. Furthermore, during a status conference with the Court on December 15, 2023, counsel for the Plaintiffs indicated that a "meet and confer" was necessary before the Plaintiffs would release their names. All of the above represents a continued pattern by counsel for the Plaintiffs to wrongfully conceal basic factual information regarding their claims for six months, which has forestalled important, meaningful work on this case.

In their latest stunt, the Plaintiffs' claim they will provide the Defendants with password protected "key" that can be used to identify individuals listed in the Plaintiffs' First Set of Request for Production of Documents propounded on the City of Johnson City. By email dated 7:39 p.m. on December 21, 2023, counsel for the Plaintiff provided a password protected key and stated that the password would be sent separately. (A copy of this email is attached hereto as Exhibit 3). As of the date of filing the instant Response, no password has been provided by the Plaintiffs or their counsel, which further evidences the Plaintiffs' bad faith and dilatory motive, and, once again, makes the Defendants unable to respond to the Plaintiffs' claims and deprives them of the opportunity to mount a defense to the claims raised against them.

The Defendants should not and cannot be expected to respond to claims made by individuals whose identity they have no way of ascertaining absent some cooperation from counsel for the Plaintiffs.

Additionally, Plaintiffs' repeated amendments to the Complaint, all while keeping their identities hidden from those they are suing, has delayed this case and hindered the Defendants' ability to investigate the Plaintiffs' claims and begin discovery. "[O]rdinarily, delay alone will not justify the denial of leave to amend the complaint." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005) (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002));

---

[3] Counsel for Defendant Peters requested, in writing, that the Plaintiffs release the identity of the Plaintiffs and anonymous Females on December 14, 2023 and December 21, 2023.

*see also Moore v. City of Paducah*, 790 F.2d 557, 560 (6th Cir. 1986) ("delay alone, regardless of its length is not enough to bar [an amendment] if the other party is not prejudiced."). Delay will become undue when the delay "plac[es] an unwarranted burden on the court," or "prejudicial, placing an unfair burden on the opposing party." *Bridgeport Music, Inc*, 410 F.3d at 806 (internal citations omitted). Additionally, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).

It has now been almost six (6) months since the Plaintiffs filed their original Complaint, and the Defendants have not been able to determine if, for example, they have any records of reports made by any of the named Plaintiffs or former Plaintiffs who are now identified as "Females." The Defendants need to know the identity of the named Plaintiffs and "Females" in order to determine what, if any, additional affirmative defenses they have against the claims made by the Plaintiffs. The Defendants should not be forced to spend resources examining every single sexual assault investigation conducted by the Johnson City Police Department in an effort to ascertain who each named Plaintiff or "Female" might or might not be. Defendants like Peters and Turner, who are no longer with the JCPD, *cannot* examine every sexual assault investigation even if they were otherwise so inclined; it is essential that the pseudonyms be identified so these Defendants *can* obtain relevant information concerning these Plaintiffs or alleged victims. Nor should the Defendants be made to waste time and resources responding to yet another complaint (that is different than the pleading Plaintiffs represented to the Defendants they would be filing) made by anonymous Plaintiffs.

Finally, while a victim of sexual assault might be permitted to utilize a pseudonym in some circumstances, this proposed amended complaint adds for the first time a class action element.

The amended complaint should be denied unless the Plaintiffs proceed under their actual names. the law is generally clear that a plaintiff seeking to be a class representative for a putative class, in a proposed class action, is not permitted to proceed under a pseudonym, not only to protect the rights of the defendants, but also to protect the rights of the prospective class, who have no idea if any unidentified class representative is adequate to protect her interests. See *Sherman v. Trinity Teen Solutions, Inc.*, 339 F.R.D. 203 (D.Wyo. 2021). See also *In re Ashley Madison Customer Data Security Breach Litigation*, 2016 WL 1366616 (E.D. Mo. 2016) (requiring plaintiffs in a putative class action to utilize their actual names, in furtherance of their fiduciary duty to the entire class, and requiring class members be identifiable.)[4]

Given the clear and unfair prejudice shown above, this Court should deny Plaintiffs' most recent Motion to Amend. Even if the Court does not deny the Plaintiffs' most recent Motion to Amend on prejudice grounds, it is submitted that this Court should stay Defendants' time to file a responsive pleading to the Second Amended Complaint until a reasonable time after the identities of the Plaintiffs and the unidentified "Females" are revealed to the Defendants.

