**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | | |
|---|---|---|
| JANE DOE, *et. al.*, | ) | |
| | ) | Case No. 2:23-cv-71 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Jill E. McCook |
| JOHNSON CITY, TENNESSEE, *et al*., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

---

**ORDER**

---

Before the Court is Plaintiffs' motion to file a second amended complaint (Doc. 93). For the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** the motion (*id.*).

## I. BACKGROUND

According to the allegations in the proposed second amended complaint, Sean Williams and his partner Alvaro Fernando Diaz-Vargas drugged, raped, and exploited women and children over the course of years in Johnson City, Tennessee. (Doc. 93-1, at 1–2.) This case is brought by those individuals, hereafter "Plaintiffs," against Johnson City, Tennessee ("the City"), and various Johnson City Police Department ("JCPD") officials, hereafter "Defendants," for their alleged roles in enabling Williams and Diaz-Vargas's conduct. (*Id.* at 4.)

Beginning in 2018, Williams allegedly lured women and children to his downtown loft in Johnson City, Tennessee, where he provided them with laced drugs or alcohol, sexually assaulted them, and, sometimes, photographed or recorded the assault. (*Id.*at 7.) Oftentimes, he would then manipulate these individuals to recruit more women and children. (*Id.*) This behavior

continued until 2022, even though the JCPD received numerous reports of Williams's sexual misconduct. (*Id.* at 2.)

According to Plaintiffs, JCPD officers were in on Williams's scheme. (*Id.* at 12–39.) In addition to ignoring reports of Williams's assaults, JCPD officers financially gained from interactions with Williams. In one instance, JCPD officers seized Williams's safe, which contained "$500,000.00 in cash," and returned it with only $81,000.00. (*Id.* at 17.) Williams later sent a message to a co-conspirator stating that he "was paying officials at JCPD with money from [his] company for years because [his former business partner] got caught selling cocaine and the corrupt officers targeted her for extortion probably due to her association to me." (*Id.* at 13.) He specifically mentioned one JCPD officer, Defendant Toma Sparks, in the message: "[A co-conspirator] made $2,000 a week payments to Sparks and other unnamed officers using bogus fraudulent 1099 names and forged owner's draws." (*Id.*)

On November 13, 2020, amidst Williams's sex-trafficking activity, Sparks presented a potential felon-in-possession-of-ammunition case against Williams to Assistant United States Attorney Kateri Dahl for review. (*Id.* at 26.) In investigating the charge, Dahl uncovered "multiple reports of sexual assault against Williams," none of which has been investigated. (*Id.* at 26–27.) This discovery led Dahl to inform Sparks that she intended to "build a broader case against Williams based on the substantial evidence of the more serious charges, including the conduct of drugging and raping women." (*Id.* at 27.) Dahl proceeded to investigate Williams up until her employment was terminated on June 25, 2021. (*Id.* at 29.) No federal law-enforcement agency opened a sex-trafficking investigation against Williams at that time. (*Id.* at 27.)

On June 23, 2022, Dahl filed a civil complaint in the United States District Court for the Eastern District of Tennessee, Case No. 2:22-cv-72, against JCPD Chief Karl Turner, various


Case 2:23-cv-00071-TRM-JEM Document 119 Filed 02/23/24 Page 2 of 17 PageID #: 1752

JCPD officers, and the City for alleged civil-rights and state-law violations stemming from her termination. (*See generally* Doc. 15 in Case No. 2:22-cv-72.) Dahl's complaint describes JCPD's practices and attitudes towards investigating reports of sexual assault, including specific examples of JCPD officers' investigative failures. (*Id.*)

In response to public outcry following the filing of Dahl's complaint, in August 2022, the City retained a third-party expert—the Daigle Law Group ("DLG")—to review JCPD's sexual-assault investigations from 2018 to 2022. (*Id.* at 32.) DLG stated in its report that JCPD's practices as to sexual-assault investigations failed to meet industry standards and discouraged female sexual-assault survivors from working with law-enforcement officers to pursue charges. (*Id.*)

