IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| B.P., H.A., and S.H., individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | No. 2:23-cv-71 |
| CITY OF JOHNSON CITY, TENNESSEE, a governmental entity, ) ) ) | Judge McDonough |
| ) | Magistrate Judge Wyrick |
| KARL TURNER, individually and in his official capacity as Chief of the Johnson City Police Department, ) ) ) ) ) | JURY TRIAL DEMAND |
| KEVIN PETERS, individually and in his official capacity as Captain of the Johnson City Police Department, ) ) ) ) | |
| TOMA SPARKS, individually and in his official capacity as Investigator of the Johnson City Police Department, ) ) ) ) | |
| JUSTIN JENKINS, individually and in his official capacity as Investigator of the Johnson City Police Department, ) ) ) ) | |
| JEFF LEGAULT, individually and in his official capacity as Investigator of the Johnson City Police Department, ) ) ) ) | |
| BRADY HIGGINS, individually and in his official capacity as Investigator of the Johnson City Police Department, and ) ) ) ) | |
| DOES 8-20, inclusive, ) ) | |
| Defendants. ) | |

# MEMORANDUM OF LAW IN SUPPORT OF THE PARTIAL MOTION TO DISMISS FILED THE SECOND AMENDED COMPLAINT FILED ON BEHALF OF DEFENDANT TOMA SPARKS

Investigator Toma Sparks ("Inv. Sparks"), in his individual capacity, respectfully seeks dismissal of Count VI in the Second Amended Complaint (D.E. 121) (herein after the "Complaint") against him. In support of this motion, Inv. Sparks submits the following memorandum of law.

## I. PRELIMENARY STATEMENT

Plaintiffs' Complaint raises several claims against Inv. Sparks in his individual capacity. (*See generally*, D.E. 121).[1] Investigator Sparks vigorously denies the veracity of all claims against him. In this motion, Inv. Sparks moves for dismissal of the substantive due process claim contained in Count VI of the Complaint under Rule 12 of the Federal Rules of Civil Procedure.

The Plaintiffs claim that Inv. Sparks violated their right to substantive due process both directly with his alleged conduct and by allegedly increasing the risk that Williams would assault them. (D.E. 121 ¶¶ 382 – 388). The claims are ripe for dismissal as there are no factual allegations that Inv. Sparks took any actions directed towards the Plaintiffs that would violate their right to substantive due process, and the Plaintiffs have no substantive due process right to be protected from a third party. Even if the alleged conduct could feasibly state a claim of violating substantive due process, such a

---

[1] Throughout this memorandum the use of the collective term "Plaintiffs" refers to B.P., H.A., and the classes they represent. S.H. and the class she represents make no claims against Inv. Sparks individually.

2

violation would not be a clearly established constitutional right, entitling Inv. Sparks to qualified immunity.

## II. STATEMENT OF FACTS

All facts included in this statement of fact are sourced exclusively from the Complaintfiled by the Plaintiffs.[2] (D.E. 121). Sean Williams was a resident of Johnson City, Tennessee who is alleged to have drugged and/or sexually assaulted dozens of women and at least two children since at least 2018 until 2021. (D.E. 121 ¶ 18). Williams owned and operated a business, Glass and Concrete Contracting LLC, which is believed to both provide legitimate business services and serve as a front to engage in narcotics trafficking. (D.E. 121 ¶¶ 20 – 21). At some unspecified point in time, JCPD officers are alleged to have accepted regular payments from Williams through his business and unlawfully seized currency from Williams through the corrupt use of a search warrant as part of a quid pro quo deal with Williams to shield him from criminal investigations. (D.E. 121 ¶¶ 58 -59).

While incarcerated, posts began to appear on Williams Facebook page. (D.E. 121 ¶ 62). It is believed that Williams, while in jail, would type the messages on a contraband cell phone and then send them to an unidentified female co-conspirator to post on his Facebook page as a message from him. *Id.* One of these posts made on September 2, 2023, accuses Inv. Sparks and other unnamed JCPD officers of extorting Williams's former business partner after she was caught selling cocaine. (D.E. 121 ¶ 63, and the immediately following image of a portion of the September 2, 2023, Facebook post). Williams, through his company, would allegedly use falsified business documents

---

[2] For the purposes of this motion only, all well pleaded factual allegations in the Complaint are taken as true.

to pay Inv. Sparks and other JCPD officers $2,000 per week. *Id*. There is no allegation in the Complaintas to the date that this alleged extortion scheme began.[3] *Id*.

