IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE GREENEVILLE DIVISION

| | | |
|---|---|---|
| B.P., H.A., and S.H., individually, and on Behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| VERSUS | ) ) | No. 2:23-cv-00071-TRM-CRW |
| CITY OF JOHNSON CITY, TENNESSEE, *et al* | ) ) | |
| Defendants. | ) | |

### RESPONSE TO MOTION FOR PROTECTIVE ORDER

Plaintiffs' Motion for Protective Order[1] fails to articulate any good basis to deny discovery in this case. Their Motion makes no mention at all of the fact that all discovery in this case is *already* subject to a very specific and restrictive protective order. (Docket Entry 94, entered December 18, 2023, days after the Motion to Amend). This "joint" protective order was agreed upon by the very individuals subject to these subpoenas themselves, <u>while they were named Plaintiffs</u>, and even as they knew that they were seeking an amendment to drop into the putative class. Plaintiffs make absolutely no mention of that detailed protective order, which allows discovery material to be held confidentially. Plaintiffs certainly have made no mention as to why this existing order <u>that they agreed upon</u> is not adequate.

Citing dicta from an unreported case that did not hold (and cites no other case standing for the proposition), Plaintiffs' Motion misstates the procedural posture of the instant case as if to suggest that there was some requirement to obtain advance leave of

---

[1] Plaintiffs did not file a Memorandum of Law.

court to issue these subpoenas. There simply isn't. At the time the subpoenas were issued and service accepted, <u>none</u> of the persons subpoenaed were unnamed putative class members. On the contrary, <u>they were each named Plaintiffs</u>. There is simply no requirement to obtain advance permission to send discovery – in any form – to any named Plaintiff, which is precisely what occurred. Plaintiffs do correctly note that a single subpoena was issued to a non-party, who is a sister of Jane Doe 6, who was already represented by Plaintiffs' counsel and who has participated in this case with her parents, who are themselves parties. But this one non-party is not an unnamed putative class member either; she is simply a third-party witness with respect to her own communications and her own involvement in this very suit. She does not claim to be a victim of sexual assault herself, and is not a putative member of any class. There is never any requirement to obtain leave of court to send discovery to a third-party witness, either.

Even if these persons were not named Plaintiffs, there is not a recognized requirement to obtain leave of court to propound discovery to an unnamed putative class member. But as stated even if there were such a rule, that simply was not the case at the time this proper discovery was properly propounded.

Plaintiffs bear the burden of proving the need for a protective order under Rule 26(c), and other than mentioning the Rule itself, the Plaintiffs make no attempt whatsoever to make any showing as to any of the recognized grounds for a protective order under the Rule. Nor can they. By suing these Defendants and articulating their experiences in multiple iterations of the Complaint (and many in a lengthy press conference), these subpoenaed individuals certainly cannot claim "annoyance,

embarrassment, oppression, or undue burden or expense" from having to provide routine discovery as to their claims. Plaintiffs' attorneys have already admitted that the cell phones of these individuals have already been imaged (See Docket Entry 152-1), and simply need to be searched for the responsive information. They <u>agreed to search</u> them for <u>some</u> of the information; they simply don't <u>want</u> to provide search results for certain of the information. But there can be no undue burden where the searches themselves are already occurring.

Plaintiffs' attorneys themselves also claim to represent these individuals (as they certainly did when they filed a lawsuit on their behalf), and so they already have adequate counsel to present any legitimate privilege or other appropriate objections (subject to a privilege log).

The information is indisputably relevant to the case. These various Plaintiffs or former Plaintiffs have important information about the alleged scheme by Sean Williams that the lawsuit alleges that the City police had a duty to stop earlier than it did, and these individuals' communications with Mr. Williams that would shed light on that scheme. They have knowledge concerning reports to the police (Defendants), or lack thereof, that all informs what the police allegedly could have done or could have learned to address it. They have knowledge concerning their communications among themselves about this case or their relationship with Sean Williams (and who knew what and when), and with Kateri Dahl, that relates to what the police allegedly could have uncovered and when. This information is highly relevant to whether Plaintiffs themselves reasonably knew or

should have known about any alleged harm as applicable to their argument that the discovery rule saves this case from the clear application of the statute of limitations.

