IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE GREENEVILLE DIVISION

| | | |
|---|---|---|
| B.P., H.A., and S.H., individually, and on Behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VERSUS | ) | No. 2:23-cv-00071-TRM-CRW |
| | ) | |
| CITY OF JOHNSON CITY, TENNESSEE, *et al* | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

This matter very much remains in dispute, and Plaintiffs' recent scurrying to produce a very small bit of (heavily redacted) information immediately prior to the Court's hearing does not cure the defects. By delaying their production (which was long-overdue at the time the Motion was filed) until shortly before the hearing, the Plaintiffs are creating new issues, such as by wrongly (and heavily) redacting materials belatedly produced.

**I.     Plaintiffs' belated claims of production creates an incorrect impression that limited material belatedly produced had been produced prior to the filing of discovery motions.**

Plaintiffs' Response (Doc. 164) erroneously implies to the Court that they had produced some – or even significant – material prior to the filing of the Defendant's Motion(s). This has been a repeated tactic that – even if it is wholly unintentional – creates a misleading picture for the Court, and which has plagued discovery in this case: Plaintiffs invariably fail to produce any materials at all throughout multiple meet-and-confers (much less when responses are originally due), fail to produce any materials prior

1

to the necessity of discovery motions, and only after discovery motions are eventually filed, Plaintiffs then *moments before they are obligated to respond to discovery motions* finally produce partial, incomplete materials, immediately followed by Court filings in which they then offer faux-naïf explanations to the Court, as if Plaintiffs had really produced the material all along and as if it were complete and that the discovery motion should never have been filed. This is just not <u>at all</u> accurate.

And this tactic creates real problems concerning the substance of what the Court must decide. Here, Plaintiffs' very belated production of materials is in large part heavily redacted, raising new issues concerning the completeness of the production that have not heretofore been specifically addressed. By waiting until the last minute to provide the materials, Plaintiffs are essentially ambushing the Defendant and the Court by providing incomplete and redacted material, requiring these matters to be addressed in the Reply.

The same is true concerning the most recent Plaintiffs' Motion for Protective Order (Doc. 158) and the Plaintiffs' Response (Doc. 164) to the Motion to Compel Compliance with the Subpoenas ("Subpoenas Motion") (Doc. 152). It was likewise true with the Plaintiffs' Response (Doc. 114) to this Defendant's original Motion to Compel Discovery Responses ("Rule 34 Motion") (Doc. 108). It had also been true of the Motion to Compel the discovery even of Plaintiffs' names.

To illustrate Plaintiff's execution of this tiresome tactic, Plaintiffs had produced <u>zero</u> documents at the time of Defendant Peters's Rule 34 Motion on January 15, 2024, which responses were then over 30 days past due (Doc. 108, PageID# 1509), and which

had been the subject of no fewer than seven (7) *documented* efforts to obtain the material without court intervention (Doc. 108-2, PageID# 1542-43).

Then, as noted in Defendant Peters's Reply (Doc. 116, PageID# 1733-34), <u>over the weekend before Plaintiffs' Monday Response was due to be filed</u>, Plaintiffs produced very little (just two voicemails that had been specifically called out by name in the Rule 34 Motion, and just five text messages), undoubtedly in order that Plaintiffs might make the inexplicable and frankly misleading statement to the Court in their Monday Response "Plaintiffs have timely produced documents…" (Doc. 114, PageID# 1667-68). As detailed in Defendant's subsequent Reply (Doc. 116), this extremely little material produced *after* the Rule 34 Motion was filed, certainly was not "timely" coming nearly two weeks *after* the Rule 34 Motion, which was itself filed a month *after* the material was due and *after* the aforesaid numerous meet-and-confers. (Doc. 116, PageID# 1735).

Only now that the Court has scheduled an in-person hearing, and now that there has been a second Subpoenas Motion, have Plaintiffs meaningfully started producing material – on selective topics that suit them. But (1) the material is only responsive to few topics and omits completely the others, and (2) material that was produced is very heavily (and apparently improperly) redacted and (3) substantially all topics remain incomplete. And Plaintiffs typically submit the material literally moments before filing their Responses, which Responses then state that the material has been produced as if there is no ongoing dispute.

