IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

**JANE DOES 1-9,**

    **Plaintiffs,**

v.                                          No: 2:23-cv-00071-TRM-JEM

**CITY OF JOHNSON CITY, TENNESSEE, et al.,**

    **Defendants.**
_____/

## OPPOSITION IN RESPONSE TO MOTION TO QUASH, OR IN THE ALTERNATIVE AN EXTENSION OF TIME FOR COMPLIANCE WITH, SUBPOENA DUCES TECUM (ECF 172)

Plaintiffs seek highly probative third-party discovery from movant Female 4. As alleged in Plaintiffs' Second Amended Complaint, Johnson City Police ("JCPD") Officers extorted Sean Williams' business, Glass and Concrete Contracting LLC ("GCC"), through his business partner, Female 4. Plaintiffs allege that Female 4 opened shell companies, made to look like subcontractors, through which she transferred money out of GCC. Female 4 then made "owner draws" to access the money in cash, which she used to pay Defendants $2,000 per week. Records relating to Female 4 and the limited liability companies which she opened during the relevant time period are therefore critical evidence relevant to proving Plaintiffs' theory of liability.

In moving to quash Plaintiffs' subpoena, Female 4 claims, without explanation, that the subpoena is overly broad and burdensome, constitutes an abuse of subpoena power, and that Plaintiffs' true motive is to harass her. The motion also claims, without citation to a declaration, that Female 4 has no relevant knowledge and does not possess relevant documents. Respectfully, Plaintiffs have already demonstrated the role Female 4 played in the Defendants' extortion

1

scheme, which lies at the heart of Plaintiffs' complaint. Moreover, additional evidence obtained through discovery corroborates Plaintiffs' allegations regarding how the extortion scheme worked and Female 4's role in it. Plaintiffs are amenable to providing Female 4 additional time to comply with the subpoena, but there is no legal or factual basis to quash it in its entirety. Female 4's attempts to withhold relevant discovery should be denied and the Court should order immediate and complete compliance with the subpoena.

## RELEVANT FACTUAL BACKGROUND

### I. JCPD Extortion Scheme

Beginning in at least 2018 and continuing to 2021, Sean Williams drugged and raped women and sexually exploited children in Johnson City, Tennessee, as part of a sex trafficking conspiracy. *See* SAC ¶¶ 18-56. Plaintiffs allege that JCPD and the Defendant Officers affirmatively enabled these crimes by corruptly conspiring to obstruct any investigation into Williams' sexual assaults. Specifically, beginning on an unknown date, a group of JCPD officers, led by Sparks, conspired to benefit from an extortion scheme of Williams' business, and by extension, his narcotics and sex trafficking ventures. SAC ¶¶ 57-183, 311-66.

The scheme worked like this: Williams' business partner and coconspirator, Female 4, laundered funds from GCC through subcontracting companies, from which she would take "owner draws" to pay $2,000/week in cash to Sparks and the other JCPD officers involved in the scheme. *Id.* ¶ 63. JCPD officers also unlawfully seized cash from Williams' safe. *Id.* ¶ 81-86. In exchange, there was either an implied or explicit agreement that Sparks and others would shield Williams, permitting him to continue his criminal activities of abuse and trafficking with impunity. *Id.* ¶¶ 80, 87, 313-16; *see also id.* ¶¶ 88-94 (detailing Williams' rape of H.A. during

the time Sparks and other JCPD officers benefited financially from the extortion scheme and protected Williams).

