# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE DIVISION

| | |
|---|---|
| B.P., H.A., and S.H., individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) No: 2:23-cv-00071-TRM-JEM |
| v. | ) ) |
| CITY OF JOHNSON CITY, TENNESSEE, a government entity, et al. | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH
## BY JUSTIN JENKINS AND BRADY HIGGINS,
## IN THEIR INDIVIDUAL CAPACITIES

In support of the motion to quash filed contemporaneously herewith, Justin Jenkins and Brady Higgins, in their individual capacities, state as follows:

### INTRODUCTION

This matter involves allegations of a conspiracy between members of the Johnson City Police Department and Sean Williams that purportedly took place over the course of several years. Despite there being no claims that Brady Higgins received any benefit for his alleged malfeasance, and despite Plaintiffs' having abandoned their claims against Justin Jenkins that he received any benefit for his alleged involvement in the conspiracy, Plaintiffs have now subpoenaed over six-years of financial documents for Jenkins and Higgins from various financial institutions and an accounting firm. Specifically, Plaintiffs seek financial records related to Jenkins from Eastman Credit Union, Appalachian Community Federal Credit Union and Accounting Solutions, LLC. As for Higgins, the Plaintiffs seek financial records from Northeast Community Credit Union. These subpoenas broadly

Page 1 of 11

Case 2:23-cv-00071-TRM-JEM   Document 195   Filed 05/18/24   Page 1 of 11   PageID #: 4154

seek production of "[a]ll documents relating to [Justin P. Jenkins and Brady Higgins] from January 1, 2018, through the present." See Ex. 1 - Higgins and Jenkins Financial Records Subpoenas.

As there are no allegations that either Jenkins or Higgins received any benefit for their alleged actions, or inactions, Plaintiffs' subpoenas are, at best, an unwarranted fishing expedition and, at worst, intended to harass these Defendants. As such, these Defendants respectfully request this Court quash the Plaintiffs' subpoenas, with sanctions granted to these Defendants.

## PROCEDURAL AND FACTUAL BACKGROUND

The only specific allegation in the Second Amended Class Action Complaint (the "Complaint") regarding Justin Jenkins' role in Plaintiffs' alleged conspiracy was that he failed, during a thirty-minute time frame and while investigating a potential attempted homicide, to confiscate Sean Williams' mobile phone while Williams was in an interrogation room in the police station. Doc. 121, PageID ##1784-1785. There are no specific allegations in the Complaint that Jenkins received any benefit for his actions or inactions. In fact, Plaintiffs acknowledge such in their response to Jenkins' motion to dismiss, and ask this Court to dismiss any and all beneficiary liability claims against him, without prejudice. Doc. 176, PageID#2589, n. 7.

Interestingly, although Plaintiffs have abandoned their beneficiary liability claims, they assert in their response to Jenkins' motion to dismiss that, if allowed (although the Plaintiffs have not filed a motion to amend), they would include the following language in an amended complaint:

> Jenkins used cash he received from the conspiracy to purchase real property and other assets, which, on information and belief, surpassed the amount available from his legitimate sources of income, including but not limited to, the following: (1) 5.77 acres of undeveloped real property on ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮, in Johnson City, on which Jenkins constructed a new house, and (2) several recreational vehicles.

Doc. 176, Page ID #2587. Thus, despite there being no specific allegations that Jenkins received any money (and thus, presumably no specific evidence to support such a claim), and despite the fact that such purchases are entirely normal for a veteran law enforcement officer, Plaintiffs appear to be attempting to backdoor allegations against Jenkins that he must have been receiving money because he was able to afford a home and purchase recreational vehicles.

With regard to Brady Higgins, the Complaint contains no specific allegations, but only that he, along with other officers, allegedly:

> [A]ffirmatively refused to investigate Williams' crimes against women; affirmatively refused to refer charges for prosecution and/or referred charges in a piecemeal and incomplete manner so as to undermine the prosecution; knowingly conspired to destroy and conceal evidence; knowingly intimidated and dissuaded women from pursuing criminal charges;

Doc. 121, PageID 1772. While not in Plaintiffs' actual pleadings, Plaintiffs asserted in their response to Higgins' motion to dismiss more specific allegations, stating inter alia, "JCPD officer Brady Higgins intimidated, harassed, and discouraged Female 8 over the course of months from pursuing a criminal case against Williams." Doc. 176, PageID#2588. Nonetheless, even if these statements are considered, there are still no allegations that Brady Higgins received any benefit for his alleged acts or failure to act.

