IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| B.P., H.A., and S.H., individually, and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF JOHNSON CITY, et al.,<br><br>Defendants. | No. 2:23-cv-00071-TRM-JEM<br><br>Judge McDonough<br><br>Magistrate Judge McCook |

# DISTRICT ATTORNEY GENERAL STEVEN FINNEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER

Undersigned counsel for District Attorney General Steven Finney, a nonparty, enters a *limited* appearance to move the Court to quash two subpoenas served by Plaintiffs and to move for a protective order. Fed. R. Civ. P. 26, 45. Undersigned counsel certifies that she has conferred with Plaintiffs in good faith and that they have been unable to come to an agreement.

## BACKGROUND

Plaintiffs filed suit against the City of Johnson City, Tennessee, Johnson City Police Department ("JCPD") Police Chief Karl Turner, JCPD Captain Kevin Peters, JCPD Investigator Toma Sparks, JCPD Investigator Justin Jenkins, JCPD Investigator Jeff Legault, JCPD Investigator Brady Higgins, and 12 Does, alleging that JCPD Officer Sean Williams drugged and raped women in Johnson City, Tennessee, for years and that Defendants had knowledge and did not intervene. (D.E. 121). Officer Williams' actions are being investigated at both the state and federal levels. (*Id.* at PageID# 1773; 1791 ¶ 113; 1794 ¶ 139.) Plaintiffs bring claims alleging sex

trafficking, obstruction of the federal sex trafficking statute, aiding and abetting a sex-trafficking venture, equal protection violations, substantive due process violations, negligence, and failure to train. (*Id*. at PageID# 1825–48.)

On April 22, 2024, counsel for Plaintiffs served a subpoena upon General Finney to testify in a deposition in this civil action on July 17, 2024, at 9:00 a.m. (EX. 1.) Plaintiffs also served a subpoena upon T-Mobile[1] for the "historical call detail records for the below listed phone number for the specified date ranges:"

For the time periods:

• August 1, 2022 – September 15, 2022
• April 18, 2023 – May 13, 2023
• June 1, 2023 – July 19, 2023
• August 10, 2023 – September 2, 2023
• October 10, 2023 – October 24, 2023
• November 17, 2023 – November 25, 2023
• December 7, 2023 – December 25, 2023
• January 15, 2024 – March 20, 2024

(EX 2.)

On May 1 and May 3, 2024, General Finney formally objected to these requests, (EX 3, 4), after which Plaintiff's counsel and undersigned counsel conferred and were unable to reach an agreement. General Finney now moves to quash the subpoenas and seeks a protective order.

## LEGAL STANDARD

"A ruling limiting the scope of discovery is 'within the sound discretion of the trial court.'" *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2023 WL 3098824, at *4 (M.D. Tenn. Apr. 26, 2023) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)). Federal Rule of Civil Procedure

---

[1] T-Mobile is the incorrect carrier for the listed phone number, which has been redacted from exhibit 2, attached hereto. Tenn. Code Ann. § 10-7-503(a)(1)(A)(ii), (a)(5), (f)(1)(A), (f)(2). Nevertheless, General Finney seeks a protective order for the call records in question should a subpoena re-issue to the proper carrier.

26(c) allows a trial court to grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). "[C]ourts 'consider one's status as a nonparty to be a significant factor in the undue burden analysis.'" *Sinclair v. Lauderdale County, Tenn.*, No. 2:14-cv-02908, 2015 WL 1393423, at *3 (W.D. Tenn. Mar. 24, 2015) (quoting *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. May 12, 2010)).

Additionally, on timely motion, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). "The scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26." *Id*.

## ARGUMENT

### I. Plaintiffs Are Not Entitled To General Finney's Call Records.

General Finney seeks a protective order regarding his cell phone historical data for three reasons. First, General Finney's cell phone data is confidential. Second, information regarding criminal investigations may not be sought by subpoena. And third, the law enforcement privilege protects information related to ongoing criminal investigations and prosecutions.

While this subpoena is directed at a third-party cell phone provider, General Finney has standing to challenge the subpoena because he has a personal right, privilege, and/or proprietary interest in the dissemination of his call records. *State v. Harrison*, 270 S.W.3d 21, 28–29 (Tenn. 2008) (citing *Gravel v. United States,* 408 U.S. 606, 628–29 (1972)) ("[A] person who has a personal right, privilege, or proprietary interest in materials subject to a third-party subpoena has standing to challenge the subpoena.").

