IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., et al.,

    **Plaintiffs,**

v.                                        No: 2:23-cv-00071-TRM-JEM

**CITY OF JOHNSON CITY, TENNESSEE, et al.,**

    **Defendants.**
_____/

## PLAINTIFFS' MOTION REGARDING DEPOSITION CONDUCT

Plaintiffs move for an order for sanctions against counsel for Defendant Kevin Peters, Daniel Rader. On June 4, 2024, Mr. Rader engaged in repeated acts of misconduct during the course of the deposition of Female 4, making improper speaking objections, interfering with key witness testimony by suggesting answers to the witness, and finally, abandoning all attempts at using the deposition for truth-seeking purposes by repeatedly asking the witness to comment on Plaintiffs' counsel's ethics and conduct. Mr. Rader attempted to bully and intimidate Plaintiffs' counsel, and in doing so, obstructed the fact-finding process. This is not the first time during this litigation that Mr. Rader has acted in ways that are below the expected standard of an officer of the Court. Plaintiffs therefore request the following limited relief: the Court to instruct Mr. Rader that he may only state "objection" on the record in any deposition going forward (other than that of his client) when any other attorney is examining the witness. This will deter further misconduct and prevent any additional coaching or interfering with witnesses during depositions.

1

## RELEVANT FACTUAL BACKGROUND

### I. Improper Speaking Objections

On June 4, 2024, the parties took the deposition of Female 4. Plaintiffs' counsel Vanessa Baehr-Jones questioned the witness for approximately three hours, followed by counsel for Defendant Kevin Peters, who had cross-noticed Female 4. Counsel for the other Defendants asked brief follow-up questions, and Ms. Baehr-Jones asked several redirect questions.

In her direct, Ms. Baehr-Jones asked the witness about exhibits of bank records which had been excerpted from thousands of pages of records provided in response to a subpoena to Renasant Bank. Excerpting the records was necessary both because they were voluminous, and therefore could not be produced and copied in their totality, and because the deposit and withdrawal slips for specific transactions were produced at different Bates numbers from the bank statements themselves. (*See* ECF 192, Renasant Bank Records.)[1] To match the bank statements with the corresponding deposit / withdrawal slips or checks therefore required excerpting the records.

Ms. Baehr-Jones specifically asked about transactions that were listed as, "commercial cash," in the bank statements and which matched transaction slips to either Female 4 or another limited liability company, for which Female 4 testified she may be on the bank records, Skyline Restoration and Manufacturing LLC. ("Q: Whose name am I going to see when I get the Renasant Bank records for Skyline Restoration? A: Avery Myers. Q: Okay. Who else? A: I'm not sure. Q: Am I going to see your name? A: Maybe." 69:14-21.)

During the course of Ms. Baehr-Jones' examination, Mr. Rader repeatedly made lengthy speaking objections characterizing the nature of the bank records' exhibits as

---

[1] Plaintiffs received an additional production from Renasant of approximately 1,000 more pages of bank records after ECF 190 was filed. Baehr-Jones Decl. ¶ 4.

"misrepresentative," "out of order," "not connected with each other," "missing pages," "missing statements," "scattered," and in one case even commenting, "that's not what it says" before the witness had a chance to respond to the question. During the first instance of this kind of speaking objection, Ms. Baehr-Jones stated that Mr. Rader appeared to be improperly testifying for the witness and asked to go off the record if he wished to discuss the exhibits with counsel. Mr. Rader refused:

