# Exhibit 13



August 16, 2023

*Via U.S. Mail Certified*

Hon. Steven R. Finney
District Attorney General, First Judicial District
Washington County Office
Washington County Courthouse
P.O. Box 38
Jonesborough, TN 37659

Re:  First Judicial District Attorney's Office Conflicts in Sexual Assault Investigations Involving Sean Williams

Dear District Attorney General Finney,

      I serve as counsel for Plaintiffs, along with Vanessa Baehr-Jones, in the case of *Jane Does 1-9 v. City of Johnson City TN, et al.*, Case No. 2:23-cv-00071 (EDTN). Plaintiffs are survivors of sexual assault at the hands of Sean Christopher Williams or his co-conspirator Alvaro Fernando Diaz-Vargas. Williams was a felon and local drug dealer in Johnson City, Tennessee, who was referred to the U.S. Attorney's office for a felon in possession of ammunition charge on November 13, 2020, and who was indicted by the same on this charge on April 13, 2021. *See United States v. Williams*, Case No: 2:21-cr-00027-DCLC-CRW. This case is pending trial. This indictment was preceded by years of law enforcement turning a blind eye to Williams' criminal activity, including your office.

      Detective Toma Sparks of the Johson City Police Department ("JCPD") referred the felon-in-possession case against Williams to Special Assistant United States Attorney ("SAUSA") Kateri Dahl. SAUSA Dahl served in the Greeneville Branch of U.S. Attorney's office pursuant to a muti-agency Memorandum of Understanding ("MOU") with the U.S. Attorney's office, Johnson City, and the First Judicial District Attorney's Office in Washington County ("DA") Office. Under the MOU, SAUSA Dahl was responsible for identifying investigations best prosecuted in federal district court with the goals of reducing firearms, drug trafficking, and violent crime. Her salary was paid for by Johnson City and funded through the DA's Office, but she was supervised by AUSA Wayne Taylor in the U.S. Attorney's office's Criminal Division. SAUSA Dahl was hired to begin work on July 1, 2019, and her 12-month MOU was extended in June 2020. According to her civil rights complaint, SAUSA Dahl generally had excellent job performance reviews.

      After receiving the referral for prosecution from Detective Sparks, SAUSA Dahl began investigating Williams. She learned that multiple women had made reports to JCPD of sexual

Case 2:23-cv-00071-TRM-JEM   Document 221-13   Filed 06/15/24   Page 2 of 7   PageID #: 4651

M 7000 Executive Center Drive, #320, Brentwood, TN 37027   P 615.724.1996   W hmccivilrights.com



assault at the hands of Williams, but there had never been any charges brought based on those reports. She also learned from Detective Sparks that Williams was a notorious cocaine trafficker. As SAUSA Dahl reviewed the evidence, she became concerned that JCPD had made errors in their investigation of Williams and was also concerned that the proposed charge of felon in possession would not be an adequate charge given the multiple reports of sexual assault against Williams and the pending investigation of Williams for attempted homicide. SAUSA Dahl ultimately agreed to bring the indictment for the felon-in-possession charge with the goal of building a broader case based against Williams for the more serious criminal conduct.

For the next six months, SAUSA Dahl attempted to build this broader case against Williams only to meet resistance and harassment from JCPD officers, including Detective Sparks, Captain Kevin Peters, and Chief Karl Turner, among others identified in her civil rights case. SAUSA Dahl attempted to provide evidence to the Tennessee Bureau of Investigation ("TBI") to support a state prosecution for rape after becoming concerned that the substantial evidence of Williams' sexual assaults was not prompting proper investigation by JCPD. For example, the evidence seized from Williams' apartment in the attempted homicide investigation included a handwritten list of first names with the title "Raped." But JCPD Chief Turner—with no apparent basis—callously dismissed this list as potentially consensual sex partners. As SAUSA Dahl tried to push for prosecution of Williams' sexual assaults, additional victims came forward to make reports to JCPD. Still, JCPD did not take any action to pursue the rape cases. Instead, SAUSA Dahl witnessed JCPD officers make discriminatory and biased statements discounting the women's accounts.

JCPD also delayed providing SAUSA Dahl with evidence necessary for the felon-in-possession prosecution. Finally, on April 13, 2021, SAUSA Dahl obtained the indictment in the felon-in-possession case. She reiterated, however, in speaking with Chief Turner and Captain Peters, that it was crucial a more substantial prosecution was brought against Williams since he was a danger perpetrator. According to her complaint, they laughed in response and said they would be retired at a lake by then.

