# Exhibit 17

```
 1           IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF TENNESSEE
 2                    GREENEVILLE DIVISION

 3

 4   B.P., H.A., and S.H.,           )
     individually, and on behalf of  )
 5   all other similarly             )
     situated,                       )
 6                                   )
                                     )
 7               Plaintiffs,         )
                                     )
 8                                   )
                                     )
 9   v.                              )   No. 2:23-CV-00071
                                     )       TRM-JEM
10                                   )
     City of Johnson City,           )
11   Tennessee, et al,               )
                                     )
12                                   )
                 Defendants.         )
13

14
                  * * * * * * * * * * * * * * * *
15

16              DEPOSITION OF BRADY HIGGINS

17
                       May 22, 2024
18

19

20
     ===========================================================
21

22                       LEXITAS LEGAL

23           Jeffrey D. Rusk, RPR, LCR, CLVS

24

25
```

```
 1     APPEARANCES:

 2     FOR THE PLAINTIFFS:

 3     Vanessa Baehr-Jones, Esq.
       4200 Park Boulevard No. 413
 4     Oakland, California  94602
       Vanessa@AdvocatesForSurvivors.com
 5


 6     Elizabeth A. Kramer
       Erickson Kramer Osborne, LLP
 7     44 Tehama Street
       San Francisco, California  94105
 8     Elizabeth@eko.com


 9


10     FOR THE DEFENDANTS:

11     For Johnson City, Tennessee, Karl Turner, Kevin
       Peters, and Toma Sparks in their official
12     capacities:

13     Emily Taylor, Esq.
       Watson Roach Batson & Lauderback
14     1500 Riverview Tower
       900 South Gay Street
15     Knoxville, Tennessee  37902
       ETaylor@WatsonRoach.com
16


17     K. Erickson Herrin, Esq.
       Herrin McPeak & Associates
18     515 East Unaka Avenue
       Johnson City, Tennessee  37605
19     Lisa@hbm-lawfirm.com

20


21     For Kevin Peters in his individual capacity:

22     Daniel H. Rader, IV, Esq.
       Moore Rader Fitzpatrick & York
23     46 North Jefferson Avenue
       Cookeville, Tennessee  38501
24     Danny@MooreRader.com

25
```

```
 1      For Justin Jenkins, Brady Higgins, and Jeff Legault
        in their individual capacities:
 2
        Keith H. Grant, Esq.
 3      Robinson Smith & Wells
        Republic Centre
 4      633 Chestnut Street
        Suite 700
 5      Chattanooga, Tennessee  37450
        KGrant@rswlaw.com
 6


 7      For City of Johnson City, Tennessee:

 8      Jonathan P. Lakey, Esq.
        Burch, Porter & Johnson, PLLC
 9      130 North Court Avenue
        Memphis, Tennessee  38103
10      JLakey@bpjlaw.com

11


12      For Toma Sparks in his individual capacity:

13      Kristin Ellis Berexa
        Farrar Bates Berexa
14      12 Cadillac Drive
        Suite 480
15      Brentwood, Tennessee  37027
        KBerexa@fbb.law
16


17


18      Videographer:  Kelly Rusk

19

20

21

22

23

24

25
```

```
 1   something -- pretty much the way one continuously
 2   does something, so --
 3          Q.      The way that someone continuously
 4   does something?
 5          A.      Yes, the acts of --
 6          Q.      Is it used in criminal law?
 7          A.      Yes.
 8                  MR. GRANT:  Object to form.
 9          Q.      (BY MS. BAEHR-JONES) How is it
10   used?
11          A.      To show a standard of -- or a way,
12   a pattern of things people do.
13          Q.      Is it powerful evidence to show
14   that a criminal suspect has committed the same crime
15   again and again and again in the same way?
16                  MR. GRANT:  Object to form.
17          A.      I was not aware of anything that he
18   had done in the past before this.
19          Q.      (BY MS. BAEHR-JONES) So you worked
20   this case with Officer Toma Sparks for nine months,
21   and never during that time did he tell you that
22   there were other reports that were similar to this
23   one?
24                  MS. BEXERA:  I object to the form
25         of the question.
```

```
 1          A.      I did not inquire about it, and we
 2   did not speak to about it, to my knowledge.
 3          Q.      (BY MS. BAEHR-JONES) He never told
 4   you about B.P. case?
 5          A.      No.
 6          Q.      He never told you about FEMALE 12
 7   FEMALE 12 case?
 8          A.      No.
 9                  MR. GRANT:  Are you wanting to use
10          initials?
11                  MS. BAEHR-JONES:  We will go back
12          and redact.
13          A.      No.
14          Q.      (BY MS. BAEHR-JONES) He never told
15   you about FEMALE 2 case?
16          A.      No.
17          Q.      He never told you about FEMALE 9
18   FEMALE 9 case?
19          A.      No.
20          Q.      Have you ever authored a search
21   warrant to search a residence for someone's digital
22   devices?
23          A.      Yes.
24          Q.      And by digital devices, what do
25   you -- what do you mean by that term?  What do I --
```

```
 1   working to see how they -- we don't know where we're
 2   going to.  We don't -- sometimes the witnesses are
 3   not the most cooperative.  So it's just a common
 4   practice to take somebody as a witness or to -- they
 5   may think of stuff that you don't while you're
 6   talking to them.
 7          Q.      What about when someone comes in to
 8   interview at JCPD?  Is it common practice to have at
 9   least two people there to do the interview?
10          A.      Sometimes it's one; sometimes it's
11   two.
12          Q.      When you were interviewing [FEMALE 8],
13   there was a video camera recording, correct?
14          A.      Yes.
15          Q.      Was anyone watching from outside
16   the room?
17          A.      Yes, I assume so.  My supervision
18   was.
19          Q.      Who was watching?
20          A.      I believe Captain Peters.  I
21   can't -- I don't recall who the other sergeant was.
22   The lieutenant was off that day, since
23   Captain Peters was working.  I do not recall who the
24   sergeant was that had been on duty.
25          Q.      When you stepped out to take breaks
```

Lexitas235-1TENNESSEE
(615)595-0073

```
 1   during the interview, did you talk to the people who
 2   were watching the video?
 3           A.      Most likely.  Let them know, inform
 4   them what's going on, what's being said.
 5           Q.      Did they give you advice on what to
 6   ask?
 7           A.      Sometimes, yes.
 8           Q.      Did Captain Peters give you advice
 9   on what to ask?
10           A.      Most likely, yes.
11           Q.      Did that typically happen that
12   Captain Peters was watching on video when you
13   interviewed somebody at JCPD headquarters?
14           A.      He -- for the most part he was
15   invested in the cases that came in.  He would watch.
16   Because sitting in a squad room just down the
17   hallway, you could hear people's monitors.  A lot of
18   times -- it wouldn't be just this case.  It would be
19   other cases, and you would hear monitors from the
20   supervision or from other investigators where
21   they're watching and listening to assist each other.
22           Q.      To your memory, did you ever have
23   an interview of a sexual assault victim who you went
24   out to get advice from Captain Peters on how to ask
25   questions?
```

Lexitas-TENNESSEE
(615) 255-0073