IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., et al.,

    Plaintiffs,

v.                                                                  No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY,
TENNESSEE, et al.,

    Defendants.
_____/

## RENEWED MOTION TO ENJOIN EXTRAJUDICIAL CONDUCT; MOTION FOR SANCTIONS

This Court's Protective Order was not intended to serve Defendant Johnson City's publicity stunts. Yet that is exactly what happened yesterday when City Manager Cathy Ball held a press conference, revealing information designated "Confidential" by counsel for the City, after being alerted that Plaintiffs intended to file today's Motion to Compel production of Ball's real estate contract with Sean Williams (ECF 235). Ball's statements were deliberately misleading and intended to manipulate the public narrative. Counsel for the City have gravely abused the designation process, designating material as confidential—and insisting that Plaintiffs file Ball's deposition transcript under seal—only to apparently assist in publicizing that very same information in a way that serves their client's personal public relations' goals. This conduct is unethical, violates this District's Local Rules and the Tennessee Rules of Professional Conduct, and warrants sanctions.

This is not the first time Ball has used her bully pulpit in ways that are contrary to the fair administration of justice. *See* ECF 18. Plaintiffs therefore renew their motion to enjoin

1

extrajudicial conduct and request the Court order Ball refrain from making any further public statements concerning the factual and legal issues involved in this litigation for the remainder of this case.

To the extent counsel for the City participated in Ball's press conference by alerting her to Plaintiffs' imminent filing, they have acted contrary to the requirements of Local Rule 83.2 and have abused the processes this Court put in place for publicizing information. This irreversibly prejudices Plaintiffs' chance at a fair trial and impedes the fair administration of justice.

## RELEVANT FACTUAL BACKGROUND

City Manager Cathy Ball was deposed by Plaintiffs on June 3, 2024. On June 12, 2024, Plaintiffs' counsel emailed a redacted copy of the transcript of Ball's deposition to defense counsel and asked counsel to provide any additional redactions they believed were necessary. Baehr-Jones Decl., Exh. 1.[1] Defense counsel for the City emailed back insisting Plaintiffs could not file any portion of the transcript publicly, pursuant to the terms of the Protective Order, designating the entire transcript as "Confidential," and threatening to seek Court intervention if Plaintiffs attempted to file the transcript on the public docket. Exh. 2. Plaintiffs' counsel responded, explaining that they would not file the transcript publicly, but that defense counsel would need to move to seal the document as Plaintiffs did not view any grounds upon which to seal the redacted transcript. Exh. 3. Plaintiffs further offered, in response to yet another email from the City, to set a briefing schedule to provide defense counsel with sufficient time to brief the issue. Exhs. 4, 5. Defense counsel never responded to that offer. Baehr-Jones Decl. ¶ 8.

---

[1] Unless otherwise specified, all citations herein to exhibits refer to the exhibits attached to the Declaration of Vanessa Baehr-Jones ("Baehr-Jones Decl."), filed herewith.

On June 14, 2024, Plaintiffs filed their Opposition to District Attorney Steven Finney's Motion to Quash, filing the redacted version of Ball's deposition transcript under seal and redacting large portions of their Opposition in deference to Defendant City's demands that no portion of Ball's transcript be made public. *See* ECF 221. These redacted portions of the filing included a discussion of Ball's real estate deal with Sean Williams. Exh. 6, at 2 n.1 (unredacted version of Plaintiffs' filing). Plaintiffs concurrently filed a Notice of Under Seal Filing, explaining that they did not view the transcript as appropriately filed under seal but were nevertheless filing the transcript, and other documents, under seal to provide Defendants time to file a motion to seal. ECF 222. Defendants never filed any motion to seal and Plaintiffs' Notice of Under Seal Filing remains pending.

On June 25, 2024, Plaintiffs emailed defense counsel again concerning the redacted version of Ball's transcript, and again asked for any further redactions that might be necessary before publicly filing the document. Exh. 7. This was in anticipation of Plaintiffs filing their Motion to Compel, and in light of the Court's orders concerning sealed filings. *See* ECF 227, 231. Plaintiffs explained that they risked having their filings stricken if they filed a document under seal based solely on a "Confidential" designation. Counsel for the City did not respond. Baehr-Jones Decl. ¶ 11.

