IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., H.A., and S.H. individually, and
On behalf of all others similarly situated,

Plaintiffs,

v.                                          No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY, TENNESSEE, et al.,

Defendants.

_____/

**DECLARATION OF KEVIN M. OSBORNE IN SUPPORT OF
PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION REGARDING DEPOSITION CONDUCT**

I, KEVIN M. OSBORNE, declare under penalty of perjury that the foregoing is true and correct:

1. I am over twenty-one years of age and am competent in all respects to give this Declaration. This Declaration is given freely and voluntarily. I have personal knowledge of the foregoing matter and could, and would, testify competently thereto under penalty of perjury.

2. I am counsel for Plaintiffs B.P., H.A., and S.H., in the above-referenced case. I am a licensed attorney in good standing in the State of California (CABN 261367) and admitted to appear pro hac vice in this District.

3. I have had multiple telephone conversations with Female 4, a witness who was called to testify in a deposition in this matter. I kept detailed, contemporaneous notes of my calls with Female 4. I am submitting this declaration to provide the details of these calls.

4. I called Female 4 on February 26, 2024, at 1:26 p.m. PT. My call went straight to

1

voicemail. The voicemail box was full. The same day, I sent her a text message at 1:32 p.m. PT explaining who I was and why I was contacting her. I asked her to let me know if she was willing to speak with me.

5. I called Female 4 again on March 11, 2024, at 1:33 p.m. PT, and reached her. I told her I am one of the attorneys in the class action against the Johnson City Police Department ("JCPD"). I asked her if she was willing to speak with me and she agreed. I told her that the man at the center of our case, Sean Williams, was affiliated with several LLCs that also listed her as an affiliated person. I also told her we sent subpoenas to phone companies to preserve the data for the people listed in these records, including her. I also mentioned that we were preparing to send subpoenas to request business records from these same individuals directly, but I wanted to call her first to inform her that a subpoena might be served on her.

6. Female 4 told me that she wanted nothing to do with Mr. Williams, wanted nothing to do with the case, and wanted to move on with her life. But she said she also wanted people to get what they need from the case and would help if she could. She asked what it was exactly we were looking for. I told her we were looking for records of the businesses, information about where the companies banked, and whether there were records of business deals with people affiliated with the Johnson City Police Department ("JCPD"). She said she had no documents and no financial information from the companies. She informed me which bank one of the companies used. She said that if there were business deals with people affiliated with the JCPD that she knew about, she would have come forward to the appropriate person.

7. I thanked Female 4 for her time and told her that I hoped she could move on. But I also warned her that I was probably not the last attorney who would be reaching out to her and said she could expect to receive a subpoena from someone else if not from us. She said she

2

understood. We ended the call with her saying she wanted to help but did not have much to offer. I told her I would text her if I had any other questions and that she could do the same if she had questions for me. She said that was okay. I texted her at 1:57 p.m. PT, after the call, to be sure she had my number. The call lasted 13 minutes.

8. On March 12, 2024, our office received a subpoena to testify at a deposition prepared for Female 4. I texted her at 6:37 p.m. PT to tell her that we had received the subpoena and I sent it to her. I said that she I would be available to talk with her about it the following day if she wanted to. She responded minutes later and asked me if I could speak right away. I said yes, and we had a brief phone call. She asked if she needed an attorney to represent her in the deposition. I said that it was up to her, but that I would be willing to look into whether there was an attorney known by our local counsel in the area who might represent her. I told her I would reach out to her again the next day. The call lasted 11 minutes.

9. Again, my impression was that our conversation was friendly and that she wanted to be helpful although she was somewhat uncomfortable with the subject matter of our call.

10. On March 13, 2024, at 11:38 a.m. PT, I texted Female 4 to see if she would be available to speak in 20 minutes. She said yes and I called her at 12:00 p.m. PT. She picked up right away. I told her I wanted to ask her some questions before referring her to a possible attorney. I said that if she was concerned about criminal liability, I would look for a criminal defense attorney referral. If not, I would look for an attorney who specialized in civil matters. She insisted she would never need a criminal defense attorney because she knows she had done nothing wrong. I had the impression that Female 4 felt that I was accusing her of doing something wrong and I told her I was not. I told her that in some circumstances criminal defense attorneys can help their clients avoid criminal liability or help their clients make arrangements to provide information to

3

law enforcement. I did not at any point tell Female 4 she needed a criminal defense attorney or that she needed "immunity" from criminal prosecution. At the end of our call, I said I would look for a referral for a civil attorney for her and she said that was fine. The call lasted 20 minutes.

11. On Saturday, March 16, 2024, at 6:43 and 6:44 p.m. PT, Female 4 called me on my cell phone. I missed the calls but called her back at 7:10 p.m. PT. Female 4 told me that it was "off putting" that I told her she needs a criminal defense attorney. She said she had done nothing wrong and would never need a criminal defense attorney. I told her that I could respond if she wanted me to, but it was up to her. She said that was fine. I told her I was not telling her she needed a criminal defense attorney and I was only asking her if she thought she would be better off with a criminal defense attorney or a civil attorney. I told her that I was asking her questions as I would ask anyone else in this situation questions and that I would refer my clients to a criminal defense if that was appropriate for them. I asked if she still wanted me to refer her to a civil attorney. She said she did not. She told me again that I was off putting and that she wanted me to leave her alone. I said I would. She hung up. The call lasted 10 minutes.

12. I have not reached out to or spoken to Female 4 since March 16, 2024.

13. I interpreted the tone of the conversations I had with Female 4 as generally friendly and I felt Female 4 was willing to provide information, although she seemed somewhat uncomfortable given the subject matter of our conversation and the circumstances of my call. It was not until our last call, which took place after 10:00 p.m. on a Saturday night where Female 4 lives, that she expressed to me in any way that she no longer wanted to speak with me.

This document was executed in San Francisco, California. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and

4

Case 2:23-cv-00071-TRM-JEM   Document 242   Filed 07/03/24   Page 4 of 5   PageID #: 6828

based upon my own personal knowledge, and that if called upon to testify, I could verify the accuracy of the same.


Dated this July 2, 2024. */s Kevin M. Osborne*
Kevin M. Osborne