IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| B.P., H.A., and S.H., individually, and on Behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| VERSUS | ) No. 2:23-cv-00071-TRM-CRW |
| | ) |
| CITY OF JOHNSON CITY, TENNESSEE, et al, | ) ) ) |
| Defendants. | ) |

DEFENDANT PETERS'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL FINANCIAL RECORDS
AND MOTION FOR PROTECTIVE ORDER

Defendant Peters requests an in-person hearing to address Plaintiffs' oppressive financial discovery, which Plaintiffs frankly seek for no reason other than to harass and retaliate. (See DE 108, PageID# 1513, FN1).[1]

This Defendant has a pending motion to dismiss, asserting qualified immunity as to all claims, which remains ripe for adjudication. It is extremely well-settled that qualified immunity is not simply an immunity from liability, but is an immunity from the burdens of litigation, including the burdens of discovery.

---

[1] Defendant flagged this very issue for the Court immediately when the issue first arose in January. Plaintiffs initially propounded this financial and asset discovery to Defendant Peters – and only Defendant Peters – the day after a lengthy (and firm) letter to Plaintiffs' counsel concerning Plaintiffs' overdue discovery. It appeared from the substance and timing to be retaliatory. Similar discovery was not propounded to the any other defendant until over a week later, further calling into question the legitimacy of Plaintiffs' intentions as to Peters. What set Defendant Peters apart to receive such requests singularly, other than that Defendant Peters was pressing Plaintiffs on their seriously overdue responses to his discovery? The retaliatory intent was plainly transparent.

The Sixth Circuit has cautioned courts to restrict discovery until the question of qualified immunity is resolved, by reversing a trial court's failure to promptly address qualified immunity prior to discovery. *Everson v. Leis*, 556 F.3d 484 (6th Cir. 2009):

> "Qualified immunity is intended not only to protect officials from civil damages, **but just as importantly, to protect them from the rigors of litigation itself, including the potential disruptiveness of discovery**. By refusing to address qualified immunity when it was raised, the district court had undercut one of the primary rationales for such immunity—to save officials from unwarranted discovery."

*Id*. at 491.

Defendant Peters asks the Court to enforce his immunity from the suit process, until the Court is able to resolve the pending questions of qualified immunity. DE 138.[2] It is hard to imagine discovery much more burdensome than a decade of invasive financial discovery based on nothing but the whims and delusions of west coast conspiracy theorists. Enough is enough.[3] The Court must draw a line somewhere to prevent these continued smears based on incomplete and misrepresented information.

---

[2] This Defendant recognizes that this Court has a considerable docket, and has cooperated with Plaintiffs' discovery to him thus far in good faith, recognizing that the Court would get to his motion when it was able. As Judge McDonough correctly commented in December, this case is undoubtedly "needy." But Defendant should not be subjected to unlawful discovery, likely propounded in retaliation or for another improper purpose, in the interim.

[3] Plaintiffs' vast claim of conspiracy apparently knows no bounds, and Plaintiffs' counsel's offensive *ad hominem* attacks have become ubiquitous. In addition to the baseless bribery claims against these lifelong police officers who have served their community for literally decades, Plaintiffs' counsel have viciously attacked everyone remotely near this matter, including all of the Defendants' attorneys and many others outside the case. The instant motion itself outrageously accuses the City's attorneys in this case of themselves being "unethical." DE 235, p. 2, FN1. Of course, Plaintiffs have already attacked the undersigned at length. DE 217, and response DE 232. Plaintiffs' counsel attacked the attorney for Defendant Sparks insinuating that she was doing something duplicitous that she concealed with a well-timed cough. DE 217, p. 8, FN 2. Plaintiffs have accused District Attorney General Steve Finney, who was not elected until years after the alleged rapes, of covering all of this up (without any motive to do so), DE 221, and accused DA Finney and the City's attorney Emily Taylor of conspiring together. DOES 576-577. Plaintiffs also baselessly accused Cathy Ball, who was not hired by Johnson City until December 2021, well over a year and even two years after these alleged rapes, of entering some monetary deal to protect Sean Williams based on nothing more than a clearly improvident and unknowing attempt to purchase a condo when she moved to town. DE 236. Plaintiffs have accused non-party independent witness Female 4 of all manner of wrongdoing, to the point that Female 4 accused Plaintiffs' counsel of harassing, intimidating, and bullying her months prior to her deposition, and accused Female 4 of fabricating names on bank records, who were obviously employees of Renasant Bank. DE 232.

