UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| B.P., et al., | ] |
| | ] |
| Plaintiffs, | ] |
| | ] |
| v. | ] No.  2:23-cv-00071-TRM-JEM |
| | ] JURY DEMAND |
| CITY OF JOHNSON CITY, TENNESSEE, | ] |
| et. al., | ] |
| | ] |
| Defendants. | ] |

## RESPONSE OF KARL TURNER AND CITY OF JOHNSON CITY, TENNESSEE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL [Doc. 235]

The plaintiffs have filed a Motion to Compel seeking the production of the defendants'

financial records and a real estate contract between City Manager Ball and Sean Williams. [Doc.

235, PageID #: 5499] Karl Turner ("Turner") and the City of Johnson City, Tennessee ("Johnson

City") oppose the Plaintiffs' Motion to Compel for the reasons set forth in this Response.

### I.    Discovery standard

In *Whiting v. Trew*, 2021 WL 269004 (E.D.Tenn. June 30, 2021), *aff'd sub nom. Whiting*

*v. Trew*, 2023 WL 5352133 (6th Cir. Aug. 21, 2023), this Court set forth the discovery standard:

> The Court will begin with Federal Rule of Civil Procedure 26, which governs
> discovery. Rule 26(b)(1) provides as follows:
>
>> Unless otherwise limited by court order, the scope of discovery is as
>> follows: Parties may obtain discovery regarding any nonprivileged
>> matter that is relevant to any party's claim or defense and
>> proportional to the needs of the case, considering the importance of
>> the issues at stake in the action, the amount in controversy, the
>> parties' relative access to relevant information, the parties' resources,
>> the importance of the discovery in resolving the issues, and whether
>> the burden or expense of the proposed discovery outweighs its likely
>> benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). **Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims."** *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

In addition, under Rule 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The moving party must show good cause for protection from the harms identified above. Fed. R. Civ. P. 26(c)(1). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). With respect to tax returns, "some courts have applied a two-part test to determine whether the discovery of tax returns is permissible." *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *4 (E.D. Tenn. Mar. 27, 2017). "Under this test, a party seeking tax returns has to show that they (1) are relevant, and (2) contain information that is not obtainable from other sources." *Id.* While this Court has not adopted this test, "it must at least be mindful of the emphasis that its sister courts place on the public-policy concerns that have unquestionably contributed to this test's emergence." *Id.*

*Id. at *12* (emphasis supplied).

## II.     Plaintiffs' Motion to Compel disclosure of assets that could satisfy a judgment

### A.     Plaintiffs' position

As set forth in their Motion to Compel, the plaintiffs propounded discovery regarding the defendants' financial records for two reasons. First, in an effort to support their accusation that the defendants have engaged in an extortion scheme. Second, to obtain information "to identify all assets … which could be used to satisfy a judgment." *See Doc. 235, PageID #: 5499.*

### B.     Turner's Response on issue of discovery to satisfy potential judgment

On the issue of discovery to satisfy a potential judgment, Turner cited case law on this

2

issue in his Response to Plaintiffs' Second Set of Interrogatories and Requests for Production of

Documents:

> … these requests [seeking income and asset information] are improper using Fed. R. Civ. P. 26. *Green v. Platinum Restaurants MidAmerica, LLC*, 2021 WL 3928822, at \*4 (W.D.Ky., 2021) ("Plaintiffs must first succeed on the merits of their claims and receive a favorable judgment before this type of discovery becomes relevant and appropriate"); citing *Corizon Health, Inc. v. CorrecTek, Inc.*, No. 5:17-CV-35-TBR-LLK, 2017 WL 7693390, at \*3 (W.D. Ky. Dec. 12, 2017)). *See F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (Noting that a first private Plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered). *Advisory Committee's Note, 1970 Amendments; and 8 Wright, Miller and Marous, Federal See also, Fed. Rule Civ. P. 26(b)(2), Practice and Procedure & 2010 (2d.ed.1994). See also Sanderson v. Winner, 502 F.2d 477, 479-80 (10th Cir. 1974) Cert Denied, 421 U.S. 194 (1975).* These requests are also impermissible insofar as they are intentionally calculated to harass, annoy, embarrass, and oppress Defendant Turner. Defendant Turner further asserts the doctrine of qualified immunity with respect to these and other discovery matters.

