IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| B.P., H.A., and S.H, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:23-cv-00071-TRM-JEM |
| CITY OF JOHNSON CITY, TENNESSEE, a government entity, et al. | ) ) ) | JURY DEMANDED |
| Defendants. | ) ) | |

**RESPONSE OF JOHNSON CITY, TENNESSEE TO PLAINTIFFS'
MOTION TO QUASH SUBPOENAS OR FOR PROTECTIVE ORDER**

Comes Defendant the City of Johnson City ("the City") and responds as follows in opposition to the Plaintiffs' Motion for Protective Order Regarding Depositions of Unnamed Class Members and/or Motion to Quash Deposition Subpoenas Issued to Females 8, 9 and 12 [Doc. 245] ("Motion for Protective Order"). As set forth below, Plaintiffs' Motion for Protective Order should be denied.

**PRELIMINARY STATEMENT**

Counsel for Defendants have made it clear to Plaintiffs' counsel for months that they intended to depose certain, unnamed but important class members, including several who previously had been named as plaintiffs and as purported class representatives, and/or those who had specific and detailed allegations concerning their alleged interactions with Sean Williams set forth in the Second Amended Complaint, and/or those who had been identified by the Plaintiffs as persons with knowledge that they may use to support their claims. In fact, consistent with

discussions counsel for the Parties engaged in during February 2024 regarding scheduling depositions (both that Plaintiffs wanted to take and that Defendants wanted to take), on March 12, 2024, Defendants issued deposition notices (among others) to depose Female 9 on May 23, 2024 as well as Female 12 on June 12, 2024. In May 2024, when Plaintiffs' counsel inquired about scheduling another four witnesses they wanted to depose, counsel for the Parties traded charts of the previously agreed upon schedule, including a schedule transmitted by Plaintiffs' counsel from March 22, 2024, in which H.A.'s deposition is set for May 20 and Female 9's deposition is set for May 21. On May 6, just two weeks before the depositions of H.A. and Female 9 are to be taken, Ms. Baehr-Jones agrees that these dates were correct and in the last version of the schedule circulated among the parties, but writes that due to a personal conflict, she is no longer available on May 20, and asks to move H.A. from May 20 to May 21, but states unequivocally that "I am happy to find some additional dates over June and July, so that we can reschedule [Female 9] sooner." The deposition of Female 12 too was unilaterally cancelled by Plaintiffs' counsel. These are two of women at the center of the instant motion. Female 8 was also discussed during in-person meet and confers in Johnson City following depositions several months ago, as she had allegations concerning one of the individual defendants specifically.

On June 20, 2024, counsel for the Parties met to confer with regard to dates counsel agreed to hold open on July 8-10 and July 17-19 for the Parties (both the plaintiffs and the defendants) to take depositions. On those six dates, Plaintiffs position was that they were going to take five depositions (consuming 4 of the 6 days). Defendants indicated they wanted to depose Female 9 and Female 12 on July 8 and 9,[1] and Female 8 on July 17 if that date became available because of ongoing motion practice between Plaintiffs and a Third-Party deponent. After a lengthy call and

---

[1] These are the women whose depositions that previously had been noticed for May and June 2024 but cancelled by Plaintiffs' counsel, including one under the representation of a personal conflict of Plaintiff's counsel.

2

agreement that Plaintiffs would determine the availability of Female 9 and Female 12, as the call was closing Plaintiffs' counsel announced they would agree to produce these three clients but only if the Defendants agreed to a Protective Order that Plaintiffs' counsel stated they would subsequently describe. After receiving the description of the proposed restraints that Plaintiffs wanted to place on Defendants, it was clear an agreement could not be reached. Thus, on June 26, 2024, the City and the other Defendants served subpoenas for the depositions of individuals identified in the Second Amended Complaint as Females 8, 9 and 12 (the "Individuals"), understanding that Plaintiffs could then proceed to file a motion for protective order as they said they would in the June 20 call.

Defendants desire to and should be permitted to depose the Individuals for, among others, the following reasons:

(1) Each is specifically identified in the Second Amended Complaint with particularized factual allegations concerning their respective assaults and investigations.

(2) The named Plaintiffs base a significant part of both their individual claims and their class-based claims on the allegations pertaining to each of the Individuals.

(3) Two of the three Individuals were named plaintiffs in the original and the Amended Complaint, served as class representatives, and were and remain active participants in the prosecution of this action.

(4) All three are currently represented by counsel for the current Plaintiffs.

(5) The current Plaintiffs identified each of the Individuals as "individuals likely to have discoverable information" in the Plaintiffs' Rule 26(A)(1) Initial Disclosures.

In a rather abrupt turn, rather than consenting to the depositions of Females 8, 9 and 12 as they had done previously, Plaintiffs now contend that (1) Defendants should be prohibited from deposing Females 8, 9 and 12, or (2) alternatively, if Defendants are permitted to depose these individuals such depositions should be severely limited, to the prejudice of Defendants.

