IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE AT GREENEVILLE

```
B.P., H.A., and S.H., individually,      *
and on behalf of all others              *
similarly situated,                      *
          Plaintiffs,                    *
                                         *
VS.                                      *
                                         *
CITY OF JOHNSON CITY, TENNESSEE;         *
KARL TURNER, individually, and in his    *
official capacity as Chief of the        *
Johnson City Police Department;          *
KEVIN PETERS, individually, and in his   *      CASE NO.
official capacity as Captain in the      *  2:23-cv-00071-TRM-JEM
Johnson City Police Department;          *
TOMA SPARKS, individually, and in his    *
official capacity as Investigator in     *
the Johnson City Police Department;      *
JUSTIN JENKINS, individually, and in     *
his official capacity as Investigator    *
in the Johnson City Police Department;   *
JEFF LEGAULT, individually, and in his   *
official capacity as Investigator in     *
the Johnson City Police Department;      *
BRADY HIGGINS, individually, and in his  *
official capacity as Investigator in     *
the Johnson City Police Department;      *
and DOES 8-20, inclusive,                *
          Defendants.                    *
```

PRETRIAL DISCOVERY DEPOSITION OF

# H. A.

(Taken May 21, 2024)

***THIS STYLE PAGE CONTINUES***

---

**COURT REPORTING AND VIDEO SERVICES**

P. O. Box 7481                      TELEPHONE: (423) 230-8000
Kingsport, TN 37664                 REBECCA@COURTREP.NET

```
15   Q.  Based on the allegations in the complaint, you alleged
16       that you were sexually assaulted by Williams in September
17       or October of 2020.  Is that fair?
18   A.  That's correct, yes.
```

p.30

```
20  Q.  When was the last time you went to Sean Williams' condo?
21  A.  October 18th, 2020.
22  Q.  And do you approximately know the first time you went to
23      Sean Williams' condo?
```

p.40

```
 1  A.  Again, I am not the one with this knowledge.  That's not
 2      part of the class that I am representing, so I don't have
 3      that knowledge.
 4  Q.  So the answer to that is you don't know what Turner did to
 5      participate or in furtherance of this sex trafficking
 6      venture?
 7  A.  That would be accurate, yes.
 8  Q.  What about Toma Sparks?
 9  MS. KRAMER:  Object to form.
10  A.  Again, I would -- my statement would be the same.
11  Q.  Which is you don't -- you don't have any information
12      regarding his participation in the sex trafficking
13      venture.
14  A.  Correct.
15  Q.  What about Kevin Peters?
16  A.  I also do not know of their involvement in the sex
17      trafficking venture.
18  Q.  Justin Jenkins?
19  A.  That is the same as them all.
20  Q.  Jeff Legault?
21  A.  Again, the same.
22  Q.  Brady Higgins?
23  A.  The same.  I want to make some more tea in a minute.
24  MS. BAEHR-JONES:  I think we might need to take a break.
25  MS. KRAMER:  Emily, when you...
```

H. A.                                                    DIRECT - TAYLOR

```
 1        conference?
 2   MR. LAKEY:  We would like to talk about this before we break
 3        just to make sure.
 4   MS. BAEHR-JONES:  Yeah, let's go off.
 5                    ***OFF THE RECORD***
 6                   ***ATTORNEY EYES ONLY***
 7   DIRECT EXAMINATION CONTINUES BY MS. TAYLOR:
 8   COURT REPORTER:  We went off the record at 12:53.  The time is
 9        now 12:57, and we are back on the record.
10   Q.   _H.A._ you testified that when you left Williams'
11        condo, you made some phone calls.  I believe you testified
12        you called your fiancé.  What did you tell your fiancé?
13   A.   I told him what happened or I told him what I thought
14        happened.  I said, I think this happened to me.  I kind
15        of, you know, not in as much detail as in a deposition,
16        but I told him probably some vulgar statements.  I told
17        him that I was assaulted by Sean and that I was confused
18        and I'm, like, wondering if it had happened or not.  You
19        know, questioning my -- questioning myself, talking it
20        through with my -- with my now husband at the time, yeah.
21   Q.   Okay.  And you called your sister, _Female 9_ -
22   A.   Surely, yeah.
23   Q.   Well, did you?  Do you remember calling your sister?
24   A.   Oh, yeah.  Oh, yes, yes, yes, I did.
25   Q.   Okay.  And what did you tell your sister?
```

