IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., H.A., and S.H. individually, and
on behalf of all others similarly situated,

    Plaintiffs,

v.                                      No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY, TENNESSEE, et al.,

    Defendants.
_____/

## REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO ENJOIN EXTRAJUDICIAL CONDUCT; MOTION FOR SACTIONS

Nowhere in their response to the instant motion do counsel for Defendant Johnson City deny, or provide any explanation for, their conduct in facilitating the press conference of City Manager Cathy Ball. Counsel for the City used the designation process to insist Plaintiffs file Ball's redacted deposition transcript under seal. Defendant City does not deny this. Plaintiffs' counsel—though strongly disagreeing that there was any basis to file Ball's transcript under seal—nevertheless complied with the City's demands and filed the transcript provisionally under seal. Plaintiffs' counsel even offered to set a briefing schedule on the issue of sealing that would be amenable to defense counsel. Defendant City does not dispute this either. Counsel for the City then tipped off Ball about Plaintiffs' imminent filing of the Motion to Compel the real estate contract between Ball and Sean Williams (ECF 235), thereby prompting Ball's press conference and giving her an opportunity to spin the story in a way that served her and, by extension, the City. None of this is controverted by <u>any</u> facts offered in the City's brief or exhibits. This conduct

1

is sanctionable, runs afoul of the Local Rules, and undermines the fair administration of justice.

Instead of denying any of the facts set forth in Plaintiffs' Motion, Defendant City disingenuously points to Plaintiffs' position that the redacted transcript should be filed publicly as somehow evidence that Ball's public statements were harmless. ECF 263 at 5. But this entirely misses the point: Plaintiffs' counsel <u>did</u> view this information as appropriate to be filed publicly but nevertheless filed Ball's transcript under seal <u>at the insistence of counsel for the City</u>.[1] This insistence was made in bad faith. *See In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 318 (D.D.C. 2006) (sanctions appropriate for bad faith misuse of protective order). Defendants used the designation process to prevent Plaintiffs' from filing the transcript, thereby enabling Ball to give her version of the story first. To date, this has been the only version of the story reported by the media.

It was not an accurate version. Indeed, <u>after</u> Ball's deposition, the City turned over additional discovery that undermined the credibility of Ball and her claim—made again at the press conference—that she did not know Williams' identity during the real estate deal and had not discussed Williams with JCPD Chief Karl Turner in April 2022. Baehr-Jones Decl. ¶ 8. The newly produced text messages show that Ball asked Turner specifically about Williams' penthouse apartment, Unit 5, on April 6, 2022, referring to the unit number and the street:

| | |
|---|---|
| Ball (3:15 PM): | Any chance you could run me a crime report for East Main Street #5 in downtown. I am looking at buying it.[2] |
| Turner (3:16 PM): | Yes, ma'am. |

---

[1] This was also a waste of judicial resources, necessitating Plaintiffs to file a Notice of Under Seal Lodging, which the Court then ordered Defendants to respond to. *See* ECF 222, 247.
[2] Interestingly, Ball never told Turner the exact address on Main Street. She only provided the unit number and the street. Yet Turner responded with an email to Ball providing the criminal activity report for the <u>correct address</u>. Baehr-Jones Decl., Exh. 2. This suggests that Ball and Turner had some prior discussion or understanding about Ball's purchase and Turner therefore had a reference point for her text concerning "East Main Street #5."

| | | |
|---|---|---|
| Turner (4:22 PM): | | Cathy, I will email you the crime stats you asked for. Don't be alarmed by the number. All incidents that were reported are listed. Many are not criminal acts. We can reduce the distance from one mile to a lesser range if you desire. You can also drill down to list only specific crimes as well. Let me know if we need to provide additional information. Karl |
| Ball (6:43 PM): | | This is good. Thanks. |

Baehr-Jones Decl., Exh. 1.

By the time of this text exchange, Turner was well aware of Williams, his activities, and the notorious Unit 5 penthouse apartment. In an email dated September 19, 2020—the date of Female 3's fall from the window of this penthouse—Turner, and other senior JCPD leadership, received a detailed update from JCPD Officer David Hilton about the incident. Baehr-Jones Decl., Exh. 2. The update included information about Williams' apartment, including the address and floor number. (This email was also produced to Plaintiffs after Ball's deposition. *Id.* ¶ 8.) Thus, there is no doubt that Turner knew where Williams lived by April 2022. Either Ball lied under oath when she stated that Turner never alerted her that she was planning to buy Williams' apartment, or Turner deliberately withheld this information from the City Manager. Given all the other evidence—including Ball's admission that she talked about this transaction with the Mayor and a City Commissioner, and that she lived directly across from the apartment—the former is the more likely explanation.

It appears based on Ball's contract for Williams' apartment, which Defendant City has now produced, that Ball's statement during the press conference that "no money changed hands" is almost certainly false. Baehr-Jones Decl., Exh. 4 at 3. Ball testified that she withdrew from the contract when Williams attempted to conduct the closing remotely. Yet, the contract specifies that an earnest money deposit of $2,000 would be paid to the seller (Williams) within seven days of execution of the contract. Thus, Ball had almost certainly already paid Williams $2,000. *Id.*

3

Ball's press conference was also misleading. Counsel for the City used the Court's Protective Order to enable Ball to craft a story of supposed accountability and transparency when, in fact, Ball had hidden the fact of her real estate deal with Williams from the public for years. Counsel for the City then fought to keep her deposition transcript secret. *See* ECF 237-2, 237-4. It was only on the eve of Plaintiffs' motion to compel that Ball made the calculated and self-serving decision to tell the public about the deal. This was directly aided by counsel for the City—a fact they do not deny in their opposition. Ball's version of events promoted an image of Ball and, by extension, the City that was far more favorable to the defense, resulting in news headlines that minimized Ball's potential culpability. *See* ECF 236 at 9 n.2.

