IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., et al.,

    **Plaintiffs,**

v.                                                       No: 2:23-cv-00071-TRM-JEM

**CITY OF JOHNSON CITY,
TENNESSEE, et al.,**

    **Defendants.**

_____/

## REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF (1) DEFENDANTS' FINANCIAL RECORDS AND (2) THE REAL ESTATE CONTRACT BETWEEN CITY MANAGER CATHY BALL AND SEAN WILLIAMS

Defendants admit in their opposition briefs that they have intentionally withheld discovery on the basis of meritless arguments made in support of their motions to dismiss. This is not how civil discovery works. Defendants cannot unilaterally decide to refuse to respond to interrogatories and requests for production because they disagree with the merits of Plaintiffs' case. Defendants' litany of accusations—that Plaintiffs' claims are frivolous, made in bad faith, defamatory, etc.—are not new. Defendants advanced similar arguments in opposing Plaintiffs' motion to amend and the Court declined to entertain any of them. The Court should not permit Defendants to stonewall discovery any longer.

Plaintiffs make three points in reply: (1) Plaintiffs have fully exhausted the meet and confer process and therefore seek a Court ruling on the issue of financial records, including bank records and tax records for the individual Defendants.[1] (2) Plaintiffs are entitled to discovery

---

[1] Plaintiffs do not seek such records for Defendant Higgins, for the reasons already set forth. ECF 205 at 10.

1

based on the allegations in the Second Amended Complaint ("SAC") alone and no further evidentiary proof is necessary. (3) Regardless, Plaintiffs have already uncovered evidence supporting and corroborating their TVPA claims, further justifying the requested discovery here. The Court should order immediate compliance, and award attorneys' fees and costs to Plaintiffs.

## I. Meet and Confer Process Has Been Exhausted

Plaintiffs have spent the better part of four months meeting and conferring with defense counsel on a variety of discovery disputes, including financial records, cellphone call logs, and obtaining additional deposition dates for City employees, among other issues. Baehr-Jones Decl. ¶¶ 3-7. Many of these lengthy negotiations have resulted in Plaintiffs receiving no discovery, necessitating Plaintiffs to delay depositions for two of the Defendants. *Id.* ¶ 8. While Defendants may point to offers of compromise, these offers have typically been made at the eleventh hour after Plaintiffs have spent significant time in meet and confers where Defendants have insisted that they will provide no records. *See, e.g.*, *id.* ¶¶ 6-7.

For instance, although Plaintiffs have been able to reach a compromise with Defendant Jenkins regarding the subpoena for his bank records, Jenkins' counsel had previously stated during meet and confers that he would not be able to agree to produce financial records for any of his clients and the parties would have to litigate this issue. *Id.* While Plaintiffs appreciate proposals for compromise, it is unworkable for Plaintiffs to receive these compromises only after they have fully briefed issues. If the parties continue to work in this manner, Defendants will have the ability to stymie every discovery request Plaintiffs propound, delay Plaintiffs' ability to obtain necessary records, and bury Plaintiffs in litigation, only to offer compromises at the very last minute, thereby denying Plaintiffs the ability to obtain fees. Plaintiffs requested fees with this motion to compel in order to deter this kind of practice going forward.

The delay itself prejudices Plaintiffs who cannot effectively proceed with depositions and propound additional discovery in the absence of the requested records. Contrary to Defendants' claims, Plaintiffs never agreed to withdraw any interrogatories or requests for production—Defendants simply refused to respond, and Plaintiffs did their best to move discovery forward as efficiently as possible. *See id.* ¶¶ 3-4. As of the filing of this reply, Plaintiffs still have not received <u>any</u> financial records from any of the Defendants.[2] *Id.* ¶ 8.

## II. Defendants' Financial Records are Relevant to the TVPA Claims

Defendants make the circular argument that, because Plaintiffs have not yet proven that Defendants received money for their roles in the alleged corruption conspiracy, Plaintiffs are not entitled to obtain discovery to prove Defendants received this money. By this logic, Plaintiffs would never be able to obtain any evidence in discovery. Plaintiffs have set forth detailed allegations describing the extortion scheme and Defendants' specific involvement in the cover-up of police corruption—allegations which this Court accepted in rejecting Defendants' arguments against Plaintiffs filing the SAC. ECF 119. Plaintiffs are entitled to discovery to prove their case.

