IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE GREENEVILLE DIVISION

| | |
|---|---|
| B.P., H.A., and S.H., individually, and on Behalf of all others similarly situated, ) ) | |
| Plaintiffs, ) | |
| VERSUS ) | No. 2:23-cv-00071-TRM-CRW |
| CITY OF JOHNSON CITY, TENNESSEE, *et al* ) ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PREVAILING PARTY ATTORNEYS' FEES
BY KEVIN PETERS**

This suit, as it relates to Defendant Peters, was groundless from the very beginning. Even if the Court disagrees as to whether there was *initially* any basis for the suit, it became very clear quickly in the litigation that there were no facts to support Plaintiffs' claims against Mr. Peters. Both Plaintiffs suing him testified as such.[1] Plaintiffs have used this suit as a vehicle to thoroughly defame this lifelong public servant and his colleagues, without ever having had any basis to claim that Mr. Peters did a single thing wrong.

First, both Plaintiffs B.P. and H.A. testified that they had no evidence, witnesses, or documents that so much as touched on a claim against Defendant Peters, at all. (Motion Exhibits 1 and 2). Likewise, Plaintiffs' Initial Rule 26 disclosures and the sole supplement in April 2024, failed to include the first mention of evidence against Defendant Peters or any evidence in support of the Plaintiffs' claims against him, whatsoever. (Motion Exhibits 3 and 4). Whatever basis Plaintiffs claim to have had to pursue the suit against any other parties, Plaintiffs definitely never had a basis to sue Kevin Peters. This is the exact standard by which the Sixth Circuit has held that

---

[1] B.P. and H.A. brought claims against Peters. S.H. did not. The instant motion does not seek attorneys' fees from S.H., only from B.P. and H.A.

a prevailing defendant should be awarded attorneys' fees under 42 U.S.C. § 1988. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 422 (U.S. 1978).

Quite recently, the Sixth Circuit in *Bowman v. City of Olmsted Falls*, 802 Fed.Appx. 971, 975 (6th Cir. 2020) confirmed that an award of prevailing party attorneys' fees to a defendant was appropriate when a plaintiff was unable to demonstrate a genuine issue of material fact in response to a defendant's motion for summary judgment, where the plaintiff admitted in his deposition that he had no facts to support the claim. In fact, in a prior appeal of the same case, the district court previously denied the defendant prevailing party attorneys' fees, but the Sixth Circuit *reversed* and remanded for reconsideration. 756 Fed.Appx. 526, 527-29 (6th Cir. 2018). On reconsideration, the district court then *awarded* the defendant prevailing party attorneys' fees, and the Sixth Circuit then *affirmed*. The Court cited prior cases where "District courts in this Circuit have awarded attorneys' fees to defendants forced to litigate similarly unfounded § 1983 actions." 802 Fed.Appx. at 975. In the second appeal, in which the attorneys' fees award was affirmed, after the prior reversal of the denial of fees, the Sixth Circuit highlighted the fact that Plaintiff's deposition admitted that he had no evidence to support his claim, exactly like Plaintiff B.P. and Plaintiff H.A. testified to in the case at bar. The Sixth Circuit held:

> Bowman further argues that, even if the City is a prevailing party, his claims are not "frivolous, unreasonable or without foundation." Neither of his claims, however, are supported by any foundation, and, even though Bowman's "ultimate failure [was] clearly apparent from the beginning," he continued to litigate them. *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). "Bowman failed to introduce any proof in response to [the City's] motion for summary judgment that created a genuine issue as to at least the first element [of his selective enforcement claim]." *Prior Action*, 756 F. App'x at 530. "During his deposition, he admitted that he had no evidence of discriminatory intent, and that the theories he proffered in the lawsuit amounted to 'speculation on [his] part.' " Id. (alteration in original). Mere speculation and intuition do not form a foundation to support a claim.

*Id*. at 975.

Here, like in *Bowman*, the Plaintiffs themselves each admitted in their depositions they had no evidence of any conduct of any kind by Defendant Peters, much less wrongful conduct. Worse, the Plaintiffs had no basis even at the pleading stage, much less at summary judgment.

