IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., et al.,

    Plaintiffs,

v.                                No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY, TENNESSEE, et al.,

    Defendants.
_____/

## OPPOSITION IN RESPONSE TO DEFENDANT JOHNSON CITY'S MOTION TO QUASH SUBPOENA DUCES TECUM ON VERIZON

Plaintiffs seek probative third-party discovery in the form of phone records for three phone numbers: (1) the City-issued cellular phone assigned to JCPD Captain Mike Adams; (2) the personal cellular phone number for retired JCPD Captain Mike Street; and (3) the personal cellular phone number for current JCPD Lt. David Hilton. The subpoena seeks call logs and data only (meaning, the records would reveal no content) and is limited to 12 specific dates or date ranges from June 2020 to March 2024 so that the requests are tailored to time periods where events significant in the litigation occurred. In the meet and confer process, the City agreed that this information could be subpoenaed from Verizon *but only if the records go to the City first*, for the City to decide what actually gets produced to Plaintiffs and when. This process has no basis in law, and is unworkable in this litigation. Rather than engage with Plaintiffs on how the records could be treated to address legitimate privacy concerns (once both parties received the records directly from Verizon), Defendant City filed this Motion for a Protective Order and/or to Quash Subpoenas (ECF 305) ("Motion").

1

## INTRODUCTION

Plaintiffs allege coordination among JCPD officers to intentionally and knowingly interfere with and obstruct investigations into Sean Williams. The phone records targeted by the subject subpoena bear on these allegations because they may reveal cellular phone activity between JCPD officers that would provide the opportunity for such coordination. To the extent legitimate police communications are reflected in the records, they are not subject to any protection. Moreover, where the records show irrelevant phone activity, Plaintiffs have offered to initially maintain the records under the Protective Order while the parties negotiate privacy issues and would, of course, meet and confer in advance should any of those records or the information gleaned from them need to appear in a court filing.

In moving to quash, Defendant claims that the subpoena amounts to a fishing expedition. Plaintiffs have proffered their explanation of relevance and offered reasonable privacy protections. The City's insistence that it must obtain the records first and control what and when Plaintiffs get the information from a third party is a bald attempt to interfere with relevant discovery, and the Motion should be denied.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs allege that JCPD officers engaged in a scheme to benefit financially from Sean Williams and his company, through his former business partner Female 4, in exchange for turning a blind eye to Williams' criminal conduct, including repeated sexual assaults of women and children in Johnson City. ECF 121, Second Amended Compl. ("SAC"), ¶¶ 57-183, 311-66. Plaintiffs further allege that JCPD officers obstructed investigation into Williams' sex trafficking venture. *Id*. ¶¶ 80, 87, 313-16. The alleged misconduct by JCPD began in at least 2018 and continued to at least 2021. *See id*. ¶¶ 18-56. Evidence adduced following the filing of the SAC

suggests that Williams may have been a confidential source for a law enforcement agency, likely the US Drug Enforcement Agency ("DEA"), and that JCPD officers who worked as Task Force Officers ("TFOs") for the DEA would thereby have additional motivation to, and opportunities for, protecting Williams from investigation and prosecution.

Critical to this case is September 19, 2020, the day that Female 3 fell from the window of Sean Williams' fifth floor apartment, and the police conduct that followed. Put very briefly for purposes of this opposition, Plaintiffs allege that JCPD officers coordinated their response to Female 3's fall and the law enforcement activity that followed in order to cover up evidence of their own existing scheme of extorting Williams (SAC ¶¶ 66-80) and to extract more financial benefits from Williams through the seizure of Williams' safe (*id*., ¶¶ 81-87). Additionally, if Williams was a confidential source, the incident involving Female 3 (even if the fall was accidental) would be of concern to any JCPD officer with connections to the DEA, because a search of his apartment could compromise his status, therefore creating additional motive to obstruct an investigation into Williams.

## ARGUMENT

I. **No Privilege or Privacy Concerns Give the City Standing to Quash the Subpoenas**

A party does not have standing to challenge a subpoena issued to a non-party unless the party can claim some privilege or other significant privacy interest in the documents sought. *Mann v. Univ. of Cincinnati,* 1997 WL 280188, at *4 (6th Cir. May 27, 1997); *Donahoo v. Ohio Dept. of Youth Services*, 211 F.R.D. 303 (N.D. Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty."). Here, the City has raised, at most, the *possibility* that a small subset of the records *might* include attorney-client privileged information (Motion at 8, referring to phone records from Captain Adams in

January through March of 2024) and that the records for all three individuals likely contain "personal calls with family members and friends [and] calls pertaining to medical appointments private phone calls to friends." Motion at 6.

Neither concern warrants quashing the subpoena or granting a protective order. The records requested do not contain the content of any communications, and thus the attorney-client privilege does not apply. The fact that private phone calls will appear in the records is also of no moment. First, no content is revealed. Second, the records will be under a protective order and not disclosed to the public. Third, as to the fewer than five individuals among Plaintiffs' counsel who would be reviewing the records, the phone numbers that appear in the records will be effectively anonymous. Counsel would have no way of knowing who those phone numbers belong to.[1]

## II. The Requested Records Reasonably Target Relevant Information

As this Court previously noted in denying another motion to quash in this matter, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26," which is "traditionally quite broad." ECF 128 at 14 (quoting *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Contrary to the City's labeling of the subpoena as a "fishing expedition," Plaintiffs have articulated why the records of the three identified phone numbers are likely to contain relevant information and have limited the requests to time periods corresponding to important factual developments that form the basis of Plaintiffs' allegations. On the other hand, the City has failed to articulate "specific facts that show a clearly defined and serious injury resulting from the discovery sought" required to meet the good cause

---

[1] The suggestion that Plaintiffs would use the phone records to cold call the officers' family members (Motion at 10) is an outrageous accusation to make against a fellow officer of the Court. More fundamentally, it would be a ridiculous waste of time.

