UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| B.P., H.A., S.H., individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF JOHNSON CITY, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 2:23-CV-71-TRM-JEM<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Motion to Compel Production of (1) Defendants' Financial Records and (2) the Real Estate Contract Between City Manager Cathy Ball and Sean Williams [Doc. 235]. Kevin Peters ("Peters"), Karl Turner ("Turner"), City of Johnson City, Tennessee ("Johnson City"), Justin Jenkins ("Jenkins"), Jeff Legault ("Legault"), and Toma Sparks ("Sparks") responded to the motion [Docs. 261, 262, 264, 265], and Plaintiffs replied [Doc. 283]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

On September 6, 2024, the parties appeared for a motion hearing.[1] Attorneys Julie Erickson and Heather Collins appeared on behalf of Plaintiffs. Attorneys Jonathan Lakey, K. Erikson Herrin, and Emily Taylor appeared on behalf of Defendants Turner and Johnson City. Attorney Keith Grant appeared on behalf of Defendant Legault. Attorney Ben Allen appeared on

---

[1] During the hearing, the Court also addressed Plaintiffs' Motion for Protective Order [Doc. 245]. The Court will adjudicate that motion by separate order.

behalf of Defendant Sparks. For the reasons stated below, the Court **GRANTS IN PART, DENIES IN PART,** and **DENIES AS MOOT IN PART** the motion [**Doc. 235**].

I. BACKGROUND

Plaintiffs filed this action on June 21, 2023 [Doc. 1] and filed the Second Amended Class Action Complaint ("Amended Complaint") on March 1, 2024 [Doc. 121]. The Amended Complaint alleges that "[b]eginning in at least 2018 and continuing to 2021, Sean Williams, a known drug dealer and convicted felon, conspired with Alvaro Fernando Diaz-Vargas and others to drug and rape women, and sexually exploit children, in his apartment in downtown Johnson City" [*Id*. ¶ 18]. Plaintiffs state that "Defendant [Johnson City Police Department] officers conspired with [Sean] Williams to participate in a venture, the purpose of which was to recruit, entice, harbor, provide, obtain, maintain, and solicit women and children, who had not attainted the age of 14 years, for the purpose of engaging in commercial sex acts" [*Id*. ¶ 57]. They state that Johnson City Police Department ("JCPD") officers were aware of the complaints that Sean Williams had raped women and that "officers took overt acts in furtherance of Williams'[s] sex trafficking venture" [*Id*. ¶¶ 95–143]. And despite being aware of such complaints, Plaintiffs allege that the JCPD failed to investigate them [*Id*. ¶¶ 232–33]. This failure, according to Plaintiffs, "was motivated, in part, by the officers' discriminatory animus towards women" [*Id*. ¶ 242]. In addition, Plaintiffs allege that several Defendants accepted payments from Sean Williams "with either the implied or explicit understanding that Defendants would shield [him], permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments" [*Id*. ¶ 313].

Plaintiffs represent three classes: (1) "All individuals, including minors, who were sexually abused, drugged, or trafficked by Sean Williams or Alvaro Fernando Diaz-Vargas"; (2) "All members of the Sex Trafficking Survivor Class who were sexually assaulted by Sean Williams

2

following the first report to the JCPD of Sean Williams'[s] alleged sexual violence on or about November 7, 2019"; and (3) "All women, including minors, who reported sexual abuse or trafficking by any person to JCPD from January 1, 2018, to April 25, 2023" [*Id*. ¶ 298]. They allege (1) sex trafficking claims, 18 U.S.C. §§ 1591, 1594, and 1595; (2) obstruction of enforcement, 18 U.S.C. §§ 1594, 1595, and 1591(d); (3) aiding and abetting a sex-trafficking venture, 18 U.S.C. §§ 2, 1591(a)(1) & (2), and 1595; (4) conspiracy to commit violations of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1594(c), 1591, and 1595; (5) violations of 42 U.S.C. § 1983; (6) liability under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205; (7) negligence for the failure to train; and (8) negligence for the failure to supervise [*Id*. ¶¶ 311–423].

