UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| B.P., H.A., S.H., individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:23-CV-71-TRM-JEM ) |
| CITY OF JOHNSON CITY, *et al.*, | ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion for Protective Order Regarding Depositions of Unnamed Class Members and/or Motion to Quash Deposition Subpoenas Issued to Females 8, 9, and 12 ("Motion for Protective Order") [Doc. 245]. City of Johnson City, Tennessee ("Johnson City"), Justin Jenkins ("Jenkins"), Jeff Legault ("Legault"), Brady Higgins ("Higgins"), Kevin Peters ("Peters"), and Toma Sparks ("Sparks") responded to the motion [Docs. 271, 272, and 273], and Plaintiffs replied [Doc. 288]. Also before the Court is Plaintiffs' Motion to Strike [Doc. 308]. Defendant Johnson City responded in opposition to the motion [Doc. 314]. These matters are ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

On September 6, 2024, the parties appeared for a motion hearing.[1] Attorneys Julie Erickson and Heather Collins appeared on behalf of Plaintiffs. Attorneys Jonathan Lakey, K. Erikson Herrin,

---

[1] During the hearing, the Court also addressed Plaintiffs' Motion to Compel Production of (1) Defendants' Financial Records and (2) the Real Estate Contract Between City Manager Cathy Ball and Sean Williams [Doc. 235]. The Court adjudicated that motion by separate order [*See* Doc. 337].

and Emily Taylor appeared on behalf of Defendants Turner and Johnson City. Attorney Keith Grant appeared on behalf of Defendant Legault. Attorney Ben Allen appeared on behalf of Defendant Sparks. For the reasons stated below, the Court **DENIES IN PART AND GRANTS IN PART** Plaintiffs' motion for a protective order [**Docs. 245**] and **DENIES** Plaintiffs' motion to strike [**Doc. 308**].

I. PROCEDURAL HISTORY

Plaintiffs filed this action on June 21, 2023 [Doc. 1] and filed the Second Amended Class Action Complaint ("Amended Complaint") on March 1, 2024 [Doc. 121]. The Amended Complaint alleges that "[b]eginning in at least 2018 and continuing to 2021, Sean Williams, a known drug dealer and convicted felon, conspired with Alvaro Fernando Diaz-Vargas and others to drug and rape women, and sexually exploit children, in his apartment in downtown Johnson City" [*Id*. ¶ 18]. Plaintiffs state that "Defendant [Johnson City Police Department] officers conspired with [Sean] Williams to participate in a venture, the purpose of which was to recruit, entice, harbor, provide, obtain, maintain, and solicit women and children, who had not attainted the age of 14 years, for the purpose of engaging in commercial sex acts" [*Id*. ¶ 57]. They state that Johnson City Police Department ("JCPD") officers were aware of the complaints that Sean Williams had raped women and that "officers took overt acts in furtherance of Williams'[s] sex trafficking venture" [*Id*. ¶¶ 95–143]. And despite being aware of such complaints, Plaintiffs allege that the JCPD failed to investigate them [*Id*. ¶¶ 232–33]. This failure, according to Plaintiffs, "was motivated, in part, by the officers' discriminatory animus towards women" [*Id*. ¶ 242]. In addition, Plaintiffs allege that several Defendants accepted payments from Sean Williams "with either the implied or explicit understanding that Defendants would shield

[him], permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments" [*Id.* ¶ 313].

Plaintiffs represent three classes: (1) "All individuals, including minors, who were sexually abused, drugged, or trafficked by Sean Williams or Alvaro Fernando Diaz-Vargas"; (2) "All members of the Sex Trafficking Survivor Class who were sexually assaulted by Sean Williams following the first report to the JCPD of Sean Williams'[s] alleged sexual violence on or about November 7, 2019"; and (3) "All women, including minors, who reported sexual abuse or trafficking by any person to JCPD from January 1, 2018, to April 25, 2023" [*Id.* ¶ 298]. They allege (1) sex trafficking claims, 18 U.S.C. §§ 1591, 1594, and 1595; (2) obstruction of enforcement, 18 U.S.C. §§ 1594, 1595, and 1591(d); (3) aiding and abetting a sex-trafficking venture, 18 U.S.C. §§ 2, 1591(a)(1) & (2), and 1595; (4) conspiracy to commit violations of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1594(c), 1591, and 1595; (5) violations of 42 U.S.C. § 1983; (6) liability under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205; (7) negligence for the failure to train; and (8) negligence for the failure to supervise [*Id.* ¶¶ 311–423].

On August 21, 2024, United States Chief District Judge Travis A. McDonough entered an Order granting the motions to dismiss filed by Jenkins, Peters, and Higgins [Doc. 301]. Chief Judge McDonough granted in part and denied in part Defendant Sparks's motion to dismiss and denied Defendant Legault's motion to dismiss [*Id.*].

## II. BACKGROUND

The disputes before the Court relate to Defendants' subpoenas for the depositions of Females 8, 9, and 12 (collectively, the "Females") [*See* Doc. 245]. "[O]n March 12, 2024, . . . Defendants issued deposition notices . . . to depose Female 9 on May 23, 2024[,] as well as Female

12 on June 12, 2024" [Doc. 307-1 ¶ 4]. Due to a scheduling conflict, Plaintiffs' counsel, Attorney Baehr-Jones, canceled Female 9's deposition but stated, "I am happy to find some additional dates over June and July, so that we can reschedule [Female 9] sooner" [*Id*. ¶ 5 (brackets in original)]. According to Defendants, Plaintiffs' counsel also unilaterally canceled Female 12's deposition [*Id*. ¶ 6].

Subsequently, on June 20, 2024, the parties met and conferred via telephone over deposition dates, and Defendants stated that they would like "to depose Female 9 and Female 12 on July 8 and 9, and Female 8 on July 17 if that date became available because of ongoing motion practice between Plaintiffs and a Third-Party deponent" [*Id*. ¶ 8]. Prior to the conclusion of the telephone call, "Plaintiffs' counsel announced they would agree to produce these three [individuals] but only if the Defendants agreed to a [p]rotective [o]rder that Plaintiffs' counsel stated they would subsequently describe" [*Id*.]. The parties reached an impasse on Plaintiffs' proposed deposition parameters [*Id*.]. On June 26, 2024, Defendants served subpoenas for the depositions of the Females [*Id*. ¶ 9]. "[They understood] that Plaintiffs could then proceed to file a motion for protective order as they said they would in the June 20 call" [*Id*. ¶ 10].

Plaintiffs now seek "an order prohibiting depositions of unnamed class members absent leave of Court, quashing the deposition subpoenas of Females 8, 9, and 12, and imposing the appropriate and necessary restrictions requested [in their proposed protective order, Doc. 246-1] should the Court determine at any point in the future that Defendants have satisfied the heavy burden applicable here" [Doc. 245 pp. 20–21]. For grounds, Plaintiffs state that Defendants deposed the named Plaintiffs and that their depositions were hostile, intimidating, abusive, re-traumatizing, and confrontational and that defense counsel asked irrelevant questions [*Id*. at 5–10]. But regardless, Plaintiffs state that Defendants did not obtain leave of Court to take these

4

depositions, and therefore, the Court must quash the subpoenas [*Id*. at 10–13]. Even if Defendants had requested leave, Plaintiffs submit they cannot establish their burden for deposing the three unnamed class members [*Id*. at 13–19]. To the extent the Court allows the depositions, Plaintiffs ask that the Court impose certain restrictions [*Id*. at 19–20; *see also* Doc. 245-1].

Defendants respond that Plaintiffs originally consented to these depositions [Doc. 271 pp. 1–3].[2] They argue that the Females are not ordinary unnamed class members but instead are more akin to fact witnesses [Doc. 271 pp. 3–5, 12–17]. Given that, they claim that they are entitled to take the depositions [*Id*.]. To the extent they must make a particularized showing of their need for these depositions, however, Defendants argue that they have met that burden [*Id*. at 17–20].

Plaintiffs reply that the depositions of the named Plaintiffs were "abusive and harassing" [Doc. 288 p. 2]. They state that "[t]he factual allegations in this case do not depend on the testimony of unnamed class members" and that "[they] do not intend to call Females 9 and 12 as witnesses to testify at trial, and they anticipate calling Female 8 for extremely limited purposes" [*Id*. at 3 (emphasis and footnote omitted)]. While they acknowledge that they originally agreed to the depositions of Females 9 and 12, they argue that they changed their position after Defendants deposed the named Plaintiffs [*Id*. at 9]. Regardless, Plaintiffs state their original agreement is not relevant to the issues before the Court [*Id*.].

On July 31, 2024, the Court set the matter for a hearing.[3] Later, on August 30, 2024, Defendant Johnson City filed a Notice of Filing Documents in Support of Response of Johnson City, Tennessee to Plaintiffs' Motion to Quash Subpoenas or for Protective Order ("Notice")

---

[2] Defendants Legault and Sparks adopt the response filed by the other Defendants [*See* Doc. 272 p. 1 n.1, Doc. 273 p. 19].

[3] The Court originally scheduled this hearing for August 22, 2024, but rescheduled the matter for September 6, 2024.

5

[Doc. 307]. The Notice contained two exhibits filed in support of Defendant Johnson City's response in opposition to Plaintiffs' Motion for Protective Order ("Response"): (1) the Declaration of K. Erikson Herrin ("Herrin Declaration") [Doc. 307-1] and (2) excerpts from Plaintiffs' Rule 26(a) Supplemental Initial Disclosure as to Defendants Brady Higgins and Jeff Legault ("Initial Disclosures") [Doc. 307-2].

Plaintiffs filed a Motion to Strike, requesting that the Court strike the Notice under Rule 12(f) of the Federal Rules of Civil Procedure [Doc. 308]. Plaintiffs state that the parties had completed briefing the Motion for Protective Order and that the Notice violates Local Rule 7.1 [*Id*. at 1–2]. "Moreover," Plaintiffs contend, "the content presented is redundant, immaterial, or impertinent, as demonstrated by the fact that [Defendant Johnson] City chose not to include these documents with its opposition" [*Id*. at 2]. To the extent the Court does not strike the Notice, "Plaintiffs request leave to file a brief response" [*Id*.].

Defendant Johnson City responds in opposition to the motion [Doc. 314]. It argues that Rule 12(f) is not the proper vehicle given that it applies only to pleadings [*Id*. at 3]. To the extent the Court construes Plaintiffs' request as a motion to disregard the Notice, Defendant Johnson City requests that the Court not disregard its Notice because it filed it "for the convenience of the parties and the Court" [*Id*. at 2]. While Defendant Johnson City acknowledges that "one could argue that the filing of the [its] [e]xhibits technically violates the local rules, they are unquestionably relevant and are not otherwise substantively infirm" [*Id*. at 5]. According to Defendant Johnson City, there is no prejudice by allowing its Notice because the "[Herrin] Declaration simply repeats facts set forth in [its] Response, and the Plaintiffs' Initial Disclosures were explicitly cited in [its] Response and were prepared by the Plaintiffs" [*Id*.]. "[P]resumably[,]" Defendant Johnson City argues, "Plaintiffs' Initial Disclosures could be introduced as an exhibit during the hearing" [*Id*.].

6

Defendant Johnson City therefore argues that filing the Initial Disclosures earlier did not harm Plaintiffs [*Id.*]. "[T]o the extent there has been a violation of the [L]ocal [R]ules, [Defendant Johnson] City . . . requests that the Court exercise its discretion to enlarge the time period to allow for the filing of [its] [e]xhibits" [*Id.* (citation omitted)]. With respect to Plaintiffs' request to file a response, Defendant Johnson City states that "a response is not necessary" because the "[e]xhibits do not contain any information that was not also included in [its] Response" [*Id.*].

### III. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs seek to strike the Notice pursuant to Rule 12(f). Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As the Court has previously explained, Rule 12(f) pertains only to "pleadings" [Doc. 188 pp. 1–2 (citations omitted)]. The Notice is not a pleading. *See* Fed. R. Civ. P. 7(a) (defining what constitutes a "pleading"). The Court cannot strike the Notice under Rule 12(f), but it will construe Plaintiffs' motion as a request to disregard the Notice. *See Osborne v. Nicholas Fin., Inc.*, No. 3:12-00185, 2014 WL 12774230, at *1 (M.D. Tenn. Dec. 5, 2014) ("Nonetheless, other Courts have construed a motion to strike as a request to disregard the disputed material." (citations omitted)).

Local Rule 7.1(a) provides that briefing is limited to an opening brief, an answering brief, and a reply brief. E.D. Tenn. L.R. 7.1(a). Local Rule 7.1(d) states:

> No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed. Any response to a supplemental brief shall be filed within 7 days after service of the supplemental brief and shall be limited to no more than 5 pages.

E.D. Tenn. L.R. 7.1(d).

The Court's Local Rules have "the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quoting *Weil v. Neary*, 278 U.S. 160, 169 (1929)). The Court has "discretion in choosing how to enforce them." *Romine v. Uber Techs., Inc.*, No. 3:16-CV-371, 2017 WL 11494685, at *1 (E.D. Tenn. Jan. 23, 2017); *see also Valassis Commc'ns, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996) ("[T]he district court is the final arbiter of its own local rules." (citations omitted)). It also "has broad discretion to overlook violations." *SmartBank v. Cartron*, No. 4:19-CV-00062, 2020 WL 1897168, at *4 (E.D. Tenn. Apr. 16, 2020) (citations omitted).

Construing Defendant Johnson City's filing of the Notice as a violation of the Local Rules, the Court exercises its discretion to overlook this violation. The Notice does not add new arguments for the Court to consider. Instead, Defendant Johnson City submitted exhibits relating to issues it referenced in its Response. As Defendant Johnson City explains, "there is no prejudice because the [Herrin] Declaration simply repeats the facts sets forth in [its] Response, and the Plaintiffs' Initial Disclosures were explicitly cited in [its] Response and were prepared by the Plaintiffs themselves" [Doc. 314 p. 5]. *See Larson v. Wal-Mart Stores, Inc.*, No. 3:08-CV-86, 2008 WL 4924728, at *3 (E.D. Tenn. Nov. 14, 2008) (declining to disregard an affidavit even though the "plaintiffs did not completely follow the correct procedure in placing this affidavit in the record").

Plaintiffs seek to file a response to the Notice [Doc. 308 p. 2]. The Court finds a response is not necessary. The Notice contains information that was already referenced in Defendant Johnson City's Response, the parties appeared before the Court on September 6 for oral argument on the underlying issues, and they later filed a Joint Status Report [Doc. 317].

## IV. PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

Plaintiffs argue that Defendants failed to seek leave of Court prior to issuing the subpoenas for the Females' depositions [Doc. 245 p. 13]. They assert such "failure alone is dispositive" [*Id.* (citation omitted)]. At the hearing, Defendants explained that they did not request leave because the parties originally agreed to proceed with these depositions [Doc. 342 pp. 56–57, 59–60].

The Eastern District of Tennessee has held that "in a class action, even a putative class action, the party seeking discovery from an unnamed class member must first show a particularized need for said discovery and first seek permission from the court." *In re Skelaxin (Metaxalone) Antitrust Litigation*, 292 F.R.D. 544, 550 (E.D. Tenn. 2013) (considering the merits of the matter but noting that the failure to seek the court's permission could serve as a basis to grant the motion for a protective order). Defendants did not obtain leave from the Court to take the depositions of the Females. But the parties agreed to these depositions. Plaintiffs initially agreed to these depositions and scheduled the depositions of Female 9 and 12 for May 23, 2024, and June 12, 2024, respectively [Doc. 307-1 ¶ 4]. Plaintiffs' counsel canceled those depositions due to scheduling conflicts and indicated that they would be rescheduled [*Id.* ¶¶ 5–6]. In June 2024, when the parties discussed rescheduling Female 9's and 12's depositions and setting Female 8's deposition, Plaintiffs' counsel said they would produce these individuals for a deposition upon agreement of a protective order [*Id.* ¶ 8]. Plaintiffs' counsel later sent Defendants a proposed protective order with parameters for the depositions [Doc. 246-2]. The parties could not agree on the parameters, so Defendants served the subpoenas for the Females' depositions "understanding that Plaintiffs could then proceed to file a motion for protective order as they said they would in the June 20 call" [Doc. 307-1 ¶ 9]. Plaintiffs then filed their motion [Doc. 245].

As the Court has previously explained:

> "Courts will enforce discovery agreements reached between two parties." *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 WL 1857080, at *5 (E.D. Mich. Apr. 23, 2019) (citing *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. and Prod. Liab. Litig.*, No. MD 16-2695, 2018 WL 3972909, at *11 (D.N.M. Aug. 18, 2018)), *report and recommendation adopted by* No. 15-13842, 2019 WL 1790250 (E.D. Mich. Apr. 24, 2019); *see also Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 478 (S.D. Ohio 2014) ("[Rule] 29 permits the parties to make agreements about discovery."). "[T]he Court has an obligation to read any purported written discovery agreement fairly and reasonably, and to place the burden of persuasion on the party asserting that an agreement has been reached." *Libertarian Party of Ohio*, 302 F.R.D. at 478 (citation omitted).

*Dahl v. Turner*, No. 2:22-CV-72, 2024 WL 4005957, at *7 (E.D. Tenn. Mar. 12, 2024).

Defendants have shown an agreement was reached to take the three depositions, and such agreement was appropriate under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 29(a) (explaining that the parties may stipulate that "a deposition may be taken before any person, at any time or place, on any notice, and in the manner specific"). In March 2024, Defendants issued deposition notices for Females 9 and 12 "consistent with the discussions counsel for the [p]arties engaged in during February 2024" [Doc. 307-1 ¶ 4]. Later, in May 2024, "[t]he [p]arties traded charts of the previously agreed upon schedule," and Plaintiffs' proposed schedule included Female 9's deposition [*Id.*]. Although Female 9's and Female 12's depositions were ultimately canceled by Plaintiffs' counsel, in June 2024, the parties met and conferred about rescheduling them [*Id.* ¶ 8]. During this meet and confer, the parties also discussed Female 8's deposition [*Id.*]. At the conclusion, Plaintiffs' counsel "agree[d] to produce these three clients" if Defendants agreed to a protective order [*Id.*]. It therefore appears the parties agreed to these depositions subject to

10

Case 2:23-cv-00071-TRM-JEM   Document 345   Filed 09/24/24   Page 10 of 19   PageID #: 8549

Plaintiffs' request for a protective order[4] [*See id*. ¶¶ 8–9]. Plaintiffs do not dispute they agreed to these depositions, and when asked at the hearing why their position changed, Plaintiffs' counsel said it was the conduct of defense counsel at the depositions of the named Plaintiffs [Doc. 342 pp. 73–74]. The Court is inclined to enforce the parties' agreement to take the three depositions and will address whether any protective measures shall be imposed for these depositions below. *See In re Santa Fe Nat. Tobacco Co. Mktg & Sales Pracs. And Prod. Liab. Litig.*, No. MD 16-2695, 2018 WL 3972909, at *11 n.9 (D.N.M. Aug. 18, 2018) (explaining the rationale for enforcing discovery agreements: "If the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them" (citations omitted)).

But even if the parties had not agreed to take the depositions of the Females, the Court finds Defendants' argument that the Females are not "ordinary unnamed class members" persuasive and would find their depositions warranted on this basis. *See Hu v. BMW of N. Am. LLC*, No. CV184363, 2022 WL 13837791, at *3 (D.N.J. Oct. 21, 2022) ("Even absent class members can be subject to discovery if they were once named plaintiffs, provided the discovery is relevant and not unduly burdensome."); [*see also* Doc. 271 pp. 3–10, 12–17; *see also* Doc. 272 pp. 1–2 ("Females 8, 9, and 12 each have information that is clearly relevant to the claims and defenses generally, not just to class certification, and their depositions are crucial, particularly to the individual Defendants."); Doc. 273 pp. 1–2 ([T]hese are individuals that may well submit testimony in support of Plaintiffs' claims in this lawsuit.")]. While "most courts have found that 'discovery from absent class members is not forbidden but rather is disfavored,'" *Hu*, 2022 WL 13837791, at *2 (quoting *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18CV2017,

---

[4] From the record before the Court, it appears that during the scheduling of these depositions, Plaintiffs never raised the requirement that Defendants needed to obtain leave of court to take these depositions.

11

2022 WL 597261, at *6 (N.D. Ohio Feb. 28, 2022)), "courts have recognized that special circumstances may exist warranting discovery from an absent class member," *Coffey v. WCW & Air, Inc.*, No. 3:17CV90, 2019 WL 9089615, at *2 (N.D. Fla. July 30, 2019) (citations omitted). "One such circumstance[] is where the absent class member is identified as a fact witness or has otherwise been injected into the litigation, submitted declarations or are represented by plaintiff's counsel." *Id.* (citations omitted); *see also Antoninetti v. Chipotle, Inc.*, No. 06CV2671, 2011 WL 2003292, at *1 (S.D. Cal. May 23, 2011) ("Although Courts do not usually allow discovery from absent class members, the rules pertaining to such discovery are flexible, especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation." (citations omitted)); *Moreno v. Autozone, Inc.*, No. C-05-4432, 2007 WL 2288165, at *1 (N.D. Cal. Aug. 3, 2007) ("Discovery of absent class members is generally not allowed. However, such discovery may be taken even prior to certification if the proponent of the deposition demonstrates discovery is not sought to take undue advantage of class members or to harass class members, and is necessary to the trial preparation (or in this instance for preparation of the opposition to class certification)." (citations omitted)).

Here, Defendants have pointed to facts showing that the Females have injected themselves in this litigation. Plaintiffs identified the Females in their Initial Disclosures [Doc. 307-2 ¶ 1]. *See Coffey*, 2019 WL 9089615, at *2 (finding that the unnamed class member was "more accurately described as a fact witness rather than an absent or putative class member" given that the plaintiffs identified her in response to discovery as someone having substantive knowledge about the case); *Brown v. Wal-Mart Store, Inc.*, No. 09-cv-03339, 2018 WL 339080, at *1 (N.D. Cal. Jan. 9, 2018) (permitting the depositions of eight absent class members identified as witnesses in plaintiffs' Rule 26 disclosure because they had been "injected" into the litigation). Females 9 and 12 also served

12

as named representatives for several months.[5] *See In re Drassinower*, No. 3:19-CV-1715, 2021 WL 3772328, at *7 (S.D. Cal. Aug. 25, 2021) ("The Court agrees with [the d]efendant that 'the person who [it] is seeking to depose is not a mere absent class member but is a former named plaintiff who has injected herself into the litigation.'" (citation omitted)).[6]

Further, the Females are specifically referenced in the Amended Complaint [*See* Doc. 121 ¶¶ 49–56; 81, 109–115, 130–39, 175–83, 235, 244, 257, 329(g), 385]. Plaintiffs allege that Female 8 agreed to clean Sean Williams's apartment for cash [*Id*. ¶ 49]. She agreed to do other tasks for money, "as well as other benefits like drugs and alcohol while they were hanging out" [*Id*. ¶ 50]. During this time, Plaintiffs allege that Sean Williams drugged and sexually assaulted Female 8 [*Id*. ¶ 55]. He also sexually exploited Female 8's minor son [*Id*. ¶ 56].

With respect to Female 9, Plaintiffs claim that she attempted to report her rape to JCPD on October 20, 2020 [*Id*. ¶ 109].[7] She called Defendant Sparks and reported the sexual assault, but he told her that "she should wait to make a police report until she received the rape kit results" [*Id*. ¶ 111]. Plaintiffs allege that Female 9 followed up with Defendant Sparks on at least two occasions, but she did not hear back from him, and she never received the results of her rape kit [*Id*. ¶¶ 112, 115]. "[O]n December 7, 2022, JCPD officers obtained information that Female 9 was meeting with civil rights attorneys at her public housing unit in Johnson City" [*Id*. ¶ 175]. She also met

---

[5] Females 9 and 12—originally identified as Jane Does 5 and 7—were named as class representatives in the original Complaint that Plaintiffs filed on June 21, 2023 [*See* Doc. 1]. On December 12, 2023, Plaintiffs requested leave to amend the Amended Complaint, which dropped Females 9 and 12 as named class representatives [Doc. 93]. The Court ruled on that motion on February 23, 2024 [Doc. 119].

[6] The putative class member in *In re Drassinower* had served as a named plaintiff for approximately four months. *In re Drassinower*, 2021 WL 3772328, at *1.

[7] According to Defendant Sparks, Female 9 is the sister of Plaintiff H.A. [Doc. 273 p. 12 (footnote omitted)]. Plaintiff H.A. testified that she immediately called Female 9 after the sexual assault [*Id*. at 13 (citation omitted)].

13

with an agent from the Federal Bureau of Investigation ("FBI") [*Id.* ¶ 176]. Plaintiffs allege that the following events occurred:

> Either late at night on April 18 or early in the morning on April 19, 2023, Female 9 was standing outside Tipton's Street Pub in downtown Johnson City with a male companion, waiting for her ride in an otherwise empty parking lot, when at least two JCPD patrol cars drove up and stopped. JCPD officers approached the male to handcuff him. Female 9 pulled out her cellphone to start videoing as there appeared to be no legitimate law enforcement purpose for this encounter. One of the officers took hold of her arm. When she pulled her arm back, the officer proceeded to physically assault her. Her head hit the ground so hard, she urinated herself. While she was on the ground, several officers pinned her down while other officers continued to assault her. The next day, she had bruises all over her body.

[*Id.* ¶ 178]. Plaintiffs state that the police report does not provide probable cause for the arrest of Female 9's companion [*Id.* ¶ 179]. In addition, the police report stated that the officers found cocaine in Female 9's backpack, but she "did not possess any narcotic substance in her backpack and JCPD officers planted the evidence" [*Id.* ¶ 180]. She was later evicted and lost custody of her children due to the incident [*Id.* ¶¶ 181–82]. "Defendant Legault was the supervisory patrol officer who signed off on the police report" [*Id.* ¶ 183]. Plaintiffs allege, "Upon information and belief, the unlawful arrest, physical assault, and subsequent eviction of Female 9 was part of an effort by JCPD officers, including Defendant Legault, to retaliate against and intimidate Female 9, who was a witness in an ongoing federal sex trafficking investigation" [*Id.* (footnote omitted)].[8]

Turning to Female 12, Plaintiffs allege that Sean Williams raped her on November 24, 2020 [*Id.* ¶¶ 130–32]. She reported her rape to the FBI "because she did not trust JCPD to take the sexual assault seriously" [*Id.* ¶ 133]. The FBI agent called Defendant Sparks, who accompanied

---

[8] As Defendant Legault argues, "Female 9's very specific allegations appear to be a basis for the overall conspiracy Plaintiffs allege, and the only specific allegation that ties [Defendant] Legault to this alleged conspiracy" [Doc. 272 p. 2].

14

Female 12 to the hospital for a rape kit [*Id*. ¶¶ 135–36]. "After leaving the hospital, Female 12 went to JCPD offices where she spoke with a female investigator and/or attorney and explained that she wished to press charges" [*Id*. ¶ 136]. According to the allegations, "[Defendant] Sparks told her falsely that she was the first woman who wished to go forward with charges, claiming the other women were too scared" [*Id*. ¶ 137]. Female 12 never received the results of her rape kit and charges were never "brought against [Sean] Williams for Female 12's sexual assault" [*Id*. ¶ 138]. In August 2023, the FBI told Female 12 "that [Sean] Williams had taken images and/or videos of himself sexually assault her[,]" and such "images were found on [his] digital devices at the time of his arrest in April 2023" [*Id*. ¶ 139].

Plaintiffs argue that they will not be calling Females 9 or 12 as witnesses at trial and that they will call Female 8 only for limited purposes. Plaintiffs' decision not to call them to trial, or to call them only for limited purposes, does not mean that the Females do not possess relevant knowledge about the facts of the case. *In re Drassinower*, 2021 WL 3772328, at *3 (ordering the absent class member's deposition, despite the plaintiffs' contention that they do not intend to call her to trial); *Brown*, 2018 WL 339080, at *1 ("Plaintiffs claim that their testimony would only be used for rebuttal purposes, but this does not change the fact that Plaintiffs may rely on the proposed deponents as witnesses.").

In sum, the detailed allegations about the Females in the Amended Complaint, their identification in Plaintiffs' Initial Disclosures, and Female 9's and Female 12's previous roles as named plaintiffs support Defendants' argument that the Females are not ordinary absent class members but instead have injected themselves into this litigation such that their depositions are warranted. *See In re Drassinower*, 2021 WL 3772328, at *8 (allowing the deposition of a putative class member noting that she had alleged facts pertaining to the allegations in the case).

Plus, Plaintiffs' counsel represents the Females [*See* Doc. 342 pp. 55–56]. *Coffey*, 2019 WL 9089615, at *2 (noting that courts should consider whether an absent class member is represented by the plaintiffs' counsel).

That brings the Court to Plaintiffs' request for deposition parameters in the form of a protective order under Rule 26(c) of the Federal Rules of Civil Procedure [*See* Doc. 246-1]. Rule 26(c) provides, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery"; "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(A) and (D). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)). The party requesting the protective order, here Plaintiffs, has the burden of establishing good cause. *Id*.

Plaintiffs submitted a proposed protective order with the following terms regarding the depositions of Females 8, 9, and 12:

> a) The deposition shall be limited to 1.5 hours of defense counsel examination, and .5 hours of redirect.
>
> b) Defendants will designate one attorney to examine the witness. No other attorneys for Defendants will examine the witness.
>
> c) Defendants and their employees will watch the deposition remotely.
>
> d) The witness will have the option to have a support person present.
>
> e) Questions regarding the following topics will not be permitted:
>    (i) The witness's sexual conduct or any sexual assaults (if applicable)
>    (ii) Drug or alcohol use (if applicable)

  (iii) Child custody (if applicable)
  (iv) Domestic abuse or restraining orders (if applicable)
  (v) Mental health issues, diagnoses, and treatment thereof (if applicable)

[Doc. 246-1]. Defendants offer the following parameters:

1. Defendants agree to limit each deposition to six hours of testimony[.]

2. Defendants agree that only counsel for the Defendants will be in the deposition room. The individually named Defendants and the representatives from the City will observe the deposition via a Zoom link.

3. Defendants agree to not ask questions regarding the following topics, unless the witness testifies in a way that opens the door to testimony on these topics:
 a. Child custody; and
 b. Domestic abuse or restraining orders, unless the allegations were investigated by JCPD[.]

4. The Defendants continue to make clear that the agreement reached regarding the conditions for the depositions of the class representatives apply to these depositions, which include the following:
 a. Only one attorney will ask the witnesses about the specific details of their sexual assault(s), as alleged in the Second Amended Complaint;
 b. The witness can have a support person sit next to her;
 c. Counsel for the witness can sit next to her;
 d. The witness can take as many breaks as needed; and
 e. Any testimony regarding sensitive information, including details of a sexual assault, will be designated "attorney's eyes only."

[*See* Doc. 317 pp. 5–6]. There is some agreement here, and the Court will enforce those agreements. *Dahl*, 2024 WL 4005957, at *7 ("Courts will enforce discovery agreements reached between two parties." (quoting *J.S.T. Corp.*, 2019 WL 1857080, at *5)); *Gaddis v. City of Detroit*, No. 2:18-CV-13763, 2020 WL 2085068, at *2 (E.D. Mich. Apr. 30, 2020) ("Moreover, the Court

will enforce any stipulation, agreements or resolutions made within the relative portion of the parties' joint statement." (citation omitted)).

What remains in dispute is Plaintiffs' request for an order requiring "Defendants [to] seek and obtain leave of court prior to seeking to conduct the deposition of any unnamed putative class member in this case" [Doc. 246-1 p. 2], as well as the following requests by Plaintiffs: that (1) "[t]he deposition[s] be limited to 1.5 hours of defense counsel examination, and .5 hours of redirect[,]" (2) "Defendants will designate one attorney to examine the witness" and that "[n]o other attorneys for Defendants will examine the witness[,]" and (3) inquiries into certain topics, such as the witnesses' sexual conduct or any sexual assaults, drug or alcohol use, or mental health issues, diagnoses, and treatment thereof, not be permitted [Doc. 246-1 p. 3].

This Court has already held that "in a class action, even a putative class action, the party seeking discovery from an unnamed class member must first show a particularized need for said discovery and first seek permission from the court." *In re Skelaxin (Metaxalone) Antitrust Litigation*, 292 F.R.D. at 550. A protective order in this regard, therefore, is not necessary. As for Plaintiffs' request to limit each deposition to 1.5 hours for defense counsel examination and .5 hours for redirect, the Amended Complaint includes specific allegations about the Females, and there is no dispute that they have relevant knowledge about the facts underlying the claims in this case. The general rule is that parties are afforded seven hours to depose a witness. Fed. R. Civ. P. 30(d)(1). Defendants' agreement to limit each deposition to six hours is reasonable in light of the allegations in the Amended Complaint and the number of parties involved. And the parties have agreed to allow the Females to take as many breaks as necessary. Plaintiffs also request that Defendants designate one attorney to examine the witness, but Defendants have different interests in this case [*See e.g.*, Doc. 272 p. 2 (discussing how Female 9's allegations are the only

18

ones that tie Defendant Legault to the alleged conspiracy)]. Defendants have also agreed to some limitations with regard to certain topics, and the Court declines to impose any additional restrictions considering the allegations in the Amended Complaint; to the extent an issue arises during the depositions, the parties may contact Chambers if they cannot resolve any disputes. The Court will therefore impose a protective order consistent with Defendants' offer, but Plaintiffs have not shown good cause to place the additional requested parameters on the depositions.

The Court expects all counsel to conduct themselves in a civil and professional manner during the depositions. To the extent the depositions are taken "in a manner that unreasonably annoys, embarrasses or oppresses the deponent[s,]" the Females have recourse under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 30(d)(3).

## V. CONCLUSION

For the reasons explained above the Court **DENIES IN PART AND GRANTS IN PART** Plaintiffs' Motion for Protective Order Regarding Depositions of Unnamed Class Members and/or Motion to Quash Deposition Subpoenas Issued to Females 8, 9, and 12 [**Doc. 245**] and **DENIES** Plaintiffs' Motion to Strike [**Doc. 308**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge