IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., et al.,

    **Plaintiffs,**

v.                                                  No: 2:23-cv-00071-TRM-JEM

**CITY OF JOHNSON CITY, TENNESSEE, et al.,**

    **Defendants.**

_____/

## OPPOSITION IN RESPONSE TO JUSTIN JENKINS' MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER (ECF 318)

Plaintiffs seek to take the deposition of Justin Jenkins, a Johnson City Police ("JCPD") officer who, until very recently, was a named defendant and whose actions are integral to the allegations in this case. Financial records obtained for Jenkins contain evidence of the following financial activity during the relevant time period: (1) cash deposits totaling $32,428.04; (2) a pattern of loan repayments indicative of money laundering; and (3) asset purchases and deposits above known legitimate sources of income. Jenkins moves to quash Plaintiffs' subpoena or, in the alternative, for a protective order foreclosing Plaintiffs from asking him about these financial records. Because deposition testimony regarding Jenkins' financial records is likely to lead to the discovery of admissible evidence, the Court should deny Jenkins' motion.

### RELEVANT FACTUAL BACKGROUND

Plaintiffs allege that JCPD officers engaged in a scheme to benefit financially from Sean Williams and his company, through his former business partner, Female 4, in exchange for turning a blind eye to Williams' criminal conduct, including repeated sexual assaults of women and children in Johnson City. ECF 121, Second Amended Compl. ("SAC"), ¶¶ 57-183, 311-66.

1

Plaintiffs further allege that JCPD officers obstructed investigation into Williams' sex trafficking venture. *Id*. ¶¶ 80, 87, 313-16. The alleged misconduct by JCPD began in at least 2018 and continued to at least 2021. *See id*. ¶¶ 18-56. For this conduct, Plaintiffs brought claims under the Trafficking Victims Protection Act ("TVPA"), including under a beneficiary theory of liability (Count I) and under 18 U.S.C. §§ 1595, 1591(d) (Count II). *Id.*¶¶ 311-337. As set forth below, evidence adduced following the filing of the SAC, however, supports that the extortion scheme continued until at least June 2022.

On February 23, 2024, the Court granted Plaintiffs' motion to amend, permitting Plaintiffs to file the SAC. In so ruling, the Court stated that Plaintiffs had set forth facts supporting a beneficiary theory of liability under the TVPA as to Defendant Toma Sparks. Specifically, the Court held:

> Plaintiffs allege that Sparks interfered with the investigation into Williams's sex trafficking conspiracy for the purposes of receiving a financial benefit (Doc. 93-1, at 25–31), and it is sufficient for purposes for the TVPA to allege a defendant received a financial benefit indirectly related to the trafficking scheme. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio, 2019) (rejecting a more specific definition of financial benefit under the TVPA that would require showing that the trafficker provided the benefits to the defendant because of the defendant's facilitation of the sex trafficking).

ECF 119 at 15 n.2. The Court did not grant leave, however, for Plaintiffs to file TVPA claims alleging beneficiary liability as to Defendants Brady Higgins and Jeff Legault, reasoning that Plaintiffs had not alleged with sufficient particularity how these defendants received a specific benefit. *Id.* at 15.

Based on the Court's order, Plaintiffs conceded that they had similarly not stated a claim under Count I (beneficiary liability under the TVPA) as to then-Defendant Jenkins given the facts alleged in the SAC. ECF 176 at 3 n.3. Plaintiffs asked that any claims be dismissed without prejudice, however, so that they could amend based on new evidence adduced following the

2

filing of the SAC. *Id.* at 7 n.4. (Plaintiffs filed the SAC on December 12, 2023, *see* ECF 93, before receiving any discovery from Defendant Johnson City, including their own police reports, victim statements, and recorded interviews; before obtaining any financial records or call logs; and before taking any depositions. Baehr-Jones Decl. ¶ 3.) On August 21, 2024, the Court dismissed the TVPA claims as to Defendant Jenkins. ECF 301 at 27. In the same order, the Court affirmed Plaintiffs' theory of liability under §§ 1595, 1591(d), namely, that Plaintiffs could bring a civil cause of action for violations of § 1591(d), and that the statute did not require a federal investigation or prosecution to have commenced before a violation of § 1591(d) could occur. *Id.* at 8-9. None of the Plaintiffs' claims against any defendant were dismissed with prejudice. *Id.* at 27.

Evidence adduced following the filing of the SAC supports new allegations that Jenkins benefited financially from his participation in Williams' sex trafficking venture, namely, by conspiring to destroy and suppress evidence to cover up Williams' crimes in exchange for cash payments.[1] Between 2020 and 2022, for instance, Jenkins received $32,428.04 in cash, which he deposited into his account with Eastman Credit Union, as set forth in the below summary chart.

---

[1] Plaintiffs have also adduced additional evidence showing Jenkins took a larger role in the obstruction conspiracy than what was alleged in the SAC, including, among other new facts, that Jenkins was one of the officers who served the September 19, 2020, search warrant on Williams' apartment, which resulted in the seizure of digital devices containing video and image evidence of Williams' sex trafficking crimes. Baehr-Jones Decl. ¶ 9, Exh. 1. This evidence sat in JCPD custody for two and a half years without being searched, despite knowledge on the part of Jenkins and other JCPD officers that an additional search warrant was needed. Rather than obtain this warrant, JCPD officers intentionally held the evidence unlawfully, permitting Williams to evade accountability and continue to perpetrate his crimes. *See* ECF 299 at 4-5. Plaintiffs intend to set forth these additional facts in the Third Amended Complaint and re-allege Count II as to Jenkins.

3

Notably, most of these cash deposits were for amounts either identical to, or in the same range, as those Plaintiffs allege Female 4 made to JCPD officers: $2,000. *See* SAC ¶ 63.

**CASH DEPOSITS**

| Date | Cash Deposit Amount | Account | Bates for Jenkins' Bank Statement | Bates for Receipt |
|---|---|---|---|---|
| 1/27/20 | $103.04 | █ | Eastman 000011 | Eastman 000201 |
| 7/13/20 | $885 | █ | Eastman 000036 | Eastman 000207 |
| 7/23/20 | $2,000 | █ | Eastman 000036 | Eastman 000191 |
| 9/14/20 | $5,000 | █ | Eastman 000044 | Eastman 000217 |
| 1/29/21 | $2,000 | █ | Eastman 000062 | Eastman 000230 |
| 5/7/21 | $1,000 | █ | Eastman 000077 | Eastman 000198 |
| 5/27/21 | $2,000 | █ | Eastman 000077 | Eastman 000191 |
| 6/14/21 | $2,000 | █ | Eastman 000081 | Eastman 000228 |
| 6/28/21 | $620 | █ | | Eastman 000213 |
| 8/16/21 | $2,000 | █ | Eastman 000091 | Eastman 000229 |
| 8/20/21 | $380 | █ | | Eastman 000199 |
| 9/10/21 | $1,000 | █ | Eastman 000096 | Eastman 000193 |
| 11/02/21 | $1,000 | █ | Eastman 000106 | Eastman 000227 |
| 11/18/21 | $2,000 | █ | | Eastman 000215 |
| 12/20/21 | $4,000 | █ | | Eastman 000195 |
| 1/24/22 | $400 | █ | Eastman 000116 | Eastman 000246 |
| 1/24/22 | $400 | █ | | Eastman 000247 |
| 5/31/22 | $140 | █ | | Eastman 000242 |

| | | | | |
|---|---|---|---|---|
| 10/27/22 | $5,500 | ▇ | Eastman 000162 | Eastman 000240 |
| | **TOTAL: $32,428.04** | | | |

Baehr-Jones Decl. ¶ 10, Exh. 2.

There is also evidence supporting new allegations that Jenkins engaged in a money laundering scheme. As shown in the table below, over the same two-year period, approximately $400,000 worth of auto, mortgage, and construction loans held by Jenkins were repaid, according to his bank records. This amount exceeds Jenkins' known sources of legitimate income, based on his responses to Plaintiffs' interrogatories. Baehr-Jones Decl. ¶ 11, Exh. 3, at 2-3 (showing Jenkins' income between 2018 and 2023). There is also evidence supporting a new allegation that Female 4 made a payment to Jenkins on or about June 1-2, 2022, for $11,800. *See, e.g.*, ECF 192, at RENASANT000018 (showing cash withdrawal of $11,800 on June 1, 2022); Baehr-Jones Decl. ¶ 12, Exh. 4, at EASTMAN000478 (showing auto loan originated on June 2, 2022, with a total amount financed of $11,855.79).[2]

---

[2] Jenkins has disputed that these bank records show a direct payment from Female 4 to him (ECF 338), however, the evidence supports this conclusion. First, Defendant Sparks was present at Renasant Bank on April 26, 2022, the date that Female 4 opened a new account for Glass and Concrete Contracting ("GCC") from which she withdrew $11,800. Baehr-Jones Decl. ¶ 13, Exh. 5. Female 4 opened the account in her name only and the bank records show that she moved money into this account from the old GCC account, and then drained the new account, taking out large sums of cash during June 2022. *See* ECF 235 at 7. During this time, Female 4 was communicating regularly with JCPD officer Tyler Whitlock, who in turn was communicating with JCPD leadership, including making calls to the JCPD desk phone number associated with the chief of police. Finally, evidence also shows that JCPD was providing Female 4 with protection from Williams during this time. *Id.* at 8. The totality of this evidence thus supports that

**LOANS**

| Loan # | Date Issued | Amount | Date Paid Off & Amount | Collateral | Bates |
|---|---|---|---|---|---|
| ▮ (car) | 11/5/2018 | $20,750 | 1/13/2020 $18,536.90 | 2012 Toyota Tacoma | Eastman 000013 |
| ▮ (car) | 1/7/2020 | $36,815.90 | 9/25/2020 $34,308.89 | 2016 Toyota Tacoma | Eastman 000046 |
| ▮ (30-year fixed mortgage) | | $158,222.45 | 1/4/2021 $158,036.98 | | Eastman 000064 |
| ▮ (car) | 6/30/2021 | $22,900 | 7/02/2021 $22,903.44 | 2021 Salem 179DBKX | Eastman 000088 |
| ▮ (car) | 8/13/2021 | $27,550.62 | 1/18/2022 $26,899.59 | 2021 Salem M-178BHSKX | Eastman 000118 |
| ▮ (car) | 6/30/2021 | $18,350 | 1/24/2022 $17,239.62 | 2006 Fourwinn Horizon | Eastman 000080 |
| ▮ (car) | 9/22/2020 | $45,236.22 | 1/25/2022 $37,946.91 | 2018 Toyota Tundra | Eastman 000118 |
| ▮ (ARM Mortgage) | 12/20/2021 | $90,000 | 4/27/2022 $33,746.53; 4/28/2022 $30,834.00 | | Eastman 000131 |
| ▮ (construction loan) | 5/31/2022 | $77,855.00 | | | |
| ▮ (car) | 6/2/2022 | $11,000 | 8/31/2022 $10,679.81 | 2006 Toyota Tundra | Eastman 000152 |
| ▮ (car) | 8/13/2022 | $15,189.04 | (bank records end before payoff) | 2012 Toyota Tundra | |
| ▮ (car) | 10/27/2022 | $14,500 | (bank records end before payoff) | Used RV (EASTMAN000165) | |
| | **TOTALS:** | **$538,369** | **$391,133** | | |

JCPD officers, including Sparks and Jenkins, conspired with Female 4 to drain Williams' bank accounts and that Jenkins received a cash payments from Female 4 in June 2022 when he took out an auto loan for $11,000 (total financing of $11,855), just one day after Female 4 withdrew $11,800 in cash from the new GCC account. As set forth in the summary chart, this was one of nine auto loans Jenkins took out within four years, purportedly for a 2006 Toyota Tundra despite having just paid off a loan for a 2018 Toyota Tundra in January 2022. Accordingly, the totality of the evidence supports the conclusion that Jenkins received $11,800 in cash from Female 4 on or about June 1, 2022, and Plaintiffs intend to add this allegation to the Third Amended Complaint.

6

Finally, on January 25, 2022, Jenkins' credits reflect a total check deposit amount of $981,284.67, a sum far above any known legitimate source of income. Exh. 2, at EASTMAN000321. Plaintiffs intend to move to amend their complaint no later than October 15, 2024, to add allegations based on this newly obtained evidence and will re-allege Counts I and II as to Jenkins.

On April 10, 2024, Plaintiffs noticed the deposition of then-defendant Jenkins for July 18, 2024. Baehr-Jones Decl. ¶ 4. By late June, however, Plaintiffs still had not received any financial records or phone call logs for Jenkins and therefore decided to reschedule his deposition. *Id.* Accordingly, the parties later agreed to reschedule Jenkins' deposition for September 19, 2024. *Id*. On August 5, 2024, Plaintiffs received Jenkins' Eastman Credit Union and Appalachian Community Federal Credit Union records. *Id.* ¶ 5. On August 21, 2024, the Court dismissed claims against Jenkins. ECF 301. On September 6, 2024, Plaintiffs issued a subpoena for Jenkins' deposition for the previously scheduled date of September 18, 2024. *Id.* ¶ 6. On August 29, 2024, counsel for Jenkins indicated he would not proceed with Jenkins' scheduled deposition if Plaintiffs intended to ask any questions concerning his financial records. *Id.* ¶ 7. Plaintiffs could not agree to such a limitation on the scope of questioning given the relevance of these records to the TVPA claims and the alleged extortion scheme, nor did Plaintiffs agree that Jenkins' change in party status would preclude Plaintiffs from asking about documents obtained in discovery. *Id.* Accordingly, on September 9, 2024, Jenkins canceled the deposition and on September 10, he filed the instant motion. *Id.* ¶ 8.

## LEGAL STANDARD

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action. Fed R. Civ. P. 26(b)(1). Rule 26(b)(1) of the Federal Rules of Civil Procedure explains that "[r]elevant information need not be admissible at

7

the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quoting *Barrington v. Mortage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)).

The Sixth Circuit has noted that a "discovery request is generally unobjectionable 'if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.' " *Marshall v. Bramer*, 828 F.2d 355, 358 (6th Cir.1987) (quoting Fed. R. Civ. P. 26(b)(1)). Rule 26 is to be liberally construed to permit broad discovery. *See United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir.1976) (commenting that the "Federal Rules of Civil Procedure authorize 'extremely broad' discovery").

## ARGUMENT

Jenkins makes two inconsistent arguments in asking this Court to prevent Plaintiffs from asking about his financial records during his deposition. On the one hand, he claims questions about these records are irrelevant to Plaintiffs' extortion scheme allegations because his financial records reveal only "benign financial decision[s]." ECF 319 at 3, 4. In another filing, Jenkins goes even further, accusing Plaintiffs of mischaracterizing his financial transactions for which he claims there is an innocent explanation.[3] *See* ECF 338 at 2. On the other hand, Jenkins argues that explaining the above transactions will present an undue burden on Jenkins, requiring him "to

---

[3] Kevin Peters similarly accuses Plaintiffs' counsel of making false representations to the Court regarding Jenkins' financial records. ECF 334 at 2. This is nonsense; the records and above summary charts speak for themselves.

8

comb through" years of his own financial records to prepare for the deposition. ECF 319 at 4. Notably, Jenkins provides no evidence in this motion nor in his motion to strike explaining the legitimate sources of income for the transactions set forth in the above charts, namely, the approximately $400,000 worth of repaid loans between 2020-2022, the cash deposits totaling $32,428.04, and the check deposit of $981,284.67.

Regardless, neither of Jenkins' arguments supports limiting the scope of his deposition testimony. Either the records are inculpatory, in which case Plaintiffs' inquiry into these records will reveal material evidence supporting their claims of corruption on the part of JCPD officers, or they are not, and Jenkins will be able to provide testimony to explain the sources of the additional funds. Plaintiffs have made a good faith showing above as to how these records evidence: (1) large amounts of cash deposits during the time frame of the alleged conspiracy; (2) a possible scheme to launder money through auto, construction, and mortgage loans[4]; and (3) asset purchases and deposits above known legitimate sources of income. Because Plaintiffs have alleged that JCPD officers engaged in an extortion scheme in which they received large amounts of cash from Williams and his co-conspirator, these transactions are relevant and questions about Jenkins' records are likely to lead to the discovery of admissible evidence. *See,*

---

[4] Money laundering can be accomplished by repaying fake loans to conceal illegitimate funds. *See, e.g.*, *United States v. Garcia-Pastrana*, 584 F.3d 351, 380 (1st Cir. 2009) ("These 'fake' loans were an attempt to launder the Plan funds for use by the Defendants, since the money paid back to the Union by the Health Plan, in the government's words, 'would look like fulfillment of a legitimate loan obligation,' plus interest to boot."). In the context of an auto loan money laundering scheme, this could be accomplished through cashier's checks paid back to the bank to pay off the loan, which would conceal an otherwise large cash deposit, or by making a cash payment to a car dealership and then obtaining a check from the dealership to repay the loan. There is evidence of these types of repayments in Jenkins' bank records. *See, e.g.*, Exh. 2, at EASTMAN000321; EASTMAN000319; EASTMAN000312.

9

*e.g.*, *Kroger Co. v. Merrill*, No. 1:09-CV-722, 2009 WL 1707892, at *2-3 (N.D. Ohio June 17, 2009) (declining to grant a protective order regarding deposition testimony concerning financial records of third parties because the depositions might lead to evidence regarding the alleged fraud).

Jenkins nevertheless argues that he is entitled to notice of the new allegations concerning these records before being required to sit for a deposition. ECF 319 at 4. Jenkins provides no case law supporting this position, nor is this supported by the Federal Rules. Practically, this issue will almost certainly be mooted, as Plaintiffs intend to file their motion for leave to amend along with the Third Amended Class Complaint within the next three weeks, as set forth above. Jenkins will therefore have notice of the allegations by the time the parties are able to reschedule his deposition. Regardless, Plaintiffs have already outlined above the financial transactions indicative of money laundering, as well as the cash deposits during the relevant time period, and have compiled summary charts referencing the relevant Bates. It is not unduly burdensome to ask Jenkins questions about these same transactions. To the extent Jenkins argues Plaintiffs have drawn inaccurate conclusions about these records, permitting questioning of Jenkins about these records during his deposition would only serve the truth-seeking purpose of discovery and provide an opportunity for him to explain his additional sources of income.

## CONCLUSION

For the reasons set forth above, the Court should deny Jenkins' motion to quash and/or for protective order.

Dated September 24, 2024.                    Respectfully submitted,

                                                            Advocates for Survivors of Abuse PC

                                                            */s Vanessa Baehr-Jones*
                                                            Vanessa Baehr-Jones (*pro hac vice*)

4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com

*s/ Heather Moore Collins*
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com


*/s/ Julie C. Erickson*
Julie C. Erickson (*pro hac vice*)
Elizabeth A. Kramer (*pro hac vice*)
Kevin M. Osborne (*pro hac vice*)
Erickson Kramer Osborne LLP
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Proposed Classes*

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on September 24, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>rachel@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON &<br>LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, and Investigator Toma Sparks, in his official capacity*<br><br>Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com<br><br>*Attorney to Defendant City of Johnson City, Tennessee* | Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>jdowd@fbb.law<br>msutton@fbb.law<br>gpatton@fbb.law<br><br>*Counsel for Toma Sparks in his individual Capacity*<br><br>Keith H. Grant<br>Laura Beth Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>kgrant@rswlaw.com<br>lrufolo@rswlaw.com<br>awells@rswlaw.com<br><br>*Counsel for Jeff Legault in his individual capacity* |

    */s Vanessa Baehr-Jones*
    Vanessa Baehr-Jones