UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| JANE DOE, *et. al.*, | ) | |
|---|---|---|
| | ) | Case No. 2:23-cv-71 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| JOHNSON CITY, TENNESSEE, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER**

Before the Court is Plaintiffs' second motion to enjoin extrajudicial conduct (Doc. 236). Plaintiffs also move for sanctions against counsel for Defendant Johnson City. (*Id.*) For the reasons that follow, the motion (*id.*) will be **DENIED**.

I.     **BACKGROUND**

Sean Williams, a drug dealer residing in Johnson City, Tennessee, was discovered to have sexually assaulted and taken exploitative images of numerous women at his apartment in downtown Johnson City, Tennessee. (Doc. 18, at 2; Doc. 121, at 2.) Williams engaged in these actions for years without consequence because, according to Plaintiffs, Defendant Johnson City, Tennessee "not only turn[ed] a blind eye to Williams' crimes, but also engag[ed] in a pattern and practice of discriminatory conduct towards women who reported rape and sexual assault by Williams and other perpetrators." (Doc. 121, at 2.) On March 1, 2024, Plaintiffs filed their second amended complaint in this case, bringing claims against Defendant Johnson City (among other defendants) under 18 U.S.C. §§ 1591, 1594, 1595, 42 U.S.C. § 1983, and Tennessee state law. (*See id.* at 55–78.)

1

The Court entered a joint protective order governing the disclosure of documents and information in this case on December 18, 2023. (Doc. 94.) Per the order, "Counsel for the parties shall have thirty (30) days to review deposition transcripts for purposes of designating any information as 'Highly Confidential – Attorney's Eyes Only' or 'Confidential Information' before that deposition transcript is finalized." (*Id.* at 7.) City Manager Cathy Ball was deposed by Plaintiffs on June 3, 2024. (Doc. 236, at 2.) Plaintiffs' counsel emailed a redacted copy of Ball's deposition transcript to counsel for Johnson City ("Defense Counsel") on June 12, 2024, and asked Defense Counsel to provide any additional redactions they believed were necessary. (*Id.*) In response, Defense Counsel stated that they received the transcript on June 7, 2024, and that Johnson City's designations of confidential information were not due until July 8, 2024. (Doc. 237-2, at 1.) Plaintiffs intended to rely on facts from Ball's deposition in opposing District Attorney General Steven Finney's motion to quash. (*See* Docs. 202, 221, 237-3.) Defense Counsel opposed the inclusion of Ball's transcript in Plaintiffs' motion before the designation period had run. (Doc. 263, at 5.) Plaintiffs filed their opposition to Finney's motion on June 15, 2024, redacting portions that relied on Ball's deposition. (*Id.* at 6.)

Plaintiffs' counsel emailed Defense Counsel on June 25, 2024, again asking for further redactions to Ball's transcript. (Doc. 236, at 3.) Plaintiffs' counsel states that they made this request in anticipation of filing a motion to compel. (*Id.*) Plaintiffs wanted Johnson City to produce a real estate contract between Sean Williams and Ball. (*Id.* at 3–4.) On June 26, Ball gave a press conference addressing her real estate dealings with Williams. (*Id.* at 4; Doc. 263, at 6.) Ball stated:

> I did not purchase this condominium. I want to make it clear that when I learned that the person was a fugitive, I withdrew my offer for the purchase of the contract. I did not have any communication with Sean Williams. I have never met Sean Williams. I have never talked to Sean Williams. No money ever exchanged hands. This was an unfortunate

2

coincidence, but I want the community to hear about it from me.  I recently learned that the Plaintiffs' attorney had requested additional information about this condominium, and I want to come forward to the community and share the information I have to make sure that the facts are released accurately.

(Doc. 263, at 6.)

On June 28, 2024, Plaintiffs filed the present motion to enjoin extrajudicial conduct, primarily taking issue with Ball's press conference.  (Doc. 236.)  This motion is ripe for review.

## II.     STANDARD OF LAW

Speech in connection with litigation "goes to the heart of [courts'] function under our system of civil liberty." *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987).  Thus, "any prior restraint on expression comes . . . with a heavy presumption against its constitutional validity." *Karhani v. Meijer*, 270 F.Supp.2d 926, 931–32 (E.D. Mich. 2003) (quoting *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)).  That heavy presumption may be overcome only when a content-based prior restraint meets "the exacting 'clear and present danger' test for free speech cases." *Ford,* 830 F.2d at 598 (citing *Near v. Minnesota*, 283 U.S. 697 (1931)).  According to the Sixth Circuit, a clear and present danger "must be specific, not general.  It must be much more than a possibility or a 'reasonable likelihood' in the future.  It must be a 'serious and imminent threat' of a specific nature, the remedy for which can be narrowly tailored in an injunctive order." *Ford*, 830 F.2d at 600; *see also CBS Inc. v. Young*, 522 F.2d 234, 238–39 (6th Cir. 1975) (discussing *Chase v. Robson*, 435 F.2d 1059 (7th Cir. 1970)).

The Local Rules of this Court have expressly adopted the Rules of Professional Conduct promulgated by the Supreme Court of Tennessee.  Local Rule 83.6 provides:

> The minimum standards of professional conduct before this Court include the Rules of Professional Conduct adopted by the Supreme Court of Tennessee insofar as they relate to matters within the jurisdiction of this Court.  Such rules are not exhaustive of the ethical standards the Court expects attorneys to meet. The Court has the obligation and responsibility to interpret and apply the RPC and

other rules and standards of conduct without being bound by the decisions of Tennessee courts, other courts, or agencies.

L.R. 83.6.

Rule 3.6 of the Tennessee Rules of Professional Conduct provides in relevant part that:

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

(b) Notwithstanding paragraph (a), a lawyer may state:

> (1) the claim, offense, or defense involved and, except when prohibited by law, the identity of the persons involved;
>
> (2) information contained in a public record;
>
> (3) that an investigation of a matter is in progress;
>
> (4) the scheduling or result of any step in litigation;
>
> (5) a request for assistance in obtaining evidence and information necessary thereto;
>
> (6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest;

. . .

**(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.**

. . .

Tenn. R. Prof. Conduct Rule 3.6 (emphasis added).

Additionally, Local Rule 83.2 governs an attorney's extrajudicial statements. Local Rule 83.2 states:

> No lawyer or law firm associated with a civil action shall, during its investigation or litigation, make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and if such dissemination relates to:
>
> (1) evidence regarding the occurrence or transaction involved;
>
> (2) the character, credibility, or criminal record of a party, witness, or prospective witness;
>
> (3) the performance or results of any examinations or tests or the refusal or failure of a party to submit to such;
>
> (4) the attorney's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule; and
>
> (5) any other matter reasonably likely to interfere with a fair trial of the action.

E.D. Tenn. L.R. 83.2(a).

### III. ANALYSIS

While Ball has again engaged in conduct that is ill-advised during litigation,[1] her press conference does not pose a serious threat to Plaintiffs' right to a fair trial. A trial date is set for April 2025. It is doubtful that Ball's statements in June 2024 "will have any lasting [e]ffect on the jury pool for a trial that is many months in the future." *See Karhani*, 270 F. Supp. 2d at 933–

---

[1] The present motion is Plaintiffs' second motion to enjoin extrajudicial conduct, as Ball first gave a press conference relating to this case on August 25, 2023. (*See* Doc. 61, at 2, 5.)

5

34. Any prejudice that may result can be rooted out through voir dire or other methods available to preserve a jury's impartiality. *See Ford*, 830 F.2d at 599 (describing less restrictive approaches to limiting jury bias, such as a change of venue, sequestration, or a searching voir dire examination). Further, the Court is reluctant to impose a prior restraint on the speech of a political actor like Ball. *See id.* at 600 (stating that "[t]he protection of political speech which concerned the court in [*Near v. Minnesota*, 283 U.S. 697 (1931)] is at the core of the First Amendment").

Because the Court finds that Plaintiffs have suffered little to no prejudice from Ball's statements, it will not impose sanctions on Defense Counsel. *See United States ex rel. Grober v. Summit Med. Grp., Inc.*, No. CV 02-177-C, 2006 WL 8451072, at *2–3 (W.D. Ky. May 5, 2006) (declining to impose sanctions when the moving party suffered no prejudice). However, Defense Counsel should take notice that as the trial date draws closer, the chance that these incidents will prejudice Plaintiffs is much higher. The Court will not look favorably upon further incidents similar to those described in Plaintiffs' motions to enjoin. (Docs. 17, 236.) The Court reiterates that if Ball or other Johnson City agents continue to publicly issue statements about matters pertaining to the case as the trial date approaches, Plaintiffs may move again to enjoin those actions.

In their reply brief (Doc. 280), Plaintiffs request that the Court grant leave to file a motion for relief from Local Rule 83.2. (*Id.* at 5.) Plaintiffs intend to hold a press conference using information available from public records "to present information obtained during the Ball deposition" regarding the real estate deal between Ball and Williams. (*Id.*) For good cause shown, Plaintiffs' request is **GRANTED**. Plaintiffs may file a motion for relief from Local Rule 83.2.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiffs' motion to enjoin (Doc. 236) is **DENIED**. Plaintiffs' request for sanctions (*id.*) is **DENIED**. Plaintiffs' request for leave to file a motion for relief from Local Rule 83.2 is **GRANTED**. Plaintiffs **SHALL** file a motion for relief on or before **October 11, 2024**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**