## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | |
|---|---|
| B.P., H.A., and S.H., individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF JOHNSON CITY, TN, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) No: 2:23-cv-00071-TRM-JEM<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF KRISTIN ELLIS BEREXA IN SUPPORT OF SPARKS' MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH/MODIFY SUBPOENA DUCES TECUM ISSUED TO TRUIST BANK FOR WITHDRAWL INFORMATION

Pursuant to 28 U.S.C. § 1746, I, Kristin E. Berexa, declare under penalty of perjury that the foregoing is true and correct:

1. My name is Kristin E. Berexa. I am counsel of record for Toma Sparks, defendant in this case. I am over 18 years of age, and I have personal knowledge of the above-referenced action. I am an attorney licensed to practice law in the State of Tennessee. The statements in this Declaration are true and correct to the best of my knowledge, information, and belief.

2. On October 4 at 7:20 pm central, I received via email a notice of a subpoena duces tecum directed to SunTrust/Truist bank ("First Truist Subpoena") for withdrawal information relating to Check nos. 1023 and 1024 from Sparks' bank account. [First Truist Subpoena attached as Exh. A].

3. With respect to the meet and confer process related to the Friday night Truist subpoena

on Saturday morning, October 5, I sent an email to Ms. Baehr-Jones expressing her objection to the subpoena itself, as well as the late-night notice and threatened unidentified time of service on Monday and requested a meet and confer. [Email Correspondence attached as Exh.D at 8-9]. The meet and confer occurred on Monday during which I objected to the relevance and reminded Ms. Baehr-Jones of the Court's order holding that specific withdrawal information was not allowed.

4. During this meet and confer, Plaintiffs' counsel tried to explain the current relevance of this specific withdrawal information. In short, Plaintiffs' latest conspiracy theory is that in January 2024, Sparks paid off witness Rutherford by using a middleman or front person to assist in the sale of a necklace, which was allegedly stolen from Williams safe when JCPD searched it. Plaintiffs claim the front person that Sparks allegedly used would be identified in the two requested check numbers, 1023 and 1024. I explained that one check was written to Miller Construction for payment of deck work ($20,000) and the second check was payment of $1200 to an individual for gutter work.

5. Plaintiffs' counsel was also reminded that she had photographic evidence of the deck work from production of Sparks' cell phone data. [Exh. E, SPARKS 000038-39].

6. Plaintiffs refused to accept these explanations from counsel.

7. The parties' respective positions were memorialized in the email correspondence. [Exh. D at 4-7].

8. In an effort to avoid needless motion practice and harassing subpoenas being served on third-party businesses which are not involved with this litigation, I offered to provide the front and back images of the two checks which showed to whom the checks were written and who endorsed them. [Email Correspondence, at 7]. Plaintiffs refused to accept this offer as well even though that would be the same information they received from the bank. [*Id.*]. I even offered to provide

documents from Sparks reflecting the work done; this was also insufficient for Ms. Baehr-Jones. [Email Correspondence, at 4].

9. Then, within a few hours after the meet and confer, Plaintiffs sent our office yet another Truist subpoena ["Second Truist Subpoena" attached as Exh. B] requesting additional information, this time relating to specific deposits. [Exh. D, Email Correspondence, at 2]. Although certainly frustrated with this piecemeal use of subpoenas, I did not object to the additional deposit information since the request appeared to be relevant and in compliance with the Court's Order. [*Id.*]

10. Instead of keeping the subpoenas for withdrawal and deposit information separate and easier to address, on Tuesday, October 8th, Plaintiffs served notice of a newly combined subpoena ["Third Truist Subpoena" attached as Exh. C], which included the requested documents from the Friday night subpoena and the Monday subpoena.

11. Plaintiffs have served close to a total of 50 non-party subpoenas to date. In fact, two days after the Third Truist subpoena was noticed, on October 10, 2024, Plaintiffs noticed defense counsel of another **NINE** non-party subpoenas they intended to serve the following day. Among other things, these subpoenas included requests for phone records from Sparks' wife, daughter and father-in-law, documents related to Sparks' grown daughter's car loan that he co-signed, and documents related to a car loan for Sparks' own vehicle. Plaintiffs even issued a subpoena to the deck company that defense counsel identified during the meet and confer regarding the Friday night subpoena. Again, there was no attempt at a meet and confer before noticing these additional subpoenas. Defense counsel reached out to Plaintiffs' counsel yet again requesting a meet and confer. The parties are attempting to meet and confer regarding these nine additional subpoenas.

Executed this 14th day of October 2024.

_____
Kristin Ellis Berexa