```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF TENNESSEE
                 GREENEVILLE DIVISION


B.P., H.A., and S.H.,          )
individually, and on behalf of )
all others similarly           )
situated,                      )
                               )
            Plaintiffs,        )
                               )
                               )
v.                             )   No. 2:23-CV-00071
                               )        TRM-JEM
City of Johnson City,          )
Tennessee, et al,              )
                               )
            Defendants.        )



          * * * * * * * * * * * * * * * *


       VIDEO DEPOSITION OF SHANNON CASTILLO


                August 9th, 2024



     CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER


===========================================================
          JEFF RUSK COURT REPORTING & VIDEO

           Jeffrey D. Rusk, RPR, LCR, CLVS
              805 Eleanor Street, N.E.
             Knoxville, Tennessee  37917
                  (865) 246-7656
                 Jeff@JeffRusk.com
```

1      Q.     (BY MR. HERRIN) You indicated in
2  one of your emails that we looked at that the tax
3  value of the single fifth floor condo was 287,800.
4             Do you recall that?
5      A.     I do.
6      Q.     And so are there public documents
7  that show the tax appraised values of all three
8  condos?
9      A.     Yes.
10     Q.     And so to make a -- considering the
11 public information that's available, is it reckless
12 to suggest that Cathy Ball's offer of $416,000 was
13 in some way a corrupt attempt on her part to
14 purchase an $800,000 piece of property from Sean
15 Williams?
16     A.     No.
17            MS. KRAMER:  Objection.
18     Q.  (BY MR. HERRIN) No?
19     A.     It was not reckless.  That's what
20 your question was.
21     Q.     I'm saying is it reckless for
22 somebody to suggest that --
23     A.     Oh, that is reckless.  Yes.
24     Q.     That the condo would be worth
25 $800,000 and that Cathy Ball was in some

```
 1   conspiratorial way trying to purchase a half price
 2   condo from Sean Williams.
 3                MS. KRAMER:  Objection.
 4        Q.   (BY MR. HERRIN) Do you think that is a
 5   reckless undertaking to say that?
 6                MS. KRAMER:  Objection.
 7        A.   Yes, I think that's reckless.  We
 8   have an appraisal that shows how much the property
 9   was worth.
10        Q.   (BY MR. HERRIN) Would that be
11   particularly true if the values for the three condos
12   were known to be purchased around that value for
13   three condos and just attribute it to the value of
14   the one fifth-floor condo?
15                MS. KRAMER:  Objection.
16        A.   I don't know --
17        Q.   (BY MR. HERRIN) Do you understand what
18   I'm saying?
19        A.   I don't know what you're saying.
20        Q.   I'm sorry.
21             The three condos sold as a unit.
22        A.   They sold -- yes, they sold
23   together.  Correct.
24        Q.   And you -- are you aware -- do you
25   have any information that the purchase price of all
```

1  three condos was around 800,000?

2      A.     Yes, I am aware of that through the

3  public documents.

4      Q.     Okay. And would it be reckless for

5  someone to see the purchase of three condos and then

6  attribute to Cathy Ball's purchase of one condo for

7  800,000?

8      A.     Yes, that would be reckless.

9          MS. KRAMER: Objection.

10     Q.    (BY MR. HERRIN) Okay. Would you

11  request that -- would it be your request of the

12  proceedings here today that your personal email or

13  the personal email of Cathy Ball be redacted from

14  the emails -- the text messages that you had with

15  her?

16     A.     I have no problem with that. That

17  would be fine.

18          MS. KRAMER: Objection.

19          Can you restate the question?

20          Can you read it back.

21          COURT REPORTER: Did you request

22     that -- would it be your request of the

23     proceedings here today that your personal

24     email or the personal email of Cathy Ball be

25     redacted from the emails -- the text

1 messages that you had with her?

2 MS. KRAMER: Do you understand that
3 question?

4 THE WITNESS: Yes, it's that -- my
5 understanding is that he's asking that when
6 this deposition is typed out that Cathy's
7 personal email would be redacted. I have no
8 problem with that being redacted.

9 Q. (BY MR. HERRIN) Your testimony, as I
10 recall it, when you learned that Williams was a
11 fugitive, I think you said you were shocked; is that
12 right?

13 A. Yes. I had no idea.

14 Q. You had engaged with Sean Williams
15 off and on for how many years?

16 A. Many.

17 Q. So during those many years, did you
18 have information, meaning rumor, hearsay, gossip,
19 that he was a rapist?

20 A. I did not.

21 Q. Okay. Did you learn of these
22 allegations only after the arrest in North Carolina
23 and in the newspaper or media coverage?

24 A. Yes.

25 Q. So fair to say that even though you

1    considered him to be squirrely --

2         A.    Yes.

3         Q.    -- you did not consider him to be a
4    criminal.

5         A.    No, not at that time.

6         Q.    In your conversations with
7    William's half sister, which I know was short, I
8    think you said ten minutes on one occasion, I was a
9    little bit unclear of exactly what happened there,
10   but I think you were telling us that the sister was
11   communicating to you that Williams was saying things
12   that were, quote, "aren't reality."

13                Can you tell me what types of
14   things she was referring to?

15        A.    To the best of my recollection, it
16   centered around somebody trying to take over control
17   of his properties that were in his name and
18   increased paranoia regarding that.

19        Q.    And so in similar fashion to the
20   conversation you had with Williams directly about
21   statements he was making that you knew were not
22   true, this was a similar confirmation of that with
23   his sister?

24        A.    Yes.

25              MS. KRAMER:   Objection.

1      Q.   (BY MR. HERRIN) You talked about police
2  being involved in the Alunda Rutherford Register of
3  Deeds Office.
4           Was there any reference that these
5  were Jonesborough police officers?
6      A.   I do not know.
7      Q.   Considering your contact with Sean
8  Williams over whatever number of years it was as
9  part of the downtown community, did you have any
10 information that Sean Williams was a drug dealer or
11 involved in drug trafficking?
12     A.   I had no knowledge, nor -- of any
13 of that.  None at all.
14     Q.   Do you have any information, again,
15 over the same time period and the amount of time
16 engaging with him in the downtown community, we'll
17 call it, that he was involved in sex trafficking?
18     A.   No.
19     Q.   Child pornography?
20     A.   No.
21     Q.   Child pornography trafficking?
22     A.   No.
23     Q.   Any information that you gathered
24 on the street that he was in a conspiratorial
25 relationship with Johnson City Police officers,

1 paying police officers bribes, anything like that?

2     A.    No.

3     Q.    If you had even any information

4 about that, is that the type of thing you would

5 report to authorities who could do something about

6 it?

7     A.    Absolutely.

8     Q.    If you had any notion of anything

9 like that, would you have even attempted to put

10 together a property transaction with Sean Williams?

11     A.    Absolutely not.

12     Q.    Prior to the issuance of your

13 subpoena for your deposition here today, were you

14 contacted by any of the plaintiffs' attorneys and

15 them try to interview you over the telephone or

16 otherwise?

17     A.    Someone called me months before.  I

18 don't know which attorney it was or who that -- I

19 don't believe it was either one of you -- to ask me

20 about the condo.  The nature of those questions were

21 specific to -- erroneously, they asked me

22 specifically if I represented Karl Turner or his

23 wife in the purchase of that condo, which my answer

24 was, "No, absolutely not."  They said, "Did you know

25 Karl Turner's wife?"  I said, "No, I've never met

```
 1                C E R T I F I C A T E

 2   STATE OF TENNESSEE:

 3   COUNTY OF KNOX:

 4

 5                   I, Jeffrey D. Rusk, Registered

 6   Professional Reporter and Notary Public, do hereby

 7   certify that I reported in machine shorthand the

 8   foregoing proceedings; that the foregoing pages,

 9   inclusive, were prepared by me using computer-aided

10   transcription and constitute a true and accurate

11   record of said proceedings.

12                   I further certify that I am not an

13   attorney or relative of any attorney or counsel

14   connected with the action, nor financially

15   interested in the action.

16                   Witness my hand and official seal

17   this the 9th day of August, 2024.

18

19

20   _____

21   Jeffrey D. Rusk, RPR, CLVS
     Notary Public at Large
22   My Commission Expires:  4/29/2026
     TCRB License No. 212
23

24

25
```