| | |
|---|---|
| B.P., H.A., S.H., individually, and on behalf of all others similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) CITY OF JOHNSON CITY, *et al.*, ) ) Defendants. ) | No. 2:23-CV-71-TRM-JEM |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Motion to Strike and for Sanctions [Doc. 338], filed by Justin Jenkins ("Mr. Jenkins"). Plaintiffs filed a response in opposition to the motion [Doc. 364], and Mr. Jenkins filed a reply [Doc. 375]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons stated below, the Court **DENIES** the motion [**Doc. 338**].

**I.    BACKGROUND**

Mr. Jenkins, an officer with the Johnson City Police Department ("JCPD"), was a defendant in this case until United States Chief District Judge Travis A. McDonough granted his motion to dismiss on August 21, 2024 [Doc. 301]. On September 3, 2024, another former defendant, Kevin Peters ("Mr. Peters"), filed a Motion to Quash and for Protective Order Regarding Plaintiffs' Post-Dismissal Subpoena Seeking His Post-Retirement, Personal Cell-Phone Records [Doc. 310]. In response to why they seek Mr. Peters's cell phone records, Plaintiffs argue that they have alleged "coordination among JCPD officers to intentionally and knowingly interfere with and obstruct investigations into Sean Williams" [Doc. 330 p. 1]. They state that "[t]he phone records targeted by

the subject subpoena bear on these allegations because they may reveal cellular phone activity between Kevin Peters and other JCPD officers that would provide the opportunity for such coordination" [*Id*.]. Plaintiffs claim:

> Evidence adduced following the filing of the [Second Amended Complaint], however, shows that payments to JCPD officers continued until at least June 2022. *See, e.g.*, ECF 192, at RENASANT000018 (showing cash withdrawal of $11,800 on June 1, 2022); Exh. 4, Eastman Credit Union Records at Eastman 000478 (showing auto loan originated on June 2, 2022, with total financing payments of [redacted]).

[*Id*. at 3]. Plaintiffs conclude that "there is now evidence of a payment from [Sean Williams's business account by Female 4] to JCPD officer Justin Jenkins on June 1–2, 2022" [*Id*. at 5].

Mr. Jenkins seeks "to strike all unfounded allegations Plaintiffs have made that there is evidence that he received money from [Female 4], on behalf of Sean Williams or otherwise" under the Court's inherent authority [Doc. 338 p. 1]. He states that "Plaintiffs have not provided a scintilla of evidence to support their allegations and have failed to include evidence in their possession which directly refutes their allegations" [*Id*. at 1–2]. Mr. Jenkins argues, "It is unclear, and Plaintiffs do not further elucidate, how the two [Female 4] withdrawals that collectively total $11,800 are somehow connected with [him] taking out an $11,000 loan (not the paying off on a loan or some other 'credit' to [Mr.] Jenkins) to purchase a 2006 Toyota Tundra" [*Id*. at 2]. According to Mr. Jenkins, "Plaintiffs[] believe because these unconnected transactions occurred during the same period and involved a similar amount of money, [Female 4] must have withdrawn the funds to pay [him,]" but [s]uch a leap in logic is, in and of itself, entirely specious and unfounded" [*Id*.]. "This leap," Mr. Jenkins asserts, "is even more concerning in this matter as there is documentation to show that [he] did, in fact, take out a loan on or about June 2, 2022, to purchase a 2007 Toyota Tundra, which was ultimately paid off, not by funds from [Female 4] or Sean Williams, but when he traded that truck in on another vehicle" [*Id*. (citation omitted)]. Mr. Jenkins states that Plaintiffs

2

have this documentation, but "chose to cherry-pick which documents to present to the Court" [*Id*. at 3–4 (footnote omitted)]. He also seeks "sanctions in the form of attorney fees for [his counsel] having to rebut Plaintiffs' grossly misleading and unsupported characterizations" [*Id*. at 1].

Plaintiffs respond that Mr. Jenkins's request should be denied because he has not shown that their "filing is . . . 'false and defamatory'" [Doc. 364 p. 1 (citation omitted)]. They state, "The claim that there is evidence indicating a Sean Williams'[s] affiliate made a payment to [Mr.] Jenkins finds ample support in the record" [*Id*. at 2]. They list eight "factual basis," which they contend "supports the argument that JCPD officers, including [Mr.] Jenkins, conspired with Female 4 to drain [Sean] Williams'[s] bank accounts" [*Id*. at 3]. "Moreover," Plaintiffs state, "the evidence supports the conclusion that [Mr.] Jenkins received $11,800 in cash from Female 4 on or about June 1, 2022" [*Id*.]. Plaintiffs assert that "[t]hese are relevant facts that go to the ultimate issues in the case and the conclusions they suggest should not been stricken" [*Id*. (citation omitted)]. And according to Plaintiffs, Mr. Jenkins has not shown that their "statement is objectively false" [*Id*. at 4]. But if the Court finds otherwise, Plaintiffs state that his request for sanctions should be denied because he did not meet and confer with them before filing his motion [*Id*.]. "Given the fact that the statement at issue is not, taken in isolation, a conclusive point in the filing where it was made[,]" Plaintiffs contend that "this [m]otion may well have been avoided had counsel undertaken such efforts" [*Id*.]. "Regardless," Plaintiffs submit, "the statement in [their] filing was made based on a reasonable interpretation of the facts and would not warrant an award of sanctions" [*Id*.].

Mr. Jenkins filed a reply, stating that Plaintiffs' statement about him "was direct and unequivocal" and "objectively false" [Doc. 375 p. 1]. He argues that Plaintiffs' response to his motion "merely restate[s] their specious and tenuous argument" [*Id*.]. According to Mr. Jenkins, "[G]iving the Plaintiffs the benefit of the doubt, their theory is, at best, a product of confirmation bias, i.e., they want to believe there is a conspiracy so everything they look at is seen through that

3

lens" [*Id.* at 1–2]. "At worse," Mr. Jenkins argues, "Plaintiffs are intentionally providing misinformation in an attempt to support their theory" [*Id.*]. He asserts that "Plaintiffs did not make a statement that there may have been a connection between Female 4's withdrawal and [his] obtaining a loan, or that such could be related" [*Id.* (emphasis omitted)]. "Instead," [Mr.] Jenkins submits, "Plaintiffs unequivocally stated 'that there is now evidence of a payment from that account to JCPD officer Justin Jenkins'" [*Id.* (citation omitted)]. And while Plaintiffs state that he should have meet and conferred with them, Mr. Jenkins asserts that this exercise would have been futile given that they appear to "stand by the allegations" [*Id.* at 3].

## II. ANALYSIS

"The Court may strike improvident filings based on its inherent authority to manage its docket." *Hlfip Holding, Inc. v. Rutherford Cnty.*, No. 3:19-CV-00714, 2020 WL 6484254, at *2 (M.D. Tenn. Sept. 13, 2020) (citation omitted). Such authority allows courts "to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." *Id.* (citation omitted); *see also United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 571 (M.D. Tenn. 2021) ("[T]he Court has inherent power to strike impermissible matter apart from Rule 12(f) and this 'authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" (quoting *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 953 (7th Cir. 2020))). The movant bears the burden of showing that the material should be stricken. *SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d at 571.

"[M]otions to strike are generally disfavored and should be granted only when the material at issue has no possible relation to the controversy." *Hlfip Holding, Inc.*, 2020 WL 6484254, at *2 (citation omitted). Mr. Jenkins has not shown that the material sought to be stricken has no possible relation to the controversy. Plaintiffs claim that Mr. Jenkins and Mr. Peters accepted payments from Sean Williams, and they assert that loans were used to launder money. They allege in their operative

4

pleading that the "misconduct by JCPD began in at least 2018 and continued to at least 2021" [Doc. 330 p. 3 (citation omitted)]. Plaintiffs contend that Mr. Jenkins's financial records show that JCPD's alleged obstruction of the Sean Williams's investigation may have continued beyond 2021 [*Id*. (citation omitted)]. This evidence, they argue, supports their request for Mr. Peters's cell phone records "to 12 specific dates or date ranges from June 2020 to March 2024" [*Id*. at 1; *see also id*. at 5 ("Accordingly, call logs for [Mr.] Peters during that time may show his communication with JCPD officers which would be relevant to proving how the conspiracy was accomplished and coordinated.")].

Although Mr. Jenkins's financial records may not be direct evidence of accepting a payment from Sean William, *Hoffman v. Sebro Plastics, Inc.*, 108 F. Supp. 2d 757, 771 (E.D. Mich. 2000) (explaining that "'direct evidence' is evidence which requires no inferences"), the information does relate to Plaintiffs' allegations about accepting payments, and Plaintiffs are relying upon the information related to Mr. Jenkins in support of their request for Mr. Peter's cell phone records [*See* Doc. 330]. The Court therefore declines to grant the motion to strike.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Jenkins's Motion to Strike and for Sanctions [**Doc. 338**].

    **IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge