## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

**B.P., et al.,**

       **Plaintiffs,**

**v.**                                **No: 2:23-cv-00071-TRM-JEM**

**CITY OF JOHNSON CITY, TENNESSEE, et al.,**

       **Defendants.**

_____/

## NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs B.P., H.A., and S.H., individually and as proposed class representatives of all others similarly situated ("Plaintiffs") will and do hereby move this Court for an order granting Plaintiffs leave to file the proposed Third Amended Complaint, submitted as Exhibit 1. This Motion is made pursuant to Rule 15 and, potentially, Rule 59 of the Federal Rules of Civil Procedure.

Plaintiffs respectfully request that they be allowed to amend the operative complaint in this matter to re-name Kevin Peters and Justin Jenkins as defendants based on extensive additional factual allegations and evidence adduced since the finalization of the operative complaint over ten months ago, in December 2023, prior to the commencement of any discovery. No new theories of liability or counts are added as to the named Defendants or proposed defendants Peters and Jenkins. and to add class action allegations, among other additions.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Vanessa Baehr-Jones in Support of Plaintiffs' Motion and all exhibits thereto, all other pleadings and papers on file, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated this November 1, 2024            Erickson Kramer Osborne LLP

                                   */s/ Julie C. Erickson*
                                   Julie C. Erickson
                                   Elizabeth A. Kramer
                                   Kevin M. Osborne
                                   Attorneys for Plaintiffs and the Proposed Class

# TABLE OF CONTENTS

I.     Introduction ................................................................................................................. 1

II.    Factual Background ...................................................................................................... 1

III.   Summary of New Factual Allegations .......................................................................... 4

IV.   Argument ..................................................................................................................... 4

     A.    August 21, 2024 Order on Motions to Dismiss Was (Or Should Be Clarified As) Without Prejudice as to Most, If Not All, Claims Alleged Against Peters and Jenkins .......................... 4

     B.    Plaintiffs Meet (and Exceed) Rule 15's Liberal Amendment Standard the Applicable Standard and Should Be Given Leave to File the Proposed Third Amended Complaint ........... 7

     C.    Plaintiffs Meet the Heightened Amendment Standard as to Peters and Jenkins ............... 7

        1.    Justin Jenkins .................................................................................................. 8

        2.    Kevin Peters ................................................................................................... 12

        3.    The Claims Alleged in the TAC Implicate Concerns for Life and Safety, Which Far Outweigh Any Other "Interest" That Might Be Furthered by Disallowing Amendment ..... 14

V.     Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*B.D.G. v. Choice Hotels Int'l, Inc.*,
2023 WL 5935646 (S.D. Ohio Sept. 12, 2023) ................................................................. 15

*Chambers v. Nationwide Mut. Ins. Co.*,
2021 WL 463279 (N.D. Ohio Feb. 8, 2021) ........................................................................ 5

*Dykes-Bey v. McRoberts*,
2016 WL 11618608 (6th Cir. Sept. 13, 2016) ...................................................................... 6

*Energy Conversion Devices Liquidation Trust v. Trina Solar Limited*,
833 F.3d 680 (6th Cir. 2016) ................................................................................................ 5

*Foman v. Davis*,
371 U.S. 178 (1962) ......................................................................................................... 4, 5

*Geeo v. Bonded Filter Co., LLC*,
2023 WL 3259465 (M.D. Tenn. May 4, 2023) ..................................................................... 8

*Intera Corp. v. Henderson*,
428 F.3d 605 (6th Cir. 2005) ............................................................................................ 6, 7

*Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*,
616 F.3d 612 (6th Cir. 2010) ...................................................................................... 5, 7, 14

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) ............................................................................................ 6, 8

*Newberry v. Silverman*,
789 F.3d 636 (6th Cir. 2015) ............................................................................................... 5

*United States v. Harrell*,
Case No. 2:17-cr-00404-AB-1 (C.D. Cal. June 27, 2017) ................................................. 10

*United States v. Jungers*,
702 F.3d 1066 (8th Cir. 2013) ........................................................................................... 15

**Statutes**

18 U.S.C. § 1595 .................................................................................................................... 10

Fed. R. Civ. P. 15 .................................................................................................................... 4

# I.    INTRODUCTION

Over ten months have passed since the operative complaint in this matter was filed as a proposed amendment. During that time, an immense amount of discovery and investigation has taken place, adducing substantial additional facts and evidence relevant to the claims in this case. In this Motion and attached chart (Exhibit 2), Plaintiffs outline the additional allegations, for which Plaintiffs herein seek leave to file, and how each one is supported by evidence obtained in this litigation.  All the newly alleged facts are based on evidence obtained well after the operative complaint was finalized in December 2023. Key pieces of evidence were only obtained in the last three months. As soon as Plaintiffs received the Court's order on Defendants' motions to dismiss, they immediately began preparing to file an amended complaint and they shared their intention with Defendants. Plaintiffs bring this motion just 10 weeks after the Court's ruling, which is exceptionally expeditious considering the scope of new evidence to organize and distill.

Even under a heightened standard, leave to amend should be readily granted here in light of the substantial evidence supporting Plaintiffs' amendments, especially the claims re-alleged against Kevin Peters and Justin Jenkins, the fact that there cannot have been any meaningful prejudice in the short period since the motions to dismiss were decided, and the gravity, complexity, and sensitivity of this case's subject matter. Justice requires Plaintiffs be granted this request.

# II.    FACTUAL BACKGROUND

Plaintiffs commenced this action on June 21, 2023. ECF 1. Approximately one month later, on August 26, 2023, Plaintiffs filed a motion for leave to amend (ECF 12), which the Court granted on September 1, 2023 (ECF 20), and Plaintiffs filed their first amended complaint on September 6, 2023 (ECF 21). On December 12, 2023, Plaintiffs sought leave to file a second amended complaint, which sought to add class action allegations on behalf of two proposed classes under Federal Rule of Civil Procedure 23, withdraw certain named plaintiffs, add a class representative, add factual allegations discovered in the preceding three months, and name two additional defendants, Brady Higgins and Jeff Legault. ECF 93; 93-1. At this point, no discovery in the case had been conducted. Declaration of Vanessa Baehr-Jones ("Baehr-Jones Decl.") at ¶3.

1

On February 23, 2024, the Court granted in part Plaintiffs' motion for leave to amend but found the allegations of beneficiary liability under the TVPA, 18 U.S.C. §§ 1595, 1591(a)(1), (2) (Count I), as to Defendants Jeff Legault and Brady Higgins were inadequate and therefore denied leave as to these allegations. ECF 119 at 14-16. Plaintiffs filed their Second Amended Complaint ("SAC") on March 1, 2024. ECF 121.

Between March 12 to April 1, 2024, Defendants Toma Sparks, Kevin Peters, Justin Jenkins, Legault, and Higgins filed individual motions to dismiss various claims asserted against them in the SAC. ECF 129 (Jenkins), 132 (Sparks)[1], 138 (Peters), 145 (Legault), 147 (Higgins). Defendants City and Turner did not move to dismiss any claims asserted against them.

On May 1, 2024, Plaintiffs filed an omnibus opposition to these motions. ECF 176. In light of the Court's February 23, 2024 order finding inadequate the allegations of financial benefit as to Legault and Higgins, Plaintiffs conceded in their opposition that the facts in the SAC were similarly insufficient to allege a beneficiary theory of liability as to Peters and Jenkins and requested the Court dismiss Counts I (TVPA), III (Aiding & Abetting), and IV (Conspiracy) as to Peters and Jenkins without prejudice. ECF 176 at 3, n.3 and 10, n.7. At the same time, however, Plaintiffs' opposition set forth additional facts as to Peters and Jenkins, adduced after the SAC had been finalized in December 2023, which Plaintiffs represented would be alleged in a future amended complaint that would address the purported deficiencies and for which they expressly requested leave to file. ECF 176 at 7-8 (additional facts relating to Peters' knowledge/obstruction and Jenkins' finances), 7, n.4 (requesting any dismissal be without prejudice so that Plaintiffs can amend to add additional factual allegations to address deficiencies the Court may find), 10, n.7 (requesting Court dismiss Counts I, III, and IV as to Peters and Jenkins without prejudice).[2]

---

[1] Sparks' motion only sought to dismiss Count VI (Substantive Due Process). ECF 132.

[2] Plaintiffs' opposition also included additional facts about Higgins. ECF 176 at 8. Based on discovery and further investigation conducted between the time of filing their Opposition to the Motions to Dismiss and the Court's ruling thereon, Plaintiffs determined that dismissal of Defendant Higgins was warranted. Baehr-Jones Decl. ¶ 4. As such, the proposed Third Amended Complaint does not seek to re-name Higgins and Plaintiffs do not discuss him in this Motion.

On August 21, 2024, the Court issued an order granting in part and denying in part the individual Defendants' motions to dismiss. ECF 301 ("MTD Order"). The MTD Order made the following rulings:

- The Court dismissed the TVPA obstruction claim under 18 U.S.C. § 1591(d) (Count II) as to Jenkins, Peters, and Higgins. ECF 301 at 8-16. It sustained the claim as to Legault. *Id.* at 15-16.
- The Court dismissed the Substantive Due Process claim (Count VI) as to Jenkins, Peters and Higgins. *Id.* at 16-24. It upheld the claim on the shock-the-conscience theory as to Sparks and Legault (*id.* at 21, 23) but dismissed the state-created danger theory as to Sparks. *Id.* at 23-24.[3]
- The Court ruled that the defendants were not entitled to qualified immunity at this stage. *Id.* at 24-27.

The MTD Order did not make any mention of, or issue any findings as to, Count I (TVPA, § 1591(a)), Count III (Aiding & Abetting), or Count IV (Conspiracy). *See generally* ECF 301. The Order also did not state that any of the dismissals were with prejudice. *Id.*

Plaintiffs now seek leave of Court to file a Third Amended Complaint ("TAC"). Baehr-Jones Decl., Ex. 1. If filed, the TAC will re-name Jenkins as a defendant on Count I (TVPA, § 1591(a)(1) and (2)); re-name Peters as a defendant on Count II (TVPA Obstruction, § 1591(d)), and re-name both Peters and Jenkins on Count VI (Substantive Due Process). The TAC adds extensive factual allegations and evidence adduced since December 2023, when the SAC was finalized. The new factual allegations are all relevant to Plaintiffs' currently pending claims against the City, Turner, Sparks, and Legault. No new claims are added as to the currently-named Defendants. The counts re-alleged as to Peters and Jenkins are based on the same theories previously alleged. Because it is unclear what effect (if any) the MTD Order had on Count III

---

[3] Plaintiffs do not seek to reassert the state-created danger theory as to Sparks or anyone else.

(Aiding & Abetting) and Count IV (Conspiracy) with respect to Peters and Jenkins, Plaintiffs identify that the TAC also asserts these claims as to Peters and Jenkins.[4]

### III.    SUMMARY OF NEW FACTUAL ALLEGATIONS

To demonstrate the breadth and evidentiary basis of the TAC's new allegations, the chart filed as Exhibit 2 to the Baehr-Jones Declaration summarizes the new allegations with citations to supporting evidence and the date on which Plaintiffs obtained that evidence. *See* Baehr-Jones Decl., Ex. 2 ("New Facts Chart"). As shown, all the newly alleged facts are based on evidence obtained well after the SAC was filed as a proposed amendment on December 12, 2023. *Id.* Key pieces of evidence were only obtained in the last three months. For instance, David Hilton's email to JCPD leadership on September 19, 2020, which shows that Turner and Peters knew about Williams' digital devices, knew about the need for a follow-on warrant, and, by reasonable inference, made the decision <u>not</u> to obtain one, was only produced by the City on July 5, 2024. *Id.* Plaintiffs obtained Jenkins' and Sparks' bank records on August 6, and October 4, 2024, respectively. *Id.* Plaintiffs have not delayed in finalizing the TAC given the timing of discovery in this case.

### IV.    ARGUMENT

#### A.  August 21, 2024 Order on Motions to Dismiss Was (Or Should Be Clarified As) Without Prejudice as to Most, If Not All, Claims Alleged Against Peters and Jenkins

The determination of whether to allow an amendment to the pleadings is left to the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In the absence of any apparent reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the amendment—the

---

[4] The TAC does <u>not</u> re-allege Count I (TVPA, § 1591(a)(1), (2)) as to Peters or Count II (TVPA Obstruction) as to Jenkins. The TAC also does not re-name Higgins as a defendant but does add factual allegations regarding Higgins in support of pending claims against other Defendants.

leave sought should be freely given. *Foman*, 371 U.S. at 182. As set forth below, Plaintiffs easily satisfy Rule 15's liberal amendment standard. *See* Sec. IV.B., *infra*.

Peters contends that the Court's MTD Order was made with prejudice. ECF 323, 365. While the MTD Order itself is silent as to whether the dismissals were with or without prejudice, Peters argues that this silence should be presumed as dismissing with prejudice. ECF 323, 365. Plaintiffs disagree. *See* ECF 353.  In their opposition to the motions to dismiss, Plaintiffs included arguments and substantial new facts showing how they could amend their complaint to address the issues raised on the motion. ECF 176 at 7-8, 7 n.4, 10 n.7. Where a plaintiff makes an affirmative showing in its opposition to a motion under Rule 12(b)(6) that it can amend to cure the issues raised in the motion, the court should allow leave to amend. *See Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (leave to amend should be granted where plaintiff's opposition to a Rule 12 motion included facts showing a "reasonable probability" he could overcome the complaint's deficiencies by amendment). The MTD Order did not indicate whether it dismissed Peters and Jenkins with or without prejudice. But a court may clarify whether a prior order is with or without prejudice. *See Chambers v. Nationwide Mut. Ins. Co.*, 2021 WL 463279, at *2 (N.D. Ohio Feb. 8, 2021) (granting a motion to clarify and holding its prior ruling was made with prejudice because plaintiff had failed to show an ability to cure as explained in *Newberry*). Here, Plaintiffs request the Court consider the facts raised in their opposition to the motions to dismiss, and again in the present amendment, and clarify that the MTD Order dismissing Peters and Jenkins was without prejudice.

Assuming, *arguendo*, Peters is correct and he and Jenkins were dismissed with prejudice, the TAC is not foreclosed. Plaintiffs would simply be held to a higher standard in seeking to re-name them as defendants. *See Energy Conversion Devices Liquidation Trust v. Trina Solar Limited*, 833 F.3d 680, 691 (6th Cir. 2016) (permissive standard of Rule 15(a)(2) does not apply when a party seeks to amend its complaint after an adverse judgment). Plaintiffs would need to satisfy both the "modest requirements of Rule 15" and a "heavier burden" that applies to requests "for reopening a case." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010); *see also Foman*, 371 U.S. at 182. Under this standard, courts must consider the

"competing interest of protecting the finality of judgments and the expeditious termination of litigation," *Leisure*, 616 F.3d at 615–16, which can be satisfied in a number of ways including by showing their proposed amendment will "prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Accepting Peters' view of the MTD Order, *arguendo*, this heightened amendment standard would, <u>at most</u>, apply only to the TAC's assertion of the TVPA obstruction claim against Peters (Count II) and the substantive due process claim against Peters and Jenkins (Count VI). In the February 23, 2024 Order on Plaintiffs' motion for leave to file their SAC, the Court found that the facts in the SAC were insufficient to allege a beneficiary theory of liability under Count I (TVPA, 18 U.S.C. §§ 1595, 1591 (a)) as to Legault and Higgins. ECF 119 at 14-16. In light of these findings, Plaintiffs conceded in their opposition to the motions to dismiss that the facts in the SAC were similarly insufficient to allege a beneficiary theory of liability under 18 U.S.C. §§ 1595, 1591 (a) as to Peters and Jenkins and requested the Court dismiss Counts I (TVPA), III (Aiding & Abetting), and IV (Conspiracy) as to Peters and Jenkins without prejudice. ECF 176 at 3, n.3 and 10, n.7. The MTD Order did not discuss these claims at all, made no findings as to the sufficiency of the allegations supporting them, and did not state anywhere in the order that they were dismissed. *See generally* ECF 301. At the very least, therefore, the MTD Order should not be construed an "adjudication on the merits" or "adverse judgment" as to these claims. *See Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (abuse of discretion may occur when a district court does not state the basis for precluding amendment); *Dykes-Bey v. McRoberts*, 2016 WL 11618608, at *1 (6th Cir. Sept. 13, 2016) (district court found plaintiff failed to plead a plausible due process claim but court did not expressly address equal protection or retaliation claims; Sixth Circuit affirmed the district court's dismissal of due process claims but remanded the case for further proceedings on retaliation and equal protection claims). The more liberal Rule 15 standard should be applied to the TAC alleging Count I

(TVPA beneficiary liability) as to Jenkins[5] and Count III (Aiding & Abetting) and Count IV (Conspiracy) as to both Jenkins and Peters.

**B. Plaintiffs Meet (and Exceed) Rule 15's Liberal Amendment Standard the Applicable Standard and Should Be Given Leave to File the Proposed Third Amended Complaint**

As demonstrated above, the liberal amendment standard under Rule 15 applies to all proposed amendments in the TAC *except* the re-naming Peters as a defendant on Count II (Obstruction) and Peters and Jenkins as defendants on Count VI (substantive due process). The other amendments do not seek to revive any other claims, theories, or parties that were dismissed as a result of the August Order. The new facts alleged as to Peters and Jenkins should be analyzed under Rule 15 as they are relevant to the currently operative claims. *See* Ex. 2, New Facts Chart.

Leave to amend under Rule 15 should be granted. None of the exceptions to the liberal amendment standard exist here. Plaintiffs have expeditiously moved to amend (in just over 10 weeks following the MTD Order). The Court has previously acknowledged the "complex and sensitive" subject matter of this case—an alleged conspiracy between JCPD and a serial rapist. ECF 119 at 6. And as shown in the New Facts Chart, discovery in this case has been proceeding at full-tilt, rapidly developing new facts concerning the conduct challenged in the lawsuit. There is also no reason to believe Plaintiffs' proposed amendment is made in bad faith or for dilatory purposes. The TAC renames Peters and Jenkins in light of evidentiary discoveries made since the filing of the SAC. *See* Ex. 2. Leave to amend should be granted under Rule 15.

**C. Plaintiffs Meet the Heightened Amendment Standard as to Peters and Jenkins**

Even under the heightened amendment standard, Plaintiffs should be granted leave to assert all claims against Peters and Jenkins, as it would be manifestly unjust to disallow the amendment. Under Civil Rule 59, Plaintiffs can satisfy the heightened standard for amending in several ways, including by showing their proposed amendment "prevent[ed] manifest injustice." *Intera Corp*, 428 F.3d at 620. Again, this determination is committed to the trial court's discretion. *Leisure Caviar*, 616 F.3d at 615.

---

[5] The TAC does not allege Count I as to Peters.

A common theme in cases where this heightened standard is found to be satisfied is that the plaintiffs raised the concept of amendment prior to dismissal because, under such circumstances, the defendant is put on notice that the dismissal is not necessarily final. *See, e.g., Geeo v. Bonded Filter Co., LLC*, 2023 WL 3259465, at *3 (M.D. Tenn. May 4, 2023). As explained above, Plaintiffs expressly requested leave to amend and provided additional facts that would cure the deficiencies raised by the defendants' motions. ECF 176 at 7-8, 7 n.4, and 10 n.7. Another common theme is where the dismissal "concerned factual allegations rather than legal issues" and the proposed amendment merely "attempt[s] to remedy the defects identified by the [court]." *See Geeo*, 2023 WL 3259465, at *3; *Morse*, 290 F.3d at 801. As explained, the TAC does not seek to remedy legal issues. It does not assert different theories of liability or different claims. It only seeks to bolster factual allegations. *See* Sec. II.

    *1.  Justin Jenkins*

As summarized in the above chart, the TAC sets forth additional facts showing Jenkins' key role in the extortion scheme, in which JCPD officers benefited financially from Williams in exchange for permitting him to continue to perpetrate his sex trafficking crimes with impunity. Jenkins' actions on September 19, 2020, were not minimal. Rather, Jenkins played an equal role as Sparks in ensuring that Williams could destroy and conceal evidence, both in the immediate aftermath of Mikayla Evans' fall when Williams' apartment was an active crime scene, and when the officers returned later that day to execute the search warrant. Similarly, there is now ample circumstantial evidence demonstrating that Jenkins benefited financially from the conspiracy.

According to video footage from Williams' entryway, Jenkins arrived at the same time as Sparks in the early morning hours of September 19, 2020. He appeared to be the officer who took photographs that night, based on video footage showing Jenkins leaving with a camera around his neck.[6] Baehr-Jones Decl., Ex. 3. Thus, Jenkins—as the one taking the photographs— must have known about the placement of the Arlo video cameras, the "Call Arlo!!!" note, and

---

[6] This also is clear from the photographs themselves which depict other officers in the apartment, including Sparks, but not Jenkins.

Williams' bloody hands, among other obvious pieces of evidence which were left unsecured, untested, and/or not inventoried at the time the officers left. Video footage also shows that Jenkins was the last officer to interact with Diaz-Vargas before all the JCPD officers left that morning. *Id.* On the video, Jenkins pauses and watches as Diaz-Vargas turns and re-enters Williams' apartment. *Id.* Only then does Jenkins turn and walk down the stairs. *Id.* Thus, Jenkins played a key role in ensuring that Williams' apartment was left unsecured with Diaz-Vargas remaining inside.

Jenkins also appeared to play an equal role as Sparks in the execution of the search warrant on September 19, 2020. The dispatch log shows that Jenkins was the first officer to arrive that day at 10:08 a.m. and one of the last officers to leave (at the same time as Sparks) at 7:44 p.m. ECF 393-8. In total, Jenkins spent nearly ten hours in Williams' apartment. *Id.* Thus, Jenkins would have been the first officer to see the rifle in the entryway yet <u>take no action to secure or seize it</u>. ECF 393-9. It is reasonable to conclude that Jenkins was also aware of the "Raped" list and <u>took no action to seize or inventory it</u>. ECF 393-10. It further reasonable to conclude that Jenkins was involved in the decision to wait at Williams' apartment so that other JCPD officers could bring a dolly to cart off the large safe, even though there was <u>no obvious evidentiary tie</u> between the safe and the crime under investigation (attempted homicide). ECF 393-11. Plaintiffs allege, based on the new evidence, that there was an agreement between the searching officers that day and Williams that the officers (Sparks, Jenkins, and others) would take the safe in exchange for <u>not</u> searching the digital devices. This is particularly critical evidence that provides a basis for Plaintiffs to allege that Jenkins benefitted financially from taking these actions on September 19, 2020. His principal role that day is evidence of his direct involvement in the scheme to benefit finically from Williams by taking cash and other items of value from Williams' safe and, in exchange, permitting Williams to continue to perpetrate his sex trafficking crimes.

All of the above evidence from September 19, 2020, was obtained by Plaintiffs on or after March 4, 2024. Thus, Plaintiffs could not have alleged Jenkins' extensive role in the scheme at the time of the SAC's filing.

There is also new evidence to establish the "knew or should have known" element of beneficiary liability as to Jenkins. *See* 18 U.S.C. § 1595. Specifically, Jenkins would have seen the "Raped" list on September 19, 2020 and thus would have known—at a minimum—that there was evidence Williams had raped nearly two dozen women, including possibly babies and girls. ECF 393-10. Most critically, Jenkins, along with Sparks, seized the digital devices from Williams' apartment. ECF 391-2. These devices had on them overwhelming evidence of Williams' years-long sex trafficking conspiracy, including videos/images of Williams raping dozens of women and an unknown number of children, and evidence that Williams was producing and trading child sexual abuse material (CSAM).[7] *Id*. Jenkins, as one of the officers seizing and inventorying these items, would have known that the September 19, 2020, search warrant authorized the seizure of these items and therefore set forth sufficient probable cause under the Fourth Amendment for a follow-on search warrant. Yet, Jenkins, along with Sparks, took no action to search the devices and, instead, intentionally allowed for this evidence to sit unlawfully in JCPD custody for the next two and a half years while Williams continued to prey on women and children. ECF 393-15. By September 23, 2020, when the officers opened Williams' safe and allegedly took the money in exchange for <u>not</u> obtaining a search warrant for these devices, Jenkins and Sparks <u>should have known</u> about the evidence on the digital devices because they should have sought the follow-on search warrant. Accordingly, at the very least, the "should have known" standard is met here for purposes of beneficiary liability.

Evidence from Jenkins' bank records also provides a basis to allege Count I as to Jenkins. As set forth in the TAC, Jenkins operated what appears to be a money laundering scheme involving multiple car loans during the time frame of the conspiracy, with over $400,000 in paid-off loans. ECF 346-3. This represents a sum significantly above amounts available from any known sources of income and is evidence supporting that he was benefitting from the extortion

---

[7] The online trade of CSAM by collectors and producers of CSAM meets the element of "in exchange for something of value" for purposes of 18 U.S.C. § 1591. *See, e.g.*, *United States v. Harrell*, Case No. 2:17-cr-00404-AB-1 (C.D. Cal. June 27, 2017), ECF 11, Indictment (exchange of child pornography on darknet website between producers of CSAM alleged in criminal indictment as "the exchange of something of value" for purpose of 18 U.S.C. §§ 1591(a), 1594).

scheme. For instance, in the days immediately after the search of Williams' apartment, Jenkins paid off one loan worth $34,308.89 and opened a new loan for $45,236.22. ECF 346-3. There is also circumstantial evidence of a direct payment between Female 4 and Jenkins. On June 1, 2022, Female 4 withdrew $11,800 in cash, and the next day, Jenkins opened a new auto loan for $11,000 (total financing of $11,855.79). ECF 346-6; ECF 235 at 7. This was one of nine auto loans Jenkins took out within four years, purportedly for a 2006 Toyota Tundra despite having just paid off a loan for a 2018 Toyota Tundra in January 2022. ECF 346 at 6. He paid off the loan just two months later. ECF 338 at 3. Certainly, by June of 2022, Jenkins knew or should have known that money he collected from the extortion scheme represented a benefit from Williams' sex trafficking conspiracy.

This conduct also "shocks the conscience," as the Court set forth in its August 21 Order. ECF 301. Jenkins is equally culpable as Sparks in accepting bribes in exchange for turning a blind eye to William's heinous sex trafficking crimes, as set forth above. This provides a sufficient basis to re-allege Count VI, a violation of Plaintiffs' substantive due process rights, as to Jenkins.

Finally, it would be manifestly unjust for Jenkins to evade accountability for the above conduct simply because Plaintiffs did not possess the evidence necessary to allege these details at the time of the SAC's filing. As alleged, Jenkins' conduct is just as egregious as Sparks': he benefitted financially for years by enabling Williams' predatory and lawless behavior. Powerful circumstantial evidence now demonstrates these payments and demonstrates a direct payment between Female 4 and Jenkins on June 1-2, 2022. ECF 364. Plaintiffs have also now alleged an agreement between the JCPD officers who searched Williams' apartment, including Jenkins and Sparks, to take cash and other items from the safe in exchange for not obtaining a search warrant for the digital devices. Had officers searched these devices, they could have prevented countless crimes at Williams' hands, including the rape of Female 12, the sexual exploitation of nine-month-old Minor Victim 1, and the drugging and loss of Female 10's life. Jenkins played a principal role in a corruption scheme that spanned years and affected the lives of dozens of women and children in Johnson City. Justice demands he be held accountable.

### 2. *Kevin Peters*

The new facts in the TAC, summarized in the above chart, establish Peters' leadership role in the conspiracy to obstruct enforcement of the TVPA (and the resulting obstruction). Audit trails show that Peters knew about both B.P.'s and Female 2's reports of rape by Williams in June 2020. ECF 391-13. Instead of taking action to investigate and charge Williams then, however, Peters actively obstructed the investigation into Female 2's case by calling her directly to ask her to repeat the details of her rape. Peters did this for the sole purpose of intimidating and harassing Female 2 in an effort to discourage her from pursuing her case. Peters succeeded. By the time Female 2 came to JCPD headquarters to provide a written statement to the investigating officer, she said that she had "learned her lesson" and did not wish to prosecute. ECF 391-7. Tellingly, Peters did not document his call to Female 2 or tell the investigating officer that he had talked to her.

Peters' key role in the obstruction efforts continued in September 2020. New evidence now establishes that Peters and Turner knew as of September 19, 2020, that Williams' digital devices were in JCPD custody and that a follow-on warrant was needed. The TAC alleges that Peters, as the head of CID, made the intentional decision <u>not</u> to obtain a search warrant in response to Sergeant Hilton's September 19th email. Peters then remained informed about the status of these devices and any new search warrants (or attempts to obtain search warrants) with respect to Williams. For example, on December 3, 2020, Sparks sent Peters a memo representing that Sparks and Saulsbury did <u>not</u> have sufficient probable cause to search Williams' garage. Ex. 4. And when Dahl pressed JCPD to finally obtain a search warrant for Williams' digital devices in November/December 2020, Peters assigned the task to Sparks intentionally, with the goal of delaying and further obstructing Dahl's effort to obtain a warrant. *Id.* Sparks then delayed sending a draft affidavit to Dahl until January 13, 2021, ultimately sending a draft so deficient it was useless. ECF 393-12; ECF 393-13; ECF 393-14.

By December 2020, at the very latest, Peters knew that Dahl was attempting to investigate crimes which amounted to sex trafficking. Dahl had connected Williams' rapes to a human trafficking case the TBI was investigating that involved the same co-conspirator, Female

1, and which also had other notable similarities. ECF 391-11. Dahl attempted to set up a meeting between the U.S. Attorney's Office—the prosecuting office which would have been in charge of opening a sex trafficking case under the TVPA—TBI, and JCPD to discuss this case and Williams. Ex. 6. Peters found out about the meeting, canceled it, and then met with the TBI investigator himself. Ex. 6. Thus, by December 8, 2020, Peters also knew about the TBI human trafficking investigation and knew that the steps he was taking to shut down Dahl's investigation were obstructing the potential enforcement of the TVPA by the U.S. Attorney's Office.

New evidence also shows that Peters knew there was a commercial aspect to Williams' sex crimes. On December 8, 2020, Peters discussed with Dahl and Turner evidence he had found on a victim's phone, which apparently showed one woman paying another woman to engage in sex acts with Williams, as well as invoices he had found. ECF 391-11. Thus, new evidence now demonstrates Peters' knowledge that his steps to obstruct the investigations into Williams were obstructing an investigation into sex trafficking specifically, not individual or disconnected sexual assaults.

New evidence also establishes that Peters directed the actions which resulted in Dahl's termination. For instance, an email from Legault to Turner and Peters shows that Turner and Peters were directing efforts by Legault and others to create a list of Dahl's cases she was investigating but had not yet presented for indictment. Ex. 5. This list was ultimately used by Peters and Turner as a pretext to terminate Dahl.

Finally, beginning in July 2022, Peters took a leadership role in obstructing Female 8's case. By this point, Peters knew that multiple victims had reported Williams' rapes; he knew about the evidence showing Williams had raped nearly two dozen women (the "Raped" list); he knew about the TBI human trafficking case and had obstructed Dahl's efforts to initiate a joint federal-state investigation; and he knew about the evidence showing Williams was a child sex predator (the baby doll). Peters nevertheless watched on a video feed, and directed, the interview of Female 8 conducted by Brady Higgins, the investigating officer in Female 8's case. ECF 391-12. Peters instructed Higgins to subject Female 8 to multiple harassing interviews. *Id*. During Female 8's second, entirely unnecessary interview, Higgins forced Female 8 to repeat four times

the details of waking up to Williams raping her until she broke down. *Id*. Peters directed Higgins to take these actions with the goal of discouraging Female 8 from pursuing her case.

Most egregiously, the case notes in Female 8's case are now missing a critical detail from her interview: Female 8 told Higgins she saw photographs of Williams putting his penis in the mouths of children. ECF 393-17. The report, however, states only that she saw photographs of Williams with children. *Id*. Audit trails show that this case note was edited. ECF 391-13. Plaintiffs have alleged that this first edit of the report—which is now missing from the City's audit system—materially changed the report to omit the evidence that Williams was sexually exploiting children. It is reasonable to infer that Peters, as the head of CID and the highest-ranking officer reviewing Female 8's written statement and recorded interviews, would have directed this edit.

In light of the severity of these allegations and evidence which supports them, it would be manifestly unjust to omit Peters, who was the decision-maker in many of the most egregious acts of obstruction, from the TAC.

     3.  *The Claims Alleged in the TAC Implicate Concerns for Life and Safety, Which Far Outweigh Any Other "Interest" That Might Be Furthered by Disallowing Amendment*

The heightened amendment standard applies to requests "for reopening a case." *Leisure Caviar*, 616 F.3d at 616. The purpose of the heavier burden is to "protect[] the finality of judgments and the expeditious termination of litigation." *Id*., 615-16. First, the MTD Order should not be interpreted as having "closed" this case against Peters or Jenkins. Even if they are not named defendants, Peters' and Jenkins' alleged conduct comprises a substantial part of the SAC and the TAC's claims against the City and other defendants. Peters and Jenkins will continue to be subject to discovery, including sitting for their deposition, and will, undoubtedly, continue to monitor and be involved in the development of the litigation.

Second, disallowing Plaintiffs' proposed TAC would not advance either of the interests underlying the heightened amendment standard. Indeed, the Court-ordered schedule for this litigation has already established in a manner that will accommodate the TAC's amendments. *See* ECF 418 (Case Scheduling Order). This litigation would not be resolved any faster if the

Court were to deny the requested leave to amend. The interest of protecting the finality of judgments is also not implicated. Jenkins and Peters have known since the September 6, 2024 hearing that Plaintiffs would seek to re-name them in a third amended complaint. Baehr-Jones Decl., ¶ 12; *see also* ECF 346 at 7 (filed 9/24/24) (stating intent to move to amend complaint). In light of this, it is highly unlikely that Jenkins and Peters could have relied to their detriment in any way on any supposed "finality" of the MTD Order. *See Geeo*, 2023 WL 3259465, at *3 (leave to amend granted where defendants were on notice of potential amendment). Indeed, there has not even been an entry of judgment in favor of either of them. Jenkins and Peters have not suffered and will not suffer any prejudice as a result of this amendment.

Finally, any interest in protecting the finality of judgments and expediting the termination of litigation is far outweighed by the policies and purpose underpinning Plaintiffs' TVPA and TVPA-related claims and § 1983 claim against Peters and Jenkins. The TVPA exists to protect victims of sex-trafficking and to "ensure just and effective punishment" of those who violate the TVPA. *See United States v. Jungers*, 702 F.3d 1066, 1074 (8th Cir. 2013). This includes "those who financially benefit from participation in ventures that they knew, or should have known, involved sex trafficking, regardless of whether those individuals or entities actually carried out the trafficking themselves." *B.D.G. v. Choice Hotels Int'l, Inc.*, 2023 WL 5935646, at *4 (S.D. Ohio Sept. 12, 2023) (citation omitted). In light of the substantial evidence supporting Plaintiffs' proposed claims against Peters and Jenkins, the fact that there cannot have been any meaningful prejudice to these individuals in the 2.5 months since the MTD Order was issued, and the gravity of the allegations, it would be manifestly unjust to disallow the filing of the TAC as to Peters and Jenkins.

## V.     CONCLUSION

Accordingly, Plaintiffs respectfully request the Court grant leave to file the proposed Third Amended Class Action Complaint, attached hereto.

Submitted this 1st day of November, 2024.

*/s/ Julie C. Erickson*
Julie C. Erickson (California Bar # 293111)
Elizabeth A. Kramer (California Bar # 293129)
Kevin M. Osborne (California Bar #261367)
*Pro Hac Vice*
Erickson Kramer Osborne LLP
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law


*/s/ Heather Moore Collins*
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com


*/s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones CABN # 281715
*Pro Hac Vice*
Advocates for Survivors of Abuse PC
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com


*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on November 1, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>rachel@hbm-lawfirm.com | Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>  kberexa@fbb.law<br>  ballen@fbb.law<br>  jdowd@fbb.law<br>  msutton@fbb.law<br>  gpatton@fbb.law |
| Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON &<br>LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com | *Counsel for Toma Sparks in his individual Capacity* |
| *Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, and Investigator Toma Sparks, in his official capacity* | Keith H. Grant<br>Laura Beth Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>kgrant@rswlaw.com<br>lrufolo@rswlaw.com<br>awells@rswlaw.com |
| Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com | *Counsel for Defendant Jeff Legault and Alleged Defendant Justin Jenkins and their individual capacities* |
| *Attorney to Defendant City of Johnson City, Tennessee* | Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 North Jefferson Avenue<br>P. O. Box 3347<br>Cookeville, TN 38501<br>danny@moorerader.com |
| | *Counsel for Defendant Karl Turner and Alleged Defendant Kevin Peters in their individual Capacities* |

*/s/ Julie C. Erickson*

Julie C. Erickson