**In the Matter of:**

B.P.

vs.

City of Johnson City, Tennessee, et al,

**STEVEN FINNEY**

*July 17, 2024*



www.LexitasLegal.com
Ph.(615) 595-0073

Lexitas operates in all 50 states and is licensed where required. Nevada Registration #116F, California Firm Registration #179

15      Q.        So your testimony is that you have
16  no awareness that the DOJ stopped working with your
17  office following our July phone call?
18      A.        No.  No.
19                July 23rd.  July 23rd, correct?
20      Q.        Correct.
21      A.        No.
22      Q.        Okay.  I want to show you an email
23  and ask if you've ever seen this email.
24                MS. BAEHR-JONES:  And this is going
25                to be marked as Exhibit -- can you give me

(615)595-0073        Lexitas operates in all 50 states and is licensed where required. Nevada Registration #116F.        111
www.lexitaslegal.com                        California Firm Registration #179

Case 2:23-cv-00071-TRM-JEM    Document 426    Filed 11/06/24    Page 2 of 30
PageID #: 10213

1          the next?

2                    COURT REPORTER:  132.

3                    MS. BAEHR-JONES:  132.

4                    (Exhibit 132 marked).

5                    MR. RADER:  Can you tell us the

6          Bates stamp numbers, please, counsel?

7                    MS. BAEHR-JONES:  This is not Bate

8          stamped.

9                    MR. RADER:  Do you have enough

10         copies for all counsel of documents that are

11         not Bate stamped?

12                   I'll take that as a no.

13                   MS. BAEHR-JONES:  I have five

14         copies of this.

15                   MS. TAYLOR:  Has this been

16         produced?

17                   MS. BAEHR-JONES:  No.

18                   MR. RADER:  What -- why was it not

19         produced in response to the request for this

20         information?

21                   MS. BAEHR-JONES:  Because I

22         probably messed up, and this is probably

23         investigatory privilege, and I should

24         probably not have produced this right now.

25         That is probably the answer.  But here we

Lexitas operates in all 50 states under one licensed where required by law for registration or
www.lexitaslegal.com          California Firm Registration #179

1      are.

2            I think this witness has made this

3      relevant, and our conversations have made it

4      relevant.  So that would probably be my

5      error.

6            MR. RADER:  Well, I'd like just a

7      moment to read it, please.

8            MS. BAEHR-JONES:  Okay.

9            MS. KRAMER:  I'll see if I can send

10     an email to everybody right now.

11           MR. HERRIN:  Is there anything else

12     that is not being produced today that you --

13           MS. BAEHR-JONES:  No.

14     Q.   (BY MS. BAEHR-JONES) Okay.  I want to

15    just ask you, have you seen this email before today?

16     A.      I have not.

17     Q.      Did Abby talk about this email with

18    you?

19     A.      Not that I know, because I thought

20    Mike is the one who discovered who your clients

21    were.  You all talked about it.  And I know -- I can

22    say this, your client list is not -- has not been

23    mentioned outside of my office as far as -- as far

24    as I know.  And I have every faith in the world that

25    this has been kept as confidential as possible in my

Lexitas operated in all 50 states and licensed where required. Includes Lexitas Registration #46
www.lexitalegal.com           California Firm Registration #179          113

1 office.  I really believe that.

2    Q.  Did Abby talk to you after our

3 phone conversation on July 26th about concerns that

4 the FBI or the DOJ had with how the DA's office was

5 running its investigation?

6    A.  No.  No.

7    Q.  So you are not aware of that?

8    A.  No.

9    MR. HERRIN:  I object, to imply

10   that they should be aware of that.

11    Q.  (BY MS. BAEHR-JONES) All right.

12 I'm going to hand out to you the next exhibit, which

13 is going to be marked as 133.

14    (Exhibit 133 marked).

15    MS. BAEHR-JONES:  No, but they have

16   this.  You saw this yesterday.

17    MR. RADER:  Has this document been

18   Bate stamped and produced?

19    MS. BAEHR-JONES:  It has been

20   produced.

21    MR. RADER:  Is there a Bate stamp

22   number where it was produced?

23    MS. BAEHR-JONES:  I don't have the

24   Bates number on this, but it's been

25   produced.

Lexitas operates in all 50 states and in areas where required under Registration or
California Firm Registration #179
www.lexitaslegal.com

```
 1              MS. KRAMER:  It is attached to
 2      our -- your response to our motion.
 3              MS. BAEHR-JONES:  Correct.  It's
 4      also in the public record.
 5      Q.   (BY MS. BAEHR-JONES) So reading through
 6  this letter, what is this?
 7      A.      I don't -- I'm reading it just to
 8  be sure.  It's a letter I sent you.
 9              MR. HERRIN:  I'd like to read it,
10      too.
11              MS. EVAN:  I do not have a copy of
12      it.
13              THE WITNESS:  I'm -- I'm reading --
14              MS. BAEHR-JONES:  Liz, what's your
15      email address?
16              MS. EVAN:  ████████████████████
17              MS. BAEHR-JONES:  ████████████████
18              MS. EVAN:  ████████████
19              MS. BAEHR-JONES:  Thank you.
20              MS. EVAN:  ██████████████
21      Q.   (BY MS. BAEHR-JONES) Okay.  So what is
22  this?
23      A.      It's a letter I sent to you.
24  Obviously, it is after the victim that wanted the
25  compensation.  It's after that.  And it's after I
```

Case 2:23-cv-00071-TPM-JEM   Document 426   Filed 11/06/24   Page 6 of 30
PageID #: 10217

Lexitas Exhibit – Available in all 50 states – Nationwide where permitted – Legal Registration #179
www.lexitaslegal.com                                California Firm Registration #179

115

1    conferred with the Board of Professional

2    Responsibility whether I could proceed forward and

3    send in an investigator to talk to your clients,

4    even though you said go through you.

5            Q.        Correct.

6            A.        That's what the letter -- yeah.

7            Q.        And in the letter, on Page 2, you

8    say, "These efforts have been impeded by you."

9            A.        Yes.

10           Q.        How have I impeded your criminal

11   prosecution of Williams?

12           A.        Okay.  Yeah -- and again, first of

13   all, when you say -- we're on two parallels for the

14   same thing.  It's what you think justice is versus

15   what I believe justice is, okay?  I want him to go

16   away for the rest of his life, okay?  So I need

17   these ladies.  I need these victims.  I need these

18   survivors.

19                    What we have right now is three

20   child cases, okay?  Defense, there's not going to be

21   much way they can tear into them, okay?  The defense

22   will do all these nasty things to these adult

23   ladies.  We need them.  And I am being gender,

24   because we know this case to date is all about

25   female victims.  And I need them to come in so we

Lexitas                Lexitas operates in all 50 states and is licensed where required.             California Firm Registration #179
www.lexitaslegal.com                                                                                                                    116

1    can work with them, prepare them, trust us, know

2    that we are -- that we are totally committed,

3    invested in them, because what's going to be the

4    difference on the state case is that the defense is

5    going to do God awful things to them, like we all

6    know happens in these type of cases.

7                      Whereas, with the federal case,

8    the -- the -- shoot, I just drew a blank.  The

9    trafficking would not be the same questions, the

10   same issues that it would be in our state case.

11                     So what I'm saying, and why I'm

12   saying that is that we need the victims, not you

13   saying, "I represent the victims, you can run

14   everything through -- through me."  That doesn't

15   work.  We've got to have them.

16            Q.       But let me just ask you, there are

17   images and videos of my victims being sexually

18   assaulted, right?

19            A.       But it won't work.  The defense --

20   let me tell you in a state case -- and I want you to

21   hear this.

22                     In a state case, I can't just put

23   on the video and be done with it in an adult case.

24   It doesn't work that way.  The defense, the first

25   thing they're going to say is, "Consent."  Defense,

Lexitas operates in all 50 states and is licensed where required. Lexitas Registration or
www.lexitaslegal.com                California Firm Registration #179

```
 1   not me.  That's what we've got to prepare these
 2   ladies for.
 3          Q.      But isn't it true that some of the
 4   folders are labeled first name of victim - drugged?
 5          A.      I don't know.
 6          Q.      So you haven't reviewed the
 7   evidence?
 8          A.      No, that's not -- I'm up here.  My
 9   investigator, they're still working it.  And when
10   there would be a finished product in -- and it
11   probably works the same in the federal system.
12                  Investigators bring cases to you,
13   okay?  And you base what you do on what your
14   investigator tells you based on the witnesses he's
15   talked to and the Assistant DA.  The Assistant DA,
16   they confer together with the investigator.  They
17   present the case to you on what should be charged
18   and where we end -- where we end up.
19                  Am I involved to the very -- like
20   the ground floor on each and every case?  No.
21          Q.      But you --
22          A.      This isn't Los Angeles.  We've got
23   133,000 people just in this one county, and I've got
24   about 12 attorneys that cover the whole thing.
25          Q.      But, Steve, you seem very certain
```

Lexitas operates in all 50 states and licensed where required.  Nevada Registration #119
www.lexitaslegal.com      California PI Registration #179

1  that you needed them to come in to be able to prove

2  your case.

3          And what I'm asking you is, did you

4  review any of the evidence in their cases in order

5  to make that determination?

6          A.       I went on what Mike -- what Mike

7  told me is on there, not in each and every one, but

8  a generalization of what it was and where we were,

9  you know, wanting to go with it.

10         And even in our conversation on the

11 phone, we talked about, "Well, can you use -- can

12 you use their initials?"  Well, we never had.  Abby

13 was like, "Well, I've never done that before in an

14 adult, in juvenile court, juvenile cases."  And I

15 said, "Well, you know, we could."  You said, "Well,

16 you can't -- we don't want their names disclosed,

17 nothing like that."  And we're like, "Well, in

18 discovery they're going to get that, but" -- and you

19 brought up that we could do a protective order, and

20 I agree with that.

21         Q.       But let me go back to --

22         A.       We have to have them.

23         MR. RADER:  Let me object to the

24 continued interruption of the witness.  He's

25 answering --

Lexitas operates in all 50 states and in areas where registration
California Firm Registration #179
www.lexitaslegal.com

1          Q.    (BY MS. BAEHR-JONES) Let me go back to

2     let me go back to the question.

3                    MR. HERRIN:  Let me object to --

4                    MS. BAEHR-JONES:  Thank you.  Let

5          me go back to --

6                    MR. RADER:  I'd like the witness to

7          finish his answer.

8                    MS. BAEHR-JONES:  He did.  He did.

9                    MR. RADER:  But -- were you

10         finished, Mr. Finney?

11                   MS. BAEHR-JONES:  You made your

12         objection.  Thank you.

13         Q.         (BY MS. BAEHR-JONES) Let's go back

14    to the question that I asked.

15         A.         I would like to say one other thing

16    on --

17                   MR. HERRIN:  Thank you very much.

18         A.         And my -- the door is still open,

19    and we'll come to you.  Not to California, but we

20    will bring advocates, you.  I really would like to

21    have one of your Tennessee attorneys there, and

22    we'll talk to these ladies.  But that's all I want,

23    to get the best cases out of the identifiables.  I

24    just want the best cases.

25         Q.    (BY MS. BAEHR-JONES) Have you reviewed

Lexitas operates in all 50 states and in areas where Lauderdale & Lauderdale registration #179
www.lexitaslegal.com                California Firm Registration #179

1    the videos of my unconscious clients being raped?

2         A.        I have.

3         Q.        So how can you tell me that you

4    need them to testify to make their case in a

5    criminal trial?

6         A.        Because of what -- Mike tells me

7    the overview of how these happen.  In any trial with

8    an adult you can get -- defense -- it's not me.

9    It's not me.  I'm on their -- our people, our

10   victims, our victims, our survivor's side.  I'm

11   telling you, the defense is going to rip them up if

12   they limit it to the one isolated incident.  And

13   that's why we need to talk to them.

14                  Did you -- were you ever there

15   before?  Did you ever go back again?  Did you get a

16   special bowl of powder, you know?

17                  And don't -- and don't think for

18   one second that we are discrediting it, that this --

19   like women don't get date raped.  I mean, it's

20   obvious, okay?  And that -- don't think -- there's

21   no way.  We are victim oriented through all of this,

22   but I know the torture they're -- I'm glad the

23   victim is not here, because the shit that the

24   defense attorneys are going to do to these ladies.

25   And there's no way to prosecute it without them.

Lexitas operates in all 50 states under the trade name of Lexitas Legal.  Registration #116
www.lexitaslegal.com                California Firm Registration #179

1              There's absolutely no way to put on

2      a videotape without that person on that witness

3      stand to be cross-examined under the Constitution,

4      the Constitution of the United States, the

5      Constitution of Tennessee.

6              Q.        That's your testimony, that you

7      could never put on a case with a video unless the

8      victim is actually on the stand with the video?

9              A.        Yeah, in this one, in a rape case.

10     In this one, in this type of scenario.

11             Q.        But you haven't -- but you haven't

12     reviewed that video.

13             A.        No, I don't have to.  I've been

14     told enough by the investigator to know where we --

15     where we are.

16             Q.        But I actually never said that my

17     clients wouldn't come in, did I?

18             A.        Yes.

19                       MR. HERRIN:  Object to the

20                 testimony.

21             Q.        (BY MS. BAEHR-JONES) Let's look

22     at -- let's look at -- let me ask you this.

23             I don't represent every victim of

24     Sean Williams, do I?

25                       MR. RADER:  Object to the form.

(615)595-0073          Lextas operates in all 50 states and is licensed where required. Nevada Registration #179
www.lexitaslegal.com                              California Firm Registration #179                                    122

1        A.      I do not know the number right now.

2        Q.  (BY MS. BAEHR-JONES) Well, let me put

3  it this way.

4               Are there victims who I do not

5  represent who have come in to speak to your office

6  in person?

7        A.      Yes.

8        Q.      Have you prosecuted those cases?

9        A.      They've not been charged yet, no.

10       Q.      Okay.

11       A.      Not indicted yet.  I'm not charging

12  on a warrant.  It's going to be an indictment.

13       Q.      You write next in this letter, "As

14  of this writing, it does not appear that you have

15  the proper privileges necessary to provide legal

16  representation of clients in the state of Tennessee.

17  Therefore, any further involvement between you and

18  any victim of Sean Williams' case with respect to

19  legal advice or representation relating to the

20  ongoing state criminal prosecution could be

21  improper."

22             Who did you consult about that, you

23  know, ethical violation that you're accusing me of?

24       A.      I'm not accusing you of an ethical

25  violation.  What I'm telling you is my -- I found

www.lexitaslegal.com          California Firm Registration #179          123

1   out that pro hac vice for federal court is not state

2   court.  You're talking to us in a state court realm,

3   and without Ms. Collins or anyone else on any

4   phone -- the phone call I had with you, I'm trying

5   to find a way to get a state-involved person in your

6   team, okay, to see what I'm seeing in the Tennessee

7   statutes and Tennessee Rules of Professional

8   Responsibility.

9             Again, trying to get you to bring

10  your victims to the table with me, and that's --

11  that is not -- you know, you've been doing this a

12  long time, too.

13            That is written in the least, as

14  you say, threatening tone, the least threatening

15  tone possible, along with -- and I'm pointing out in

16  Exhibit 133 Paragraph -- second page, Paragraph 1

17  and Paragraph 2, which talks about the -- about

18  talking -- us talking to the victims.  And then also

19  about Paragraph 3, Page 2 of Exhibit 133, about the

20  victims' compensation.

21            If you took it threatening, I am

22  sorry you did.  That was not the tone of that, none

23  of this has ever been other than to try to speak to

24  these victims.  And not only speak to them, let them

25  understand where my team is coming from.

www.lexitaslegal.com                Lexitas operates in all 50 states and is licensed where required as a court reporting agency.                124
California Firm Registration #179

1    Q.        You conferred with the Tennessee

2    Board of Professional Responsibility about speaking

3    directly to my clients and not going through their

4    lawyer.

5    A.        Right.

6    Q.        Did you confer with them about your

7    statement that my representation of my clients was

8    potentially improper?

9    A.        No.

10   Q.        Did you --

11   A.        You saw exactly what I asked them

12   about.

13   Q.        Did you confer with any other

14   lawyer about your representation to me that my

15   representation of my own clients could be improper?

16   A.        No.  I conferred with one person on

17   the Board and asked them, unofficially, if --

18   because they were a former United States Attorney,

19   if -- if -- if ad hac vice for federal court also

20   applied for state court.  That's -- that's the only

21   thing I asked.  Guy Blackwell.

22   Q.        Who?

23   A.        Guy Blackwell.

24   Q.        And when was that?

25   A.        When was that?  Some time prior to

www.lexitaslegal.com
Lexitas - Serves all 50 states and anywhere worldwide
California Firm Registration #179

1    November 13th, 2023.

2            Q.      Did you take any notes of that?

3            A.      No.

4            Q.      Do you have any documentation of

5    that?

6            A.      Huh-uh.

7            Q.      Did you put any record to file

8    about you --

9            A.      No.

10           Q.      -- making this determination and

11   putting it to me in a letter?

12           A.      No, just -- it wasn't a

13   determination.  It was -- I asked him, "Does this

14   person who has federal ad hac vice for federal

15   court, does that blanket state court?"  And he said,

16   "No."  That was the end of the conversation about

17   that.

18                   MS. BAEHR-JONES:  Okay.  I want to

19           pass out another exhibit.

20                   So this is one of the exhibits to

21           the opposition to the Motion to Quash, and

22           we're going to get the next exhibit number

23           please.  134.

24                   (Exhibit 134 marked).

25                   MS. BAEHR-JONES:  Sorry.  I lost my

1          advocate in a manner in which --

2          Q.   (BY MS. BAEHR-JONES) I want to ask you

3     about the victim compensation funds email that is in

4     front of you.

5               And my question for you is does

6     this look like I am impeding your investigation?

7               MR. RADER:  Jeff, were you able to

8          get that down?

9               COURT REPORTER:  It's going to say

10         a bunch of simultaneous speaking.

11              MR. RADER:  Well, I object to

12         the -- Ms. Baehr-Jones asking questions

13         about her conduct and the underlying facts

14         of this case while she's an advocate in this

15         pending case.  I think that she's violating

16         Rule 3.7 of the Rules of Professional

17         Conduct, and I make the objection for the

18         record.

19         A.        And so your question again was is

20    that you impeding --

21         Q.   (BY MS. BAEHR-JONES) My question is --

22              MS. BAEHR-JONES:  Do you mind if I

23         have that one back just --

24         Q.   (BY MS. BAEHR-JONES) My question is

25    what about this is impeding your investigation?

Case 2:23-cv-00071-TRM-JEM  Document 426  Filed 11/06/24  Page 18 of 30
PageID #: 10229                                                      130
www.lexitaslegal.com

1    A.         We still haven't talked to them.

2    You're wanting the money for what -- the

3    compensation, but we haven't talked to them.

4                   MS. BAEHR-JONES:  Can I have the --

5    A.         And it's still an open door.  I'm

6    never going to shut up on that, because it is an

7    open door either way.  I'll come to you.

8    Q.    (BY MS. BAEHR-JONES) One of the things

9    that I was asking for from Mike Little was police

10   reports, correct?

11   A.         I have no idea.

12   Q.         Well, let's look at the exhibit.

13              In the email that I sent on

14   October 27th, 2023 --

15   A.         Okay.  I knew you all were

16   discussing the victim list, but I did not know in

17   what regard.

18   Q.         When did you find out that I was

19   asking for investigative reports for my clients?

20   A.         Oh, I don't know.  I have no idea.

21   I don't.

22   Q.         When you wrote the letter to me,

23   you were aware that HMC Civil Rights Law was local

24   counsel on this case, correct?

25   A.         I never thought -- yes, I should

```
 1    have by the pleadings, but I never talked to another
 2    soul or ever heard another name mentioned in this
 3    other than yours.
 4           Q.        But they were on the emails that
 5    were exchanged with --
 6           A.        I just admitted that.  Yeah.  I
 7    should -- yes.  I -- yes, they were on emails.
 8    You're the only person that I either talked or
 9    communication with.  It's like when you read a law
10    firm and it's blah, blah, blah, blah, blah and blah,
11    blah, blah.  I'll look to the first name, because
12    that's the person I'm going to be working and
13    dealing with.  And that's how I saw this.  Yes.  I'm
14    not denying what you're saying.  Yes, there was a
15    Tennessee counsel, but you're the person I dealt
16    with.
17           Q.        But actually they were on all of
18    the email exchanges with -- when we were setting up
19    the meeting in July, correct?
20           A.        Yeah.  Never look -- yes, but
21    you're the person.
22           Q.        Okay.  Well, didn't you receive a
23    letter from Heather Collins in August of 2023?
24           A.        I'd have to say yeah.
25           Q.        Okay.
```

Lexitas Legal
www.lexitaslegal.com

```
 1        A.        I've seen it in the file.

 2                  MS. BAEHR-JONES:  Can I get the

 3        next exhibit?  We're going to mark this as

 4        Exhibit --

 5                  COURT REPORTER:  135.

 6                  MS. BAEHR-JONES:  -- 135.

 7                  (Exhibit 135 marked).

 8                  MR. HERRIN:  Can I have a Bates

 9        number for this?

10                  MS. KRAMER:  This is an attachment

11        to --

12                  MS. BAEHR-JONES:  It's an exhibit.

13                  MS. KRAMER:  An exhibit to the

14        opposition to the Motion to Quash.

15                  MR. HERRIN:  Bate's number?

16                  MS. BAEHR-JONES:  Yes, it has

17        somewhere, but it's also a public record at

18        this point.

19                  MS. TAYLOR:  But it's not Bates

20        stamped?

21                  MS. BAEHR-JONES:  The copy that I'm

22        passing out is not Bate stamped.

23        A.        Yes, I've seen this.

24        Q.   (BY MS. BAEHR-JONES) So what's the date

25        on this letter?
```

www.lexitaslegal.com

1        A.        July -- August 16th, 2023.

2        Q.        And what's the date on the letter

3  that you sent me that is now Exhibit 133?

4        A.        November 13th.

5        Q.        So you were well aware by

6  November 13th that HMC Civil Rights represented the

7  plaintiff survivors.

8        A.        Yes.  Yes.  Yes, and should have

9  been.  Yes.

10       Q.        So there was nothing improper.

11       A.        I've never -- I've never said that

12  it's -- you know, I said this -- because we never --

13  I never spoke to Ms. Collins.  It's always been with

14  you.  Didn't know what Ms. Collins was doing with

15  you individually with the witnesses, individuals.

16  Didn't know if Ms. Collins was going to Knoxville to

17  meet with the feds or not.  Didn't know that

18  Ms. Collins was nothing more than just you signing

19  on somebody's Tennessee bar number.

20       Q.        She sent you a seven page -- six

21  page substantive letter about this case, correct?

22       A.        I've asked and answered the

23  question to my best ability.  I mean, I have.  I've

24  told you yes, she sent that.  Yes, I told you I've

25  dealt with the -- with you very limited.  The only

```
1    person I dealt with.  Not denying this letter wasn't

2    sent and she's not the Tennessee counsel.

3            Q.       And this is a substantive letter

4    about the case, correct?

5            A.       Yes.  Going -- going back to Dahl,

6    which kind of, you know --

7            Q.       Well, what is she asking you in

8    this letter?

9            A.       I have no idea.

10           Q.       Have you reviewed it?

11           A.       Not for today.

12           Q.       Did you read it at the time?

13           A.       Probably.

14           Q.       Well, what's it about?

15           A.       I have no idea.

16           Q.       I'll give you a chance to look

17   through it.

18                    MR. RADER:  I don't think you're

19           doing it intentionally, but you continue to

20           talk over the tail end of his responses.  I

21           request that you not do that.

22           A.       Okay.  Hang on just a minute.

23                    Yeah.  It looks like a general

24   overview of what had gone on so far, a rendition of

25   like Dahl's suit and what they claim.  It looks like
```

(619)995-0978                Lexitas operates in all 50 states and is licensed where required.  Nevada Registration #179        135
www.lexitaslegal.com                                California Firm Registration #179

14               MS. BAEHR-JONES:  Okay.  I want to

15    pass out what's -- this was just provided to

16    me today.  So I don't have a Bates number,

17    and I have not produced it.  It was given to

18    me by Ms. Evan.  So there's copies for

19    everyone, and we're going to mark it as

20    Exhibit --

21               COURT REPORTER:  136 --

22               MS. BAEHR-JONES:  136.  Thank you.

23    (Exhibit 136 marked).

24    Q.    (BY MS. BAEHR-JONES) So what is this?

25    A.      It's the -- it's the -- it's the

1    request that I made to the Tennessee Board of

2    Professional Responsibility to see if I could still

3    talk to the victims, even though you represent them.

4          Q.        Okay.  And why did you get this

5    opinion?

6          A.        Because I still wanted to talk to

7    them.  I still wanted to bring them into the fold.

8    And when I say bring them in, it don't have to be in

9    an office.  I mean, we've said that, but we can --

10   we can take our show on the road to make them feel

11   more comfortable, okay?

12                   Now, we have said all along, bring

13   them in our office, bring them in our office, but we

14   all have gone and done things outside the office,

15   you know, through the years.

16                   So I wanted -- I wanted to know if

17   we could go ahead and talk to them.  We chose not to

18   do it.  We never -- they said we could, but we chose

19   not to do it because we didn't want to further

20   alienate.

21         Q.        Well, what did they say here?  They

22   said that you --

23         A.        They said I could.

24         Q.        You would need to -- they advised

25   you to seek a court order, correct?

1          A.        Yeah.

2          Q.        Did you ever apply for that court

3     order?

4          A.        No.  No, because we don't have any

5     cases pending presently involving these.  We have

6     the children's cases which, in my opinion, to get a

7     court order in the children's cases would be totally

8     irrelevant.  It would almost be a fraud to say, "Oh,

9     we need to go talk to these ladies, but it's on the

10    children's case."

11         Q.        And you're aware that many of the

12    women that I represent were told multiple times,

13    "You have to come back into headquarters, you have

14    to come back into headquarters," and that that was

15    an incredibly discouraging thing for them.

16                  MR. HERRIN:  Object to the form of

17             the question.  That is not evidence.

18                  MS. EVAN:  I don't think he can

19             speak to how they felt about it.

```
 1                  C E R T I F I C A T E

 2     STATE OF TENNESSEE:

 3     COUNTY OF KNOX:

 4

 5                  I, Jeffrey D. Rusk, Registered

 6     Professional Reporter and Notary Public, do hereby

 7     certify that I reported in machine shorthand the

 8     foregoing proceedings; that the foregoing pages,

 9     inclusive, were prepared by me using computer-aided

10     transcription and constitute a true and accurate

11     record of said proceedings.

12                  I further certify that I am not an

13     attorney or relative of any attorney or counsel

14     connected with the action, nor financially

15     interested in the action.

16                  Witness my hand and official seal

17     this the 17th day of July, 2024.

18

19

20                  _____

21                  Jeffrey D. Rusk, RPR, CLVS
                    Notary Public at Large
22                  My Commission Expires:  4/29/2026
                    TCRB License No. 212
23

24

25
```

(615) 595-0073 Lexitas operates in all 50 states and is licensed where required, Nevada Registration #126F 377
www.lexitaslegal.com California Firm Registration #179

EXHIBIT __133__
WIT: _Finney_
DATE: _____
JEFF RUSK COURT REPORTING

☑ Washington County Office
115 W. Jackson Blvd.
Jonesborough, TN 37659
(423) 753- 5020 office
(423) 753- 4803 fax

☐ Unicoi County Courthouse
100 N. Main Street
P.O. Box 730
Erwin, TN 37650
(423) 743- 1113 office
(423- 743- 1120 fax

☐ Carter County Office
1500 West Elk Avenue
Suite 208
Elizabethton, TN 37643
(423) 547-5897 office
(423) 547- 5896 fax

**STEVEN R. FINNEY**
**District Attorney General**
**First Judicial District**

☐ Johnson County Office
301 West Main Street
Mountain City, TN 37683
(423) 727- 3959 office
(423) 727- 3965 fax

November 13, 2023

**_VIA OVERNIGHT_**

Mrs. Vanessa Baehr-Jones
Founding Partner
Advocates for Survivors of Abuse
4200 Park Boulevard, Number 413
Oakland, California 94602

Dear Mrs. Baehr-Jones:

I am writing to you to discuss certain issues related to the ongoing investigation of Sean Williams. As you are aware, my investigator has been involved in this case since June of this year with the assistance of the Tennessee Bureau of Investigation. While this is somewhat unconventional. I felt that it was necessary in order to avoid any potential conflict which may result due to pending civil litigation involving the Johnson City Police Department.

While it is the policy of my office to neither discuss nor disclose any specific details related to ongoing criminal investigations, I will share with you that my office and the Tennessee Bureau of Investigation have worked diligently over the past several months in building a multi-faceted criminal case against Mr. Williams. As a result of these efforts, Mr. Williams was indicted by a Washington County Grand Jury on September 11th of this year for crimes committed against child victims. In at least one of these cases, Williams is facing a mandatory sentence of life without the possibility of parole.

The investigations involving sexual based offenses against adult female victims are ongoing and it is my commitment to continue efforts in these cases. From the beginning. I have committed to pursuing these investigations in a manner which protects the well-being and dignity of the victims and to maintain a victim-centered approach. My office and the Tennessee Bureau of Investigation have made every effort to ensure that the victims are treated in a compassionate and empathetic manner and that resources such as victim advocates and therapy are readily available. These resources are provided at no financial cost to the victims.

In speaking with the investigators involved in this collaborative effort, it is my understanding that they have attempted to speak with the victims whom you represent in the federal civil class action lawsuit, filed June 21, 2023. However, these efforts have been impeded by you. While I am aware that you have been granted pro hac vice privilege for the purpose of representing a certain number of victims in the civil class action lawsuit filed in Federal Court for the Eastern District of Tennessee, I would point out that this privilege does not extend beyond that limited purpose. Rule 19 of the Tennessee Supreme Court sets forth the requirements necessary for you to appear pro hac vice in the State of Tennessee. As of this writing, it does not appear that you have the proper privileges necessary to provide legal representation of clients in the State of Tennessee. Therefore, any further involvement between you and any victim in the Sean Williams case with respect to legal advice or representation relating to the ongoing state criminal prosecution could be improper.

In order to proceed with the cases against Mr. Williams, it is imperative that these victims speak with state investigators. Additionally, for the victims who have already spoken with state investigators but are now being represented by you in the class action suit, the state investigators will need an open line of communication with them as well. It is unclear at this point as to whether any of these represented victims wish to participate in the state prosecution of Williams or continue cooperation with the investigation. I have conferred with the Tennessee Board of Professional Responsibility in this matter and pursuant to Tenn. R. Sup. Ct 4.2 Comment 5, will be proceeding.

Furthermore, my office is beginning to receive claims for compensation from the State of Tennessee's Criminal Injuries Compensation Program that have been filed by victims who are represented by you in the civil class action suit. Tennessee Code Annotated § 29-13-109(b)(2)(H) requires that any victim seeking compensation from this fund must fully cooperate with law enforcement and prosecution efforts. As part of this process, it is required that I sign an affidavit that all legal requirements have been met. Without speaking with these victims, we are unable to provide the necessary documentation for them to complete the application process. Once arrangements are made to meet with them, the process can proceed. Victim Witness Coordinators with my office as well as with the Tennessee Bureau of Investigation are willing to assist with this process.

I have instructed my investigator and assisting Special Agents with the Tennessee Bureau of Investigation to contact the victims who are being represented by you in the civil class action suit so that they can arrange to meet with the investigators, if they wish, to discuss their desire to pursue criminal prosecution against Mr. Williams in state court.

Sincerely,

Steven R. Finney
District Attorney General

From: **Chastain, Laura** lchastain@tbpr.org
Subject: Ethics Inquiry Answer
Date: November 8, 2023 at 9:37 AM
To: Finney, Steven R ████████@yahoo.com



Dear Mr. Finney,

Thank you for your inquiry to the Board of Professional Responsibility.

**Opinion:**

In my opinion Comment [5] to RPC 4.2 would allow you or your investigators to talk to the victims without consent of their lawyer. To be perfectly sure that you are not violating RPC 4.2 you could apply for a court order allowing communication with the victims being represented by the lawyer who told you not to talk to her clients.

Regards,
Laura Chastain

---

**Date of Inquiry:**
11/8/2023 7:40 AM

**Attorney Name:**
Steven R Finney

**BPR#:**
014307

**Telephone:**
423-753-5020

**Does this inquiry relate solely to your personal and proposed conduct (not prior conduct and not another attorney's conduct)?**
Yes

**Is this ethics matter pending or being contemplated in any current proceeding?**
No

**Applicable Facts:**
My name is Steven Finney, and I am the elected District Attorney for the First Judicial District comprising Washington, Carter, Johnson, and Unicoi Counties. The following is a scenario wherein I am seeking advice from the board.

The Johnson City Police Department is a named defendant is a civil lawsuit currently pending in the U.S. District Court for the Eastern District of TN. The allegations of the lawsuit generally speaking are the lack of involvement by Johnson City Police Department in investigating sex crimes.

My office investigator has since taken over investigating the cases and has identified approximately 70 potential victims.

The attorney handling the class action lawsuit, Vanessa Baehr-Jones, is out of California and is admitted pro hac vice in the U.S. District Court, Eastern District of TN regarding this case. She has approximately 12 clients/potential victims. Ms. Jones has informed my investigator that he is not to speak to her clients. Her clients are not defendants.

**Ethical Question:**
My question is . . . . . Can I speak to the victims even though their attorney, Ms. Jones, has told me no? All we are trying to do is investigate and help the victims, if possible. My office has not been named in any lawsuit.

**Do you understand and agree that any opinion provided is not binding on the Board or any Court and offers no security?**
Yes