IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., et al.,

    **Plaintiffs,**

v.   No: 2:23-cv-00071-TRM-JEM

**CITY OF JOHNSON CITY, TENNESSEE, et al.,**

    **Defendants.**
    _____/

## OPPOSITION IN RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO DEPOSE PLAINTIFFS' COUNSEL VANESSA BAEHR-JONES (ECF 414)

    Defendants know only one tactic: to bully, harass, and malign the women who speak out against their corruption. But Defendants have miscalculated. Their threats and intimidation tactics did not work in silencing B.P., nor the many other courageous women in this case who have refused to back down in the face of a bully. And such tactics will not succeed here. Defendants' motion for leave to depose Plaintiffs' counsel contains misleading—and downright false—statements of facts, is procedurally deficient and legally meritless, and constitutes a blatant attempt to harass opposing counsel and spread misinformation about the evidence in this case. The Court should deny the motion and award reasonable expenses and attorneys' fees to Plaintiffs for opposing this motion either under Federal Rule of Civil Procedure 37(a)(5)(B) or under the Court's inherent authority to deter parties from litigating in bad faith. The Court should also strike the motion from the public record as it serves no purpose other than to harass.

### RELEVANT FACTUAL BACKGROUND

    On July 29, 2024, defense counsel Daniel Rader sent an eight-page, single-spaced letter to Plaintiffs' counsel, purporting to document Defendants' "inescapable conclusion that

1

Plaintiffs' counsel Ms. Baehr-Jones has made herself a necessary witness in this case." ECF 414-2 at 1. The letter appeared facially invalid, misstating facts and providing no legal basis for Ms. Baehr-Jones' deposition.[1] At the end of the letter, Mr. Rader demanded Plaintiffs' counsel respond less than 48 hours later and provide availability for a meet and confer within the following four days regarding "appropriate limits on the deposition of Ms. Baehr-Jones or if it is necessary to present this matter to the Court." *Id.* at 8. Mr. Rader represented that, if Plaintiffs declined to comply with this request, Defendants would "take the appropriate next steps." *Id.* Given the frivolous nature of the letter, its harassing tone, and blatant misstatements of fact, Plaintiffs' counsel interpreted the letter as an effort to harass Ms. Baehr-Jones and declined to respond. Decl. of Vanessa Baehr-Jones ("Baehr-Jones Decl.") ¶ 3.

The letter proved to be an empty threat. Mr. Rader never served a subpoena for Ms. Baehr-Jones' testimony and took no action with the Court.[2] *Id.* ¶ 4. Over the next three months, neither Mr. Rader nor any other defense counsel initiated any further attempts to meet and confer regarding deposing Ms. Baehr-Jones. *Id.* In fact, the parties focused substantial resources on setting a mediation date and, in connection with those efforts, agreed to suspend even those depositions which had already been properly noticed and/or subpoenaed and scheduled. *Id.* To

---

[1] As set forth in detail below, Mr. Rader misquoted District Attorney General Steven Finney's testimony and falsely claimed that Ms. Baehr-Jones was the sole source of information concerning the identification of Sean Williams' victims.

[2] This was not the first time Defendants had made empty threats against Ms. Baehr-Jones in the course of this litigation. On November 3, 2023, Defendants sent a draft Rule 11 motion for sanctions to Plaintiffs' counsel. Baehr-Jones Decl., Exh. 1. In the accompanying letter, defense counsel threatened to ask the Court to rescind Ms. Baehr-Jones' *pro hac vice* status if Plaintiffs did not withdraw the Trafficking Victims Protection Act claims in their Second Amended Complaint. *Id.* at 2. Plaintiffs declined to respond to this letter. Defense counsel never filed anything.

date, Defendants still have served no subpoena under Federal Rule of Civil Procedure 45 ("Rule 45") for Ms. Baehr-Jones' testimony.

On November 5, 2024, Plaintiffs' counsel advised defense counsel that this motion was "factually erroneous, legally unsupported, and unethical," and stated that if Defendants did not withdraw the motion, Plaintiffs would seek sanctions. *Id.*, Exh. 3. Only Mr. Rader responded, refusing to withdraw the motion, and claiming he was unaware of any factual or legal errors in it. *Id.* Given the frivolous nature of the motion, Plaintiffs considered Mr. Rader's claims to be disingenuous and declined to respond further. Baehr-Jones Decl. ¶ 10.

## LEGAL STANDARD

"[T]he taking of opposing counsel's deposition has been discouraged by many courts as a means of discovery." *Ellipsis, Inc. v. Color Works, Inc.*, 227 F.R.D. 496, 497 (W.D. Tenn. 2005). The practice "disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987). "[C]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Id*.

In *Shelton*, the Eighth Circuit set out a three-part test to limit the circumstances in which opposing trial counsel must submit to a deposition. *Id.* The party seeking the deposition must satisfy each prong of the test <u>before</u> the deposition of opposing counsel can be taken: (1) there must be no other means available to obtain the information other than to depose opposing counsel; (2) the information sought must be relevant and non-privileged; and (3) the information must be crucial to the preparation of the case. *Id.*; *see also Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (adopting *Shelton* test).

3

Where a discovery motion is denied in whole, "the court may issue any protective order authorized under [Federal] Rule [of Civil Procedure] 26(c) and <u>must</u>, after giving an opportunity to be heard, <u>require</u> the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B) (emphasis added). A district court also has the "inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (internal quotation marks omitted).

## ARGUMENT

### I. Defendants' Motion is Procedurally Deficient and Frivolous

As an initial matter, Defendants have not properly sought Ms. Baehr-Jones' deposition through a subpoena under Rule 45. Thus, there is nothing on which this Court can rule, and the motion itself is procedurally deficient and frivolous. Even if Defendants had properly served a subpoena for Ms. Baehr-Jones' testimony, this Court would lack jurisdiction to rule on compliance or enforcement of that subpoena. Under Rule 45, "the court for the district where compliance is required" is the proper court to decide issues of compliance and enforcement. Fed. R. Civ. P. 45(d)(3)(A) (setting forth procedures for bringing a motion to quash). With respect to Ms. Baehr-Jones, who resides in Northern California, that court is the U.S. District Court for the Northern District of California. *See* Fed. R. Civ. P. 45(c)(1)(A) (defining the "place of compliance" as within 100 miles of where the person resides); *see also Interstate Corp. v. Enviro USA, Inc.*, No. 2:23-CV-02625-SHL-ATC, 2024 WL 2178832, at *1 (W.D. Tenn. Apr. 12, 2024) ("District courts in Tennessee have similarly found Rule 45's district of compliance language to mean the federal district that has jurisdiction over the place of compliance listed on the subpoena

(which must be within one hundred miles of where the subpoenaed company is headquartered or regularly transacts business in person).").

The fact that Defendants have failed to follow the basic procedures necessary for taking Ms. Baehr-Jones' testimony before filing the subject motion supports Plaintiffs' position, as set forth below, that this motion is brought in bad faith. Had Defendants proceeded by issuing a subpoena for Ms. Baehr-Jones' deposition, in compliance with Rule 45, Plaintiffs would have promptly moved to quash the subpoena in the Northern District of California (the appropriate court for enforcement) and Defendants would have been denied the opportunity to place these misstatements of fact in the public record on this Court's docket.

## II. Defendants' Motion Misstates Facts, Has No Legal Basis, and Should be Denied

Defendants' motion is meritless and fails to meet the three-prong *Shelton* test. Defendants set forth three broad categories of information they claim warrant deposing Ms. Baehr-Jones but fail to address how this information cannot be sought by any other means or how this information is crucial to the preparation of their case.[3] *See* ECF 415 at 1 ("Plaintiffs' counsel Ms. Baehr-Jones has made herself a necessary witness in this case through (1) her interrogation of District Attorney Finney during his deposition, (2) her own declarations filed in this case which detail substantive evidence, and (3) the depositions and discovery responses of BP and HA.").

---

[3] Because Defendants' motion is largely devoid of specific facts or information about which counsel seek to question Ms. Baehr-Jones, Plaintiffs are unable to address how these questions might raise attorney-client privilege issues. Almost all the generally outlined topics, however, would likely implicate material subject to the attorney work product privilege, as they involve Ms. Baehr-Jones' preparation of this case for litigation and trial. *See Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) ("The court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.") (quoting Fed. R. Civ. P. 26).

5

As an initial matter, Defendants' motion—just like Mr. Rader's July 29, 2024, letter—misstates DA Finney's deposition testimony in a way that appears to be nothing more than an attempt to smear Ms. Baehr-Jones in a public filing. Defendants claim that Finney testified about "contacting the Tennessee Board of Professional Responsibility about [Ms. Baehr-Jones'] involvement in the underlying facts as an out-of-state attorney and that her *pro hac vice* admission in this federal civil litigation does not extend to her representation of these individuals as potential victims in criminal matters in state criminal court and entirely outside of this civil case." ECF 415 at 2; *see also* ECF 414-2 at 2. In fact, DA Finney testified to the exact opposite during his deposition: "Q: Did you confer with [the Tennessee Board of Professional Responsibility] about your statement that my representation of my clients was potentially improper? A: No." Baehr-Jones Decl., Exh. 2 at 125:6-9. The motion's clearly false representation of deposition testimony, apparently driven by an unethical objective, should not be allowed to remain on the Court's docket.

Beyond falsely representing this deposition testimony, Defendants also fail to make any argument as to how Ms. Baehr-Jones' testimony is necessary with respect to the subject matter about which Plaintiffs posed questions to DA Finney during his deposition. There is no basis to depose Plaintiffs' counsel about her one telephonic meeting with DA Finney where multiple other witnesses were present. *See* ECF 415 at 7 (citing ECF 221-1, a declaration from Ms. Baehr-Jones describing her July 26, 2023, phone call with DA Finney, ADA Abby Wallace, DOJ trial attorney Julie Pfluger, and FBI Special Agent Paul Durant); *see also Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 9 (D.D.C. 2009) (granting motion to quash subpoena to opposing counsel where "[i]t is entirely clear that information regarding meetings and a relationship between two people are in fact known to both people"). Remarkably, no

defense counsel asked <u>any questions</u> about Ms. Baehr-Jones' interactions with DA Finney during their cross-examination of DA Finney on July 17, 2024. *See, e.g.*, Baehr-Jones Decl., Exh. 2, at 348:18 – 361:18 (cross-examination of DA Finney by counsel for Legault); 361:20 – 368:9 (by counsel for Peters); 368:14 – 370:5 (by counsel for Sparks). Yet all defense counsel signed this motion seeking testimony from Ms. Baehr-Jones, purportedly for the purpose of asking about these same interactions. Counsel for Defendant City did not even bother deposing DA Finney before signing this motion, even though it had subpoenaed and confirmed DA Finney's deposition to take place <u>this week</u>.[4] This motion is brought in bad faith.

With respect to how any of DA Finney's testimony regarding his interactions with Ms. Baehr-Jones is "crucial to the preparation of the case," Defendants make no effort to argue this point in their motion—nor could they. Defendants only assert generally that this information "presumably goes at a minimum to Plaintiffs' damages claims and probably also to liability," without providing any further explanation. ECF 415 at 2. This argument is frivolous and belied by defense counsel's entire lack of interest in inquiring about these topics during their own cross-examination of DA Finney.

Second, Defendants cite the sheer number of declarations of Plaintiffs' counsel as a basis for her deposition. ECF 415 at 4. This is nonsensical. The fact that Plaintiffs include declarations to provide a complete factual and evidentiary record in support of their filings with the Court illustrates counsel's thoroughness in this litigation and has no relevance as to whether

---

[4] The City's deposition of DA Finney was scheduled to take place on November 13, 2024, but it was taken off calendar as part of the parties' agreement to suspend all depositions leading up to mediation. Baehr-Jones Decl. ¶ 5; *see also supra* at 2 (Relevant Factual Background).

Defendants have a basis to depose her. Defendants fail to highlight any information on which counsel has submitted sworn testimony in a declaration which would satisfy the three-prong *Shelton* test. The only examples Defendants cite fail to meet the *Shelton* test for the same reason as set forth above: there are other witnesses who can testify to this information.

For example, Defendants cite Female 4's interactions with Plaintiff's counsel, but again, defense counsel had the opportunity to question Female 4 about the single phone call between Female 4 and Ms. Baehr-Jones and chose not to. With the exception of Mr. Rader, all defense counsel opted not to ask Female 4 any questions about this call. *See* Baehr-Jones Decl., Exh. 4, 289:1 – 296:4 (examination of Female 4 by counsel for Sparks); 296:6 – 307:7 (by counsel for Legault); 307:9 – 308:7 (by counsel for Turner and the City). Even Mr. Rader, the author of the present motion, asked only whether Ms. Baehr-Jones had "personally attacked" Female 4 during the phone call. After eliciting Female 4's response that, in her opinion, it was a "hostile phone conversation," Mr. Rader failed to follow up with any questions regarding the specifics of the phone call. *Id.* at 192:25 – 193:17. Defendants also cite to a declaration from Ms. Baehr-Jones about this phone call but fail to mention it was submitted in direct response to specious accusations lodged by Mr. Rader about Ms. Baehr-Jones' professional conduct during this phone call. *See* ECF 415 at 4-5 (citing ECF 241); ECF 232. But none of this supports Defendants' motion: Plaintiffs' counsel's tone during a phone call with Female 4 is entirely irrelevant to any claim or defense in this case and was only at issue because of Mr. Rader's accusations of

8

professional misconduct.[5] Defendants have offered no argument as to why any specific detail of this phone call could not have been adduced during Female 4's deposition, nor have they explained why they failed to ask about such details when deposing Female 4 or why information from Ms. Baehr-Jones about this phone call is now "crucial to the preparation of the case."

Next, Defendants claim that Plaintiffs' counsel is the only source of information with respect to the images and videos depicting Williams' sexual assault of the named Plaintiffs and other Williams' survivors. ECF 415 at 6. This is blatantly false.[6] DA Investigator Michael Little was the investigating officer who identified Williams' victims based on the evidence seized at the time of Williams' arrest. On July 16, 2024, Inv. Little submitted an affidavit in this case attesting to his identification of B.P. and H.A. in these files. *See* ECF 288-2. To date, Defendants have made no effort to depose Inv. Little regarding this evidence nor his identification of any other Williams' victims. Nor is it factually accurate to claim that U.S. Department of Justice ("DOJ") Trial Attorney Julie Pfluger is "exempt from testifying pursuant to *Touhy v. Ragan*, 340 U.S. 462 (1951), and 28 C.F.R. § 16.22," as Defendants have made no *Touhy* request as to Ms.

---

[5] The only potentially substantive issue relating to this phone call is whether Female 4 understood that Plaintiffs, and Plaintiffs' counsel, wanted her to cooperate in the public corruption investigation. But there is no dispute that this is exactly what Female 4 took away from her multiple phone calls with H.A., Ms. Baehr-Jones, and Plaintiffs' counsel Kevin Osborne, as she testified to this during her deposition. Exh. 4, at 295:15-24 ("[H.A.] wanted me to meet with her legal to talk to them . . . . she wanted me to say that JCPD in some way had done something wrong"); 304:19-25 (describing being asked about "immunity" by Mr. Osborne); 305:12-16 (recalling Ms. Baehr-Jones or Mr. Osborne raising the issue of "immunity").

[6] This false claim was also made in Mr. Rader's July 29, 2024, letter, even though Mr. Rader had already received a copy of Inv. Little's affidavit on July 17, 2024, the day of DA Finney's deposition, which identified B.P. and H.A. as Williams' victims based on Inv. Little's review of the evidence. Baehr-Jones Decl. ¶ 6; *see* ECF 414-2 at 5 ("Ms. Baehr-Jones is the *sole* source of discovery on this important topic.") (emphasis in original); ECF 288-2 (Little affidavit).

Pfluger. *See* ECF 415 at 6. Defendants have not served a subpoena for her testimony, nor for the testimony of any other DOJ personnel involved in the sex trafficking or public corruption investigations. *See* Baehr-Jones Decl., Exh. 5 (*Touhy* letters and subpoenas submitted by Defendant Sparks to various DOJ components requesting production of documents only). Defendants have failed to make any effort to obtain the information they claim to seek from Ms. Baehr-Jones through other means before filing this motion. This motion is brought in bad faith.

Defendants also falsely claim that only opposing counsel can testify regarding corroboration of the corruption claims set forth in Plaintiffs' Second Amended Complaint. ECF 415 at 5 (citing Williams' Facebook post). This is nonsense. The evidence supporting Plaintiffs' claims has been compiled exhaustively by Plaintiffs in support of their most recent motion for leave to amend and has also been filed publicly in support of briefs throughout the course of the extensive litigation in this case. *See, e.g.*, ECF 235; ECF 419-3. Plaintiffs have repeatedly rejected Defendants' false assertions that Plaintiffs lacked any corroborating evidence when alleging facts regarding the extortion scheme. *See, e.g.*, ECF 283 at 3-5 ("Although Defendants' arguments on this point are entirely irrelevant for purposes of ruling on this motion, Plaintiffs nevertheless wish to dispel the false claim—which Defendants repeatedly assert in their oppositions—that Plaintiffs' extortion allegations are based solely on the Facebook post of Sean Williams."). Defendants choose to ignore the evidence Plaintiffs have adduced in discovery in an attempt to perpetuate the false narrative that Plaintiffs' claims are unsubstantiated. But Defendants' refusal to engage with the evidence against them provides no basis for deposing opposing counsel.

Nor is Plaintiffs' counsel the proper source of information regarding various witnesses' credibility. *See* ECF 415 at 5-6. Plaintiffs have questioned the credibility of witnesses like

Defendant City Manager Cathy Ball and Female 4 based on evidence in the record that tends to disprove these witnesses' statements, not based on counsel's opinions. *See, e.g.*, ECF 298 (setting forth evidence contradicting Ball's public statements); ECF 283 at 7 n.4 (citing contradictions in Female 4's own testimony). Defendants make no attempt to argue how opposing counsel could testify to any information about Ball's or Female 4's statements that would be "crucial to the preparation of the case." *See Shelton*, 805 F.2d at 1327. Nor could they. Plaintiffs' counsel's assertions in legal briefs regarding what the evidence in this case shows is a matter of argument, not personal opinion, and any mental impressions of Plaintiffs' counsel would be irrelevant, inadmissible, and attorney work product.

To emphasize how deficient Defendants' motion is, the following is a non-exhaustive list of individuals Defendants have not yet deposed who could provide testimony relevant to the issues referenced in their motion and attached exhibits:

1. FBI Special Agent Paul Durant
2. DOJ Trial Attorney Julie Pfluger
3. DOJ Supervising Attorney William Nolan
4. DOJ Supervising Attorney John Keller
5. DA Investigator Michael Little
6. Assistant DA Abby V. Wallace
7. DA Steven Finney
8. Assistant U.S. Attorney Emily Swecker
9. Assistant U.S. Attorney Meghan Gomez
10. Assistant U.S. Attorney Anne-Marie Svolto
11. Assistant U.S. Attorney Brian Samuelson
12. FBI Special Agent Reanna O'Hare
13. TBI Special Agent Gerald Ray
14. TBI Supervisory Agent Christopher Wilhoit
15. FBI Supervisory Agent JD Anderson
16. TBI Special Agent JJ Sipos
17. FBI Special Agent Martha Manual
18. JCPD Chief Bill Church

Defendants suggest that the above-listed DOJ individuals were subject to *Touhy* requests which the U.S. Attorney's Office for the Eastern District of Tennessee denied, and therefore

11

opposing counsel is the only source of the relevant information. *See* ECF 415 at 6. This misstates both the facts and the law. First, as set forth above, Defendants have neither served subpoenas nor submitted *Touhy* requests to the DOJ for testimony from any DOJ personnel. *See* Exh. 5 (subpoenas and accompanying *Touhy* letters for documents only). Nor are any of the above DA or TBI personnel subject to *Touhy* as they are not federal government employees.

Second, even for the materials which Defendants have subpoenaed, Defendants have made no effort to compel compliance with their subpoenas. *See Gischel v. Univ. of Cincinnati*, No. 1:17-CV-475, 2018 WL 9945170, at *4 (S.D. Ohio June 26, 2018) (*Touhy* regulations do not prohibit district court "from applying the Federal Rules of Civil Procedure to compel the production of documents pursuant to an otherwise enforceable subpoena"); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 1790189, at *2 (E.D. Mich. May 10, 2011) (same). In order to compel compliance with a subpoena under *Touhy*, Defendants have to articulate the necessity of the requested material in this civil litigation. *In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *5 (citing 28 C.F.R. § 16.26). Defendants have made no such showing to this Court in a motion to compel, and instead, have claimed—incorrectly—to have exhausted all means of adducing this evidence.[7] Nor do the topics about which Defendants have expressly

---

[7] Nor does Defendants' letter accompanying their subpoenas to DOJ set forth the requisite statement showing necessity which the *Touhy* regulations require. For example, Defendants have not explained how the status of the public corruption investigation is relevant to their defense of Plaintiffs' claims here. *See* Exh. 5, at 1-2. Any internal DOJ charging decisions or factual findings made in the criminal investigation would not be relevant or admissible in the civil case against them. Nor is it clear how Defendants' or Plaintiffs' own statements to law enforcement in

12

Case 2:23-cv-00071-TRM-JEM    Document 443    Filed 11/14/24    Page 12 of 17
PageID #: 10504

requested testimony in their *Touhy* letter have anything to do with Ms. Baehr-Jones, nor are they topics about which Ms. Baehr-Jones could offer testimony. *See* Exh. 5 at 1-2 (requesting evidence about DOJ factual findings in the public corruption investigation and copies of statements made by Defendants and other witnesses during the public corruption investigation).

Finally, Defendants filed as an exhibit to their motion Plaintiffs' complaint to the DOJ's Office of the Inspector General ("OIG complaint") but provided no argument whatsoever as to how this document, which is supported by 40 exhibits, necessitates the deposition of Ms. Baehr-Jones. *See* ECF 427-1; ECF 415 at 8-9. While the OIG complaint includes descriptions of Ms. Baehr-Jones' efforts to report Defendants' corruption to the DOJ, it is unclear how any of that conduct is relevant to the claims or defenses in this case or why evidence of these interactions with DOJ personnel could not be obtained through other means. As set forth above, Defendants have not yet served subpoenas for the testimony of any DOJ personnel, including the individuals with whom Ms. Baehr-Jones interacted.

It appears Defendants' real purpose in attaching the OIG complaint as an exhibit to their motion is to try to denigrate Ms. Baehr-Jones' efforts to report potential misconduct through the appropriate DOJ channels. *See* ECF 415 at 8-9 (labeling the OIG complaint an "attack" in which Ms. Baehr-Jones "complain[s] about FBI agents"). This is not only baseless and unethical, but it also actively subverts the reporting process. Defendants—former and current law enforcement

---

the criminal investigation are necessary for Defendants' defense in this case. Defendants and other witnesses can testify to the same facts when they are deposed here and their prior hearsay statements to law enforcement would not be admissible evidence. Defendants' failure to obtain documents through their *Touhy* request, and failure to litigate this issue, provides no justification for bringing the instant motion.

officers—should be <u>advocating</u> for attorneys to report potential misconduct and corruption where they find it. Yet throughout this litigation, Defendants have mischaracterized Ms. Baehr-Jones' efforts to do exactly that as "attacks," "defamation," and "complaints," as though Plaintiffs' counsel had any other goal but to obtain long-awaited justice for their clients and the putative class.

In sum, Defendants have failed to state any basis for taking opposing counsel's deposition. Defendants' motion is meritless, and the Court should deny it.

### III. The Court Should Set a Hearing to Award Plaintiffs' Reasonable Expenses and Attorneys' Fees or Order Sanctions Under Its Own Inherent Authority

Defendants' motion has no basis in fact or in law, was brought in bad faith, and is unethical. Plaintiffs' counsel advised defense counsel in writing on November 5, 2024, that their motion was "factually erroneous, legally unsupported, and unethical," and requested they withdraw it, or Plaintiffs would seek sanctions; defense counsel refused. *See* Exh. 3. While Defendants' motion is procedurally deficient and frivolous given that there is no pending subpoena, the motion is best construed as one to compel Ms. Baehr-Jones' testimony. Therefore, if the Court denies Defendants' motion, the Court <u>must,</u> under Rule 37, order Defendants or defense counsel, or both, to pay Plaintiffs' reasonable expenses in opposing this motion. Fed. R. Civ. P. 37(a)(5)(B). Plaintiffs request the Court set a hearing date <u>before</u> December 9, 2024, so that Plaintiffs may have the opportunity to request the appropriate sanctions prior to the previously scheduled mediation date.

In the alternative, the Court should exercise its own inherent authority to order Defendants to pay Plaintiffs' reasonable costs and attorneys' fees in opposing this motion. *See* Baehr-Jones Decl. ¶ 15, Exh. 6 (setting forth attorneys' fees incurred in filing this opposition); Decl. of Julie C. Erickson, ¶¶ 6-7, Ex. 1 (same). As set forth above, Defendants' motion is

14

riddled with factual misstatements—one of which suggests incorrectly that a sitting District Attorney consulted the Tennessee Board of Professional Responsibility about Ms. Baehr-Jones' conduct in this case, when, in fact, no such consultation ever occurred. *Compare* ECF 415 at 2 *with* Exh. 2, at 125:6-9. This false representation by Defendants appears to be nothing more than an attempt to smear Ms. Baehr-Jones in a public filing.

Plaintiffs especially question the timing of Defendants' motion which, on the current briefing schedule, is unlikely to be decided before December 9, 2024. If the parties resolve this case, there will be insufficient time for Plaintiffs to file a Rule 11 sanctions motion, given the 21-day safe harbor provision. Thus, Defendants' motion appears to be one last attempt to flood the public docket with misinformation—*i.e.*, that no evidence supports Plaintiffs' claims other than uncorroborated Facebook posts—while maligning Plaintiffs' counsel and attempting to tarnish her reputation publicly.

This Court would be well within its authority to order sanctions. Defendants' motion was filed in bad faith and for purposes of harassment. It misstates facts for no purpose other than to denigrate opposing counsel, Ms. Baehr-Jones. It represents conduct that is far below what should be expected of an officer of this Court. Defense counsel should not be permitted to avoid any consequences for their unethical conduct here because of Plaintiffs' good faith efforts to resolve this case on the previously scheduled mediation date.

Finally, the Court should strike Defendants' motion from the public docket. This Court "has the inherent authority to strike any improper filing." *Olagues v. Timken*, No. 5:17CV1870, 2018 WL 2214647, at *1 (N.D. Ohio Jan. 3, 2018), *aff'd and remanded*, 908 F.3d 200 (6th Cir. 2018). For the reasons set forth above, there is ample basis here for this Court to remove from its docket what is nothing more than a vehicle for Defendants' misinformation and harassment.

15

Case 2:23-cv-00071-TRM-JEM    Document 443    Filed 11/14/24    Page 15 of 17
PageID #: 10507

# CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion and either set a hearing to consider Plaintiffs' request for reasonable expenses and attorneys' fees, pursuant to Rule 37(a)(5)(B), or order Defendants to pay reasonable expenses and attorneys' fees to Plaintiffs, pursuant to the Court's own inherent authority. The Court should also strike Defendants' motion.

Dated November 14, 2024.

Respectfully submitted,

Advocates for Survivors of Abuse PC

/s Vanessa Baehr-Jones
Vanessa Baehr-Jones (*pro hac vice*)
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com

s/ Heather Moore Collins
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

/s/ Julie C. Erickson
Julie C. Erickson (*pro hac vice*)
Elizabeth A. Kramer (*pro hac vice*)
Kevin M. Osborne (*pro hac vice*)
Erickson Kramer Osborne LLP
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Proposed Classes*

16

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on November 14, 2024 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>rachel@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com<br><br>*Attorneys to Defendants, Johnson City, Tennessee, Karl Turner, in his individual and official capacities, and Investigator Toma Sparks, in his official capacity*<br><br>Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com<br><br>*Attorney to Defendant City of Johnson City, Tennessee* | Kristin Ellis Berexa<br>Ben C. Allen<br>FARRAR BATES BEREXA<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027-5366<br>kberexa@fbb.law<br>ballen@fbb.law<br>jdowd@fbb.law<br>msutton@fbb.law<br>gpatton@fbb.law<br><br>*Counsel for Toma Sparks in his individual Capacity*<br><br>Keith H. Grant<br>Laura Beth Rufolo<br>Robinson, Smith & Wells, PLLC<br>633 Chestnut Street, Suite 700<br>Chattanooga, TN 37450<br>kgrant@rswlaw.com<br>lrufolo@rswlaw.com<br>awells@rswlaw.com<br><br>*Counsel for Justin Jenkins and Jeff Legault in their individual capacity*<br><br>Daniel H. Rader IV<br>MOORE, RADER & YORK PC<br>46 North Jefferson Avenue<br>P. O. Box 3347<br>Cookeville, TN 38501<br>danny@moorerader.com<br><br>*Counsel for Defendant Karl Turner in his individual Capacity* |

                                                                                          */s/ Julie C. Erickson*
                                                                                          Julie C. Erickson