UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| B.P., H.A., S.H., individually, and on behalf of all others similarly situated, </br></br>Plaintiffs, </br></br>v. </br></br>CITY OF JOHNSON CITY, *et al.*, </br></br>Defendants. | ) ) ) ) ) ) ) No. 2:23-CV-71-TRM-JEM ) ) ) ) ) |

# MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Justin Jenkins's Motion to Quash and/or for Protective Order Fed. R. Civ. P. 45(3) & 26(c) [Doc. 318]. Plaintiffs responded in opposition to the motion [Doc. 356], and Justin Jenkins filed a reply [Doc. 361-1].

On November 6, 2024, the parties appeared before the Court for a motion hearing. Attorneys Vanessa Baehr-Jones and Ashley Walter appeared on behalf of Plaintiffs. Attorneys Emily Taylor and Jonathan Lakey appeared on behalf of Defendant City of Johnson City ("Johnson City"). Attorneys Emily Taylor and Daniel Rader appeared on behalf of Defendant Karl Turner. Attorney Daniel Rader also appeared on behalf of Kevin Peters. Attorney Kristin Berexa appeared on behalf of Defendant Toma Sparks. Attorney Keith Grant appeared on behalf of Justin Jenkins ("Mr. Jenkins") and Defendant Jeff Legault.

Plaintiffs seek to depose Mr. Jenkins. At the hearing, Mr. Jenkins announced that he is no longer seeking an order quashing his deposition. The Court therefore finds that request moot. Instead, he is seeking only a protective order barring Plaintiffs from asking questions during his

deposition about his financial affairs. For the reasons explained below, the Court **GRANTS IN PART AND DENIES AS MOOT IN PART** the motion [**Doc. 318**].

I.     BACKGROUND

Plaintiffs filed this action on June 21, 2023 [Doc. 1] and filed the Second Amended Class Action Complaint ("Amended Complaint") on March 1, 2024 [Doc. 121].[1] The Amended Complaint alleges that "[b]eginning in at least 2018 and continuing to 2021, Sean Williams, a known drug dealer and convicted felon, conspired with Alvaro Fernando Diaz-Vargas and others to drug and rape women, and sexually exploit children, in his apartment in downtown Johnson City" [*Id*. ¶ 18]. Plaintiffs state that "Defendant JCPD officers conspired with [Sean] Williams to participate in a venture, the purpose of which was to recruit, entice, harbor, provide, obtain, maintain, and solicit women and children, who had not attainted the age of 14 years, for the purpose of engaging in commercial sex acts" [*Id*. ¶ 57]. They state that Johnson City Police Department ("JCPD") officers were aware of the complaints that Sean Williams had raped women and that "officers took overt acts in furtherance of Williams'[s] sex trafficking venture" [*Id*. ¶¶ 95–143]. And despite being aware of such complaints, Plaintiffs allege that the JCPD failed to investigate them [*Id*. ¶¶ 232–33]. This failure, according to Plaintiffs, "was motivated, in part, by the officers' discriminatory animus towards women" [*Id*. ¶ 242]. In addition, Plaintiffs allege that several Defendants accepted payments from Sean Williams "with either the implied or explicit understanding that Defendants would shield [him], permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments" [*Id*. ¶ 313].

---

[1] On November 2, 2024, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint [Doc. 419]. This motion is not ripe for adjudication [*See* Doc. 418].

Plaintiffs represent three classes: (1) "All individuals, including minors, who were sexually abused, drugged, or trafficked by Sean Williams or Alvaro Fernando Diaz-Vargas"; (2) "All members of the Sex Trafficking Survivor Class who were sexually assaulted by Sean Williams following the first report to the JCPD of Sean Williams'[s] alleged sexual violence on or about November 7, 2019"; and (3) "All women, including minors, who reported sexual abuse or trafficking by any person to JCPD from January 1, 2018, to April 25, 2023" [*Id.* ¶ 298]. They allege (1) sex trafficking claims, 18 U.S.C. §§ 1591, 1594, and 1595; (2) obstruction of enforcement, 18 U.S.C. §§ 1594, 1595, and 1591(d); (3) aiding and abetting a sex-trafficking venture, 18 U.S.C. §§ 1591(a)(1) & (2), and 1595; (4) conspiracy to commit violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1594(c), 1591, and 1595; (5) violations of 42 U.S.C. § 1983; (6) liability under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205; (7) negligence for the failure to train; and (8) negligence for the failure to supervise [*Id.* ¶¶ 311–423].

According to Plaintiffs, on April 10, 2024, they noticed then-defendant Mr. Jenkins's deposition for July 18, 2024, but because they did not have certain documents, Plaintiffs rescheduled the deposition [Doc. 346-1 ¶ 6]. The parties later agreed to set Mr. Jenkins's deposition for September 19, 2024, and "[o]n August 5, 2024, Plaintiffs received [Mr.] Jenkins'[s] Eastman Credit Union and Appalachian Community Federal Credit Union Records [*Id.* ¶¶ 7–8].

On August 21, 2024, United States Chief District Judge Travis A. McDonough entered an Order dismissing several Defendants, including Mr. Jenkins [Doc. 301]. Specifically, he found: (1) "Plaintiffs [had] not sufficiently alleged a TVPA obstruction claim against [Mr.] Jenkins, because they ha[d] not alleged he reasonably foresaw a federal investigation into [Sean] Williams's sex trafficking at the time he engaged in obstructive conduct[,]" (2) "Plaintiffs[] . . . [had] not

3

alleged that [Mr.] Jenkins engaged in conscience-shocking behavior" in violation of the Fourteenth Amendment, and (3) "Plaintiffs' state-created-anger claims against . . . [Mr.] Jenkins fail because they ha[d] not alleged [his] actions heightened the existing risk [Sean] Williams posed, as is required to state a claim" [*Id*. at 11, 21–22, 23]. The Chief District Judge also noted, "Plaintiffs concede in their omnibus response that 'the facts in the [second amended complaint] are insufficient to allege a beneficiary theory of liability under §[§] 1595, 1591(a) as to . . . [Mr.] Jenkins'" [*Id*. at 27 n.7].

According to Plaintiffs, on August 29, 2024, Mr. Jenkins stated that he would not proceed with the deposition if Plaintiffs intended to ask questions about his financial information [Doc. 346-1 ¶ 10]. "On September 6, 2024, Plaintiffs issued a subpoena for [Mr.] Jenkins'[s] deposition for the previously scheduled date of September 18, 2024" [*Id*. ¶ 9].

On September 10, 2024, Mr. Jenkins filed his motion, which seeks "a protective order barring the Plaintiffs from asking questions about his financial records" [Doc. 318 ¶ 2]. For grounds, he argues that he is no longer a party and that any inquiry into his financial records is irrelevant [Doc. 319 pp. 5–6]. Any questions about his financial records, Mr. Jenkins contends, "would only be intended to harass and annoy him" [*Id*. at 5].

Plaintiffs respond in opposition, stating that "[e]vidence adducted following the filing of the [Second Amended Complaint] supports new allegations that [Mr.] Jenkins benefited financially from his participation in [Sean] Williams'[s] sex trafficking venture, namely, by conspiring to destroy and suppress evidence to cover up [Sean] Williams's crimes in exchange for cash payments" [Doc. 346 p. 3 (footnote omitted)]. They assert that "[t]here is also evidence supporting

4

new allegations that [Mr.] Jenkins engaged in a monetary laundering scheme" [*Id*. at 5].[2] Plaintiffs state that "[b]ecause [they] have alleged that JCPD officers engaged in an extortion scheme in which they received large amounts of cash from [Sean] Williams and his co-conspirator, these transactions are relevant and questions about [Mr.] Jenkins'[s] records are likely to lead to the discovery of admissible evidence" [*Id*. at 9 (citation omitted)]. They conclude that they intend to seek leave to file a Third Amended Complaint that would add Mr. Jenkins as a defendant again [*Id*. at 10].

Mr. Jenkins filed a reply, stating that Plaintiffs acknowledged that they had not sufficiently alleged he participated in a sex-trafficking scheme and that he has been dismissed from this case [Doc. 361-1 p. 1]. He accuses Plaintiffs of "cherry-pick[ing] various financial records . . . "misconstru[ing] or misstat[ing] others," and states that they "have failed to include records which explain the transactions to which they cite" [*Id*. at 2; *see also id*. at 2–11]. Mr. Jenkins maintains that questions about his financial transactions and decisions "should not be allowed as [he] is no longer a party to this case and, even when he was a party, there were no allegations that he received funds from, or on behalf of, [Sean] Williams" [*Id*. at 12].

## II. ANALYSIS

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides, "The court may, for good cause, issue an order to a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "To show good cause, a movant for a protective

---

[2] Plaintiffs also assert that "[Mr.] Jenkins'[s] credit reflects a total check deposit amount of $981,284.67, a sum far above any known legitimate source of income" [Doc. 436 p. 7 (citation omitted)]. Mr. Jenkins submitted evidence showing that the check amount of $981,284.67 is not associated with any of his transactions, but instead, "is the balance of an Eastman Credit Union corporate check clearing account after the deposit was made" [Doc. 359-1 ¶ 5]. At the hearing, Plaintiffs noted that they are no longer making this allegation.

5

order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)). The party requesting the protective order has the burden of establishing good cause. *Id*. "Courts have broad discretion to determine whether a protective order is appropriate and what degree of protection is required." *Rogers v. City of Frankfort*, No. 321CV00023, 2023 WL 10675438, at *2 (E.D. Ky. Mar. 22, 2023).

"A showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)." *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-CV-0722, 2020 WL 12968432, at *1 (M.D. Tenn. Apr. 23, 2020) (citing *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017)). Rule 26 provides that parties may discover information that is relevant and proportional to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). And courts have defined the term "relevant" as it is used in Rule 26(b)(1) to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Barrio Bros., LLC v. Revolucion, LLC*,

No. 1:18-CV-02052, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016).

At the hearing, Mr. Jenkins argued that Plaintiffs admitted that the operative pleading—the Second Amended Complaint—contained insufficient allegations that he received anything of value. The Second Amended Complaint alleged only an obstruction claim against him. But regardless, Mr. Jenkins asserted, he is no longer a party. He claimed that his only involvement in this case occurred when Mikayla Evans fell out of the window of Sean Williams's apartment [*See* Doc. 121 ¶¶ 66–68]. In addition to his financial records being irrelevant, Mr. Jenkins argued that it will constitute an undue burden for him to review and be prepared to address questions about two years of his financial history.

Plaintiffs claim that Mr. Jenkins is misstating the evidence, and even though he is no longer a party, such status does not necessarily mean that they should be prohibited from asking him about his financial records. They asserted that they have evidence showing that he played a larger role than previously believed, including the fact that he assisted with executing the search warrant of Sean Williams's apartment on September 19, 2020 [*See* Doc. 346-2]. They have included these allegations in the proposed Third Amended Complaint.

Courts have found that "[w]here personal financial information is sought to prove a case in chief or an element thereof, the information can be deemed relevant and can be ordered to be produced." *Grayiel v. AIO Holdings, LLC*, No. 315CV00821, 2017 WL 11592083, at *3 (W.D. Ky.

7

May 2, 2017) (citation omitted) (explaining that "courts have looked to the requesting party's explanations regarding why the documents at issue are relevant for the authority to order production of an individual's personal financial information"). Although Plaintiffs have moved to file a Third Amended Complaint [Doc. 419], the operative pleading at this time is the Second Amended Complaint. Plaintiffs assert "[b]ecause [they] have alleged that JCPD officers engaged in an extortion scheme in which they received large amounts of cash from [Sean] Williams and his co-conspirator, these transactions are relevant and questions about [Mr.] Jenkins'[s] records are likely to lead to the discovery of admissible evidence" [Doc. 346 p. 9 (citation omitted)].[3] But Plaintiffs conceded that their allegations against Mr. Jenkins relating to beneficiary liability were not sufficient [Doc. 176 p. 3 n.3]. The Chief Judge therefore dismissed this claim against Mr. Jenkins [*Id.*]. The Court therefore finds that inquiries into Mr. Jenkins's financial records are at this time irrelevant. While Plaintiffs contend that they now have evidence that "Mr. Jenkins's benefited financially from his participation in [Sean] Williams'[s] sex trafficking venture[,]" [Doc. 346 p. 3] these allegations are subject to Plaintiff's pending motion to amend [*See* Doc. 419].

Based upon the record before the Court, Mr. Jenkins has shown that the inquiries into his financial affairs are not relevant at this time.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES AS MOOT IN PART** Justin Jenkins's Motion to Quash and/or for Protective Order Fed. R. Civ. P. 45(3) &

---

[3] Plaintiffs cite *Kroger Co. v. Merrill*, No. 1:09-CV-722, 2009 WL 1707892 (N.D. Ohio June 17, 2009), in support of their argument [Doc. 346 pp. 9–10]. There, the court found that the deposition testimony of the non-parties was relevant because the plaintiff would need the information to pierce the corporate veil of the individual defendants. 2009 WL 1707892, at *3. The circumstances are inapposite from this matter.

8

Case 2:23-cv-00071-TRM-JEM   Document 451   Filed 11/18/24   Page 8 of 9   PageID #: 10643

26(c) [**Doc. 318**]. The Court enters a protective order forbidding inquiries into Justin Jenkins's financial affairs during his deposition. *See* Fed. R. Civ. P. 26(c)(1)(A). To the extent the Chief District Judge allows Plaintiffs to file a Third Amended Complaint that includes Mr. Jenkins as a defendant, the undersigned may revisit this decision upon an appropriate motion.[4]

**IT IS SO ORDERED.**

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

[4] At the hearing, Mr. Jenkins argued that even if the Chief Judge granted Plaintiffs leave to file a Third Amended Complaint, his financial information is still irrelevant. The Court declines to address this issue given that the Second Amended Complaint is the only operative pleading at this time.