IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE GREENEVILLE DIVISION

B.P., H.A., and S.H., individually, and on Behalf of all others similarly situated,

Plaintiffs,

VERSUS

CITY OF JOHNSON CITY, TENNESSEE, *et al*

Defendants.

No. 2:23-cv-00071-TRM-CRW

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO DEPOSE VANESSA BAEHR-JONES**

Plaintiffs try to distract the Court from the core bases of Defendants' Motion for Leave to Depose Vanessa Baehr-Jones (the "Motion") and the actual evidence in the case, by claiming that the Motion is simply an attempt to bully or harass. Defendants urge this Court to look past Plaintiffs' baseless attacks, and examine the substance of Defendants' Motion. Respectfully, Defendants submit that the facts and law require that they be granted leave to depose Ms. Baehr-Jones.

**I. Ms. Baehr-Jones is a fact-actor and material witness to disputed facts.**

The evidence in this case has made clear that Ms. Baehr-Jones elected to become a fact-actor concerning important underlying facts in dispute in this civil litigation, and she has made herself a material fact witness by personally involving herself in core factual events which form the basis for this case, all beyond the scope of her status as counsel in this civil case. *See* excerpts of the Deposition of Steven Finney, DE 426, p. 117, lines 11-15: "So what I'm [DA Finney] saying, and why I'm saying that is that we need the victims,

not you [Ms. Baehr-Jones] saying 'I represent the victims, you can run everything through – through me.' That doesn't work. We've got to have them."

Plaintiffs expressly allege that the DA's failure to prosecute Sean Williams for his alleged rapes is because of JCPD "corruption," and that this delayed prosecution forms an entire class's claims for damages. (Operative Second Amended Complaint: DE 121, ¶ 406-407; Proposed Third Amended Complaint: DE 419-2 ¶ 538-539).

Remarkably in response to Ms. Baehr-Jones's own questions about her own conduct outside this civil litigation, the DA expressly testified that Ms. Baehr-Jones has personally impeded his efforts to prosecute Sean Williams (which forms the Plaintiffs' damage claim). When Ms. Baehr-Jones cross-examined this DA trying to disprove or discredit his testimony *about her*, it is clearly a disputed matter. When the Plaintiffs claim the failure to prosecute Sean Williams is caused by the JCPD's "corruption," but the DA testifies that he cannot pursue the case without cooperation of the victims, which DA Finney testified that Ms. Baehr-Jones has personally impeded, that undercuts Plaintiffs' core claims.

> Q. My question is what about this is impeding your investigation?
>
> A. We still haven't talked to them. You're wanting the money for what – the compensation, but we haven't talked to them.
>
> Ms. Baehr-Jones: Can I have the –
>
> A. And it's still an open door. I'm never going to shut up on that, because it's an open door either way. I'll come to you.

(Deposition of Steven Finney, p. 130 line 24 through p. 131 line 7).[1]

[1] Defendant contemporaneously objected to Ms. Baehr-Jones's interrogation of this non-party important witness about Ms. Baehr-Jones's own conduct: "Well, I object to the – Ms. Baehr-Jones asking questions about her own conduct and the underlying facts of this case while she's an advocate in the pending case. I think that she's violating

Beyond questioning a witness about her own conduct, highlighting factual disputes about her own actions, Ms. Baehr-Jones voluntarily testified *herself* to this Court about these contacts, waiving any claim that she should not offer testimony subject to cross-examination on this subject. *See* DE 221-1, PageID# 4525-4527. On top of all of that, Ms. Baehr-Jones has voluntarily, personally, and without any compulsion, offered *substantive* testimony to this Court on *multiple* *disputed* matters, beyond this issue. (*See, e.g.*, DE 241, PageID # 6818; DE 245-1, PageID# 6924; and DE 246, PageID# 6930).

For instance, Ms. Baehr-Jones has offered testimony about a disputed discussion with Female 4. (DE 241). She has offered testimony about having "corroboration" of the infamous Facebook post about bribery, which is Plaintiffs' sole "proof" of the alleged but highly disputed corruption of JCPD officers. (DE 241, PageID# 6818).

Moreover, Ms. Baehr-Jones continues to inject herself as a fact-actor into core underlying facts, now sending letters to interfere with a supposed "public corruption" investigation, and claiming that the FBI agents and DOJ officials she has dealt with are also malfeasant. The facts underlying her claims to third-parties of public corruption must be discoverable, in order to disprove the allegations of corruption in this case.

Plaintiffs' baseless and shifting allegations of corruption, and Plaintiffs' own testimony directing Defendants to their lawyers for substantive information, place Defendants in the position of trying to prove a negative. This discovery is essential to get to the core facts necessary to resolve this case.

---

Rule 3.7 of the Rules of Professional Conduct, and I make the objection for the record." Ms. Baehr-Jones continued her questioning about herself and her actions.

## II. Defendants' Motion is Procedurally Proper

Plaintiffs incredibly take issue with Defendants' respectful action of seeking leave of court prior to blindly issuing a deposition notice or other process. It is not hard to imagine Plaintiffs' reaction had Defendants simply noticed Ms. Baehr-Jones' deposition. Defendants have proceeded judiciously. A motion for leave is a proper mechanism to resolve this dispute, and the several elements that must be addressed including limitations for privilege and other matters. Plaintiffs certainly have not "stipulated" to the deposition of Ms. Baehr-Jones, which they very aggressively oppose. Fed. R. Civ. P. 30(a)(2)(A)(i) requires leave of court when there is no such stipulation, as here.[2] This motion for leave to take this non-stipulated deposition is entirely proper under the Rules.

Moreover, leave of court is the most practical way to resolve this multi-pronged dispute. Defendants understand that there is a need for significant limits on Ms. Baehr-Jones's testimony to protect legitimate claims of privilege (which Defendants continue to ask the Court to require Plaintiffs to meet and confer about), and expected that Ms. Baehr-Jones would certainly oppose the request altogether, especially considering that she and her co-counsel simply ignored all efforts to meet and confer. This is why Defendants sought to meet and confer on potential limits.

Rather than firing off a deposition notice or subpoena sure to result in emergency motion practice such as a motion for protective order (as Plaintiffs now appear to suggest

[2] While Plaintiffs have not disputed the general principle that Defendants may collectively take more than 10 depositions in this case, Plaintiffs have challenged certain particular depositions they did not want taken, such as the depositions of unnamed class members, demanding that Defendants seek leave of court prior to such depositions. Thus, unless Plaintiffs stipulate to a deposition and the total number would exceed 10, as the total number will exceed in this case, Rule 30 requires leave of court. Plaintiffs clearly do not stipulate to this deposition.

that Defendants should have done), Defendants believed that it would be prudent to seek leave of court as Fed. R. Civ. P. 30(a)(2)(A) contemplates and frankly requires, to address in an *orderly* fashion this entirely appropriate but relatively uncommon situation, where discovery is needed from an opposing counsel who has made herself a material witness in the case.

Contrary to Plaintiffs' vitriol-laced response, Defendants' handling of this entire process has proceeded as respectfully as possible; it is the opposite of an attempt to harass by any measure at all. In fact, it is procedurally proper in every respect.

Plaintiffs' Response also reveals the true motivation by Plaintiffs' new and striking claim that Defendants should have tried to blindly force this deposition through subpoena: because Plaintiffs think they can escape this Court by appealing to a California court which has no familiarity with this case or the myriad discovery issues. See DE 443, PageID# 10496. Attempting to force the deposition as Plaintiffs described would also have been contrary to this Court's repeated direction to meet and confer with respect to discovery issues, and would have been contrary to Fed. R. Civ. P. 30(a)(2)(A). Plaintiffs would undoubtedly have argued in California that Defendants did not seek leave of court (as they claimed when Defendants sought depositions of unnamed class members). This Court should not permit that kind of shell game.

## III. More than ample legal precedent supports the deposition sought.

Defendant's principal Memorandum of Law sets forth the legal standard, discussed at length by Judge Lee in *Hamilton Co. Emer. Comm. Dist. v. Bellsouth Telecommunications LLC*, 2013 WL 11327675 at *2 (E.D. Tenn. 2013). See also *Eon*

*Streams Inc. v. Clear Channel Communications, Inc.*, 2007 WL 954181 (E.D. Tenn. 2007). Plaintiffs make no real attempt to argue with that standard, despite claiming that Defendants' meet and confer letter – which quoted Judge Lee's reasoning verbatim – "provid[ed] no legal basis" for Ms. Baehr-Jones's deposition.

In *Jane Doe v. University of the South*, 2010 WL 11520217 (E.D. Tenn. 2010), Judge Mattice affirmed a decision by Judge Lee requiring the University's general counsel to give a deposition at the request of the Jane Doe plaintiff, but appropriately limited the topics where privilege properly applied. Defendants here have been very clear that some topics may be properly limited on privilege grounds, while other topics are appropriate for discovery. This is why Defendants sought (and continue to seek) the meet and confer. Judge Lee, affirmed by Judge Mattice, parsed these issues in *University of the South* exactly as this Court should do in the case at bar, applying the settled legal principles that Defendants urged in the instant Motion and accompanying Memorandum of Law.

Plaintiffs' Response makes little attempt to argue any of the factors except to say that the discovery is not necessary, because they claim other avenues are available or that the information is not crucial. They spend most of their argument claiming harassment. But in making their argument, Plaintiffs overlook the fact that Ms. Baehr-Jones has personally, gratuitously, submitted affirmative testimony that the things other people say about their interactions with her are just not true. Ms. Baehr-Jones's testimony, usually after a deposition where she did not like what she heard, placed these matters in dispute. This type of testimony must be subject to cross-examination.

And Plaintiffs overlook the fact that Plaintiffs *themselves* refuse to provide the discovery as would happen in any other case, instead directing the Defendants to the lawyers themselves. Plaintiffs cannot avoid discovery altogether by simply refusing to answer questions and directing any questioner to their lawyers, who in turn refuse to answer any questions at all.

**A. Other avenues of discovery are not available.**

Like a game of whack-a-mole, the Defendants have sought discovery in the ordinary manner to try and prove this negative: that these wholly imagined allegations of bribery and corruption are just categorically false. At each turn, the Defendants have asked Plaintiffs to admit there is no basis for these claims, at which point Plaintiffs invariably double-down and allege a scheme even more complicated and fanciful than their prior iteration.

First, Defendants sought routine documents from Plaintiffs, which Plaintiffs refused to provide until an in-person court hearing was unavoidable. (See DE 175, PageID# 2558-2562). When those belatedly-produced documents revealed no evidence, Defendants sought depositions in the ordinary course to try and discover it.

Although the Plaintiffs themselves admitted in those depositions that they had no evidence, they were well-coached to defer to their lawyers: Plaintiff H.A. testified "That is not my responsibility. It is the responsibility of my lawyers." (DE 323-2, PageID# 7870). Plaintiff further testified that Defendants needed to *ask* the Plaintiff's lawyers: "That's not my job to know, so I would say that would be something my lawyers would know. I don't specifically know that information, those details about him." (DE 323-2, PageID# 7869).

Plaintiffs also failed to substantively answer contention interrogatories propounded by Defendant Sparks concerning the claims made against him and have failed to supplement those responses despite subsequent requests.

Plaintiffs are running a shell game, with Plaintiffs themselves refusing to provide information in written discovery (by claiming the Plaintiff is not a "percipient witness" to avoid answering a question) and deposition (by deferring to their lawyers).

The standard set by the above-cited caselaw is clearly met. First, "any person testifying to a contested issue is a necessary witness." *Eon Streams*, at *4. It is clear beyond peradventure that Ms. Baehr-Jones contests and disputes what Female 4 said about her discussions, with Ms. Baehr-Jones responding to that deposition testimony by filing a sworn declaration that Female 4's recitation was "not credible." This makes Ms. Baehr-Jones a necessary witness, not just to a phone conversation, but to all the facts which support the contention that Female 4's testimony was untrue (i.e., the facts supporting the contention of payoffs). Where Ms. Baehr-Jones claims Female 4 lied, all the facts upon which that contention is based are discoverable, which necessarily includes any facts concerning some alleged payoff.

Likewise, Ms. Baehr-Jones aggressively contests what DA Finney said about her involvement in impeding the prosecution of Sean Williams. While Ms. Baehr-Jones claims that others were present, those others are protected by *Touhy* and have refused to testify. Moreover, those other persons have not accused DA Finney of lying—only Ms. Baehr Jones has done that. Defendants are not obligated to litigate or raise potentially frivolous arguments against the DOJ's *Touhy* objections before they seek discovery from the source

the Plaintiffs *themselves* say to talk with: Ms. Baehr-Jones. The DOJ officials are entitled to a presumption of good faith in their objection.

Regardless, Ms. Baehr-Jones will still contest anything that supports DA Finney's portrayal of her actions as impeding the prosecution of Sean Williams, and it is necessary to depose her concerning those fact-actor actions regardless of what the DOJ might say about Ms. Baehr-Jones.

Similarly, these *Touhy* objections have blocked Defendants from obtaining discovery concerning the supposed basis for Ms. Baehr-Jones's repeated claims of "public corruption." Defendants can hardly prove a negative without demonstrating through discovery mechanisms that these wild protestations of widespread corruption are simply the figments of Ms. Baehr-Jones's imagination. The only way to do this is to pin the facts down, as Plaintiffs simply shift their theory to some other wild accusation when the earlier iteration invariably flames out. Without pinning down these facts, this case will never end.

Defendants tried to do this through all normal discovery mechanisms. Plaintiff H.A. affirmatively refused to provide information about these claims of corruption in her own deposition and directed the Defendants to her lawyer. Plaintiffs refused to substantively respond to Defendant Sparks's contention interrogatories. Thus, there simply is no other means to obtain this discovery.

**B. The information sought is relevant and non-privileged.**

Defendants are not trying to invade the attorney-client privilege between Ms. Baehr-Jones and her clients. Defendants wish to ask about Ms. Baehr-Jones's actions as a fact-actor in this case, about her impeding the prosecution of Sean Williams, about her

interactions with Female 4 which Ms. Baehr-Jones alone disputes, and about the basis for her repeated claims to non-party actors (the DOJ and FBI employees protected by *Touhy*) of facts relating to "public corruption" that form the basis for the entire suit.

This information is highly relevant. "Under Rule 401, evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence,' and if 'the fact is of consequence.' Relevance is a 'low bar.'" *United States v. Burrell*, 114 F.4th 537, 556 (6th Cir. 2024) (citing *United States v. Wilder*, 87 F.4th 816, 819 (6th Cir. 2023) and *United States v. Potter*, 927 F.3d 446, 452 (6th Cir. 2019)).

Plaintiffs have repeatedly contested producing materials supplied to the federal officials, claiming work product. But this material is not protected by work product, because it was not prepared in anticipation of litigation; it was prepared for the nonlitigation purpose of trying to induce an investigation into the Defendants.

The Sixth Circuit has explained that the burden of proving that something is protected by the work product doctrine is on the party asserting the privilege. *U.S. v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006). The burden must also be carried for each item. As the Sixth Circuit has explained:

> [T]he key issue in determining whether a document should be withheld is the function that the document serves. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C.Cir.1980). Because documents are not protected if they were created for nonlitigation purposes, regardless of content, "[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question." *Nat'l Union*, 967 F.2d at 984. Thus we must examine not only the documents themselves, but the circumstances surrounding the documents' creation.

*Id*. at 595.

Further, the material must have been created "because of" litigation, and not for another purpose, such as to induce or further a criminal investigation.

> In determining whether the anticipation of litigation standard is met, the Sixth Circuit has adopted the "because of" test. *Cooey v. Strickland*, 269 F.R.D. 643, 647 (S.D. Ohio 2010). That inquiry centers on whether documents were "prepared or obtained because of the prospect of litigation[,]" as opposed to those "prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes[.]" *Id*. (quoting *Roxworthy*, 457 F.3d at 593). "Thus, if the item would have been prepared in substantially the same manner, regardless of the anticipated litigation, the doctrine does not apply." *Id*.

*McNeil v. Mt. Carmel Health Sys*., 2021 WL 5235103 at *4 (S.D. Ohio 2021).

Defendants sought a meet and confer as to what, if anything, might be legitimately protected by work product, so as to properly limit any deposition accordingly. But Plaintiffs did not reply, and their Response filed with the Court barely mentions work product, in one footnote (PageID# 10497, FN3), and one throwaway sentence concerning "mental impressions" (PageID# 10503). Defendants want to know facts, not Ms. Baehr-Jones's wild imagined mental theories.

Plaintiffs certainly have made no effort to carry their burden of proof as to privilege or work product or articulate any particular thing that is protected by work product. The Court should enter an order permitting the deposition of Ms. Baehr-Jones and deem this waived. In the alternative, the Court should order the deposition as to these general matters and require Plaintiffs to then meet and confer as to what specific topics might actually be limited within the broad topics ordered.

### C. The information sought is crucial to the preparation of the case.

These allegations of corruption form the basis for Plaintiffs' focus of the entire case. Knowing the factual basis is crucial to the case. Likewise, Ms. Baehr-Jones's actions impeding the prosecution of Sean Williams are central to the damage claim.

Again, Ms. Baehr-Jones gratuitously offers testimony disputing the statements of DA Finney and Female 4; these disputed versions – and the facts underlying them – must be addressed through discovery. Again, "any person testifying to a contested issue is a necessary witness." *Eon Streams*, at *4. Indeed, Female 4's credibility appears to be one of the central issues in the case, which is why it was so important to Ms. Baehr-Jones to submit declarations calling her "not credible." Plaintiffs' shifting theory first said that Female 4 was paying Detective Sparks; later they claim Detective Sparks used money from a deck project at his house to launder through a luxury consignment shop in Green Hills to himself pay Female 4. Thus, Female 4's denial of all of this contrivance is significant, and her credibility is important. The only person who has *testified* that Female 4 is "not credible" is Ms. Baehr-Jones.

It is also indisputably crucial to discover all facts upon which Ms. Baehr-Jones claimed *in testimony* that is "corroboration" of the Sean Williams Facebook post upon which she predicates her claim of bribery and corruption.

## IV. Plaintiffs refused to meet and confer, which bars any relief they are seeking under Fed. R. Civ. P. 37 and Fed. R. Civ. P. 26.

Plaintiffs now admit that they *intentionally* refused to respond to Defendants' written requests to meet and confer on these difficult issues. Plaintiffs did not acknowledge

or reject Defendants' written requests, on substance or otherwise; they simply *ignored* the requests outright, which Plaintiffs now admit they ignored consciously. (DE 443-1, ¶ 3 and ¶ 10).

Plaintiffs cite Fed. R. Civ. P. 37 and Fed. R. Civ. P. 26, claiming a right to attorneys' fees under these rules. Parties are generally not entitled to relief under Rule 37 or Rule 26 unless they have first met and conferred: "The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). See also Fed. R. Civ. P. 37(a)(1).

Defendants' motion is simply for leave of court for a deposition. See Fed. R. Civ. P. 30(a)(1)(A). That rule contains no provision for an award of fees with respect to a motion of this type, and Defendants have not sought fees with respect to this motion.

This Court has made clear on multiple occasions its preference for parties to meet and confer concerning discovery disputes. With respect to the instant motion, Defendants tried to meet and confer, but Plaintiffs consciously and intentionally refused to participate in that process. Now, without any basis whatsoever, Plaintiffs declare that Defendants' written overtures and requests to meet and confer were "an effort to harass Ms. Baehr-Jones" (DE 443, PageID# 10494) and "disingenuous" (DE 443, PageID# 10495; DE 443-1, PageID# 10512).

This is simply not the case.[3] But it is typical of Plaintiffs' counsels' pattern of hurling reckless allegations. They have accused nearly an entire police department of bribery and corruption in a scheme to protect a rapist without any evidence of a single payment to anyone except a hearsay-within-hearsay Facebook post attributed to the rapist. When called on the absence of any evidence of these supposed payments *to anyone*, they now incredibly claim there is an elaborate money-laundering scheme involving one officer's RV trade-ins, another officer's patio deck, and some imagined conspiracy now involving a luxury consignment store in the most affluent area of Nashville. And now, after making these baseless accusations in filing after filing, they accuse opposing counsel of bullying and harassment when the Defendants are simply trying to disprove damages, and to prove the negative: that there is no evidence of the heinous, specious accusations this crowd of west coast conspiracy theorists pursue against them.

For instance, as a large part of their Response to the instant Motion, Plaintiffs start by making a bizarre and incorrect statement that Defendant's Memorandum of Law itself makes some kind of misstatement concerning District Attorney General Finney's testimony, in response to Ms. Baehr-Jones's questions, about Ms. Baehr-Jones's own

---

[3] The first request to meet and confer came in a comprehensive letter (DE 414-2), setting forth in considerable detail the basis for Defendants' belief that Ms. Baehr-Jones's deposition was appropriate. The letter *quoted at length* specific testimony by Ms. Baehr-Jones herself, as well as testimony from the named Plaintiffs; cited by docket entry and PageID# to specific documents in the Court record and in discovery in the case; and cited and quoted specific caselaw from this Eastern District concerning the legal principles at issue. A "disingenuous" request would hardly go to the trouble of providing Plaintiffs a lengthy chapter-and-verse as to the factual and legal basis for the Defendants' position.

Even when the resulting Motion became necessary, and the Plaintiffs fired off a short missive asserting an unspecified factual or legal error with a demand to simply withdraw the Motion, the Plaintiffs intentionally ignored the immediate responsive written request to identify what error they claimed. (DE 443-4, PageID# 10548 & 10549)

actions in the criminal matter unrelated to this civil case. Plaintiffs are simply wrong. DA Finney's deposition testimony has been filed with the Court and says what it says. Defendants' statement that Plaintiffs only partially quote (DE 443, PageID# 10498), is entirely accurate:

> "Indeed, General Finney testified (in response to Ms. Baehr-Jones's own questions) about contacting the Tennessee Board of Professional Responsibility about her involvement in the underlying facts as an out-of-state attorney and that her *pro hac vice* admission in this federal civil litigation does not extend to her representation of these individuals as potential victims in criminal matters in state criminal court and entirely outside of this civil case."

(DE 415, PageID# 9847).

That statement is entirely accurate. It is exactly what DA Finney did and exactly what he testified to:

> "What I'm telling you is my – I found out that pro hac vice for federal court is not state court. You're talking to us in a state court realm, and without Ms. Collins or anyone else on any phone – the phone call I had with you, I'm trying to find a way to get a state-involved person in your team, okay, to see what I'm seeing in the Tennessee statutes and Tennessee Rules of Professional Responsibility."

(Deposition of Steven Finney, p. 123 line 25 through p. 124 line 8).

DA Finney further testified that he made inquiry informally, and then also sent a written request to the Tennessee Board of Professional Responsibility. DA Finney testified first that he spoke to a member of the Tennessee Board of Professional Responsibility informally, to ask if the *pro hac vice* admission in this federal civil litigation extended to her representation of these individuals as potential victims in criminal matters in state criminal court outside of the civil case:

> "I conferred with one person the Board and asked them, unofficially, if – because they were a former United States Attorney, if – if – if ad

> (sic) hac vice for federal court also applied to state court. That's the only think I asked. Guy Blackwell….

(Deposition of Steven Finney, p. 125 lines 16-21).

> "It was – I asked him, 'Does this person who has federal ad (sic) hac vice for federal court, does that blanket state court?' And he said, 'No.' "

(Deposition of Steven Finney, p. 126, lines 12-16).

Furthermore, Mr. Finney also made *written* inquiry of the Tennessee Board of Professional Responsibility concerning Ms. Baehr-Jones's role as a *pro hac vice* admittee in federal court, which was attached as an Exhibit (Deposition of Steven Finney, Exhibit 136). In it, DA Finney inquired:

> "The attorney handling the class action lawsuit, Vanessa Baehr-Jones, is out of California and is admitted pro hac vice in the U.S. District Court, Eastern District of TN regarding this case. She has approximately 12 clients/potential victims. Ms. Jones has informed my investigator that he is not to speak to her clients. Her clients are not defendants."

If Plaintiffs do not think that Defendants' characterization of DA Finney's testimony is accurate, they are free to argue a different characterization, but it seems to the undersigned that the characterization in Defendants' Memorandum is entirely accurate. What seems clear from Plaintiffs' Response is that they mistook the characterization as an accusation that Ms. Baehr-Jones was practicing law in Tennessee without a license. That is not the import of Defendants' statement, and Plaintiffs have completely missed the point. What Defendants *are* arguing is that Ms. Baehr-Jones is a *fact witness* in this civil case, concerning her factual actions outside this civil case, and inside the criminal prosecutions of Sean Williams. As DA Finney contemporaneously wrote to the Tennessee Board of

Professional Responsibility: "Ms. Jones has informed my investigator that he is not to speak to her clients." This roadblock that Ms. Baehr-Jones factually created in that separate criminal matter has apparently impeded the prosecution of Sean Williams. And the failure to prosecute Sean Williams is what Plaintiffs expressly claim in this case as the central basis for their damage claim. Therefore, Ms. Baehr-Jones is herself a *fact*-actor with respect to the substance of this federal civil case. Tenn. Sup. Ct. R. 8, RPC 3.7.

Ms. Baehr-Jones is the one who raised all of this with her own questions, and her own testimony she submitted to the Court gratuitously. She is solely the author of the need for her deposition.

## CONCLUSION

For the reasons set forth in the principal motion, and as set forth herein, Defendants ask the Court to grant leave to take the deposition of Ms. Baehr-Jones.

Respectfully submitted,

MOORE, RADER & YORK, P.C.

/s/Daniel H. Rader IV
DANIEL H. RADER III / BPR #002835
DANIEL H. RADER IV / BPR #025998
ANDRÉ S. GREPPIN / BPR #036706
Attorneys for Defendant Karl Turner,
in his individual capacity
46 North Jefferson Avenue
Cookeville, Tennessee 38501
Phone: (931) 526-3311
Fax: (931) 526-3092
danny@moorerader.com

        WATSON ROACH BATSON & LAUDERBACK

        /s/Emily C. Taylor
        EMILY C. TAYLOR / BPR# 027157
        Attorneys for Defendants Johnson City, Tennessee
        and Karl Turner, in his individual capacity
        P. O. Box 131
        Knoxville, TN 37901-0131
        865-637-1700
        etaylor@watsonroach.com


        FARRAR BATES BEREXA

        /s/Kristin E. Berexa
        KRISTEN E. BEREXA / BPR# 014833
        BENJAMIN C. ALLEN / BPR# 035923
        Attorneys for Defendant Toma Sparks,
        in his individual capacity
        12 Cadillac Drive, Suite 480
        Brentwood, TN 37027
        615-254-3060
        kberexa@fbb.law


        ROBINSON, SMITH & WELLS, PLLC

        /s/Keith H. Grant
        KEITH H. GRANT / BPR# 023274
        PHILIP AARON WELLS / BPR# 036248
        Attorneys for Defendant Justin Jenkins,
        in his individual capacity
        Suite 700, Republic Centre
        633 Chestnut Street
        Chattanooga, TN 37450
        423-756-5051
        kgrant@rswlaw.com

HERRIN MCPEAK & ASSOCIATES

/s/K. Erickson Herrin
K. ERICKSON HERRIN / BPR# 012110
Attorneys for Defendant Johnson City, Tennessee, Karl Turner in his individual and official capacity, and Toma Sparks in his official capacity
515 E. Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
423-929-7113
erick@hbm-lawfirm.com

BURCH, PORTER & JOHNSON, PLLC

/s/Jonathan P. Lakey
JONATHAN P. LAKEY / BPR# 016788
Attorneys for Defendant Johnson City, Tennessee
130 N. Court Avenue
Memphis, TN 38103
901-524-5000
jlakey@bpjlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Heather Moore Collins
Ashley Walter
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
Email: heather@hmccivilrights.com
Email: ashley@hmccivilrights.com
*Attorney for Plaintiffs*

Kevin Osborne
Elizabeth Kramer
Julie C. Erickson
44 Tehama St.
San Francisco, CA 94105
Email: kevin@eko.law
Email: elizabeth@eko.law
Email: julie@eko.law
*Pro Hac Vice Attorneys for Plaintiffs*

Emily C. Taylor
Reid A. Spaulding

Vanessa Baehr-Jones
Advocates for Survivors of Abuse

Watson Roach Batson & Lauderback
P. O. Box 131
Knoxville, TN  37901-0131
865-637-1700
Email:  etaylor@watsonroach.com
Email: rspaulding@watsonroach.com
*Attorneys for the City of Johnson City, Tennessee, and Karl Turner, in his individual capacity*

Keith H. Grant
Laura Beth Rufolo
Philip Aaron Wells
Robinson, Smith & Wells, PLLC
Suite 700, Republic Centre
633 Chestnut Street
Chattanooga, TN  37450
423-756-5051
Email: kgrant@rswlaw.com
Email: lrufolo@rswlaw.com
Email: awells@rswlaw.com
*Attorneys for Justin Jenkins, in his individual capacity*

Jonathan P. Lakey
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, TN  38103
901-524-5000
Email:  jlakey@bpjlaw.com
*Attorney for City of Johnson City, Tennessee*

4200 Park Blvd., No. 413
Oakland, CA  94602
Email: vanessa@advocatesforsurvivors.com
*Pro Hac Vice Attorney for Plaintiffs*

K. Erickson Herrin
Herrin McPeak & Associates
515 E. Unaka Avenue
P. O. Box 629
Johnson City, TN  37605-0629
423-929-7113
Email: lisa@hbm-lawfirm.com
*Attorney for the City of Johnson City, Tennessee, Karl Turner, in his individual and official capacity, Toma Sparks, in his official capacity, and, Kevin Peters, in his official capacity*

Kristin E. Berexa
Benjamin C. Allen
Farrar Bates Berexa
12 Cadillac Drive, Suite 480
Brentwood, TN  37027
615-254-3060
Email:  kberexa@fbb.law
Email: ballen@fbb.law
*Attorneys for Toma Sparks*

This the 21st day of November, 2024.

MOORE, RADER & YORK, P.C.

/s/Daniel H. Rader IV
DANIEL H. RADER III / BPR #002835
DANIEL H. RADER IV / BPR #025998
ANDRÉ S. GREPPIN / BPR #036706