UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| B.P., H.A. & S.H., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF JOHNSON CITY, TENNESSEE et al., <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 2:23-cv-71-TRM-JEM |
| C.S., <br><br> Plaintiff in Intervention. | |

## MOTION TO INTERVENE

C.S. is a victim of Sean Williams' depravity. C.S. moves to intervene as a matter of right or, alternatively, permissively. C.S. seeks to become a joint class representative with Plaintiffs B.P. and H.A. in their claims against the City of Johnson City, Tennessee and several officers of the Johnson City Police Department (JCPD).

## INTRODUCTION

C.S. asks that the Court grant her motion to intervene before considering B.P. and H.A.'s motion to dismiss. Doc. 489. In that motion, B.P. and H.A. claim to seek dismissal because of "the substantial risk of not meeting the applicable burdens of proof based on the evidence adduced through extensive discovery." Doc. 489 at 5. That's a **shocking** and **unnecessary** revelation for at least three reasons.

*One*. Nothing in Rule 21, the legal basis for their motion, suggests—much less requires— that fewer than all plaintiffs admit such a thing to have the Court dismiss their claims. That statement makes no sense given that for over a year B.P. and H.A. (and their counsel) have publicly

stated that they intended to represent the nearly 60 women and children that Williams (and others) drugged, sexually assaulted, and trafficked. *See* Doc. 93. While not *legally* binding on the unnamed women and children like C.S., this unnecessary statement is *practically* harmful to them, and it will no doubt follow them through any future litigation they undertake.

So why did B.P. and H.A. make that unnecessary and practically harmful statement?

*Two*. Conspicuously absent from the motion to dismiss is this truth: B.P. and H.A. settled with the City; and in return, they agreed to include this statement in a motion to dismiss. That bears repeating. B.P. and H.A., in exchange for settling their claims, agreed to say something publicly that not only undermines their supposed basis for being paid anything (their legal claims' provability) but also unnecessarily makes the claims against Defendants by other women and children who were drugged, sexually assaulted, or trafficked by Williams seem less compensable.

That B.P. and H.A. (and their counsel) agreed to make this statement as part of a $28 million settlement with the City is public record. The City's counsel Jonathan Lakey told the Johnson City Board of Commissioners precisely that during its February 13, 2025 meeting. *See* Streaming Johnson City, *Johnson City Board of Commissioners Meeting 02-13-2025*, at 1:04:15–1:05:33, YouTube, https://www.youtube.com/live/P78__LKdOsc?si=b6CQ5DoiinkJLVlY&t=3855.

Even so, the precise settlement terms are unknown. But what is known or clear from the parties' public statements and filings is that the Williams victims whose abuse was not reported to the JCPD will not get *any* of the $28 million settlement—except for H.A. and possibly other similarly situated unnamed victims represented by Plaintiffs' counsel.[1] All other Williams survivors

---

[1] Based on the public statements of Plaintiffs' counsel, there may be unnamed victims of Williams directly represented by counsel who will also receive money under the settlement. *Cf. Johnson City Commissioners Vote Unanimously to Approve Settlement in Lawsuit*, WCYB News 5 (updated Feb. 13, 2025 9:41 PM), https://wcyb.com/news/local/johnson-city-commissioners-vote-

who like C.S. did not know they were assaulted until shown proof years later or who like H.A. did not report what Williams did for another reason will be forced to ***start their cases against Defendants over from scratch***. But if a new putative class representative steps into B.P.'s and H.A.'s roles before their claims are dismissed with prejudice, the Williams survivors' claims will go on.[2]

That the survivors of Williams' sex-trafficking conspiracy will get nothing from this settlement (unless they happened to report Williams to the JCPD) is startling. What's worse, C.S.'s counsel is unaware of any notice being given to these unnamed women and children—most (or all) of whom Plaintiffs' counsel should have identified in discovery. That's beyond disappointing given that almost a year ago this Court noted the cold "reality": "The subject of this case—an alleged conspiracy between JCPD and a serial rapist—is complex and sensitive, and it is reasonable to expect that not all victims who wish to participate in the suit will come forward at an early stage in the litigation." Doc. 119 at 6. Surely that reality was not lost on Plaintiffs' counsel.

So while the law does not require notice before dismissing the putative class representative's claims, the law does not preclude Plaintiffs' counsel from notifying the unnamed putative class members (or their counsel) before moving to dismiss the putative class members claims with prejudice. Providing notice here should not have been difficult. And given the torrent of abuse that the JCPD's policies, procedures, and officers enabled Williams to inflict on so many women and

---

unanimously-to-approve-settlement-in-lawsuit ("Today marks the end of a long journey for my clients, survivors of Sean Williams' sex trafficking conspiracy, and female reporters of sexual violence in Johnson City," quoting Plaintiffs' counsel Vanessa Baehr-Jones.).

[2] To be clear, C.S. does begrudge B.P. and H.A. their settlement. Like her, they were victims of Williams' depravity. And like her, they are survivors who deserve compensation. C.S.'s concern is principally with their the terms to which their counsel agreed, and the unnecessary difficulty that dismissing their putative class claims against Defendants will inflict on other Williams survivors like her who for whatever reason did not report Williams' crimes to the JCPD.

children who did not report what happened to the JCPD, choosing not to tell these victims that the $28 million settlement does not include them is unfathomable to this counsel.

The suffering of the Williams survivors has always been at the core of this litigation. The horror of what they endured triggered widespread media coverage.[3] That media coverage spurred public outcry. And eventually the City took long overdue steps to investigate the practices and procedures of the JCPD.

Sean Williams is a scourge on society. For over a decade, he sexually assaulted, raped, and sex trafficked women and children in Johnson City.[4] But what drove public outcry and prompted

---

[3] *See, e.g.*, Murry Lee, *Johnson City files answer to 'Jane Doe' lawsuit*, WJHL-TV (Aug. 25, 2023, 4:36 PM), https://www.wjhl.com/news/local/sean-williams-case/johnson-city-files-answer-to-jane-doe-lawsuit/ ("The federal civil lawsuit was filed on behalf of nine 'Jane Does,' all of whom claim to have been sexually assaulted by Sean Williams, a former Johnson City business owner-turned-fugitive who was arrested in North Carolina in April."); Jeff Keeling, *Suit now claims JCPD knew of Williams' sex trafficking*, WJHL-TV (Aug. 29, 2025, 6:35 PM), https://www.wjhl.com/news/local/sean-williams-case/suit-now-claims-jcpd-knew-of-williams-sex-trafficking/ ("Allegations that Johnson City police benefited from allowing Sean Williams to allegedly conduct and continue sex trafficking operations form the crux of an amendment to a federal civil lawsuit against the city on behalf of multiple alleged Williams rape victims."); Anita Wadhwani, *'A punch in the gut': women accuse Johnson City officials of victim-blaming in serial rapist case*, Tennessee Lookout (Feb. 8, 2024, 5:00 AM), https://tennesseelookout.com/2024/02/08/a-punch-in-the-gut-women-accuse-johnson-city-officials-of-victim-blaming-in-serial-rape-case/ ("The women's lawsuit, first filed last June, centers on allegations that Johnson City police knew of multiple allegations that local businessman Sean Williams drugged then sexually assaulted women — but failed to act, even after police discovered a handwritten list on Williams' nightstand scrawled with the first names of 23 women, under the word 'raped.'"); Jeff Keeling, *Sides in JCPD corruption lawsuit tussle over evidence*, WJHL-TV (Nov. 6, 2024, 8:02 PM), https://www.wjhl.com/news/local/sean-williams-case/sides-in-jcpd-corruption-lawsuit-tussle-over-evidence/ ("Baehr Jones and partner attorneys filed a suit in June 2023 on behalf of nine anonymous alleged victims of sexual assaults by Williams. The suit has undergone two amendments and a third is pending, as is a request for it to be granted class action status. **Its main claims remain the same: that from at least 2018 to 2021 Williams drugged and sexually assaulted dozens of women with impunity thanks to JCPD officers allegedly looking the other way—some in exchange for payments.**" (emphasis added)).

[4] In November 2024, Williams was convicted for three counts of production of child pornography. The evidence showed that Williams also sexually assaulted the unconscious mothers of these three children. The first instance occurred in 2008, and the last two instances occurred in 2020. Press

this action was that JCPD officers allegedly allowed him to get away with it for years. JCPD knew that Williams was raping women by November 2019 and should have stopped him. But JCPD did not. As a result, Williams sexually assaulted, raped, and sex trafficked dozens more victims, including C.S., before he was finally apprehended. What happened to these women and children resulted from JCPD's failure to do its most basic functions: protecting and serving the public.

The JCPD's role in Williams' heinous acts against women and children was the focus of the June 2023 Complaint. *See* Doc. 1. JCPD's role in Williams' atrocities was also the crux of the September 2023 Amended Complaint. *See* Doc. 121. That remained true in the March 2024 Second Amended Complaint, which added class claims. *See* Doc. 121.

Indeed, that remained true until last Thursday. On the same day that the Johnson City Commissioners approved a $28 million settlement that included B.P. and H.A., those named class representatives for a putative class and subclass of women and children brutalized by William moved to dismiss their claims against Defendants with prejudice. Doc. 489. They also moved to file a Third Amended Complaint, Doc. 490, and to withdraw their November 2024 motion to file a Third Amended Complaint ***and have it removed from the public docket***, Doc. 488.

***Three***. B.P. and H.A.'s statement about the supposed weakness of their case based on the evidence adduced in discovery is directly contrary to what they told the Court in both their motion for certification, Doc. 391, and the first motion to file a Third Amended Complaint, Doc. 419.

After a fruitful discovery, the B.P. (for the Sex Trafficking Survivor Class) and H.A. (for the Williams Survivor Subclass), *see* Doc. 121 at 50–51, ¶ 298, felt so strongly about their case against Defendants that in November 2024 they asked the Court's permission to file a Third

---

Release, E.D. Tenn. U.S. Attorney's Office, Federal Jury Convicts Sean Christopher Williams on Three Counts of Production of Child Pornography (Nov. 14, 2024), https://www.justice.gov/usao-edtn/pr/federal-jury-convicts-sean-christopher-williams-three-counts-production-child.

Amended Complaint re-naming two dismissed officers based on newly discovered information of their misconduct. *See* Doc. 419 at 3. The November 2024 proposed Third Amended Complaint is 118 pages. Doc. 419-2. The factual background spans 69 pages, and the discussion of Williams and JCPD covers 58-plus pages. *See id.* at 7–75 (general factual background), 7–65 (Williams and JCPD). That proposed Third Amended Complaint tells a compelling story about conspiracy, collaboration, corruption, and more. But the focus of that complaint, like those before, was on JCPD's role in aiding, abetting, conspiring, and benefiting from Willaims' sex trafficking.

Two weeks before moving to file that new and more detailed Third Amended Complaint, Plaintiffs B.P. and H.A. asked the Court to certify their class and subclass. Doc. 391. In doing so, they told the Court that their claims were typical of the class and subclass that they represented. *See* Doc. 391 at 25–26. B.P. and H.A. also told the Court that they would adequately represent the interests of the unnamed members of their class and subclass because they had "common interests." Doc. 391 at 18–19. Plaintiffs' counsel likewise told the Court that they would "adequately and fairly represent their clients in this case." Doc. at 19.

So what about the Williams survivors' claims changed between November 2024 and February 2025? B.P. and H.A. never say in any of Thursday's slate of motions. Nor have their counsel said publicly to the media or privately to this counsel despite several requests. What is known is that between November 2024 and February 2025, the putative class representatives negotiated and agreed to a $28 million settlement for themselves and a separate class (represented by Plaintiff S.H.) that ***does not*** include all Williams survivors. And despite the dearth of public details, an award of fees and expenses for Plaintiffs' counsel will be included in the final settlement—assuming the parties can convince the Court to certify and approve a Rule 23 settlement class.

In the quest for an adequate explanation for the inexplicable change in position, Cicero would likely have asked, "*Cui bono*?"[5] That question, at least, has answers.

## ARGUMENT

**I.    C.S. has a right to intervene in this litigation.**

C.S.'s right to intervene as a matter of right is governed by Federal Rule of Civil Procedure 24(a)(2). The Sixth Circuit has held that to intervene under this rule, the intervenor must establish that

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Grainger v. Ottawa Cnty., Mich.*, 90 F.4th 507, 513 (6th Cir. 2024) (quoting *Coal. To Def. Affirmative Action v. Granhom*, 501 F.3d 775, 779 (6th Cir. 2007)).

C.S. meets all four elements to intervene as a matter of right.

**A.    C.S.'s motion to intervene is timely.**

C.S. learned of the City's $28 million settlement that benefits the reporting class (represented by Plaintiff S.H.) and Plaintiffs B.P. and H.A. *individually* on Friday, February 14, 2025. That same day, C.S.'s counsel discovered that B.P. and H.A. had moved the day before to dismiss their individual claims with prejudice and were asking the Court to allow the filing of a Third Amended Complaint that dropped the putative class claims of the Williams survivors against Defendants—completely reversing their earlier positions in the motion to certify and November 2024 motion to file a Third Amended Complaint. *See* Docs. 391 & 419. Late Friday afternoon, C.S.'s

---

[5] *See The New Yale Book of Quotations* 163 (Fred R. Shapiro ed. 2021).

7
Case 2:23-cv-00071-TRM-JEM    Document 493    Filed 02/17/25    Page 7 of 11
PageID #: 11449

counsel received an email from Plaintiffs' counsel saying that C.S. would have to proceed with her claims against Defendants individually.

Unable to square the statements in the October 2024 motion to certify and November 2024 motion to file a Third Amended Complaint with the February 2025 motions given Plaintiff's counsel's obligations under Rule 11(b) and the duty of candor in Tennessee's and California's Rules of Professional Conduct,[6] C.S.'s counsel asked for an explanation on Saturday morning, provided his cell number, and stated his availability to discuss all weekend. On Monday morning, C.S.'s counsel reiterated the need for an explanation and emphasized that time was of the essence. Late Monday night (7:53 P.M.), Plaintiffs' counsel wrote back that they were unable to discuss today and providing what might charitably be called a trivially true nonanswer for the unnecessary statement about being unlikely to prevail on behalf of the Williams survivors in the motion to dismiss.

Having received no adequate explanation for the sudden about face and given that the Court might act at any time on the so-called unopposed motion to dismiss,[7] C.S. felt compelled to intervene. She did so less than one business day after finding out B.P. and H.A. were no longer purporting to represent her interests. A more apt example of timeliness is difficult to conjure.

Perhaps more importantly, allowing C.S. to intervene as a joint class representative with B.P. and H.A. will allow the claims of the putative class and subclass that they have thus far represented to proceed to trial much more quickly and efficiently than if C.S. were to file a separate putative class action. To be clear, C.S. does not suggest that some delay in the Court's current Scheduling Order will not be necessary. But for months now the Court has been allowing the parties to postpone deadlines to try to resolve their claims via settlement. But delaying

---

[6] *See* Tenn. Rules of Pro. Conduct 3.3; Cal. Rules of Pro. Conduct 3.3.

[7] Of course, the absence of an adequate explanation does not mean none exists.

consideration of a class-certification and trial by a few *months* pales in comparison to a delay of *a year or more* that is virtually certain to follow a newly filed class action. *See In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894, 900 (6th Cir. 2022) (outlining five factors to determine timeliness but noting these factors are evaluated under all relevant circumstances).

> **B.  C.S. has a substantial legal interest in this action, and her ability to protect her interest may be impaired without intervention.**

The Sixth Circuit recognized just last year that before class certification absent class members like C.S. are permitted to intervene where the named plaintiffs do not adequately represent their interests. *See Grainger*, 90 F.4th at 514–15. In doing so, the Sixth Circuit explained that the nature of Rule 23 actions dictates that Rule 24's "substantial interest prong is readily satisfied." *Id.* at 514.

Here, the named Plaintiffs B.P. and H.A. have settled with the City and moved to dismiss with prejudice their claims against all Defendants. Having no interest of their own in this litigation, both B.P. and H.A. cannot adequately represent the interests of C.S. and others like her. Thus, C.S. has a right to intervene under Rule 24 to protect her interests. *See* 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 9:30 (6th ed. 2024) ("[M]embers of a class have a right to intervene if their interests are not adequately represented by existing parties." (quoting *Standard Fire Ins. Co v. Knowles*, 568 U.S. 588, 594 (2013))).

C.S. and others like her have an interest in seeing their claims under the Trafficking Victims Protection Reauthorization Act (TVPRA) and 42 U.S.C. § 1983 resolved quickly and efficiently. Because this case involves claims of sexual assault and sex trafficking, absent class members who are survivors of Williams atrocities have a reasonable fear of coming forward—even under initialized pseudonyms. As this Court itself pointed out, "The subject of this case—an alleged conspiracy between JCPD and a serial rapist—is complex and sensitive, and it is reasonable to expect that not

9
Case 2:23-cv-00071-TRM-JEM   Document 493   Filed 02/17/25   Page 9 of 11
PageID #: 11451

all victims who wish to participate in the suit will come forward at an early stage in the litigation." Doc. 119 at 6. Allowing C.S. to intervene and to take on the responsibility of pushing these claims to trial—even one that may not resolve Defendants' liability on all issues for all absent class members—is worthwhile.

C.S.'s counsel have long experience working with sex-trafficking victims. We know well the toll that these cases take on the survivors who chose to come forward to seek justice. Here, many legal questions will likely need to be answered before a jury renders a verdict. These questions can—and should—be answered without forcing all the women and children Williams violated to come forward in a new case. Being forced to come forward, given the special context of this case, is a "practical disadvantage." *Grainger*, 90 F.4th at 516; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").

### C. Plaintiffs B.P. and H.A. cannot adequately protect C.S.'s interests.

As noted, B.P. and H.A. have settled with the City and have moved to dismiss their claims with prejudice. They are no longer even trying to protect the interests of C.S. and others like her.

## II. Even if C.S. had no right to intervene, the Court should still permit her to intervene.

Regardless of whether a party has a right to intervene, the Court can permit intervention so long as the motion is "timely" and the intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As an absent putative class member and for the reasons discussed above, C.S. satisfies these requirements. Thus, should the Court conclude that she does not have a right to intervene, C.S. asks that the Court still grant her motion under Rule 24(b)(1).

## CONCLUSION

Whether as a matter of right or permission, C.S. asks that this Court to allow her to intervene and to proceed as the class representative first jointly and then in place of B.P. and H.A. once they are dismissed with prejudice. To illustrate how C.S. envisions doing so, she includes a proposed Complaint in Intervention, which is based on the Second Amended Complaint, the operative complaint at present, as Exhibit 1. Additionally and candidly, C.S. states that if permitted to intervene she may, after receiving access and having an opportunity to review the discovery, seek to amend her claims similar to the way that Plaintiffs did in November 2024.

Respectfully submitted on February 17, 2025.

                                                             ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
**Counsel for C.S.**[8]

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

---

[8] Counsel for C.S. will apply for *pro hac vice* admission to this Court as soon as possible.