# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

B.P., H.A. & S.H.,

       Plaintiffs,

v.

CITY OF JOHNSON CITY, TENNESSEE
et al.,

       Defendants.

_____

C.S.,

       Plaintiff in Intervention.

CIVIL ACTION FILE

NO. 2:23-cv-71-TRM-JEM

## [PROPOSED] COMPLAINT IN INTERVENTION BY C.S.

Plaintiff in Intervention C.S. brings this Complaint in Intervention and shows the Court the following:

## INTRODUCTION

This Complaint in Intervention is based on the Second Amended Class Action Complaint, filed March 1, 2024. Doc. 121. It is submitted in compliance with Rule 24 and is intended to join C.S. as a joint class representative. While the Complaint in Intervention asserts allegations that overlap with those made by Plaintiffs B.P., H.A., and S.H., C.S.'s counsel do not represent these Plaintiffs individually. To keep the claims as similar as possible, few changes have been made to the allegations as possible. But as noted in her motion to intervene, C.S. may move to amend this Complaint in Intervention to incorporate allegations similar to those in the proposed Third Amended Class Action Complaint filed November 2, 2024. Doc. 419-2.

## JURISDICTION AND VENUE

### 1.

Plaintiffs and C.S. bring this Trafficking Victims Protection Act and civil rights action pursuant to 18 U.S.C. §§ 1591(a)(1), (2), 1591(d), 1594, and 1595; 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution; and the common law.

### 2.

This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

### 3.

Venue is proper under 28 U.S.C. § 1391 as Defendants are located in Washington County, in the Greeneville Division of the Eastern District of Tennessee.

## PARTIES

### 4.

C.S., a female, was a citizen of the State of Tennessee during the operative time and is today.

### 5.

Plaintiff B.P., a female, was a citizen and resident of Johnson City, Washington County, Tennessee, during the operative time.

### 6.

Plaintiff H.A., a female, was a citizen and resident of Johnson City, Washington County, Tennessee, during the operative time.

7.

Plaintiff S.H., a female, was a citizen and resident of Gainesville, Georgia, and was visiting Johnson City, Washington County, Tennessee, during the operative time.

8.

Defendant Johnson City, Tennessee, ("Defendant City"), is a Tennessee governmental entity organized and existing under the laws of the State of Tennessee. Defendant City has substantial control over the Johnson City Police Department and its employees.

9.

Defendant Chief Karl Turner is an individual residing in Johnson City, Tennessee, and was an employee of Defendant City during the operative time.

10.

Defendant Investigator Toma Sparks is an individual residing in Johnson City, Tennessee, and was an employee of Defendant City during the operative time.

11.

Defendant Investigator Jeff Legault is an individual residing in Johnson City, Tennessee, and was an employee of Defendant City during the operative time.

12.

Defendant Investigator Brady Higgins is an individual residing in Johnson City, Tennessee, and was an employee of Defendant City during the operative time.

13.

Defendant Officers John Does 8 through 20 are Johnson City Police Officers. Plaintiffs name them as "Doe" Defendants with the expectation that their identities will be ascertained after reasonable discovery.

14.

Plaintiffs and C.S. are informed and believe and thereon allege that each of the Defendants is responsible individually and as an agent, contributor, and co-conspirator in a single enterprise with and as the alter ego of all other Defendants.

15.

At all relevant times, the unlawful conduct against Plaintiffs, C.S., and class members as described herein was actuated, in whole or in part, by a purpose to serve Defendants. At all relevant times, upon information and belief, the unlawful conduct described herein was committed under actual or apparent authority granted by Defendants such that all of the unlawful conduct of all Defendants is legally attributable to all other Defendants.

16.

At all relevant times, all Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts, and omissions as described herein, unless otherwise indicated, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

**FACTUAL BACKGROUND**

17.

Under Federal Rule of Civil Procedure 10, C.S. incorporates by reference the Factual Background section in the Second Amended Class Action Complaint filed March 1, 2024, Doc. 121 at 7–50, ¶¶ 18–297. In doing so, C.S. incorporates only those parts that are consistent with the Court's rulings in this case.

18.

On two separate occasions around the spring 2021, while in downtown Johnson City with a friend, C.S. encountered Sean Williams.

19.

On both occasions, Williams provided C.S. and her friend with drinks while they were downtown, after which they went with him to his apartment.

20.

On both occasions, C.S. lost consciousness shortly after arriving at Williams's apartment, having been drugged by Williams.

21.

On both occasions, while C.S. was unconscious, Williams sexually assaulted her and record his assault with photos or video.

22.

On both occasions, C.S. left Williams's apartment the next morning, unaware that she had been sexually assaulted.

23.

Around fall 2023, C.S. was contacted by a law enforcement agency. During subsequent meetings with law enforcement agents, she was informed and shown photographic or video evidence of Williams' assault. C.S. has no memory of the sexual assaults and was unconscious at the time.

24.

Upon information and belief, these photographs or videos Williams took depicting the sexual assaults of C.S. are now in the custody and control of the FBI.

## CLASS ACTION ALLEGATIONS

### 25.

C.S. and Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following classes:

    (a)    <u>Sex Trafficking Survivor Class (represented by B.P. and C.S.):</u> All individuals, including minors, who were sexually abused, drugged or trafficked by Sean Williams or Alvaro Fernando Diaz-Vargas.

    (b)    <u>Williams Survivor Subclass (represented by H.A. and C.S.):</u> All members of the Sex Trafficking Survivor Class who were sexually assaulted by Sean Williams following the first report to the JCPD of Sean Williams's alleged sexual violence on or about November 7, 2019.

    (c)    <u>Reporter Survivor Class (represented by S.H.):</u> All women, including minors, who reported sexual abuse or trafficking by any person to JCPD from January 1, 2018, to April 25, 2023.

### 26.

The <u>Sex Trafficking Survivor Class</u> asserts the following:

    (a)    Sex Trafficking, 18 U.S.C. §§ 1591, 1594, and 1595 against Defendants City and Turner;

    (b)    Obstruction of Enforcement of 18 U.S.C. § 1591, 18 U.S.C. §§ 1594, 1595, and 1591(d) against all Defendants;

    (c)    Aiding and Abetting a Sex-Trafficking Venture, 18 U.S.C. §§ 2, 1591(a)(1) & (2), 1595 against Defendants City, Turner, and Sparks;

    (d)    Conspiracy to Commit Violations of the TVPA, 18 U.S.C. §§ 1594(c), 1591, and 1595 against Defendants City, Turner, and Sparks;

(e)    Negligence, Failure to Train against Defendant City; and

(f)    Negligence, Failure to Supervise against Defendant City.

27.

The <u>Williams Survivor Subclass</u> asserts the following:

(a)    Equal Protection, 42 U.S.C. § 1983, Unconstitutional Pattern or Practice as to Women Reporters of Sexual Assault against Defendant City;

(b)    Equal Protection, 42 U.S.C. § 1983, Violation of Substantive Rights to Due Process against all Defendants;

(c)    Negligence, Failure to Train against Defendant City; and

(d)    Negligence, Failure to Supervise against Defendant City.

28.

The <u>Reporter Survivor Class</u> asserts the following:

(a)    Equal Protection, 42 U.S.C. § 1983, Unconstitutional Pattern or Practice as to Women Reporters of Sexual Assault against Defendant City;

(b)    Negligence, Failure to Train against Defendant City; and

(c)    Negligence, Failure to Supervise against Defendant City.

29.

Under Federal Rule of Civil Procedure 10, C.S. incorporates by reference ¶¶ 302–310 of the Class Allegations section in the Second Amended Class Action Complaint filed March 1, 2024. [Doc. 121 at 52–55]. In doing so, C.S. incorporates only those parts that are consistent with the Court's rulings so far.

## COUNT I

**Sex Trafficking, 18 U.S.C. §§ 1591, 1594, and 1595 (on behalf of C.S., B.P., and the Sex Trafficking Survivor Class against Defendants City, Turner, and Sparks)**

30.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count I are made only against Defendants City, Turner, and Sparks.

31.

C.S., B.P. and the Sex Trafficking Survivor Class bring claims under 18 U.S.C. § 1591(a)(1), (2), 1595 based on the Defendants' respective financial benefits garnered from participating in a venture in which Williams, Diaz-Vargas, and other known and unknown coconspirators knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited by any means C.S., B.P., and the Sex Trafficking Survivor Class, where Williams's use of force, *i.e.*, drugging women to render them unconscious, was used to cause them to engage in commercial sex acts.

32.

Defendants City, Turner, and Sparks knowingly participated in a sex trafficking venture by benefitting financially. Defendants effectively accepted payments from Williams in furtherance of the conspiracy through the corrupt use of search warrants and other unlawful collection efforts, including an extortion scheme. Said warrants were facially obtained and used to seize unlawfully obtained currency or narcotics assets but were in fact quid pro quo payments made to Defendants with either the implied or explicit understanding that Defendants would shield Williams, permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments.

33.

Defendant JCPD officers knew multiple women had reported Williams's forced sex acts, including, at least, B.P., Females 2, 9, and 12. Defendants further knew, based on these women's reports, that Williams used Diaz-Vargas and other coconspirators to recruit and obtain women in exchange for things of value, including among other things, illicit drugs, and free lodging. Instead of arresting Williams and pursuing charges against him, Defendants knowingly and corruptly mishandled women's rape reports in exchange for payments, all in furtherance of the sex trafficking venture.

34.

The reason JCPD and Defendant officers engaged in a uniform practice that ignored, dismissed, and diminished the numerous reports of sexual assault about Williams was to receive financial benefits from Williams and his sex-trafficking venture. JCPD officers knew that they would gain financial benefits by ignoring the women victims' complaints associated with Williams and by participating in his sex-trafficking venture.

35.

As a result of Defendants' participation in a sex trafficking venture by receiving currency and cash from Williams, Williams was able to continue to perpetrate his sex trafficking crimes for years, resulting in the damages to C.S., B.P., and the Sex Trafficking Survivor Class, including economic harm, bodily harm, psychological and psychiatric harm, emotional pain and suffering, and mental anguish.

36.

Each of the Defendants knew or should have known that it received value for its respective ongoing law enforcement practices that allowed Williams and his coconspirators to engage in the

sex trafficking conspiracy, and either knew, or was in reckless disregard to the fact that, Williams would use means of force, *i.e.*, drugging women to render them unconscious, to cause the women to engage in commercial sex acts.

37.

Each of the Defendants knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1), (2) and 1595(a) occurring within the territorial jurisdiction of the United States.

38.

The conduct of each of the Defendants was in or affected interstate and/or foreign commerce.

39.

Each of the Defendants knowingly benefited from participation in what it knew or should have known was a sex trafficking venture in violation of 18 U.S.C. §§ 1591(a)(2) and/or 1595(a).

40.

Each Defendant knowingly benefited from, and/or received value for participation in the venture in which Defendant knew that C.S., B.P., and the Sex Trafficking Survivor Class would be forced to engage in commercial sexual acts by use of force.

41.

Defendant JCPD officers had actual knowledge that they were facilitating and participating in a scheme to profit from the commercial sex acts of raped women.

42.

Defendants' conduct caused C.S., B.P., and the Sex Trafficking Survivor Class serious harm including, without limitation, physical, psychological, financial, and reputational harm.

43.

The conduct of each Defendant JCPD officer, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of its constituents, Johnson City residents—whom they had taken an oath to protect—and warrants an award of punitive damages in an amount sufficient to punish each of the Defendants and deter others from like conduct.

44.

C.S., B.P., and the Sex Trafficking Survivor Class demand judgment against each of the Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II

**Obstruction of Enforcement of 18 U.S.C. § 1591, 18 U.S.C. § 1594, 1595, and 1591(d)
(on behalf of C.S., B.P., and the Sex Trafficking Survivor Class against all Defendants)**

45.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

46.

C.S., B.P., and the Sex Trafficking Survivor Class bring claims under 18 U.S.C. § 1595 based on each of the Defendants' actions to obstruct, attempt to obstruct, and in any way interfere with and prevent the enforcement of 18 U.S.C. §§ 1591(a)(1), (2), in violation of 18 U.S.C. § 1591(d).

47.

Defendants took the following actions knowingly, all in violation of 18 U.S.C. § 1591(d):

(a)     Defendants effectively accepted payments from Williams in furtherance of the conspiracy through the corrupt use of search warrants and other unlawful collection efforts. Said warrants were facially obtained and used to seize unlawfully obtained currency or narcotics assets but were in fact quid pro quo payments made to Defendants with either the implied or explicit understanding that Defendants would shield Williams, permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments.

(b)     Defendants affirmatively refused to initiate formal investigations into Williams's crimes against women.

(c)     Defendants affirmatively refused to refer charges for prosecution and/or referred charges in a piecemeal and incomplete manner so as to undermine the prosecution.

(d)     Defendants affirmatively intimidated and dissuaded Plaintiffs and other class members from pursuing criminal charges.

(e)     Defendant Sparks made knowingly false statements to obstruct and interfere with the criminal investigation.

(f)     Defendants Sparks knowingly conspired with Williams to destroy and conceal evidence, including digital evidence that showed Williams raping unconscious women whom he had drugged. This evidence included images of Plaintiffs in this case.

(g)     Defendant Legault and other JCPD officers knowingly retaliated against Female 9, a Williams's survivor and a witness in the federal sex trafficking

investigation, physically assaulting her, arresting her, and ultimately causing her eviction from Johnson City Public Housing.

48.

At the time of each of the Defendants' obstructive acts, each Defendant had actual knowledge, based on rape victims' reports, including, at least, the reports of B.P, and Females 2, 9, and 12, that Williams was drugging and raping women, and that Williams used Diaz-Vargas, and other coconspirators, to recruit and obtain women in exchange for things of value, in furtherance of this conspiracy.

49.

Each of the Defendants knew or should have known that their obstructive acts would have the effect of interfering with and preventing the enforcement of 18 U.S.C. §§ 1591(a)(1), (2).

50.

Each of the Defendants knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(d) and 1595(a) occurring within the territorial jurisdiction of the United States.

51.

The conduct of each of the Defendants was in or affected interstate and/or foreign commerce.

52.

Defendant JCPD officers had actual knowledge that they were obstructing, attempting to obstruct, and interfering in any way and preventing the enforcement of 18 U.S.C. §§ 1591(a)(1), (2).

-13-

53.

The conduct of each Defendant caused C.S., B.P., and the Sex Trafficking Survivor Class serious harm including, without limitation, physical, psychological, financial, and reputational harm.

54.

The conduct of each Defendant JCPD officer, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of its constituents, Johnson City residents—whom they had taken an oath to protect—and warrants an award of punitive damages in an amount sufficient to punish each of the Defendants and deter others from like conduct.

55.

C.S., B.P., and the Sex Trafficking Survivor Class demand judgment against each of the Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III

### Aiding and Abetting a Sex-Trafficking Venture, 18 U.S.C. §§ 2, 1591(a)(1) & (2), 1595 (on behalf of C.S., B.P. and the Sex Trafficking Survivor Class against Defendants City, Turner, and Sparks)

56.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

57.

C.S., B.P., and the Sex Trafficking Survivor Class bring claims under 18 U.S.C. §§ 2, 1591(a)(1) & (2), 1595.

58.

Acting through its officers and supervising officers (including Defendants Turner and Sparks), Defendant City aided and abetted Williams's sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. §§ 2, 1591(a)(1) & (a)(2).

59.

Under 18 U.S.C. § 2, Defendants are punishable as principals under 18 U.S.C. §§ 1591(a)(1) & (a)(2) and thereby committed and perpetrated violations of Chapter 77, Title 18, U.S. Code, when they aided and abetted Williams's sex-trafficking venture and the sex trafficking of C.S., B.P., and members of the Sex Trafficking Survivor Class.

60.

Under 18 U.S.C. § 2, Defendants committed and perpetrated crimes in violation of 18 U.S.C. §§ 1591(a)(1) & (a)(2) by aiding and abetting Williams's and his conspirators' sex-trafficking venture and sex trafficking of C.S., B.P., and other members of the Sex Trafficking Survivor Class. As a consequence, C.S., B.P., and other members of the Sex Trafficking Survivor Class are victims of Defendants' criminally aiding and abetting Williams's violations of 18 U.S.C. §§ 1591(a)(1) & (a)(2). These actions were in and affecting interstate and foreign commerce.

61.

The crimes that Defendants aided and abetted are (1) Williams's perpetrating of sex trafficking by force, in violation of 18 U.S.C. § 1591(a)(1), and (2) Williams's co-conspirators'

knowingly benefitting from sex trafficking by force, in violation of 18 U.S.C. § 1591(a)(2). These crimes were in and affecting interstate and foreign commerce.

62.

Williams's co-conspirators benefitted financially and received things of value from their participation in the Williams sex-trafficking venture, including payments, illicit drugs, free lodging, and other compensation from Williams. The co-conspirators who benefitted include Diaz-Vargaz, Female 1, and other unknown coconspirators.

63.

Acting through its officers and supervising officers (including Defendants Turner and Sparks), Defendant City itself directly committed and perpetrated violations of Chapter 77, Title 18, U.S. Code, including 18 U.S.C. §§ 1591(a)(1) & (a)(2), by aiding and abetting a sex-trafficking venture and the sex trafficking of B.P., as well as other Sex Trafficking Survivor class members. Defendant City itself directly violated Chapter 77 by committing and perpetrating these violations.

64.

Among other things, Defendants aided and abetted Williams's sex-trafficking venture and sex trafficking of C.S., B.P., and other members of the Sex Trafficking Survivor Class, knowing that Williams would use means of force, *i.e.*, drugging, to cause C.S., B.P., and other members of the Sex Trafficking Survivor Class, to engage in commercial sex acts.

65.

By aiding and abetting Williams's sex-trafficking venture and sex trafficking of B.P. and other members of the Sex Trafficking Survivor Class, Defendants knowingly benefited, both financially and by receiving things of value, from participating in Williams's sex-trafficking venture.

66.

Defendant JCPD officers knew multiple women had reported Williams's forced sex acts, including, at least, B.P., and Females 2, 9, and 12, and therefore had actual knowledge that they were aiding and abetting Williams's sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain and provide C.S., B.P., and other members of the Sex Trafficking Survivor Class, to engage in commercial sex acts, through the means of force. Defendants knew, and should have known, that Williams had engaged in acts in violation of the TVPA.

67.

Despite such knowledge, Defendants intentionally aided and abetted Williams and his co-conspirators in violating 18 U.S.C. §§ 1591(a)(1) & (a)(2), through their corrupt and unlawful law enforcement practices, which constituted perpetrating violations of those laws under 18 U.S.C. § 2. Defendants knew, and acted in reckless disregard of the fact that, Williams would force C.S, B.P., and other members of the Sex Trafficking Survivor Class, to engage in commercial sex acts.

68.

Defendants' affirmative conduct of aiding and abetting Williams and his co-conspirators in violating the law was committed knowingly and in reckless disregard for the fact that Williams used his position of impunity as a means to further the sex trafficking venture. Defendants' conduct was outrageous and intentional.

69.

Acting within this District and in attempting to further the Williams' sex-trafficking venture, Defendants knowingly and intentionally took substantial and significant steps to aid and abet Williams's sex trafficking venture, including:

(a)     Defendants effectively accepted payments from Williams in furtherance of the conspiracy through the corrupt use of search warrants and other unlawful collection efforts. Said warrants were facially obtained and used to seize unlawfully obtained currency or narcotics assets but were in fact quid pro quo payments made to Defendants with either the implied or explicit understanding that Defendants would shield Williams, permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments.

(b)     Defendants affirmatively refused to initiate formal investigations into Williams' crimes against women.

(c)     Defendants affirmatively refused to refer charges for prosecution and/or referred charges in a piecemeal and incomplete manner so as to undermine the prosecution.

(d)     Defendants affirmatively intimidated and dissuaded Plaintiffs and other class members from pursuing criminal charges.

(e)     Defendant Sparks made knowingly false statements to obstruct and interfere with the criminal investigation.

(f)     Defendants Sparks knowingly conspired with Williams to destroy and conceal evidence, including digital evidence that showed Williams raping unconscious women whom he had drugged. This evidence included images of Plaintiffs in this case.

(g)     Defendants Sparks knowingly conspired with Williams to destroy and conceal evidence, including digital evidence that showed Williams raping unconscious

women who he had drugged. This evidence included images of Plaintiffs in this case.

70.

Defendants' knowing and intentional conduct of aiding and abetting Williams' violations has caused C.S., B.P., and other members of the Sex Trafficking Survivor Class serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

71.

The conduct of each Defendant JCPD officer, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of its constituents, Johnson City residents—whom they had taken an oath to protect—and warrants an award of punitive damages in an amount sufficient to punish each of the Defendants and deter others from like conduct.

72.

C.S., B.P., and the Sex Trafficking Survivor Class demand judgment against each of the Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT IV**

**Conspiracy to Commit Violations of the TVPA, 18 U.S.C. §§ 1594(c), 1591, 1595 (on behalf of C.S., Plaintiffs, and the Sex Trafficking Survivor Class against Defendants City, Turner, and Sparks)**

73.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. The allegations in Count IV are made only against Defendants City, Turner, and Sparks.

74.

C.S., Plaintiffs, and the Sex Trafficking Survivor Class bring claims under 18 U.S.C. §§ 1594(c), 1591, and 1595.

75.

Defendants City, Turner, and Sparks intentionally conspired with others, including Williams and his other co-conspirators, by agreement and understanding, to violate 18 U.S.C. §§ 1591(a)(1) & (a)(2) & 1591(d), and to further Williams' sex-trafficking venture to force commercial sex acts from C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class, all in violation of 18 U.S.C. § 1594(c). Defendant Sparks directly conspired with Williams himself to further the sex-trafficking venture.

76.

Defendants' conspiracy to violate 18 U.S.C. 1591(a)(1) & (a)(2) was forbidden by 18 U.S.C. § 1594(c), and Defendants thereby violated Chapter 77, Title 18. Defendants' conspiracy directly, proximately, and foreseeably harmed C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class, by directly leading to their forcibly being caused to engage in commercial sex acts and in other ways. Defendants' conspiracy victimized C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class.

-20-

77.

Defendants' conspiracy to violate 18 U.S.C. 1591(d) was forbidden by 18 U.S.C. § 1594(c), and Defendants thereby violated Chapter 77, Title 18. Defendants' conspiracy directly, proximately, and foreseeably harmed C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class, by directly leading to their forcibly being caused to engage in commercial sex acts and in other ways. Defendants' conspiracy victimized C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class.

78.

Defendants conspired with Williams and his other co-conspirators to further the Williams sex-trafficking venture and with the purpose of facilitating Williams's illegal sex trafficking. Defendants had actual knowledge of Williams's sex-trafficking venture based on the reports of, at least, B.P. and Females 2, 9, and 12. Defendants acted with the specific intent to violate 18 U.S.C. §§ 1591(a)(1) & (a)(2), that is, with consciousness of the nature of Williams's sex-trafficking venture and with the specific intent to further the venture. Defendants and Williams had a meeting of the minds as to the essential nature of the plan.

79.

Defendants' conspiracy with Williams was part of their participation in his sex-trafficking venture. Without Defendants agreeing to facilitate the venture (by, for example, conspiring to receive payments in return for turning a blind eye to Williams's forced sex acts), Williams would not have been a position to move forward with his sex-trafficking venture and to recruit and obtain victims of the venture.

80.

Defendants also conspired with Williams and his other co-conspirators to obstruct, attempt to obstruct, to interfere with, and to prevent the enforcement of the TVPA, violating 18 U.S.C. § 1591(d). The conspiracy included an agreement to keep Williams's sex-trafficking venture secret or, at least, concealed to the greatest extent possible. Among the means for keeping the venture secret were affirmatively refusing to investigate and prosecute Williams's sex trafficking crimes, concealing and/or destroying evidence, intimidating witnesses/victims, and making false statements to witnesses/victims. In exchange, Defendants effectively accepted payments from Williams in furtherance of the conspiracy through the corrupt use of search warrants and other unlawful collection efforts. Said warrants were facially obtained and used to seize unlawfully obtained currency or narcotics assets but were in fact quid pro quo payments made to Defendants with either the implied or explicit understanding that Defendants would shield Williams, permitting him to continue his practice of abuse and trafficking with impunity in exchange for the payments.

81.

Defendants knew, acted in reckless disregard of the fact, and should have known, that their conspiracy would directly and proximately lead to unlawful forced commercial sex acts by Williams with women, including C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class.

82.

Defendants' knowing and intentional conduct of conspiring with Williams has caused C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

83.

The conduct of each Defendant JCPD officer, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of its constituents, Johnson City residents—whom they had taken an oath to protect—and warrants an award of punitive damages in an amount sufficient to punish each of the Defendants and deter others from like conduct.

84.

C.S., Plaintiffs, and members of the Sex Trafficking Survivor Class demand judgment against each of the Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT V**

**Equal Protection, 42 U.S.C. § 1983**
**Unconstitutional Pattern and Practice as to Women Reporters of Sexual Assault (on behalf of S.H. and the Reporter Survivor Class and C.S., B.P., and the Williams Survivor Subclass against Defendant City)**

85.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

86.

Defendant City and Defendants Chief Turner, Investigator Sparks, Investigator Higgins, and Investigator Legault acted under the color of state law and pursuant to an adopted policy or a longstanding practice of custom of Defendant City.

87.

Defendants maintained the following unconstitutional customs, practices, or policies:

(a) Failure to document reports of sexual assault by Sean Williams made by women under Defendant City's jurisdiction;

(b) Failure to investigate reports of sexual assault by Williams made by women under Defendant City's jurisdiction;

(c) Failure to or delayed in testing the rape kits of women who made complaints of sexual assault by Williams;

(d) Failure to seize or retain evidence properly from women who made complaints of sexual assault by Williams; and

(e) Failure to credit women's accounts of sexual assault within Defendant City's jurisdiction, failure to investigate women's complaints of sexual assault and rape within Defendant City's jurisdiction, and failure to test rape kits of women who made complaints in a timely fashion.

(f) These policies and practices were motived by actual discriminatory animus to-wards women.

88.

Defendant City developed, ratified, enforced, and continues to enforce these longstanding customs and practices.

89.

Defendant City perpetuated these unconstitutional customs and practices by allowing and at times encouraging JCPD officers to engage in unconstitutional conduct, and by failing to train and supervise JCPD officers to address and act upon evidence of unconstitutional conduct.

90.

Pursuant to the Defendants' persistent, widespread custom and unofficial policy, Defend-
ant City and its employees denied law enforcement services to C.S., Plaintiffs, and class members
with reckless disregard for their constitutional rights.

91.

By reason of the conduct described herein, Defendants deprived C.S., Plaintiffs, and class
members of the rights, immunities, and privileges guaranteed to every person in the United States,
in violation of 42 U.S.C. § 1983, including rights guaranteed by the Fourteenth Amendment of the
United States Constitution.

92.

On or about June 23, 2022, C.S. and Plaintiffs learned that Defendants and the JCPD had
a custom, policy and practice of failing to investigate sexual assault reports made by women.

93.

At all times relevant hereto, sexual assault was perpetrated almost entirely against females.
According to federal crime statistics, females constitute over 90% of sexual assault victims.

94.

By reason of the aforementioned acts, C.S., Plaintiffs, and class members have suffered
bodily injury, emotional distress, deprivation of property, economic harm, deprivation of the right
to privacy, and, in the case of Female 10, death.

95.

Defendants had either actual or constructive knowledge of the unconstitutional policies,
practices and customs alleged above. Despite having knowledge, Defendants condoned, tolerated,
and ratified such policies. Defendants acted with deliberate indifference to the foreseeable effects

-25-

of these policies with respect to the constitutional rights of C.S., Plaintiffs, class members, and all women under their jurisdiction.

96.

Defendants had a duty to diligently investigate *all* crimes. Defendants breached this duty by routinely and systemically failing and/or refusing to do so in the case of sexual assault and rape. Defendants' deliberate indifference to sexual assault crimes, which was an institutional policy so pervasive as to rise to the level of intentional conduct, served to deprive C.S., Plaintiffs, and class members of equal protection under the law on the basis of their gender.

97.

In committing the acts and/or failures as alleged herein, Defendants were at all times relevant hereto acting under the color of the State. The constitutional injury inflicted by Defendants was caused by a person(s) with final policymaking authority at the Defendant City. Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to it.

98.

With respect to the Sean Williams Survivor Subclass, but for the longstanding unconstitutional policy of Defendant City described above, JCPD officers would have taken reasonable steps to investigate and responded to the first known report of Sean Williams's sex crimes, which, due to circumstances surrounding that report, would have resulted in arrest. Defendants are therefore responsible for creating the risk, and ultimately causing the harm suffered by Members of the Sean Williams Survivor Subclass, who would not otherwise have been assaulted by Sean Williams.

# COUNT VI

**Equal Protection, 42 U.S.C. § 1983**
**Violation of Substantive Rights to Due Process (on behalf of B.P. and the Williams**
**Survivor Subclass against all Defendants)**

99.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

100.

C.S., B.P., and members of the Williams Survivor Subclass have a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, and which constitute a state created danger.

101.

The aforementioned actions of JCPD, including but not limited to the actions of Defendants Chief Turner, Investigator Sparks, Investigator Higgins, and Investigator Legault, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of C.S., B.P., and members of the Williams Survivor Subclass with a purpose to harm that was unrelated to any legitimate law enforcement objective.

102.

The aforementioned actions of JCPD, including but not limited to the actions of Defendants Chief Turner, Investigator Sparks, Investigator Higgins, and Investigator Legault, compromise affirmative acts that caused an increased risk to C.S., Plaintiffs, and class members, specifically, of being exposed to an act of violence by a third party, as well as police violence in the case of Female 9.

103.

The conduct of Defendants was willful, knowing, wanton, malicious, and done with reckless disregard for the rights and safety of C.S., all Plaintiffs, and all class members.

104.

As a direct and proximate result of Defendants' actions, C.S., B.P., and members of the Williams Survivor Subclass experienced extreme pain and suffering in the form of economic harm, bodily injury, emotional distress, and in the case of Female 10, death. Defendants deprived C.S., B.P., and members of the Williams Survivor Subclass of their right to be protected and safeguarded from actions that risked their lives, as well as physical and emotional injury.

105.

The above-described conduct of Defendants constitutes a violation of 42 U.S.C. § 1983. C.S., B.P., and members of the Williams Survivor Subclass are entitled to compensatory damages for emotional pain, suffering, mental anguish and other non-pecuniary losses, and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of their civil rights under the U.S. Constitution directly and proximately caused by Defendants.

**COUNT VI**

**Equal Protection, 42 U.S.C. § 1983**
**Violation of Substantive Rights to Due Process**
**(on behalf of C.S., B.P., and the Williams Survivor Subclass against all Defendants)**

106.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

107.

C.S., B.P., and members of the Williams Survivor Subclass have a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, and which constitute a state created danger.

108.

The aforementioned actions of JCPD, including but not limited to the actions of Defendants Chief Turner, Investigator Sparks, Investigator Higgins, and Investigator Legault, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of C.S., B.P., and members of the Williams Survivor Subclass with a purpose to harm that was unrelated to any legitimate law enforcement objective.

109.

The aforementioned actions of JCPD, including but not limited to the actions of Defendants Chief Turner, Investigator Sparks, Investigator Higgins, and Investigator Legault, compromise affirmative acts that caused an increased risk to C.S., Plaintiffs, and class members, specifically, of being exposed to an act of violence by a third party, as well as police violence in the case of Female 9.

110.

The conduct of Defendants was willful, knowing, wanton, malicious, and done with reckless disregard for the rights and safety of all C.S., Plaintiffs, and class members.

111.

As a direct and proximate result of Defendants' actions, C.S., B.P., and members of the Williams Survivor Subclass experienced extreme pain and suffering in the form of economic harm,

bodily injury, emotional distress, and in the case of Female 10, death. Defendants deprived C.S., B.P., and members of the Williams Survivor Subclass of their right to be protected and safeguarded from actions that risked their lives, as well as physical and emotional injury.

112.

The above-described conduct of Defendants constitutes a violation of 42 U.S.C. § 1983. C.S., B.P., and members of the Williams Survivor Subclass are entitled to compensatory damages for emotional pain, suffering, mental anguish and other non-pecuniary losses, and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of their civil rights under the U.S. Constitution directly and proximately caused by Defendants.

## COUNT VII

### Negligence, Failure to Train
### (on behalf of C.S., Plaintiffs, and the Classes against Defendant City)

113.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

114.

Defendant City had a duty to train its Police Department officers and employees to not discriminate against citizens on the basis of sex, as well as to properly investigate legitimate complaints of criminal activity and protect citizens under its jurisdiction from criminal activity.

115.

Defendant City breached its duty of care to C.S., Plaintiffs, and class members when JCPD officers and employees were made aware by women of numerous complaints of sexual assault by Williams, failed to investigate those complaints, and failed to protect female citizens of Johnson City from further criminal activity by Williams.

116.

Defendant City breached its duty of care to C.S., Plaintiffs, and class members by negligently failing to investigate and refer for prosecution cases of sexual violence against women victims, who reported their cases to JCPD, out of discriminatory animus towards women victims of sexual violence as a class.

117.

JCPD policies and procedures were insufficient to meet industry standards and legal requirements to investigate sexual assault investigations. JCPD negligently failed to train officers to ensure effective and unbiased responses to allegations of sexual assault and had inadequate supervision and internal oversight of officers.

118.

JCPD's investigations into sexual assault reports were negligently inconsistent, ineffective, and incomplete. JCPD negligently failed to collect evidence or failed to document the collection of evidence. JCPD also negligently failed to interview suspects and witnesses during sexual assault investigations. Where witnesses were interviewed, officers negligently failed to document their statements, even though the investigative files indicated that such statements had been taken.

119.

JCPD's practices negligently discouraged female victims of sexual assault from working with law enforcement to pursue charges, thereby damaging the investigative process and compromising JCPD's ability to conduct thorough and impartial investigations into the victims' reports of sexual assault. No legitimate law enforcement purpose—or any other reason—justified these inadequacies.

120.

JCPD supervisors negligently allowed sexual assault cases to be closed even when prosecution was still possible.

121.

JCPD investigators negligently and improperly used the "exceptional circumstances" justification in their reporting system to justify closing sexual assault cases, where the requirements for closure under this basis were not met.

122.

JCPD's investigative deficiencies compromised the investigative process and negligently placed C.S., Plaintiffs, and class members at an increased risk of harm.

123.

The culture of impunity caused and ratified by Defendant City resulted in C.S., Plaintiffs, and class members to suffer increased risk of harm, retraumatization, and emotional distress. These damages were a result of Defendant City's unjust law enforcement system where sexual violence was not punished or deterred.

124.

Further, in the specific case of Williams, Defendant City's negligence resulted in the failure to apprehend, prosecute, and imprison a serial rapist, thereby allowing Williams to perpetrate his crimes for years. By breaching its duty of care, Defendant City proximately caused C.S., Plaintiffs, and class members to suffer bodily injury, emotional distress, the deprivation of property, the deprivation of the right to privacy, and in the case of Female 10, death.

125.

C.S., Plaintiffs, and class members suffered actual, psychological, and physical damages due to Defendant City's breach of care, including retraumatization and emotional distress as a result of negligent investigative practices, botched investigations, and improperly declined prosecutions.

126.

As a direct consequence of Defendant City's acts and omissions described herein, C.S., Plaintiffs, and class members have suffered damages and the Defendant City is liable for all injuries sustained by Plaintiffs and class members proximately caused by its violations of law.

## COUNT VIII

### Negligence, Failure to Supervise
### (on behalf of C.S., Plaintiffs, and the Classes against Defendant City)

127.

C.S. re-alleges and incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

128.

Defendant City had a duty to supervise its Police Department officers and employees to ensure they were not discriminating against citizens on the basis of sex, as well as properly investigating legitimate complaints of criminal activity and protecting citizens under its jurisdiction from criminal activity.

129.

Defendant City had a duty to maintain and enforce policies and procedures that ensured all of its citizens, regardless of sex, were protected from criminal activity.

130.

Defendant City breached its duty of care to C.S., Plaintiffs, and class members by negligently failing to investigate and refer for prosecution cases of sexual violence against women victims, who reported their cases to JCPD, out of discriminatory animus towards women victims of sexual violence as a class.

131.

JCPD policies and procedures were insufficient to meet industry standards and legal requirements to investigate sexual assault investigations. JCPD negligently failed to train officers to ensure effective and unbiased responses to allegations of sexual assault and had inadequate supervision and internal oversight of officers.

132.

JCPD's investigations into sexual assault reports were negligently inconsistent, ineffective, and incomplete. JCPD negligently failed to collect evidence or failed to document the collection of evidence. JCPD also negligently failed to interview suspects and witnesses during sexual assault investigations. Where witnesses were interviewed, officers negligently failed to document their statements, even though the investigative files indicated that such statements had been taken.

133.

JCPD's practices negligently discouraged female victims of sexual assault from working with law enforcement to pursue charges, thereby damaging the investigative process and compromising JCPD's ability to conduct thorough and impartial investigations into the victims' reports of sexual assault. No legitimate law enforcement purpose—or any other reason—justified these inadequacies.

134.

JCPD supervisors negligently allowed sexual assault cases to be closed even when prosecution was still possible.

135.

JCPD investigators negligently and improperly used the "exceptional circumstances" justification in their reporting system to justify closing sexual assault cases, where the requirements for closure under this basis were not met.

136.

JCPD's investigative deficiencies compromised the investigative process and negligently placed C.S., Plaintiffs, and class members at an increased risk of harm.

137.

The culture of impunity caused and ratified by Defendant City resulted in C.S., Plaintiffs, and class members suffering increased risk of harm, retraumatization, and emotional distress. These damages were a result of Defendant City's unjust law enforcement system where sexual violence was not punished or deterred.

138.

Further, in the specific case of Williams, Defendant City breached its duty of care to C.S., Plaintiffs, and class members when the JCPD officers and employees were made aware of the numerous complaints of Williams's sexual assault, failed to investigate those complaints, and failed to protect female citizens of Johnson City from further criminal activity by Williams. By breaching its duty of care, Defendant City proximately caused Plaintiffs and members of the Sex Trafficking Survivors Class to suffer bodily injury, emotional distress, the deprivation of property, the deprivation of the right to privacy, and in the case of Female 10, death.

139.

C.S., Plaintiffs, and class members suffered actual emotional and physical damages due to Defendant City's breach of care, including retraumatization and emotional distress as a result of negligent investigative practices, botched investigations, and improperly declined prosecutions.

140.

C.S., Plaintiffs, and class members suffered actual, emotional, and physical damages due Defendant City's breach of care.

141.

As a direct consequence of Defendant City's acts and omissions described herein, C.S., Plaintiffs, and class members have suffered damages and the Defendant City is liable for all injuries sustained by C.S., Plaintiffs, and class members proximately caused by its violations of law.

**RELIEF REQUESTED**

C.S., individually and on behalf of the Classes, respectfully request that this Court:

(a) Certify the class under Federal Rule of Civil Procedure 23, appoint C.S. as class representative of the Sex Trafficking Survivor Class and the Williams Survivor Subclass, and appoint her attorneys as class counsel;

(b) Enter judgment against Defendants and in favor of C.S., Plaintiffs, and the Classes;

(c) Award compensatory damages for emotional distress, mental anguish, and disruption to C.S., Plaintiffs, and all class members' family life, physical injury, pain and suffering, medical expenses, and all compensatory damages and economic damages caused by the actions of Defendants.

(d) Award punitive damages;

(e)     Award reasonable attorney's fees and costs;

(f)     Attorneys' fees and expenses;

(g)     Prejudgment interest and, if applicable, post-judgment interest;

(h)     Injunctive and declaratory relief; and

(i)     Any such general relief to which C.S., Plaintiffs, and class members may be entitled.

## RELIEF REQUESTED

C.S. demands a trial by jury on all claims so triable.

[signature page to follow as appropriate]