# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE DIVISION

S.H., individually, and on behalf
of all others similarly situated,

    Plaintiffs,

v.                                                                       No: 2:23-cv-00071-TRM-JEM

**CITY OF JOHNSON CITY, TENNESSEE,**

    **Defendant.**
_____/

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement"), is entered into by Plaintiff S.H., individually and on behalf of class members in the above-captioned action ("Plaintiffs"), and City of Johnson City, Tennessee ("City" or "Defendant") (collectively with Plaintiffs, the "Parties"). The Agreement is intended to fully, finally, and forever resolve the Litigation and release Plaintiffs' claims as described herein, subject to the approval of the Court and the terms set forth in the Agreement.

The Agreement, and all associated exhibits or attachments hereto, which are specifically incorporated herein by reference, are made for the sole purpose of settling the Litigation[1] and are made in compromise of disputed claims. Because the Settlement Agreement settles the Litigation on a class-wide basis, the Parties recognize that it must receive preliminary and final approval from the United States District Court, Eastern District of Tennessee, Greeneville Division (the "Court").[2] Accordingly, the Parties enter into the Agreement on a conditional basis. If the Court does not enter the Final Approval Order or the Final Judgment entered by the Court materially alters the Final Approval Order or the Agreement referenced herein, including but not limited to alterations of appeal and subsequent rulings by appellate courts, this Agreement shall be deemed null and void *ab initio*[3]; it shall have no force or effect whatsoever; and the negotiation, terms, and the entering into of the Agreement shall remain subject to the provisions of Federal Rules of Evidence 408, and any other analogous common law or rules of evidence that are applicable.

Defendant denies all of Plaintiffs' claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief, and all other forms of relief. Defendant also denies the class

---

[1] As used hereing, the term Litigation is defined in Section 2.12.
[2] Terms are defined throughout both the body of this Settlement Agreement and Release, as well as in Section 2, and all such terms shall have the meaning ascribed to them therein.
[3] Except to the extent that its terms have already been actuated, specifically referring to funds paid for claims administration.

allegations asserted in the Litigation and denies that the claims asserted in the Litigation could or should be certified as a class other than for purposes of this settlement. Defendant specifically denies that it has violated the Constitution of the United States, the Constitution of the State of Tennessee, any laws or statutes, regulations, or guidelines promulgated pursuant to any statute, or any other applicable laws, regulations, or legal requirements, including common law. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendant of any violations or failures to comply with any applicable duty, obligation and/or law. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be admissible as evidence in the Litigation in any manner whatsoever, except as necessary to effectuate the Agreement, or in a proceeding to enforce the terms of this Agreement.

1. **RECITALS**

WHEREAS, Plaintiffs commenced this action on June 21, 2023 (E.D. Tenn. No. 2:23-cv-00071), filed their first amended complaint on September 6, 2023, and filed their Second Amended Complaint ("SAC") on March 1, 2024;

WHEREAS, Between March 12 to April 1, 2024, then-named defendants Toma Sparks, Kevin Peters, Justin Jenkins, Jeff Legault, and Brady Higgins filed individual motions to dismiss various claims asserted against them in the SAC, and Plaintiffs opposed these motions;

WHEREAS, on August 21, 2024, the Court issued an order granting in part and denying in part those individual defendants' motions to dismiss;

WHEREAS, on November 1, 2024, Plaintiffs moved for leave to file a proposed third amended complaint, which the City and individual defendants opposed;

WHEREAS, on December 9, 2024, Plaintiffs and Defendant City engaged in a formal mediation with the Honorable Layn Phillips and undertook intensive arm's-length settlement negotiations;

WHEREAS, on February 13, 2025, the City Commission of Johnson City voted to approve settlement agreements between certain individuals and Defendant City and to allocate funds for a proposed settlement for the resolution of class claims, subject to Court approval.

WHEREAS, also on February 13, 2025, Plaintiffs withdrew their November 1, 2024 motion for leave to amend, and filed a renewed motion for leave to amend, this time with a proposed complaint that would conform the pleadings to the Court's ruling on the motion to dismiss and streamline the case to include only class claims against Defendant City;

WHEREAS, on March 5, 2025, the Court granted Plaintiffs' motion for leave to amend and allowed the filing of the third amended complaint in which Plaintiff S.H. represents the Reporter Survivor Class to pursue, against Defendant City, claims for violations of the Equal Protection Clause of the U.S. Constitution under 42 U.S.C. § 1983;

WHEREAS, on March 6, 2025, Plaintiff S.H., individually and on behalf of all others similarly, situated filed the Third Amended Class Action Complaint against the City of Johnson City, alleging a claim for violation of the Equal Protection Clause of the United States Constitution under 42 U.S.C. § 1983.

WHEREAS, the Parties mediated the dispute involving class claims on December 9, 2024, and later reached agreement to settle class claims, and further negotiation resulted in the terms as set forth herein;

WHEREAS, the Parties are entering into the Settlement to avoid the risks, burdens, and expense of continued litigation;

4

WHEREAS, Plaintiff and Defendant have independently determined that it is beneficial for the Litigation to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties, by and through their respective undersigned counsel, have agreed to settle those claims on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff (for herself and the Class Members) and Defendant, by and through their counsel, that, subject to the approval of the Court, the Litigation and the Released Claims will be finally and fully compromised, settled, and released, and the Litigation will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

**2. DEFINITIONS**

The following terms, when used in this Agreement, have the meanings as set forth below. All terms defined in the singular have the same meaning when used in the plural, and all terms defined in the plural have the same meaning when used in the singular.

2.1 "Administrative Expenses" means the cost of the notice program relating to this Settlement and the costs of administering and processing of claims, disbursements, and other necessary and reasonable expenses associated with administering this Settlement.

2.2 "Settlement Payment" means the individual amounts due to Settlement Class Members in accordance with the procedures and criteria outlined herein and in **Exhibit B** hereto.

2.3 "Allocation Plan" or "Allocation Process" means the procedures set forth in **Exhibit B** for awarding monetary payments to Settlement Class Members, or such other procedures for distribution of the Settlement Fund to Settlement Class Members as the Court may direct.

2.4     "Class" or "Class Members" means all women, including minors, who reported sexual assault[4] by any person to JCPD from January 1, 2018 to December 31, 2022.

2.5     "Class Counsel" means the law firms of Baehr-Jones Law, Erickson Kramer Osborne LLP, and HMC Civil Rights Law.

2.6     "Class Period" means January 1, 2018 to December 31, 2022.

2.7     "Class Representative" means S.H., the individual plaintiff who brought suit in this Litigation.

2.8     "Court" means the United States District Court for the Eastern District of Tennessee, Greeneville Division.

2.9     "Defense Counsel" means the law firms of Burch, Porter & Johnson, PPLC, Watson, Roach, Batson & Lauderback, PLC, and Herrin, McPeak and Associates.

2.10    "Effective Date" means the date on which the time for filing an appeal from the Court's issuance of an order granting final approval has either expired without an appeal being filed, or if later, after any appeal has been fully resolved.

2.11    "Final Approval" means entry of the Court's order granting final approval of this Agreement and entering judgment, substantially in the form of **Exhibit D** and without material changes thereto.

2.12    The "Litigation" means the class action complaint filed on March 6, 2025 captioned *S.H. v. City of Johnson City*, No. 2:23-cv-00071 (E.D. Tenn.) ("Third Amended Complaint"), and all proceedings relating thereto.

2.13    "Notice" means the notice of proposed class action settlement, substantially in the form of **Exhibit A** hereto.

---

[4] For purposes of this Agreement and the definition of "Class" or "Class Member", sexual assault is defined to include the following crimes: rape; sodomy; sex assault w/ object; forcible fondling; incest; and statutory rape.

6

2.14     "Opt-Out Deadline" means the date, entered by the Court in the Preliminary Approval Order, by which a Class Member may elect to exclude herself from the Class.

2.15     "Preliminary Approval" means the entry of the Court's order granting preliminary approval of this Settlement and authorizing notice, substantially in the form of **Exhibit C** hereto.

2.16     "Released Claims" is defined as set forth in Section 6.2 below.

2.17     "Released Parties" means the City of Johnson City, Tennessee, and its divisions, boards, agencies, and affiliates, predecessors, successors, and/or assigns, together with its past and present officials (whether elected or unelected), employees, representatives, officers, directors, department heads, insurers, contractors, agents, and attorneys; and, any past and present member or agent of the Johnson City Police Department.

2.18     "Releasing Defendant" means the City of Johnson City.

2.19     "Releasing Defendant's Claims" means all claims and causes of action that Defendant may have against Releasing Plaintiffs and/or Class Counsel, that arise out of or relate to the institution, prosecution, or settlement of the Litigation.

2.20     "Releasing Plaintiffs" means Class Representative and each Settlement Class Member.

2.21     "Settlement" means the terms and conditions of settlement embodied in this Agreement.

2.22     "Settlement Administrator" means JND Legal Administration, if approved by the Court.

2.23     "Settlement Class Member" means any Class Member who does not opt out of the Settlement, and "Settlement Class" means that group of individuals as a whole.

2.24     "Settlement Amount" means the sum of $4,200,000.00.

7

2.25    "Settlement Fund" means the Settlement Amount together with any interest and accretions thereto, which may be reduced by payments or deductions as provided herein or by Court order, including, but not limited to, Administrative Expenses, and any Court-approved attorney's fees and costs, and service award.

2.26    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

## 3.    SCOPE AND EFFECT OF SETTLEMENT

3.1    **Scope of the Settlement.** This Settlement compromises and resolves the Released Claims and the Releasing Defendant's Claims only.

3.2    **Settlement Class Certification.** The Parties stipulate to, and waive their rights to appeal, class certification, for settlement purposes only, of the following Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All women, including minors, who reported sexual assault by any person to JCPD, from January 1, 2018 to December 31, 2022.

3.3    **Preliminary Approval Proceedings.** Promptly after execution of the Agreement, Plaintiffs will submit the Agreement together with its Exhibits to the Court and will apply for entry of an order, substantially in the form of **Exhibit C**, requesting, *inter alia*, preliminary approval of the Settlement set forth in the Agreement; the setting of dates for the mailing of the Notice, Opt-Out Deadline, Objection Deadline, and Final Approval Hearing; approval of the Settlement Administrator; and approval of the Notice.

3.4    **Opt-Out Right.** Any Class Member who wishes to opt out of the Class must submit a timely written request for exclusion on or before the Opt-Out Deadline, in the manner specified in the Notice and Preliminary Approval Order, or as otherwise ordered by the Court.

3.5     **Objections.** Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the application of Class Counsel for an award of attorneys' fees and costs and/or for a service award for Plaintiff, must timely do so in the manner specified in the Preliminary Approval Order and in any subsequent notice or order concerning the application for attorneys' fees and costs and/or for a service award to Plaintiff.

3.6     **Final Approval Proceedings.** Plaintiffs will request that the Court hold the Final Approval Hearing after notice to Class Members is given. At the Final Approval Hearing, the Parties will request entry of an order, substantially in the form of **Exhibit D** and without material alteration:

(a)     finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b)     directing that the Litigation be dismissed with prejudice, and releasing the Released Claims and the Releasing Defendant's Claims as set forth below;

(c)     reserving jurisdiction with respect to implementation and enforcement of the terms of the Agreement; and

(d)     containing such other and further provisions consistent with the terms of the Settlement to which the Parties expressly consent in writing.

3.7     **Binding Effect of Settlement Upon Class Members.** If this Settlement is approved by the Court, at the Effective Date, all persons within the Class will be bound by the terms of the Settlement, except those Class Members who effectively exercise their right to opt out of the Class under the terms of the Preliminary Approval Order.

3.8     **Extinguishment of Released Claims.** Upon the Effective Date, all Releasing Plaintiffs and anyone claiming through or on behalf of any of them, will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties and Defense Counsel.

3.9     **Extinguishment of Releasing Defendants' Claims.** Upon the Effective Date, Releasing Defendants will be deemed to have fully, finally, and forever released, relinquished, and discharged all Releasing Defendant's Claims against Releasing Plaintiffs, and Class Counsel.

4.     **SETTLEMENT CONSIDERATION**

    A.     **Equitable Relief.**

4.1     JCPD currently is implementing policies and procedures with regard to reports of sexual assault made to JCPD pursuant to JCPD General Order 600.13, Sexual Oriented Crimes ("SOCGO"). JCPD will continue to implement the SOCGO, or other amended or new General Order(s) that are consistent with the requirements of the United States Constitution.

4.2     These equitable relief provisions will be enforceable under this Agreement for two years. For the two years following final approval of the Class Settlement, Defendant shall provide Class Counsel, on a quarterly basis, audit reports completed by JCPD's Office of Professional Standards for no fewer than fifteen (15) investigations conducted under the SOCGO (the "Audits").

4.3     The Audits will serve as the basis for Class Counsel's monitoring of Defendant's compliance with the SOCGO. If based on the review of the Audits Plaintiffs' counsel believes in good faith that JCPD is not in compliance with SOCGO (which is the equitable relief in the settlement agreement) Plaintiffs' counsel shall provide written notice to and inform counsel for

Defendant of the basis for that belief, and the Plaintiffs and the City shall make all reasonable attempts to resolve the issue prior to Class Counsel seeking relief from the Court.

### B. Monetary Consideration.

4.4     Within 30 days of the Effective Date, Defendant City will deposit $4.2 million into a designated Qualified Settlement Fund pursuant to instructions delivered by Class Counsel.

## 5. USE OF THE SETTLEMENT FUND

5.1     **Disbursements.** The Settlement Fund will be used to pay distributions to Settlement Class Members as provided herein and in the Allocation Plan.

5.2     **Tax Implications for Settlement Class Members.** The Parties and their counsel make no representation or warranty, and provide no advice, regarding the tax consequences, if any, of this Agreement. Settlement Class Members are advised to consult with appropriate legal counsel regarding any tax implications of this Agreement. Subject to any withholding that the Settlement Administrator is required to impose, each Settlement Class Member who receives a payment in connection with this Settlement will be responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received.

5.3     **Agreement to Release, Defend, Indemnify and Hold Harmless for Liens.** These settlement payments are being made to resolve claims for violations of constitutional rights, and it is Plaintiffs' position that they are not subject to liens from medical providers. Plaintiffs shall release, defend, indemnify, and hold harmless the Released Parties from any and all obligations, damages, penalties, costs, expenses and fees incurred in connection with any claim or cause of action asserted based on a lien against the Released Parties as a result of the settlement payments to be made to Settlement Class Members, including, but not limited to, any statutory lien of a Governmental Payor (including but not limited to hospital, TennCare, Medicare, and/or

11

Medicaid) or any lien, reimbursement claim, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any person or entity, where there is a legal obligation to withhold a settlement payment, or some portion thereof, to a Settlement Class Member under applicable federal or state law (a "Lien"). Further, in the event Settlement Class Members (or a Settlement Class Member) fails to defend and/or indemnify the Released Parties with regard to a Lien, Class Counsel agrees and promises to defend and/or indemnify the Released Parties of any and all damages, penalties, costs, expenses and fees incurred in connection with any claim or cause of action asserted based on a Lien.

5.4 **Fund Under Court Jurisdiction.** Settlement Amount funds, and any interest thereon, held in the Qualified Settlement Fund will be deemed and considered to be *in custodia legis* of the Court, and will remain subject to the jurisdiction of the Court, until such time as such funds will be distributed pursuant to the Agreement and/or further order(s) of the Court.

5.5 **Qualified Fund.** Plaintiffs and Class Counsel will treat the Settlement Fund as being at all times a "qualified settlement fund" or "QSF" within the meaning of Treas. Reg. § 1.468B-1. Additionally, it will be the responsibility of the escrow agent for the QSF to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.6 **Tax Administrator.** For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" will be the escrow agent, who will timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns will reflect that all Taxes (including any

estimated Taxes, interest or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund as provided herein.

## 6. RELEASED CLAIMS

6.1 **Extent of Release.** Releasing Plaintiffs affirmatively declare that Released Parties have satisfied any and all liability to them related or connected in any way to the Litigation. Releasing Plaintiffs hereby release, and the Settlement Agreement fully resolves and releases, Released Parties, from any and all of the Released Claims. Releasing Plaintiffs hereby promise and agree that they will not in the future institute suit against the Released Parties, or in any way seek payment and/or damages from the Released Parties for the Released Claims. Likewise, Defendant affirmatively declares the full and complete release of all claims and causes of action that Defendant may have against Releasing Plaintiffs and/or Class Counsel that arise out of or relate to the institution, prosecution, or settlement of the Litigation. Defendant hereby promises and agrees that it will not in the future institute suit against the Releasing Plaintiffs and/or Class Counsel, or in any way seek payment and/or damages from the Releasing Defendant's Claims.

6.2 **Released Claims.** "Released Claims" means any and all claims or causes of action that were or could have been asserted by Class Representative for any damages that were or could have been sought, on her behalf or on behalf of the Class, based on the facts alleged in the Third Amended Complaint, including, but not limited to, all claims and causes of action that Releasing Plaintiffs may have or had for any type of relief and/or damages against the Released Parties arising out of the Litigation. It shall further mean any and all claims, charges, demands, suits, rights, or causes of action, at law or equity or otherwise, including but not limited to those (known and unknown under any theory of law) Releasing Plaintiffs had or could have brought against the Released Parties, under any theory of law, on or before the Effective Date of the Agreement under

the factual allegations set forth in the Litigation, including but not limited to all claims set forth in or relating to the Litigation, including any and all (a) remaining claims and causes of action set forth in the Litigation as of day before the Effective Date, (b) any claims that Defendant violated the Fourteenth Amendment of the United States Constitution or state constitutional rights, (c) violation of federal or state law, tort claims, negligence claims, breach of statutory duties, or (d) compensatory and punitive damages, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties. It shall further mean all claims and causes of action that Releasing Plaintiffs may have against Released Parties and/or Defense Counsel, that arise out of or relate to the defense or settlement of the Litigation.

7. **NOTICE AND ADMINISTRATION**

    7.1    **Appointment of Settlement Administrator.** The Settlement Administrator shall be appointed by the Court in the Preliminary Approval Order. The reasonable fees and expenses of the Settlement Administrator shall be paid from the Settlement Fund, in an amount not to exceed $95,000.00. In no event shall Defendant be responsible for the payment of the Settlement Administrator's fees and expenses beyond the Settlement Amount, which Defendant is obligated to pay into the Settlement Fund.

    7.2    **Notice Program.** The Parties expect that all Class Members can be identified in JCPD records. Plaintiffs confirm that they are in possession of those records for Class Members who reported sex related crimes to JCPD for the period from January 1, 2018 through June 30, 2022, as a result of discovery conducted in the Litigation. Within 14 days after entry of the Preliminary Approval Order, Defendant will, furnish to the Settlement Administrator the information reasonably necessary and in the custody of Defendant to assist in the identification of all Class Members who reported sex related crimes to JCPD for the period from July 1, 2022

through December 31, 2022. The Settlement Administrator will provide direct notice via U.S. mail of the Settlement to all identifiable Class Members within 45 days after entry of the Preliminary Approval Order. The Settlement Administrator is authorized to effect additional means of notice, including publication notice, if it appears that the identification and contact information available for direct notice is insufficient. The Settlement Administrator will also provide a method for individuals to check whether they are included in the Class via a toll-free telephone number or through the settlement website.

7.3 **Website.** The Settlement Administrator will establish a standalone website for the Settlement, which will make available all relevant materials.

7.4 **Settlement Administration.** The Settlement Administrator will process payments to Settlement Class Members as set forth in **Exhibit B**, or as otherwise approved by the Court. Generally, each Settlement Class Member shall be entitled to an equal pro rata portion of the Settlement Fund.

7.5 **No Claims Arising From Settlement Administration.** No person will have any claim against Plaintiffs, Class Counsel, any person designated by Class Counsel, Defendant, Released Parties, Defendant's Counsel, or the Settlement Administrator arising from or relating to determinations or distributions made substantially in accordance with this Agreement or further order(s) of the Court.

7.6 **Further Proceedings in the Event of Settlement Residue.** If the Settlement Fund is not fully disbursed after the procedures established in **Exhibit B** are completed, the Parties will notify the Court and propose additional means of distributing the remaining amount in the Settlement Fund, which may include providing additional distributions to Class Members, or distributions to appropriate *cy pres* recipients. There will be no *cy pres* distribution unless the

Court finds that the parties have in good faith exhausted all reasonable efforts to distribute the Settlement Fund to Class Members.

    7.7    **Destruction of Sensitive Materials Used in Settlement Administration.** At the conclusion of the distribution process, the Settlement Administrator will destroy all materials that may contain personally identifiable information of, or other sensitive material relating to, a Settlement Class Member.

## 8. ATTORNEYS' FEES AND COSTS; SERVICE AWARDS

    8.1    **Attorneys' Fees and Costs.** All attorneys' fees and costs will be paid out of the Settlement Fund. Any fee and cost award must be approved by the Court. Class Counsel will seek up to one-third of the Settlement Fund ($1,400,000) in attorney's fees, as well as reimbursement of litigation costs actually incurred and advanced by Class Counsel in an amount not to exceed $20,000. If the fee and cost award approved by the Court is less than the amount sought by Class Counsel, this will not be a basis for setting aside this Settlement.

    8.2    **Service Award.** In conjunction with their application for attorneys' fees and reimbursement of expenses, Class Counsel will request that the Court approve a service award to the Class Representative, not to exceed $20,000. Any approved service award will be paid from the Settlement Fund.

## 9. GENERAL PROVISIONS

    9.1    **No Right to Reversion.** Releasing Defendant has no right to reversion of any portion of the Settlement Fund unless this Agreement is not approved or fails to become effective for any reason.

    9.2    **Mutual Intent.** The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and

16

Case 2:23-cv-00071-TRM-JEM Document 513 Filed 05/19/25 Page 16 of 20 PageID #: 11625

implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish such terms and conditions.

9.3     **Good Faith.** The Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

9.4     **Ongoing Best Efforts to Effectuate.** The Parties agree to make their best efforts on an ongoing basis to effectuate the Monetary Relief and Equitable Relief provided for in this Agreement, as well as to defend this Agreement from any legal challenge by objection, appeal, collateral attack, or otherwise.

9.5     **Making Records and Information Available.** Defendant has made (for the period from January 1, 2018 through June 30, 2022) and will continue to make records and information available (for the period from July 1, 2022 through December 1, 2022) to Class Counsel (or to the Settlement Administrator, as appropriate) for purposes of enabling them to confirm Class Member identities and contact information, and to carry out the distribution of the Settlement Fund. Making such records and information available shall not be deemed a waiver of any protections, including those set forth in the Protective Order.

9.6     **Final Resolution Without Adjudication.** The Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between Releasing Plaintiffs, on the one hand, and the Released Parties, on the other hand, with respect to the Litigation. The Settlement resolves claims which are contested and will not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that the Settlement Amount and the other terms of the settlement were negotiated in good faith and reached voluntarily after consultation with competent legal counsel.

9.7     **Survival of Confidentiality Agreements.** All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

9.8     **Limitation on Amendment.** The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.9     **Governing Law.** This Agreement and the Exhibits hereto will be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Tennessee, and the rights and obligations of the parties to the Agreement will be construed and enforced in accordance with, and governed by, the substantive laws of the State of Tennessee.

9.10    **Neutral Construction.** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Parties and their counsel. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party will not be employed in the implementation of this Agreement, and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

9.11    **Entire Agreement.** The Agreement and the Exhibits annexed hereto constitute the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in these documents.

9.12    **Exhibits Fully Integrated.** All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

9.13 **Severability.** Except as otherwise provided in this Agreement, if any covenant, condition, term or other provision in this Agreement is held to be invalid, void or illegal, the same will be deemed severed from the remainder of this Agreement and will in no way affect, impair or invalidate any other covenant, condition, term, or other provision in this Agreement. If any covenant, condition, term or other provision in this Agreement is held to be invalid due to its scope or breadth, such covenant, condition, term, or other provision will be deemed valid to the extent of the scope or breadth permitted by law.

9.14 **Authority to Execute.** Each counsel or other Person executing the Agreement or any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

9.15 **Execution in Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of executed counterparts will be filed with the Court. Signatures sent by facsimile or sent in PDF form via e-mail will be deemed originals.

9.16 **Continuing Jurisdiction.** The Court will retain jurisdiction with respect to implementation, enforcement, and interpretation of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement and matters related to this Settlement.

APPROVED AND AGREED TO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATE NOTED BELOW.

Dated: May 19, 2025

| | |
|---|---|
| **ERICKSON KRAMER OSBORNE LLP** | **BURCH PORTER & JOHNSON PLLC** |
| By: */s/ Elizabeth A. Kramer* | By: */s/ Jonathan P. Lakey* |
| Elizabeth A. Kramer<br>44 Tehama Street<br>San Francisco, CA 94105<br>(415) 635-0631 | Jonathan P. Lakey<br>130 N. Court Avenue<br>Memphis, TN 38103<br>(901)524-5000<br><br>*Counsel for City of Johnson City, Tennessee* |
| **ADVOCATES FOR SURVIVORS OF ABUSE PC** | |
| By: */s/ Vanessa Baehr-Jones* | |
| Vanessa Baehr-Jones<br>4200 Park Blvd. No. 413<br>Oakland, CA 94602<br>(510) 500-9634 | |
| **HMC CIVIL RIGHTS LAW PLLC** | |
| By: */s/ Heather Moore Collins* | |
| Heather Moore Collins<br>7000 Executive Center Dr., Suite 320<br>Brentwood, TN 37027<br>(615) 724-1996<br><br>*Class Counsel* | |