**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

S.H., individually, and on behalf
of all others similarly situated,

       **Plaintiffs,**

v.                                 **No: 2:23-cv-00071-TRM-JEM**

CITY OF JOHNSON CITY, TENNESSEE,

       **Defendant.**

_____/

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

COMES NOW Plaintiff S.H., individually and as a proposed class representative for all those similarly situated ("Plaintiffs"), hereby respectfully submits this Motion for Preliminary Approval of Class Action Settlement.

### I.   INTRODUCTION

Following extensive, good-faith negotiations between experienced counsel, the parties have agreed to settlement terms that they believe will fairly resolve the elements of this action that remain ongoing, avoid protracted, expensive, and uncertain litigation, and reasonably and adequately provide effective relief for the class.

Plaintiff S.H. represents a class of all women who reported a sexual assault to the Johnson City Police Department of Johnson City, Tennessee ("JCPD") from January 1, 2018 to December 31, 2022. Plaintiffs allege that JCPD violated their constitutional right to equal protection of the law by customarily discriminating against them on the basis of their sex through certain well-established investigative practices. They further allege that these practices (and the

1

resulting constitutional violations) were so wide-spread and ongoing that the City of Johnson City (the "City") was on constructive notice but declined to take any corrective action, instead employing a policy of deliberate indifference.

This matter was vigorously litigated, with over 500 docket entries in less than two years. The parties engaged in extensive discovery and motion practice, including motions to dismiss and a motion for class certification. In December 2024, with fact and expert discovery deadlines quickly approaching, the parties agreed to mediate the matter. Following extensive, arms-length negotiations between experienced counsel led by a highly respected mediator, the parties reached an agreement.

The terms of the proposed Settlement Agreement and Release ("Settlement")[1], filed concurrently with this motion (ECF 514, hereinafter referred to as "SA") are reasonable, fair, and adequate. The Settlement provides for a monetary fund of $4,200,000, which will be distributed to class members equally. It also provides non-monetary relief in the form of improved JCPD policies and an oversight mechanism to ensure compliance with these policies. The proposed class notice (Ex. A[2]), is comprehensive, and the notice program provides the best practicable notice under the circumstances.

Given the uncertainty of litigation, obstacles to Plaintiffs' success on the merits, and difficulties inherent in achieving and maintaining certification of a liability class for purposes of trial, the substantial benefits that the proposed Settlement provides represent a favorable result for the class.

---

[1] All defined terms in this motion have the same meaning ascribed to them in the Settlement.
[2] Unless otherwise indicated, all citations to exhibits refer to the exhibits filed with the Settlement: ECF 514-1: Ex. A, Notice of Proposed Class Action Settlement; ECF 514-2: Ex. B, Allocation Plan; ECF 514-3: Ex. C, Proposed Preliminary Approval Order; ECF 514-4, Ex. D, Proposed Final Approval Order.

2

Accordingly, Plaintiffs move this Court for an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the notice and directing that it be disseminated to the class; (3) preliminarily certifying the class for settlement purposes; and (4) scheduling a fairness hearing.

## II.  BACKGROUND

### A.  Factual Background of the Litigation

For over a decade, Sean Williams raped and sexually exploited women and children in Johnson City, Tennessee, as part of a sex trafficking conspiracy. Images and videos obtained from his digital devices at the time of his eventual arrest in April 2023 show that he sexually assaulted at least 67 women. ECF 391-2. In November 2022, the U.S. Department of Justice and the Federal Bureau of Investigation ("FBI") opened a sex trafficking investigation into Williams based on these crimes, which remains ongoing. ECF 121 at p. 3.

In July 2022, Kateri Dahl, an Assistant United States Attorney who had been working with the JCPD, filed a lawsuit against the City, alleging that JCPD impeded her efforts to investigate Williams' sex crimes and then declined to renew her contract in retaliation. *See Dahl v. Turner, et al*., Case No. 2:22-cv-00072-KAC-JEM (E.D. Tenn., 2022). In response to the public scrutiny that followed news of these allegations, the City hired police practices expert Eric Daigle to conduct an audit of JCPD's practices with respect to investigating sexual assault cases. The City gave Mr. Daigle access to nearly four years' worth of police reports and records of sexual assault cases—about 325 files. *See* ECF 391-17 at 6-7. Mr. Daigle and his team analyzed each investigation using an assessment tool developed based on the requirements outlined in JCPD policies, Daigle Law Group Policy Center Model Policies, and several other sources of law enforcement model policies and guidelines. *Id*. at 7. JCPD officers and supervisors also sat

for interviews with Mr. Daigle to answer questions about JCPD's handling of victims' reports, as well as department practices and culture. *Id.* at 5.

Mr. Daigle's report, released in July 2023 ("the Daigle Report"), identified numerous deficiencies within JCPD's investigative practices, officer training, and case closure protocols with respect to sexual assaults reported by women. ECF 391-17 at 11-12. The report concluded these practices reflected biased policing that discriminated based on sex. *Id.* at 11, 23-24. For example, the report found "JCPD's investigative processes discourage victim participation" and "create unnecessary barriers to building trust and rapport with women reporting sexual assault and make reporting unnecessarily burdensome for the victim." *Id.* at 21-22.

### B. Procedural History of the Litigation

On June 21, 2023, approximately one year after the *Dahl* lawsuit was filed, former plaintiffs and Williams victims B.P. and H.A. ("Former Plaintiffs") commenced this action against the City and several individual officers, alleging that the JCPD had allowed Williams to perpetrate his crimes for years with impunity. ECF 1 & 21. Specifically, the complaint alleged that JCPD officers intentionally obstructed investigations into, and benefitted financially from their participation in covering up, Williams' sex trafficking conspiracy, in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1595, 1591(d). ECF 121 at ¶¶ 57-87, 143-83, 311-37.

Since the initial filing, the complaint was amended multiple times. On March 1, 2024, Former Plaintiffs filed their second amended complaint ("SAC"), adding, among other things, class action allegations on behalf of two proposed classes under Federal Rule of Civil Procedure 23. ECF 121. Plaintiff S.H. was added to serve as the representative of one of these classes comprised of all women who reported a sexual assault by any person to the JCPD during the years 2018-2022 ("the Reporter Class"). *Id.* On behalf of this class, Plaintiff S.H. asserted

4

constitutional violations under the Equal Protection Clause against the City in connection with JCPD officers' discriminatory treatment of female reporters of sexual violence. *Id.* at ¶¶ 231-50, 367-88.

On August 21, 2024, the Court issued an order granting in part and denying in part motions to dismiss portions of the SAC but leaving the class allegations intact. ECF 301.

Two months later, on October 15, 2024, Plaintiffs filed a motion for class certification seeking certification of the Reporter Class pursuant to Rule 23(b)(3) and several issues on behalf of the other class pursuant to Rule 23(c)(4). ECF 391.

Shortly after filing their motion for class certification, Plaintiffs sought leave to amend their complaint to re-name two former individual defendants and add evidence adduced since December 2023 when the SAC was finalized. ECF 419. In light of the pending motion for leave, on November 5, 2024, the Court denied as moot Plaintiffs' motion for class certification and issued a scheduling order pursuant to which Plaintiffs would re-file their motion for class certification after the motion for leave to amend was resolved. ECF 423.

In December 2024, with deadlines quickly approaching for expert disclosures, completion of fact discovery, and briefing on Plaintiffs' motion for leave to amend and motion for class certification, the parties decided to try to resolve the case through mediation. Declaration of Julie Erickson ("Erickson Decl."), ¶ 10. Following a formal mediation, extensive post-mediation negotiations, and a streamlining of the case following individual settlements, Plaintiffs filed a further amended complaint asserting the civil rights claims that would be fully resolved through this proposed Settlement. *Id.* at ¶¶ 11-13; ECF 508.

## C. Discovery

Extensive discovery was conducted in this case. Plaintiffs' counsel drafted and served more than five dozen written discovery and document requests, most of which required extensive

meet and confers between counsel and many of which required motion practice to ensure compliance. Erickson Decl., ¶ 5. Indeed, Plaintiffs' counsel filed seven discovery-related motions and defended against thirteen discovery-related motions in the span of eleven months. *Id*. In the end, Plaintiffs' counsel obtained and reviewed over 200,000 responsive documents. *Id*.

Third-party discovery was also heavily utilized and litigated. Plaintiffs' counsel issued over 70 subpoenas duces tecum to third parties, including banks and cell phone service providers, and 10 deposition subpoenas to third parties such as the City Manager of Johnson City, the acting Attorney General of the First Judicial District of Tennessee Steven Finney, and Sean Williams' alleged co-conspirator. *Id.* at ¶ 6. Many of these subpoenas became the subject of motion practice. *Id*.

A total of seventeen depositions were conducted in this litigation in less than one year. *Id.* at ¶ 7. Plaintiffs' counsel took the depositions of numerous JCPD officers, the Federal Rule of Civil Procedure 30(b)(6) representative of the City, and police practices expert Eric Daigle. *Id*. Plaintiff S.H. and Former Plaintiffs B.P. and H.A. sat for full-day depositions, as well as the sister of a deceased victim of Sean Williams. *Id.* Plaintiffs' counsel defended these depositions. *Id*.

Plaintiffs' counsel also reviewed dozens of JCPD case files relating to reports of sexual assault. *Id.* at ¶ 8. Finally, Plaintiffs worked with experts regarding the culpability of the City's conduct and the nature and degree of Plaintiffs' alleged emotional distress and dignitary harms. *Id.* at ¶ 9.

### D. Settlement Negotiations

On December 9, 2024, Plaintiffs and the City engaged in a full-day mediation with mediator Hon. Layn Phillips (Ret.). Erickson Decl., ¶ 11. Prior to the mediation, the parties prepared and exchanged comprehensive mediation briefs and held separate meetings with Judge

6

Phillips and his team. *Id.* The parties reached certain agreements in principle at the mediation but did not fully resolve the matter. *Id.* Over the following two months, the parties continued shuttle negotiations through Judge Phillips and direct negotiations between counsel, ultimately agreeing on terms to resolve the case in early February 2025. *Id.* at ¶ 12.

On February 13, 2025, the City Commission of Johnson City voted to approve a settlement between Former Plaintiffs and the City, cementing several individual settlement agreements. *Id.* at ¶ 13. Simultaneously, the parties finalized, and the Commission approved, the principal terms of a settlement that would resolve Plaintiff S.H.'s class action claims against the City. *Id.*

Following the vote, Former Plaintiffs filed a Rule 21 motion requesting to dismiss the remaining individual defendants and all claims asserted against the City by Former Plaintiffs B.P. and H.A. individually (with prejudice) and on behalf of the proposed Sex Trafficking Survivor Class and Williams Survivor Subclass (without prejudice). ECF 489. B.P. and H.A. were, accordingly, withdrawn as class representatives and plaintiffs. *Id.* Plaintiff S.H. subsequently filed a third amended complaint, asserting a single claim individually and on behalf of the Reporter Class against the City under 42 U.S.C. § 1983 for its alleged unconstitutional pattern or practice related to JCPD's sex-based discrimination. ECF 508.

### III. <u>TERMS OF THE PROPOSED SETTLEMENT</u>

Subject to the Court's approval, the parties have reached a settlement to resolve all class claims pending in the litigation. The class is defined as all women, including minors, who reported a sexual assault by any person to JCPD from January 1, 2018 to December 31, 2022. SA, § 2.4. Class membership will be determined by the existence of an incident number in the JCPD records management system (the number assigned when a crime is reported) for a sex-related crime: forcible rape, forcible sodomy, sex assault with object, forcible fondling, incest, or

7

statutory rape. Ex. B; Erickson Decl., ¶ 21. Class members identified from JCPD records will be sent direct notice via U.S. Mail using the best contact information available or obtainable by the settlement administrator. *Id.* at ¶¶ 21-22. If an individual believes she is a class member but did not receive notice by mail, she may contact the settlement administrator, who will attempt to verify class membership. Ex. A.

*Monetary relief.* Under the terms of the proposed Settlement, the City will pay $4.2 million (the "Settlement Amount"), which will be used to compensate settlement class members, as well as to pay for the cost of notice and settlement administration, attorneys' fees and expenses, and a service award to the class representative. SA, §§ 2.24-2.25. After all Court-approved deductions are made from the Settlement Amount, the remainder will be distributed on an equal *pro rata* basis to all settlement class members. Ex. B. Based on Plaintiffs' counsel's estimate, settlement class members can expect a payment of approximately $ 7,000. Erickson Decl., ¶ 26. Class members will be advised of this payment amount in the notice. *See* Ex. A. The actual amount will be calculated by the settlement administrator after the Settlement becomes effective. *Id.*

The notice will include a unique identifier for each class member, which she can use to verify her information and select a payment method through the settlement website or by phone with the settlement administrator. *See* Ex. A. Class members can also elect to provide their social security number and be issued a Form 1099-MISC. *Id.* If they do nothing, settlement class members will be issued their settlement payment by mailed check. *Id.*

Any amount remaining after payments are distributed (for example, from uncashed checks) will either be redistributed to settlement class members, or, with Court approval, directed to an appropriate *cy pres* beneficiary. *See* SA, § 7.6; Ex. B.

8

*Equitable relief*: As background, in the fall of 2022, Attorney General Finney's Office and its Special Victims Unit developed an updated sex crime protocol and met with JCPD leadership and investigators to review and finalize the protocol. Erickson Decl., ¶ 15. JCPD formally adopted the protocol as the Sexual Oriented Crimes General Order 600.13 ("SOCGO") and completed training and implementation as of December 31, 2022. Erickson Decl., ¶ 15.

As part of the Settlement, for two years following final approval, the City will provide Plaintiffs' counsel, on a quarterly basis, audit reports completed by JCPD's Office of Professional Standards for at least fifteen (15) investigations conducted under the SOCGO. SA, §§ 4.1-4.2. The audits will serve as the basis for Plaintiffs' counsel's monitoring of JCPD's compliance with the constitutional policing standards set forth in the SOCGO. *Id.* at § 4.3. If based on the review of the audits, Plaintiffs' counsel believe JCPD is not in compliance with the SOCGO, they will attempt to resolve the issue directly with the City and, if necessary, seek relief from the Court. *Id.*

## IV.  THE PROPOSED SETTLEMENT WARRANTS APPROVAL

Judicial approval of class action settlements typically proceeds through three stages: "(1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate[,] and reasonable." *Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); Fed. R. Civ. P. 23.

At the preliminary approval stage, the Court must initially determine whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2), and if it has not previously done so, "certify the class for purposes of judgment on the proposal."

9

Fed. R. Civ. P. 23(e)(1)(B). Then, after class members are provided notice and an opportunity to object, the Court must hold a hearing to consider whether to approve the settlement. *See* Fed. R. Civ. P. 23(e)(2), (4), (5).

In determining whether it "will likely be able to" approve the Settlement as fair, reasonable, and adequate, the Court must consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(1)-(2). These factors are aimed at focusing the Court "on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes; *see also Int'l Union, UAW v. General Motors Corp. ("UAW")*, 497 F.3d 615, 631 (6th Cir. 2007) (noting seven factors for preliminary approval that preceded and are largely encompassed by the 2018 Amendments to Rule 23(e)(2)). Plaintiffs submit that review of these four core concerns favors the proposed Settlement and should give the Court confidence that it will be able to grant final approval after class members are given an opportunity to express their views.

### A. Plaintiffs and Their Counsel Have Adequately Represented the Class

The first procedural concern asks whether the proposed Settlement was the result of adequate representation. Fed. R. Civ. P. 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims such that counsel has sufficient information to make informed decisions at the bargaining table. *See id.*, Adv. Comm. Note.

Here, Plaintiffs' counsel was well prepared to negotiate a beneficial settlement for class members. By the time the parties reached a settlement in principle, Plaintiffs' counsel had taken

or defended over seventeen depositions, reviewed over 200,000 pages of responsive documents, propounded five dozen document and written discovery requests, briefed over twenty motions, including over a dozen discovery-related motions, multiple motions to dismiss, and a motion for class certification, reviewed dozens of case files relating to reports of sexual assault made to JCPD, and worked with experts regarding the culpability of the City's conduct and the nature and degree of Plaintiffs' alleged emotional distress and dignitary harms. Erickson Decl., ¶¶ 5-9. This discovery "afforded the parties the opportunity to assess the strengths and weaknesses of each side," which "weighs in favor of finding the [settlement] fair, adequate, and reasonable." *Smith v. Ohio Dep't of Rehab. & Corr.*, 2012 WL 1440254, at *19 (S.D. Ohio Apr. 26, 2012).

Further, Plaintiff S.H. has committed substantial time to this litigation, including sitting for a day-long deposition, collecting documents, drafting written responses, and ultimately approving the terms of the settlement. Erickson Decl., ¶ 19. Through those efforts, Plaintiffs and their counsel secured a settlement entitling each class member to meaningful relief. This work demonstrates that the class has been adequately represented.

### B. The Proposed Settlement Was Negotiated at Arm's Length

The Settlement was reached after formal, non-collusive, arm's-length negotiations before the Honorable Layn Phillips (Ret.), one of the most experienced and respected private mediators in the country, particularly in high-profile class actions alleging sexual misconduct.

Prior to reaching the proposed Settlement, the parties vigorously litigated this action for almost two years and conducted extensive discovery. Erickson Decl., ¶¶ 4-9. In fact, the Settlement was reached just a couple months before fact discovery was set to close. *Id.* at ¶¶ 11-12; ECF 418 (scheduling order setting fact discovery cutoff for March 24, 2025). The parties, therefore, had a wealth of information about the case to assess the strengths and weaknesses of the claims and the adequacy of the proposed settlement. *See In re Skelaxin (Metaxalone) Antitrust*

*Litig.*, No. 2:12-CV-4, 2015 WL 13650515, at *2 (E.D. Tenn. Jan. 16, 2015) (finding settlement was entered on a "fully-informed basis" where discovery was "nearly complete" at the time of settlement, enabling plaintiffs "competently and thoroughly to evaluate the strengths and weaknesses of their claims and the associated litigation risks"); *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522, at *3 (W.D. Ky. Dec. 6, 2019) (finding settlement was product of arm's-length non-collusive negotiations based on the posture of the case, which "ha[d] been pending for four years, with extensive motion practice and discovery during that time"); 4 Newberg and Rubenstein on Class Actions ("Newberg") § 13:14 (6th ed.) ("Where the proposed settlement is preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length."). Based on the extensive knowledge obtained through discovery and their experience litigating civil rights and sexual abuse class actions, Plaintiffs' counsel believe that the settlement is fair, reasonable, and adequate. Erickson Decl., ¶ 28. This "positive outlook toward the fairness of the settlement weigh[s] in favor of approv[al]." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019). *See also In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692, at *3 (E.D. Tenn. June 15, 2012) ("[W]hen significant discovery has been completed, the Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case.").

Further, the involvement of Judge Phillips and his team in the parties' lengthy and robust mediation efforts, and the extensive negotiations that took place over the course of numerous weeks following the mediation, supports a finding that the settlement is not the product of collusion. *See Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) ("[T]he use of neutral, experienced mediators is an indication that the parties' agreement is noncollusive."); *Macy*, 2019 WL 6684522, at *3 ("The fact that the settlement was

reached through mediation likewise suggests an absence of collusion."); Newberg § 13:14 ("[C]ollusion [is] less likely when settlement negotiations are conducted by a third-party mediator.").  This factor therefore favors preliminary approval of the Settlement.

### C.  The Proposed Settlement Provides Adequate Relief to Class Members

The Settlement's terms reflect an excellent result for the class, consisting of both monetary and non-monetary relief. The Settlement provides for a gross settlement fund of $4,200,000. Erickson Decl., ¶ 14. Under the Settlement, each of the approximately 375 class members will be entitled to a payment of approximately $7,000, without any action required by them. *Id.* at ¶ 26. This significant monetary recovery matches or exceeds settlements in other civil rights class actions alleging violations of the Equal Protection Clause by law enforcement entities. *Id.* at ¶ 28; *see also, e.g., Snead v. CoreCivic of Tennessee, LLC*, Case No. 3:17-cv-00949, Dkt. 131, Order Granting Final Approval of Class Action Settlement (M.D. Tenn. Nov. 30, 2021) (granting final approval of claims-made class action settlement providing pro rata individual payments of approximately $4,000 for releasing equal protection claims against state prison operator)*; Zelaya v. Hammer*, Case No. 3:19-cv-00062-TRM-CHS, Dkt. 780, Motion for Preliminary Approval of Class Settlement (E.D. Tenn. Oct. 12, 2022) (settlement provided individual payments of $5,000 to $6,000); *id.* at Dkt. 781 (Oct. 19, 2022) (granting preliminary approval); *id.* at Dkt. 793 (Mar. 2, 2023) (granting final approval)*; see also Cervantez v. Whitfield*, 613 F. Supp. 1439, 1443-44 (N.D. Tex. 1985) (approving monetary payments to class members ranging from $220 to $1,320 in civil rights class action alleging unconstitutional seizures of Latino individuals). It is the opinion of Plaintiffs' counsel, who have significant experience litigating this type of case, that this Settlement is in the best interest of the class. Erickson Decl., ¶ 28. *See Olden v. Gardner*, 294 F. App'x 210, 219 (6th Cir. 2008) (opinion of experienced class counsel supporting settlement weighs in favor of approval).

13

The institutional reforms that the City has implemented will also benefit class members and other members of the public who are sexually assaulted in the future and report their assaults to JCPD. Erickson Decl., ¶ 28. The improved policies and procedures that govern the investigation of sexual assault reports by JCPD officers will help ensure constitutional policing by identifying and eliminating gender bias. *Id.*

The collective relief offered by the Settlement is even more favorable when considered in light of the factors delineated in Rule 23(e)(2)(C): (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution and claims process; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

1. *The Costs, Risks, and Delay Drawbacks Associated with Further Litigation Are Substantial*

In contrast to the benefits conferred by the Settlement, continued litigation would have carried significant costs, risks, and delay. The former individual defendants denied all allegations and claims asserted against them. Erickson Decl., ¶ 29. Absent settlement, all defendants would have vigorously opposed class certification and would likely have pursued interlocutory appellate review of an order certifying the class. *Id*. While Plaintiffs were confident in the Daigle Report's findings of discriminatory practices within the JCPD, even if they were adopted by the Court, the City could still argue that analyzing the sufficiency of the violations to warrant constructive notice—both in terms of similarity, quantity, and the lack of action by the City—would require individualized inquiries based on the point in time when each class member reported her individual assault. *Id*. This posed a significant risk to class certification. *Id*.

Additionally, the parties would have continued to aggressively litigate the Reporter Class's §1983 claims under the Equal Protection Clause ("EPC"), including filing consolidated

and individual summary judgment motions, *Daubert* motions, and appealing an adverse judgment. Erickson Decl., ¶ 30. The former individual defendants anticipated moving for summary judgment as to the EPC claims on the merits, as well as on the grounds of qualified immunity. *Id. See also* ECF 301, Order on Motions to Dismiss, at 26-27 (stating that defense of qualified immunity was for another day). No matter the Court's ruling on the issue of qualified immunity, at least one party would likely have sought interlocutory appeal on the issue in the Sixth Circuit. Erickson Decl., ¶ 30. *See also Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001) ("The denial of a motion for summary judgment on the issue of qualified immunity is immediately appealable if the affirmative defense of qualified immunity rests on an issue of law.").

Finally, the Settlement avoids significant uncertainties, including the risk of establishing liability and damages. Erickson Decl., ¶ 31. For example, Plaintiffs face a material risk of not establishing that JCPD's discriminatory practices did, in fact, violate class members' constitutional rights and were so widespread and obvious that City decision makers were on constructive notice of the constitutional violations occurring yet refused to act. *Id.*

Even if Plaintiffs were successful at all stages, successful litigation would take years and impose heavy financial and emotional burdens. Erickson Decl., ¶ 32. Lawsuits alleging misconduct related to sex-based discrimination and sexual assault are notoriously hard on the victims, who are forced to relive a traumatic event for years on end and divulge sensitive and embarrassing details. *Id.* One of the greatest appeals of a class settlement is that it offers victims a meaningful recovery without first exacting a hefty emotional toll. *Id. See also Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 395 (Del. Super. Ct. 2012) ("the emotional costs of litigation cannot be ignored").

### 2. The Proposed Distribution of the Settlement Proceeds Is Designed to Be Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Newberg § 13:53. Here, none of the $4.2 million settlement fund will revert to the City. Instead, after Court-approved deductions for payment of notice and administration expenses, attorneys' fees and costs, and a service award to the class representative, the entirety of the net settlement fund will be disbursed in equal, pro rata payments to the settlement class members, who can select their desired form of payment through the settlement administrator. SA, §§ 5.1 & 7.4; Ex. A, ¶ 9; Ex. B. If the sum of the settlement payments made is ultimately less than the balance in the net settlement fund (for example, due to uncashed checks), and the balance is large enough to feasibly distribute, a second distribution of pro rata payments will be made to the settlement class members who have already accepted payment. Ex. B.

### 3. The Anticipated Request for Attorneys' Fees is Reasonable

Plaintiffs' counsel will seek attorneys' fees through a separate motion that will be supported by documentation of their hours, rates, and expenses. Erickson Decl., ¶ 17. Under the terms of the Settlement, the requested fee award will not exceed one-third of the Settlement Amount ($1,400,000), and the Court will not be asked to approve the fee payment until the final approval stage. SA, § 8.1. A request of one-third of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit. *See In re Se. Milk Antitrust Litig.*, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting 33.33 percent attorney's fee is "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Stewart v. Baptist Memorial Health Care Corp.*, 2024 WL 4360602, at *7-8 (W.D. Tenn. Sept. 30, 2024) (attorney's fee award equal to one-third of gross settlement fund "accords with general practice in common fund

16

class action settlements"). The amount and timing of the fee proposal accordingly favor approval of the proposed Settlement under Rule 23(e)(2)(C)(iii).

### 4. There Are No Undisclosed Side Agreements

No other agreements were made in connection with the proposed Settlement that impacts relief to the class. Erickson Decl., ¶ 13. Former Plaintiffs B.P. and H.A., along with a group of other Sean Williams victims, previously entered into separate individual settlements with the City in exchange for releasing their federal sex trafficking claims and any other individual claims against the City and former individual defendants that were based on individualized allegations of additional harm. *Id*. This factor therefore also weighs in favor of approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### D. The Proposed Settlement Treats Class Members Equally

The Settlement benefits all class members equitably. Each class member is entitled to an equal pro rata share of the overall net settlement amount, which will result in the same monetary payment of approximately $7,000 per class member. Erickson Decl., ¶ 26. The equal shares division is consistent with Plaintiffs' legal theory that JCPD discriminated on the basis of sex through a pattern of department-wide practices carried out consistently during the class period. *See* ECF 391 at 15-16 & 20-21; ECF 121, SAC, ¶¶ 188-216. The equal shares division will also ensure efficient settlement administration. Erickson Decl., ¶ 27. Pro rata distribution of class settlement funds is commonly approved in similar class actions involving civil rights claims, and is appropriate here. *See, e.g., Snead*, *supra*, Case No. 3:17-cv-00949, Dkt. 131, Order Granting Final Approval of Class Action Settlement (M.D. Tenn. Nov. 30, 2021) (granting final approval of claims-made settlement providing pro rata individual payments in case alleging exposure to a particular and sufficiently well-defined set of allegedly illegal policies and practices). This factor therefore also supports preliminary approval.

17

## V.  THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED

If at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, the parties' proposed class meets all the requirements of Rule 23(a) and Rule 23(b)(3), and can be certified by the Court at the final approval stage.

### A.  The Class Meets the Requirements of Rule 23(a)

#### 1.  Numerosity

The class consists of approximately 375 women and girls, Erickson Decl., ¶ 16, making "joinder of all members impracticable." Fed. R. Civ. P. 23(a)(1); *see also Stewart v. Baptist Mem'l Health Care Corp.*, No. 2:21-CV-02377-SHM-CGC, 2024 WL 4360602, at *4 (W.D. Tenn. Sept. 30, 2024) (classes comprised of hundreds of potential litigants meet the Sixth Circuit's standard for numerosity); *Garner Prop. & Mgmt*., *LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020) (40 or more members is sufficient to satisfy numerosity).

#### 2.  Commonality

Plaintiff S.H. and class members' claims depend upon common contentions of fact and law that could be resolved through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Each class member's claim against the City depends on the common contentions that the City knew or should have known about JCPD's discriminatory investigative practices; that these practices were causing violations of the constitutional right to equal protection of the law; and that the City refused to address the discrimination because of deliberate indifference. *See* ECF 391 at 23-24. Each of those contentions depend only on what the City knew, did, or refused to do, and could be established (or not established) with generalized evidence applicable to the entire class. *See id.* at 14-17. As such, answering these

18

questions as to one class member, answers them as to all. *See Martin v. Behr Dayton Thermal Products, LLC*, 896 F.3d 405, 414 (6th Cir. 2018) (defendant's knowledge and conduct turn on common issues that "need only be answered once because the answers apply in the same way to each [class member]"); *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ("proof that an employer operated under a general policy of discrimination" warrants class certification where "discrimination manifested itself in hiring and promotion practices in the same general fashion"); *Snead, supra*, 2018 WL 3157283, at *18 (M.D. Tenn. June 27, 2018) ("class members are as one in their exposure to a particular and sufficiently well-defined set of allegedly illegal policies and practices"). These questions more than satisfy commonality.

### 3. Typicality

Typicality is satisfied because Plaintiff S.H.'s claim is based on JCPD's practice of discriminatory conduct against women reporters of sexual assault that is precisely the same "practice or course of conduct that gives rise to the claims of other class members," and all class members are asserting constitutional violations "based on the same legal theory." *In re Am. Med. Sys. Inc.,* 75 F.3d at 1082. Specifically, Plaintiff S.H. alleges that, when she reported her sexual assault to the JCPD, officers failed to properly investigate her claim, made derogatory comments about her based on the fact she is a female, and intimidated and discouraged her from prosecuting her claims. *See* ECF 121 at ¶¶ 259-292. The class members' claims arise from the same set of alleged practices by JCPD. *Id.* at ¶¶ 184-216, 231-250, 301(a), 367-381.

### 4. Adequacy of Representation

Plaintiff S.H. meets the adequacy requirement because her interests are aligned with class members' interests, and she has retained experienced counsel to vigorously prosecute class claims. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Plaintiffs' counsel have decades of experience representing plaintiffs in complex class action litigation, including in

19

cases involving sexual misconduct. Erickson Decl., ¶ 33, Exs. 1-3 (firm CVs). They have

demonstrated the qualifications, experience, and expertise to adequately and fairly represent their

clients in this case. *Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000). Plaintiff S.H. has

exercised good faith and sound judgment in developing and prosecuting this case for almost two

years and has dedicated significant time sitting for a full-day deposition, responding to

discovery, and supervising the litigation while retaining and working with Plaintiffs' counsel.

Erickson Decl., ¶ 19; *Daffin v. Ford Motor Co.,* 458 F.3d 549, 553 (6th Cir. 2006).

### B. The Class Meets the Requirements of Rule 23(b)(3)

#### 1. Predominance

The predominance requirement is satisfied when class members' claims can be proven

predominantly using common, class-wide evidence rather than evidence that varies from class

member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Here,

each class member has a single cause of action under 42 U.S.C. § 1983 against the City for

constitutional violations based on JCPD's investigative practices. The following common issues

of law and fact go to "the heart" of that claim, *Sterling v. Velsicol Chem. Corp*., 855 F.2d 1188,

1197 (6th Cir.1988), satisfying the predominance requirement: (1) whether JCPD's

discriminatory practices were sufficiently widespread to be a "custom" thereby establishing the

City had a policy of deliberate indifference, *Monell*, 436 U.S. at 694; (2) whether the custom

treated class members differently based on their sex, *United States v. Virginia*, 518 U.S. 515,

531-33 (1996); and (3) whether the custom was motivated by a discriminatory animus, *id*. As set

forth more fully in Plaintiffs' motion for class certification (ECF 391), the evidence that would

be used to resolve those core questions is objective and of the type commonly used in cases

where class certification was granted. *See* ECF 931 at 21-22 (describing statistical evidence,

anecdotal evidence, police reports, and officer testimony); *Snead*, *supra*, 2020 WL 6469995, at

*18 (M.D. Tenn. Apr. 6, 2020) (plaintiffs established a sufficiently pervasive "custom" through statistical evidence); *Int'l Broth. Of Teamsters v. U.S.*, 431 U.S. 324, 336-339 (1977) (discriminatory intent can be established by statistical and anecdotal evidence); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1259 fn. 7 (6th Cir. 1981) (same); *Tyson Foods*, 577 U.S. at 458-59 (statistical evidence may be used to prove liability in a class action where an individual plaintiff pursuing the same claim would be allowed to use statistical evidence to prove liability). Predominance exists. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (dispositive facts and law are the same as to each class member, satisfying predominance); *Sterling,* 855 F.2d at 1197 (common course of conduct well-suited to certification).

### 2. Superiority

Superiority is satisfied for many of the same reasons predominance is met. Common issues predominate over individual ones, which means class members do not have a strong interest in controlling their individual actions. Additionally, because of the sensitive subject matter of this case—claims of police misconduct in response to reports of sexual assault—and the difficulty and expense of prevailing, it is highly unlikely that many members of the class would be able to bring individual lawsuits. Erickson Decl., ¶ 32; *Young v. Nationwide Mut. Ins. Co*, 693 F.3d 532, 545 (6th Cir. 2012).

## VI. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

According to Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[A]ll that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)

(quoting *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 630 (6th Cir. 2007). Here, the proposed

notice of settlement satisfies Rule 23 and the requirements of due process.

### A. The Notice Plan Adequately Informs Class Members of Their Rights and Options Under the Settlement

First, the form and content of the notice is substantively adequate. The notice is written

in plain language and will appraise class members of the nature and pendency of the litigation,

the scope of the class and the class claims, as well as the option to request exclusion or to object

to the Settlement (and the time and manner for doing so). *See* Ex. A. Class members are advised

that if they do not opt out, they will be bound by final approval of the Settlement, including the

release of any claims they may have had arising from the facts alleged in the Third Amended

Complaint. *Id.* The notice also explains that Plaintiffs' counsel will file a motion requesting up to

$1,420,000 in attorney's fees and costs, as well as a $20,000 service award to Plaintiff S.H., that

the anticipated motion will be posted on the settlement website at the time it is filed, and that

class members may review and comment upon that motion. *Id.* Lastly, the notice will include the

time and place of the final approval hearing and advise as to how to check for any changes to the

scheduling of that hearing on the settlement website. *Id.* The notice therefore contains all the

necessary content. *See, e.g., Kizer v. Summit Partners, L.P.*, No. 1:11-CV-38, 2012 WL

1598066, at *9 (E.D. Tenn. May 7, 2012); *Busby v. Bonner*, No. 2:20-CV-2359-SHL-ATC, 2021

WL 4127775, at *5 (W.D. Tenn. Jan. 28, 2021).

### B. The Notice Plan Uses the Best Practicable Means to Reach Class Members

Second, the manner of notice complies with Rule 23 and due process. The City and

Plaintiffs' counsel will cooperate to provide to proposed settlement administrator, JND Legal

Administration ("JND"), information from JCPD's records sufficient to identify all class

members and their contact information. SA, § 7.2; Erickson Decl., ¶ 21. JND will use industry-

22

standard processes to determine and verify addresses then send the notice via U.S. Mail to all class members with known addresses. SA, § 7.2; Erickson Decl., ¶¶ 21-22; *Kizer*, 2012 WL 1598066, at *9 (approving notice in Rule 23(b)(3) settlement where the parties provided notice to the "last known address of each settlement class member"). JND is also authorized to effect additional means of notice, including publication notice, if it appears that the identification and contact information available for direct notice is insufficient. SA, § 7.2. Additionally, the notice will be available on the settlement website. SA, § 7.3; Erickson Decl., ¶ 23. *See In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-MD-2508-HSM-CHS, 2017 WL 3124105, at *2 (E.D. Tenn. May 26, 2017) (approving notice in Rule 23(b)(3) settlement that combined direct mail notice with notice disseminated through national periodicals and an online website). The manner of notice complies with due process and constitutes the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Accordingly, the Court should approve the proposed notice and notice program.

### C. The Proposed Settlement Administrator Is Qualified and Experienced

The Settlement proposes to appoint JND as the settlement administrator in this matter. SA, § 2.22. JND has been recognized as one of the best claims administrator in the country by *New York Law Journal* and has effectively served as the settlement administrator in dozens of complex class actions and mass tort cases. Erickson Decl., ¶ 20. Plaintiffs request that JND be appointed as settlement administrator for this matter and be authorized to effect notice.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully move this Court for an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the notice and directing that it be disseminated to the class 45 days after the entry of an order approving this motion; (3)

preliminarily certifying the class for settlement purposes; and (4) scheduling a fairness hearing. A proposed order providing this requested relief is attached as Exhibit C to the Settlement.

Respectfully submitted,

Date: May 19, 2025

/s/ Julie C. Erickson
Julie C. Erickson (California Bar # 293111)
Elizabeth A. Kramer (California Bar # 293129)
Kevin M. Osborne (California Bar #261367)
*Pro Hac Vice*
Erickson Kramer Osborne LLP
44 Tehama St.
San Francisco, CA 94105
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

/s/ Heather Moore Collins
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

/s/ Vanessa Baehr-Jones
Vanessa Baehr-Jones (California Bar # 281715)
*Pro Hac Vice*
Advocates for Survivors of Abuse PC
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on May 19, 2025 to counsel of record:

K. Erickson Herrin
HERRIN, McPEAK & ASSOCIATES
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
erick@hbm-lawfirm.com
rachel@hbm-lawfirm.com

Emily C. Taylor
Maria Ashburn
WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
etaylor@watsonroach.com
mashburn@watsonroach.com

*Attorneys to Defendant Johnson City, Tennessee*

Jonathan P. Lakey
Burch, Porter, & Johnson, PLLC
130 N. Court Ave.
Memphis, TN 38103
901-524-5000
jlakey@bpjlaw.com
mchrisman@bpjlaw.com

*Attorney to Defendant City of Johnson City, Tennessee*

*/s/ Julie C. Erickson*
Julie C. Erickson

25