### B. Plaintiffs have exhibited bad faith with a dilatory motive in filing their most recent Motion to Amend their Complaint.

The Eastern District of Tennessee has defined bad faith as "…generally involv[ing] willful failure to perform, evasive actions, lack of diligence, etc." *Larson v. Rush Fitness Corp.*, No. 3:12-CV-109, 2012 WL 12919624, at *1 (E.D. Tenn. Sept. 24, 2012) (analyzing dilatory motive in conjunction with bad faith).

---

[4] The Defendants did not oppose the use of pseudonyms in public filings (so long as the actual names were provided to the Defendants) in the prior iterations of the Complaint that did not include a putative class action. The Plaintiffs' election to pursue this matter as a class action changes this balance of interests, as reflected by the cases. Here, the public interest, including the interest of potential class members, outweighs the plaintiffs' interest in privacy or use of a pseudonym.

As shown previously, Plaintiffs curiously turned around and filed a second Motion to Amend and Second Amended Complaint a mere two days after they filed their first Amended Complaint. They then indicated that, after filing their second motion to amend, that they were in the process of filing what would be a third amended complaint. Once the Court denied as moot the Plaintiffs' second motion to amend, the motion and proposed complaint filed on December 12, 2023, took its place.

However, the proposed second amended complaint provided to the Defendants as part of the "meet and confer," is different than the one filed with the Court. [Compare Exhibit 1 and Doc. 93-1). Thus, the parties have not had a meet and confer regarding the proposed second amended complaint, which is further evidence of Plaintiffs' bad faith in moving to amend.

Additionally, the claims raised in the proposed Second Amended Complaint [Doc. 93-1] could have been raised in the any of the pleadings and proposed amendments previously filed, yet instead the Plaintiffs have forced the Defendants to waste time and resources responding to an Amended Complaint and proposed seconded amended complaint that Plaintiffs knew they would supersede with the filing of yet another amended complaint. For example, Plaintiffs reference the Facebook posts made by an anonymous conspirator to Williams' Facebook account on September 2, 2023, as justification for their most recent amendment. However, these posts were made *before* Plaintiffs' filed their prior motion to amend [Doc. 23 and 23-1], and the Plaintiffs have not explained why these allegations could not have been included in their prior proposed amendment.

Being forced to respond to back-to-back amended complaints, brought by anonymous Plaintiffs and "Females," has unnecessarily delayed this case, hindered the Defendants' ability to investigate the claims brought by the Plaintiffs, and unfairly prejudiced the Defendants. Thus, the Plaintiffs' Motion to Amend should be denied by this Honorable Court.

10

**C. Plaintiffs' proposed Second Amended Complaint contains claims that are futile and will not survive a Rule 12(b)(6) Motion to Dismiss.**

Plaintiffs' proposed Second Amended Complaint contains multiple claims that, as a matter of law, are futile as they would not even survive a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. As such, this Honorable Court should deny Plaintiffs leave to file their proposed Second Amended Complaint.

In considering whether a motion to amend should be denied as futile, the Court must determine whether the proposed amendment could withstand a Rule 12(b)(6) motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In order to avoid futility, the proposed amendment must satisfy the Rule 12(b)(6) standard and contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must—when the record is construed in the light most favorable to the nonmoving party and when all well-pled factual allegations are accepted as true—contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citing P*hiladelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)). "Still, this court 'need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *Id.* (citing *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246–

47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).

    1.  <u>The proposed amendment to add class action allegations is futile, because the proposed classes are overbroad and lack commonality and typicality.</u>

First, Plaintiffs seek to amend their Amended Complaint to add class action allegations. These proposed amendments are futile because the class allegations would not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

The class action device "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (emphasis added). Class certification is not proper unless Plaintiffs can conclusively show that a case can be resolved through common proof. *Id.* To depart from the general rule and pursue claims through named representative parties, the following criteria must be met:

    (1) The class is so numerous that joinder of all members is impracticable;

    (2) There are questions of law or fact **common to the class**;

    (3) The claims or defenses of the representative parties are **typical** of the claims or defenses of the class; and

    (4) The representative parties will **fairly and adequately** protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added).

First, the proposed classes are overbroad and lack typicality and commonality. The proposed "sex trafficking survivor class" consists of all individuals who were "abused, drugged,

or trafficked by Sean Williams or Alvaro Fernado Diaz-Vargas." [Doc. 93-1, PageID # 1114, at ¶ 298]. This proposed class includes women who did not report an alleged crime to the Johnson City Police Department. including for example Female 13[5]. Those who did not report their alleged sexual assault to the Johnson City Police Department cannot be said to have suffered the same harm as a plaintiff who did.

Moreover, many of the putative class members' claims may be barred by the statute of limitations, as based on the allegations in the proposed Second Amended Complaint it appears their claims accrued at different times. For example, Plaintiff H.A. did not report her assault because "she had been told that the police would take no action, as they never did when women reported assaulted by Williams...". [Doc. 93-1, PageID # 1083]. Thus, Plaintiff H.A. knew, or should have known, in October of 2020 that she had an alleged claim[6].

Since the statute of limitations defense will be unique and individualized to each class member, as illustrated based on the allegations of Plaintiff H.A., it cannot be said that Plaintiffs' claims and defenses are typical of the whole. Moreover, if this matter is allowed to proceed as a class action, the utility of proceeding as a class action, as contemplated by Rule 23(a), will be negated by the need to conduct individualized inquiries to determine at what point in time each putative plaintiff was informed—or reasonably should have known—that the she had a claim based on any alleged wrongdoing by the Defendants.

Similarly, the proposed "Reporter Survivor Class," is overbroad and lacks typicality and commonality, as this class includes *all* women who reported sexual abuse and trafficking by any

---

[5] In other pleadings and prior complaints, the Plaintiffs have included allegations that Plaintiffs previously referred to as Jane Does 1, 3, 4, 8, and 9 did not report their assaults to the JCPD. *See* [Doc. 23-1].

[6] Prior versions of the Plaintiffs' complaints included allegations that other Jane Does' claims accrued as early as October of 2019, including, for example, Jane Doe 3 in Doc. 23-1 at ¶¶ 69-83. Those allegations are absent from the most recent proposed second amended complaint; however, it is likely Jane Doe 3 is a putative class member, particularly since the Plaintiffs have numbered the "Females" Females 1-13, yet there are no allegations regarding a Female 6 or Female 7. Counsel for the Defendants surmise that Female 6 or Female 7 may be Jane Doe 3.

person to JCPD from January 1, 2018 to April 25, 2023. This proposed class will, undoubtedly, include women who's alleged assaults were investigated and/or resulted in an arrest. To the extent an investigation resulted in an arrest, the proposed class members did not suffer an injury and therefore do not have standing to bring such claims. It would likewise include individuals whose claims were thoroughly investigated by the JCPD, but did not result in a conviction for an endless number of legitimate reasons. Examples would be claims where there was never a known suspect, claims that the district attorney declined to prosecute, and even claims that were brought to trial where the accused was acquitted by a jury of his peers. Including individuals in the class who did not suffer an injury is the definition of overbreadth. *See, e.g., Loreto v. Proctor & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013) ("A class is overbroad if it includes significant numbers of [individuals] who have not suffered any injury or harm."). The same is true for a woman who reported, but later recanted, her sexual assault or a woman who declined to prosecute her sexual assault. None of these women would have a claim based on an alleged failure to investigate her sexual assault, yet under the overbroad class designation alleged in the proposed Second Amended Complaint, these women would be included as members of the class.

As the Sixth Circuit has previously stated:

> Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, the typicality premise is lacking for—under those circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members.

*Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (internal citation omitted).

14

Thus, the class allegations raised in Plaintiffs' proposed Second Amended Complaint are overbroad, lack commonality and typicality, would not withstand a Rule 12(b)(6) motion to dismiss and are therefore futile.

        2.  <u>Plaintiffs' sex trafficking claims as alleged in Counts I, II, III and IV would not withstand a Rule 12(b)(6) motion to dismiss and are therefore futile.</u>

In Counts I, II, III, and IV of the proposed Second Amended Complaint, the Plaintiffs attempt to bring claims against the Defendants based on violations of the Trafficking Victim Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"). Plaintiffs' proposed amendments are futile as they would not withstand a Rule 12(b)(6) motion to dismiss.

In its early versions, the TVPRA imposed criminal liability for forced labor, forced-labor trafficking, and sex trafficking. 18 U.S.C. §§ 1589, 1590, 1591. In 2003, Congress codified 18 U.S.C. § 1595 and created a civil liability provision against the direct trafficker of the victims. *Id.* In 2008, Congress expanded the scope of civil liability, and the TVPRA now provides a civil remedy against not only the direct perpetrator, but also *"whoever knowingly benefits,* or attempts or conspires *to benefit, financially or by receiving anything of value* from participation in a venture which that person *knew or should have known* has engaged in an act in violation of this chapter," 18 U.S.C. § 1595(a) (emphases added). Counts I, II, III, and IV are all claims arising under § 1595 of the TVPRA, thus for each of these claims the Plaintiffs must plausibly plead that each of the Defendants knowingly benefited from taking part in a sex trafficking scheme.

There are two types of civil claims under the TVPRA, perpetrator and beneficiary liability. *Doe by Doe v. Piraino*, No. 3:22-CV-00560, 2023 WL 5310556 (M.D. Tenn. Aug. 17, 2023). A perpetrator liability claim allows a victim of sex trafficking to recover from the individuals who directly participated in the victim's sex trafficking. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023). A beneficiary liability claim allows a victim of sex trafficking to also recover from

individuals who benefited by participating in a venture with the perpetrator that they should have known violated 18 U.S.C. § 1591. *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021).

To state a beneficiary claim under the TVPRA "a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof Inns, Inc.*, 21 F.4th at 726; *Piraino*, No. 3:22-cv-00560, 2023 WL 5310556, at *16 (District court in the Middle District of Tennessee explicitly adopting the elements as stated by the Eleventh Circuit in *Red Roof Inns, Inc.* because there are no Sixth Circuit cases on beneficiary liability claims); *see also Ramsbottom v. Ashton*, 2022 WL 106733, at *9 (M.D. Tenn. Jan. 11, 2022) ("to state a claim under a § 1595(a) beneficiary theory, the plaintiffs must allege facts—beyond mere conclusions—allowing the court to plausibly infer that the defendant [engaged in each of the four elements]").

Plaintiffs appear to combine these claims by claiming Defendants were direct participants in and received financial benefits from Williams' "sex trafficking venture" (Doc. 93-1, PageID # 1119, ¶¶ 313-327). Plaintiffs claim that Defendants,

> knowingly participated in a sex trafficking venture by benefiting financially. Defendants effectively accepted payments from Williams in furtherance of the conspiracy through the corrupt use of search warrants and other unlawful collection efforts, including an extortion scheme. Said warrants were facially obtained and used to seize unlawfully obtained currency or narcotics assets but were in fact quid pro quo payments made to Defendants with either the implied or explicit understanding that Defendants would shield Williams, permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments.

[*Id.* at PageID # 1119, ¶ 314].

The proposed second amended complaint does not remotely allege *actual facts* from which it could reasonably be inferred that Defendants City of Johnson City, Chief Turner, Peters, Jenkins, LeGault and Higgins knowingly participated in or benefited from their participation in a sex-trafficking venture. The Plaintiffs refer collectively to "JCPD officers" and allege that "JCPD officers accepted payments from Williams in furtherance of the conspiracy…" [Doc. 93-1, ¶ 59, PageID # 1076]. However, the Plaintiffs have not come forward with a single concrete factual allegation that any JCPD officers, other than Sparks[7], received anything of value from the alleged sex-trafficking venture. The mere fact that Sean Williams was allegedly involved in sex trafficking and the JCPD investigated him for various crimes, including, for example, attempted homicide, is not sufficient to give rise to liability under § 1595 as to these Defendants. *See Ramsbottom v. Ashton*, 2022 WL 106733, at *9 (M.D. Tenn. Jan. 11, 2022) ("The mere fact that [the trafficker] was allegedly involved in sex trafficking and [the Defendant] was engaged in a venture with [the trafficker] from which it clearly benefited…is not sufficient to give rise to liability against [the Defendant] under § 1595].

As to Defendants Johnson City, Chief Turner, Peters, Jenkins, LeGault, and Higgins, this theory of participation in a "sex trafficking venture" does not satisfy the elements of the claim, even if one assumes that these Defendants benefited from civil asset forfeitures from its narcotics investigation into Williams. First, there are no allegations that any of the named Defendants, other than Defendant Sparks, benefited financially or received anything of value from the alleged conspiracy. Plaintiffs' use of the term "they" throughout Counts I, II, III, and IV amounts to impermissible "group pleading" and therefore the facts pled in connection with the term "they" do

---

[7] The Defendants vehemently deny the outrageous allegations made by Sean Williams, a convicted felon, via an anonymous person who was posting on Williams' Facebook account, that Defendants Sparks accepted payments from Williams

not state a plausible claim for which relief may be granted. See *Mhoon v. Metro. Gov't of Nashville*, No. 3:16-cv-1751, 2016 WL 6250379, at *3 (M.D. Tenn. Oct. 26, 2016) (holding "group pleading [was] insufficient to establish that any one of the defendants acted in an unconstitutional manner"); See also *Rodriguez v. Providence Cmty. Corr., Inc*. 191 F.Supp. 3d 758, 773 (M.D. Tenn. 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim."). Plaintiffs provide no allegations as to how these Defendants sued in their individual capacity would benefit from such a seizure and/or received anything of value from the venture. Other than wild and outlandish claims made about Defendant Sparks by Williams, a convicted felon, to an unidentified co-conspirator on his alleged social media account, the Plaintiffs' proposed second amended complaint lacks any specific allegations as to any of the other individually-named Defendants and the City itself. These types of conclusory allegations are insufficient to state a claim against the City, Peters, Chief Turner, Jenkins, LeGault and Higgins.

Second, the Facebook post at issue does not plausibly allege any facts supporting an inference that any of the Defendants violated the TVPRA. The entire Facebook post made by Williams, which is what the Plaintiffs rely upon to make their TVPRA claim, is attached hereto as Exhibit 4. Assuming the post made by Williams' anonymous co-conspirator is true, which was relayed to the co-conspirator by Williams from jail using a contraband cellphone [*see* Doc. 93-1, PageID # 1077, ¶ 62], the alleged "scheme" did not involve sex trafficking. The "scheme" in the words of Williams, "...wasn't about assaults. It was about drug money and extortion..." (Exhibit 1). Thus, the "payments" Plaintiffs refer to in the proposed second amended complaint cannot plausibly be said to have been made pursuant to a sex trafficking venture with Williams. The allegations the Plaintiffs rely on in making this claim actually contradicts the claim that the "scheme" related to sex trafficking.

18

Third, any property seized due to a narcotics investigation into Williams could be seized if charges were properly brought for his sex crimes as well.[8] Simply put, the prosecution or lack thereof of Williams' sex crimes has no effect on what can be lawfully seized in a parallel narcotics investigation. Third, as to the City, Chief Turner, Peters, Jenkins, LeGault, and Higgins, the Plaintiffs have not plead any nonconclusory facts of a "common undertaking or enterprise involving risk and potential profit." If the City had seized significant assets from Williams related to its narcotics investigation as Plaintiffs claim, there are no factual, nonconclusory allegations establishing that this was done pursuant to a common scheme with Williams. There are no nonconclusory allegations that the City had knowledge that Sparks was allegedly being paid by Williams, nor are there any allegations that any of the other named Defendants also received payments from Williams. Under Plaintiffs' theory of liability, a law enforcement agency becomes an active participant in sex trafficking if it takes possession of anything of value in a non-sex trafficking investigation, and it later becomes apparent that defendant was also engaged in sex trafficking. Plaintiffs' argument also means that a person can be a participant in a sex-trafficking conspiracy if one of his or her co-workers is alleged to have benefited from the conspiracy. This argument is clearly inconsistent with the purpose of the TVPRA, and such a holding would discourage law enforcement officers from participating in or seizing assets from an individual who is accused of a crime due to a fear of later liability under the TVPRA.

Plaintiffs undercut their argument for financial benefit with the factual allegations they use to support the claim. Plaintiffs point to a search warrant application that allowed the Johnson City Police Department to seize any currency in Williams' safe. [Doc. 93-1, PageID #1081 at ¶ 84]. The

---

[8] The City took Sean William's safe into custody pursuant to a search warrant upon finding a small amount of narcotics in Mr. William's condominium while conducting an attempted homicide investigation. When the search did not discover additional drugs to support a charge of distribution or drug trafficking, the safe and all of its contents including all currency was returned to Mr. Williams.

19

Defendants cannot be said to have participated in a criminal enterprise when their arrest of the suspect and confiscation of the suspect's assets would have put an end to any sex trafficking activity the same as their drug dealing. Additionally, the Plaintiffs allege in Paragraph 314 of the proposed second amended complaint that the Defendants extorted Williams as part of an "unlawful collection" scheme. [Doc. 93-1 at PageID # 1119, ¶ 314]. Under *Twombley* and *Iqbal*, a pleading must have facial plausibility that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). The Defendants cannot be said to have participated in a "joint venture" under the TVPRA with someone they were alleged to have extorted.

Moreover, Plaintiffs' conspiracy to commit violations of the TVPRA claim (Count IV) is also futile, because the Plaintiffs have not pled this claim with the required particularity as to the named Defendants. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory")).

Other than the allegations made against Defendant Sparks, the Plaintiffs have alleged no specific facts tying any of the individually-named Defendants to the alleged conspiracy. Instead, the Plaintiffs refer to the Defendants collectively and allege, without any support, that "the *Defendants* agree[d] to facilitate the venture…*Defendants* accepted payments….the *Defendants* intentionally conspired with others…" [Doc. 93-1, PageID # 1129-1131]. The Plaintiffs have not

alleged any particular facts as to Defendants City of Johnson City, Chief Turner, Peters, Jenkins, LeGault, Higgins that plausibly states a conspiracy claim against them. Thus, Plaintiffs' conspiracy claims against Defendants City of Johnson City, Chief Turner, Peters, Jenkins, LeGault, and Higgins would not withstand a motion to dismiss and are therefore futile.

Plaintiffs' claims in Counts I, II, III and IV of their proposed Second Amended Complaint are futile, as they would not withstand a Rule 12(b)(6) motion to dismiss. Accordingly, this Honorable Court should deny Plaintiff's pending Motion to Amend.

3. <u>Plaintiffs' Interference claims, as alleged in Counts II and III, would not withstand a Rule 12(b)(6) Motion as to Defendants Johnson City, Turner, Peters, Sparks, Jenkins, and Higgins, and is therefore futile.</u>

In Both Count II and Count III, the Plaintiffs attempt to amend there TVPRA claim to tie an alleged incident from April of 2023 as evidence the Defendants retaliated against Female 9, an unidentified, alleged victim of Williams. [*See* Doc. 93-1, PageID # 1094, 1123, and 1128]. The Plaintiffs allege that Defendant LeGault "***and other JCPD officers*** knowingly retaliated against Female 9..." [*Id.* at PageID # 1123, 1128] [emphasis added]. The Plaintiffs have no factual allegations supporting an interference or retaliation claim against Defendants Johnson City, Turner, Peters, Sparks, Jenkins, and Higgins, yet they lump all the Defendants together when making this claim. Plaintiffs' conclusory allegations against Defendants Johnson City, Turner, Peters, Sparks, Jenkins, and Higgins do not plausibly state an obstruction or retaliation claim; therefore, the proposed amendment is futile. *See Rodriguez v. Providence Cmty. Corrs., Inc.*, 3:15–CV–01048, 2016 WL 3351944, at *11 (M.D. Tenn. June 9, 2016) (Sharp, C.J.) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (internal quotation marks and citations omitted)).

21

The Plaintiffs are trying to use this baseless claim of retaliation in April 2023 to avoid the fact that otherwise the timeline in their own pleadings shows that none of the defendants could have knowingly obstructed a sex trafficking violation, as they allege in Count II. TVPRA allows for victims to recover civil damages from anyone who violates the criminal statute 18 U.S.C.S. § 1591. This includes anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section. . .." 18 U.S.C.S. § 1591(d). To be liable under this statute defendants "must (1) *know of an effort to* enforce [18 U.S.C.S. § 1591] and (2) intentionally obstruct or attempt to obstruct that enforcement effort. *Doe v. Deutsche Bank Aktiengesellschaft*, No. 22-cv-10018 (JSR), 2023 U.S. Dist. LEXIS 75503, at *36 (S.D.N.Y. May 1, 2023) (emphasis added) (citing, *United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014) (addressing the provision in a criminal proceeding).

Plaintiffs do not assert that Defendants knew of any formal sex trafficking investigation into Williams. In fact, Plaintiffs claim in their Proposed Second Amended Complaint that the FBI first opened a sex trafficking investigation against Williams in November 2022. (D.E. 93-1 ¶ 229). This investigation began well after all alleged conduct by Defendants excluding the newly added baseless retaliation claim where they only mention one defendant by name. Plaintiffs attempt to claim that SAUSA Dahl was conducting an investigation to enforce 18 U.S.C.S § 1951 beginning when she first became aware of Williams in November 2020. (D.E. 93-1 ¶ 159). Except, Plaintiffs base such allegations upon the Complaint filed by SAUSA Dahl in her separate lawsuit, and SAUSA Dahl made no such allegation in her Complaint. (*See* Dahl Compl., attached as Exhibit 5). A search of the Dahl Complaint for any variation of the phrase "sex trafficking" will turn up empty. (*Id.*). Instead, SAUSA Dahl makes it clear in her complaint that "[r]ape, sexual assault and homicide prosecutions were outside the scope and goals of Dahl's employment." (Dahl

Compl. ¶ 29). SAUSA Dahl further alleged that "sexual assaults and rape are normally prosecuted by State and local officials as state crimes," but there was potentially a claim for violating the "federal date rape statute, 21 U.S.C. § 841(b)(7)(A)." (*Id.* at ¶ 30). Defendants could not have known of an effort to enforce 18 U.S.C.S. § 1591 by SAUSA Dahl if Dahl herself did not consider her investigation a sex trafficking investigation. SAUSA Dahl describes her investigation into Williams in detail in her sworn complaint, and it is beyond believability that she simply forgot to mention her true goal was to enforce sex trafficking statutes against Williams.

## II. PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT DOES NOT COMPLY WITH THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 8

A pleading that states a claim for relief must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a), (a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); *see also Kensu v. Corizon, Inc.*, 5 F.4th 646, 649 (6th Cir. 2021). A plaintiff must plead enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)). It is "inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of notice pleading." *Id.,* at 614. Rather, the Sixth Circuit Court of Appeals "recognize[s] the continuing viability of the 'short and plain' language of" Rule 8. *Id.*

The Sixth Circuit Court of Appeals has held that in determining when a complaint violates Rule 8, the court will look to determine what is a "...short and plain statement of a claim or a simple, clear, and direct allegation will, of course, depend on the totality of the circumstances: more complicated cases will generally require more pleading. What Rule 8 proscribes is

23

obfuscation of the plaintiff's claims." *See also Kensu,* 5 F.4th at 651. "The district court and defendants should not have to fish a gold coin from a bucket of mud to identify the allegations really at issue." *Id.* (internal quotations omitted).

Plaintiffs' proposed Second Amended Complaint, with seventy-nine (79) pages, including a three-page introductory soliloquy and nearly four hundred and thirty (430) allegations cannot be considered a "short plain statement of the claim…" *See* Fed. R. Civ. P. 12(b)(6). A cursory review of the proposed Second Amended Complaint makes one wonder if this is a criminal cause of action against Sean Williams,[9] as the Plaintiffs go to great lengths to quote, almost verbatim, documents filed in a District Court criminal case involving Williams. The proposed Second Amended Complaint also reads like an employment action against the City of Johnson City related to the termination of former SAUSA Kateri Dahl, as the Plaintiffs similarly quote verbatim and appear to rely heavily on the allegations raised by Ms. Dahl in the District Court lawsuit she has filed. *See Dahl v. Johnson City and Karl Turner,* Docket No. 2:22–cv–00072–KAC-JEM, filed in the District Court on June 23, 2022.

The Defendants should not have to waste time and resources responding to pages and pages of allegations that simply have nothing to do with the actual claims raised by the Plaintiffs whose identities are currently hidden from the Defendants. By filing their proposed Second Amended Complaint with pages of superfluous allegations and recitations from documents unrelated to their case, the Plaintiffs are confusing the issues at hand and attempting to litigate four cases in one. It is therefore submitted that this Honorable Court should deny Plaintiffs' Motion to Amend for failure to comply with Federal Rule of Civil Procedure 8.

---

[9] Despite alleging they were drugged and raped by Sean Williams, Mr. Williams is not named as a Defendant in any of the Plaintiffs' complaints.

III. **PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT DOES NOT COMPLY WITH THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 10.**

Federal Rule of Civil Procedure 10(b) mandates that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and advises that, "[i]f so doing would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." Fed. R. Civ. P. 10(b); *see also Sawyer v. City of Soddy Daisy*, No. 1:20-CV-153-TRM-SKL, 2022 WL 20651067, at *4 (E.D. Tenn. Jan. 26, 2022) (where this Court struck redundant portions of the Complaint for not complying with Rule 10(b)).

Plaintiffs' proposed Second Amended Complaint does not comply with Federal Rule of Civil Procedure 10(b). The first three (3) pages of the proposed Second Amended Complaint [PageID ## 1066-1068] consist of a single, unnumbered "introductory paragraph," that is more of a commentary or summary of the Plaintiffs' version of events. This unnumbered introductory paragraph is not a "numbered paragraph...limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). In light of the Plaintiffs' failure to comply with Federal Rule of Civil Procedure 10, the Plaintiffs' Motion to Amend should be denied.

<u>**CONCLUSION**</u>

Due to the reasons cited herein, these Defendants request that this Court deny Plaintiffs' Motion to Amend their Complaint, as the Defendants have been prejudiced by the Plaintiffs' repeated amendments, the proposed amendment is futile, and because the Plaintiffs have failed to comply with Fed. R. Civ. P. 8(a) and 10(b).

Respectfully submitted this 22nd day of December, 2023.

*s/ Emily C. Taylor*

Emily C. Taylor, BPR # 027157
**WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN 37901-0131
Phone: (865) 637-1700
Email: etaylor@watsonroach.com

*s/K. Erickson Herrin*

K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Email: lisa@hbm-lawfirm.com

*Attorneys to Defendants, Johnson City,
Tennessee, Karl Turner, in his individual and
official capacity; Captain Kevin Peters, in his
official capacity, Investigator Toma Sparks,
in his official capacity, and Investigatory
Justin Jenkins, in his official capacity*

*s/ Daniel H. Rader IV*

Daniel H. Rader IV, BPR # 025998
Daniel H. Rader III, BPR # 002835
André S. Greppin, BPR# 036706
**MOORE, RADER & YORK PC**
46 N. Jefferson Avenue
P.O. Box 3347
Cookeville, TN 38502-3347
Phone: (931) 526-3311
Email: danny@moorerader.com
        danrader@moorerader.com
        andre@moorerader.com

*Counsel for Kevin Peters in his individual
capacity*

26

s/ *Kristin Ellis Berexa*
Kristin Ellis Berexa, BPR # 014833
Ben C. Allen, BPR # 035923
**FARRAR & BATES**
12 Cadillac Drive, Suite 480
Brentwood, TN 37027-5366
Phone: (615) 254-3060
Email: kberexa@fbb.law
       ballen@fbb.law

*Counsel for Toma Sparks in his individual capacity*


s/ *Keith H. Grant*
Keith H. Grant, BPR #023274
Laura Beth Rufolo, BPR #015622
Philip Aaron Wells, BPR #036248
**ROBINSON, SMITH & WELLS, PLLC**
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
Phone: (423) 756-5051
Email: kgrant@rswlaw.com
      lrufolo@rswlaw.com
      awells@rswlaw.com

*Counsel for Justin Jenkins in his individual capacity*

27

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system:

Heather Moore Collins
Ashley Shoemaker Walter
HMC CIVIL RIGHTS LAW, PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
*Counsel for Plaintiffs*

Vanessa Baehr-Jones
ADVOCATES FOR SURVIVORS OF
ABUSE, PC
4200 Park Boulevard No. 413
Oakland, CA 94602
*Counsel for Plaintiffs*

Kevin Osborne
Elizabeth Kramer
ERICKSON KRAMER OSBORNE, LLP
44 Tehama Street
San Francisco, CA 94105
*Counsel for Plaintiffs*

Dated this 22nd day of December, 2023.

*s/Emily C. Taylor, BPR No. 27157*
EMILY C. TAYLOR, BPR # 027157
**WATSON, ROACH, BATSON &**
**LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN 37901-0131
Phone: (865) 637-1700
Email: etaylor@watsonroach.com

28