On June 21, 2023, Plaintiffs filed a complaint against the City and various JCPD officers in this Court, alleging civil-rights claims under the Equal Protection and Due Process Clauses of the Constitution, as well as claims under Title IX of the Education Amendments Act of 1972 and the common law. (*See* Doc. 1.) Plaintiffs later amended their complaint to include claims for Sex Trafficking pursuant to 18 U.S.C. §§ 1595 and 1591, as well as Obstruction of Enforcement pursuant to 18 U.S.C. §§ 1591, 1595, at 1591(d). (*See* Doc. 21.) Now, Plaintiffs again move to amend their complaint, this time adding class-action claims, factual allegations based on newly discovered facts, and claims against two Defendants—JCPD investigators Jeff Legault and Brady Higgins—based on such facts. (Doc. 93-1, at 1.) Defendants oppose Plaintiffs' motion to amend (Doc. 97).

## II. LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, if a party can no longer amend its pleading as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, "[t]he court should freely give leave when justice so requires." *Id.*; *see also Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) ("Because Rule 15(a)(2) directs courts to 'freely give leave when justice so requires,' the rule embodies a 'liberal amendment policy.'"). Denial of leave to amend may nevertheless be appropriate when there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Leave to amend ultimately lies within the Court's discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971).

## III. ANALYSIS

### A. Delay, Bad Faith, & Dilatory Motive

Defendants first contend that Plaintiffs' "constant amendments have delayed discovery, and particularly since the Plaintiffs have still not identified themselves or most of the individuals referenced in their complaints, impeded the Defendants' ability to defend these claims." (Doc. 97, at 6.) Essentially, Defendants argue Plaintiffs intentionally forestalled the procession of this case by withholding identifying information and continuing to amend their complaint.

"Delay by itself is not sufficient reason to deny a motion to amend." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001); *see also Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) ("Delay that is not intended to harass the defendant is not in itself a

permissible reason to refuse leave to amend.”). Rather, “[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.” *Wade*, 259 F.3d at 458–59 (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). Denial of leave to amend requires “at least some significant showing of prejudice to the opponent.” *Janikowski*, 823 F.2d at 951.

In determining what constitutes prejudice, courts consider whether assertion of the new claim would “require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.” *Phelps v. McClellan,* 30 F.3d 658, 662–63 (6th Cir. 1994). In *Wade*, the Sixth Circuit affirmed the district court’s finding of prejudice where the dispositive-motion deadline had already passed, dispositive motions had already been filed, and significant discovery had already been conducted. 259 F.3d at 459; *see also Duggins v. Steak ‘N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (“In giving its reasons for denial of leave to amend, the district court stressed that both the discovery deadline and the dispositive motion deadline had passed.”).

In this case, because of events that have transpired since Defendants filed a response, their release-of-information argument is now moot. Namely, Plaintiffs have since provided Defendants with their identities, as confirmed by the parties at the status conference held before the Court on February 20, 2024. When asked at the conference if Defendants wished to refile their response now that they have this information, Defendants declined.

There is also no reason to believe Plaintiffs’ repeated amendments were made in bad faith or for dilatory purposes. The new complaint adds class-based claims and two Defendants in light of evidentiary discoveries made since the filing of the first amended complaint. (Doc. 93-1, at

3.) The subject of this case—an alleged conspiracy between JCPD and a serial rapist—is complex and sensitive, and it is reasonable to expect that not all victims who wish to participate in the suit will come forward at an early stage in the litigation. Plaintiffs' second amended complaint includes class-based claims to account for this reality and represents that this change will allow for streamlined discovery. Nothing in the record suggests Plaintiffs dragged their feet in moving to amend after uncovering new evidence and speaking with additional victims; on the contrary, Plaintiffs represent the evidence "was obtained in September–November 2023," and the present motion was first filed in November. (Doc. 101, at 3.)

Even if Plaintiffs' actions slowed litigation, "delay alone will not justify the denial of leave to amend the complaint." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005) (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). And Defendants' insistence they suffered significant prejudice due to the delay rings hollow. *See Janikowski*, 823 F.2d at 951. Plaintiffs' amendments have not prevented Defendants from engaging in discovery or preparing for trial, and the case remains at an early stage of litigation. *Cf. Wade*, 259 F.3d at 459 (affirming a finding of prejudice when the dispositive motion deadline had passed and significant discovery had been conducted). Therefore, the Court will not deny Plaintiffs' motion to amend on this basis.

**B. Futility**

Defendants next argue Plaintiffs' inclusion of class-based claims and claims under the Trafficking Victim Protection Reauthorization Act ("TVPA"), 18 U.S.C. § 1595, *et seq.*, are futile. (Doc. 97, at 11.) "A proposed amendment is futile if the amendment could not withstand a 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d

376, 382–83 (6th Cir.1993)). In determining whether an amendment would survive a 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the Court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). After sorting the factual allegations from the legal conclusions, the Court considers whether the factual allegations, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Just because a court can deny a motion to amend on futility grounds does not mean it must. *See Aladdin Temp-Rite, LLC v. Carlisle FoodService Prods. Inc.*, No. 3:13-0650, 2014 WL 12774872, at *2 (M.D. Tenn. June 16, 2014) (citing *Foman v. Davis*, 371 U.S. at 182) ("[E]ven if a claim may be futile, the Court is not required to disallow the amendment."). Indeed, some courts elect to take up more substantive arguments at the dispositive-motion stage rather than on a motion to amend. *See All Pro Brace, LLC v. United States Dep't of Health & Hum. Servs.*, No. 1:21-cv-00896, 2022 WL 17067459, at *3 (N.D. Ohio Nov. 17, 2022) ("Though [the plaintiff's] newly asserted affirmative defenses *may* ultimately prove futile in the face of [the defendant's] arguments, the Court prefers to address [the defendant's] substantive

arguments as to the validity of [the plaintiff's] execution of the Indemnity Agreement on a dispositive motion, rather than on a Motion to Amend."); *see also Durthaler v. Accts. Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) ("Consequently, rather than determining the actual legal sufficiency of the new claim, in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow."); *Vanburen v. Ohio Dep't of Pub. Safety*, No. 2:11–cv–1118, 2012 WL 5467526, at *4 (S.D. Ohio Nov. 9, 2012) (finding that, in light of the "procedural roadblock" posed by substantive issues on a motion to amend, the better course would be to allow amendment of the complaint with the understanding that a motion to dismiss may follow filing of the amended complaint); *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*, No. 3:15-1100, 2017 WL 6381434, at *3 (M.D. Tenn. Dec. 14, 2017) ("[I]t is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss.") (citation and internal quotation marks omitted).

***i. Class Claims***

Plaintiffs' proposed second amended complaint adds claims on behalf of two putative classes: the Sex Trafficking Survivor Class and the Reporter Survivor Class. (Doc. 93-1, at 50–55.) The proposed definition for the Sex Trafficking Survivor Class is "[a]ll individuals, including minors, who were sexually abused, drugged, or trafficked by Sean Williams or [his co-conspirator] Alvaro Fernando." (*Id.* at 50.) The proposed definition for the Reporter Survivor Class is "[a]ll women, including minors, who reported sexual abuse or trafficking by any person to JCPD from January 1, 2018, to April 25, 2023." (*Id.* at 51.) Defendants argue the proposed

class-based claims are futile due to their overbreadth "and lack of commonality and typicality." (Doc. 97, at 12.)

Under Rule 23(a), a plaintiff seeking class certification must first show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Dukes*, 564 U.S. at 349 (describing the requirements as "numerosity, commonality, typicality, and adequate representation"). Plaintiffs must demonstrate that they meet all four requirements. *See Davis v. Cintas Corp.*, 717 F.3d 476, 483 (6th Cir. 2013) ("If the plaintiff does not satisfy each of these requirements, her class claim fails at the threshold."); see also *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("Subsection (a) of Rule 23 contains four prerequisites which must all be met before a class can be certified."). Given the gatekeeping function of Rule 23, a district court "should not certify a class unless its rigorous analysis shows that not one or two, but all four Rule 23(a) prerequisites are met." *In re Ford Motor Co.*, (citing *Davis v. Cintas Corp.*, 717 F.3d 476, 484 (6th Cir. 2013)) (internal quotation marks omitted). Once the four threshold requirements are met, then "the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *Id.*

To clear the commonality bar, there need only be one common question of law or fact amongst plaintiffs. *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (internal citation and quotation marks omitted) ("Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class—though that question must be a

common issue[,] the resolution of which will advance the litigation."). Such a showing requires demonstration "that their claims depend on a common contention that is of such a nature that it is capable of classwide resolution." *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). Given that "any competently crafted class complaint literally raises common questions," it is not so much the presence of a common question that warrants class treatment; rather, court should assess the potential for the generation of common answers that advance each class member's case in equal measure. *See Dukes*, 564 U.S. at 350, 349 (noting that the key question is whether the class action proceeding has the capacity to "generate common answers apt to drive the resolution of the litigation") (citations omitted); *see also Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (". . . named plaintiffs must show that their claims depend on a common contention that is of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (internal citation omitted)). Therefore, to evaluate commonality, the Court must first look to what questions need to be answered to advance the litigation. *See Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013) (stating that commonality requires "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation").

As a preliminary matter, Defendants' arguments—which center on whether the class's claims are resolvable by common proof—are better suited for opposing a class-certification motion. *See Momenta Pharms., Inc.*, 2017 WL 6381434, at *8 (noting that the defendant's futility arguments targeting the proposed amended complaint's class definition "broach precisely the types of issues that are better suited for a class certification determination (or at the very least a Rule 12(b)(6) analysis)"). Notwithstanding this observation, the Court will evaluate

Defendants' commonality and typicality arguments as to each proposed class.

**a. Sex Trafficking Survivor Class**

Defendants take issue with the first proposed class comprised of women harmed by Williams or Diaz-Vargas, arguing that members of the class suffered unique harms that are not resolvable by common evidence. (Doc. 97, at 13.) Specifically, Defendants contend that members of the Sex Trafficking Survivor Class "who did not report their alleged sexual assault to [JCPD] cannot be said to have suffered the same harm as a plaintiff who did." (*Id.*) Defendants also reason that "the statute of limitations defense will be unique and individualized to each class member," because the court will "need to conduct individualized inquiries to determine at what point in time each putative plaintiff was informed—or reasonably should have known—that [] she had a claim based on any alleged wrongdoing by [] Defendants." (*Id.*)

Neither of Defendants' arguments is compelling. Assuming the Sex Trafficking Survivor Class members suffered different types and degrees of harm, individual damage determinations alone do not preclude class certification. *See Davis v. GEICO Cas. Co.*, No. 2:19-cv-2477, 2021 WL 5877843, at *7 (S.D. Ohio Dec. 13, 2021) (citing *In re Whirlpool Corp.*, 722 F.3d 838, 861 (6th Cir. 2013)) ("Individual damage calculations do not preclude class certification."); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007) ("[T]he necessity of each plaintiff proving the amount of his or her damages is generally not an impediment to class certification."); *see also Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (quoting *In re Whirlpool Corp.*, 722 F.3d at 861) ("And in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, we concluded that 'when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.'").

Defendants' statute-of-limitations argument is also unconvincing at this stage of litigation. Based on the allegations of the proposed second amended complaint, the ten-year statute of limitations for claims brought under 18 U.S.C. § 1595 would not apply to *any* class member,[1] and the one-year statute of limitations for claims brought under 18 U.S.C. § 1983 would only begin accruing when AUSA Dahl filed a complaint on June 23, 2022, detailing JCPD's alleged misconduct. (Doc. 101, at 8–9.) Though Defendants may challenge the viability of this class through a later motion to dismiss or class-certification opposition, it is not apparent at this juncture that the potential class cannot meet certification requirements or suffers from irreparable defect. *See Jackson Cnty*, 2021 WL 3679507, at *3 (declining the strike class allegations when a defendant "fail[ed] to show that [the p]laintiff's class allegations suffer from an irreparable defect that renders class certification inappropriate."). Therefore, the Court will allow Plaintiffs to add claims on behalf of the proposed Sex Trafficking Survivor Class.

**b. Reporter Survivor Class**

Defendants similarly argue that the proposed Reporter Survivor Class is overbroad and lacks commonality. (Doc. 97, at 13.) According to Defendants, because the Reporter Survivor Class includes "*all* women who reported sexual abuse and trafficking by any person to JCPD from January 1, 2018 to April 25, 2023," including "women who[se] alleged assaults were investigated and/or resulted in an arrest," not all class members would have suffered an injury. (Doc. 97, at 13–14.)

[1] Plaintiffs do not allege that any of the relevant assaults occurred prior to 2018. (*See generally* Doc. 93-1.)

But being subjected to systemic sex-based discrimination is an injury. *See Card v. City of Cleveland*, 270 F.R.D. 280, 293 (N.D. Ohio 2010) ("Allegations of race or gender discrimination resulting from polic[i]es or practices are often 'by their very nature class suits, involving classwide wrongs' and 'common questions or law or fact are typically present.'"). Plaintiffs allege in their proposed second amended complaint that Reporter Survivor Class members, even those members who had their cases prosecuted, suffered injury due to JCPD's reliance "on gender-based stereotypes and bias, [which] result[ed] in discriminatory outcomes and a tendency to respond to women's allegations of sexual assault with undue skepticism." (Doc. 93-1, at 53.) Whether Plaintiffs can evidentiarily support this allegation will be borne out at a later stage of litigation. For now, it is sufficient to advance past the motion-to-amend phase. *See Jackson Cnty*, 2021 WL 3679507, at *3 (declining the strike class allegations when a defendant "fail[ed] to show that [the p]laintiff's class allegations suffer from an irreparable defect that renders class certification inappropriate.").

***ii. TVPA-Based Claims***

Defendants also challenge the sufficiency of Plaintiffs' claims brought under the TVPA, including a TVPA-obstruction claim under 18 U.S.C. § 1591(d). (Doc. 97, at 15; Doc. 101, at 13.) Plaintiffs allege that JCPD officers seized Williams's safe, which contained "$500,000.00 in cash," and returned it with only $81,000.00, thereby violating the TVPA by knowingly benefitting from the alleged sex-trafficking scheme by "effectively accept[ing] payments from Williams in furtherance of the conspiracy through the corrupt use search warrants and other unlawful collection efforts, including an extortion scheme." (Doc. 93-1, at 17.) Plaintiffs also allege Defendants obstructed a TVPA investigation in violation of § 1591(d) by interfering with AUSA Dahl's investigation of conduct that amounted to sex trafficking under the TVPA. (Doc.

101, at 14.)

As a threshold matter, the Court notes that the TVPA-based claims are not new. They appear in Plaintiffs' first amended complaint, the current operative complaint in this matter, which was filed as a matter of course. (Doc. 21, at 47–60.) The only difference in the proposed amended complaint as to the TVPA claims is that they are now brought against two additional Defendants, Legault and Higgins. (*See* Doc. 93-1, at 1.) Because it would be procedurally improper to rule on Defendants' futility arguments targeting extant claims absent a 12(b)(6) motion, the Court will not do so. *See Philadelphia Indem. Ins. Co. v. ABC Paving Co.*, No. cv 12-12527, 2013 WL 12182601, at *2 (E.D. Mich. Jan. 9, 2013) ("An amendment is futile when the *proposed amendment* fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).") (emphasis added) (citation omitted). Accordingly, the below analysis centers on the TVPA claims brought against the two proposed Defendants.

**a. TVPA-Violation Claim**

The TVPA provides a civil remedy for sex-trafficking survivors against two groups of people: (1) perpetrators (the person who directly participated in the survivor's sex trafficking); and (2) beneficiaries (any person who "knowingly benefits, or attempts or conspires to benefit financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in [sex trafficking]"). 18 U.S.C. § 1595(a). To state a claim for beneficiary liability under the TVPA, a plaintiff must plausibly allege the defendant: "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the [TVPA] as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise

violated the [TVPA]." *Doe by Doe v. Piraino*, No. 3:22-cv-00560, 2023 WL 5310556, at *6 (M.D. Tenn. Aug. 17, 2023) (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)).

Here, Plaintiffs have not sufficiently alleged a TVPA claim against Defendant Legault or Higgins. In the proposed second amended complaint, Plaintiffs allege that "JCPD officers, including Defendant Sparks, extorted cash from Williams through his coconspirator," and point to Williams's Facebook post announcing he "made $2,000 a week payments to Sparks and other unnamed officers using bogus fraudulent 1099 names and forged owner's draws." (Doc. 93-1, at 13.) While this may be sufficient to state a claim for beneficiary liability under the TVPA against Defendants Sparks,[2] nowhere in the proposed second amended complaint—barring general references to "JCPD officers"—do Plaintiffs identify other Defendants who received some benefit from the alleged sex-trafficking scheme. *See Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *1 (6th Cir. Nov. 6, 2023) (affirming a district court's dismissal of a § 1983 claim based on the plaintiff's failure to "allege specific facts about specific defendants") (quoting the district court); *see also MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, 594 F. Supp. 3d 947, 959 (S.D. Ohio 2022) ("Nonetheless, in order to state a claim under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must allege that their injury was caused by a specific Defendant. Plaintiffs cannot rely on discovery to provide the facts necessary to satisfy *Iqbal* and

---

[2] Defendants argue that Plaintiffs have not stated a claim against Defendant Sparks, because "the alleged scheme [referenced in the Facebook post] did not involve sex trafficking." (Doc. 97, at 18.) But Plaintiffs allege that Sparks interfered with the investigation into Williams's sex-trafficking conspiracy for the purposes of receiving a financial benefit (Doc. 93-1, at 25–31), and it is sufficient for purposes for the TVPA to allege a defendant received a financial benefit indirectly related to the trafficking scheme. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio, 2019) (rejecting a more specific definition of financial benefit under the TVPA that would require showing that the trafficker provided the benefits to the defendant because of the defendant's facilitation of the sex trafficking).

*Twombly*.") (citations omitted). Therefore, the Court will deny Plaintiffs' motion to amend as to the TVPA claims against Defendants Legault and Higgins.

**b. TVPA-Obstruction Claim**

Section 1591(d) of the TVPA deems it unlawful to "obstruct[], attempt[] to obstruct, or in any way interfere[] with or prevent[] the enforcement of" the TVPA. In other words, the statute creates a cause of action for obstructing enforcement of the TVPA. Elements of a TVPA-obstruction claim are as follows: (1) a defendant must "know of an effort to enforce the TVPA"; and (2) "intentionally obstruct or attempt to obstruct that enforcement effort." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 2023 WL 3167633, at *11 (S.D.N.Y. May 1, 2023) (citing *United States v. Farrah*, 766 F.3d 599, 612 (6th Cir. 2014)).

At this early stage, Plaintiffs allege facts sufficient to allow the addition of TVPA-obstruction claims against Defendants Legault and Higgins. According to Plaintiffs, AUSA Dahl investigated conduct that amounted to sex trafficking under the TVPA, and Defendants were aware of this fact. (Doc. 101, at 14.) In an attempt to impede the investigation, Plaintiffs allege Defendant Legault "knowingly retaliated against Female 9, a Williams' survivor and a witness in [Dahl's investigation]" by "physically assaulting her, arresting her, and ultimately causing her eviction from Johnson City Public Housing." (Doc. 93-1, at 59.) Plaintiffs also allege Defendant Higgins "had actual knowledge of rape complaints against Williams" but refused to investigate those reports to protect Williams. (*Id.* at 24, 28.) Though it is presently unclear whether Dahl was endeavoring "to enforce the TVPA" when she began to investigate Williams, Defendants have not shown amendment of TVPA-obstruction claims against Defendants Legault and Higgins would be futile.

### C. 8(a) Compliance

Finally, Defendants argue Plaintiffs failed to comply with Federal Rule of Civil Procedure 8(a)'s pleading standard because of the length and format of Plaintiffs' proposed second amended complaint. (Doc. 97, at 23–24.) The document's length, while formidable, is necessary to allege the facts of a simultaneously complex and delicate matter. (*See generally* Doc. 93-1.) The Court will not deny Plaintiffs' motion to amend on this basis.

## IV. CONCLUSION

For the aforementioned reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' motion to amend (Doc. 93). Accordingly, Plaintiffs are **ORDERED** to **REFILE** a second amended complaint that is consistent with this Court's ruling **within seven days** of the entry of this order.

**SO ORDERED.**

**/s/ *Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**