At approximately 2:34 a.m. on September 19, 2020, Female 3 fell out of Williams's apartment window, suffering life threatening injuries. (D.E. 121 ¶ 64). Investigator Sparks was not the first to respond to the scene, but after he arrived, he along with Investigator Justin Jenkins took control of the scene. (D.E. ¶ 67). Investigator Sparks and Jenkins escorted Williams to the police station to interview him, and during that time, his apartment was left unsecured, potentially allowing co-conspirators to remove any evidence of criminal activity. (D.E. 121 ¶¶ 68 – 69). Investigator Jenkins interviewed Williams for approximately thirty minutes, during that time, Williams had access to his cellphone. (D.E. ¶ 68). Williams was left alone in the interview room for a time when he made calls and apparently deleted all data from his cellphone. *Id*. At the end of the interview, Inv. Sparks seized the phone and soon after applied for a search warrant for Williams's apartment. *Id*.

When JCPD officers arrived, the surveillance cameras they saw a few hours earlier were taken down and hidden in a closet. (D.E. 121 ¶ 71). JCPD officers seized several digital devices from Williams's apartment, which were never searched. (D.E. 121 ¶ 73). According to the Second Amended Complaint, if the devices had been searched, they would have found images and videos of Williams committing sexual assault. (D.E. 121 ¶ 74). These seeming missteps in the investigation of Female 3's fall are alleged to have been purposeful actions taken to cover up their extortion scheme. (D.E. 121 ¶ 80).

---

[3] Investigator Sparks is unable to speculate as to when this alleged scheme may have begun because he maintains that such a scheme never existed. It is unknown whether any Plaintiffs were assaulted by Williams before this alleged scheme began.

4

During the investigation on September 19, 2020, Inv. Sparks seized a safe belonging to Williams. (D.E. 121 ¶ 81). Investigator Sparks received a search warrant for the safe. Williams claims in the above referenced Facebook post that there was $500,000 in the safe before Inv. Sparks and other JCPD officers searched the safe, and only $81,000 remained in the safe afterwards. (D.E. 121 ¶ 86 -87). The Complaint alleges that JCPD officers had an implied agreement with Williams to help facilitate his criminal activity in exchange for the cash in the safe. (D.E. 121 ¶ 87).

On November 7, 2019, B.P. became the first person to file a report with the JCPD accusing Williams of using drugs to sexually assault women. (D.E. 121 ¶¶ 97 – 101). Over the next two years, at least six more complaints accusing Williams of drugging and/or sexually assaulting women were filed with the JCPD. (D.E. 121 ¶¶ 103). On October 23, 2020, Female 9 reported her rape by Williams to Inv. Sparks when the nurse administering the rape kit gave her Inv. Sparks's phone number. (D.E. 121 ¶ 109). Investigator Sparks allegedly told Female 9 to wait to make a police report until after the rape kit results came back. (D.E. 121 ¶ 111). Female 9 attempted to call Inv. Sparks at least two more times, but she never heard from him again. (D.E. 121 ¶ 112). On November 24, 2020, Female 12 reported her sexual assault by Williams to the local FBI field office who called Inv. Sparks. (D.E. 121 ¶¶ 130 - 34). Investigator Sparks accompanied Female 9 to the hospital to receive a rape kit, and then Inv. Sparks and a female investigator and/or attorney spoke with Female 9 who indicated she wanted to press charges. (D.E. 121 ¶¶ 135 - 36). Female 9 received the results of her rape kit, and no charges have been filed against Williams for his assault of her. (D.E. 121 ¶ 138).

In the spring of 2021, Inv. Sparks called B.P. to tell her that the results of her rape kit had returned showing that she had benzodiazepine in her system and the DNA of

another person was found. (D.E. 121 ¶ 147). B.P. alleges that Inv. Sparks told her that they would need Williams's consent to get a warrant for his DNA, referred to Williams as untouchable, and said that JCPD would likely be unable to protect her from Williams if she pressed charges (D.E. 121 ¶¶ 148 – 49). Two years after this conversation in June 2023, Sparks used facts from B.P.'s case to author a search warrant for Williams's DNA. (D.E. 121 ¶ 153). No one told B.P. that Inv. Spark's had authored a search warrant using her information. (D.E. 121 ¶ 154). B.P. holds the belief that her conversation with Sparks and his authoring the search warrant for Williams's DNA were attempts to intimidate her from pursuing legal action related to her sexual assault by Williams. (D.E. 121 ¶¶ 145 – 54).

On November 13, 2020, Inv. Spark's requested that former Special Assistant United States Attorney ("SAUSA") Kateri Dahl pursue a charge of "felon in possession of ammunition" charge against Williams. (D.E. 121 ¶ 156). SAUSA Dahl, upon learning about the sexual abuse allegations against Williams, began investigating those as well. (D.E. 121 ¶ 157). The Complaintalleges that Inv. Sparks interfered with SAUSA Dahl's investigation by falsely telling her a victim was uncooperative. (D.E. 121 ¶ 163). SAUSA Dahl received a sealed federal indictment for Williams for a felon in possession of ammunition charge. (D.E. 121 ¶ 172). Allegedly Inv. Sparks and other JCPD officers improperly failed to execute the arrest warrant for an unreasonable amount of time. *Id*.

### III. STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court must determine

whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. LAW AND ARGUMENT

### A. The Plaintiffs cannot state a claim for their substantive due process rights being violated by the actions they have alleged.

"Fundamentally, the substantive component of the due process clause insulates citizens against the arbitrary exercise of governmental power. Accordingly, conduct of a law enforcement officer **towards a citizen** which shocks the conscience denies the victim fundamental substantive due process." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (*citing*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833) (emphasis added). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Lewis*, 523 U.S. at 849 (*quoting*, *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (emphasis in original).

"The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interest of which the government itself may not deprive the individual." *Deshaney v. Winnebago*

7

*Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Generally, a governmental actor's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. There is no right under the Constitution to have crimes investigated or prosecuted. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *Zambon v. Crawford*, No. 3:17-cv-507, 2019 U.S. Dist. LEXIS 152741, at *21 (E.D. Tenn. Sep. 9, 2019); *White v. Greene Cty. Sheriff's Dep't*, No. 2:09-CV-211, 2014 U.S. Dist. LEXIS 91484, at *24-25 (E.D. Tenn. July 7, 2014); *Mason v. Stacey*, No. 4:07-cv-43, 2009 U.S. Dist. LEXIS 26139, at *27-28 (E.D. Tenn. Mar. 25, 2009).

   1. <u>Investigator Sparks did not take any affirmative actions to deprive any plaintiff of life, liberty, or property that would shock the conscience.</u>

The Plaintiffs allege that Inv. Sparks took payments from Sean Williams in exchange for not investigating his crimes and/or interfering with any investigation into his crimes, and that this alleged arrangement was a conscience shocking affirmative act that violated their substantive due process rights. (D.E. 121 ¶¶ 382-88). Even if the allegations were true, that conduct would not be directed towards the Plaintiffs to deprive them of life, liberty or property.

Actions by law enforcement do not violate a person's right to substantive due process when the action is not directed towards that person. *Claybrook*, 199 F.3d at 359. An individual has no right or interest in the investigation of the alleged illegal activity of another. *Mitchell*, 487 F.3d at 378. Even if there was a constitutionally protected right in the investigation of another, soliciting a bribe does not "shock the conscience" or create a claim for substantive due process, even when the bribe was solicited directly from the plaintiff raising a substantive due process claim. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012).

In *EJS Props., LLC v. City of Toledo*, a member of the City Council allegedly solicited a bribe of $100,000 from a developer to get their request to rezone a property approved. *Id.* at 851-52. The Court in *EJS Props., LLC*, held that there was no substantive due process violation in the denial of the rezoning application because the plaintiff had no protected interest in getting their property rezoned. *Id.* at 862. The court continued to hold that even if a constitutionally protected interest existed:

> [T]he solicitation of a bribe by a public official does not shock our collective conscience. . ... [W]e simply cannot say that his behavior is so shocking as to shake the foundations of this country. While appellees' alleged conduct was reprehensible, it was not that type of conduct which so shocks the conscience that it violates appellant's substantive due process rights.

*Id.*

Plaintiffs allege that Inv. Sparks accepted payment from Sean Williams to not investigate Williams's criminal activity and/or interfere with any criminal investigation into him. Plaintiffs claim that Inv. Sparks failing to investigate Williams violated their substantive due process rights when Williams sexually assaulted them. However, the case law is clear the Plaintiffs had no constitutionally protected interest in the investigation of Williams or any person. *Mitchell*, 487 F.3d at 378 (6th Cir. 2007). The alleged bribery by or extortion of Williams is in no way an action directed towards any plaintiff in this case and does not impact their interest in his investigation. *See, Claybrook*, 199 F.3d at 359; *Mitchell*, 487 F.3d at 378. Even if the extortion of Williams was an affirmative act directed towards the Plaintiffs, they do not have a constitutionally protected interest in the investigation of Williams and the acceptance of a bribe would not be conscience shocking. Any one of these three factors would be sufficient to kill Plaintiffs' claim.

Plaintiffs cannot state a claim for a violation of their right to substantive due process based on allegations that Inv. Sparks did not investigate Williams in exchange for bribes.

> 2. <u>Plaintiffs cannot state a substantive due process claim against Inv. Sparks for violence or harm inflicted on them by Williams.</u>

Plaintiffs allege that Inv. Sparks's actions increased the likelihood of Williams assaulting them, and, in doing so, Inv. Sparks violated their right to substantive due process when Williams did assault them. (D.E. 121 ¶¶ 382 -88). Contrary to that assertion, Inv. Sparks had no constitutional obligation to protect any of the Plaintiffs from Williams.

> As a general proposition the Due Process Clause is a
>
> > limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without due process of law, but its language cannot fairly be extended to impose affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Deshaney*, 489 U.S. at 195. The Sixth Circuit has recognized two exceptions to this general rule, neither of which are implicated by the facts alleged in the Complaint. *See*, *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006).

The first exception is the special relationship exception, which imposes an affirmative duty on the state to protect an individual when it has restrained the liberty of a person rendering her unable to care for herself. *Id*. The special relationship exception only applies when the individual is in the government's custody or otherwise restrained by it. *Id*. The special relationship exception clearly does not apply in this case, because

10

there are no allegations that any of the class members were restrained by or in the custody of Inv. Sparks when they were assaulted by Williams.

The second exception is the state created danger exception, which can impose an affirmative duty to protect under the Due Process Clause when the State creates or greatly increases the risk of harm to the person. *Id.* The state created danger exception requires each of the following elements:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Id.* Establishing constitutional liability under the state created danger exception is a demanding standard placing a high burden on an individual bringing such a claim. *Id.* at 691.

> Whether the conduct of government officials in some cases should be treated as a failure to act or as action may be a difficult question in the abstract, but we have always treated governmental conduct as falling on the inaction side of the line, which it does not create or increase the risk of peril posed by the private actor.

*Id.* (cleaned up).

In *Jones*, officers arrived at the scene before a drag race could occur, and for some reason instead of stopping the race, the officers encouraged the drag race to proceed. *Jones*, 438 F.3d at 692. There was even testimony that the drag racers planned to abandon the race once the officers arrived and would not have raced if the officers told them not to do so. *Id.* One of the drivers lost control of his vehicle and crashed into some of the spectators killing Ms. Jones. *Id.* at 689. The Sixth Circuit held that the officers encouraging the race to proceed was not an affirmative act that put the plaintiff

at a greater risk because the race would have proceeded with the same associated risks to Ms. Jones if the officers were never on the scene. *Id.* at 692.

Even if there was an affirmative act, the second prong requires that the "state's action place the victim specifically at risk, as distinguished from a risk that affects the public at large." *Id.* at 696. The Sixth Circuit has only found a state created danger existed when "the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." *Id.* A suit may not be brought under the state created danger theory "when the victim was not identifiable at the time of the alleged state action/inaction." *Id.* at 697. It is not enough for a plaintiff to claim that "a more particular sub-class of the public" as a group of individuals was put at greater risk by government action. *Id.* In *Jones*, there were approximately 150 spectators at the race. *Id.* The *Jones* Court held a crowd of 150 people in the immediate vicinity of a dangerous event "plainly is more than a handful of people specially put at risk by state action or inaction."

In the present case, Plaintiffs cannot meet the high burden of stating a substantive due process claim under the state created danger exception. The Complaint alleges that Inv. Sparks did not investigate Sean Williams and/or interfered with criminal investigations of Williams, allowing him to continue to engage in criminal activity in exchange for money. Even if the allegations were true, the Plaintiffs cannot show that this was an affirmative act that increased the risk of them specifically being victimized by Sean Williams. First, it seems likely that Williams would have engaged in his criminal predatory behavior without any assurances that Inv. Sparks or anyone at

12

JCPD would shield him from criminal investigations.[4] Secondly, even if the allegations against Inv. Sparks qualified as an affirmative act, the Complaint makes it clear that any increased risk of harm would be to the public at large. The Complaint alleges that Williams drugged and/or assaulted multiple women and young children. The group placed in an increased risk from the alleged affirmative act would be any woman or child Williams might encounter both within Johnson City and anywhere he may have traveled. This group is many times greater than the crowd of 150 people lining the street to watch a drag race in *Jones*.

Plaintiffs did not plead any facts to create an affirmative duty to protect them from the criminal actions of a third party. Therefore, their right to substantive due process could not have been infringed, and Count VI should be dismissed.

## B. Investigator Sparks retrain qualified immunity for the claimed violation of substantive due process.

Even assuming arguendo that the Complaint plausibly states a claim of a substantive due process violation, the Plaintiffs cannot overcome Inv. Sparks's qualified immunity from suit. The allegations in the Complaint taken as true do not establish that Inv. Sparks violated any plaintiff or class member's constitutional rights that were clearly established at the time of the alleged violation.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "If officers of reasonable

---

[4] In fact, this is what Inv. Sparks avers occurred as he once again vehemently denies receiving any payments for any reason from Williams or having any knowledge of any other JCPD officer doing so.

competence could disagree on the issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 349 (1986).

> Whether government officials performing discretionary functions are entitled to qualified immunity involves two questions: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.

*McKenna v. Edgell*, 617 F.3d 432, 438 (6th Cir. 2010) (quoting *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (internal quotations omitted).

> The focus of the inquiry is not whether the claimed constitutional right was established on a general level, but whether on the specific facts of the case reasonable officials could disagree on whether the particular conduct under scrutiny violated the Constitution. The plaintiff and the court have the burden of identifying binding precedent from the Supreme Court, the Sixth Circuit or the district in which the court sits that unequivocally indicates the conduct in question was unconstitutional.

*Gratsch v. Hamilton County*, 12 Fed. Appx. 193, 202 (6th Cir. Ohio 2001) (internal citations omitted).

Qualified immunity is a question of law. *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005); *Gardenhire v. Schubert*, 205 F.3d at 310. Courts employ a three-step inquiry to determine whether qualified immunity is proper: (1) whether, based upon the applicable law, a constitutional violation has occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) even if the defendant violated a clearly established constitutional right, whether the official's actions were objectively reasonable under the circumstances. *Radvansky v. City of Olmsted Falls, et. al.*, 395 F.3d 291, 302 (6th Cir. 2005); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-901 (6th Cir. 2004) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)); *Sample v. Bailey*, 409 F.3d 689, 695-696 (6th Cir. 2005); *Gardenhire v. Schubert*, 205 F.3d at 310-311. It is the

Plaintiffs' burden to establish each of these elements, and the absence of any of these elements means that the Plaintiffs' claim must be dismissed as a matter of law. *Radvansky*, 395 F.3d at 302.

Assuming *arguendo* that Inv. Sparks violated any of the Plaintiffs' constitutional rights, the Plaintiffs cannot prove that Inv. Sparks violated a clearly established constitutional right at the time of their purported assaults by Williams. A clearly established right "is one that is sufficiently clear that every reasonable official would have understood what he was doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). It must be particularized to the facts of the case. *White v. Pauly*, 580 U.S. 73, 79 (2017) (relying on *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, unreasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The existing applicable precedent "must have placed the statutory or constitutional question beyond debate." *Id*.

It is true that the Plaintiffs alleged that Inv. Sparks engaged in illegal activity in extorting or taking bribes from Williams. However, the only person who would have a clearly established right being violated would be Williams for being extorted by the police. These Plaintiffs cannot sidestep the fact that none of Inv. Sparks's alleged conduct would violate any of their clearly established constitutional rights by alleging that he violated the rights of someone not involved in this complaint. What matters here is whether it was clearly established that accepting payments to not criminally investigate an individual would violate the constitutional rights of anyone who that individual later victimized. As explained earlier in this memorandum, the Plaintiffs have

15

not alleged facts against Inv. Sparks that would violate their right to substantive due process under current Sixth Circuit precedent. Assuming arguendo that the Court were to find that the understanding of substantive due process in this circuit should be broadened to include the sort of conduct alleged by the Plaintiffs, Inv. Sparks would still be entitled to qualified immunity.

Even if the allegations in the Complaint could be found to violate the substantive due process rights of these Plaintiffs, it is abundantly clear that it was not clearly established that the alleged conduct would violate these Plaintiffs' substantive due process rights.

## V. CONCLUSION

Based on the foregoing, Inv. Sparks respectfully requests that this Court dismiss the substantive due process claims found in Count VI of the Complaint against him with prejudice and for any other relief that this Court deems fit.

Respectfully submitted,

*/s/ Benjamin C. Allen*
Kristin E. Berexa, BPR# 14833
Benjamin C. Allen, BPR #35923
**Farrar | Bates | Berexa**
12 Cadillac Drive, Suite 480
Brentwood, Tennessee 37027
(615) 254-3060
kberexa@fbb.law
ballen@fbb.law
*Counsel for Toma Sparks*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 15th day of March 2024, a true and correct copy of the foregoing has been forwarded via the Court's electronic notification system to:

Heather Moore Collins
Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Suite 320
Brentwood, TN 37027
615-724-1996
Email: heather@hmccivilrights.com
ashley@hmccivilrights.com
*Attorneys for Plaintiffs*

Vanessa Baehr-Jones
Advocates for Survivors of Abuse
4200 Park Blvd., No. 413
Oakland, CA 94602
Email:
vanessa@advocatesforsurvivors.com
*Pro Hac Vice Attorney for Plaintiffs*

Kevin Osborne
Elizabeth Kramer
Erickson Kramer Osborne LLP
44 Tehama St.
San Francisco, CA 94105
Email: kevin@eko.law
Email: elizabeth@eko.law
*Pro Hac Vice Attorneys for Plaintiffs*

Thomas J. Garland, Jr.
Milligan & Coleman, PLLP
230 W Depot St.
Greeneville, TN 37743
Email: tgarland@milligancoleman.com
*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his individual capacity*

Emily C. Taylor
Watson Roach Batson & Lauderback
P.O. Box 131
Knoxville, TN 37901-0131
(865) 637-1700
Email: etaylor@watsonroach.com
*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his Individual Capacity*

K. Erickson Herrin
Herrin McPeak & Associates
515 E. Unaka Avenue
P.O. Box 629
Johnson City, TN 37605-0629
(423) 929-7113
Email: lisa@hbm-lawfirm.com
*Attorney for the City of Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Toma Sparks, in his official capacity, and Kevin Peters, in his official capacity*

Daniel H. Rader IV
André S. Greppin
Moore, Rader, Fitzpatrick and York, P.C.
46 N. Jefferson Avenue
Cookeville, TN 38501
(931) 526-3311
Email: danny@moorerader.com
Email: andre@moorerader.com
*Attorney for Kevin Peters*

Reid A. Spaulding
Watson, Roach, Batson & Lauderback, PLC
P O Box 131
Knoxville, TN 37901
Email: rspaulding@watsonroach.com
*Attorney for Johnson City, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, Investigator Toma Sparks, in his official capacity and Justin Jenkins in his official capacity.*

17

| | |
|---|---|
| Keith H. Gant<br>Laura Beth Rufolo<br>Philip Aaron Wells<br>Robinson, Smith & Wells, PLLC<br>Suite 700, Republic Centre<br>633 Chestnut Street<br>Chattanooga, TN 37450<br>(423) 756-5051<br>*Attorneys for Justin Jenkin, Jeff Legault, and Brady Higgins* | Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>P: (901) 524-5000<br>E: jlakey@bpjlaw.com<br>*Attorney for the City of Johnson City, Tennessee* |

                                    */s/ Benjamin C. Allen*
                                       Benjamin C. Allen