This information is also separately, and indisputably, relevant as to the nature of the basic requirements to even have a class action, as to whether the Rule 23 requirements such as commonality, typicality, and numerosity are met.

The discovery sought from these few individuals is neither oppressive nor unusual. Asking for communications by and among Plaintiffs themselves and with relevant parties such as the Defendants, Sean Williams, Kateri Dahl, and the authorities prosecuting Sean Williams, or about specific relevant topics, is extremely narrowly tailored and quite frankly essentially routine in any case.

The <u>only</u> unusual fact in this entire dispute is that these named Plaintiffs elected to shift (after receiving written discovery in November 2023) from being named Plaintiffs to putative class members, and apparently only because they received such discovery. But this single unusual factor has been squarely addressed by cases discussed by this Defendant in his Motion to Compel and memorandum (Docket Entry 152 and 153). *See In re Drassinower*, 2021 WL 3772328 (S.D. Cal. 2021) (holding "she also 'injected herself into the litigation' as a named plaintiff, who agreed to participate in the case in a representative capacity, and now cannot avoid discovery by withdrawing from the case."); *Burnett v. Ford Motor Co.*, 2015 WL 3540886 (S.D. W.Va. 2015); *Alliance For Global Justice v. District of Columbia*, 2005 WL 469593, at *3 (D.D.C. 2005).

There is simply no basis to deny this important discovery simply because these original Plaintiffs now choose to hide behind other Plaintiffs.

The standard is well-settled, that a party seeking a protective order must show "good cause," by showing specific facts:

> The rule requires that good cause be shown for a protective order. **This puts the burden on the party seeking relief to show some plainly adequate reason therefore. <u>The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.</u>** This recognizes that the existence of good cause for a protective order "is a factual matter to be determined from the nature and character of the information sought by deposition or interrogatory weighed in the balance of the factual issues involved in each action."
> If a protective order is denied, the court, under a provision added by the 1970 amendment, may go a step farther and issue an affirmative order compelling the discovery that was sought.

§ 2035 Procedure for Obtaining Protective Orders, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.) (footnotes omitted, emphasis added).

This Court, following Sixth Circuit precedent, has cautioned that there must be a showing of "specific harm" in order to grant a protective order. In *Maxchief Investments Ltd. V. Plastic Development Group, LLC*, 2017 WL 710956 (E.D.Tenn. 2017), the Court held that "thumbnail, generic characterizations do not amount to manifestation of a protectable" interest under the facts of that case. The Court held:

> Even in patent-infringement suits, when parties fail to show good cause under Rule 26(c), the Federal Circuit has, in multiple cases, refused their requests for protective orders. See, e.g., *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 489, 492–94 (Fed. Cir. 2008) (denying the plaintiff's motion for protective order because the plaintiff failed to show good cause under Rule 26(c)); *AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 78–79 (Fed. Cir. 2008) **("[B]road allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order."** (citations omitted)); *Northbrook Dig., LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 737 (D. Minn. 2008) (stating that "many courts recognize that patent prosecution can pose the type of competitive threat that justifies a protective order" but "[t]his is not to say that courts have universally prohibited lawyers and inventors involved in patent prosecution

from having access to opposing parties' confidential information"). More importantly, the Sixth Circuit—whose case law, again, governs the parties' request for a protective order here—has underscored the point that Rule 26(c)'s legal standard, though not insurmountable, is far from a mere technicality.

* * *

In this case, the parties fall short of making even a tepid illustration of good cause, having failed to identify any actual confidential information or articulate specific facts as to any particularized harm they would suffer without a protective order. The parties' motion is three sentences long, contains no mention of Rule 26(c)'s legal standard, and is unaccompanied by affidavits or declarations. The parties state that a protective order is necessary to safeguard information concerning their "sales," "customers," and "other things," which they consider to be confidential, [Mot. for Protective Order at 1], but these thumbnail, generic characterizations do not amount to a manifestation of a protectable trade secret or other commercial information that falls within Rule 26(c)(1)(G)'s domain, see *Nemir*, 381 F.3d at 550 (**stating that Rule 26(c) calls upon parties to make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements"** (quotation omitted)); see also *AmerGen Energy Co., LLC v. United States*, 115 Fed. Cl. 132, 140–41 (Fed. Cir. 2014) (stating that the plaintiff, in citing the need to protect its "cost structures, business opportunities, and market situations," made "no effort to identify specific information ... that would cause specific harm to its competitive interests" under Rule 26(c)); *Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 114 (Fed. Cir. 2004) (concluding that the plaintiff's statement that its "business and competitive position" would suffer without a protective order did not satisfy Rule 26(c) because it was "conclusory," "self-serving," and "nothing more than a mere ipse dixit"); *Wall Indus., Inc. v. United States,* 5 Cl. Ct. 485, 487–88 (Ct. Cl. 1984) (**stating that "it is axiomatic that nebulous and conclusory allegations of confidentiality ... are insufficient to carry the movant's burden."** (citations omitted)).

The parties also do not describe—not even in conclusory fashion—any type of harm that would result from discovery of any of the numerous materials that are subject to their Stipulated Protective Order. Operating under a standard that requires them to identify "specific facts" indicating that they would suffer a "clearly defined and serious injury," they have made no headway in demonstrating to the Court that particularized harm awaits them without a protective order. *Nix*, 11 Fed.Appx. at 500; see *AmerGen Energy*, 115 Fed. Cl. at 141 (finding that the plaintiff failed to demonstrate good cause under Rule 26(c) because it made "no effort to identify ... specific harm to its competitive interests"). In short, the parties have made only conclusory statements that the documents subject to their

> Stipulated Protective Order will contain confidential information and have made no assertion at all of particularized harm that would befall them absent a protective order. As a result, they have not established good cause for a protective order under Rule 26(c)(1)(G).

*Id*. at *2-*3 (emphasis added).

Here, Plaintiffs have not articulated any actual harm that would come from these Plaintiffs providing routine discovery, particularly in light of the existing protective order. In cases with the similar facts, where Plaintiffs drop from a "named" status to a putative class member status, the caselaw consistently holds that these individuals are still obligated to face the ordinary burdens of discovery. *In re Drassinower*, 2021 WL 3772328 (S.D. Cal. 2021), *supra*.

Even if the "*Clark* factors" that Plaintiff asserts apply (from cases broadly discussing discovery from unnamed class members generally where the unnamed class members had never been parties themselves), even these factors are clearly met in this case. The *Clark* case actually stated:

> In *Brennan v. Midwestern United Life Ins. Co*., 450 F.2d 999 (7th Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972), we held that in appropriate circumstances absent class members may be propounded written interrogatories on a showing that the information requested is necessary to trial preparation and that the interrogatory is not designed 'as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.' 450 F.2d at 1005.

*Clark v. Universal Builders, Inc*., 501 F.2d 324, 340 (7th Cir. 1974).

More recent cases, and more on point considering this factual and procedural context, (and as quoted by Defendant in his own Motion to Compel (Docket Entry 152)), have articulated the same principles in enumerated factors:

> Other courts have articulated standards that are similar to, or overlap with, the factors set forth in Clark. For example, in *Tierno*, the court held that the proponent of the deposition must demonstrate three factors to justify discovery on absent class members: **(1) the information sought is relevant; (2) the information is not readily obtainable from the representative parties or other sources; and (3) the request is not unduly burdensome and made in good faith.** 2008 WL 2705089, at *6. Similarly, in *Arredondo*, the court summarized the types of factors used in other courts in the absence of a clear Ninth Circuit standard, and held that, **"as a general rule, discovery from absent class members may be permitted when reasonably necessary, not conducted for an improper purpose, and not unduly burdensome in the context of the case and its issues."** 2014 WL 5106401, at *5.

*In re Drassinower*, 2021 WL 3772328 (S.D. Cal. 2021)(emphasis added).

These factors are clearly met. The information is relevant as discussed in detail, *supra*. The information concerning these individuals own communications is not readily obtainable from the remaining Plaintiffs behind whom these formerly named Plaintiffs now wish to hide, because these alleged events concerning their involvement with Sean Williams are peculiarly individual to them.

And the request is not unduly burdensome in light of the fact that these individuals are already represented by Plaintiffs' counsel, and that this same counsel has already confirmed that the cell phones have been imaged and are already being searched, albeit only for some limited information Plaintiffs prefer the Defendants see (See Docket Entry 152-1).

In fact, these individuals <u>must</u> be in lockstep with the remaining Plaintiffs, as the Plaintiffs' attorneys could not file a Motion for Protective Order on behalf of these individuals otherwise: "A party may not ask for an order to protect the rights of another

party or a witness if that party or witness does not claim protection for himself…" 8A Fed. Prac. & Proc. Civ. § 2035.

This routine discovery, first propounded under Rule 34 in November 2023 while these individuals were clearly still parties and even before the motion to amend (clearly filed response to the discovery itself), has been taken in good faith.

On the contrary, it is Plaintiffs who have acted in bad faith in this regard. Plaintiffs had a Motion to Amend pending seeking a class action <u>with these same individuals as named Plaintiffs and class representatives</u> (Docket Entry 23) from September 8, 2023, when the Rule 34 requests were propounded on these same individuals in November 2023. <u>Only thereafter</u> did Plaintiffs file another iteration (and without waiting on a ruling on the existing proposed amendment) seeking to remove these individuals to the putative class, which was eventually permitted by the Court and filed on March 1, 2024, after the subpoenas <u>to these still-named Plaintiffs</u> had been served on February 13, 2024 weeks earlier. This is the exact *Drassinower* situation.

Perhaps most inexplicable of all, Plaintiffs' Motion for Protective Order wholly disregards that Plaintiffs themselves have included these very people in their Rule 26 Initial Disclosures, including a supplement earlier this very month, under Rule 26(a)(1)(A)(i) which requires the Plaintiffs to identify: "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

By including these very individuals under that Rule, Plaintiffs acknowledge that they plan to use them to support their claims. **How can the Court possibly allow Plaintiffs to call these individuals as witnesses at trial to support their claims and simultaneously deny discovery from them as Plaintiffs insist?**

All this Defendant wants to do is uncover legitimate evidence relevant to the claims against him and his coworkers, whether the evidence supports Plaintiffs or (as is considerably more likely) cuts against their claims.

With respect to good faith, it does bear noting Plaintiffs' repeated reference to themselves as sexual assault survivors distracts from the truly heinous allegations that Plaintiffs have leveled against these public servants who, as far as any evidence has actually shown, were all simply trying to do their jobs honestly – definitely not "corruptly."

Even in the instant Motion for Protective Order, the Plaintiffs claim without any evidence or discernible factual basis whatsoever that "*Johnson City Police Department ("JCPD") and several of its officers corruptly[2] obstructed the investigation of credible reports of rape.*" Without any discernible factual basis or evidence, Plaintiffs also blindly smear an unnamed group of JCPD officers accusing them of outright bribery, alleging, *inter alia*, "an extortion scheme, in which Williams' company, Glass and Concrete Contracting LLC, paid money to JCPD officers in exchange for facilitation of the sex trafficking venture." (Docket Entry 121, PageID# 1782).

---

[2] Corrupt, *adj*.: "Having unlawful or depraved motives; given to dishonest practices, such as bribery." Black's Law Dictionary, 11th ed.

These kinds of horribly defamatory statements, without any discernible basis at all, shamelessly smear these (in some cases lifelong) public servants, and the media "picks up" statements in Plaintiffs' filings and then reports on this as if these utterly baseless statements are true.[3] Defendant Peters served as a police officer for decades, and there is absolutely no basis whatsoever for anyone to claim that he is or has ever been "corrupt." He has been an honest public servant, in an industry where these individuals are increasingly underpaid and underappreciated.

And more to the point of these discovery motions, when Defendant Peters tries to obtain the most ordinary discovery to begin defending the claims, the Plaintiffs utterly stonewall him at every turn, now to the point of attempting to remove themselves as Plaintiffs to "hide" inside a class. This lifelong public servant deserves much better than to be stonewalled (<u>now for over five months and counting</u>) when he tries to obtain routine evidence to defend the frivolous allegations against him.

This is beyond the pale, is incompatible with well-established jurisprudence in this context, and is wholly unjust.

---

[3] In the instant Motion for Protective Order, Plaintiff's attorney commented on some of her own communications with the federal government (who is prosecuting Sean Williams, which is why communications with prosecutors were even sought) by gratuitously asserting and claiming there to be a "prosecution team for the federal public corruption investigation of the Johnson City Police Department." Plaintiffs' counsel's repeated attempts to cause such a "corruption investigation" by making these apparently baseless allegations to anyone who will listen do not constitute any such thing. This Defendant Peters is certainly unaware of any actual "corruption investigation" and highly doubts that there is any such thing, as opposed to presumably ongoing investigations of Sean Williams for the harms allegedly perpetrated against Plaintiffs. But the media picked up Plaintiffs' counsel's comments in her footnote, and reported this throughout the State of Tennessee as if this gratuitous, unnecessary characterization were breaking news. This is irremediable.

## CONCLUSION

The Court should reject the Plaintiffs' Motion for Protective Order, and order discovery consistent with the vast weight of authority in this factual context.

    Respectfully submitted,

    MOORE, RADER AND YORK, P. C.

    s/DANIEL H. RADER IV, BPR #025998
     DANIEL H. RADER IV / BPR #025998
     P. O. Box 3347
     Cookeville, TN 38502
     Phone: (931) 526-3311
     danny@moorerader.com
     Attorneys for Kevin Peters, individually

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: ashley@hmccivilrights.com

Caroline Drinnon
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: caroline@hmccivilrights.com

Heather Moore Collins
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Suite 320
Brentwood, TN 37027
615-724-1996
Email: heather@hmccivilrights.com

Vanessa Baehr-Jones
Advocates for Survivors of Abuse
4200 Park Blvd., No. 413
Oakland, CA 94602
Email: vanessa@advocatesforsurvivors.com
*Pro Hac Vice Attorney for Plaintiff*

Ms. Elizabeth A. Kramer
Mr. Kevin M. Osborne
Erickson, Kramer Osborne LLP
44 Tehama Street
San Francisco CA 94105
(415-635-0631)
Email: elizabeth@eko.law
Email: kevin@eko.law

Mr. Keith H. Grant
Mr. Philip Aaron Wells
Ms. Laura Beth Rufolo
Robinson, Smith & Wells
633 Chestnut Street
Suite 700 Republic Centre
Chattanooga, TN 37450
Email: kgrant@rswlaw.com
Email: awells@rswlaw.com
Email: lrufolo@rswlaw.com

Emily C. Taylor
Watson Roach Batson & Lauderback
P. O. Box 131
Knoxville, TN 37901-0131
865-637-1700
Email: etaylor@watsonroach.com
*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his Individual Capacity*

K. Erickson Herrin
Herrin McPeak & Associates
515 E. Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
(423-929-7113)
*Attorney for the City of Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Toma Sparks, in his official capacity, and Kevin Peters, in his official capacity*

Thomas J. Garland, Jr.
Milligan & Coleman, PLLP
230 W Depot St.
Greeneville, TN  37743
Email:  tgarland@milligancoleman.com
*Attorney for the City of Johnson City,
Tennessee, and Karl Turner, in his
Individual capacity*

Ms. Kristin E. Berexa
Mr. Benjamin C. Allen
Farrar Bates Berexa
12 Cadillac Drive, Suite 480
Brentwood, TN  37027
615-254-3060
Email:  kberexa@fbb.law
ballen@fbb.law
*Attorneys for Toma Sparks*

Vanessa Baehr-Jones
Advocates for Survivors of Abuse PC
4200 Park Boulevard No. 413
Oakland, CA  94602
510-500-9634
Email: vanessa@advocatesforsurvivors.com

  This the 25th day of April, 2024.

        MOORE, RADER AND YORK, P. C.

        s/DANIEL H. RADER IV, BPR 025998
         DANIEL H. RADER IV / BPR #025998
         P. O. Box 3347
         Cookeville, TN  38502
         (931-526-3311)
         danny@moorerader.com