But by waiting until after all of these discovery motions have been filed and briefed, and by doing so at the last minute, it makes it very difficult to present to the

Court what has been produced and what remains outstanding, though this Reply will do so, *infra*. The difficulty that this troubling method creates for the Court and the litigants is precisely why Rule 37 expressly mandates sanctions when discovery is provided after the filing of a discovery motion. Fed. R. Civ. P. 37(a)(5)(A).[1]

Plaintiffs also make statements concerning the volume or quantity of material produced, that is respectfully misleading insofar as it suggests that they have produced vast amounts of material. They haven't. For instance, in their Response to the Rule 34 Motion: "To date, approximately 207 pages of documents have been produced" (Doc. 114, PageID# 1675), without informing that Court that 200 of the 207 pages that Plaintiffs boasted about were simply a regurgitation back to Defendants of the City's public records response to Plaintiff's own inquiry. (See Doc. 116, PageID# 1739).

The exact same sort of thing has happened with Plaintiffs' recent Motion for Protective Order (Doc. 158) and the instant Subpoenas Motion (Doc. 152). In their Motion for Protective Order, Plaintiffs boast to the Court that they agreed to produce certain categories of documents in response to the subpoena, "which spanned 520 pages of emails and attachments…Counsel for Peters nevertheless declined to withdraw the subpoenas, and, on April 16, 2024, filed a motion to compel." (Doc. 158, PageID# 2353, FN1). This statement wrongfully insinuates to the Court that Defendant Peters filed the Subpoenas Motion *after* having received some 520 pages of substantive material, and

---

[1] The same thing happened as the Defendants tried to get the very names of the Plaintiffs themselves. (See Docket Entry 112 discussing the multiple post-discovery motion efforts Plaintiffs' counsel undertook to obfuscate and forestall providing even the names of the people that sued these public servants).

thereafter refused to withdraw the subpoenas. But that is extraordinarily far from the truth.

In actuality, Plaintiffs "produced" the "520 pages" (heavily redacted) they boast about on April 18, 2023 at 6:13pm EDT, exactly <u>thirteen (13) minutes</u> before the Motion for Protective Order was filed at 6:26pm EDT, all of which was days after the Subpoenas Motion, some thirteen (13) days after the last communication from Plaintiffs' counsel on the subject of the subpoenas, and twenty-four (24) days after the subpoenas' <u>already-extended</u> compliance date. (See Docket Entry 152-1, PageID# 2216).

Plaintiffs also fail to inform the Court that this belated "production" of "520 pages" includes no fewer than four (4) copies of the City's own 48 page "Daigle Report," and even Plaintiffs' own 60 page "Amended Complaint," (evidently as attachments to some correspondence or emails that in fairness were – very belatedly – produced). But these duplicate copies of documents alone comprise 252 pages of the 520, all produced for the first time *after* **all** of Defendant Peters's filings in this case. A great many, if not most, of the remaining pages are almost entirely blacked out, many claiming "work product." While the belated production included a privilege log (the first one Plaintiffs produced in the whole case!), the lateness of Plaintiffs' effort interferes with the ability of Defendant, and for that matter the Court, to resolve what clearly remains an ongoing dispute.

Plaintiffs still have not stated what materials have been withheld due to objections, or provided any privilege log bearing on their "common interest privilege" claims.

Moreover, when the Subpoenas Motion was finally filed with the Court on April 16, 2024 (after numerous attempts to meet-and-confer and Plaintiffs affirmatively stated that no further meet and confer was necessary due to the impasse), even that was *far after* the compliance date for the subpoenas *and* the multiple extensions that Defendant Peters offered in good faith, and again, before *any* responsive documents were produced.

## II.     Nearly all of the discovery at issue remains in dispute.

The Rule 34 requests – and the subpoenas seeking substantially the identical information – can fairly be broken down into six categories, as the parties did during the unsuccessful meet-and-confers.  These categories are addressed in turn:

### A.  Communications among the Plaintiffs (Subpoena topics 1-5 and 19)

<u>Plaintiffs have produced nothing on this topic at all</u>.  Plaintiffs previously asserted a "common interest privilege" but have not produced a privilege log.  As this issue was briefed in Defendant' Motion and supporting Memorandum, such a privilege does not apply unless an attorney is a participant in the communication.

Plaintiffs' Response (Doc. 164) to the instant Motion to Compel does not assert any of these arguments that they have repeatedly made.  Instead, the Response simply argues that the information is not relevant.  To make this argument that the communications among the individual Plaintiffs in a sex trafficking case are not relevant, the Plaintiffs vaguely assert that "some of [them] know each other completely outside the context of this case, for example, as friends, family members, or co-workers."  But Defendant has no way to know which of these individuals know each other if any at all,

and Plaintiffs' counsel did not respond to this Defendants' offer to limit this request in that context in the meet-and-confer. (See Doc. 152-1, PageID# 2217).

Even if *some* of these individuals do know each other, that does not make the material less relevant. Plaintiffs' Second Amended Class Complaint is replete with allegations as to how Sean Williams connected with his victims. See, for instance, paragraph 22 (Doc. 121, PageID# 1777):

> 22. Williams used three primary means and methods to recruit, entice, harbor, provide, obtain, maintain, and solicit women and children, including children under the age of 14, including but not limited to: (1) providing benefits in the form of drugs, cash, and free lodging to coconspirators, including Diaz-Vargas, Female 1, and others, to recruit, obtain, transport, maintain, and provide women; (2) using drugs to addict and control women who would then recruit, obtain, transport, maintain, and provide other women; and (3) offering something of value to women, including free lodging and money, at times under the guise of hiring women for purportedly legitimate purposes, so that he could obtain and gain access to the women and their minor children.

Communications among these women – even ones that knew each other – is clearly relevant to this factual allegation, particularly subparagraphs (2) and (3), and perhaps even (1). If it were not relevant, then it shouldn't be in the Complaint. The various allegations against the Defendants include that the Defendants should have known about complaints from women and stopped Williams's scheme. The timing of this recruiting method is critical to the understanding of what information Defendants had and when, as relates to Williams's alleged efforts to victimize these women.

Without impugning any of these individuals specifically, this Defendant has no way to know who, if any, are victims, and who are not. Defendant has no way to know

which, if any, had communications about Williams's alleged scheme and when, as is relevant to the statute of limitations defense. If one or more of the Plaintiffs brought another Plaintiff to visit Sean Williams, that bears on the claim as to whether that person was really a victim.

Some of the Plaintiffs claim in various iterations of the Complaints to have made police reports, and some say that they did not make such reports because they heard that the police would not take the claims seriously. The only kind of person who would arguably be able to say such a thing is someone who had made a complaint and who was not satisfied with the outcome, i.e. one of the Plaintiffs who claim to have made a report. Whether these reports were properly made, and whether some Plaintiffs discouraged other Plaintiffs from making reports, is very relevant. Communications among these individuals is key to discovering that kind of evidence.

The information is also relevant as to bias and credibility. It is relevant to damages. It is relevant to the class action factors of commonality, typicality, and perhaps even numerosity. Plaintiffs' argument that this information is not relevant (their only argument in connection with the subpoenas) is simply not meritorious.

<u>Relevance is an extremely low bar</u>:

"Under the 2015 amendment to Federal Rule of Civil Procedure 26(b)(1), 'Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Showing relevance is an "extremely low bar." *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014) (noting that Fed. R. Evid. 401 deems evidence relevant if it has "any tendency to make a fact more or less probable") (emphasis supplied in *In re Ford*).

*Waskul v. Washtenaw County Comm. Mental Health*, 569 F.Supp. 3d 626, 632 (E.D. Mich. 2021).

As the Plaintiffs' Response articulates only "relevance" as the objection, despite the fact that Defendant proactively argued these issues in his original Motion (Doc. 152), Plaintiffs have waived the "common interest privilege" and other arguments. See *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that a party waives opposition to an argument by failing to respond).

### B. Communications with Kateri Dahl (Subpoena topics 6-10)

Plaintiffs have also failed to respond to the deficiencies concerning this topic. Plaintiffs have asserted "common interest privilege" as to Ms. Dahl also, but again no privilege log. After the filing of the instant Motion on April 16, 2024 and while this dispute has been going on for nearly five months, Plaintiffs belatedly (on April 25, 2024 as has been typical) but finally produced <u>some</u> texts between <u>one individual</u> and Ms. Dahl. <u>But these were only produced after Plaintiffs *first denied that any existed*</u>, and only after the undersigned told Plaintiffs' counsel (on March 26, 2024) that these specific texts were *known to exist* from the separate *Dahl* litigation. See Doc. 152-1, PageID# 2217. But as stated, they have been produced for only this single individual, and only because Defendant already knew about them.

Discovery does not work when the responding party does not make a sufficient effort to locate responsive materials. Here, it is not incumbent on the propounding party to tell the responding party what exists in order to obtain it. The point of discovery is for

the propounding party to "discover" what the responding party has, not the other way around.

In any event, the Plaintiffs have demonstrated that their effort at "diligent search" for the responsive information is unreliable. The only remedy is for the Court to require that Plaintiffs' phone images be searched by the Defendant's expert.

It is not plausible that none of the Plaintiffs had any texts or communications with Kateri Dahl except one, in light of Ms. Dahl's apparent testimony in her own case that she was contacting these women and attempting to prove the alleged malfeasance of Sean Williams. If there were materials that have been deleted, Plaintiffs should individually say so.

### C. Communications with Sean Williams (Subpoena topics 11-15 and 18)

Plaintiffs also claim in their Response (Doc. 164) to have provided all communications between the Plaintiffs and Sean Williams. Almost all of what Plaintiffs eventually produced did not come until April 25, 2024, well after all of these motions were filed (which has been typical, *supra*). But unless the undersigned has overlooked something, Plaintiffs appear to have provided communications with Mr. Williams for only <u>four individuals</u>. Plaintiffs have not offered any explanation as to why others have not been produced, such as whether the information was spoliated.

The various iterations of the Complaint suggest that several of these individuals had long-term connections with Mr. Williams, as opposed to a one-off visit. It is not plausible that none of these individuals have communications with him unless the information has been spoliated.

Plaintiffs should specifically state, in writing, which individuals had materials from Sean Williams, and which did not; and for those that did not, they should state whether they never had any, or if they simply no longer have them due to spoliation.

### D. Communications with the Defendants (Subpoena topics 16-17 and 20-25)

Plaintiffs inexplicably claim in their Response that there are no materials relating to interactions with the City or the police.

One individual did provide some voicemails from an investigator. Each of these individuals needs to state, in writing, whether they have any materials reflecting communications with the JCPD or its employees, or not.

What has repeatedly occurred (see, e.g., the Dahl discussion; and the issue concerning the Voicemails referenced in the Rule 34 Motion) is that Plaintiffs claim they do not have something, until the Defendant reveals that materials are known to exist. And then, as is typical, Plaintiffs belatedly produce materials only after Defendants specifically told them are there to be found.

This has proven very unreliable. The only way to resolve this kind of dispute is for the individuals to each individually state, in writing, that there are no responsive documents. This is necessary so that when the responsive documents are inevitably found to have been withheld (as they were for the Voicemails, as they were for the Dahl material, etc.), there will be something to point to as opposed to Plaintiffs' attorneys' obfuscating emails.

### E. Documents concerning relevant topics, responses to specific search terms in the subpoenas (and Rule 34 requests) (Subpoena topics 26-41).

Plaintiffs' Response (Doc. 164) states that "only irrelevant responses have been identified." <u>Not one single document has been provided on this topic</u>. But who is testing this determination of "relevance?" The terms themselves are very specific, and are hardly oppressive. The phones have been imaged; the responsive materials should be produced, or a privilege log should be provided. It has not been.

### F. Communications with prosecutors (Subpoena topics 42-43).

As stated, Plaintiffs belatedly produced some materials concerning these topics on April 18, 2024 (after all the motions had been filed). It is <u>not</u> clear that all of the responsive information has been provided, as evidently the only thing that has been provided is Plaintiffs' attorneys' own communications with the government in Plaintiffs' effort to cause an investigation into the JCPD. Even this information is incomplete because it is wrongfully and very heavily redacted.

By providing the heavily redacted information at the last minute, the Plaintiffs have created new issues for the Court. This type of ambush – producing the material so late that the briefing is complete – cannot be rewarded by kicking resolution of this question further down the road. (This hearing has already been delayed almost a month from the Court's original dates, based solely on Plaintiffs' attorneys' unavailability).

Separately, no documents have apparently been produced concerning the Plaintiffs' own communications with the prosecutors or investigators. No information has been produced relative to the claims that Sean Williams had videos of sexual assaults

of these women or otherwise. Plaintiffs' attorneys repeatedly claim that there is significant evidence, even video evidence, or evidence that the JCPD "sat on" for months or years. But Plaintiffs have produced nothing whatsoever that supports any such claim. It is not plausible that these victims have not been communicated with by the prosecutors or investigators, through their lawyers or otherwise, and told what evidence exists concerning the crimes allegedly perpetrated against them. <u>And this information is critically relevant to Plaintiffs' claims that JCPD had this information and did not do anything with it</u>.

With respect to the wrongful redactions (See Doc. 167 containing examples), Plaintiffs claim that the material is work product. But this material is not work product, because it was not prepared in anticipation of litigation; it was furnished to the government to urge the government to prosecute someone. If the Plaintiffs have a legitimate reason to report a crime, then this information was furnished to the government pursuant to a public duty to do so.

The Sixth Circuit has explained that the burden of proving that a document is protected by the work product doctrine is on the party asserting the privilege. *U.S. v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006). The burden must also be carried for <u>each document</u>. As the Sixth Circuit has explained:

> [T]he key issue in determining whether a document should be withheld is the function that the document serves. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C.Cir.1980). **Because documents are not protected if they were created for nonlitigation purposes, regardless of content,** "[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question." *Nat'l Union*, 967 F.2d at 984. Thus we must

examine not only the documents themselves, but the circumstances surrounding the documents' creation.

*Id*. at 595.

Plaintiffs do not dispute that the materials provided to prosecuting officials were prepared for the purpose of referring matters for alleged criminal investigation. As this Defendant has stated in multiple filings: "Plaintiffs' counsel's repeated attempts to cause such a 'corruption investigation' by making these apparently baseless allegations to anyone who will listen do not constitute any such thing." While there is clearly a dispute as to whether Plaintiffs' effort in causing an investigation was successful, this was very clearly Plaintiffs' motivation in preparing these materials.

Because they were prepared for this "nonlitigation purpose" they are not protected by work product "regardless of the content." *Id*.

As another recent case, a district court explained that the Sixth Circuit's standard is a "because of" test: the documents had to be prepared "because of" the litigation, as opposed to simply relating in some way to the litigation, or for some other purpose:

> In determining whether the anticipation of litigation standard is met, the Sixth Circuit has adopted the "because of" test. *Cooey v. Strickland*, 269 F.R.D. 643, 647 (S.D. Ohio 2010). That inquiry centers on whether documents were "prepared or obtained because of the prospect of litigation[,]" as opposed to those "prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes[.]" *Id*. (quoting *Roxworthy*, 457 F.3d at 593). "Thus, if the item would have been prepared in substantially the same manner, regardless of the anticipated litigation, the doctrine does not apply." *Id*.

*McNeil v. Mt. Carmel Health Sys*., 2021 WL 5235103 at *4 (S.D. Ohio 2021).

Here, unless Plaintiffs' counsel who prepared these documents admits that counsel is pursuing a criminal investigation of the JCPD solely to gain advantage in litigation (*cf.* Tenn. R. Sup. Ct. 8, RPC 4.4(a)(2)), then these documents were not prepared "because of" litigation, but for another purpose, *to wit*, for Plaintiffs to assert (in good faith or not) that a crime has been committed.

Presumably, if Plaintiffs genuinely believe that there is "public corruption" such that they felt compelled to report it and attempt to cause an investigation of it, they would do this "in substantially the same manner, regardless of the anticipated litigation" and as such "the [work product] doctrine does not apply." *Id*.

Because the material is not protected by work product, the redactions are improper. Even if the material *had* been work product, that protection has been waived, as Plaintiffs produced the work product to the government, and have now even filed it with the Court (under seal) in connection with their Motion to Strike. Plaintiffs may not use the work product protections as a sword as well as a shield.

In a case with strikingly similar posture, a Plaintiff furnished material to government investigators trying to get the Defendants in the civil litigation prosecuted criminally as well. *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F.Supp.3d 576 (S.D. Tex. 2017). The Plaintiff then asserted work product as to the material. But the Court determined that by making the election to disclose the material to the government, any privilege or work product protection had been waived. The Court explained:

In *Mir v. L–3 Communications Integrated Systems, L.P.*, 315 F.R.D. 460, 470 (N.D. Tex. 2016), the court determined that a voluntary disclosure of attorney work product information in connection with a government investigation waives the privilege in later civil discovery. In *Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 172 (S.D.N.Y. 2002), the court found a waiver of the work-product privilege and stated, **"Disclosing information to governmental authorities in the hope that they will attack an adversary, however, cannot be said to be done 'in the pursuit of ... trial preparation.' "** *Id*. (quoting *United States v. Am. Tel. & Tel. Co*., 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

The First, Third and D.C. Circuits have found that production of privileged material to a government agency waives the privilege. See *United States v. Mass. Inst. Tech*., 129 F.3d 681, 687 (1st Cir. 1997)(holding that MIT waived its privilege with respect to a government audit agency); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424–27 (3rd Cir. 1991)(holding that voluntary disclosure of privileged documents to government during an investigation fully waived both attorney-client and work product privileges with respect to third parties in civil litigation); *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)(party may not pick and choose which opponents may have access to its privileged material).

In the present case, there is no common interest between this civil suit and a criminal prosecution, as much as Dresser– Rand would have liked to have seen its former employees prosecuted. Dresser–Rand made a calculated disclosure to further the government's inclination to prosecute the two former employees. In the context of a criminal prosecution, there is no joint prosecution privilege between Dresser–Rand and the United States.

*Id*. at 579.

This is indistinguishable from the heavily redacted material that Plaintiff belatedly supplied just days ago, with the Court hearing imminent.

In another similar case, *Zazzali v. Swenson*, 2013 WL 12136803 (D.Idaho 2013). the Court held that disclosure of information to government prosecutors waives the work product privilege, because the disclosure "substantially increases the likelihood that the materials will be disclosed to an adversary." *Id*. at *3. The Court noted the prosecutor's

obligations to disclose investigatory information under Fed. R. Crim. P. 16, and *Brady v. Maryland*, 373 U.S. 83 (1963). Thus, when a criminal prosecution results, the material <u>must</u> be disclosed pursuant to these Rules – something that was known by Plaintiffs when they furnished the information to the government. By disclosing the material in that vein here, the Plaintiffs have acted inconsistently with the premise of the work product doctrine: to keep the material from one's adversary. This is a waiver.

Another relevant case thoughtfully discusses how an election to disclose materials to a government agency in an effort to "incite it to attack the informant's adversary" waives the work product privilege. *Reed v. Advocate Health Care*, 2007 WL 2225901 (N.D.Ill. 2007). The Court explained what appears to be Plaintiffs' very tactic in this case:

> A case that we find extremely helpful is *Sidari v. Orleans County*, No. 95-CV-7250, 2000 WL 33407343 (W.D.N.Y. Oct.3, 2000). The *Sidari* plaintiffs asserted the work-product privilege for communications with a United States Attorney and the FBI. The court found that the work-product privilege was waived because the plaintiffs had not demonstrated that they were litigation allies with the government, nor had they presented any proof of a confidentiality agreement with the government. See id. at *8. Another helpful case cited in *Sidari* is *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F.Supp. 591 (S.D.N.Y.1998), in which the court overruled plaintiff's work-product objection to producing its submissions to various government agencies, including the Department of Justice's Antitrust Division. **The court held that "<u>waiver results from the voluntary submission of material to a government agency to incite it to attack the informant's adversary</u>," explaining that "[a] well-traveled route to achieving relief in civil litigation has been to persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation against that party. <u>The party who travels that route should not be protected from disclosure of its statements</u>."** *Id*. at 593 (quoting *Three Crown Ltd. P'ship v. Salomon Bros., Inc.*, No. 92 Civ. 3142(RPP), 1993 WL 277182, at *2 (S.D.N.Y. July 21, 1993)).

*Id.* at *2.

Here, Plaintiffs cannot carry the burden of proving that these materials prepared to incite an investigation – and not for litigation purposes – was ever work product in the first instance, under the Sixth Circuit's "because of" test. But even if they could, the work product protection is waived. The Court should order Plaintiffs to produce complete and unredacted materials – along with other materials that have apparently been withheld completely.

### III. The subpoenas were not improper in any respect, and Plaintiffs' belated complaints about service and "harassment" are immaterial.

The subpoenas are entirely proper and not the slightest effort to harass anyone; we simply need the documents to defend the case. The purpose of the subpoenas – as stated to the Plaintiffs' attorneys multiple times, and to the Court, is simply to ensure that these Plaintiffs remained properly, procedurally before the Court, when these individuals sought an amendment to the suit after the Rule 34 discovery was propounded.

Plaintiffs further want to smear Defendant Peters's entirely proper attempts to obtain entirely legitimate discovery from the people who sued him, wrongfully insinuating that there was some intent to harass. In that vein, Plaintiffs claim that "Defendant Peters did not seek leave of Court to serve the subpoenas, nor did he make any attempt to negotiate their contents or method of service with Plaintiffs' counsel in advance." Plaintiffs fail to inform the Court that the subpoenas were provided to Plaintiffs' counsel on February 12, 2024, *in advance* of any attempt by anyone to serve any of them the following day. Plaintiffs' counsel responded, but did not offer to accept

service or anything else to avoid service on their clients who were indisputably Plaintiffs in this case; instead, counsel objected outright to *any effort* to obtain discovery from any of these then-Plaintiffs – the exact same objection they had been making for months at that point, and which objections were even already the subject of the pending Motion to Compel the Rule 34 responses (Doc. 108), and Plaintiffs' own Response, which had been filed two weeks earlier.

As stated to Plaintiffs' attorneys themselves, the *only* purpose of the subpoenas were to ensure that these Plaintiffs remained properly before the Court even if an amendment to the Complaint were later allowed, so that the entire process to obtain this routine information need not start anew.

But Plaintiffs had not cooperated in any material respect at that point, they had instead renewed their objections to *any* attempt to obtain information from these persons by any means, and they made no offer to cooperate or accept service.  Plaintiffs had advance copies of the subpoenas, and responded acknowledging them, but did not offer to accept service despite every opportunity to do so.  If Plaintiffs had been so concerned about the individuals being served with the subpoenas, there was nothing stopping them from making that offer; that is why Defendant provided them the subpoenas in advance, the day before.

Nothing in Rule 45 or elsewhere requires one party to beg another to accept service of filings before complying with the Rule that does require service.  Should Plaintiffs have wished to avoid personal service, there was nothing whatsoever to stop them from making that offer when they were provided these subpoenas *in advance*;

instead they chose to respond only with the same objections to discovery generally, as they had made all along and which objections were already before the Court. It was incumbent on Plaintiffs to offer to accept service; indeed, Defendant promptly accepted the offer when finally made, which Plaintiffs made only after they were unsuccessful in attempting to contact the Court *ex parte* seeking intervention on their behalf.

It seems very disingenuous for Plaintiffs to submit that they would have agreed to accept service if Defendant had overtly asked when providing them the advance copies of the subpoenas; Plaintiffs would have reiterated the same objections they have made all along, which is exactly what they did.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Motion to Compel, and order the Plaintiffs to produce full and complete responses. The Plaintiffs have insisted on depositions, beginning on May 10, so the Court should order immediate and complete production. The Court should further order that the forensic images of the Plaintiffs' phones be produced for inspection by Defendant's expert (using the search methodology in the subpoenas: specific names and the specific terms).

<div style="margin-left:40%">

Respectfully submitted,

MOORE, RADER AND YORK, P. C.

s/DANIEL H. RADER IV, BPR #025998
DANIEL H. RADER IV / BPR #025998
P. O. Box 3347
Cookeville, TN 38502
Phone: (931) 526-3311
danny@moorerader.com
Attorneys for Kevin Peters, individually

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: ashley@hmccivilrights.com

Caroline Drinnon
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: caroline@hmccivilrights.com

Heather Moore Collins
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Suite 320
Brentwood, TN 37027
615-724-1996
Email: heather@hmccivilrights.com

Vanessa Baehr-Jones
Advocates for Survivors of Abuse
4200 Park Blvd., No. 413
Oakland, CA 94602
Email: vanessa@advocatesforsurvivors.com
*Pro Hac Vice Attorney for Plaintiff*

Ms. Elizabeth A. Kramer
Mr. Kevin M. Osborne
Erickson, Kramer Osborne LLP
44 Tehama Street
San Francisco CA 94105
(415-635-0631)
Email: elizabeth@eko.law
Email: kevin@eko.law

Mr. Keith H. Grant
Mr. Philip Aaron Wells
Ms. Laura Beth Rufolo
Robinson, Smith & Wells
633 Chestnut Street
Suite 700 Republic Centre
Chattanooga, TN 37450
Email: kgrant@rswlaw.com
Email: awells@rswlaw.com
Email: lrufolo@rswlaw.com

Emily C. Taylor
Watson Roach Batson & Lauderback
P. O. Box 131
Knoxville, TN 37901-0131
865-637-1700
Email: etaylor@watsonroach.com
*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his Individual Capacity*

K. Erickson Herrin
Herrin McPeak & Associates
515 E. Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
(423-929-7113)
*Attorney for the City of Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Toma Sparks, in his official capacity, and Kevin Peters, in his official capacity*

Thomas J. Garland, Jr.
Milligan & Coleman, PLLP
230 W Depot St.
Greeneville, TN 37743
Email: tgarland@milligancoleman.com
*Attorney for the City of Johnson City,*
*Tennessee, and Karl Turner, in his*
*Individual capacity*

Ms. Kristin E. Berexa
Mr. Benjamin C. Allen
Farrar Bates Berexa
12 Cadillac Drive, Suite 480
Brentwood, TN 37027
615-254-3060
*Email: kberexa@fbb.law*
*ballen@fbb.law*
*Attorneys for Toma Sparks*

Vanessa Baehr-Jones
Advocates for Survivors of Abuse PC
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
Email: vanessa@advocatesforsurvivors.com

This the 30th day of April, 2024.

MOORE, RADER AND YORK, P. C.

s/DANIEL H. RADER IV, BPR 025998
DANIEL H. RADER IV / BPR #025998
P. O. Box 3347
Cookeville, TN 38502
(931-526-3311)
danny@moorerader.com