## II. Newly Discovered Bank Records Corroborate Plaintiffs' Allegations

Bank records obtained through discovery in this case tend to corroborate Plaintiffs' allegations regarding how Female 4 moved cash out GCC as part of the extortion scheme. For instance, records show that during a two-week period in June 2022, Female 4 withdrew nearly $30,000 in cash from GCC's account. *See* Decl. of Vanessa Baehr-Jones ("Baehr-Jones Decl."), Exh. 1, Bank Records for GCC (filed under seal) at RENASANT000018, 21.[1] It also appears from the account records that Female 4 "structured" these withdrawals, withdrawing exactly $10,000 in cash per day over a two-day period, likely in an effort to evade mandatory suspicious activity reports ("SARs") which banks are obligated to produce for any cash withdrawal over $10,000.[2] *Id.*

The bank records also show that over the summer of 2022 Female 4 moved large sums of money out of GCC's bank account, effectively draining the account. Female 4 also transferred funds between other companies she controlled, for example, transferring funds between Southern Construction LLC and Skyline Restoration LLC, two of the companies listed in Exhibit A to Plaintiffs' subpoena to Female 4. *See, e.g.*, *id.* at RENASANT000051-57; Exh. 4. Some of these transfers appear to be the proceeds of real estate sales or transactions. *See id.* at RENASANT000041 (nearly $100,000 deposit from property management company);

---

[1] Unless otherwise noted, all citations to exhibits refer to the exhibits attached to the Baehr-Jones Declaration.
[2] *See* Office of the Comptroller for the Currency, U.S. Department of Treasury, "Suspicious Activity Reports," available at: https://www.occ.treas.gov/topics/supervision-and-examination/bank-operations/financial-crime/suspicious-activity-reports/index-suspicious-activity-reports.html ("Under the Bank Secrecy Act (BSA), financial institutions are required to assist U.S. government agencies in detecting and preventing money laundering, and: . . . . File reports of cash transactions exceeding $10,000 (daily aggregate amount)[.]").

3

RENASANT000002 (proceeds of nearly $50,000 from condo associations). The proceeds do not remain in the business accounts, however; the funds are either withdrawn in cash or moved to other accounts. *See, e.g.*, *id.* at RENASANT000018; RENASANT000055-76.

Notably, during this same time, JCPD officers were monitoring Williams' efforts to liquidate his assets. Williams had absconded on May 6, 2021, and by then, had been on the lam for nearly a year. It appears from discovery produced by Defendant City that JCPD officers were (1) aware that Female 4 had access to Williams' GCC bank account in April 2022; (2) were actively monitoring Williams' real estate sales; and (3) were providing Female 4 protection after she called JCPD to tell them Williams had frozen their business accounts. *See* Baehr-Jones Decl. ¶ 4-5, Exhs. 2-3. Thus, records that Female 4 has in her possession which show what happened to the funds she withdrew in cash and which she transferred out of GCC and into other limited liability companies are highly probative to proving how Defendant JCPD officers financially benefitted from extorting Williams' business.

### III. Plaintiffs Serve Subpoena Duces Tecum on Female 4

On March 15, 2024, Plaintiffs provided notice to Defendants in this case that they planned to serve a third-party subpoena on Female 4, and, on March 21, 2024, Plaintiffs served the subpoena. Exh. 4. The subpoena provided a date of compliance of April 1, 2024. *Id.* Female 4 did not contact Plaintiffs' counsel or object to the subpoena in the time period provided by Rule 45(d)(2)(B). Baehr-Jones Decl. ¶ 7. On April 30, 2024, almost a month after the subpoena's compliance date, Female 4 filed the subject motion to quash. Female 4 now claims that the subpoena is overly broad and burdensome and constitutes an abuse of subpoena power. The motion also claims, without citation to a declaration, that Female 4 has no relevant knowledge and does not possess relevant documents. For the reasons set forth below, the Court should reject these arguments.

# ARGUMENT

## IV. Motion to Quash Is Untimely and Insufficient

As a threshold matter, Female 4's motion to quash is untimely. Rule 45(c)(3)(A) requires that a motion to quash be "timely" filed. "It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." *F.T.C. v. Trudeau*, 2012 WL 5463829, at *3 (N.D. Ohio, Nov. 8, 2012); *In re Subpoena Duces Tecum Served Upon Capito*, 2013 WL 499244, at *3 (E.D. Tenn. Feb. 7, 2013) (motion to quash filed after the return date of the subpoena was not timely).

Plaintiffs served Female 4 with the subpoena on March 21, 2024, providing a return date of April 1, 2024. Exh. 4. Female 4 did not contact Plaintiffs' counsel to request additional time or discuss the scope of the requests, did not serve objections within 14 days as required by Rule 45, and did not file her motion to quash until April 30, 2024—more than five weeks after the subpoena was served and more than four weeks after the return date. Baehr-Jones Decl. ¶ 7. It is therefore "unquestionably untimely." *See Trudeau*, 2012 WL 5463829, at *3. Female 4's delay has prejudiced Plaintiffs by depriving them of critical discovery needed for motion practice and depositions and generally impeding their investigation. Baehr-Jones Decl. ¶ 9.

Female 4's motion to quash must also be denied as she has failed to carry her burden of demonstrating that the discovery sought should not be permitted. As a procedural matter, the motion fails to attach a copy of the subject subpoena so that the Court may review what documents have been requested. *See* E.D. Tenn. L.R. 37.2 (requiring discovery motions to include "verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion"). Plaintiffs provide a copy of the subpoena for the Court's reference. *See* Exh. 4.

Substantively, the motion fails to provide any explanation or support for Female 4's conclusory assertions that Plaintiffs' document requests are overly broad, burdensome, and irrelevant. To the extent the motion includes purported facts—for example, that Female 4's romantic relationship with Williams spanned from 2010 to 2017, that their communications have been infrequent since 2017 and are not relevant to this lawsuit, that law enforcement determined she did not have relevant information, and Female 4's assertion that she has no relevant information or documents—these are not supported by a declaration or any other form of evidence, and therefore cannot be considered in support of the motion. *See, e.g.*, *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, No. 2:05-CV-0673, 2006 WL 1878917, at *2 (S.D. Ohio July 6, 2006) ("[T]here are no factual submissions before the Court which would enable the Court to determine whether any of the factual assertions made in support of the non-production of these documents has a basis in fact."). Stripped of these improper factual assertions, the motion is threadbare and does not establish good reason for quashing Plaintiffs' subpoena, especially considering the requested documents are highly relevant to Plaintiffs' case. *See Trudeau*, 2012 WL 5463829, at *4-5 (denying motion to quash where movant failed to carry burden of demonstrating the discovery sought should not be permitted).

V. **Subpoena's Failure to Specify Place to Send Documents Is Not a Reason to Grant Motion to Quash**

Female 4 claims Plaintiffs' subpoena should be quashed because it does not provide a location where the documents should be produced and fails to provide a reasonable time for compliance. Had Female 4 or her attorney simply contacted Plaintiffs' counsel upon receiving the subpoena, both matters could have been resolved. The "TBD" listed under location was intended to be a placeholder until Female 4 had been served and Plaintiffs' counsel could hopefully determine a location convenient for both Plaintiffs' counsel and Female 4 or provide

6

for the possibility of an electronic exchange of documents, in which case a physical location would not be necessary. Baehr-Jones Decl. ¶ 8.[3] While Plaintiffs maintain that the time provided for compliance was reasonable, they would have granted an extension had Female 4 contacted Plaintiffs' counsel back when the subpoena was served more than seven weeks ago. *Id.* at ¶ 7. At this point, however, Plaintiffs' need for these documents is time-sensitive, as they are commencing depositions on May 21, 2024 (less than a week from this filing). Baehr-Jones Decl. ¶ 9.

## VI. The Subpoena Seeks Highly Relevant Information

As this Court previously noted in denying another motion to quash in this matter, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26," which is "traditionally quite broad." ECF 128 at 14 (quoting *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Rule 26(b)(1) provides that a party is entitled to take discovery of any matter that is relevant to the claim or defense of any party, even if not admissible itself, if such discovery is reasonably calculated to lead to admissible evidence. *Trudeau*, 2012 WL 5463829, at *4; Fed. R. Civ. P. 26(b)(1).

Here, Plaintiffs seek documents relating to Sean Williams and other individuals known to associate with Williams (Request No. 2), documents relating to Williams-associated businesses (Request Nos. 1, 3), and social media posts relating to Williams (Request No. 4). These documents are all highly relevant. As discussed above, Female 4's relationships with Sean Williams and his businesses are critically important to Plaintiffs' extortion allegations. As alleged, JCPD officers extorted Williams <u>through</u> Female 4, and she was the party responsible for opening shell businesses in order to launder funds to the officers.

---

[3] Ms. Rutherford points out that the subpoena fails to provide an address of the premises to be inspected. This is unsurprising given the subpoena does not seek to inspect any premises.

7

Newly obtained records tend to corroborate the allegations in the Amended Complaint. For instance, records and discovery support that beginning in April 2022, Female 4 began moving funds out GCC's account, structing withdrawals of $10,000 in cash, and potentially liquidating Williams' real estate assets. Exh. 1. At around same time, JCPD records show that the Defendants were (1) monitoring Williams' real estate holdings, (2) aware that Female 4 had access to Williams' GCC accounts, and (3) protecting Female 4 from Williams after she called JCPD to alert them that Williams had frozen their accounts. Exhs. 2-3. One reasonable inference to draw from this evidence is that Female 4 was using cash withdrawn from GCC to make illicit payments, including payments to Defendants in exchange for their protection. In sum, Female 4's role in the extortion scheme, and the documents showing how she laundered funds out of GCC, are highly relevant to proving Plaintiffs' claims.

## VII. The Subpoena is Proportionate Considering Plaintiffs' Claims, the Requested Records, and the Low Burden of Compliance

Here, Plaintiffs B.P. and H.A. in the pending Second Amended Class Complaint, represent females who were sexually assaulted by Williams from 2018 to 2022. Plaintiff H.A. alleges that Defendants were engaged in a scheme to extort Williams for money and, in exchange, shielded him from prosecution. Plaintiff H.A. alleges that, as a result of this extortion scheme and resultant shielding of Williams, she and members of the Williams Survivor Subclass were victimized. Thus, the requested documents are necessary and relevant to the TVPA claims and Substantive Due Process Claim alleged on behalf of the Sex Trafficking Class and Williams Survivor Subclass. Further, as this Court previously recognized, this case involves highly important issues implicating citizens' civil and constitutional rights. ECF 128 at 14-15. Female 4, on the other hand, has not provided any explanation of how complying with the subpoena is burdensome on her. The subpoena's requests are proportionate to the needs of the case.

## CONCLUSION

Female 4's attempt to withhold relevant discovery should be denied and the Court should order immediate and complete compliance with Plaintiffs' subpoena.

Dated May 14, 2024.

Respectfully submitted,

HMC Civil Rights Law, PLLC

*/s/ Heather Moore Collins*

Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com


Advocates for Survivors of Abuse PC

*/s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones (*pro hac vice*)
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com


Erickson Kramer Osborne, LLP

*/s/ Julie Erickson*
Elizabeth Kramer (*pro hac vice*)
Kevin Osborne (*pro hac vice*)
Julie Erickson (*pro hac vice*)
44 Tehama St.
San Francisco, CA 94105
415-635-0631
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Proposed Classes*

9

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on May 14, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>Email: lisa@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Reid Spaulding<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>Email: etaylor@watsonroach.com<br>Email: rspaulding@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity* | Daniel H. Rader III<br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 N. Jefferson Avenue<br>P.O. Box 3347<br>Cookeville, TN 38502-3347<br>danrader@moorerader.com<br>danny@moorerader.com<br>*Counsel for Kevin Peters in his individual capacity*<br><br>Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>*Counsel for Toma Sparks in his individual capacity*<br><br>Keith H. Grant<br>Laura Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>E-mail: kgrant@rswlaw.com<br>E-mail: lrufolo@rswlaw.com<br><br>*Counsel for Justin Jenkins in his individual capacity* |

       */s/ Heather Moore Collins*
       Heather Moore Collins