Plaintiffs sent initial discovery to Jenkins seeking information regarding Jenkins' finances, including "any assets in your possession, custody or control that may be used to satisfy a judgment." See Ex. 2 - Jenkins' responses to Plaintiffs' initial discovery requests (redacted)[1]. Plaintiffs also

---

[1] The fact that Plaintiffs initially requested "assets ... that may be used to satisfy a judgment" further shows the discovery is intended simply to harass or intimidate these Defendants.

requested "[a]ll tax form W-2's, 1099's and tax returns filed by you or on your behalf, personally, as a member of a trust or other legal entity, or on behalf of any business you have or had an ownership interest in for the past 10 years to date." Id. Jenkins objected to this request and did not provide the requested information. Id. No motion to compel responses to this discovery was filed by Plaintiffs so that this Court could determine whether such information was discoverable.

Thereafter, on or about March 14, 2024, Plaintiffs submitted additional discovery to Jenkins and Higgins. In this set of discovery, Plaintiffs again requested financial information, including the following interrogatories:

1. Identify all ASSETS valued over $10,000 bought or sold since January 1, 2018, including the date of the purchase or sale and the amount paid in consideration.

2. Identify all title(s) YOU hold to property valued over $10,000.

3. Identify all YOUR sources of income since January 1, 2018, including the annual amount of each source as reported on tax returns.

4. Identify all accounting firms used to prepare YOUR tax returns since January 1, 2018, including the name and address of each firm.

5. Identify all financial institutions where YOU have maintained accounts since January 1, 2018, including the name and address of each institution.

Ex. 3, Responses of Jenkins and Higgins to Plaintiffs' discovery. In an attempt to cooperate with Plaintiffs' counsel in discovery, both Jenkins and Higgins provided information responsive to these requests, but noted their objections that Plaintiffs were not entitled to the underlying documents containing the financial information and specifically advised that a motion to quash would be filed should a subpoena for such be issued. Id.

Almost immediately after receiving these responses, Plaintiffs' initially sent counsel draft subpoenas for this information on April 18, 2024. Ex. 5, 4/18/2024 email with attached subpoenas.

Plaintiffs agreed to withhold service of these subpoenas until a meet and confer could be held regarding this information and the scope of such. At the time of the meet and confer, Plaintiffs had not acknowledged their failure to plead sufficient facts for their claim against Jenkins for beneficiary liability. On May 1, 2024, Plaintiffs filed their response to these Defendants' motions to dismiss, therein acknowledging they had not sufficiently pled beneficiary liability claims against Jenkins. Doc. 176, PageID#2589, n. 7.

On May 13, 2024, Plaintiffs' counsel sent an email to all counsel for the individual defendants stating:

> As we discussed, in an effort to avoid litigation, Plaintiffs are willing to narrow the time period for the requested records to a roughly two and a half year window: June 1, 2020, through December 31, 2022. Please advise whether that would resolve the dispute. Alternatively, we would be willing to receive bank records that are redacted to show only cash deposits over $1,000 for the full time period. As we discussed during the meet and confer, we are also amenable to Defendants designating the complete bank records AEO if this would resolve the dispute.

See Ex. 4 - May 13-16, 2024 emails between counsel re: financial documents. Undersigned counsel responded on May 15, 2024, as follows:

> Sorry I'm just now getting to this. As of now, I'm not saying I won't agree to one of the options you note below for my clients, but in light of there being no claims against my clients for beneficiary liability, I don't understand the relevance of any of my clients' financial records. Please let me know why you think these documents are still relevant, or how such may lead to relevant, admissible evidence in light of the current claims, and I will assess.

Id. In response, counsel for Plaintiffs simply stated:

> Thanks for the quick response. We consider the meet and confer process complete and will move in due course. If you, or any other counsel, have a change in position in the interim, please let us know. We plan to serve the subpoenas we have been holding in abeyance

tomorrow. We will serve copies on all opposing counsel again today.

Id. The undersigned thereafter responded and stated: "Okay. I will be asking the court to quash them unless you can tell me why this info is still relevant. I'm happy to discuss." Id. To date, no explanation has been provided as to why Plaintiffs believe this information is still relevant in light of there being no claims against these Defendants for beneficiary liability."[2] The Plaintiffs then served the subpoenas, or at least advised they were going to serve the subpoenas, on or about May 17, 2024. Ex. 6, 5/16/2024 email re financial subpoenas.

## LAW AND ARGUMENT

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[,] or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii). Though Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena, "courts have held that the scope of discovery under a subpoena is the same as the scope of discovery under [Fed. R. Civ. P. 26]." Abundes v. Athens Food Servs., 2015 U.S. Dist. LEXIS 198520, at *4 (M.D. Tenn. Sept. 18, 2015) (citing Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011)). "A subpoena duces tecum must be reasonable, specific, and the requested documents must be relevant." United States v. Justice, 14 F. App'x 426, 433 (6th Cir. 2001). While the party moving to quash has the ultimate burden of proof, if the discovery sought appears "relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance" but "when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the

---

[2]Interestingly, although Defendants Peters and Legault objected to providing any information regarding their financial institutions, Plaintiffs have not filed a motion to compel such information.

Page 6 of 11

relevancy of the request." Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quoting Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003)).

Generally, a party does not have standing to challenge a subpoena issued to a non-party unless the party has some personal right or privilege in the documents or material sought. Abundes, 2015 U.S. Dist. LEXIS 198520 at *4-5. Bank records, like those sought by the Plaintiffs in this case are considered by courts as the type of records a "party may claim a personal right sufficient to confer standing to move to quash a third-party subpoena directed to the bank." Id. at *5. Here, because the Plaintiffs now have no claims for beneficiary liability, Jenkins and Higgins submit it is the Plaintiffs' burden to show the relevancy of the information sought by these subpoenas.

As such, Jenkins and Higgins move to quash the subpoenas to Eastman Credit Union, Appalachian Community Federal Credit Union, Accounting Solutions, LLC and Northeast Community Credit Union for several reasons. First, the documents subpoenaed are not relevant, nor likely to lead to relevant, admissible evidence, especially in light of the fact that Plaintiffs have no claims against either of these Defendants for beneficiary liability. Before such would be relevant, Plaintiffs must make at least some showing that these Defendants received money for their alleged actions or inactions. Plaintiffs have not done so and, in fact, have abandoned their claims against Jenkins for beneficiary liability. See Doc. 176, PageID#2589, n. 7. In light of such, Plaintiffs' subpoenas appear to be simply to harass these Defendants.

Even if it is assumed these subpoenas are not being issued as a means of harassment, these subpoenas are, at best, an attempt by Plaintiffs to find *any* evidence, regardless of how specious or tenuous such may be, with which they can attempt to bootstrap a beneficiary claim. As noted above, Plaintiffs have already attempted a similar strategy by utilizing Jenkins' discovery responses and

making the spurious allegations that Jenkins must have taken money from Sean Williams because he built a home and purchased recreational vehicles. These Defendants anticipate Plaintiffs will similarly attempt to utilize benign financial transactions to revive their claims against these Defendants for beneficiary liability. The Plaintiffs, however, should not be able to make generic allegations, conduct extensive and obtrusive financial discovery, then attempt to bootstrap their generic allegations with what is otherwise benign financial information. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (holding that Fed. R. Civ. P. 8 "marks notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Third, the Plaintiffs' requests for any and all bank records of Jenkins and Higgins from January, 2018, to the present is overly broad. As to Jenkins, and as alleged in the Complaint, the Johnson City Police Department received its first complaint regarding Williams in November, 2019. Doc. 121, Page ID #1789. The only allegations related to Jenkins' involvement in any investigation into Williams are from one specific incident in September, 2020. Id. at Page ID #1784-88. Williams absconded from police custody for two years beginning on or about May 6, 2021. Id. at Page ID #1799. Stated simply, there is no justification for the Plaintiffs seeking more than six (6) years worth of Jenkins' financial records when there are no allegations in the Complaint that link Williams to Jenkins before or after September, 2020, and no specific allegations that Jenkins received any payments from Williams, his former company, or his former business partner at any time.

As to Higgins, the Complaint does not provide any specific dates for his alleged actions or failures to act, except to aver generally that he, along with others, was "aware of numerous complaints of sexual assault and drugging by Williams ... as early as 2019". Doc. 121, PageID#1842.

Page 8 of 11

Case 2:23-cv-00071-TRM-JEM   Document 195   Filed 05/18/24   Page 8 of 11   PageID #: 4161

Even taking into consideration the "new evidence" noted by Plaintiffs in their response to these Defendants' motions to dismiss, Higgins' involvement did not arise until July, 2022. Thus, assuming there was a valid reason for the issuance of a subpoena to Northeast Community Credit Union, there is absolutely no reason to request information from January 1, 2018 to the present.

## CONCLUSION

There are no claims against Higgins that he received any benefit for his alleged involvement in any alleged scheme. Plaintiffs have abandoned any such claims against Jenkins. As such, their financial records are irrelevant to the claims asserted against them in this case. The subpoenas are nothing more than a fishing expedition, at best, and are at worst, an attempt to harass Jenkins and Higgins. Accordingly, Jenkins and Higgins respectfully request that the Court enter an order quashing the subpoenas discussed herein and grant sanctions against Plaintiffs due to these Defendants having to file this motion to quash improvidently issued subpoenas.

Respectfully submitted,

ROBINSON, SMITH & WELLS, PLLC

By:    s/ *Keith H. Grant*
     Keith H. Grant, BPR# 023274
     Laura Beth Rufolo, BPR# 015622
     Philip Aaron Wells, BPR# 036248
     Suite 700, Republic Centre
     633 Chestnut Street
     Chattanooga, TN 37450
     Telephone: (423) 756-5051
     Facsimile: (423) 266-0474
     *Attorneys for Justin Jenkins, Brady Higgins and Jeff Legault, in their individual capacities*

# CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing pleading was filed electronically on May 18, 2024. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                        Robinson, Smith & Wells, PLLC

                                        By:    s/ *Keith H. Grant*

cc:    Heather Moore Collins
        Ashley Walter
        HMC Civil Rights Law, PLLC
        7000 Executive Center Dr.
        Suite 320
        Brentwood, TN 37027
        615-724-1996
        Email: heather@hmccivilrights.com

        Vanessa Baehr-Jones
        Advocates for Survivors of Abuse
        4200 Park Blvd., No. 413
        Oakland, CA 94602
        Email:vanessa@advocatesforsurvivors.com

        Elizabeth A. Kramer
        Kevin M Osborne
        Erickson Kramer Osborne LLP
        44 Tehama Street
        San Francisco, CA 94105
        Email: elizabeth@eko.law
        Email: kevin@eko.law

        K. Erickson Herrin
        HERRIN, MCPEAK & ASSOCIATES
        515 East Unaka Avenue
        P.O. Box 629
        Johnson City, TN 37605-0629
        lisa@hbm-lawfirm.com

        Emily C. Taylor
        WATSON, ROACH, BATSON & LAURDERBACK, P.L.C.
        P.O. Box 131

Knoxville, TN 37901-0131
etaylor@watsonroach.com
Attorneys for Defendants, Johnson City, Tennessee, Karl Turner, Captain Kevin Peters and Investigator Toma Sparks.

Daniel H. Rader III
Daniel H. Rader IV
MOORE, RADER & YORK PC
46 N. Jefferson Avenue
P.O. Box 3347
Cookeville, TN 38502-3347
danrader@moorerader.com
danny@moorerader.com
Counsel for Kevin Peters in his individual capacity

Kristin Ellis Berexa
Ben C. Allen
FARRAR BATES BEREXA
12 Cadillac Drive, Suite 480
Brentwood, TN 37027-5366
kbrexa@fbb.law
ballen@fbb.law
Counsel for Toma Sparks in his individual capacity