First, the subpoena should be quashed because it seeks information that is confidential under state law. General Finney uses his phone in both personal and professional capacities. His

personal cell phone data is confidential under state law. Tenn. Code Ann. § 10-7-503(a)(1)(A)(ii), (a)(5), (f)(1)(A), (f)(2). "Principles of federalism and comity dictate that, should a federal court depart from a state law privilege in concluding that discovery may proceed, some deference (and in certain cases a great deal of deference) must be given to the state interests underlying the privilege." *Farley v. Farley*, 952 F. Supp. 1232, 1237, 1997 WL 73204 (M.D. Tenn. 1997) (citation omitted). "[T]he federal court presiding over discovery disputes is obligated to undertake a close analysis of competing state and federal law objectives to ensure vindication of the paramount federal interest with as minimal an intrusion on the state interests as is consistent with [a] federal claim." *Id.* (quotation omitted).

Here, revealing personal phone details from a non-party district attorney general is not a minimal intrusion into state interests and will not serve the federal interest. Indeed, Plaintiffs have not explained how General Finney's personal cell phone records are relevant to their claims. The second amended complaint asserts that General Finney "should have inquired whether JCPD has conducted an Internal Affairs ('IA') investigation into" allegations of public corruption. (*See* D.E. 121, PageID# 1808–09, ¶¶ 220–25.) But General Finney is not a party to this action. And while the contentions relating to General Finney are dated August 24–September 1, 2022, the subpoena seeks a large volume of call records after those dates. (*See id.*, EX. 2.) Knowing whom General Finney called on any given day will not give rise to discoverable evidence regarding the claims in this case, so his confidentiality interest outweighs any minimal benefit that intrusion into his private call records could provide. *See Farley*, 952 F. Supp. at 1237. Thus, the Court should quash the subpoena and issue a protective order for General Finney's cell phone records.

Second, to the extent General Finney's cell phone data contains or leads to information related to ongoing criminal prosecutions, it is not discoverable by subpoena. Documents and other

information belonging to a district attorney are discoverable solely by the means provided in Tenn. R. Crim. P. 16. *See The Tennessean v. Metro Gov't of Nashville of Davidson Cnty*, 485 S.W.3d 857 (Tenn. 2016); *see also Sutton v. State*, No. 03C01-9702-CR-00067, 1999 WL 423005, at *6 (Tenn. Crim. App. June 25, 1999). Rule 16 "shield[s] information related to a pending criminal case" protects the State, the defendant, and the public. Tenn. Op. Atty. Gen. No. 18-07, 2018 WL 1443717 at *4 (Mar. 8, 2018). A defendant in a criminal case can simply circumvent Rule 16, compromising the State's prosecution, "if he could simply subpoena an entire police investigative file." *Id*. A defendant's right to a fair trial can be compromised if information related to a pending criminal case is acquired and disseminated by a third party. *Id*. And innocent members of the public can have their privacy invaded or be unfairly implicated when incomplete information about a criminal case is disclosed before the case is brought to trial. *Id*. And where information is protected under state law, federal courts should decline to remove that protection under principles of comity. *See Farley*, 952 F. Supp. at 1237; *Moody v. Michigan Gaming Control Bd.*, No. 12-CV-13593, 2013 WL 3013862, at *4–5 (E.D. Mich. June 18, 2013).

Third, the law enforcement privilege shields disclosure of investigative and prosecutorial information to protect the ability of a law enforcement agency to conduct investigations. *United States v. Se. Eye Specialists, PLLC*, 586 F. Supp. 3d 787, 793 (M.D. Tenn. 2022). And Tennessee law protects from disclosure any records which are "part of a pending, open, or ongoing criminal investigation." *Schneider v. City of Jackson*, 226 S.W.3d 332, 334, 345 (Tenn. 2007). Plaintiffs' complaint deals with the JCPD's criminal investigation of Sean Williams, as well as JCPD's obstruction of the federal investigation. Thus, they appear to seek information about ongoing criminal investigations, which are being conducted on both a state and federal level. To the extent

such information is contained in or can be gleaned from General Finney's call history records, the subpoena should be quashed and a protective order granted.

In sum, the records sought by the subpoena can fall into only one of two categories: (1) personal information about General Finney that is confidential under state law and irrelevant to the issues in this case, or (2) information related to a ongoing criminal investigation that cannot be discovered via subpoena and is protected by the law enforcement privilege. Because the subpoena seeks no relevant, discoverable information, it should be quashed and a protective order entered.

## II. Plaintiffs Are Not Entitled To Depose General Finney.

General Finney also asks the Court to quash the testimonial subpoena and seeks a protective order to prohibit his deposition and protect his mental impressions, opinions, recommendations, and deliberations. Fed. R. Civ. P. 26(c), 45(d).

### A. The attorney work product privilege, law enforcement privilege, and/or deliberative process privilege protect General Finney from testifying.

To the extent Plaintiffs seek to depose General Finney to obtain his mental impressions or prosecutorial decisions about ongoing criminal prosecutions, that information is privileged.

First, the attorney work product privilege "protects the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways [,] prepared in anticipation of litigation." *United States v. One Tract of Real Prop. Together With all Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 427, 1996 WL 511262 (6th Cir. 1996) (quotation omitted). Under Fed. R. Civ. P. 26(b), opinion work product is "virtually undiscoverable because it includes mental impressions, conclusions, opinions, or legal theories."

6

*Tauscher v. Safeco Ins. Co. of Am.*, No. 3:19CV-00498-RGJ, 2020 WL 13548688, at *1 (W.D. Ky. July 21, 2020).

The role of the work product doctrine "in assuring the proper functioning of the criminal justice system is even more vital." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.*; *see also Lawrence for Est. of Hoffman v. Madison Cnty.*, No. 5:13-CV-383-GFVT-REW, 2015 WL 13636281, at *5 (E.D. Ky. Feb. 24, 2015) ("The work product doctrine applies with much vitality in the criminal law context."). "Several courts have extended the work-product protection to non-parties when that vindicated the purposes underlying the doctrine." *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 144 (D. Mass. 2014). "Some courts have applied a form of the work product privilege in situations where a civil litigant seeks the disclosure of a prosecutor's open and active criminal file." *Cook v. City of Chicago*, No. 06 C 5930, 2010 WL 331737, at *2 (N.D. Ill. Jan. 26, 2010) (collecting cases). Courts in this circuit have applied the attorney work product privilege to protect criminal prosecutors' mental impressions, conclusions, opinions, or legal theories. *One Tract*, 95 F.3d at 428; *Tauscher v. Safeco Ins. Co. of Am.*, No. 3:19-CV-00498-RGJ, 2020 WL 13548688, at *1 (W.D. Ky. July 21, 2020).

Because there are ongoing criminal investigations and prosecutions of Sean Williams, both at the state and federal levels, the need for protection is significant to preserve the integrity of the criminal processes. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a

7

civil litigant to a reasonably prompt determination of his civil claims or liabilities."). Plaintiffs contest General Finney's opinions, decisions, and legal conclusions. (D.E. 121, PageID# 1808–09, ¶¶ 220–25.) For example, they assert that General Finney should have directed the TBI to conduct an investigation into JCPD and should have inquired into any JCPD internal investigation. (*Id.*, ¶¶ 222–23.) Plaintiffs disagree with General Finney's legal conclusions. (*Id.*, at ¶ 225.) Any information Plaintiffs seek related to these contentions would fit squarely within General Finney's opinion work product that is "virtually undiscoverable." *Tauscher*, 2020 WL 13548688, at *1.

Second, the law enforcement investigative privilege "provides protection for ongoing criminal investigations." *United States v. Delatorre*, 438 F. Supp. 2d 892, 902 (N.D. Ill. 2006), *aff'd sub nom. United States v. Benabe*, 436 Fed. Appx. 639 (7th Cir. 2011); *see also Se. Eye Specialists, PLLC*, 586 F. Supp. 3d at 793 (recognizing the investigative privilege); *Dep't of Texas Veterans of Foreign Wars of United States v. Dorning*, No. CV 07-S-2144-NE, 2008 WL 11379930, at *2 (N.D. Ala. Nov. 10, 2008) (collecting cases recognizing the privilege); *Becker v. Tools & Metals, Inc.*, No. 3:05-CV-627-L, 2010 WL 11537569, at *3 (N.D. Tex. Nov. 19, 2010) (same). And Tennessee law protects from disclosure any records which are "part of a pending, open, or ongoing criminal investigation." *Schneider v. City of Jackson*, 226 S.W.3d 332, 334, 345 (Tenn. 2007). *But cf. id.*, at 334 ("[T]he law enforcement privilege has not . . . been adopted as a common law privilege in Tennessee.")

Sean Williams is under investigation and was arrested in April 2023. (D.E. 121, PageID# 1791 ¶ 113.) Plaintiffs' deposition of General Finney about his decisions and/or investigations of JCPD would inevitably lead to information related to the open, ongoing investigations and prosecutions of Sean Williams. Thus, General Finney should be protected from testifying.

Third, the purpose of the deliberative process privilege is to protect "opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States v. Carell*, No. 3:09-0445, 2011 WL 2078023, at *13 (M.D. Tenn. May 26, 2011). The Court should protect General Finney's mental impressions and prosecutorial decisions here because criminal investigations and prosecutions are ongoing. *But cf. Dodd v. Potter*, No. 1:09-CV-01148-JDB, 2011 WL 1466387, at *1 n.1 (W.D. Tenn. Jan. 20, 2011) ("[T]he Sixth Circuit has not addressed whether [the deliberative process] privilege applies to state actors or agencies.").

Because Plaintiffs seek information related to the JCPD's handling of allegations against Sean Williams, any deposition of General Finney will inevitably delve into matters that are protected under state law, such as General Finney's opinion work product and information related to open, ongoing criminal investigations. As such, the Court should quash the subpoena and grant General Finney a protective order.

### B. The apex doctrine bars depositions of high-ranking officials absent extraordinary circumstances.

Even if Plaintiffs disclaim any interest in privileged information, the apex doctrine—also known as the "*Morgan* doctrine" or extraordinary circumstances test[2]—protects General Finney from a deposition seeking purely factual testimony as a high-ranking official.

---

[2] While most courts treat the apex doctrine and the extraordinary circumstances test as interchangeable, some district courts treat the tests as distinct but "very similar." *EMW Women's Surgical Ctr., P.S.C. & Planned Parenthood of Indiana & Kentucky, Inc.*, No. 3:17CV-00189-GNS, 2017 WL 3749889, at *2 (W.D. Ky. Aug. 30, 2017). Regardless of how this Court applies the apex doctrine and the extraordinary circumstances test, both place a high burden on Plaintiffs to justify General Finney's deposition.

*The apex doctrine*

The apex doctrine has its roots in *United States v. Morgan*, 313 U.S. 409 (1941), and states that, "absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions." *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:20-CV-00535-BJB-CHL, 2023 WL 5250963, at *2, *4 (W.D. Ky. Aug. 15, 2023) (citing *Morgan*, 313 U.S. at 422).

"One of the driving principles of the *Morgan* decision is that the indiscriminate depositions of high-ranking government officials would be unduly burdensome upon said officials and likely discourage them from accepting positions as public servants." *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002). "The fact that the person whose opinions are sought is a public official must . . . be taken into account" when determining whether to quash a deposition subpoena. *Gibson v. Carmody*, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991).

"To invoke the protection of the apex doctrine, the party resisting discovery must first demonstrate he or she is a high-ranking official." *Cannavan v. Cnty. of Ventura*, No. CV-2010-012-FMO-PVCX, 2021 WL 4945186, at *6 (C.D. Cal. July 16, 2021) (quoting *Estate. of Silva by & through Allen v. City of San Diego*, 2021 WL 211613, at *2 (S.D. Cal. Jan. 21, 2021)). "Once that is shown, the burden shifts to the party seeking the deposition" to establish extraordinary circumstances. *Id*. The Sixth Circuit "recognized the protection given to nonjudicial high-ranking government officials in *Warren Bank v. Camp*, 396 F.2d 52, 56–57 (6th Cir. 1968)." *Burgess v. United States*, No. 17-11218, 2022 WL 17725712, at *4 (E.D. Mich. Dec. 15, 2022).

The apex doctrine "serves several purposes: (1) to protect the integrity and independence of the government's decision-making processes, (2) to permit high-ranking government officials

to perform their official tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (citations and quotations omitted).

The Eastern District of Michigan has recently explained the rationale behind applying the apex doctrine to high-ranking government officials:

> First, [. . .] there are separation of powers concerns when a party attempts to gather information on the mental processes by which a high-ranking federal agency official exercised their official duties or discretion. Second is the concern that subjecting high-ranking officials to questioning about their agencies or their actions would distract them from their official duties. Third, allowing these kinds of depositions in the normal course has the potential to discourage persons from taking high-ranking positions or leaving the position when there is controversy. The Court does not want to skirt these policy and practical concerns.

*Burgess*, 2022 WL 17725712, at *4 (quotations and citations omitted); *see also Smith v. Cnty. of Wayne*, No. 2:21-CV-12070, 2023 WL 4830585, at *3 (E.D. Mich. July 27, 2023) (stating that the Sixth Circuit has not rejected the apex doctrine for high-ranking government officials); *EMW Women's Surgical Ctr.*, 2017 WL 3749889, at *2 (same).

A district attorney general is a high-ranking government official. *See Shahzad v. Cnty. of Nassau*, No. CV-132268-SJF-WDW, 2014 WL 12860941, at *1 (E.D.N.Y. July 16, 2014) (finding the district attorney was a high-ranking official and could be deposed only if the plaintiff established "exceptional circumstances"); *Jackson v. Getchell*, No. CIV.A. 86-1956-MA, 1986 WL 15472, at *2 (D. Mass. Dec. 12, 1986) (describing the Plymouth County district attorney as a "high ranking state official"). "If alternate means are not even considered before allowing the deposition of prosecutors, prosecutors could potentially be subjected to spending time involved in civil litigations that may be better spent in performing their prosecutorial responsibilities." *Serv. Corp. Int'l v. Cont'l Cas. Co.*, No. 04-61156-CIV, 2005 WL 8165499, at *4 (S.D. Fla. July 28,

2005). As a result, the burden shifts to Plaintiff to establish that extraordinary circumstances exist to compel General Finney's testimony.

*Plaintiff's burden under the apex doctrine*

Under the apex doctrine, once the potential deponent establishes that he or she is a high-ranking government official, the plaintiff must establish extraordinary circumstances to compel the deposition. The extraordinary circumstances test "is applied almost universally by state and federal courts across the country" in analyzing motions to quash subpoenas to high-ranking officials. *In re Office of the Utah Attorney Gen.*, 56 F.4th 1254, 1263 (10th Cir. 2022). While the Circuits "vary on what constitutes extraordinary circumstances, [] nearly all of them agree that a party must show at a minimum that the information sought is not obtainable from another source." *Id.* at 1260. Some the deponent to have first-hand knowledge related to the claims. *Id.* at 1257; *Williams v. Court Servs. & Offender Supervision Agency*, No. 08-CV-1538 (RCL-AK), 2014 WL 12788954, at *2 (D.D.C. Mar. 6, 2014) ("The party seeking the deposition must demonstrate that the official has at least some personal knowledge about the underlying matter and that the information is available only from that official and not from another source."). And several require that the information sought be *essential*, not just relevant, to the claims. *McNamee v. Massachusetts*, No. CIV.A. 12-40050-FDS, 2012 WL 1665873, at *1 (D. Mass. May 10, 2012); *Hankins v. City of Philadelphia*, No. CIV.A. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996).

Federal courts also apply the "extraordinary circumstances" test for state officials. *In re Office of the Utah Attorney Gen.*, 56 F.4th at 1262. This is because "the prospect of a federal court ordering the deposition of a high-ranking state official" presents separation of powers concerns. *Id.* "[O]ur system not only separates power among branches of the federal government, but also

between the state and federal governments." *Id.* (citing *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991) ("Just as the separation . . . of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front.").

Here, Plaintiffs must establish that (1) General Finney has first-hand knowledge related to the claim being litigated; (2) his testimony will likely lead to the discovery of admissible evidence – i.e., evidence that is not protected from disclosure pursuant to *Schneider* and *Tennessean*; (3) his deposition is *essential* to the party's case; and (4) the information cannot be obtained from an alternative source or via less burdensome means. *In re Office of the Utah Attorney Gen.*, 56 F.4th at 1264. General Finney was elected to his position in 2022 and was not in office at the time most of the events in the second amended complaint took place; his knowledge relates to his position as prosecutor of the criminal defendant. (*See generally*, D.E. 121.) Plaintiffs have not met their high burden under the apex doctrine. The subpoena should be quashed, and a protective order should be granted prohibiting the deposition testimony of General Finney.

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoenas and enter protective orders prohibiting the disclosure of General Finney's cell phone records and prohibiting the deposition of General Finney.

>Respectfully submitted,
>
>JONATHAN SKRMETTI
>Attorney General and Reporter
>
>*s/Liz Evan*
>ELIZABETH EVAN (BPR #37770)
>Assistant Attorney General

Law Enforcement and
Special Prosecutions Division
Office of the Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 532-1600
Fax: (615) 532-4892
Liz.Evan@ag.tn.gov
*Counsel for General Finney*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing was filed and served by operation of the Court's ECF/PACER system on this the 31st day of May 2024, upon:

Vanessa Baehr-Jones
Advocates for Survivors of Abuse
4200 Park Blvd. No. 413
Oakland, CA 94602
vanessa@advocatesforsurvivors.com

Elizabeth A. Kramer & Kevin M. Osborne
Erickson Kramer Osborne, LLP
44 Tehama Street
San Francisco, CA 94105
elizabeth@eko.law
kevin@eko.law
(415) 635-0631

Heather Moore Collins
Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr. Suite 320
Brentwood, TN 37027
heather@hmccivilrights.com
ashley@hmccivilrights.com

*s/ Liz Evan*
ELIZABETH EVAN
Assistant Attorney General