> MR. RADER: I object to the introduction of these exhibits that are incomplete and misrepresentative to the extent that they skip –
>
> MS. BAEHR-JONES: Okay. We're going to go off the record if you're going to start testifying for the witness, counsel.
>
> MR. RADER: I'm going to make –
>
> MS. BAEHR-JONES: We're going off the record.
>
> MR. RADER: On the record.
>
> MS. BAEHR-JONES: We're going off the record.
>
> MR. RADER: I make objections on the record.
>
> MS. BAEHR-JONES: If you're testifying for the witness, we are going to go off the record.
>
> MR. RADER: I make objections on the record.
>
> MS. BAEHR-JONES: Are you done?
>
> MR. RADER: I think, until you ask the next question that's objectionable.
>
> MS. BAEHR-JONES: I would ask that you not testify for the witness, and we will go off the record and call the Court if you continue to do so.
>
> MR. RADER: I am going to make objections when I think it's appropriate and in the manner that I think is appropriate. And I will answer to the judge if you think that I have done something wrong. You just file your motion.
>
> MS. BAEHR-JONES: If you start testifying for the witness again, we will go off the record and I will call the Court. Let's keep going. (94:4-25; 95:1-16.)

3

Mr. Rader continued to make similar speaking objections throughout the course of Ms. Baehr-Jones' direct, interrupting her before the witness could answer. (106:3-7; 121:20-25, 122:1-2; 127:10-16.) As this continued, the witness began adopting Mr. Rader's objections into her answers:

> Q: So who did you –
>
> MR. RADER: I'm sorry to interrupt you, Mr. Baehr-Jones. I've just realized that this Exhibit No. 85 is missing one of the monthly statements and it, like the others, is out of order. So I'm going to raise that objection.
>
> MS. BAEHR-JONES: Okay. Thank you for that. (143:11-20.)
>
> . . . .
>
> Q: So where's the profit to you?
>
> A: Well, if you had the rest of the bank statement here or anything else, I could explain to you. I paid Avery and then, since I was not needing capital to continue, I'd already decided I'm going to take my career in a different direction at this point, I used the profits of that project to pay off my car. (147:1-8)

In one instance the witness immediately adopted Mr. Rader's speaking objection as her answer:

> Q: So that was taken out in commercial cash, wasn't it?
>
> A: Someone from the office transferred that to my bank account, I believe.
>
> Q: But it says that it was -- if you look back on RENASANT938, right, it says 850 taken out in cash on March 27th of 2020?
>
> MR. RADER: Object to form. That's not what it says.
>
> A: That's not what it says. It says commercial cash. And if you actually look at this on that page, it says transfer to a lender. (84:9-20.)

At one point, Mr. Rader googled the address for a building counsel was asking the witness about completing a project on, provided the address of the building on the record even

4

Case 2:23-cv-00071-TRM-JEM   Document 217   Filed 06/11/24   Page 4 of 18   PageID #: 4390

though Plaintiffs' counsel was specifically asking the witness if she recalled the address, and then commented on the building being "beautiful":

> Q: (BY MS. BAEHR-JONES) What's the address of that building?
>
> A: I do not know the address of the building. I can pull it up online, if you want me to. I think it's very easy to find.
>
> Q: Yeah. Let's find it on a map during the next break so I can get that from your attorney.
>
> MR. RADER: Let's just do it right here on the record.
>
> MS. BAEHR-JONES: No, because we're not going to use up that time.
>
> MR. RADER: Then don't ask the question.
>
> MS. BAEHR-JONES: I'm going to ask her attorney to find a map with her and provide it to me.
>
> MR. RADER: I'll object to that. You don't give directions to her attorney.
>
> Q: (BY MS. BAEHR-JONES) Okay. Well, how long do you think it will take you to pull it up on a map?
>
> A: I can do it right now. Actually, you can do it. I mean, you can do it very quickly. Google the Public Service Building. I've done an entire facade restoration for one side of that, ma'am.
>
> Q: In 2022?
>
> A: You have the dates, yes.
>
> MS. BAEHR-JONES: I'll ask my co-counsel if she can find the Public Service Building in Asheville, North Carolina.
>
> MR. RADER: I'll help you. It's at 34 Wall Street.
>
> MS. BAEHR-JONES: 34 Wall Street. Okay.
>
> MR. RADER: It's a beautiful building.
>
> THE WITNESS: It is now. (151:19-25, 152:1-25, 153:1-8.)

During Mr. Rader's examination, he then asked Female 4 questions which were premised on his own inappropriate speaking objections:

> Q: All right. Now, do you -- this Exhibit 77 has a lot of pages to it.
>
> A: It does.
>
> Q: Plaintiffs' counsel gave this to you, right?
>
> A: That's correct.
>
> Q: She omitted these pages that we've marked as Exhibits 104 and 103, didn't she?
>
> MS. BAEHR-JONES: Objection.
>
> A: I understand. Yes, she did.
>
> Q: And when we put those together with this Exhibit 77, we see the complete picture, don't we?
>
> MS. BAEHR-JONES: Objection.
>
> A: Yes, we do. (229:14-25, 230:1-3.)

Female 4 provided testimony which adopted Mr. Rader's speaking objections' characterization of Plaintiffs' evidence as incomplete and therefore misleading:

> Q: Do you have any idea why plaintiffs' counsel would withhold these important pages in order to give you complete context?
>
> MS. BAEHR-JONES: Objection.
>
> A: To confuse me, and they also don't suit the narrative. (230:4-10.)

Notwithstanding Mr. Rader's critiques of the exhibits, he then used Plaintiffs' own exhibits to ask Female 4 about the "commercial cash" transactions and corresponding deposit / withdrawal slips which were matched up in the relevant exhibits. (*See, e.g.*, 221:1-15.) He also used out-of-order Bates to examine the witness, for similar reasons as Plaintiffs' counsel had: to match up bank statements with corresponding withdrawal/deposit slips. (*See, e.g.*, 211:11-13

6

("Q: Sure. We started on 611. Then we went to 619. Then we went to 626."); 213:18-25; 214:1-3; 215:1-10.)

## II. Interfering with Key Testimony

During Ms. Baehr-Jones' direct, Female 4 testified that "Kevin Peters" called her directly in March 2022 to tell her that Sean Williams was a fugitive. On direct, she recalled the circumstances of this conversation in detail, appearing to have a specific memory of the date, her location, and the conversation:

Q: What's the photograph of?

A: Of my mother sitting on the beach.

Q: Why does that refresh your memory?

A: Because I was having a nice, relaxing day on the beach with my mother, and I got a phone call discussing that [Sean Williams] was on the run.

Q: What date did you say it was?

A: March the 7th of 2022.

Q: Where were you with your mom?

A: Daytona.

Q: And who made the phone call to you?

A: I believe that that was Kevin Peters. (106:13-25.)

Ms. Baehr-Jones then asked Female 4 about whether she spoke to "Kevin Peters" on other occasions and she responded yes, she had "a few times right around that point." (107:7-8.)

This was potentially extremely damaging testimony to Defendant Peters as there was no legitimate reason for Peters to call Female 4 in March 2022 to tell her that Williams was on the run. As an initial matter, Williams had been on the run for over ten months by then, so it makes no sense that Peters would call Female 4 in March 2022 solely for the purposes of informing her

7

that Williams had absconded in May 2021. Moreover, Female 4 testified that she was not in contact with Williams during this time, so there would be no basis for Peters to contact her at that point to ask for assistance in locating Williams. More importantly, though, Peters was the number two commanding officer in JCPD in March 2022, not one of the investigatory officers assigned to a Williams' matter. Thus, the fact that Peters placed this call to Female 4, rather than an officer who would legitimately be tasked with investigating Williams' whereabouts, seems to suggest the call was for an illegitimate purpose.

Finally, the timing of the call and what happened next have additional damaging implications for Peters: In April 2022, Female 4 opened an account for Williams' company, Glass and Concrete Contracting LLC ("GCC"), that was solely in her name and began selling GCC assets and transferring the resulting funds into accounts she controlled. *See* ECF 190. In June 2022, she withdrew large sums in cash—nearly $30,000 in two weeks—from this account. *Id*. at 3-4. She created what appears to be a shell company, Southern Construction and Consulting LLC, through which she moved over $90,000 in funds over the summer of 2022. *Id*. At the same time, JCPD documents suggest that JCPD provided Female 4 with protection in the event that Williams came back to interfere with the asset transfer. *Id.* There is also evidence that JCPD officers may have followed an unknown woman, believed to be Female 4, from the bank on at least one occasion. JCPD officers were also monitoring Williams' real estate sales. *Id.* In this context, Peters' phone calls in March 2022 to Female 4 are extremely relevant and may be evidence of involvement in a scheme to profit from the liquidation of Williams' assets.

After a break, Female 4 changed her testimony[2]:

---

[2] Plaintiffs' counsel repeatedly saw counsel for Female 4 conferring with defense counsel in the hallway during breaks. During one break, Ms. Baehr-Jones exited the room to find counsel for Peters, Sparks, and Jenkins/Higgins/Legault speaking with counsel for Female 4. As soon as Ms. Baehr-Jones exited, counsel for Sparks coughed and the group stopped talking. Ms. Baehr-Jones

8

Q: Is that true that you contacted JCPD on April 19th, 2022 to ask for their help?

A: Yes.

Q: Who did you call?

A: I do not know who I called. It was the guy that called me the first time. I think that's the only number that I had. So that's who I reached out to.

Q: So that would be Kevin Peters?

A: It may not be Kevin Peters.

Q: You said that's the number that you had in your phone.

MR. RADER: She was speaking. You can finish your answer.

A: I can't remember his name. I thought it was Kevin that had reached out to me when I was at the beach. It may not have been. It may have been this guy. But, yeah, I was -- I was slightly worried. (157:1-19.)

When Ms. Baehr-Jones asked why Female 4 would have specifically named Kevin Peters if she meant someone else, Female 4 stated that Ms. Baehr-Jones had used the name "Kevin Peters" first in asking. (178:18-25; 179:1-22.) ("I may have repeated it after you said it, but I wouldn't have just come up with that on my own, no.").) Ms. Baehr-Jones then asked the court reporter to read back the transcript. When it became clear that Ms. Baehr-Jones had not used Kevin Peters' name during the relevant exchange, Female 4 changed her testimony again, stating that Ms. Baehr-Jones had stated his name "not right at that moment," but "prior." (183:5-6.) In fact, Ms. Baehr-Jones had never said Kevin Peters' name during the entire deposition before Female 4 named him.

During his examination of Female 4, Mr. Rader attempted to feed Female 4 a more useful answer three times. First, Mr. Rader introduced himself for a second time that day before

---

approached the group and there was no further conversation among the attorneys. Baehr-Jones Decl. ¶ 5.

9

beginning his direct in a way that provided a possible explanation for where Female 4 had heard the name Kevin Peters: "I introduced myself to you at the start of the deposition on the record. And I told you that I represent Kevin Peters, and I said his name. I'm probably the first person who said his name in the deposition." (186:11-15.)[3] Mr. Rader then specifically asked Female 4 about her testimony regarding Peters, but stated before he asked his question, "Of course, his name has been said today I know by me." (202:25; 203:1.) Finally, Mr. Rader continued to testify for the witness in one of his questions to Female 4, "Q: On April 19th, 2022, when you contacted the JCPD officer that I think we now understand is Mr. Whitlock." (276:4-6.) These statements were an improper attempt to influence the testimony of the witness on a matter that not only went to the witness's credibility, but also tended to implicate his client directly.

Mr. Rader also improperly suggested alternative testimony for Female 4. In an attempt to explain the "commercial cash" transactions, Mr. Rader repeatedly provided Female 4 with an explanation in the form of his question:

> Q: So that money left account number ▬ and went into Skyline Restoration account ▬, correct?
>
> MS. BAEHR-JONES: Objection.
>
> A: That's correct.
>
> "Q: No cash involved in that transaction either, was it?" (224:9-15.)

He also improperly prompted the witness to attribute an unethical purpose to Ms. Baehr-Jones' presentation of the material, despite there being no evidence that the exhibits had been misleadingly excerpted:

---

[3] Mr. Rader also improperly informed the witness during his preliminary remarks that she had "done a good job answering questions today." (187:4-5.) Plaintiffs' counsel objected on the record to Mr. Rader characterizing the testimony of the witness. (187:15-17.)

> Q: Do you think that the plaintiffs' attorney just doesn't understand how to read these bank statements, or do you think she's insinuating that there are really all these cash withdrawals?
>
> MS. BAEHR-JONES: Objection.
>
> A: I think it was intentional. (227:3-9.)

Later on, Mr. Rader again improperly accused Plaintiffs' counsel of misconduct in the form of his question:

> Q: And when we put those together with this Exhibit 77, we see the complete picture, don't we?
>
> MS. BAEHR-JONES: Objection.
>
> A: Yes, we do.
>
> Q: Do you have any idea why plaintiffs' counsel would withhold these important pages in order to give you complete context?
>
> MS. BAEHR-JONES: Objection.
>
> A: To confuse me, and they also don't suit the narrative. (229:24-25; 230:1-10.)

Mr. Rader also fed the witness statements accusing Ms. Baehr-Jones of improper conduct in the form of her questioning:

> Q: You've told the truth here today, haven't you, [Female 4]?
>
> MS. BAEHR-JONES: Objection.
>
> A: Yes, sir.
>
> Q: Do you deserve to be treated by plaintiffs' counsel like you haven't been telling the truth? (192:13-19)

Finally, Mr. Rader prompted the witness in a series of leading questions to state that Plaintiffs' counsel must have filed the lawsuit in bad faith:

11

Q: Is there any reason, as far as you know, for any lawyer or anyone else to have a good faith basis to claim that Sean Williams had bribed or had some other relationship with a Johnson City Police officer to protect him in any way?

MS. BAEHR-JONES: Objection.

A: No.

Q: If a lawyer filed that kind of Complaint in court, would you agree that there's no good faith basis to make that kind of allegation?

MS. BAEHR-JONES: Objection.

A: There's not. (311:20-25; 312:1-8.)

At this point in the deposition, Mr. Rader appeared to be using his examination of the witness for the purpose of attacking Plaintiffs' counsel and had abandoned any meaningly effort at fact-finding.

Female 4 was an openly hostile witness to Plaintiffs' counsel, refusing to make eye contact with her throughout the course of the deposition—instead looking at defense counsel while answering Ms. Baehr-Jones' questions[4]—and even insulting Ms. Baehr-Jones' physical appearance at one point during her testimony. (177:15-25; 178:1-3.) Plaintiffs' counsel's questioning repeatedly caught Female 4 making inconsistent or unbelievable statements, and Female 4 changed her testimony after breaks in ways that suggested she was fabricating her answers. It was improper and unethical for Mr. Rader to use Female 4 to elicit further false testimony and to inject biased and prejudicial testimony against Plaintiffs' counsel into the record.

---

[4] "Q: I see that you're looking -- are you looking at defense counsel? Because I'd like you to look at me. MR. RADER: She can look wherever she wants. That's ridiculous. MS. BAEHR-JONES: I just want to make sure that -- I want to make sure that nobody is coaching the witness." (91:19-25; 92:1.)

12

## LEGAL STANDARD

This Court's standing order regarding depositions is clear:

> Counsel shall not make objections or statements **which might suggest an answer to a witness.** Counsel's statements when making objections should be succinct, stating the basis of the objection and nothing more.

ECF 4, Order Governing Depositions, No. 2 (emphasis added).

> When lawyers . . . trample on civility, or when their supposed devotion to their clients leads to stridency or worse, they undercut the belief in the law and in the legal profession. At a minimum, uncivil, abrasive, abusive, hostile or obstructive conduct by lawyers impedes the fundamental goal of resolving disputes rationally, peacefully, and efficiently. Because such conduct tends to delay, and can even deny, justice, a presiding judge may be called upon to determine whether one or more adversary has committed sanctionable conduct.

*Huggins v. Coatesville Area Sch. Dist.*, No. CIV.A. 07-4917, 2009 WL 2973044, at *1 (E.D. Pa. Sept. 16, 2009).

Under Federal Rule of Civil Procedure 30(d)(2), "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Rule 30(d) was amended in 1993 to respond to a rise in reports of misconduct in depositions. The Advisory Committee Notes provide the following guidance and explanation for the rule: "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." Advisory committee's note to the 1993 Amendments (hereafter "Rule 30(d) advisory note.").

This amendment according to the 1993 advisory committee notes was intended to curtail lengthy objections and colloquy which often suggested how deponents should answer. Rule 30(d) advisory note. Under Rule 30(d)(1), "(c)ounsel's statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more."

13

Case 2:23-cv-00071-TRM-JEM   Document 217   Filed 06/11/24   Page 13 of 18   PageID #: 4399

This accords with the Tennessee Rules of Civil Procedure, which specifically instruct: "Evidence objected to shall be taken subject to the objections. Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner." Tenn. R. Civ. P. 30.03. This language "admonishes lawyers not to make 'speaking' objections, which unethically put lawyers' words in deponents' mouths." Tenn. R. Civ. P. 30.03, Advisory Commission's Comment to 1995 Amendment.

**ARGUMENT**

Mr. Rader's repeated speaking objections to Plaintiffs' counsel's presentation of bank record exhibits was improper and sanctionable. His objections suggested answers to Female 4, implying to her that the exhibits themselves were incomplete, misrepresentative, scattered, and confusing. Female 4 then provided exactly this testimony to both Plaintiffs' counsel and to Mr. Rader during his questioning. (*See, e.g.*, 147:2-8) At one point, Female 4 even repeated verbatim the speaking objection Mr. Rader had just made in responding to Plaintiffs' counsel's question. (84:16-18.) Contrary to Mr. Rader's objections, the excerpts carefully matched bank record statements with the corresponding withdrawal / deposit slips, and Mr. Rader used many of the same exhibits in his questioning of the witness. (*See, e.g.*, 221:1-15.) Even if the exhibits had been out of order in a "scattered" way, however—which they were not—it would still have been improper for Mr. Rader to characterize them before the witness was asked questions about their contents. This amounted to coaching the witness.

Moreover, Female 4 had her own counsel present. If the exhibits had, in fact, been confusing or incomplete in a way that was material, counsel for Female 4 could have requested an off-the-record conference with Plaintiffs' counsel outside the presence of the witness. No such

14

request was ever made and Female 4's counsel never objected to the introduction of any of the exhibits.

Sanctions are proper because Mr. Rader's thwarting of the rules was repeated, intentional, and abusive. Mr. Rader repeatedly interrupted Plaintiffs' counsel to interject with the same lengthy speaking objection which characterized Plaintiffs' exhibits as "incomplete," or "scattered," before counsel was able to ask the witness about them. This was blatant and intentional misconduct, and the Court's intervention is necessary to deter this kind of conduct going forward. If Mr. Rader is permitted to comment about exhibits before Plaintiffs' counsel can ask questions of the witness, he will be able to coach witnesses in ways that interfere with the objective of a deposition: eliciting truthful testimony.

Mr. Rader also improperly attempted to feed Female 4 an explanation for when she might have heard the name "Kevin Peters" during the deposition, stating during his second (and entirely unnecessary) introduction, "I introduced myself to you at the start of the deposition on the record. And I told you that I represent Kevin Peters, and I said his name. I'm probably the first person who said his name in the deposition." (186:10-15.) He then presented this information to her again, and finally made comments in the beginning of a question that attempted to insert his own testimony to establish what the record reflected: "when you contacted the JCPD officer that I think we now understand is Mr. Whitlock." (276:4-6.)

This, of course, had not been established—in fact, Female 4's repeated changes to her testimony tended to show that her initial answer was not only the right one, but that she now understood how incriminating it might be for Peters that she had been contacted by him. Mr. Rader's statements were an entirely improper attempt to provide Female 4 with answers that would protect his client by giving her a more plausible explanation for her initial testimony

15

naming Kevin Peters. As explained above, this testimony was potentially quite damaging to Mr. Rader's client. It was unethical for Mr. Rader to attempt to offer a more logical basis for her "mistake" in naming his client.

Sanctions are also appropriate because Mr. Rader improperly elicited false, biased, and prejudicial testimony from Female 4, which served no purpose other than engaging in abusive conduct towards Plaintiffs' counsel. (*See, e.g.*, 311:20-25; 312:1-8.) Female 4 was in no position to opine on what pleading may be in bad faith, and using her deposition testimony for such purposes was improper and served no fact-finding purpose.

Throughout the course of this litigation, Mr. Rader has engaged in a pattern of threatening and abusive conduct towards Plaintiffs' counsel. He has repeatedly claimed—without basis—that Plaintiffs' counsel is acting in bad faith; he has requested sanctions and attorneys' fees with every motion he has brought regardless of whether there is a reasonable dispute between the parties; he has filed knowingly misleading and false information to accuse Plaintiffs' counsel of misconduct, *see* ECF 166; and he has injected vitriol into nearly ever exchange and meet-and-confer with Plaintiffs' counsel. This conduct damages the judicial process. When Mr. Rader makes lengthy speaking objections which improperly characterize exhibits Plaintiffs' counsel is about to introduce, when he attempts to feed a witness a more helpful answer, and when he elicits prejudicial and false testimony from a witness, this does not serve the truth-seeking purpose of this Court. It is therefore necessary to sanction this conduct as a deterrence.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the following relief:

16

Case 2:23-cv-00071-TRM-JEM   Document 217   Filed 06/11/24   Page 16 of 18   PageID #: 4402

Mr. Rader may only state "objection" on the record in any deposition in this litigation when any other attorney is examining the witness. This restriction does not apply if the examining attorney asks Mr. Rader to state the basis for his objection. This restriction also does not apply to the deposition of Mr. Rader's client, Defendant Peters.

Dated: June 11, 2024

Respectfully submitted,

Advocates for Survivors of Abuse PC

*/s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones CABN # 281715
*Pro Hac Vice*
Advocates for Survivors of Abuse PC
4200 Park Boulevard No. 413
Oakland, CA 94602
(510) 500-9634
vanessa@advocatesforsurvivors.com

*/s/ Elizabeth A. Kramer*
Julie C. Erickson (California Bar # 293111)
Elizabeth A. Kramer (California Bar # 293129)
Kevin M. Osborne (California Bar #261367)
*Pro Hac Vice*
Erickson Kramer Osborne LLP
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

HMC Civil Rights Law, PLLC

*/s/ Heather Moore Collins*
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

Attorneys for Plaintiffs and Proposed Class

17

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on June 11, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>lisa@hbm-lawfirm.com<br>sandy@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity*<br><br>Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com<br><br>*Attorney to Defendant City of Johnson City, Tennessee* | Daniel H. Rader III<br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 N. Jefferson Avenue<br>P.O. Box 3347<br>Cookeville, TN 38502-3347<br>danrader@moorerader.com<br>danny@moorerader.com<br>andre@moorerader.com<br><br>*Counsel for Kevin Peters in his individual capacity*<br><br>Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>jdowd@fbb.law<br><br>*Counsel for Toma Sparks in his individual capacity*<br><br>Keith H. Grant<br>Laura Beth Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>kgrant@rswlaw.com<br>lrufolo@rswlaw.com<br>awells@rswlaw.com<br><br>*Counsel for Justin Jenkins in his individual capacity, Jeff Legault in his individual capacity and Brady Higgins in his individual capacity* |

                                              */s/ Elizabeth A. Kramer*
                                              Elizabeth A. Kramer