SAUSA Dahl spent several weeks after obtaining the indictment asking JCPD Detective Sparks to arrest Williams. Although Detective Sparks was the investigating officer, he told SAUSA Dahl that the Johnson City Special Investigative Squad ("SIS") would be responsible for executing the arrest warrant. SAUSA Dahl requested approximately 30 times that Detective Sparks and/or SIS arrest Williams based on the federal warrant. On May 6, 2021, SAUSA Dahl learned that SIS officers had gone to Williams' apartment, invited him outside, informed him of the arrest warrant—thereby alerting Williams to the fact of the sealed indictment against him—and then left without arresting Williams. Williams promptly absconded and remained at large for the next two years until he was apprehended by Western Carolina University police on April 29, 2023.



Williams' apprehension resulted in the seizure of voluminous amounts of digital evidence—many terabytes worth. This evidence included, among other things, overwhelming evidence that he was a prolific drug trafficker. Significantly, the evidence also corroborated our clients' accounts of rape. Williams had created folders on his computer with the first names of his rape victims and the word "drugged" which contained horrific images showing Williams sexually assaulting his unconscious victims. It is our understanding, based on questions our clients have been asked regarding any minor children they may have brought to Williams' apartment, that this evidence likely also includes the production of child sex abuse material, or child pornography, including depictions of prepubescent minors being sexually exploited by Williams. It is also our understanding that this evidence has prompted a number of federal agencies to review the material for evidence of various federal crimes. There is also an ongoing state investigation for drug trafficking in North Carolina. Finally, your office is now involved in a joint state-federal investigation of Williams involving, among other criminal conduct, his sexual assaults of our clients and other rape victims.

Chief Turner fired SAUSA Dahl on June 25, 2021, calling her and notifying her that her contract would not be renewed. She was out of a job one week later. On June 23, 2022, Dahl filed a civil lawsuit against the City of Johnson City, Chief Turner, Captain Peters, Detective Sparks, and unknown JCPD officers. *See Dahl v. Turner, et al.*, 2:22-cv-00072-KAC-JEM ("the Dahl Complaint"). Ms. Baehr-Jones, and later my firm, began representing clients who were survivors of Williams shortly thereafter as these women learned through the Dahl Complaint of the corruption and mishandling of their rape cases by JCPD.

In or about November 2022, the FBI opened a sensitive crimes investigation into Williams. Our clients have voluntarily made themselves available to be interviewed as part of this investigation. The investigation is ongoing.

On June 21, 2023, our clients filed a complaint against the City of Johnson City, TN, Chief Turner, Captain Peters, Detective Sparks, and unknown JCPD officers for violations of their constitutional rights to equal protection and due process, as well as their rights under Title IX of the Education Amendments Act of 1972, and the common law. *Jane Does 1-9 v. City of Johnson City, TN, et al.*, Case No. 2:23-cv-00071. The complaint includes allegations that Detective Sparks knowingly intimidated and lied to our clients with the corrupt intent of discouraging them from pursuing criminal charges against Williams.

We are now writing to request that your office examine whether actual conflicts of interest or the appearance of impropriety exist. *State v. Coulter*, 67 S.W.3d 3, 29 (Tenn. Crim. App. 2001); *see State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000). A conflict of interests "includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" *Culbreath*, 30 S.W.3d at 312 (citing Tenn. R. Sup.Ct. 8, EC 5-1) (replaced). The district attorney general and his staff "are



expected to be impartial in the sense that they must seek the truth and not merely obtain convictions." *Culbreath*, 30 S.W.3d at 314; *see State v. White*, 114 S.W.3d 469, 477 (Tenn. 2003). In other words, the district attorney general's duty is to seek justice. *Johnson*, 538 S.W.3d at 51; *see Berger v. United States* 295 U.S. 78, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935) (stating that a prosecutor's interest is not to win a case, but to do justice). *See also State v. Nal*e, No. E2021-00276-CCA-R9-CD, 2022 Tenn. Crim. App. LEXIS 126, at *9 (Crim. App. Mar. 22, 2022).

A recently released report by a third-party expert retained by Johnson City, the Daigle Law Group, highlights the conflicts at issue here which require your office's recusal under the above authority.

1. ***Conflicts arising from the Daigle Report Findings***

On July 18, 2023, the City Manager for Johnson City, Cathy Ball, released a report produced by the Daigle Law Group ("DLG"), a third-party expert whom they had hired to review JCPD's sexual assault investigations following the widespread community concern prompted by the Dahl Complaint. The DLG report's conclusions and findings were extraordinary in their criticism of JCPD. I am enclosing a copy of the full report as Exhibit A. The report found that JCPD officers engaged in discriminatory and biased conduct to discourage women from pursuing cases of sexual assault and rape, and then used victims' resulting reluctance to close rape cases improperly in violation of department rules and requirements. Your office was also implicated in this conclusion as many of the rape investigations were closed after poorly documented or undocumented conversations with attorneys in DA's office.

Significantly, the DLG report states that reports and documentation concerning the sexual assault investigations of Williams were <u>missing</u> or <u>unidentified</u> because JCPD failed to initiate an internal affairs investigation in response to the allegations of JCPD corruption in the Dahl Complaint. This failure to properly and promptly investigate Dahl's claims violated "industry standards, accreditation standards, and model policies." It was also shocking since "[JCPD] was concerned that the [Dahl] complaint involved criminal conduct on the part of Department members."

The DLG report goes on to directly implicate your office, and specifically, you, in this failure to properly investigate Dahl's claims of criminal corruption on the part of JCPD. Specifically, on August 24, 2022, City Manager Ball delivered a letter to you asking your office or the Tennessee Bureau of Investigations ("TBI") to "conduct a preliminary investigation to determine whether there was a basis to open a public corruption investigation" based on Dahl's allegations.

Eight days later, on September 1, 2022, you replied. You stated—incorrectly—that as DA, you were the "only person" who could request a TBI investigation into this conduct. You

Page 4

M 7000 Executive Center Drive, #320, Brentwood, TN 37027   P 615.724.1996   W hmccivilrights.com



further stated—also incorrectly—that there was no such thing as a "preliminary investigation." In fact, it is our contention that you should have inquired whether JCPD had conducted an internal affairs investigation into the allegations. You then summarily concluded that you did not have "enough information to request a TBI investigation at this point."

It appears that you had no basis to conclude the allegations were unfounded because, by your own admission, there had been no internal investigation. In fact, as the DLG report points out, the lack of any internal investigation violated "industry standards, accreditation standards, and model policies." As the DLG report makes clear, this was a failure on the part of JCPD *and* the DA's office.

It was also a failure with grave consequences for any subsequent investigation to uncover what happened in JCPD's sexual assault investigations of Williams. The DLG report notes that because of the lack of any internal affairs investigation, there are now "missing" and "unidentified" reports relating to the sexual assault investigations of Williams, documents "that were not discovered during the DLG audit."

Accordingly, the DLG report raises the possibility that you and/or your office played a part in JCPD's role in the failure to investigate the sexual assault allegations against Williams and the subsequent lack of an internal affairs investigation in response to the Dahl Complaint. To further complicate matters, the individual who hand-delivered your letter to City Manager Ball on September 1, 2022, was DA Investigator Little, who is now involved in a joint federal-state investigation into Williams' sexual assaults. See Exh. B, attached herein.

The findings in the DLG report therefore present a significant potential conflict for your office due to concerns that you and others within the DA's office may be implicated in obstructing an investigation into Dahl's allegations.

2. *Conflict Arising from the Civil Rights Lawsuits*

Your office is implicated, albeit indirectly, in the lack of criminal accountability of Williams. Detective Sparks presented the felon in possession case against Williams to SAUSA Dahl on November 13, 2020. When SAUSA Dahl questioned the appropriateness of such a paltry charge in a case where the offender had been credibly accused of multiple sexual assaults and was currently under investigation for attempted homicide, she was harassed by JCPD officers and ultimately fired by JCPD Chief Turner. This harassment took place over the course of approximately six months while she was working in cooperation with your office. Moreover, during this time, at least one sexual assault investigation into Williams was presented and declined by your office.



       The facts as outlined in the DLG report at minimum warrant a serious conflict of interest review by your office and likely a request for a District Attorney General Pro Tem to handle this matter going forward. See T.C.A. § 8-7-106.

       I would greatly appreciate a response from your office regarding the issues raised above. Please contact me if you have any questions or would like to discuss these issues further.

HMC Civil Rights Law, PLLC

*s/ Heather M. Collins*