On June 12, 2024, Plaintiffs requested the City provide a copy of the real estate contract between Ball and Williams, specifically explaining that the document was responsive to "Request for Production No. 2," and asking Defendant City to provide the document no later than June 18. Exh. 8, at 2. Counsel for the City did not respond. Baehr-Jones Decl. ¶ 13. Plaintiffs sent this request again on June 24, setting a new deadline of June 26, by which the City should produce the contract, or Plaintiffs would move to compel production. Exh. 8. Counsel for

3

the City, Emily Taylor, replied via email on the morning of June 26, asking for Plaintiffs' counsel to provide the relevant Request for Production under which this request would fall—even though Plaintiffs' counsel had already included this in the initial email request. *Id.* Plaintiffs' counsel emailed back at 2:00 pm ET, stating that Plaintiffs had already provided this, again referencing Request for Production No. 2, and explaining that Plaintiffs considered the meet and confer process complete and would be filing a motion to compel by the close of business. Exh. 9. Defense counsel did not email back.

Meanwhile, Ball had already held a late-morning press conference. In front of an audience of local reporters, Ball stated that the purpose of the press conference was to be "transparent and forthcoming with an unfortunate coincidence." *See* ECF 235, Exh. 21 (rough transcript of excerpts of Ball's press conference). She then proceeded to disclose the fact of her real estate contract with Williams to buy his penthouse apartment. She used the opportunity to minimize her role in the business transaction and claim ignorance of Williams' identity:

> I did not purchase this condominium. I want to make it clear that when I learned that the person was a fugitive, I withdrew my offer for the purchase of the contract. I did not have any communication with Sean Williams. I have never met Sean Williams, I have never talked to Sean Williams.
>
> No money ever exchanged hands. This was an unfortunate coincidence, but I want the community to hear about it from me.

*Id.*

At 5:55 PM ET, Plaintiffs' counsel emailed counsel for the City and asked for an explanation as to why their client had held a press conference to make a public statement about material the City had designated "Confidential" just two weeks before. Exh. 10. Counsel for the City did not respond. Baehr-Jones Decl. ¶ 16.

//

4

## LEGAL STANDARD

"[T]he Supreme Court has recognized the Court's power to proscribe 'extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters.'" *Adams v. Lab. Corp. of Am.*, No. 1:10-CV-3309, 2014 WL 7336697, at *3 (N.D. Ga. Dec. 22, 2014) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 361 (1966)). "Indeed, '[a]lthough litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise' in the context of both civil and criminal trials." *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984)). In the Sixth Circuit, a district court may restrict an out-of-court statement if there is a "clear and present danger" of the statement prejudicing a fair trial. *See United States v. Ford*, 830 F.2d 596, 600–02 (6th Cir. 1987).

Additionally, false and misleading statements are <u>not</u> protected by the First Amendment. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("False statements of fact harm both the subject of the falsehood and the readers of the statement"); *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 708 (E.D. Va. 2000) ("An injunction that restrains only false or misleading commercial speech 'is consistent with the First Amendment' ") (quoting *In re Corey*, 892 F.2d 829, 839 (9th Cir.1989)). Accordingly, the Court has authority to enjoin false or misleading statements, particularly those that could potentially taint the impartiality of a jury.

## ARGUMENT

Ball's statements are not protected speech because they were misleading and false and were deliberately aimed at obstructing the judicial process and this Court's Protective Order. Given the breadth of media coverage of her press conference, there is a clear and present danger that her statements have already prejudiced the jury pool and spread misinformation that will undermine Plaintiffs' ability to have a fair trial. *See* Baehr-Jones Decl. ¶ 17. This was not the first

5

time Ball used her bully pulpit to influence public opinion at the expense of a fair judicial process in this case. A serious sanction is therefore warranted. Plaintiffs request the Court enjoin any further public statements by Ball about factual or legal matters at issue in this litigation during the pendency of the litigation. At the very least, Ball should be enjoined from making any public statements concerning matters contained in documents or materials designated "Confidential" by either party.

### A. Ball's Public Statements Undermined the Fair Administration of Justice, Were Deliberately Misleading, and Deserve No First Amendment Protections

Ball's press conference was a deliberate effort to spin the facts that came out in her deposition in a light most favorable to her. She admitted that she was timing the press conference based on information her counsel had received from Plaintiffs' counsel about Plaintiffs' anticipated motion to compel production of the real estate contract:

> I recently learned that the Plaintiffs' attorney had requested additional information about this condominium, and I want to come forward to the community and share the information I have to make sure that the facts are released accurately.

ECF 253, Exh. 21. Plaintiffs had made clear their intention to file Ball's redacted deposition testimony publicly with their motion to compel—and counsel for the City knew this. *See* Exh. 7. But Ball's comments implied—falsely—that Plaintiffs would somehow not release the information about her real estate deal "accurately." This was a particularly egregious mischaracterization given that Plaintiffs' counsel had repeatedly asked the City to agree to make Ball's own deposition testimony public and the City had refused to de-designate any portion of it. *See* Exh. 2. By intentionally preempting Plaintiffs' filing, however, and painting Plaintiffs' anticipated filing in a negative light, Ball did her best to affirmatively run damage control on what would be explosive evidence that she had negotiated a real estate deal with Sean Williams.

6

This was a misuse of the designation process, it interfered with the fair administration of justice, and conveyed a false narrative to the public.

Ball's statements were deliberately misleading. She claimed she was holding the press conference to be "transparent." In fact, she was holding the press conference—as she admitted—because Plaintiffs' counsel was about to file a motion to compel production of her contract with Williams, and she had been alerted to this filing by her counsel. If Ball had truly been interested in transparency, she would have made her real estate deal with Williams public in 2022, as soon as she purportedly realized the "unfortunate coincidence." She also would have recused herself from all matters relating to Williams going forward.

But Ball did none of those things. Instead, she has remained the final decision-maker over whether the Johnson City Police Department ("JCPD") should open an Internal Affairs ("IA") investigation into Williams. *See* ECF 235, Exh. 22 (Redacted Deposition Transcript of Cathy Ball ("Ball Dep.")), 30:3-11. For years, Ball failed to initiate any investigation into serious allegations of misconduct. In August 2022, for instance, just four months after her aborted real estate deal, Ball coordinated with District Attorney Steven Finney to justify <u>not</u> opening any kind of investigation into public corruption allegations relating to Williams. *See* ECF 221 at 1-4; Exh. 6, at 1-4. Of course, by then, such an investigation could have potentially inculpated <u>her</u>. Evidence obtained in this case suggests Ball's role in thwarting any accountability of JCPD and Williams' alleged extortion scheme is ongoing. The City only opened an IA investigation into public corruption relating to Williams once Ball became aware of the federal public corruption investigation. *See* Exh. 6, at 15-16. And as she testified during her deposition, she has ordered JCPD to <u>hold in abeyance</u> this IA investigation until this civil case is over. Ball Dep. 105:2-9. Ball has acted contrary to any kind of public transparency or accountability.

7

It is also highly likely that Ball's statement that "no money ever exchanged hands" was false. Ball was under contract to purchase Williams' condominium and thus would likely have made an earnest money deposit on the purchase price.

Ball's press conference also spun her story in a way that was favorable to her narrative, claiming she had no knowledge of Williams prior to the closing of the contract. But this explanation is simply not credible. Ball testified during her deposition that she had lived in downtown Johnson City across the street from Williams' apartment since December 2021, when she moved to Johnson City. Ball Dep. 126:7-9. She also testified that she discussed her real estate deal with Williams with City Commissioner Jimmy Brock and Johnson City Mayor Joe Wise, as well as discussing her pending condo purchase with JCPD Chief Karl Turner. *Id.* 132:13-20; 133:7-24. Thus, it defies logic and common sense that Ball would have no knowledge of the City's number one fugitive, while living directly across the street from his notorious penthouse apartment and heading up the City's police force for months. It also defies logic that Ball would have discussed this condo purchase with the Chief of JCPD, as well as with a member of the City Commission and the Mayor, and never have learned of Williams' identity,

The circumstances of the deal—an off-market real estate purchase between a wanted fugitive and the City official in charge of the police force for a below-market price—is <u>on its face</u> corrupt. *See* ECF 235, at 10-11 (discussing Ball's deposition testimony regarding the off-market purchase price of $416,000); *Id.*, Exh. 23 (tax records for Williams' penthouse apartment, Unit 5, 200 E. Main Street, showing a listing price of $725,00 and sale price of $800,000). That the City misused the designation process established in this Court's Protective Order to spin these facts publicly, preempting Plaintiffs' filing, is unethical. The evidence also strongly suggests that counsel for the City were involved in this effort as Ball could only have received

8

the information about Plaintiffs' filing from them. This evinces bad faith and unethical conduct on counsel's part; it is a flagrant violation of the Local Rules, in particular, Local R. 83.2, which prohibits attorneys in a civil case from making or <u>participating in making</u> an extrajudicial public statement "if there is a reasonable likelihood that such dissemination will interfere with a fair trial." This conduct warrants sanctions, as set forth below.

Finally, what Ball did by using her bully pulpit as a city official to manipulate facts obtained through the judicial process does a disservice to the administration of justice and should not go without serious sanction by this Court. Testimony obtained through depositions should not be spun by either party through press conferences in order to gain a public relations advantage. The place for this information to be made public is through the Court and through the filing of legal pleadings. That is because counsel must sign their filings, signifying that their representations of the facts are true, and, as officers of the Court, they have a duty of candor. Ball was not under oath when she gave her press conference, nor did she have to sign her name to a declaration swearing that what she said was true. She gave her press conference solely to preempt the release of her own sworn testimony by spinning a narrative more favorable to her that would be broadcast and reported on first, if not exclusively.[2] Ball's efforts to spin and minimize her testimony did not serve the judicial process or the community. Ball's press conference served no one but Ball.

//

---

[2] For example, the headline of video footage on one local news website quoted Ball: 'No Money Changed Hands,' City Manager on Sean Williams Connection, WJHL, *available at:* https://www.wjhl.com/news/local/sean-williams-case/jc-manager-was-in-contract-to-buy-sean-williams-condo-backed-out-when-learning-fugitive-status/. Her language concerning the facts being released "accurately" was also repeated by the newscaster during the news channel's headline news. *Id.*

9

## B. Sanctions Against Counsel for the City Are Appropriate and Necessary to Deter Future Violations

Under Rule 8.4 of the Tennessee Rules of Professional Conduct, it is professional misconduct for a lawyer to:

> (a) violate or attempt to violate the Rules of Professional Conduct . . .
> (b) commit a criminal act that reflects adversely on the lawyer's honesty trustworthiness, or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice . . . .

Tenn. R. Sup. Ct. 8.4

Counsel for the City's misuse of the designation process to help spin the public disclosure of Ball's deposition testimony was unethical and deserves sanction. As set forth above, Plaintiffs' counsel filed Ball's redacted transcript under seal at the insistence of counsel for the City. Counsel for the City then never filed a motion to seal, and instead, appear to have given their client a head's up when it became clear that public disclosure of the transcript was imminent. This allowed Ball to use her position as City Manager to control the narrative, spin the facts, and negatively characterize Plaintiffs' imminent filing as well as denigrate Plaintiffs and their counsel. This type of gamesmanship falls below the standards expected of officers of this Court, interferes with the administration of justice, and involves a manipulation of this Court's Protective Order to advance their client's public relations' goals. Plaintiffs therefore request that the Court fashion an appropriate sanction to deter this kind of misconduct going forward.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court issue an order (1) enjoining any further extrajudicial statements by City Manager Cathy Ball regarding the factual or legal issues of this case during the pendency of the litigation, and (2) fashioning an appropriate sanction to deter counsel for the City from further misconduct.

Dated: June 28, 2024                    Respectfully submitted,

                                        Advocates for Survivors of Abuse PC

                                        */s/ Vanessa Baehr-Jones*
                                        Vanessa Baehr-Jones CABN # 281715
                                        *Pro Hac Vice*
                                        Advocates for Survivors of Abuse PC
                                        4200 Park Boulevard No. 413
                                        Oakland, CA 94602
                                        (510) 500-9634
                                        vanessa@advocatesforsurvivors.com

                                        */s/ Julie C. Erickson*
                                        Julie C. Erickson (California Bar # 293111)
                                        Elizabeth A. Kramer (California Bar # 293129)
                                        Kevin M. Osborne (California Bar #261367)
                                        *Pro Hac Vice*
                                        Erickson Kramer Osborne LLP
                                        44 Tehama St.
                                        San Francisco, CA 94105
                                        415-635-0631
                                        julie@eko.law
                                        elizabeth@eko.law
                                        kevin@eko.law

                                        HMC Civil Rights Law, PLLC

                                        */s/ Heather Moore Collins*
                                        Heather Moore Collins (# 026099)
                                        Ashley Shoemaker Walter (#037651)
                                        7000 Executive Center Dr., Suite 320
                                        Brentwood, TN 37027
                                        615-724-1996
                                        615-691-7019 FAX
                                        heather@hmccivilrights.com
                                        ashley@hmccivilrights.com

                                        Attorneys for Plaintiffs and Proposed Class

11

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on June 28, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>lisa@hbm-lawfirm.com<br>sandy@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity*<br><br>Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com<br><br>*Attorney to Defendant City of Johnson City, Tennessee* | Daniel H. Rader III<br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 N. Jefferson Avenue<br>P.O. Box 3347<br>Cookeville, TN 38502-3347<br>danrader@moorerader.com<br>danny@moorerader.com<br>andre@moorerader.com<br><br>*Counsel for Kevin Peters in his individual capacity*<br><br>Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>jdowd@fbb.law<br>msutton@fbb.law<br><br>*Counsel for Toma Sparks in his individual capacity*<br><br>Keith H. Grant<br>Laura Beth Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>kgrant@rswlaw.com<br>lrufolo@rswlaw.com<br>awells@rswlaw.com<br><br>*Counsel for Justin Jenkins in his individual capacity, Jeff Legault in his individual capacity and Brady Higgins in his individual capacity* |

              */s Vanessa Baehr-Jones*
              Vanessa Baehr-Jones