Defendant Peters has cooperated in good faith with Plaintiffs' discovery demands in this case, and has properly responded to some three (3) different sets of written discovery, despite awaiting the Court's ruling on his motion asserting qualified immunity. But Plaintiffs' demand for all of his and his wife's tax returns and personal financial records for 10 years, and all bank statements for 6 ½ years, is just beyond the pale. Defendant Peters opposes Plaintiffs' Motion to Compel, and hereby moves pursuant to Fed. R. Civ. P. 26(c) for the entry of a protective order that such discovery not be had at all, or strictly in the alternative that it not be had without an affirmative showing by Plaintiffs that they are likely to prevail on the merits and at a bare minimum that such discovery not be had until the final resolution of all questions of qualified immunity. Defendant Peters will undoubtedly be prejudiced, because the first transaction that Plaintiffs see that they do not understand will undoubtedly result in a public accusation of bribery, just as they wrongfully did to Female 4. See DE 232.

There is no factual or legal basis to permit Plaintiffs to invasively obtain this lifelong law enforcement officer's and his wife's personal finances. Plaintiffs have pointed to nothing – <u>zero</u> – to even remotely suggest that Defendant Peters has received the first penny from any criminal. There is no other colorable justification to seek his financial records.

Plaintiffs' first set of discovery shamelessly revealed their *actual* reason for seeking the information, as they really want to know what kind of personal pressure they might exert on an individual Defendant to pay up some of their hard-earned savings on an otherwise frivolous claim: "List all assets in your possession, custody or control <u>that may</u>

<u>be used to satisfy a judgment</u>." When faced with valid objections, properly supported by caselaw expressly identified in the responses, Plaintiffs suddenly shifted their rationale in a second round of written discovery by removing the "may be used to satisfy a judgment" limitation. But regardless of Plaintiffs' fluid rationalization, there is no legitimate basis for this Defendant to be required to produce his and his non-party wife's personal financial information for a decade. These discovery requests are an abuse of the Court's process.

There is no evidence whatsoever, not one iota, that even remotely suggests Defendant Peters obtained any wrongful financial benefit from anyone. For that matter, there is not even an allegation specific to him, as Plaintiffs hide behind their "other JCPD officers" shotgun language (which this Court has already held is insufficient to even state a claim, See DE #119, PageID# 1765). There is no evidence whatsoever, not one iota, that suggests that Defendant Peters did anything wrong. There is also no evidence that <u>any</u> JCPD officer received any wrongful financial benefit.

The only thing Plaintiffs point to is a Facebook post (purportedly in the name of Sean Williams) while Sean Williams was indisputably incarcerated with no access to Facebook, that itself does not say the first thing about Defendant Peters. It is wholly inadmissible, and is insufficient to support invasive financial discovery of this Defendant regardless.

In the instant motion, Plaintiffs make three completely incoherent claims against Peters. First, in a footnote (DE 235, p.5, FN2), Plaintiffs state that "According to Higgins' deposition testimony" that Higgins "was advised by Peters and other to take

obstructive acts in the case of Female 8." There is no basis for this patently false statement whatsoever. The word "obstructive" or any variation of it does not appear in Higgins's deposition anywhere. No one has ever testified that Peters engaged in or encouraged anyone to "obstruct" anything. This assertion is made up by Plaintiffs' attorney out of whole cloth. The page citations in Plaintiffs' motion, copies of which are in the record at DE 235-17, do not in the most remote way support the proposition that Plaintiffs assert that Peters advised "obstructive" conduct. This kind of shameless falsehood is outrageous. All that Higgins said in these pages was that Peters (a supervisor who was supervising) was generally present outside an interview room and "most likely" gave this investigator "advice on what to ask." (DE 235-17, p. 8). That is hardly "deposition testimony" that Higgins "was advised by Peters and others to take obstructive acts in the case of Female 8." (DE 235, p. 5, FN2). These kinds of reckless allegations by Plaintiffs are extremely troubling.

Second, Plaintiffs shamelessly insinuate that Female 4's confusion of the name Peters with another officer who called her, was somehow "suspicious." (See DE 235, p. 8-9). But a contemporaneous email that Plaintiffs themselves exhibited to Female 4's deposition had the correct name, and when Female 4 checked her cell phone at Plaintiffs' counsel's request, the cell phone contained the correct name that matched the contemporaneous email. (See DE 232, PageID# 5365-5364, and 232-2, p. 178 line 18 through p.179 line 14). Plaintiffs are playing some kind of game with the Court by making this allegation, and it is specious for Plaintiffs to claim that a clear mistake with a name – that Female 4 herself promptly corrected – is evidence of some wrongdoing. This

allegation is malicious. Moreover, what of it? If Peters *had* called Female 4 trying to find out where Sean Williams was, that would not prove <u>any</u> malfeasance, it would prove that a police officer was trying to find a fugitive from justice. Plaintiffs' entire contrived theory makes absolutely no sense at all.

Finally, Plaintiffs make the false allegation that some computer audit trails do not match Peters's deposition testimony in the *Dahl* case. (See DE 235, p. 14-15). This is also categorically false. The audit trails do not show anything other than that Peters, a supervisor who was supervising, occasionally "viewed" computerized investigative files at a few various times. One would not expect anything less. Plaintiff's false claim that this somehow contradicted Peters's testimony in a deposition from *Dahl* is utterly nonsensical. The pages of testimony (See DE 234, Peters's depo excerpt, p. 28) that Plaintiff cites for this proposition does not include <u>any</u> testimony that Peters did not view these files. On the contrary, the very last question and answer of the two-page excerpt makes clear that Peters would need to review the files to answer:

> Q. When did you first learn of [Female 12] complaint? Do you recall?
>
> A. No. Without seeing the case file and the investigative notes, I wouldn't be able to answer that because I don't […] (cut off by Plaintiffs).

The undersigned cannot fathom why Plaintiffs' counsel would mischaracterize these things for this Court. But the evidence does not support Plaintiffs' contentions. And it certainly does not support any justification for oppressive financial discovery.

Aside from Peters, Plaintiffs' Motion also categorically misrepresents other proof that has been adduced in discovery. Plaintiffs point to business practices of Female 4,

misrepresenting Female 4's testimony and the documents exhibited thereto, to suggest that there was something untoward in connection with Female 4's (or even Sean Williams's) finances. (See DE 232, p. 9-14, and 232-2 in its entirety).

But even if <u>any</u> of Plaintiffs' imaginary version of Female 4's testimony were true, <u>none of it even remotely implicates any JCPD officers in some cover-up scheme</u>, and it is nothing more than a red herring. Plaintiffs cannot connect a single JCPD officer to Sean Williams in any way whatsoever.

The issue in this case is not whether Sean Williams is a degenerate criminal who may have had shady personal finances in connection with his and his guests' apparent significant drug habits. The question is whether the JCPD had some constitutional obligation to Plaintiffs to charge Williams sooner or differently than they did, or (as Plaintiffs continue to defame these honest officers wholly without basis by repeating) whether these individuals covered-up a crime. There is no basis for either claim.

The only testimony before the Court is Female 4 (See DE 232-2):

> Q. (BY MR. RADER) I'm just going to ask you straight out, have you ever paid cash to any police officer for any reason?
>
> MS. BAEHR-JONES: Objection.
>
> A. I have never paid a single dollar to any police officer.
>
> Q. (BY MR. RADER) All right. You certainly haven't bribed anybody, have you?
>
> MS. BAEHR-JONES: Objection.
>
> A. I have never bribed anyone.

> Q. (BY MR. RADER) You haven't paid off officers to try to cover for Sean Williams, have you?
>
> MS. BAEHR-JONES: Objection.
>
> A. Absolutely not.
>
> Q. (BY MR. RADER) You haven't paid Kevin Peters.
>
> MS. BAEHR-JONES: Objection.
>
> A. I have never met Kevin Peters.

Neither Plaintiffs' counsels' disdain for Female 4, nor Plaintiffs' or their counsels' vivid imagination, constitute evidence. The <u>actual</u> <u>evidence</u> is that no one paid off a single police officer, ever.

Plaintiffs' filings are defamatory, the discovery sought is improper and unduly burdensome, and Defendant Peters pleads to the Court to put a stop to this. He also expressly asserts his qualified immunity as an immunity from these improper burdens, and asks the Court to enforce this immunity unless and until there has been a final resolution of this qualified immunity claim.

The financial discovery is not permissible in any event. See *Green v. Platinum Restaurants Mid-America*, LLC, 2021 WL 3928822, at *4 (W.D.Ky., 2021) ("Plaintiffs must first succeed on the merits of their claims and receive a favorable judgment before this type of discovery becomes relevant and appropriate" and citing *Corizon Health, Inc. v. CorrecTek, Inc*., No. 5:17-CV-35-TBR-LLK, 2017 WL 7693390, at *3 (W.D. Ky. Dec. 12, 2017)). Peters cited the foregoing caselaw in his actual response and objection. The

City further provided additional authority to Plaintiffs: "See *F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (Noting that a private Plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered). Advisory Committee's Note, 1970 Amendments; and 8 Wright, Miller and Marous, Federal See also, Fed. Rule Civ. P. 26(b)(2), Practice and Procedure & 2010 (2d.ed.1994). See also *Sanderson v. Winner*, 502 F.2d 477, 479-80 (10th Cir. 1974) Cert Denied, 421 U.S. 194 (1975)."

As the caselaw cited above supports, "Ordinarily, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." *Dickson v. Nat'l Maint. & Repair of Ky., Inc.*, 2011 WL 2610195 (W.D. Ky. 2011) (quoting *Ranney–Brown Distribs., Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D.Ohio 1977)).

Despite all of this authority having been contemporaneously supplied to Plaintiffs, the Plaintiffs do not appear to cite any authority in their Motion for the proposition that these materials are discoverable at this stage of the case, and without some concrete showing by Plaintiffs of their relevance. The cases cited by Plaintiffs are inapposite and deal with unrelated issues.

Instead, this Court has also addressed "fishing expeditions," which is a charitable description of Plaintiffs' tactic in this case (as opposed to abusive and retaliatory). *R.S. Logistical Solutions, Ltd. v. Janus Global Operations, LLC*, 2022 WL 3702083 at *2 (E.D.Tenn. 2022) (McCook, J.) (stating "Courts have cautioned, however, that

"[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims.'"). Other Defendants have cited this Court's case of *Whiting v. Trew*, 2021 WL 2690504 (E.D.Tenn. June 30, 2021), aff'd sub nom. *Whiting v. Trew*, 2023 WL 5352133 (6th Cir. Aug. 21, 2023), saying the same thing. *Whiting* at *12. See also *Owensby v. Walgreen Co.*, 2024 WL 1643686 (E.D.Tenn. 2024).

There is additionally a requirement of proportionality that Plaintiffs cannot establish. There is simply no proportionality for all of this Defendant's and his wife's financial records for a decade, as compared to the issues in this case. This is most especially true where there is no allegation in any iteration of Plaintiff's complaint that this particular defendant received any improper financial benefit from anyone (nor can there be within the confines of Rule 11). As this Court explained in *Owensby*:

> With respect to proportionality, "there is now a specific duty for the court and the parties to consider discovery in the light of its 'proportionality to the needs of the case[.]' " *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 WL 323748, at *1 (M.D. Tenn. Jan. 27, 2016) (citation omitted). "Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' " *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (quoting John G. Roberts, Jr., 2015 Year-End Report on the Federal Judiciary 6 (2015)).

*Id* at *2.

The financial discovery sought is improper, it is not discoverable particular at this stage, and it is not proportional. It also violates Defendant Peters's entitlement to be free of the burdens of discovery in accordance with his assertion of qualified immunity as to

all claims against him. The Court should deny Plaintiffs' motion, and should enter a protective order.

CONCLUSION

Plaintiffs' Motion to Compel should be denied. The Court should enter a protective order prohibiting the discovery sought as to this Defendant. Defendant further requests his attorneys' fees necessary in responding to this motion. *Capitol Recs., LLC v. ReDigi Inc.*, 2022 WL 1046463, at *7 (S.D.N.Y. Apr. 7, 2022) (finding litigation conduct warranted an award of attorney's fees where party served needless discovery and engaged in a needless "fishing expedition").

Respectfully submitted,

MOORE, RADER AND YORK, P. C.

s/DANIEL H. RADER IV, BPR #025998
 DANIEL H. RADER IV / BPR #025998
 P. O. Box 3347
 Cookeville, TN 38502
 Phone: (931) 526-3311
 Fax: (931) 526-3092
 danny@moorerader.com
 Attorneys for Kevin Peters in his
 individual capacity

# CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: ashley@hmccivilrights.com

Heather Moore Collins
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Suite 320
Brentwood, TN 37027
615-724-1996
Email: heather@hmccivilrights.com

Ms. Elizabeth A. Kramer
Mr. Kevin M. Osborne
Erickson, Kramer Osborne LLP
44 Tehama Street
San Francisco CA 94105
(415-635-0631)
Email: elizabeth@eko.law
Email: kevin@eko.law

Emily C. Taylor
Watson Roach Batson & Lauderback
P. O. Box 131
Knoxville, TN 37901-0131
865-637-1700
Email: etaylor@watsonroach.com
*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his Individual Capacity*

Caroline Drinnon
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: caroline@hmccivilrights.com

Vanessa Baehr-Jones
Advocates for Survivors of Abuse
4200 Park Blvd., No. 413
Oakland, CA 94602
Email: vanessa@advocatesforsurvivors.com
*Pro Hac Vice Attorney for Plaintiff*

Mr. Keith H. Grant
Mr. Philip Aaron Wells
Ms. Laura Beth Rufolo
Robinson, Smith & Wells
633 Chestnut Street
Suite 700 Republic Centre
Chattanooga, TN 37450
Email: kgrant@rswlaw.com
Email: awells@rswlaw.com
Email: lrufolo@rswlaw.com

K. Erickson Herrin
Herrin McPeak & Associates
515 E. Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
(423-929-7113)
*Attorney for the City of Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Toma Sparks, in his official*

| | capacity, and Kevin Peters, in his official capacity |
|---|---|
| Thomas J. Garland, Jr.<br>Milligan & Coleman, PLLP<br>230 W Depot St.<br>Greeneville, TN  37743<br>Email:  tgarland@milligancoleman.com<br>*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his Individual capacity* | Ms. Kristin E. Berexa<br>Mr. Benjamin C. Allen<br>Farrar Bates Berexa<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN  37027<br>615-254-3060<br>Email:  kberexa@fbb.law<br>ballen@fbb.law<br>*Attorneys for Toma Sparks* |

Vanessa Baehr-Jones
Advocates for Survivors of Abuse PC
4200 Park Boulevard No. 413
Oakland, CA  94602
510-500-9634
Email: vanessa@advocatesforsurvivors.com

  This 12th day of July, 2024.

        MOORE, RADER AND YORK, P. C.


        s/DANIEL H. RADER IV, BPR 025998
         DANIEL H. RADER IV / BPR #025998
         P. O. Box 3347
         Cookeville, TN  38502
         (931-526-3311)
         danny@moorerader.com