*See Doc. 235-14, PageID ##: 5637-38.*

Notwithstanding the fact that Turner had already made a detailed legal objection, the plaintiffs' twenty-seven (27) page Motion to Compel *makes no argument and cites no case law* on the issue of discovering financial information on the basis that the information is needed to determine if a defendant can satisfy an as-yet-not-rewarded judgment. Therefore, the plaintiffs have waived any argument on this issue. *See Smith v. Astrue*, No. 2:11-CV-53, 2012 WL 406202, at \*5 (E.D. Tenn. Jan. 12, 2012), *report and recommendation adopted*, No. 2:11-CV-53, 2012 WL 406142 (E.D. Tenn. Feb. 8, 2012) wherein Magistrate Judge Carter explained:

> As the Commissioner argues, Plaintiff does not challenge the ALJ's physical RFC determination (*See* Doc. 10, Plaintiff's Brief at 5-9.) Thus, Plaintiff has effectively conceded that the ALJ's physical RFC determination was proper. *See United States v. Moore,* 376 F.3d 570, 576 (6th Cir.2004) (stating that the "normal practice" is to decline to address issues not raised in a party's opening brief); *see also McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir.1997) **("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed**

3

**argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."** (Citation and quotation marks omitted)).

*Id. at \*5 (emphasis supplied). See also, Memorandum and Order,* Doc. 256, PageID #: 7003 (7-09-24; McCook). For this same reason, any effort by the plaintiffs to attempt to repair this waiver in a reply brief should not be permitted because at that point it becomes a due process issue since a non-movant cannot sur-reply. Moreover, were the Court to allow an argument to be developed for the first time in a reply brief, this would encourage a movant to "sandbag" until the reply brief – knowing that the non-movant could not respond.[1]

Based on the law cited by Turner and based on the fact that the plaintiffs have waived any argument on this issue, this ground is not a basis to grant the plaintiffs' Motion to Compel.

## III. Plaintiffs' Motion to Compel disclosure of financial records re extortion theory

### A. Plaintiffs' position

Ironically, the plaintiffs are relying on the purported credibility of Sean Williams ("Williams") to support their frivolous position that Johnson City police officers were receiving bribes from Williams through his company. The plaintiffs make this clear in their Second Amended Complaint. *See Doc. 121, PageID #: 1783 at ¶¶ 62-63.* For example, in paragraph 63 they quote from Sean Williams' Facebook post that was dated September 2, 2023 – a portion of which reads as follows: The corruption . . .

> [Female 4] my ex and business partner, was paying officials at JCPD with money from my company for years because she got caught selling cocaine and the corrupt

---

[1] Counsel is not suggesting that that is what is occurring in this instance; but this is the policy reason for not allowing it.

4

officers targeted her for extortion probably due to her association to me. When ▇ fell, it created a problem. The corruption could potentially be exposed. ▇ made $2000 a week payments to Sparks and other unnamed officers using bogus fraudulent 1099 names and forged owner's draws.

*See Doc. 121, PageID #: 1783.* As referenced by this Court, [Female 4] has previously represented to the Court that "the only time [her] name has come up is through a posting by someone using the name Sean Williams, who was incarcerated at the time." *Doc. 256, Memorandum and Order, PageID #: 7002.* In other words, how Williams would be able to make a Facebook post while incarcerated (in Kentucky) is never explained, but is just one more example of a "fact" in an elaborate conspiracy theory that requires no actual evidence to tell the tale, only innuendo and conjecture.

    B.  Position of Chief Turner

As the plaintiffs make clear in their Motion, they have "obtained bank records for Williams' company, Glass and Concrete Contracting LLC ("GCC"), as well as for limited liability companies associated with Female 4." *See Doc. 235, PageID ##: 5503-04.* Female 4 was Williams' business partner. In addition to obtaining these bank records, the plaintiffs have now deposed Female 4. As addressed below, Female 4 has denied any scheme to make payments to officers, and the plaintiffs have not uncovered any evidence of payments to officers in the bank account of Williams' company or the bank accounts of Female 4's LLCs. While plaintiffs continue to advance speculation about [Female 4's] transfer of money to other accounts and to herself, she denies any distribution of bribes to any JCPD officer. [Female 4 Depo., p. 235]. Further, Female 4 testified:

       Q.   (BY MR. RADER)  I'm just going to ask you straight out, have you ever paid cash to any

5

police officer for any reason?

      MS. BAEHR-JONES:  Objection.
      A.     I have never paid a single dollar
to any police officer.
      Q.    (BY MR. RADER)  All right.  You
certainly haven't bribed anybody, have you?
      MS. BAEHR-JONES:  Objection.
      A.     I have never bribed anyone.
      Q.    (BY MR. RADER)  You haven't paid off
officers to try to cover for Sean Williams, have
you?
      MS. BAEHR-JONES:  Objection.
      A.     Absolutely not.
      Q.    (BY MR. RADER)  You haven't paid
Kevin Peters.
      MS. BAEHR-JONES:  Objection.
      A.     I have never met Kevin Peters.
      Q.    (BY MR. RADER)  And haven't paid
Tyler Whitlock.
      A.     I did not.
      Q.    Hadn't paid Toma Sparks.
      MS. BAEHR-JONES:  Objection.
      A.     I have never met him, talked to
him, or paid him, no.
      Q.    (BY MR. RADER)  Hadn't paid or
talked to or met Justin Jenkins, have you?
      MS. BAEHR-JONES:  Objection.
      A.     No.
      Q.    (BY MR. RADER)  All right.  Hadn't
paid or talked to Jeff Legault.
      MS BAEHR-JONES:  Objection.
      A.     No.
      Q.    (BY MR. RADER)  Hadn't paid or
talked to Brady Higgins?
      MS. BAEHR-JONES:  Objection.
      A.     No.
      Q.    (BY MR. RADER)  Hadn't paid or
talked to Karl Turner.
      A.     No.
Female 4 Depo. p.235 L. 11-25; p. 236, L 1-25; p. 237, L.1.

For the reasons explained below, the position of Turner is that compelling him to disclose

6

personal financial information should be denied because it would constitute a "fishing expedition" under circumstances where the allegation is only based upon a hearsay Sean Williams' Facebook post, and the plaintiffs have already engaged in discovery by: (1) obtaining company bank records, and (2) deposing Williams' business partner, who (supposedly) according to Williams, was the person making the alleged extortion payments. The plaintiffs are offering only second hand hearsay of an incarcerated person with horrific criminal charges in response to the sworn testimony of Female 4 with available bank records used as exhibits. The plaintiffs are challenged to present any fundamental, actual, admissible, sworn or verifiable evidence of Johnson City police officers being bribed or participating in a conspiracy.

C. Plaintiffs' Motion to Compel asserts: "The Alleged Extortion Scheme Involved Payments to JCPD Officers"[2]

The plaintiffs make this assertion without any proof whatsoever. The plaintiffs simply recounted allegations in the Second Amended Complaint for which they had no factual basis to assert to begin with. *See Doc. 235, PageID #: 5503.* "Specifically, plaintiffs allege that defendants participated in a conspiracy to cover-up JCPD's extortion of Williams through Female 4, by obstructing any investigation into Williams' sex trafficking venture. *Motion to Compel, Doc. 128-6, PageID #: 3987.*

D. Plaintiffs' Motion to Compel asserts: "Bank Records and Deposition Testimony Corroborate the Extortion Scheme Allegations"

The plaintiffs' assertion is not supported by either the bank records or the deposition testimony. *Id.* The plaintiffs' Motion provides the following example of "support":

Plaintiffs' ongoing review of [the bank records] has revealed that Williams moved

---

[2] "JCPD" means the "Johnson City Police Department."

money out of GCC through transfers to accounts associated with other limited liability companies, including those controlled by Female 4, and, over the course of the conspiracy, provided weekly payments directly to Female 4, all of which are listed as "commercial cash" transfers in the bank statements.

For instance, it appears that Williams moved $850 on a weekly basis via checks from an account ending in to an account ending in which Female 4 and Williams both controlled. (*See, e.g.*, ECF 192 (sealed filing) at RENASANT001200-001263; RENASANT000141.) The transfers were noted in the bank deposit slips as "for Female 4" (listing her true name) with a note stating "member draw" on several of the payments. (*See, e.g.*, *id.* at RENASANT001246.) The transfers were made as "commercial cash." This pattern of approximately $850/week payments continued over the course of the alleged conspiracy, with over $35,000 withdrawn by Female 4 in "commercial cash" between March and December 2020 alone. This evidence corroborates some of the facts alleged in the SAC concerning the nature and timing of the extortion scheme. *See* SAC ¶ 63. (Female 4 made "forged owner's draws" to access the cash to pay off Sparks and other JCPD officers on a weekly basis).

*See Doc. 235, PageID #: 5504.*

It is disturbing that the plaintiffs are making this particular argument. Turner adopts by reference the "Response in Opposition to Plaintiffs' Motion Regarding Deposition Conduct" filed by Kevin Peters ("Peters") *See Doc. 232, PageID #: 5354*. Peters' Response is supported by two exhibits. *See Docs. 232-1 and 232-2.* That Response addresses, in part, the fact that neither the bank records nor the deposition testimony of Female 4 reveals any extortion scheme. In that Response, counsel for Peters explains that during the direct examination of Female 4, plaintiffs' counsel presented *incomplete* monthly bank statements to Female 4. It was only on cross-examination by counsel for Peters that the *complete* bank statements were presented, and it was clear from both Female 4's testimony – as well as a plain reading of the bank statements – that the "commercial cash" transactions were not withdrawals of money. *See Doc. 232, PageID ##: 5362-65.* Furthermore, throughout her deposition Female 4 denied that she was paying off any officers.

8

*See e.g. Peters' Response at Doc. 232, PageID #: 5362 that quotes from Female 4's deposition at p. 224 line 14 through p. 225 line 4.*

If plaintiffs' counsel had accidently misread the bank statements at the time of her direct examination of Female 4, then she knew by the end of Female 4's deposition on June 4, 2024 of her error. Moreover, Peters' Response – *which pointed out plaintiffs' counsel's misrepresentation (whether negligent or intentional)* – was filed on June 25, 2024. And yet in the plaintiffs' Motion to Compel filed on June 28, 2024, plaintiffs' counsel persists in misrepresenting what the bank records clearly show. That is why plaintiffs' position is disturbing. *See* Female 4 deposition pages 209-230 attached establishing line-of-credit payments made matching to the penny what Plaintiffs' counsel attempted to present as cash withdrawals that Female 4 was pocketing. As Female 4 correctly concluded, the reason she was not shown the corresponding line-of-credit statement by plaintiffs' counsel was "To confuse me, and they also don't fit the narrative [the plaintiffs want]. [Female 4 Depo., p. 230, L.9]

E. Plaintiffs' Motion to Compel asserts: "Corruption Scheme Broader Than Initially Known"

Plaintiffs assert: "As Plaintiffs have obtained evidence in discovery, it appears that JCPD may have coordinated with Female 4 in liquidating Williams' assets in 2022." *See Doc. 235, PageID #: 5508.* The plaintiffs provide no evidence *whatsoever* to support this reckless assertion. Moreover, Female 4 was Williams' business partner. Financial transactions made by Female 4, in and of themselves, do not support an extortion scheme by JCPD officers.[3]

---

3 For example, the Motion to Compel asserts that Female 4 allegedly began withdrawing cash in the amount of $10,000 over several weeks in June 2022 – which was more than a year after Sean Williams disappeared. The fact that a business partner withdrew money is not evidence of money

9

F. Conclusion

The plaintiffs' basis for making the extortion allegation is a Facebook post allegedly from an incarcerated Sean Williams, on whose veracity the plaintiffs are relying. Williams alleged that the payments were made through his company – with his business partner, Female 4, making the payments. *Without objection from the defendants*, the plaintiffs have been able to obtain the financial records of Williams' company, as well as the LLCs operated by his business partner, Female 4. *Also without objection from the defendants*, the plaintiffs have had an opportunity to depose Female 4 extensively regarding Williams' assertion of extortion made in the hearsay Facebook post. Unsurprisingly, there is no evidence to support the extortion theory. Based on the fact that the plaintiffs' theory is only supported by a Sean Williams' Facebook post and based on the fact that the plaintiffs have had the opportunity to: (1) discover the company bank records, and (2) depose the person whom Williams said was making the extortion payments, the Motion to Compel should be denied because the plaintiffs' discovery requests have become "a fishing expedition masquerading as discovery." *See Dellinger v. Mays*, 2021 WL 463439, at \*5 (E.D. Tenn. 2021).

Chief Turner, in his individual capacity, has affirmatively asserted qualified immunity from suit when in answering the plaintiffs' multiple complaints. Therefore, Turner adopts by reference the arguments advanced by Peters in his *Response to Plaintiffs' Motion to Compel.*

The City and Turner also adopt the arguments made by Sparks regarding the failure of the Plaintiffs to engage in a meet and confer before filing their own *Motion to Compel*. This

---

being paid to any JCPD officer, much less Chief Turner.

10

circumstance serves to void the plaintiffs' request for attorney fees and on the contrary warrants an award of fees for defendants who have been subjected to this continued approach to discovery by the plaintiffs.

## IV.     MOTION TO COMPEL PRODUCTION OF REAL ESTATE CONTRACT

### A.   Plaintiffs' position

The plaintiffs seek a copy of a real estate contract between Williams and Cathy Ball that was canceled once Cathy Ball learned that Williams was a fugitive.

### B.   City's position

As an initial matter, the real estate contract sought from the City is not a City document and is not in the possession of the City.   It is a personal contractual document entered into by the City Manager and her husband in their personal capacity.

Notwithstanding this circumstance, City Manager Ball has, in her deposition and otherwise, provided hard, irrefutable facts regarding her (1) lack of knowledge as to who Sean Williams was at the time she made an offer to purchase *one* of the condominiums owned by Williams located in the former bank building located at 200 East Main Street; (2) never met with or talked to Sean Williams, and (3) withdrew her offer to purchase when her attorney told her Williams was a fugitive based on a federal indictment obtained due to the efforts of Johnson City police officers who are now slanderously being accused of protecting him.

Further, the City Manager's offer to purchase *one* of Williams' *three* condominiums for $416,000.00 was below the appraised value of $426,000.00, and the condominium ultimately sold to another party for $400,000.00. [Ball Depo. p. 134].   Plaintiffs' misleading efforts suggesting the value of the single condominium was much higher and that the City Manager was in cahoots

11

with Williams, attempting to participate in a money scheme with a below market purchase is not only specious, it is desperately and knowingly stretching the truth beyond the breaking point. *Motion, Doc. 128-6, PageID #: 3977.*

The contract will be voluntarily provided under separate cover by City Manager Cathy Ball consistent with the terms of the Joint Protective Order in yet another effort to put a halt to the outrageous, unsupported, spin machine of the plaintiffs.

## V.    CONCLUSION

Based on the foregoing, the plaintiffs' Motion to Compel the financial records of the defendant officers should be denied. And with respect to the plaintiffs' Motion to Compel Cathy Ball's real estate contract, Ms. Ball has chosen to release her personal documents without a subpoena with the continued basic intention of providing truthful information in response to the highly questionable tactics being utilized by the plaintiffs in this litigation.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN   37605-0629
Phone: (423) 929-7113
Fax: (423) 929-7114
Email:  lisa@hbm-lawfirm.com

Emily C. Taylor, BPR # 27157
**WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.**
P.O. Box 131
Knoxville, TN   37901-0131
Phone: (865) 637-1700
Email:  etaylor@watsonroach.com

12

Jonathan P. Lakey, BPR # 016788
**BURCH, PORTER & JOHNSON, PLLC**
130 North Court Avenue
Memphis, TN 38103
Phone: (901) 524-5024
Email: jlakey@bjplaw.com

*Attorneys for Defendants*

13

B.P.

vs.

City of Johnson City, Tennessee, et al,

---

"Female 4"

June 04, 2024



Lexitas Legal TENNESSEE | 1015 Avery Park Dr | Smyrna, TN 37167 | (615) 595-0073

```
 1    complete picture, don't we?
 2                   MS. BAEHR-JONES:  Objection.
 3         A.        Yes, we do.
 4         Q.        (BY MR. RADER) Do you have any idea
 5    why plaintiffs' counsel would withhold these
 6    important pages in order to give you complete
 7    context?
 8                   MS. BAEHR-JONES:  Objection.
 9         A.        To confuse me, and they also don't
10    suit the narrative.
11                   MS. BAEHR-JONES:  Objection.
12         Q.        (BY MR. RADER) All right.  When you
13    look at the additional pages, does it give you the
14    complete story so that you can explain what these
15    transactions are about?
16                   MS. BAEHR-JONES:  Objection.
17         A.        Yes.
18         Q.        (BY MR. RADER) Plaintiffs' counsel
19    asked you what a bank employee would testify to.
20                   Do you think a bank employee would
21    have an opportunity to look at their own complete
22    paperwork?
23                   MS. BAEHR-JONES:  Objection.
24         A.        They would.
25         Q.        (BY MR. RADER) Okay.  But once
```

```
 1     come to your home that day, did he?

 2            A.      He did not.

 3            Q.      You wanted the police to find him,

 4     didn't you?

 5            A.      Oh, yeah.

 6            Q.      And they wanted to find him, too,

 7     didn't they?

 8            A.      I would think so.

 9                    MS. BAEHR-JONES:  Objection.

10            A.      Yes.

11            Q.      (BY MR. RADER) I'm just going to

12     ask you straight out, have you ever paid cash to any

13     police officer for any reason?

14                    MS. BAEHR-JONES:  Objection.

15            A.      I have never paid a single dollar

16     to any police officer.

17            Q.      (BY MR. RADER) All right.  You

18     certainly haven't bribed anybody, have you?

19                    MS. BAEHR-JONES:  Objection.

20            A.      I have never bribed anyone.

21            Q.      (BY MR. RADER) You haven't paid off

22     officers to try to cover for Sean Williams, have

23     you?

24                    MS. BAEHR-JONES:  Objection.

25            A.      Absolutely not.
```

Case 2:23-cv-00071-TRM-JEM   Document 262   Filed 07/12/24   Page 16 of 22   PageID #: 7078

```
 1          Q.        (BY MR. RADER) You haven't paid
 2    Kevin Peters.
 3                    MS. BAEHR-JONES:  Objection.
 4          A.        I have never met Kevin Peters.
 5          Q.        (BY MR. RADER) And haven't paid
 6    Tyler Whitlock.
 7          A.        I did not.
 8          Q.        Hadn't paid Toma Sparks.
 9                    MS. BAEHR-JONES:  Objection.
10          A.        I have never met him, talked to
11    him, or paid him, no.
12          Q.        (BY MR. RADER) Hadn't paid or
13    talked to or met Justin Jenkins, have you?
14                    MS. BAEHR-JONES:  Objection.
15          A.        No.
16          Q.        (BY MR. RADER) All right.  Hadn't
17    paid or talked to Jeff Legault.
18                    MS. BAEHR-JONES:  Objection.
19          A.        No.
20          Q.        (BY MR. RADER) Hadn't paid or
21    talked to Brady Higgins?
22                    MS. BAEHR-JONES:  Objection.
23          A.        No.
24          Q.        (BY MR. RADER) Hadn't paid or
25    talked to Karl Turner.
```

```
 1              A.       No.

 2                       MS. BAEHR-JONES:  Objection.

 3              Q.       (BY MR. RADER) Hadn't paid or

 4    talked to any other police officer with the City of

 5    Johnson City.

 6                       MS. BAEHR-JONES:  Objection.

 7              A.       No one.

 8              Q.       (BY MR. RADER) Haven't paid or

 9    talked to any other employee of the City of Johnson

10    City.

11                       MS. BAEHR-JONES:  Objection.

12              A.       No one.

13              Q.       (BY MR. RADER) Would you ever do

14    such a thing?

15                       MS. BAEHR-JONES:  Objection.

16              A.       I would not.  I'm offended that

17    I've been accused of -- or allegations have been

18    made of me like that.

19              Q.       (BY MR. RADER) Well, I'll represent

20    to you the police officers are, too.

21                       MS. BAEHR-JONES:  Objection.  That

22           is improper.

23                       MR. RADER:  All right.

24                       MS. BAEHR-JONES:  And you know it.

25                       MR. RADER:  No, I don't know that.
```

```
 1                    C E R T I F I C A T E

 2    STATE OF TENNESSEE:

 3    COUNTY OF KNOX:

 4

 5                    I, Jeffrey D. Rusk, Registered

 6    Professional Reporter and Notary Public, do hereby

 7    certify that I reported in machine shorthand the

 8    foregoing proceedings; that the foregoing pages,

 9    inclusive, were prepared by me using computer-aided

10    transcription and constitute a true and accurate

11    record of said proceedings.

12                    I further certify that I am not an

13    attorney or relative of any attorney or counsel

14    connected with the action, nor financially

15    interested in the action.

16                    Witness my hand and official seal

17    this the 4th day of June, 2024.

18

19

20    _____

21    Jeffrey D. Rusk, RPR, CLVS
      Notary Public at Large
22    My Commission Expires:   4/29/2026
      TCRB License No. 212
23

24

25
```

# B.P.

## vs.

## City of Johnson City, Tennessee, et al,

---

## CATHY BALL

## June 03, 2024



Lexitas Legal TENNESSEE | 1015 Avery Park Dr | Smyrna, TN 37167 | (615) 595-0073

```
 1    eventually listed for sale?
 2         A.      I don't think it was.
 3         Q.      Do you know how much it was sold
 4    for eventually?
 5         A.      I came to find out that it was sold
 6    for $400,000.
 7         Q.      Do you know who bought it?
 8         A.      I don't know the name of the person
 9    that bought it.  I heard the name.  I did not know
10    the name.
11         Q.      When was the first time you heard
12    about Sean Williams?
13         A.      The first time I heard about him
14    was when his name was on a contract.  That's the
15    first time I saw his name.
16         Q.      The contract to buy the
17    condominium?
18         A.      Yes, ma'am.
19         Q.      Okay.  When was the first time you
20    heard about him in the context of your job duties?
21         A.      After I found out he was a
22    fugitive.
23         Q.      Okay.  Tell me about that.
24         A.      I learned then that he -- the
25    information that we've come to know because I
```

```
 1              C E R T I F I C A T E

 2     STATE OF TENNESSEE:

 3     COUNTY OF KNOX:

 4

 5              I, Jeffrey D. Rusk, Registered

 6     Professional Reporter and Notary Public, do hereby

 7     certify that I reported in machine shorthand the

 8     foregoing proceedings; that the foregoing pages,

 9     inclusive, were prepared by me using computer-aided

10     transcription and constitute a true and accurate

11     record of said proceedings.

12              I further certify that I am not an

13     attorney or relative of any attorney or counsel

14     connected with the action, nor financially

15     interested in the action.

16              Witness my hand and official seal

17     this the 3rd day of June, 2024.

18

19

20     _____

21     Jeffrey D. Rusk, RPR, CLVS
       Notary Public at Large
22     My Commission Expires:   4/29/2026
       TCRB License No. 212
23

24

25
```