As explained in more detail below, Plaintiffs' contentions are without merit and their Motion should be denied. Plaintiffs erroneously rely on *Boynton v. Headwaters, Inc.*, 2009 WL 3103161 (W.D. Tenn. Jan. 30, 2009) and *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions*, 2012 WL 4829802 (M.D. Tenn. Oct. 10, 2012) for their contention that depositions of these class members should be prohibited except upon a "strong showing of justification" and "particularized need" by the Defendants. Those cases are easily distinguishable, in that the defendants sought depositions of ordinary unnamed class members, none of whom had any involvement with the case other than their status as class members. Here, in contrast, Females 8, 9 and 12 are not ordinary, absent class members, but instead are participants in the current litigation.

More particularly, Females 9 and 12 were previously named plaintiffs who were actively involved up until their withdrawal as named Plaintiffs upon the filing of the Second Amended Complaint. Courts routinely find that formerly named plaintiffs are subject to discovery. *See e.g. Hu v. BMW of N. Am. LLC*, 2022 WL 13837791, at *3 (D.N.J. Oct. 21, 2022) ("Even absent class members can be subject to discovery if they were once named plaintiffs, provided the discovery is relevant and not unduly burdensome."); *In re Drassinower*, 2021 WL 3772328, at *6 (S.D. Cal. Aug. 25, 2021) (explaining that absent class member "injected herself into the litigation as a named plaintiff, who agreed to participate in the case in a representative capacity, and now cannot avoid discovery by withdrawing from the case."); *Burnett v. Ford Motor Co.*, 2015 WL 3540886, at *3 (S.D. W. Va. June 4, 2015) (allowing depositions of former named plaintiffs).

Further, since the filing of the Second Amended Complaint, Females 8, 9 and 12 have been integral participants in this case. While they are no longer named plaintiffs, there are specific factual allegations regarding their individual assaults set forth in the Second Amended Complaint. Such allegations support the individual claims of the current named plaintiffs as well as the class-

based claims. Importantly, Females 8, 9 and 12 continue to be represented by Plaintiffs' counsel and therefore have authorized (at least implicitly) Plaintiffs' counsel to utilize their individual factual allegations in this suit. Female 8 has even attended at least one of the depositions.

Moreover, the current named Plaintiffs make clear in the Second Amended Complaint and in their initial disclosures, which identify Females 8, 9 and 12 as potential witnesses, that they intend to use the specific facts surrounding Females 8, 9 and 12 to support their claims. Thus, Plaintiffs are taking the position that Plaintiffs may use these individuals and their factual circumstances to support Plaintiffs' claims, but Defendants may not depose these individuals. This is untenable and contrary to applicable law. *See e.g. Coffey v. WCW & Air, Inc.*, 2019 WL 9089615 at *2 (N.D. Fla. July 30, 2019) (permitting deposition where the "absent class member" was "more accurately described as a fact witness rather than an absent or putative class member and that Defendants [sought] to depose her as such.").[2]

Finally, the Plaintiffs' allegations of "traumatizing" behavior by Defendants' counsel during the class representative depositions are flatly untrue. As described in the Response to the Motion for Protective Order filed contemporaneously by Defendant Kevin Peters (adopted and incorporated herein) ("Peters Response") and in Section 4 of the Background hereinbelow, Defendants have acted professionally and have afforded the class representatives extraordinary accommodations during the depositions. Defendants have agreed to similar accommodations during the depositions of Females 8, 9 and 12. The Plaintiffs' proposed severe restrictions on these depositions are entirely unworkable and are not justified under Fed. R. Civ. P. 26(c)(1)(B).

---

[2] *See also Antoninetti v. Chipotle, Inc.*, 2011 WL 2003292, *1 (S.D. Cal. 2011) ("Although Courts do not usually allow discovery from absent class members, the rules pertaining to such discovery are flexible, especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation."). *See also* 3 Newberg and Rubenstein on Class Actions § 9:12 (6th ed.) ("Several courts have concluded that class members who have "injected themselves" into the litigation—for example, by … being listed as witnesses by plaintiffs" counsel—are subject to discovery.").

5

Accordingly, Plaintiffs' Motion Protective Order is without merit and should be denied.

## BACKGROUND

1.  Original Complaint, Amended Complaint, Second Amended Complaint.

This action began on June 21, 2023, upon the filing of the Complaint [Compl. Doc. 1], by nine plaintiffs, including Females 9 and 12, who were identified as Jane Doe 5 and Jane Doe 7 respectively. In the Original Complaint, Females 9 and 12 and the other Plaintiffs alleged violations of Equal Protection pursuant to 42 U.S.C. § 1983 based on an alleged unconstitutional policy (Count I), Equal Protection pursuant to 42 U.S.C. § 1983 based on an alleged violation of substantive rights to due process (Count II), Title IX (Count III), and state-law claims arising under the Tennessee Governmental Tort Liability Act (Counts IV, V, and VI). [Compl., Doc. 1, PageID ## 30-37]. The claims arose from allegations that Sean Williams drugged and raped women (including Females 9 and 12) and that officers of the Johnson City, Tennessee Police Department had received reports of these sexual assaults but did nothing about it. [Compl. Doc. 1, PageID# 1-2]. The Original Complaint includes specific allegations regarding Williams' sexual assaults of Females 9 and 12 in support of the Plaintiffs' claims. [Compl. Doc. 1, PageID#12-13 (Female 9/Jane Doe 5); Compl. Doc. 1, PageID#15-18 (Female 12/Jane Doe 7)].

On August 26, 2023, the day after Defendants Toma Sparks, the City of Johnson City, and Karl Turner filed their Answers to the Complaint, the Plaintiffs filed their first Motion to Amend their Complaint and proposed Amended Complaint. [See Doc. 12, PageID# 107-108; Doc. 12-1, PageID# 110]. The proposed Amended Complaint added twenty pages to the Complaint, an additional Defendant, almost one-hundred and fifty (150) new allegations, a claim for sex trafficking, and an obstruction claim. [Doc. 12-1, PageID# 110].

6

On or about September 1, 2023, before the Defendants had the opportunity to respond to the Motion to Amend, the Court granted Plaintiffs' Motion to Amend and directed the Plaintiffs to file their Amended Complaint on or before September 8, 2023. [See Doc. 20, PageID# 233]. On September 6, 2023, the Plaintiffs filed their Amended Complaint. [See Doc. 21, PageID # 234].

Just two days after the Amended Complaint was filed, on September 8, 2023, the Plaintiffs' filed their Motion to Amend the Amended Complaint and proposed Second Amended Complaint [Docs. 23 and 23-1]. The proposed Second Amended Complaint, much like the Amended Complaint, added pages of new allegations, a three (3) page, non-numbered "introductory" paragraph, a new plaintiff, and class action claims and allegations. There are ten "Jane Does" identified as Plaintiffs in the proposed Second Amended Complaint, and all ten are identified as class representatives, including Jane Doe 5 (Female 9) and Jane Doe 7 (Female 12).

The Motion to Amend [Doc. 23] remained pending until this Court's Scheduling Order was entered on November 28, 2023 [Doc. 86]. In the Scheduling Order, the Court held that the Plaintiffs' currently pending motion to file a second amended complaint [Doc. 23] was moot, and the Plaintiffs were directed to file their "replacement" proposed second amended complaint by December 12, 2023.

On or about December 12, 2023, the Plaintiffs filed the "replacement" Motion to Amend [Doc. 93] and proposed Second Amended Complaint [Doc. 93-1]. Through the proposed second amended complaint, the Plaintiffs added two new Defendants, new claims against the Defendants, and a number of new conclusory allegations. The Plaintiffs also changed how they identified the Plaintiffs, eliminating any reference to "Jane Doe," which was replaced with the initials for three Plaintiffs and references to Female 1, 2, 3, etc. for other individuals. Included as Females in the replacement Second Amended Complaint were Jane Doe 5/Female 9 and Jane Doe 7/Female 12.

On November 20, 2023, the parties, per the Scheduling Order, exchanged Rule 26 Initial Disclosures. Plaintiffs' disclosures listed under "Individuals likely to have discoverable information," Jane Doe 1, 2, 3, 4, 5, 6, 7, 8, 9, Female 1, 2, and Female 3.

In January 2024, the Plaintiffs who were then Jane Does 1-9 (including Females 9 and 12) served written discovery requests on the Defendants.

On February 23, 2024, the Plaintiffs' "replacement" Motion to Amend [Doc. 93] was granted [See Doc. 119], and on March 1, 2024, the Plaintiffs filed their Second Amended Complaint [Doc. 121]. There were only three named Plaintiffs (B.P., H.A. and S.H.) in the Second Amended Complaint, but there were specific allegations regarding the sexual assaults of various Females including Females 9 and 12, who were formerly identified as Jane Does 5 and 7 in the Original Complaint and the Amended Complaint.[3] The Second Amended Complaint also included detailed allegations regarding Female No. 8 who was also sexually assaulted by Williams. [Doc. 121, PageID # 1781-1782].

2. Plaintiffs' Supplemental Initial Disclosures.

On or about April 3, 2024, the Plaintiffs served on Defendants the Plaintiffs' Rule 26(A)(i) Supplemental Initial Disclosure as to Defendants Brady Higgins and Jeff Legault, in which Plaintiffs identified Females 8, 9 and 12 among the "Individuals likely to have discoverable information."

3. Discussions regarding depositions of Females 8, 9 and 12.

As described in more detail in the Preliminary Statement above, beginning in or around March 2024 the parties began discussions regarding depositions including the depositions of

---

[3] For the corresponding allegations in the Original Complaint and in the Second Amended Complaint concerning Jane Doe 5/Female 9, Compare Doc. 1, PageID # 12-13 and Doc. 121, PageID # 1790-1791; and for Jane Doe 7/Female 12 Compare Doc. 1, PageID # 15-18 and Doc. 121, PageID # 1793-1794.

8

Females 8, 9 and 12. Plaintiffs acknowledge that they had originally agreed to the depositions of Females 8, 9 and 12, subject to reaching a mutual agreement regarding those depositions.

    4. <u>Depositions of named Plaintiffs and agreed accommodations</u>.

    As mentioned above, the City adopts and incorporates the Peters Response,[4] in particular with regard to the Plaintiffs' baseless claim of "traumatizing" conduct by Defendants' counsel during the depositions of the named Plaintiffs. Defendants believe the Court will conclude that these claim rings hollow when the actual facts surrounding the depositions are revealed. First, it is true that the depositions of two of the three named plaintiffs ran into the evening. But, Plaintiffs fail to reveal that Plaintiffs insisted that H.A.'s deposition begin at 9:00 a.m. even though the Court scheduled a zoom hearing to begin at 9:30 a.m. Defense counsel suggested that we wait to start H.A.'s deposition after the hearing finished. Plaintiffs' counsel rejected this proposal. Even with this, Plaintiffs arrived late, so the deposition did not begin until 9:10 a.m. Thus, the deposition began and only ran for about ten minutes before it had to be adjourned for the Court hearing. The deposition did not resume until 10:53 a.m., after the zoom hearing. Additionally, while Plaintiffs did ask for some breaks in order to collect themselves (and each and every request for a break was honored), there were many other breaks requested by Plaintiffs and their counsel, some of which were well over fifteen (15) minutes and routinely they returned late from breaks. Finally, none of the depositions exceeded seven (7) hours of questioning.

    In addition, Plaintiffs' counsel sought many accommodations for the Plaintiffs, almost all of which were agreed to by Defendants, and which Defendants agree to provide Females 8, 9 and 12. These included the following:

    (1) Plaintiffs' counsel could sit next to her clients and hold their hands during the depositions;

---

[4] The City also adopts and incorporates the Responses of the other Defendants to the Motion for Protective Order.

(2) allowing a second person of Plaintiffs' choosing to sit next to them, on the other side, during their depositions;

(3) limiting to one attorney on Defendants' side to ask questions about the particular details of the alleged sexual assault(s), but not having that limitation for questions on other matters;

(4) removing all persons other than attorneys for portions of the deposition Plaintiffs' counsel considered to be too personal or potentially subject to Attorney's Eyes Only" designations; and,

(5) making the room where the deposition would be taken available to the Plaintiffs and their counsel, privately, in advance of the deposition;

(6) agreeing that the police officers attending the Plaintiffs' depositions would not wear their City-issued police uniforms during work hours; and,

(7) providing a large break out room in order for counsel and their clients to eat, drink coffee and consult during the deposition breaks (some of which approached or exceeded an hour in length) and for a lunch break.

## **LAW AND ARGUMENT**

1. Standard and Burden for Protective Order.

Plaintiffs have moved to quash the subpoenas issued to Females 8, 9 and 12 and for a protective order. Generally, information is discoverable when it is "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Under Rule 26(c), "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). Upon a showing of good cause, the "court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(B).

The party seeking to quash a subpoena and for a protective order (Plaintiffs here) bears the burden of proof. *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (citations omitted). Nevertheless, the party who issued the subpoena has the burden of

10

"establish[ing] a need for the breadth of the information sought in response to [a non-party's] prima facie showing that the discovery [would be] burdensome." *Id*. (citation omitted).

2. Standard and Burden for "absent" class members.

"[T]he Federal Rules of Civil Procedure neither explicitly forbid nor authorize discovery to be propounded to absent class members." *Hu v. BMW of N. Am. LLC*, 2022 WL 13837791, at *3 (D.N.J. Oct. 21, 2022) (citation omitted). It is true, however, that most courts have found that "discovery from absent class members is not forbidden but rather is disfavored." *Stephenson v. Fam. Sols. of Ohio, Inc.*, 2022 WL 597261, at *6 (N.D. Ohio Feb. 28, 2022) (citing 3 Newberg on Class Actions, § 9.11 (5th ed.)) and collecting cases).

"Although some showing of need is uniformly required before permitting discovery of absent class members, the courts in the Sixth Circuit have yet to arrive at a consensus as to what showing [the party seeking discovery] must make." *Stephenson*, 2022 WL 597261, at *7 (citation omitted). Courts have allowed discovery to be taken from unnamed class members, however, when the information requested is relevant to the decision of common questions, the discovery is tendered in good faith and not unduly burdensome or harassing, the discovery does not require expert, technical or legal assistance to respond, and is not available from the representative parties. *Boynton v. Headwaters, Inc.*, 2009 WL 3103161, at *1 (W.D. Tenn. Jan. 30, 2009) *citing Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340–41 (7th Cir.1974). Other courts have found that discovery of absent class members should only be allowed "upon a showing of 'particularized need,' which generally requires a demonstration that the discovery is addressed to common issues (as opposed to individual issues), that it is not designed to force class members to opt out, and that it would not impose an undue burden or require the deponent to seek legal or technical assistance to respond." *Groth v. Robert Bosch Corp.*, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008).

3. <u>Depositions of Females 8, 9 and 12 are permissible because they are not ordinary "absent" class members</u>.

The cases cited by Plaintiffs are inapposite due to, among other reasons, the fact that the defendants in those cases were seeking to depose ordinary unnamed absent class members, who (unlike Females 8, 9 and 12) had no involvement with the case other than their status as absent class members. For example, the Plaintiffs rely heavily on *Boynton v. Headwaters, Inc.*, 2009 WL 3103161 (W.D. Tenn. Jan. 30, 2009), where the plaintiffs filed a motion for protective order seeking to prohibit the defendant "from taking discovery from unnamed class members." *Id*. at *1. The defendant's proposed discovery included "depositions of all unnamed class members, twenty requests for documents, one set of interrogatories containing fourteen questions and over sixty sub-parts, and a second set of interrogatories containing nine questions and nineteen subparts." *Id*.

Magistrate Judge Bryant began with the general proposition that "[s]ubjecting unnamed class members to discovery is generally not permitted." *Id*. (citation omitted). Judge Bryant explained, however, that discovery has been allowed of unnamed class members "when the information requested is relevant to the decision of common questions, the discovery does not require expert, technical or legal assistance to respond, and is not available from the representative parties. . . . The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions." *Id*. (citations omitted.)

Under this framework, Judge Bryant held that the defendant's proposed discovery, given "[t]he exhaustive nature of the requests, their complex definitions and instructions, and legalese would certainly require the unnamed class members to obtain legal assistance in order to understand and answer the interrogatories and document requests at issue. . . . Answering such interrogatories would certainly require legal assistance, making them unduly burdensome." *Id*. Judge Bryant found the defendant's arguments "as to why the proposed discovery is necessary are

12

not compelling in light of the burdensome nature of deposing all of the unnamed class members. .

. . [Defendant] has failed to persuade the Court that the information sought is relevant to the

decision of common questions rather than individual questions, and has failed to demonstrate that

the information sought is not available from other sources." *Id*. at *2.

Boynton is distinguishable from the present case on a number of grounds. First, the court

simply applied the general rule for unnamed class members and did not have to confront the

situation present here where a class member was formerly a named plaintiff and proposed class

representative and/or where a class member and her factual circumstances were integrally tied to

the case. Second, the district court in *Boynton* was clearly disturbed by the sheer breadth of

discovery that the defendant wanted to serve on unnamed class members, as well as the fact that it

would seem to require specialized legal knowledge and/or legal assistance to answer. In the present

case, of course, Defendants are presently seeking to depose only three witnesses, two of whom are

former named plaintiffs, and all three of whom have been identified in the Second Amendment

and in the Plaintiffs' initial disclosures as potential witnesses. Moreover, the need for specialized

legal knowledge and/or legal assistance to answer questions will not be an issue here because

Females 8, 9 and 12 are all also represented by the Plaintiffs' counsel, who have intimate

knowledge of this case.[5]

The present case is more similar to the circumstances present in *Burnett v. Ford Motor

Co.*,[6] *In re Drassinower*,[7] and *Coffey v. WCW & Air, Inc.*,[8] where the courts permitted depositions

of so-called "absent" class members, who were either former named plaintiffs or whose particular

---

[5] *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions*, 2012 WL 4829802 (M.D. Tenn. Oct. 10, 2012), another case
cited by Plaintiffs, is similarly distinguishable in that the proposed deponents were not formerly named plaintiffs or
class members whose factual circumstances were integrally tied to the case.
[6] 2015 WL 3540886 (S.D.W. Va. June 4, 2015).
[7] 2021 WL 3772328, at *1 (S.D. Cal. Aug. 25, 2021).
[8] 2019 WL 9089615 (N.D. Fla. July 30, 2019).

13

factual circumstances were integral to the action, beyond just their status as a class member. In *Burnett*, the defendant Ford sought discovery from four former plaintiffs who filed voluntary notices of dismissal. The former plaintiffs objected to all discovery based on their status as absent class members. 2015 WL 3540886 at *1. In its decision, the Court applied a standard similar to those used by courts in the Sixth Circuit, *to wit*, that discovery of absent class members is appropriate when the information sought (1) is not designed to take advantage of class members or reduce the size of the class; (2) is necessary and relevant to common issues and cannot be obtained from other class representatives; and (3) is not unduly burdensome and does not require expert or legal assistance to prepare the discovery. *Id*. at *2-3. Analyzing these factors, the *Burnett* court allowed the requested discovery and finding that deposing four former plaintiffs is not unduly burdensome, or designed to harass the members, or reduce the class size, and that because the former plaintiffs "have information relevant to common issues in the case, Ford should be given some leeway to discover those issues." *Id*. at *3. Additionally, the Court found that the proposed deponents should not require expert or legal assistance because "their former counsel will already be present at the depositions and can provide guidance in areas of attorney/client privilege and work product protection." *Id*.

In *In re Drassinower*, various plaintiffs filed a putative class action against Marriot, contending that it engaged in false and deceptive advertising with regard to pricing for its hotels and services. The original plaintiff, Hall, filed a second amended complaint that added three named plaintiffs, including Drassinower. 2021 WL 3772328 at *1. A proposed third amended complaint "retained all causes of action, removed Plaintiffs Drassinower and Heineken, and added a third plaintiff from a related case . . . ." *Id*. After Drassinower was removed as a named plaintiff, Marriot issued a subpoena for her deposition. *Id*. at *2. Drassinower filed a motion to quash, contending

14

that she was being singled out and that requiring her "to devote significant time and effort to testifying at a deposition, would constitute an undue burden . . . and would elicit only irrelevant testimony." *Id*. Marriot countered that Drassinower was far from "merely an absent class member. She is a former named plaintiff who has injected herself into the [underlying] Action and who has asserted verified facts relevant to the legal theories to which that action is based." *Id*. Marriot also contended that Drassinower's deposition was relevant to its effort to "defeat class certification on commonality and preponderance grounds." *Id*.

The district court denied the motion to quash, holding that Drassinower's deposition was "reasonably necessary for preparation for opposing class certification due to lack of commonality, it is not conducted for an improper purpose because Ms. Drassinower has inserted herself in the litigation, and, as a former named plaintiff who signed up to represent the class, a deposition is not unduly burdensome." *Id*. at *6. The district court likewise determined "that a deposition of one former named plaintiff is not meant to take undue advantage of class members or reduce the size of the class." *Id*. at *7. The district court agreed with Marriot that Drassinower was "not a mere absent class member but is a former named plaintiff who has interjected herself into the litigation.' . . . . [She] agreed to participate in the case in a representative capacity, and now cannot avoid discovery by withdrawing from the case." *See id*. at *7-*8 (citation omitted).

In *Coffey* the plaintiffs filed a putative class action against various defendants asserting claims for violations of the Florida Deceptive and Unfair Trade Practices Act, among others. Defendants issued a subpoena for an unnamed class member, Kristina Weick, who had been identified as an individual "with substantive knowledge about any claims, defenses, or allegations in your First Amended Class Action Complaint." 2019 WL 9089615 at *1. The plaintiffs and Weick filed a Motion for Protective Order arguing that she was an absent or putative class member

who should generally be protected from discovery, and seeking to limit the scope of the deposition solely to Weick's knowledge of the named-plaintiff's transaction with the defendants. *Id.*

In its ruling denying the motion, the court found as an initial matter that Weick is more accurately described as a fact witness rather than an absent or putative class member and that the movants had failed to show good cause for the protective order under Fed. R. Civ. P. 26(c)(1)(D). *Id.* at *2. The *Coffey* court went on to hold that it would allow discovery even if Weick were just an absent class member, after applying a multi-factor test similar to the one used in the Sixth Circuit. The court referred to the standard for deposing "absent" class members, noting that "courts have recognized that special circumstances may exist warranting discovery from an absent class member[, such as] where the absent class member is identified as a fact witness or has otherwise been injected into the litigation, submitted declarations or are represented by plaintiff's counsel." *Id.* at *2 (citations omitted).

The court found that the plaintiffs "having injected Weick into th[e] litigation," by identifying her as a potential witness were precluded from objecting to the deposition. *Id.* at *3. Further, because Weick was also represented by the plaintiffs' counsel, the deposition would not be unduly burdensome on her. *Id.* Additionally, this was not a case where defendants seek to depose a group of absent class members for purposes of reducing the class or deterring absent class members from participating in the class. Rather, defendants sought to depose Weick, a non-party fact witness, who had been identified as a potential witness by the plaintiffs. *Id.* The Court also found that the defendants had shown a need to depose Weick, that Weick possessed information that cannot be obtained from the class representative. *Id.* Finally, the court refused to limit the scope of the deposition solely to Weick's knowledge of the named-plaintiff's transaction with the

16

defendants, as requested by the plaintiffs, in light of plaintiffs' identification of Weick as a potential witness in the plaintiffs' discovery responses. *Id*.

4. <u>The depositions of Females 8, 9 and 12 are permissible under the multi-factor standard</u>.

The depositions of Females 8, 9 and 12 are permissible under the multi-factor standard for discovery on absent class members.

(a) *The proposed depositions are not designed to take advantage of class members or reduce the size of the class.*

As in *Burnett* and *Coffey*, the proposed depositions of Females 8, 9 and 12 are not designed to take advantage of class members or reduce the size of the class. This is not a circumstance like *Boynton* where the defendant sought to depose all class members, on no grounds other than the fact they were potential class members. Rather, the Defendants are seeking to depose these particular witnesses because two of them were formerly named-plaintiffs, and all of them have been identified as potential fact witnesses by the Plaintiffs. Plaintiffs "having injected [Females 8, 9 and 12 into th[e] litigation" by identifying them as potential witnesses and through detailed factual allegations about each in the Second Amended Complaint, should be precluded from objecting to their depositions. *Coffey*, 2019 WL 9089615, at *2.[9]

(b) *The proposed depositions are necessary and relevant to common issues and cannot be obtained from other class representatives.*

The Second Amended Complaint sets forth individualized allegations regarding the sexual assaults of each of Females 8, 9 and 12. [Doc. 121, PageID # 1781-1782 (Female 8); PageID # 1790-1791 (Female 9); PageID # 1793-1794 (Female 12)]. Moreover, Plaintiffs have three

---

[9] Plaintiffs assert that Defendants were required to seek leave of court to conduct the depositions of Females 8, 9 and 12. *See* Motion for Protective Order at PageID#6911-6912 *citing Groth*, 2008 WL 2704709, at * 1 ("a defendant must receive leave of court to conduct discovery of absent class members"). Plaintiffs' assertion is without merit. *Groth* did not involve individuals who were specifically identified in the complaint and who were identified as individuals likely to have discoverable information, as Females 8, 9 and 12 were in the present case. Moreover, Plaintiffs had initially agreed to produce these witnesses for depositions.

17

proposed classes, and Plaintiffs believe that Females 8, 9 and 12 fall within one or more of the

classes. Plaintiffs explicitly rely on the allegations pertaining Females 8, 9 and 12 to support their

class-based allegations that there are questions of law and fact common to the classes such as:

    a.      whether the Williams sex-trafficking venture and conspiracy violated the Trafficking Victims Protection Act, 18 U.S.C. § 1591;

    b.      whether Defendants knowingly benefited from participation in the Williams sex-trafficking venture and conspiracy;

    c.      whether Defendants obstructed enforcement of the Trafficking Victims Protection Act, 18 U.S.C. § 1591(d);Females 8, 9 and 12

    d.      whether Defendant City carried out an unconstitutional custom, practice, or policy with respect to handling reports of sexual abuse by women and girls;

    e.      whether Defendant City's custom, practice, or policy with respect to handling reports of sexual abuse by women and girls violated the substantive due process rights established by the Equal Protection Clause;

    f.      whether Defendant City breached a duty of care owed to Plaintiffs; and

    g.      whether Defendant City acted negligently, including with respect to training and supervising JCPD personnel.

Second Amended Complaint ¶ 304 [Doc. 121, PageID #1822-1823].

The factual allegations of Females 8, 9 and 12 pertain to the Williams sex-trafficking

claims, and the common issues identified in ¶ 304(a)-(c). *See e.g.* Doc. 121, PageID #1781-1782

(Female 8); PageID # 1786, 1790-1791, 1800-1802, 1826, 1832-1835 (Female 9); PageID # 1793-

1794, 1826, 1832-1835 (Female 12). The factual allegations of Females 9 and 12 pertain to the

Plaintiffs' equal protections claims and Tennessee Governmental Tort Liability Act claims, and

the common issues identified in ¶ 304(d)-(g). *See e.g.* Doc. 121, PageID# 1810-1812 (Females 9

and 12); 1842-1843 (Females 9 and 12). Accordingly, the depositions of these witnesses are

relevant to common issues and should be permitted.

Additionally, there is no indication that the class representatives witnessed the sexual

assaults of Females 8, 9 and 12, or have any knowledge about their particular circumstances to

enable Defendants to obtain this information by other means. In fact, when questioned, class

representative B.P. admitted that she knew very little if anything regarding the particular events

involving Females 8, 9 and 12 referred to in the Second Amended Complaint.[10] Therefore, the proposed depositions are necessary and relevant to common issues and cannot be obtained from the class representatives.

Finally, as in *Coffey*, the scope of the depositions of Females 8, 9 and 12 should not be limited only to what these witnesses know regarding the Plaintiffs' individual claims, but also should include discovery regarding the allegations concerning each of Females 8, 9 and 10 which are set forth in the Second Amended Complaint. *Coffey*, 2019 WL 9089615 at *3. These allegations are integral not only to the class allegations but also to the individual claims of the named Plaintiffs.

     (c) *The proposed depositions are not unduly burdensome and do not require expert or legal assistance to prepare the discovery.*

The fact that Females 9 and 12 were former named plaintiffs and class representatives supports a finding that these depositions would not be unduly burdensome. *See e.g. Burnett,* 2015 WL 3540886, at *2 ("[c]ertainly, when these individuals agreed to participate in the case in a representative capacity, they should have realized that they would be expected to respond to discovery requests at some point in the proceedings."). Plaintiff contends that *Burnett* and *Drassinower* are inapplicable because the deponents there were named plaintiffs and class representatives for "several years" and withdrew only after defendants served discovery and noticed their depositions, whereas here Females 9 and 12 were only class representatives for less than 3 months. [*See* Motion for Protective Order at 19, n. 5] As a threshold matter, Females 9 and 12 were named plaintiffs for over 8 months, from the filing of the original complaint on June 21, 2023 until the filing of the Second Amended Complaint on March 1, 2024.

During the more than 8 months that Females 9 and 12 were named plaintiffs they were active in this case, participating in substantial discovery and motion practice. Additionally,

---

[10] *See* Transcript of 5/23/24 Deposition of B.P. at pp. 190:23-26, 191:1-26, 192:1-16, 192:20-22.

according to the proposed Second Amended Complaint [Doc. 23-1], in their capacity as class representatives Females 9 and 12 alleged as follows:

> Questions of law and fact common to class members predominate over any questions that may affect only individual class members. [¶371]
>
> Plaintiffs' claims are typical of the claims of the class or classes they seek to represent. The same pattern and practice causing constitutional violations, and the same forms of sexual misconduct give rise to the claims of all class members Plaintiffs seek to represent. [¶ 372]
>
> Plaintiffs will fairly and adequately protect the interests of the class. [¶373]

[Doc. 23-1, PageID#354-356].

Moreover, and perhaps more importantly, since the filing of the Second Amended Complaint, Females 8, 9 and 12 have all been integral participants in this case. While they are not formally named as plaintiffs, they have consented (at least implicitly through their counsel) to Plaintiffs' use of specific factual allegations regarding their individual assaults set forth in the Second Amended Complaint. Such allegations are offered in support of the individual claims of the current named-plaintiffs as well as in support of the class-based claims. They have all been designated (again by their own counsel) as potential witnesses in this case. Female 8 has been particularly involved since she has attended at least one of the depositions in this case. Under these circumstances, courts have permitted the depositions of unnamed class members. *See Burnett*, *supra*.; *Drassinower*, *supra.*; *Coffey*, *supra*.

Finally, Females 8, 9 and 12 do not require expert or legal assistance to prepare for the depositions. Their counsel, who are also Plaintiffs' counsel, are intimately familiar with this case and will be present at the depositions. *Coffey*, 2019 WL 9089615 at *3 (deposition was not unduly burdensome where absent class member was represented by plaintiffs' counsel).

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Peters Response, Plaintiffs' Motion

Protective Order is without merit and should be denied in its entirety.


RESPECTFULLY submitted this 17th day of July, 2024.


s/ Jonathan P. Lakey
Jonathan P. Lakey, BPR #16788
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
Email: jlakey@bpjlaw.com

Emily C. Taylor
Reid A. Spaulding
WATSON, ROACH, BATSON,
  ROWELL & LAUDERBACK, PLC
1500 River Tower
900 South Gay Street
P. O. Box 131
Knoxville, TN 37901-0131
etaylor@watsonroach.com
rspaulding@watsonroach.com

K. Erickson Herrin
HERRIN, McPEAK & ASSOCIATES
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
Tel: (423)-929-7113
Fax: (423) 929-7114
lisa@hbm-lawfirm.com

*Counsel for Johnson City, Tennessee*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system:

Heather Moore Collins, Esq.
Caroline Drinnon, Esq.
Ashley Shoemaker Walter, Esq.
HMC CIVIL RIGHTS LAW, PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
heather@hmccivilrights.com
caroline@hmccivilright.com
ashley@hmccivilrights.com
*Counsel for Plaintiffs and the Proposed Classes*

Jerome Cochran, Esq.
GARZA LAW FIRM
118 East Watauga Avenue
Johnson City, TN 37601
jcochran@garzalaw.com
*Counsel for Non-Party Alunda Rutherford*

Vanessa Baehr-Jones, Esq.
ADVOCATES FOR SURVIVORS OF
  ABUSE, PC
4200 Park Boulevard No. 413
Oakland, CA 94602
vanessa@advocatesforsurvivors.com
*Counsel for Plaintiffs and the Proposed Classes*

Daniel H. Rader III, Esq.
Daniel H. Rader IV, Esq.
Andre Sean Greppin
MOORE, RADER & YORK PC
46 N. Jefferson Avenue
P.O. Box 3347
Cookeville, TN 38502-3347
danrader@moorerader.com
danny@moorerader.com
andre@moorerader.com
*Counsel for Kevin Peters in his individual capacity*

Julie C. Erickson, Esq.
Kevin M. Osborne, Esq.
Elizabeth A. Kramer, Esq.
ERICKSON KRAMER OSBORNE, LLP
44 Tehama Street
San Francisco, CA 94105
julie@eko.law
kevin@eko.law
elizabeth@eko.law
linda@eko.law
*Counsel for Plaintiffs and the Proposed Classes*

Keith H. Grant, Esq.
Laura Beth Rufolo, Esq.
Philip Aaron Wells, Esq.
ROBINSON, SMITH & WELLS, PLLC
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
kgrant@rswlaw.com
lrufolo@rswlaw.com
awells@rswlaw.com
*Counsel for Justin Jenkins in his individual capacity*

22

Kristin Ellis Berexa, Esq.
Benjamin C. Allen, Esq.
FARRAR BATES BEREXA
12 Cadillac Drive, Suite 480
Brentwood, TN 37027-5366
kberexa@fbb.law
ballen@fbb.law
*Counsel for Toma Sparks in his individual capacity*

Dated this 17th day of July, 2024.

s/ Jonathan P. Lakey
Jonathan P. Lakey