21  Q. Okay. And you called your sister, Female 9
22  A. Surely, yeah.
23  Q. Well, did you? Do you remember calling your sister?
24  A. Oh, yeah. Oh, yes, yes, yes, I did.
25  Q. Okay. And what did you tell your sister?

H. A.                                          DIRECT - TAYLOR
ATTORNEY EYES ONLY
                              78

1   A. Probably the same thing.

p. 79

20  A.  Can I take a break?
21  MR. RADER: Before you do, can I just ask you one more
22      question, please? So while we've got everybody out...
23  A.  I'm sorry, but aren't I allowed to ask for a break? And
24      if you ask me a question, I have to answer it, and I would
25      like a break now, please.

H. A.                                           DIRECT - TAYLOR

1  MS. BAEHR-JONES:  Yes.
2  COURT REPORTER: It's 5:14, and we're off the record.

1  Q. And we've talked about that.  So now I am talking about
2     the actual what has been described in the complaint as the
3     extortion scheme that Sean Williams, or someone associated
4     with him, was paying off JCPD officers.  Is that what you
5     understand the extortion scheme to be?
6  A. Correct.
7  Q. All right.  When did you first learn about that?
8  A. When did I first learn about the extortion scheme?  I
9     can't recall when I -- when I was able to realize that the
10    money going missing was associated with the misdeeds of
11    the police department, so I don't have a solid answer for
12    you on that specifically about a time frame.  It would
13    depend on when statements had been made, or information
14    had been, or evidence had been discovered that there were
15    issues with the behavior associated with the police having
16    money of Sean's in their possession that was not -- they
17    weren't supposed to have.
18 Q. And I know Sean Williams told you about the money that he
19    says was taken from his safe.
20 A. Uh-huh (Affirmative).
21 Q. So you learned that from him.  These other details about
22    someone associated with Sean Williams, Alunda Rutherford
23    or Sean Williams, paying off the JCPD cops, who did you
24    learn that from?
25 MS. KRAMER:  Objection.

H. A.                                                    DIRECT - BEREXA

235

Case 2:23-cv-00071-TRM-JEM   Document 273-1   Filed 07/17/24   Page 8 of 17   PageID #: 7323

| | |
|---|---|
| 1 | A. I don't recall. |
| 2 | Q. Okay. You agree with me, you don't have -- you, as you |
| 3 | sit here, don't have any firsthand knowledge. You never |
| 4 | saw that occur, correct? |
| 5 | MS. KRAMER: Objection. |
| 6 | A. I never saw what occur? |
| 7 | Q. You never saw -- let's be very specific. You never saw my |
| 8 | client, Toma Sparks, receive money from Sean Williams, |
| 9 | correct? |
| 10 | MS. KRAMER: Objection. |
| 11 | A. I think I testified earlier that I don't know that. |
| 12 | Q. Okay. Well, let me ask it this way. Until today, you |
| 13 | didn't know what Toma Sparks looked like, correct? |
| 14 | A. I think that's a fair statement. |
| 15 | Q. Okay. So if you didn't know what he looked like, you |
| 16 | would not have known that Toma Sparks was receiving money |
| 17 | at any point in time from JCPD officers or, I mean, from |
| 18 | Sean Williams, correct? |
| 19 | A. Correct. |
| 20 | Q. So you have no firsthand knowledge of that. |
| 21 | MS. KRAMER: Objection. |
| 22 | A. To my recollection, no. |
| 23 | Q. Okay. And again, other than your attorneys, are you |
| 24 | telling me you don't recall who else has told you about |
| 25 | this alleged extortion scheme? |

H. A.                                              DIRECT - BEREXA

236
Case 2:23-cv-00071-TRM-JEM   Document 273-1   Filed 07/17/24   Page 9 of 17   PageID #: 7324

19  Q. Do you know who Kevin Peters is?
20  A. I believe he's the officer here, one of the officers here.
21  Q. All right. Do you know anything that he has done with
22     respect to Sean Williams at all?
23  A. Specifically him?
24  Q. Yeah.
25  A. I do not know. That's not my job to know, so I would say

H. A.                                              DIRECT - RADER

| | |
|---|---|
| 1 | that would be something my lawyers would know. I don't |
| 2 | specifically know that information, those details about |
| 3 | him. |
| 4 | Q. All right. As we sit here today, you can't say anything |
| 5 | about Mr. Peters as to what he has done or hasn't done, |
| 6 | what he should have done, anything about him personally, |
| 7 | can you? |
| 8 | MS. KRAMER: Objection. |
| 9 | A. I'm sorry, can you repeat that question? |
| 10 | Q. Sure. You can't -- as we sit here today, you can't say |
| 11 | anything about Mr. Peters, what he did do, what he didn't |
| 12 | do, what he should have done, anything about him |
| 13 | personally. Is that correct? |
| 14 | MS. KRAMER: Objection. |
| 15 | A. In regards to what? |
| 16 | Q. About Sean Williams or any of the allegations in the |
| 17 | second amended complaint. |
| 18 | MS. KRAMER: Objection. |
| 19 | A. Again, I feel like the question is too broad for me to |
| 20 | provide an answer to. |
| 21 | Q. Can you identify a single thing that Kevin Peters did |
| 22 | wrong? |
| 23 | A. Broke the law. |
| 24 | Q. All right. What law do you say that Kevin Peters broke? |
| 25 | A. I don't know the law. |

H. A.                                    DIRECT - RADER

1  Q.  What is it that you say that Kevin Peters did that you say
2      broke the law?
3  A.  As I stated earlier, the extortion involving Sean Williams
4      with the money issues.
5  Q.  All right.  What is the basis for you to say that Kevin
6      Peters was involved in any extortion involving Sean
7      Williams, that individual?
8  A.  That is not my job to explain.  That is my lawyers' job.
9  Q.  Do you have any basis that you can say as you sit here
10     today as the Plaintiff in this lawsuit to say that
11     Kevin Peters personally was involved in any extortion
12     scheme?
13 MS. KRAMER:  Objection.
14 A.  I can say that the Johnson City Police Department did.
15 Q.  Okay.  Can you identify any witness to say that Kevin
16     Peters personally did anything to be involved in any
17     extortion scheme or otherwise did anything wrong as
18     alleged in your complaint?
19 MS. KRAMER:  Objection.
20 A.  Okay, the question one more time.  I apologize.
21 Q.  Can you identify any witness as you sit here today who can
22     say that Kevin Peters did anything personally wrong, or
23     was involved in an extortion scheme, or did anything
24     that's improper as described in your second amended
25     complaint?

H. A.                                                DIRECT - RADER

278

1  MS. KRAMER: Objection.
2  Q. Any witness at all? Can you name one?
3  MS. KRAMER: Objection.
4  A. At this time, I'm not certain.
5  Q. When are you going to be certain?
6  MS. KRAMER: Objection.
7  A. When the evidence is provided and through discovery.
8  Q. So you don't -- you can't name a single witness today.
9     Can you provide a single document today?
10 MS. KRAMER: Objection.
11 A. That is not my responsibility. It is the responsibility
12    of my lawyers.
13 Q. Okay. So the answer is no, you can't identify a single
14    document today. Is that correct?
15 MS. KRAMER: Objection.
16 A. I would not say that's factual. I can say that I'm not
17    certain at this time.
18 Q. Can you identify any individual, a Johnson City Police
19    Department officer, who -- who was involved in an
20    extortion scheme? Can you name one?
21 A. The men sitting here that have been -- we have claimed in
22    the statements.
23 Q. Do you even know who these people are?
24 A. I know who the Johnson City Police Department is.
25 Q. So your -- your allegations are broad against the Johnson

H. A.                                           DIRECT - RADER

279

1      City Police Department, but you can't name anything about
2      any individual person.  Is that right?
3 MS. KRAMER:  Objection.
4 A.   I believe there is evidence that provides that
5      identification for those crimes.
6 Q.   And I'm asking you, Ms. H.A. as the Plaintiff in this
7      lawsuit, can you identify any fact about any individual
8      Johnson City Police officer that that person did something
9      wrong, was involved in an extortion scheme, or did
10     anything improper as in your second amended complaint?
11 MS. KRAMER:  Objection and this...
12 Q.   Can you name them?
13 MS. KRAMER:  ...this has gone on -- this has been asked and
14     answered so many times, I will instruct the witness not to
15     answer.
16 Q.   There's a specific court order that says that you cannot
17     do that.  Do you want to violate that court order?
18 MS. KRAMER:  I know exactly the court order.
19 Q.   And it says the only instruction that you can give is if
20     it's privileged.
21 MS. KRAMER:  It's a short -- well, okay, I can go to the court
22     if you want to do that.  I can call.
23 Q.   Are you going to terminate the deposition?
24 MS. KRAMER:  We can...
25 Q.   Just answer the question, Ms. H.A.

H. A.                                              DIRECT - RADER

280

```
 1   MS. KRAMER:  If you would like to -- you have asked the same
 2         question ten times.
 3   Q.    No, I have broadened it.
 4   MS. KRAMER:  And you're asking it improperly on a number of
 5         bases, so if you -- you can answer one more time.  If you
 6         want me to terminate, then we can deal with that when we
 7         do.
 8   Q.    Can you -- can you identify any fact personally about any
 9         Johnson City Police officer that you claim that these
10         individuals did wrong, or were involved in an extortion
11         scheme, or anything else as alleged in your complaint?
12   MS. KRAMER:  Objection.
13   A.    Again, I believe that the facts are in the filing that has
14         been provided.
15   Q.    And there are no facts that are not in the filing that you
16         know of.
17   A.    False.  That's false.
18   Q.    And so that's the question.  What facts do you know of
19         that are not in the filing that you claim that any of
20         these individuals, not just some broad scattershot Johnson
21         City Police Department, but any of these individuals, can
22         you tell me any facts that are not in your filing?
23   MS. KRAMER:  Objection.
24   A.    I cannot tell you any facts that are not in the file.
25         That is the responsibility of my lawyers as well as other
```

H. A.                                            DIRECT - RADER

```
1          Defendants in this case.
2    Q.    Okay.  And can you identify any witnesses about any of
3          these facts that you've said are not in the filing?
4    A.    It's possible.
5    Q.    I'm asking you right now can you name a single witness?
6    A.    At this time, no, I cannot name them at this time.
7    Q.    Okay.  Can you identify a single document at this time?
8    MS. KRAMER:  Objection.
9    A.    I'm not certain.
```

282

# C E R T I F I C A T E

I, Rebecca Overbey, Licensed Court Reporter in and for the State of Tennessee, do hereby certify that the foregoing deposition of H. A. was taken at the time and place and for the purpose as stated in the Caption; that the witness was duly sworn by me before deposing; that the said deposition was recorded electronically and was later transcribed to typewriting, using computer technology; and that the foregoing is a true and accurate transcript of the proceedings to the best of my knowledge, ability and understanding.

WITNESS my hand and official seal at my office in Kingsport (Sullivan County) Tennessee on this the 3rd day of June, 2024.

                                                  Rebecca Overbey
                                            LICENSED COURT REPORTER
                                                State of Tennessee
                                                      LCR #078

My License Expires:

    June 30, 2026

***CERTIFIED ONLY IF AFFIXED SEAL IS GREEN***