Ball also took the opportunity to denigrate the reputation and credibility of Plaintiffs and their counsel in advance of Plaintiffs' filing, claiming she was speaking out so the public would receive the information "accurately." Baehr-Jones Decl., ¶ 11. This language, which was quoted verbatim by newscasters that night, falsely implied that Plaintiffs would be unfair and inaccurate in their public filing. Counsel for the City knew, however, that Plaintiffs sought to file Ball's own deposition transcript, so the record would speak for itself. *Id.* Yet counsel did nothing while their client publicly denigrated Plaintiffs and their counsel.

Defendant City is inaccurate in claiming that Ball's real estate deal with Williams is irrelevant to this case. Indeed, if the evidence supports that Turner and Ball conspired to get a below-market deal for Ball on Williams' penthouse apartment—as the above text exchange tends to show—Plaintiffs will amend to add those allegations and add Ball as a defendant in this case. Moreover, this evidence is also highly probative to show the City benefitted financially from Chief Turner's participation in Williams' sex trafficking venture, as alleged in the Trafficking Victims Protection Act Claims in the current Second Amended Complaint. Ball's minimization

4

of her culpability in a press conference therefore directly prejudices Plaintiffs' ability to have a fair and impartial jury.

Ball's press conferences matter. Local news stations cover them extensively; members of the community, who likely have no knowledge of the Court's docket or the parties' legal filings, watch them; and opinions and minds are made up. Defendant City is disingenuous in claiming that Plaintiffs have an equal platform from which to speak. Ball is one of the City's top officials with close ties to the local press. Ball has the power to convene a press conference and speaks with the authority and prestige of her office. Plaintiffs, on the other hand, are private citizens who have given just <u>one</u> press conference after specifically seeking leave of this Court and limited their comments to the topics this Court approved. This is not an equal playing field.

The prejudice to Plaintiffs cannot be undone. With the assistance of City counsel, Ball preemptively set the narrative. By the time Plaintiffs did file Ball's deposition transcript publicly, on June 28, 2024, the media had already moved on. Thus, it appears that Ball's misleading and self-serving version of events may be the only version that the potential jurors hear before trial.

For the foregoing reasons, the Court should order Ball to refrain from making any further public statements concerning the facts and law at issue in this case during the pendency of the lawsuit; and should fashion an appropriate sanction for defense counsel's misconduct in facilitating Ball's June 26 press conference. In the alternative, Plaintiffs seek leave to file a motion for relief from Local Rule 83.2, so that they can hold a press conference to present information obtained during the Ball deposition, and available from public records, regarding the contract for, and sale of, Unit 5, 200 E. Main Street, Johnson City, Tennessee in 2022.

Plaintiffs submit that a reasonable sanction here is for Defendant City to pay Plaintiffs' reasonable expenses, including attorneys' fees and costs, incurred in bringing this motion,

pursuant to Fed. R. Civ. P. 37(a)(4) & (b), and seek leave to file a motion for attorneys' fees and costs. *See In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 318 (D.C. 2006) (holding reasonable attorneys' fees and costs in bringing motion was a reasonable sanction for party's bad faith in over-designating documents under the parties' protective order and abusing discovery process); *Humphreys v. Regents of Univ. of California*, No. C04-03808 SIEDL, 2006 WL 3020902, at *3 (N.D. Cal. Oct. 23, 2006) (sanctions appropriate under Fed. R. Civ. P. 37(b) for defendants' bad faith over-designation of documents). Moreover, "the Federal Rules of Civil Procedure provide that a district court may order a party to pay attorney's fees 'caused by' discovery misconduct, Rule 37(b)(2)(C), or 'directly resulting from' misrepresentations in pleadings, motions, and other papers, Rule 11(c)(4). And under 28 U.S.C. § 1927, a court may require an attorney who unreasonably multiplies proceedings to pay attorney's fees incurred 'because of' that misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 n.5 (2017).

For the foregoing reasons, the Court should grant Plaintiffs' Motion and leave to file a motion for attorneys' fees and costs.

Dated: July 19, 2024

Respectfully submitted,

*s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones (California Bar #281715)
*Pro Hac Vice*
**Advocates for Survivors of Abuse PC**
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com

—and—

*s/ Heather Moore Collins*
Heather Moore Collins (#026099)
Ashley Shoemaker Walter (#037651)
**HMC Civil Rights Law, PLLC**
7000 Executive Center Dr., Suite 320

Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

*—and—*

*s/ Elizabeth Kramer*
Julie Erickson (California Bar #293111)
Elizabeth Kramer (California Bar #293129)
Kevin Osborne (California Bar #261367)
*Pro Hac Vice*
**Erickson Kramer Osborne LLP**
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for the Plaintiffs and the Proposed Classes*

7

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on July 19, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>Email: lisa@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Reid Spaulding<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>Email: etaylor@watsonroach.com<br>Email: rspaulding@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity* | Daniel H. Rader III<br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 N. Jefferson Avenue<br>P.O. Box 3347<br>Cookeville, TN 38502-3347<br>danrader@moorerader.com<br>danny@moorerader.com<br>*Counsel for Kevin Peters in his individual capacity*<br><br>Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>*Counsel for Toma Sparks in his individual capacity*<br><br>Keith H. Grant<br>Laura Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>E-mail: kgrant@rswlaw.com<br>E-mail: lrufolo@rswlaw.com<br><br>*Counsel for Justin Jenkins, Brady Higgins, and Jeff Legault in his individual capacity* |

                                                */s Vanessa Baehr-Jones*
                                                Vanessa Baehr-Jones