Although Defendants' arguments on this point are entirely irrelevant for purposes of ruling on this motion, Plaintiffs nevertheless wish to dispel the false claim—which Defendants repeatedly assert in their oppositions—that Plaintiffs' extortion allegations are based solely on the Facebook post of Sean Williams. Plaintiffs brought their extortion allegations because the Facebook post made specific claims which Plaintiffs were able to corroborate through other evidence.

---

[2] Under their compromise with Jenkins, Plaintiffs must serve a new subpoena to Jenkins' financial institutions and wait to receive the agreed-upon documents. *Id.* ¶ 9.

For instance, the claim that Female 4 used sham limited liability companies ("LLCs") to launder money out of Williams' business was corroborated by open-source research showing Female 4 had opened a number of LLCs during the relevant time period, some of which appeared to have no legitimate business purpose. Baehr-Jones Decl. ¶ 10. This has already been borne out in discovery, as set forth in Plaintiffs' motion and elsewhere. *See, e.g.*, ECF 190 at 8; ECF 235 at 5-9.

Similarly, the claim that Sparks and Jenkins arrived at Williams' apartment on September 19, 2020, with the goal of obstructing the investigation, rather than preserving evidence, was corroborated by the facts articulated in the government's response to Williams' motion to suppress, a public document which is cited at length in the SAC. *See* SAC ¶ 66. Sparks and Jenkins inexplicably left Williams' apartment unsecured and then stood by and watched while Williams manipulated his cellphone, giving him the opportunity to delete its contents. *Id.* ¶¶ 66-69. These actions, committed by experienced criminal investigators, are baffling. Either Sparks and Jenkins were grossly incompetent—making a series of mistakes that "any rookie out of the academy"[3] would know better than to do—or they were acting with corrupt intent.

Finally, the claim that JCDP officers took cash from Williams' safe also appears to have a basis in truth, given the actions of the officers on September 19, 2020. Rather than preserving any of the video cameras which might have captured Female 3's fall, JCPD officers moved a large safe out of Williams' apartment, taking it back to JCPD headquarters. Baehr-Jones Decl, Exh. 1 (photograph of inside the safe showing doll of baby girl and dildo). The safe had no

---

[3] Defendant City's own expert, Eric Daigle, used these words to describe another incident in which JCPD officers had failed to secure and search Williams' apartment after a woman ran screaming from the building, reporting that she had been raped by Williams. In Daigle's words, the officers' failure to take appropriate action to secure the crime scene was "egregious" and inexplicable. *See* ECF 235, Exh. 24, Daigle Dep. 217:17-25; 218:1-12.

4
Case 2:23-cv-00071-TRM-JEM   Document 283   Filed 07/19/24   Page 4 of 11   PageID #: 7423

obvious evidentiary value to the attempted homicide investigation they had opened based on Female 3's fall. Officers then used a narcotic sniffing dog—unlawfully, as they never obtained a warrant for the search by the dog—to obtain a search warrant for the safe. *Id.*, Exh. 2. Meanwhile, they never bothered to obtain a warrant for the digital devices they had also seized which might have contained video footage of Female 3's fall. This also tended to corroborate the allegation in the post that JCPD officers' actual intent was corrupt—to take cash from the safe—rather than to investigate a potential crime.

In sum, Plaintiffs' allegations that JCPD officers acted corruptly were corroborated by open source research and information available on the public docket in Williams' criminal case, much of which was included in the detailed allegations set forth in the SAC. The Court should reject Defendants' incessant claims of bad faith on the part of Plaintiffs.

The SAC sets forth allegations which make evidence of the individual Defendants' potential financial gain highly relevant and probative of the officers' motive and intent to engage in criminal obstruction. Defendants claim the caselaw Plaintiffs cite has nothing to do with obtaining financial records in discovery. Not so. The caselaw Plaintiffs cite in their motion shows why evidence of financial gain would be <u>admissible at trial</u> to prove motive and intent in cases involving obstructive conduct. *See* ECF at 20. "Where personal financial information is sought to prove a case in chief or an element thereof, the information can be deemed relevant and can be ordered to be produced." *Grayiel v. AIO Holdings, LLC*, No. 315CV00821TBRLLK, 2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017) (citing *Alvarez v. Wallace*, 107 F.R.D. 658, 661 (W.D. Tex. 1985)).

It is well settled that evidence pertaining to motive and intent—and specifically, financial records which might show financial gain as a motive—is discoverable under Rule 26. *See, e.g.*,

5
Case 2:23-cv-00071-TRM-JEM    Document 283    Filed 07/19/24    Page 5 of 11    PageID #: 7424

*State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C.*, 375 F. Supp. 2d 141, 155-56 (E.D.N.Y. 2005) (financial records "may be relevant to establishing that defendants profited from their willingness" to order medically-unnecessary tests); *see also State Farm Mutual Automobile Insurance Co. v. Warren Chiropractic and Rehab Clinic, P.C.*, No. 4:14 CV 11521, 2015 WL 4094115, at *6 (E.D. Mich. July 7, 2015); *Paws Up Ranch, LLC v. Green*, 2013 WL 6184940 (D. Nev. 2014) (disclosure of personal financial records was appropriate where allegations of fraud, racketeering, conversion and unjust enrichment had been made); *State Farm Mutual Automobile Insurance Co. v. McGee*, No. 10 CV 3848, 2012 WL 8281725, at *2 (E.D.N.Y. Feb. 21, 2012) (financial records sought to establish healthcare provider financially dependent on co-defendants "relevant to demonstrate his motive in participating in the fraud," among other things); *Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D. Pa. 1993) (finding that financial records are relevant where claims of fraudulent conveyance of assets have been alleged). Evidence that Defendants concealed money or cash that they may have received for their participation in the cover-up is also relevant to show consciousness of guilt. *United States v. Paccione*, 949 F.2d 1183, 1199 (2d Cir. 1991) (evidence of consciousness of guilt relevant to show intent).

Because evidence of financial gain is probative and highly relevant, it is discoverable here and the Court should order Defendants to comply with Plaintiffs' propounded discovery.

### III. Evidence Obtained in Discovery Corroborates the Corruption Claims

While Defendants' opposition briefs are filled with hyperbolic outrage, they submit nothing to contradict what Plaintiffs have presented in support of their motion to compel. There is a wealth of evidence corroborating the TVPA obstruction claims, as well as new evidence suggesting City officials benefitted financially from corruptly conspiring with Williams.

Defendants claim Plaintiffs have failed to make any connection between Female 4's money laundering and JCPD officers. Not so. Consider just one such connection: on the day that Female 4 went to Renasant Bank to open a new bank account for GCC, which was solely in her name,[4] Defendant Sparks also went to Renasant Bank. *See* ECF 220, Exh. 20 at 8. Sparks included a note in his case narrative notes in the file for Female 3, claiming there was a female at the bank picking up Sean Williams' paperwork. *Id.* After setting up this new account, Female 4 proceeded to drain GCC's old account and then, in June 2022, began taking large sums out in cash. ECF 235 at 7. Granted, Plaintiffs cannot yet show Sparks received part of this money, but that is because Defendant Sparks has refused to provide any of his financial records.[5]

Or consider that Female 4 began communicating with another JCPD officer, also during this timeframe, leaving her cellphone number in a voicemail on the officer's JCPD-issued cellphone, after which the officer called her back from his private number. Baehr-Jones Decl. ¶ 13. Her contacts with this private phone number continued throughout March, April, and June 2022, including short calls on the days around which she withdrew large sums of cash. *Id.* None of this was documented in any police report, nor do these communications appear to have any legitimate police purpose. *Id.*

Or consider that JCPD inexplicably possessed seven years of Williams' GCC Renasant

---

[4] Female 4 admitted during her deposition that this new account was not opened because she had created a new business entity, but solely for the purpose of moving money. ECF 235 at 7 n.5 (Female 4 Dep. at 113:5-7 ("Q: And it's a DBA, correct? A: On banking documents, yes, but it wasn't like an actual company or anything.")). Over the next months, she drained the old GCC account, moving money into the new account on which only she was a signatory. *Id.*

[5] Defendants' claim that Female 4's self-serving denials that she engaged in any corruption scheme with the JCPD police to coverup her own drug trafficking business should somehow be the end of the case. But, of course, Female 4 had a strong incentive to deny conduct which would amount to a criminal felony. This proves nothing. What is far more probative is that Female 4 did not appear to testify credibly during her deposition: she contradicted herself when confronted with evidence that conflicted with her prior testimony and changed her answers after breaks.

bank records, despite counsel for the City representing that they could find no evidence of any legal process that might have provided officers with legitimate access to this type of information. *Id.* ¶ 14. Nor have Plaintiffs received any documentation from the City concerning how JCPD came by these bank records or what legitimate activities they were carrying out using these bank records. *Id.*

Or consider that photographs and video evidence document that JCPD officers opened Williams' safe at JCPD headquarters to find hundreds of thousands of dollars inside.[6] Exhs. 3, 4. Yet none of this money was ever inventoried. *Id.* ¶ 16. None of it was ever signed for. *Id.* The money simply disappeared. Again, either the criminal investigators of JCPD were so grossly incompetent that they failed to perform a basic police function that "any rookie coming out of the academy" would know to do, or they were acting corruptly.

Or consider that JCPD officers Sparks and Jenkins inexplicably failed to seize critical evidence from Williams' apartment on the night of Female 3's fall, including the two Arlo video cameras, which pointed towards the living room area from which Female 3 fell, and a piece of paper with the writing, "Call Arlo!!" written on it—potential evidence of obstruction of justice. *See* Exhs. 5, 6, 7, 8 (photographs of Arlo video cameras facing towards living room of Williams' apartment); Exh. 9 (photograph of "Call Arlo!!" note).

Finally, there is now evidence that City Manager Cathy Ball attempted to benefit

---

[6] In the video footage of JCPD officers opening Williams' safe, the officers struggle to open the safe for the first three minutes. Baehr-Jones ¶ 17. It appears that the officers are using a combination code written on a piece of paper. *Id.* Finally, at minute 3:39, one officer approaches the officer working the combination and shows him something on his cell phone. *Id.* The officer manipulating the safe is then able to open the combination lock. *Id.* Despite requests, Defendant City has not provided any discovery to Plaintiffs showing what the officer had on his cell phone which enabled the other officer to open the safe, nor has the City identified the cellphone or the officer holding the cellphone so that Plaintiffs can request this cellphone be inspected by Plaintiffs' computer forensic expert. *Id.*

financially from the sale of Williams' properties. *See* ECF 235 at 10.

In sum, Defendants are wrong about what the evidence shows. Despite Defendants' refusal to comply with discovery requests, Plaintiffs have already uncovered a wealth of evidence corroborating their TVPA claims. The Court should order immediate compliance with Plaintiffs' requests and interrogatories for financial records.

In addition to compelling production, the Court should order sanctions in the form of attorneys' fees and costs in bringing this motion. As of this date of filing, Plaintiffs still have received no financial records from any Defendant, and while Defendant City provided the real estate contract between Ball and Williams on July 19, 2024 (the date of this filing), this production was only made as a result of Plaintiffs' motion.

## CONCLUSION

It is never easy to prove police corruption. Law enforcement officers are entrusted with training, resources, and powers that, if used improperly, can enable them to operate outside of the law in ways that may be difficult—if not impossible—to prove. Police corruption cases are hard for criminal prosecutors to make; they are even harder to prove using the tools of civil discovery which rely on parties' truthful participation. That is why it is crucial that this Court insist that defense counsel play by the rules here and produce timely and complete discovery. Plaintiffs deserve a chance at accountability.

Dated: July 19, 2024        Respectfully submitted,

*s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones (California Bar #281715)
*Pro Hac Vice*
**Advocates for Survivors of Abuse PC**
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com

9
Case 2:23-cv-00071-TRM-JEM   Document 283   Filed 07/19/24   Page 9 of 11   PageID #: 7428

—and—

*s/ Heather Moore Collins*
Heather Moore Collins (#026099)
Ashley Shoemaker Walter (#037651)
**HMC Civil Rights Law, PLLC**
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

—and—

*s/ Elizabeth Kramer*
Julie Erickson (California Bar #293111)
Elizabeth Kramer (California Bar #293129)
Kevin Osborne (California Bar #261367)
*Pro Hac Vice*
**Erickson Kramer Osborne LLP**
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for the Plaintiffs and the Proposed Classes*

10

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on July 19, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>Email: lisa@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Reid Spaulding<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>Email: etaylor@watsonroach.com<br>Email: rspaulding@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity* | Daniel H. Rader III<br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 N. Jefferson Avenue<br>P.O. Box 3347<br>Cookeville, TN 38502-3347<br>danrader@moorerader.com<br>danny@moorerader.com<br>*Counsel for Kevin Peters in his individual capacity*<br><br>Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>*Counsel for Toma Sparks in his individual capacity*<br><br>Keith H. Grant<br>Laura Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>E-mail: kgrant@rswlaw.com<br>E-mail: lrufolo@rswlaw.com<br>*Counsel for Justin Jenkins, Brady Higgins, and Jeff Legault in their individual capacities* |

                                                                */s Vanessa Baehr-Jones*
                                                                Vanessa Baehr-Jones