Plaintiff B.P. admitted she had no basis for a claim against Peters or facts to support such a claim:

> Q. Okay. Do you know who Kevin Peters is?
>
> A. I have seen the name, but I don't know him personally.
>
> Q. Do you know what he does?
>
> A. I believe he was the chief of police or is.
>
> Q. Do you know anything about anything that he is personally alleged to have done in connection with the lawsuit that you filed?
>
> A. I do not.
>
> Q. I will represent to you that he is not and never was the chief of police. Do you have any idea what his job is?
>
> A. I must have had it wrong, so no.
>
> Q. Do you have any idea what his job ever was?
>
> A. No.
>
> Q. Can you name any fact with respect to Mr. Peters of anything that he did wrong at any time?
>
> MS. KRAMER: Objection.
>
> A. No.
>
> Q. Can you identify any witness of any kind that has information that Mr. Peters did anything wrong at any time?
>
> A. No.
>
> Q. Can you identify any document or other form of evidence that bears on whether or not Mr. Peters did wrong at any time?

MS. KRAMER: Objection.

A. No.

Q. Can you identify any witness who has any evidence at all that any member of the Johnson City Police Department at any time took money or accepted money from Mr. Williams?

MS. KRAMER: Objection.

A. No.

Q. Can you identify any witness with knowledge that anyone from the Johnson City Police Department is corrupt in any way?

MS. KRAMER: Objection.

A. No.

Q. Can you identify any document or other evidence that suggests that anyone from the Johnson City Police Department took money from Mr. Wiliams?

MS. KRAMER: Objection.

A. No.

Q. Can you identify any document or other evidence that anyone from the Johnson City Police Department is corrupt in any way?

MS. KRAMER: Objection.

A. No.

[Deposition of B.P., page 248, line 22 through page 250, line 19]

Plaintiff H.A. also could not point to a single fact, witness, or piece of evidence. Instead, H.A. referred to her lawyers (who have not tendered anything themselves in the Rule 26 disclosures or otherwise).

Q. All right. Do you know anything that he [Kevin Peters] has done with respect to Sean Williams at all?

A. Specifically him?

Q. Yeah.

A. I do not know. That's not my job to know, so I would say that would be something my lawyers would know. I don't specifically know that information, those details about him.

\*           \*           \*

Q. All right. What is the basis for you to say that Kevin Peters was involved in any extortion involving Sean Williams, that individual?

A. That is not my job to explain. That is my lawyers' job.

\*           \*           \*

Q. So you don't -- you can't name a single witness today. Can you provide a single document today?

MS. KRAMER: Objection.

A.   That is not my responsibility. It is the responsibility of my lawyers.

\*           \*           \*

Q. And so that's the question. What facts do you know of that are not in the filing that you claim that any of these individuals, not just some broad scattershot Johnson City Police Department, but any of these individuals, can you tell me any facts that are not in your filing?

MS. KRAMER: Objection.

A. I cannot tell you any facts that are not in the file. That is the responsibility of my lawyers as well as other Defendants in this case.

[Deposition of H.A., p. 276 line 19 through 282 line 9 (excerpted)].

Even if the Court *assumes* that Plaintiffs *initially* had a good faith basis to include Mr. Peters as a Defendant in this suit, it promptly became clear to Plaintiffs and their counsel through discovery, including the deposition testimony of the Plaintiffs themselves, that there was no good faith basis to continue the groundless case against Mr. Peters. Counsel for Peters then wrote the

Plaintiffs' counsel directly and asked them to dismiss the case against Mr. Peters, shortly after the Plaintiffs' depositions in which both Plaintiffs testified they had no evidence to support their claim. (Motion Exhibit 6). Plaintiffs ignored the letter. Plaintiffs instead continued to litigate against Peters even after the suit against him was clearly groundless and unreasonable. Although not at all necessary to sustain an award of fees, the Plaintiffs also likely continued the claim against Mr. Peters in bad faith. Indeed, even post-dismissal, they still are seeking his post-retirement, personal cell phone records, which is now the subject of yet another Motion to Quash. (DE 310).

The law does not require that a suit be in bad faith from the inception for a defendant to be awarded attorneys' fees under 42 U.S.C. § 1988. Instead, if a case is "frivolous, unreasonable, **or** groundless," a prevailing defendant may be awarded fees. The Sixth Circuit has expressly confirmed that no finding of "bad faith" is required: "Although a finding that a plaintiff brought a claim in bad faith will warrant an award of attorney fees, an action may be frivolous, unreasonable, or without foundation even if brought in good faith." *Bagi v. City of Parma, Ohio*, 795 Fed.Appx. 338, 343 (6th Cir. 2019)(citing *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412 (1978)).

Moreover, even if the case appeared to have merit at its inception, a plaintiff who elects to <u>continue</u> a case after it is clear that there are no grounds to pursue it as to a prevailing defendant, must also pay attorneys' fees to a prevailing defendant. It is not necessary that there ever be subjective bad faith at any stage of the litigation, though a finding of bad faith will strengthen the need to award fees. Instead, fees can be awarded if a Plaintiff continues to pursue a case after learning the case against that defendant to be groundless. The Supreme Court has stated:

> Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, *or* **groundless**, **_or that the plaintiff continued to litigate after it clearly became so._ And, needless to say, if a plaintiff is found to have brought** *or continued such a claim in bad*

> *faith*, there will be an even *stronger* basis for charging him with the attorney's fees incurred by the defense.

*Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 422 (1978) (emphasis added).

Here, Plaintiffs purposefully elected to *continue* the case against Peters, even though it had become crystal clear – including through Plaintiffs' own depositions – that the suit against him was at the very least groundless: "If it is concluded that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith, i.e., **<u>if no facts exist which support the claim presented by the plaintiff</u>, an award under § 1988 is warranted.**" *Steele v. City of Cleveland*, 2010 WL 2760396, at *1 (N.D.Ohio 2010)(emphasis added).

Both Plaintiffs' testimony confirms there are no facts to support a claim against Peters. Likewise, Plaintiffs' Rule 26 disclosures and the single supplement they have offered, identify no evidence as to Peters.

When Plaintiffs purposefully elected to continue and refused to dismiss the groundless case against Peters, it became necessary for the Court to rule on his dispositive motion, increasing the burden on the Court as well as the burden to Defendant Peters. The Court was also compelled to deal with multiple unnecessary discovery motions as a result of the Plaintiffs' failure to acknowledge the lack of a factual basis for their suit against Defendant Peters.

Moreover, the dismissal that was eventually entered reflected the complete dearth of allegations concerning Defendant Peters in any iteration of the Complaint, a defective "group pleading" that the Court itself essentially <u>warned</u> Plaintiffs against in advance, by virtue of the Court's Order (DE 119) granting Plaintiffs' most recent motion to amend: "nowhere in the proposed second amended complaint—barring general references to 'JCPD officers'—do Plaintiffs identify other Defendants who received some benefit from the alleged sex-trafficking

scheme." (DE 119, PageID# 1765-1766) (citing *Miller v. Collins*, 2023 WL 7303305, at *1 (6th Cir. 2023) (affirming a district court's dismissal of a § 1983 claim based on the plaintiff's failure to "allege specific facts about specific defendants")).

But Plaintiffs made <u>zero</u> attempt to correct this "group pleading" defect despite the Court's specific caution, which is of course because they could not cure it, as there are no facts and never have been any facts to support their claims against Peters.

Even if the Court were to accept a bald claim from Plaintiffs that they once had a good faith basis to originate this suit and include Defendant Peters as a Defendant originally, that basis evaporated when discovery began. To be sure, an award of attorneys' fees to a prevailing defendant is firmly considered to be a serious consequence, not to be awarded simply because the plaintiff did not prevail. *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir.1986). As the Supreme Court has also said:

> The plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.

*Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

The Sixth Circuit has more recently affirmed the relevant principles, including the propriety of awarding fees and costs even if the suit was initially brought in good faith. In *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624 (6th Cir. 2009), the Sixth Circuit affirmed an award of attorneys' fees and costs under § 1988 to a prevailing defendant, "imposing costs and attorney fees for **maintaining frivolous discrimination claims long <u>after they became groundless</u>**." Interestingly, in *Garner*, the plaintiffs claimed that because there had been a prior race-discrimination verdict against the defendant in a prior case, that the plaintiffs' claims asserting race-discrimination could not be "frivolous." The Sixth Circuit held that even a prior *judgment* could not serve as a predicate to avoid an attorneys' fee award, as "such a holding would encourage

frivolous 'me-too' claimants to piggyback on the nonfrivolous claims of legitimate plaintiffs." *Id*. In the case at bar, the Plaintiffs' original suit was based largely on unproven allegations in a separate lawsuit, *Dahl v. City of Johnson City*, that itself remains pending and vigorously contested (and to which Mr. Peters was never a party at all). In *Garner*, at least the prior suit resulted in an *actual judgment* against the defendant, adjudicating them liable for race discrimination. If an *actual judgment* against a defendant is insufficient on its own to render a later claim non-frivolous, surely bare allegations by a disgruntled former contractor Dahl, which have not been reduced to judgment (and likely never will be), cannot form a sufficient basis for a groundless claim to avoid a prevailing party fee award.

And even if it could, <u>none of that ever had anything to do with Defendant Peters</u>. Plaintiffs' claims against this particular lifelong civil servant never had any factual support, from *Dahl* or otherwise.

The Sixth Circuit explained the appropriate analysis and relevant standard in detail, in this reported, binding case of *Garner*:

> The appellants' core argument is that, because their legal claims were allegedly not frivolous, the district court abused its discretion in granting attorney fees to the CCJC under § 1988. Section 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b). In reviewing the court's award under this section, we recognize that awarding attorney fees against a nonprevailing plaintiff in a civil rights action is "an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp*., 789 F.2d 1225, 1232 (6th Cir.1986). The Supreme Court has cautioned that
>> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst

of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit....

Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Against the backdrop of *Christiansburg's* cautionary language, this court has held that "a prevailing defendant should only recover upon a finding by the district court that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir.1994) (quoting *Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694 (1978)) (emphasis in original). To determine whether a suit is frivolous, we consider "whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines, and whether the record would support such a finding." *Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir.1984) (quoting *Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir.1981) (citations omitted)). We must also review "the record below ... to determine whether the district court's finding is factually supported." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir.2001).

Both the appellants and NELA argue, however, that because Attorney Frost previously won a race-discrimination claim against the CCJC, this somehow suggests that the present case was not entirely frivolous. NELA also contends that the CCJC's prior acts of discrimination are relevant to the present case. In support of this argument, NELA cites *Spulak v. K Mart*, 894 F.2d 1150 (10th Cir.1990), for the proposition that "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Id*. at 1156. The CCJC responds that "[t]he fact that another former employee obtained a favorable verdict (in a case that remains subject to appellate proceedings) does not establish that these employees' personal claims had any merit."

We find the CCJC's response persuasive. Nothing in particular can be inferred from the bare fact of a prior adverse verdict against the CCJC. Such an inference would imply that any employer who has lost a discrimination claim would be permanently barred from recovering attorney fees against subsequent frivolous claimants. The appellants would have had a stronger argument if they had presented relevant evidence deriving from Frost's prior successful jury verdict against the CCJC. They have not done so. **We therefore reject the argument that a prior adverse verdict against the CCJC, in and of itself, provides evidence that the present claims were not frivolous.**

> Finally, the record indicates that Colwell and McCollough—both of whom are not subject to the attorney-fee award—presented isolated CCJC comments that were tinged with racial overtones. But this does not permit the other employees to insulate themselves from an attorney-fee award by pointing to the thin evidence provided by Colwell and McCollough. Such a holding would encourage frivolous "me-too" claimants to piggyback on the nonfrivolous claims of legitimate plaintiffs. If Colwell's and McCollough's evidence of CCJC discrimination were stronger, and if the other employees had established a clear nexus between themselves and that evidence, then we might have reached a different conclusion.
>
> In sum, the appellants have not pointed to any relevant evidence in the record, or proffered convincing legal arguments, that suffice to show that the district court abused its discretion. We therefore find no error with the court's conclusion that the employees' disparate-treatment claims were frivolous.

*Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 637–38 (6th Cir. 2009).

Plaintiffs originated the instant suit, initially claiming that they learned about their harm (and thus their statute of limitations had not long since expired) because of the *Dahl* case. But the *Dahl* case was not a judgment, just another set of allegations. Whether those allegations alone were sufficient to give Plaintiffs a good faith basis, they knew they were required to plead specific facts in support of their claim in <u>this</u> case. "Plaintiffs must allege that their injury was caused by a specific Defendant. Plaintiffs cannot rely on discovery to provide the facts necessary to satisfy *Iqbal* and *Twombly*." (Order, DE 119, PageID# 1765-1766). This Court warned Plaintiff of this months before the eventual dismissal, and Plaintiffs continued the case with impunity to the Court's caution. This is the quintessential example of the Supreme Court's reminder in *Christianburg* that it is just as wrong to continue a case after realizing it is groundless, as it is to bring a groundless case in the first instance.

Plaintiffs' claims against other Defendants do not help them, whether they have any independent merit or not. The Supreme Court has expressly held that a defendant should be awarded prevailing party fees in defending frivolous, unreasonable, or groundless claims, <u>even if the Plaintiff also had other non-frivolous claims in the same case</u>. *Fox v. Vice*, 563 U.S. 826 (2011). Thus, whether Plaintiffs claim now to have had a good faith basis against other Defendants or not,

is of no moment.  The claims against Peters were frivolous and groundless, and this Defendant Peters is entitled to prevailing party fees without regard to whether there were other non-frivolous claims presented elsewhere.  As the Supreme Court held:

> **Analogous principles indicate that a defendant may deserve fees even if not all the plaintiff's claims were frivolous.** In this context, § 1988 serves to relieve a defendant of expenses attributable to frivolous charges. **The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary.** See *Christiansburg*, 434 U.S., at 420–421, 98 S.Ct. 694. That remains true when the plaintiff's suit also includes non-frivolous claims. The defendant, of course, is not entitled to any fees arising from these non-frivolous charges. See *ibid*. **But the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed.**
> Indeed, we have previously said exactly this much. In *Hensley*, we noted the possibility that a plaintiff might prevail on one contention in a suit while also asserting an unrelated frivolous claim. In this situation, we explained, a court could properly award fees to both parties—to the plaintiff, to reflect the fees he incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees he paid in defending against the frivolous one. See 461 U.S., at 435, n. 10, 103 S.Ct. 1933. We thus made clear that a court may reimburse a defendant for costs under § 1988 even if a plaintiff's suit is not wholly frivolous. **Fee-shifting to recompense a defendant (as to recompense a plaintiff) is not all-or-nothing: A defendant need not show that every claim in a complaint is frivolous to qualify for fees**.

*Id*. at 834-835.

As to Defendant Peters, Plaintiffs have offered their imaginations, but no *actual* facts about their *actual* claims against him. "Mere speculation and intuition do not form a foundation to support a claim."  *Bowman v. City of Olmsted Fall*s, 802 Fed.Appx. 971, 975 (6th Cir. 2020)(awarding Defendant's attorneys' fees).

Even as to the supposed Facebook post that Plaintiffs attribute to Sean Williams (while he was in jail with no access to Facebook, see DE 121, PageID# 1783, ¶ 62), the Facebook post addresses itself to Sparks and <u>does not address Peters at all</u>.  Moreover, Plaintiffs have not even designated Sean Williams in their Rule 26 Disclosures and sole supplement as a witness who they say will support their claims, because they know Sean Williams is not a witness upon whom they

can reliably predicate their case. To the extent Plaintiffs rely on Williams's supposed claims about having had $500,000 in the safe, the Plaintiffs have adduced through discovery and video evidence that Peters was never anywhere near the safe or any such money at any relevant time. Any claim of corruption by Peters was not only groundless, it was wholly frivolous.

Plaintiffs' attorney Ms. Baehr-Jones offered <u>substantive testimony</u> to this Court under penalty of perjury that there is some secret "corroboration" of the Facebook post concerning Sparks, which has never been revealed to the Court or the Defendants, despite incontrovertible Fed. R. Civ. P. 26(a)(1)(A) and 26(e) obligations to do so. (DE 241, PageID#6818, Declaration of Ms. Baehr-Jones, testifying "I explained that I would not have included the Facebook posts in the complaint without having some corroboration, and I stated that I thought the truth would come out.").[2] But no "corroboration" has been revealed. Further, presumably any secret "corroboration" that has been concealed has no bearing on Peters, since the Facebook post itself has nothing to do with him.

A brief history of this case is material, as it reveals the multiple opportunities that Plaintiffs had to discontinue the improvidently filed claims against Peters. The suit was filed on behalf of nine individuals who refused to identify themselves. (DE 1, June 21, 2023). No summons was issued, and the Plaintiffs filed motions and obtained relief for two months before Defendants finally took it upon themselves to file Answers without summonses. (DE 10, 11, and 15). It was

---

[2] It is unclear how it can be even remotely appropriate for Ms. Baehr-Jones to be offering <u>substantive testimony</u> to this Court on these vigorously contested issues as she has numerous times at this point (as opposed to simply authenticating documents, etc.). Tenn. Sup. Ct. R. 8, RPC 3.7. See also *Eon Streams Inc. v. Clear Channel Communications, Inc*., 2007 WL 954181 (E.D.Tenn. 2007) ("'Any person testifying to a contested issue is a necessary witness."). See also, e.g., some 21 declarations submitted by Ms. Baehr-Jones in this case alone, filed at DE 75-1; 99; 110-1; 113-1; 176-1; 190-1; 205-1; 217-1; 221-1; 226-2; 235-1; 237; 241; 245-1; 246; 268-1; 280-1; 283-1; 288-1; 298-1; 299-1.

over six months, and after the filing of a Motion to Compel Psuedonym Identities (DE 103-104), before the Defendants were even able to learn the identities of those suing them.[3]

Even with a Motion to Compel pending as to these identities, and with Plaintiffs' Response to the Motion to Compel due imminently, Plaintiffs' attorney Ms. Baehr-Jones went to considerable personal effort to concoct multiple documents of misinformation, with the apparent purpose to conceal or misrepresent the identities of some of the Plaintiffs. (DE 112, PageID# 1619-1620). It took Judge McDonough, on a conference call, to finally verify even the names of the Plaintiffs for the Defendants, so the Defendants could even figure out who was suing them.

The first iteration of the Complaint included a § 1983 claim for an alleged equal protection violation against Defendants Turner, Peters, and Sparks (DE 1, Count I, PageID# 30-31); a § 1983 substantive due process claim against Turner, Peters, and Sparks (DE 1, Count II, PageID# 33-34); a frivolous Title IX claim (against who knows who); a GTLA Claim (DE 1, Count IV, PageID# 35-36); and two different negligence claims against the City for failure to train and failure to supervise (DE 1, Count V and VI, PageID# 36).

The next iteration included two theories of "Sex Trafficking" claims (DE 21, PageID# 280, 282), along with all of the original claims. After a meet and confer was initiated concerning a Rule 12 motion involving that pending amended complaint, Plaintiffs' attorney responded that a proposed second amended complaint would be filed, **in which, she claimed, Defendant Peters was <u>not</u> being named in his individual capacity on the § 1983 claims**. (See email, Motion Exhibit 5). Ms. Baehr-Jones's representation in this regard proved to be false. (See DE 121, Count VI, PageID# 1841, pursuing the § 1983 "substantive due process" claim "against all Defendants.").

---

[3] Defendant Peters's motion for attorneys' fees concerning the need to file this motion to compel (DE 103), and subsequent motions to compel (DE 108 and 152), are all still pending. See DE 187, and supplemental motion filed at the Court's direction, DE 196. Defendant Peters is separately entitled to an award of attorneys' fees in connection with all of these motions pursuant to Fed. R. Civ. P. 37.

The Second Amended Complaint removed some of the individual Plaintiffs whose identities Plaintiffs' counsel had sought vigorously to conceal, dumped the frivolous Title IX claim, leaving the two Sex Trafficking claims from the first amended complaint (DE 121, PageID# 1825, 1828), added third and fourth Sex Trafficking theories (DE 121, Page ID# 1831, 1835), dropped the original equal protection claim against the individuals (DE 121, PageID# 1838), but left the § 1983 substantive due process claim against the individuals including Mr. Peters (despite Ms. Baehr-Jones's prior representation to the contrary), and retained the GTLA claim and the two negligence claims.

**At each turn, the Plaintiffs have had the opportunity to amend their Complaint to discontinue their ill-advised claims against Mr. Peters.** Even after, and after Plaintiffs' own testimony revealed there was no basis for the claim, Plaintiffs <u>still</u> had every opportunity to dismiss the claims against Peters, while pursuing any others they felt there was a basis to pursue. Counsel for Peters even wrote on May 24, 2024 and asked them to dismiss Peters, reminding them of this specific caselaw and obligation not to continue a suit, when it had become clear there were no facts to support it. Plaintiffs consciously chose to proceed, and at this point are the author of their own misfortune.

In this Court's Order granting the Plaintiffs' Motion to Amend, this Court very clearly highlighted for Plaintiffs that they would not be able to sustain a claim based on group allegations, stating:

> While this may be sufficient to state a claim for beneficiary liability under the TVPA against Defendants Sparks, nowhere in the proposed second amended complaint— barring general references to "JCPD officers"—do Plaintiffs identify other Defendants who received some benefit from the alleged sex-trafficking scheme. *See Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *1 (6th Cir. Nov. 6, 2023) (**affirming a district court's dismissal of a § 1983 claim based on the plaintiff's failure to "allege specific facts about specific defendants"**) (quoting the district court); *see also MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, 594

F. Supp. 3d 947, 959 (S.D. Ohio 2022) **("Nonetheless, in order to state a claim under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must allege that their injury was caused by a specific Defendant. Plaintiffs cannot rely on discovery to provide the facts necessary to satisfy *Iqbal* and *Twombly*.")** (citations omitted). Therefore, the Court will deny Plaintiffs' motion to amend as to the TVPA claims against Defendants Legault and Higgins.

(DE 119, PageID# 1765-1766) (boldface added).

Thus, the Court itself made clear to Plaintiffs by February 2024 that which Plaintiffs should have known themselves all along: that specific allegations as to the wrongdoing of the specific defendants was <u>mandatory</u>. Plaintiffs chose not to include any substantive factual allegations, particularly against Peters. The absence of allegations against Peters despite this Court's specific caution was surely not due to a negligent omission by a team of seasoned Plaintiffs' attorneys; the absence of factual allegations was because <u>there were no facts to allege, because the claims have no factual support</u>. This is the definition of groundless. *Steele v. City of Cleveland*, 2010 WL 2760396, at *1 (N.D.Ohio 2010)("if no facts exist which support the claim presented by the plaintiff, an award under § 1988 is warranted.").

In <u>none</u> of the iterations of the Complaint do Plaintiffs make any attempt to offer any material factual allegation as to Peters. **The only factual allegation as to Defendant Peters is that they claim that Defendant Peters made an unfortunate remark about the "appearance" of a person who alleged she was a victim of Sean Williams. (DE 121 at ¶¶166; 247).** Plaintiffs do not even allege this person was either of them. This Court explicitly held that this is just not sufficient to state a claim in dismissing this case (DE 301), after putting Plaintiffs indisputably on notice of this principle concerning "group pleadings" when granting the Motion to Amend (DE 119).

Throughout the remainder of the various iterations of the complaint, including the 80-page Second Amended Complaint, Plaintiffs simply lumped this lifelong public servant into group

allegations concerning "JCPD," when they made blanket, baseless allegations of "corruption" against the police department as a whole, despite this Court's clear warning that such a group pleading was not sufficient. But Plaintiffs had no realistic choice but to disregard the Court's warning in DE 119, simply because Plaintiffs' claims, certainly as to Peters, have no realistic merit or realistic factual support.

CONCLUSION

For the foregoing reasons, the Plaintiffs' claim against Defendant Peters was frivolous, unreasonable, and groundless. Even if Plaintiffs ever had a basis to initiate it, they consciously elected to continue the groundless suit even after it became clear – and after both Plaintiffs affirmatively testified – that they had no facts to support it. The existence of other non-frivolous claims do not save Plaintiffs from an award of attorneys' fees against them, as they should have discontinued the suit against Defendant Peters when they were asked to do so.

The Court should award Defendant Peters's prevailing party attorneys' fees pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d)(2), and E.D.Tn. LR 54.2.

Respectfully submitted,

MOORE, RADER AND YORK, P. C.

By <u>DANIEL H. RADER IV, BPR 025998</u>
DANIEL H. RADER IV, BPR 025998
P. O. Box 3347
Cookeville, TN 38502
Phone: (931) 526-3311
Fax: (931) 526-3092
danny@moorerader.com
Attorneys for Kevin Peters in his individual capacity

CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: ashley@hmccivilrights.com

Heather Moore Collins
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Suite 320
Brentwood, TN 37027
615-724-1996
Email: heather@hmccivilrights.com

Ms. Elizabeth A. Kramer
Mr. Kevin M. Osborne
Erickson, Kramer Osborne LLP
44 Tehama Street
San Francisco CA 94105
(415-635-0631)
Email: elizabeth@eko.law
Email: kevin@eko.law

Emily C. Taylor
Watson Roach Batson & Lauderback
P. O. Box 131
Knoxville, TN 37901-0131
865-637-1700
Email: etaylor@watsonroach.com
*Attorney for the City of Johnson City, Tennessee, and Karl Turner, in his Individual Capacity*

Caroline Drinnon
HMC Civil Rights Law, PLLC
7000 Executive Center Dr.
Brentwood, TN 37027
615-724-1996
Email: caroline@hmccivilrights.com

Vanessa Baehr-Jones
Advocates for Survivors of Abuse
4200 Park Blvd., No. 413
Oakland, CA 94602
Email: vanessa@advocatesforsurvivors.com
*Pro Hac Vice Attorney for Plaintiff*

Mr. Keith H. Grant
Mr. Philip Aaron Wells
Ms. Laura Beth Rufolo
Robinson, Smith & Wells
633 Chestnut Street
Suite 700 Republic Centre
Chattanooga, TN 37450
Email: kgrant@rswlaw.com
Email: awells@rswlaw.com
Email: lrufolo@rswlaw.com

K. Erickson Herrin
Herrin McPeak & Associates
515 E. Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
(423-929-7113)
*Attorney for the City of Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Toma Sparks, in his official capacity, and Kevin Peters, in his official capacity*

Thomas J. Garland, Jr.  
Milligan & Coleman, PLLP  
230 W Depot St.  
Greeneville, TN  37743  
Email:  tgarland@milligancoleman.com  
*Attorney for the City of Johnson City,*  
*Tennessee, and Karl Turner, in his*  
*Individual capacity*

Ms. Kristin E. Berexa  
Mr. Benjamin C. Allen  
Farrar Bates Berexa  
12 Cadillac Drive, Suite 480  
Brentwood, TN  37027  
615-254-3060  
Email:  kberexa@fbb.law  
ballen@fbb.law  
*Attorneys for Toma Sparks*

Vanessa Baehr-Jones  
Advocates for Survivors of Abuse PC  
4200 Park Boulevard No. 413  
Oakland, CA  94602  
510-500-9634  
Email: vanessa@advocatesforsurvivors.com

This the 12th day of September, 2024.

    MOORE, RADER AND YORK, P. C.

    s/DANIEL H. RADER IV, BPR 025998  
    DANIEL H. RADER IV / BPR #025998  
    P. O. Box 3347  
    Cookeville, TN  38502  
    (931-526-3311)  
    danny@moorerader.com