4

Case 2:23-cv-00071-TRM-JEM   Document 325   Filed 09/13/24   Page 4 of 9   PageID #: 7916

burden on a motion for protective order. *In re Skelaxin Metaxalone Antitrust Lit.*, 292 F.R.D. 544, 549-50 (E.D. Tenn. 2013).

The requested records are very likely to lead to the discovery of admissible evidence, because the owners of the three identified phone numbers were involved in key aspects of the alleged misconduct:

Lieutenant David Hilton played an important role in Williams-related police activity that is the focus of Plaintiffs' case. For example, in addition to being the supervisor on multiple Williams' investigations, he was present for the execution of the search warrant on Williams' apartment on September 19, 2020 and for the opening of Williams' safe at JCPD headquarters. Baehr-Jones Decl., Exh. 2 (Hilton Dep. Tr. 32:18-19).

Captain Mike Adams was the first supervisor on the scene on September 19, 2020 and is a former DEA TFO. *Id.*, Exh. 2 (Hilton Dep. Tr. 108:10-125:2); *Id.*, Exh. 4 (Gryder Dep. Tr. 15:12-16:20). Based on the 911 call recordings from that morning, he appears to have directed various activities by patrol officers and other responders in the aftermath of Female 3's fall and may therefore have been involved in the subsequent warrants being issued and executed. *Id.*, Exh. 2 (Hilton Dep. Tr. 108:10-125:23).

Finally, Captain Street's involvement puts his personal phone logs at issue. During the meet and confer process, the City stated in an email that Street was not involved in any investigations involving Plaintiffs' counsels' *clients*. Baehr-Jones Decl., Exh. 1 (August 23, 2024 email with counsel for the City, Emily Taylor). However, when Plaintiffs' counsel asked whether Captain Street was involved in any Williams investigations or cases in which Williams acted as a confidential source, the City declined to answer in the negative. *Id*. Additionally, based on records produced in discovery by then-Defendant Kevin Peters, Street used his personal cell

5

phone to communicate with Kevin Peters during the relevant time period. Baehr-Jones Decl., Exh. 4 (Peters' phone records). It is reasonable to believe that evidence of Street's call logs around the time of Female 3's fall would provide relevant evidence concerning who within JCPD (including retired JCPD officers who may have served as Williams' DEA handlers) was coordinating Adams, Sparks, and Jenkins' response to Female 3's fall. And while the phone number for Street is for a personal cell phone, multiple officers deposed in this case have testified that they use their personal cell phones for police work. *Id.*, at Exhs. 2 (Hilton Dep. Tr. 89:8-93:2) and 3 (Gryder Dep. Tr. 17:2-18:19).

The above showing is more than sufficient to establish the relevance of the information sought through Plaintiffs' subpoena.

**III. The City's Demand to Screen Third-Party Discovery is Improper and Unworkable**

The City proposed that it should exclusively obtain the records requested by Plaintiffs' subpoena and then engage in the discretionary process of "redacting the personal calls on the call logs and producing any non-personal calls." Motion at 9-10. The City provides no legal basis for a party to act as the intermediary in this manner.

The City's other suggestion—that Plaintiffs provide a list of phone numbers for defense counsel to use to cross-check for relevant records—is also unworkable. Under the City's proposal, Plaintiffs would be relying on defense counsel to do their investigative work—a position they should not be forced into. The list of phone numbers to be cross-checked will likely grow as discovery goes forward, and disputes would certainly arise about the timing of defense counsel's review and response, creating an inefficient and contentious process highly likely to require further Court intervention.

6

## CONCLUSION

In sum, the records requested are narrowly tailored and relevant, and there is nothing privileged or highly confidential within them (particularly because the records do not reveal content and will be produced under the Protective Order). Plaintiffs are permitted to seek discovery directly from third parties under Rule 45. The City's proposal to interfere with that process and become the arbiter of what Plaintiffs ultimately obtain via subpoena is legally unsupported and practically unworkable. Plaintiffs therefore request the Court deny Defendant City's motion.

Dated September 12, 2024.   Respectfully submitted,

HMC Civil Rights Law, PLLC

*s/ Heather Moore Collins*

Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com


Advocates for Survivors of Abuse PC

*/s Vanessa Baehr-Jones*
Vanessa Baehr-Jones (*pro hac vice*)
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com


Erickson Kramer Osborne, LLP

*/s/ Julie Erickson*
Elizabeth Kramer (*pro hac vice*)
Kevin Osborne (*pro hac vice*)

Julie Erickson (*pro hac vice*)
44 Tehama St.
San Francisco, CA 94105
415-635-0631
Julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Proposed Classes*

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on September 12, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>rachel@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, Captain Kevin Peters, in his official capacity, and Investigator Toma Sparks, in his official capacity*<br><br>Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com<br><br>*Attorney to Defendant City of Johnson City, Tennessee* | Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>jdowd@fbb.law<br>msutton@fbb.law<br>gpatton@fbb.law<br><br>*Counsel for Toma Sparks in his individual Capacity*<br><br>Keith H. Grant<br>Laura Beth Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>kgrant@rswlaw.com<br>lrufolo@rswlaw.com<br>awells@rswlaw.com<br><br>*Counsel for Jeff Legault in his individual capacity* |

/s Elizabeth A. Kramer
Elizabeth A. Kramer