Beginning in January 2024, Plaintiffs served discovery requests on Defendants Turner, Sparks, and Legault and now former defendants Peters and Jenkins that generally seek financial information [*See* Doc. 235 pp. 3–4]. In addition, Plaintiffs requested that Defendant Johnson City produce a real estate contract between Cathy Ball and Sean Williams [*Id*. at 4]. Defendants generally objected to these discovery requests based on relevancy and proportionality [*see id*. (citations omitted)], prompting Plaintiffs' motion to compel and their request for an award of attorneys' fees [*see id*. at 2]. After the motion became ripe, on August 21, 2024, United States Chief District Judge Travis A. McDonough entered an Order granting the motions to dismiss filed by Defendants Jenkins and Peters [Doc. 301]. He granted in part and denied in part Defendant Sparks's motion to dismiss and denied Defendant Legault's motion to dismiss [*Id*.].

3

## II.     STANDARD OF REVIEW

The issues before the Court are governed by Rules 26 and 37 of the Federal Rules of Civil Procedure. Rule 26 provides that parties may discover information that is relevant and proportional to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26. Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). And courts have defined the term "relevant" as it is used in Rule 26(b)(1) to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in in the case." *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-CV-02052, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

Under Rule 37(a) of the Federal Rules of Civil Procedure, a party may move to compel discovery of relevant information. *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *2 (E.D. Tenn. Mar. 27, 2017) (citing Fed. R. Civ. P. 37(a)). Generally, the

party moving to compel "bears the initial burden of proving that the information sought is relevant[.]" *Id.* (quoting *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). Once the party shows relevance, "the burden shifts to the party resisting discovery to demonstrate 'why the request is unduly burdensome or otherwise not discoverable.'" *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016) (quoting *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008)). "When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015) (quoting *Wagner v. Circle W Mastiffs*, No. 2:08–cv–431, 2013 WL 4479070, at *3 (S.D. Ohio Aug. 19, 2013)).

### III. ANALYSIS

As an initial matter, Chief Judge McDonough dismissed Peters and Jenkins [Doc. 301]. During the hearing, Plaintiffs acknowledged that the discovery requests propounded on these former defendants "are not operative." Given that, the Court **DENIES AS MOOT** Plaintiffs' request to compel financial discovery from Peters and Jenkins.

In addition, at the hearing, Plaintiffs withdrew Interrogatory No. 9. The Court therefore **DENIES AS MOOT** Plaintiffs' request to compel the remaining Defendants to respond to Interrogatory No. 9.

Further, Johnson City submits that "the real estate contract sought from [it] is not a [Johnson] City document and is not in the possession of [Johnson] City" [Doc. 262 p. 11]. It states, however, that "the contract will be voluntarily provided under separate cover by City Manager Cathy Ball" [*Id.* at 12]. In their reply, Plaintiffs acknowledge that they are in receipt of Cathy

Ball's real estate contract [Doc. 283 p. 9]. The Court therefore **DENIES AS MOOT** Plaintiffs' request to compel Defendant Johnson City to produce this document.

That leaves Plaintiffs' request to compel responses to certain interrogatories and requests for production from Defendants Legault, Turner, and Sparks. The remaining interrogatories at issue seek identification of (1) all assets valued over $10,000 bought or sold since January 1, 2018 (Interrogatory No. 1); (2) all titles to property valued over $10,000 (Interrogatory No. 2); (3) accounting firms used to prepare tax returns since January 1, 2018 (Interrogatory No. 4); and (4) financial institutions used to maintain accounts since January 1, 2018 (Interrogatory No. 5) [*See* Doc. 235 pp. 3–4]. Plaintiffs served these interrogatories on Defendants Legault, Turner, and Sparks [*Id.*]. The remaining RFPs seek tax returns, W-2 forms, and 1099 forms for the past ten years (RFP No. 7) and bank statements from January 1, 2018, to the present (RFP Nos. 10 and 14) [*See id.*]. Plaintiffs served RFP No. 7 on Defendants Turner and Sparks. Plaintiff served RFP No. 10 on Defendant Sparks and RFP No. 14 on Defendant Turner [*Id.*].

During the hearing, Plaintiffs explained that they have alleged a conspiracy and an extortion scheme involving Johnson City police officers. In such cases, Plaintiffs submitted, they will not discover direct evidence of extortion, but instead, they will have to rely on circumstantial evidence. And here, Plaintiffs argued, they have three categories of circumstantial evidence that render Defendants' financial information relevant.

First, Plaintiffs submitted that money from Sean Williams's businesses was "going out." For example, Plaintiffs claimed that they have bank statements showing money going out of his business's bank account weekly. Plaintiffs also noted that when Johnson City police officers seized a safe in Sean Williams's apartment containing cash, the cash was not inventoried pursuant to

6

protocol. In addition, Plaintiffs contended that when Sean Williams absconded, Female 4 began liquidating his assets and his bank activity increased.

Second, Plaintiffs submitted that money was "going in." They explained that they received Jenkins's financial records that "show purchases beyond his means."[2]

Third, Plaintiffs submitted that they had evidence of intentional obstructive conduct by Defendant Sparks and Peters. Plaintiffs explained that these officers viewed and edited case files although they had no reason to make such edits. In addition, on September 19, 2020, the day Female 3 fell out of the window, David Hilton sent an email to Defendant Turner and Peters about the need to seek a search warrant for Sean Williams's safe and digital devices, which were in the custody of JCPD. A search warrant, Plaintiffs stated, was never obtained. Finally, Plaintiffs submitted that Kateri Dahl ("Dahl") told officers that Sean Williams may be human trafficking and urged them to seek a search warrant.[3] Instead of seeking the search warrant, she was terminated from her position.

---

[2] During the hearing, Plaintiffs requested to submit former defendant Jenkins's financial records and Plaintiffs' summary thereof under seal. Plaintiffs claimed that Jenkins's financial records are relevant to the issues before the Court because they contain suspicious financial activity, which supports their theory of widespread corruption. They also explained that when officers seized the safe in Sean Williams's apartment, they did not account for the cash inside. Plaintiffs acknowledged that neither the financial records, nor their summary thereof, were part of the record. Defendants objected that they had not seen the documentation and had no opportunity to respond. Assuming Plaintiffs' allegations with respect to former defendant Jenkins are true, Plaintiffs failed to articulate how his financial records would show whether Defendants Legault, Turner, and Sparks accepted improper payments related to Sean Williams. The Court therefore declined Plaintiff's request but informed the parties that it would consider Plaintiffs' proffer.

[3] "Kateri Dahl was a Special Assistant United States Attorney . . . detailed to coordinate between the U.S. Attorney for the Eastern District of Tennessee and the City of Johnson City, Tennessee, to investigate and federally prosecute violate, firearm and/or drug-trafficking crimes pursuant to a multi-agency Memorandum of Understanding." *Dahl v. Turner*, No. 2:22-cv-72, Doc. 56 ¶ 1 (E.D. Tenn. Jan. 9, 2024). She filed a complaint alleging that Johnson City and its police officers failed to investigate Sean Williams and later terminated her in violation of her federal rights for reporting the failure to investigate Sean Williams to third parties. *See id.*

7

### A. Defendant Legault

At issue with respect to Defendant Legault is Interrogatory Nos. 1, 2, 4, and 5 [*See* Doc. 235 pp. 3–4; *see also* SEALED Doc. 234-4]. Although he imposed objections, Defendant Legault responded to Interrogatory Nos. 1, 2, and 4 [SEALED Doc. 234-4]. He objected to providing any response to Interrogatory No. 5 (financial institutions used to maintain accounts since January 1, 2018) [*Id.*].

During the hearing, Defendant Legault noted that his name is sparsely mentioned in the Amended Complaint—specifically, he is named in paragraphs 141 and 183 and in a footnote. He represented that paragraph 141 is a general allegation and Paragraph 183 relates to the arrest of Female 9, but he was not present for the arrest. Instead, the only substantive allegation against him is that he signed off on an arrest report of Female 9. According to Defendant Legault, he read the report of the arrest for grammatical issues and to ensure the report established probable cause for the arrest. And with respect to the footnote, Defendant Legault submitted that it relates to Dahl, and there is no context for how that reference relates to the allegations in this case. He argued that Plaintiffs do not allege that he received any money from an officer, Sean Williams, or Female 4.

Plaintiffs replied at the hearing that because they have alleged Defendants worked in concert with one another, this allegation renders their request for Defendant Legault's financial information relevant. Further, Plaintiffs argued Defendant Legault's purchases exceed his income.

Plaintiffs assert that "[w]hether Defendants received cash from the alleged extortion scheme is relevant to their motive and intent to participate in the obstruction conspiracy" [Doc. 235 p. 20 (citations omitted)]. Courts have found that "[w]here personal financial information is sought to prove a case in chief or an element thereof, the information can be deemed relevant and can be ordered to be produced." *Grayiel v. AIO Holdings, LLC*, No. 315CV00821,

8

2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017) (citation omitted) (explaining that "courts have looked to the requesting party's explanations regarding why the documents at issue are relevant for the authority to order production of an individual's personal financial information"). While Plaintiffs cite to a number of cases that find motive may be relevant in fraud and conspiracy cases [Doc. 235 p. 20; *see also* Doc. 283 pp. 5–6], determining whether discovery is relevant "must be done on a case-by-case [basis] and is factually driven." *Walsh v. Top Notch Home Designs Corp.*, No. CV2005087, 2022 WL 3300190, at *7 (E.D.N.Y. Aug. 11, 2022), *appeal withdrawn,* No. 22-2609, 2022 WL 18277011 (2d Cir. Nov. 3, 2022).

Here, Plaintiffs have not tethered Defendant Legault's financial condition to the allegations against him in this case. The Amended Complaint alleges that "by the fall of 2020, JCPD officers in the Special Investigations Squad, including Defendant Jeff Legault, among others, were aware of allegations that [Sean] Williams was drugging and raping women" [Doc. 121 ¶ 141]. It also mentions Defendant Legault in a footnote, stating that "[i]n Dahl's proposed First Amended Complaint, she alleges that Legault conspired with Turner and others in June 2021 to create a pretext to fire her after she pushed JCPD to investigate [Sean] Williams's sexual assaults" [*Id*. at 32 n.2]. Paragraph 183 alleges that "[Defendant] Legault was the supervisory patrol officer who signed off on the police report documenting Female 9's arrest. Upon information and belief, the unlawful arrest, physical assault and subsequent eviction of Female 9 was part of an effort by JCPD officers, including Defendant Legault, to retaliate against and intimidate Female 9, who was a witness in an ongoing federal sex trafficking investigation" [*Id*. ¶ 183 (footnote omitted)]. There are no allegations that Defendant Legault received any benefit for his actions or inactions [*See generally* Doc. 121]. *Cf. State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 710 (E.D. Mich. 2017) (denying motion to quash because the plaintiff

"sufficiently tied [the subpoenaed entities] to the scheme and to defendants such that the discovery [of the subpoenaed entities' bank information] should be permitted"), *aff'd*, No. 14-CV-11700, 2017 WL 3116261 (E.D. Mich. July 21, 2017); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 155–57 (E.D.N.Y. 2005) (finding that the financial records of defendant physicians were relevant in a fraud, unjust enrichment, and Racketeer Influenced and Corrupt Organizations Act conspiracy case where the plaintiff alleged that the defendant physicians performed unnecessary diagnostic testing).[4]

Plaintiffs also point to information learned from discovery. They assert that Sean Williams moved money out of his businesses. But this does not support an inference that Sean Williams or someone on his behalf paid Defendant Legault. They assert that Defendant Legault's purchases exceeded his income. But at this point, this allegation amounts to speculation that does not support discovery into Defendant Legault's financial condition. *See Walsh*, 2022 WL 3300190, at *6 ("Thus, what can be distilled from the myriad of cases considering fishing expeditions is that at bottom, fishing expeditions are not allowed when premised on mere speculation of what may come up in the production." (citation omitted)).

Based upon the record before the Court, Plaintiffs have not established their burden to show that the discovery is relevant. The Court therefore declines to order Defendant Legault to produce the requested financial information. In light of this ruling, the Court need not consider Plaintiffs' request for attorneys' fees as it pertains to Defendant Legault.

---

[4] The Court has reviewed the cases that Plaintiffs have cited in support of their position. Many of these cases are filed by insurance companies alleging insurance fraud. As such, Plaintiffs' reliance on them is inapposite.

B.   **Defendant Turner**

Plaintiffs seek an order compelling Defendant Turner to respond to Interrogatory Nos. 1, 2, 4, and 5, and RFP Nos. 7 and 14 [*See* Doc. 235 pp. 3–4]. Defendant Turner responded to Interrogatory Nos. 1 and 4 [*See* Doc. 235-14]. With respect to the remaining requests—Interrogatory Nos. 2 (all titles to property valued over $10,000) and 5 (financial institutions used to maintain accounts since January 1, 2018) and RFP Nos. 7 (tax returns, W-2 forms, and 1099 forms for the past ten years ) and 14 (bank statements from January 1, 2018, to the present)—Defendant Turner argued at the hearing that there are "very sparse allegations in the [Amended] Complaint regarding [him]." He stated that there are no allegations that he "accepted any payments or was involved in any sort of extortion scheme with Sean Williams." According to Defendant Turner, there has been no discovery showing that he accepted payments from Sean Williams.

Plaintiffs argued that Defendant Turner was the chief of police during the relevant time period and that he had notice of content on Sean Williams's digital devices that could support an investigation into sex trafficking.

Plaintiffs allege in the Amended Complaint that Defendant Turner, along with others, "had actual knowledge of rape complaints against [Sean] Williams staring at least in or around November 2019" [Doc. 121 ¶ 142]. They allege that Defendant Turner dismissed victims' accounts of rape and claimed that a "rape" list found in Sean Williams's apartment "did not demonstrate evidence of nonconsensual sex" [*Id*. ¶¶ 160–61]. In addition, Plaintiffs aver that after "Dahl initiated a second statement from one of [Sean] Williams'[s] victims—a victim JCPD had previously ignored and maligned—[Defendant] Turner called Dahl's supervisor to complain about her job performance" [*Id*. ¶ 167]. Plaintiffs claim that he "knowingly took this action to intimidate Dahl, interfere with her investigation into [Sean] Williams, and to attempt to stop the

11

investigation" [*Id.*]. "Dahl continued to press [Defendant] Turner and JCPD investigators to take investigative steps related to complaints of [Sean] Williams'[s] sexual assaults[,]" but they "made statements questioning the credibility of victims[] and made harassing comments to Dahl" [*Id.* ¶ 168]. According to Plaintiffs, after "[Defendant] Turner learned of Dahl's efforts to investigate [Sean] Williams and her report to the FBI, . . . he terminated her employment" [*Id.* ¶ 173].

Based upon the record before the Court, Plaintiffs have not established their burden to show that the discovery is relevant. As with Defendant Legault, there are no specific allegations that Defendant Turner received any benefit for his actions or inactions [*See generally* Doc. 121]. Plaintiffs have not tethered Defendant Turner's financial condition to the allegations against him in this case.[5] The Court therefore declines to order Defendant Turner to produce the requested financial information. In light of this ruling, the Court need not consider Plaintiffs' request for attorneys' fees as it pertains to Defendant Turner.

C. **Defendant Sparks**

Plaintiffs seek an order compelling Defendant Sparks to respond Interrogatory Nos. 1, 2, 4, and 5, and RFP Nos. 7 and 10. Defendant Sparks has responded to Interrogatory Nos. 1, 2, and 4 [Doc. 235-15]. With respect to the remaining requests, Defendant Sparks acknowledged at the hearing that Plaintiffs "make a direct allegation of financial benefit" against him. Given that, Defendant Sparks stated that in response to RFP No. 7, which seeks W-2 forms, 1099 forms, and

---

[5] Under their counts in the Amended Complaint, Plaintiffs allege that "Defendants City, Turner, Peters, Sparks, and Jenkins knowingly participated in a sex trafficking venture by benefiting financially" [*See e.g.*, Doc. 121 ¶ 313]. They claim that these officers "effectively accepted payments from [Sean] Williams in furtherance of the conspiracy through the corrupt use of search warrants and other unlawful collection efforts, including an extortion scheme" [*Id.*]. Plaintiffs allege that Defendant Turner "was motivated by [his] actual discriminatory animus towards women" [*Id.* ¶ 254]. Plaintiffs' factual averments do not contain any reference that Defendant Turner received payments [*See generally* Doc. 121].

12

tax returns, he produced his W-2 forms. He argued, however, information contained in ten years of joint tax returns is irrelevant. As to the remaining requests, Defendant Sparks offered to produce his bank statements showing all deposits from 2018 to the present and the total monthly withdrawal amounts. He asked that he be permitted to redact the specific withdrawals.

Plaintiffs objected to Defendant Sparks's offer to produce only bank deposits, stating that they need to review statements cohesively. They argued that they need to see "where that money goes."

As Defendant Sparks has acknowledged, the Amended Complaint contains direct allegations that he received money from Sean Williams [Doc. 121 ¶¶ 62–63]. Some financial discovery therefore is warranted, but the Court finds Plaintiffs' requests are overbroad.

Starting with the tax returns, Plaintiffs seek ten years of tax returns. While there is "no blanket privilege [that] bars tax returns from discovery," the Court "must at least be mindful of the emphasis that its sister courts place on the public-policy concerns" related to the discovery of tax returns. *Shelbyville Hosp. Corp.*, 2017 WL 1155046, at *4 (explaining how some courts have adopted a two-part test for the discovery of tax returns and how the Sixth Circuit "in one of its older opinions implicitly endorsed it" (citations omitted)).[6] Defendant Sparks has provided his sources of income from 2018 to 2023 [Doc. 265 p. 12 (citation omitted)]. Plaintiffs have not sufficiently explained why Defendant Sparks's joint tax returns—five years before the alleged conspiracy to the present—would contain information relevant and proportional to the needs of

---

[6] "Under this test, a party seeking tax returns has to show that they (1) are relevant and (2) contain information that is not obtainable from other sources." *Shelbyville Hosp. Corp.*, 2017 WL 1155046, at *4 (citations omitted). If the Court were to utilize this test, Plaintiffs have not shown that Defendant Sparks's tax returns would contain information "not obtainable from other sources."

13

the case where Defendant Sparks has already provided his sources of income for over half of this period. In other words, disclosure of his tax returns seems "unnecessary." *See Shelbyville Hosp. Corp.*, 2017 WL 1155046, at *4 (cautioning against "unnecessary" disclosure of tax returns); *see also Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997) ("Courts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery. Nevertheless, judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided." (citations omitted)); *Credit Life Ins. Co. v. Uniworld Ins. Co.*, 94 F.R.D. 113, 120 (S.D. Ohio 1982) ("Although tax returns are not privileged, there is a public policy against unnecessary disclosure, in order that taxpayers can be encouraged to file accurate returns." (citation omitted)). The Court therefore declines to order Defendant Sparks to produce his tax returns.[7]

With respect to the remaining requests, Defendant Sparks offered to produce his bank statements that show all of his deposits from 2018 to the present and his total monthly withdrawals. Plaintiffs argued that they need the individual withdrawal amounts for cohesion. But Plaintiffs have alleged that Sparks received money from Sean Williams [Doc. 121 ¶¶ 62–63], not that Sparks

---

[7] The Court has reviewed the cases Plaintiffs cite in support of their position, but they are not helpful. In one case, *Roche Diagnostics Corp. v. Shaya*, 679 F. Supp. 3d 588 (E.D. Mich. 2023), the plaintiff alleged that the defendant committed fraud, aiding and abetting fraud and conspiracy, unjust enrichment, and tortious interference with contract, and that as a result of his actions, he made $8 million in personal profits. *Id*. at 594. The parties disputed whether the tax returns were relevant under Rule 403 during the liability phase of the trial considering the defendant's acknowledgment that he received an economic benefit. *Id*. at 600. The court found them relevant during the liability phase stating that the size of the economic benefit was relevant to the motive and the alleged fraudulent scheme. *Id*. The court did not address the discoverability of the defendant's tax returns under Rule 26(b)(1). *Id*. The other two cases relied upon by Plaintiffs are criminal matters that discuss the relevancy of prior crimes, *see United States v. Sutton*, 732 F.2d 1483, 1493 (10th Cir. 1984), and whether the joinder of criminal defendants was appropriate, *see United States v. Carmichael*, 685 F.2d 903, 910 (4th Cir. 1982).

made illegal payments related to Sean Williams. Thus, at this time, the Court declines to order Defendant Sparks to produce anything more than what he has offered. *See Shiff v. Imagemaster Printing, LLC*, No. CV 18-12302, 2019 WL 12339932, at *1 (E.D. Mich. July 29, 2019) ("Pursuant to [the plaintiff's] suggestion, [the d]efendants may redact from the bank statements transactions that do not involve the flow of funds to [the defendant]").[8] The Court therefore **ORDERS** Defendant Sparks to produce within **fourteen days** of this Memorandum and Order his bank statements from 2018 to the present showing the deposits and the total monthly withdrawals; he may redact the individual withdrawal information.

Given that the Court has ordered Defendant Sparks to produce additional information, the Court must consider Plaintiffs' request for attorneys' fees as it pertains to him. *See* Fed. R. Civ. P. 37(a)(5)(A). Rule 37 provides that "the court must not order" attorney's fees if:

> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> **(iii)** other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

On May 15, 2024, Defendant Sparks offered to produce much of the information requested [*See* Doc. 265-2 p. 27]. In an email, Attorney Berexa, counsel for Defendant Sparks, discussed her position on the bank records, offered to produce all deposits for 2.5 years, and asked for further discussions [Doc. 265-2 p. 26]. A day later, on May 16, 2024, Attorney Baehr-Jones responded, "I think we have exhausted the meet and confer process at this point given the difference in our

---

8     After Plaintiffs review Defendant Sparks's production, to the extent additional information is warranted under Rule 26(b)(1), they may seek such relief after engaging in a meaningful meet and confer with Defendant Sparks.

15

positions" [*Id*. at 27]. On the same day, Attorney Berexa replied, "[Defendant Sparks] and his wife have joint checking accounts and have for years" and that while he will produce "deposit information for the accounts, . . . turn[ing] over all bank records, which would include his wife's every expense or swipe of a debt card, certainly seems intrusive and not proportional to the needs of the case" [*Id*. at 28]. She requested a meet and confer [*Id*.]. Later that afternoon, Attorney Baehr-Jones responded that she would try to contact her the next day [*Id*. at 29]. Instead, Plaintiffs filed their motion [Doc. 265 p. 2]. Upon reviewing the parties' email correspondence, they did not exhaust the meet and confer process prior to Plaintiffs seeking relief. Accordingly, an award of attorneys' fees is not warranted. *See* Fed. R. Civ. P. 37(a)(5)(A)(i) and (a)(5)(A)(iii).

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART, DENIES IN PART**, and **DENIES AS MOOT IN PART** Motion to Compel Production of (1) Defendants' Financial Records and (2) the Real Estate Contract Between City Manager Cathy Ball and Sean Williams [**Doc. 235**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge