IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

S.H., individually, and on behalf

of all others similarly situated,

    Plaintiff,

v.                                                                No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY, TENNESSEE,

    Defendant.

_____/

## DECLARATION OF JULIE C. ERICKSON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TO THE COURT AND ITS ATTORNEYS OF RECORD:**

I, Julie C. Erickson, declare the following:

1. I am over twenty-one years of age and am competent in all respects to give this declaration. This declaration is given freely and voluntarily. I have personal knowledge of the matters herein and could, and would, testify competently thereto under penalty of perjury.

2. I am counsel for Plaintiff S.H. as well as former Plaintiffs B.P. and H.A. in the above-referenced case. I am a licensed attorney in good standing in the State of California (CABN 293111) and admitted to appear *pro hac vice* in this District.

3. The plaintiffs in this action are represented by lead counsel Vanessa Baer-Jones of Advocates for Survivors of Abuse PC; Heather Moore Collins of HMC Civil Rights Law, PLLC; and my two partners at Erickson Kramer Osborne LLP, Elizabeth A. Kramer and Kevin M. Osborne, and me.

4. This action commenced on June 21, 2023 and was extensively litigated, amassing over 500 docket entries in less than two years.

5. <u>Discovery</u>. Extensive discovery was conducted in this case. On behalf of the Plaintiffs, my colleagues, partners, and I propounded more than five dozen written discovery and document requests, most of which required extensive meet and confers between counsel and many of which required motion practice to ensure compliance. In fact, our team briefed over a dozen discovery-related motions in the span of eleven months. In the end, we obtained and reviewed over 200,000 responsive documents.

6. We also heavily utilized third-party discovery, issuing over 70 subpoenas duces tecum to third parties, including banks and cell phone service providers, and 10 deposition subpoenas to third parties such as the City Manager of Johnson City, the acting Attorney General of the First Judicial District of Tennessee Steven Finney, and Sean Williams' alleged co-conspirator. Many of these subpoenas became the subject of motion practice, with either a defendant or the recipient moving to quash or my team filing a motion to compel.

7. There was also extensive deposition testimony taken in this litigation. A total of seventeen depositions were conducted in less than one year.  My co-counsel and I took the depositions of numerous JCPD officers, the Federal Rule of Civil Procedure 30(b)(6) representative of the City, and police practices expert Eric Daigle. Plaintiff S.H. and Former Plaintiffs B.P. and H.A. sat for full-day depositions, as well as the sister of a deceased victim of Sean Williams. My team defended these depositions.

8. We also reviewed dozens of JCPD case files relating to reports of sexual assault made by class members.

9. Finally, we worked with experts regarding the culpability of the City's conduct and the nature and degree of emotional distress and dignitary harms suffered by Plaintiffs and the class.

10. <u>Mediation and Settlement Efforts</u>. In late 2024, the case was quickly approaching deadlines for expert disclosures, fact discovery cutoff, and briefing deadlines on

Plaintiffs' motion for leave to amend and motion for class certification. Around that time, the parties decided to try to resolve the case through mediation.

11. On December 9, 2024, Plaintiffs and the City engaged in a contentious full-day mediation with mediator Hon. Layn Phillips (Ret.). Prior to the mediation, the parties prepared and exchanged comprehensive mediation briefs and held separate meetings with Judge Phillips and his team. On the day of the mediation, the parties reached certain agreements in principle but did not fully resolve the matter.

12. Over the following two months, we continued shuttle negotiations through Judge Phillips and direct negotiations between counsel, ultimately agreeing on terms to resolve the case in early February 2025.

13. On February 13, 2025, the City Commission of Johnson City voted to approve a settlement between former plaintiffs B.P. and H.A. and the City, cementing several individual settlement agreements that resolved their federal sex trafficking claims and any other individual claims against the City and former individual defendants that were based on individualized allegations of additional harm. Simultaneously, the parties finalized, and the Commission approved, the principal terms of a settlement that would resolve Plaintiff S.H.'s class action claims against the City. No other agreements were made in connection with the proposed Settlement that impacts relief to the class.

14. <u>Terms of Settlement</u>. Under the Settlement, the City will pay $4.2 million to resolve the claims alleged in this litigation.

15. The City will also provide equitable relief in the form of improved procedures and a mechanism for oversight. By way of background, in the fall of 2022, Attorney General Finney's Office and its Special Victims Unit developed an updated sex crime protocol and met with JCPD leadership and investigators to review and finalize the protocol. JCPD formally adopted the protocol as the Sexual Oriented Crimes General Order 600.13 ("SOCGO") and completed training and implementation as of December 31, 2022. As part of the Settlement, for two years following final approval,

3
Case 2:23-cv-00071-TRM-JEM    Document 516    Filed 05/19/25    Page 3 of 9    PageID #: 11735

the City will provide Plaintiffs' counsel, on a quarterly basis, audit reports completed by JCPD's Office of Professional Standards for at least fifteen (15) investigations conducted under the SOCGO. The audits will serve as the basis for our monitoring of JCPD's compliance with the constitutional policing standards set forth in the SOCGO. If based on our review of the audits, we believe JCPD is not in compliance with the SOCGO, we will attempt to resolve the issue directly with the City and, if necessary, seek relief from the Court.

16. My colleagues and I estimate there are 375 members of the class based on the Daigle Report, supporting materials produced in discovery, and representations from the City after its review of the JCPD Records Management System ("RMS").

17. <u>Attorneys' Fees, Costs, and Service Award</u>. The terms of the Settlement provide that Plaintiffs' counsel will apply for an award of attorneys' fees not to exceed one-third of the total gross settlement amount ($1,400,000). This accords with common practice in common fund class actions in this Circuit. We will seek attorneys' fees through a separate motion, supported by documentation of our hours, rates, and expenses.

18. The Settlement also provides for reimbursement to Plaintiffs' counsel for litigation expenses in the amount of $20,000. Plaintiffs will request reimbursement only for expenses actually incurred in the prosecution of this matter, and the request will be supported in detail in Plaintiffs' motion for attorney's fees and costs.

19. The Settlement provides for a service award to Plaintiff S.H. in the amount of $20,000 in recognition of her contribution to this litigation. Plaintiff S.H. has committed substantial time to this litigation and has exercised good faith and sound judgment throughout. I estimate she has spent over 25 hours related to this litigation, including communicating with our team about the progress of the case, preparing for and sitting for a full-day deposition, responding to discovery requests, reviewing documentary discovery, and ultimately approving the terms of the Settlement. In my opinion and experience, a service award to S.H. in the amount of $20,000 is

4

Case 2:23-cv-00071-TRM-JEM    Document 516    Filed 05/19/25    Page 4 of 9    PageID #: 11736

reasonable and appropriate. The service award request will be supported in detail in Plaintiffs' motion for attorney's fees and costs.

20. Settlement Administration. Under the Settlement, the parties propose JND Legal Administration ("JND") be appointed as settlement administrator in this matter. JND has an excellent reputation and extensive experience with administering class action settlements. JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times*, and, most recently, the *New York Law Journal*, for excellence in class action administration.

21. The only method for obtaining class member contact information is by manual review of case files for the relevant four-year period (2018-2022). JND will be responsible for this effort, which is a unique and time-intensive assignment. JND will then use industry-standard processes to determine and verify addresses.

22. JND will distribute notice to all class members for whom contact information can be found. Direct notice will be made via U.S. mail and JND will be responsible for collecting and re-mailing any returned notice packets to updated or forwarding addresses. Notice will also be provided to the appropriate state and federal authorities as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

23. JND will also host a settlement website, through which class members may confirm or update their contact information, choose a payment method, and provide their social security number (optional). The settlement website will also host the notice and relevant documents and orders from the litigation.

24. JND will also be responsible for fielding phone calls and any opt-outs and objections from class members (class members are also instructed that they can lodge their objections directly with the Court), preparing and mailing relevant tax documents, and administering payments.

25. JND has estimated that settlement administration in this case will cost approximately $95,000.

26. <u>Individual Relief.</u> Based on my informed estimate, settlement class members can expect a payment of approximately $ 7,000. The actual amount will be calculated by the settlement administrator after the Settlement becomes effective. We calculated this individual payment by subtracting the following figures from the gross settlement amount of $4,200,000:

    a. Settlement Administration Costs: $95,000
    b. Attorneys' Fees: $1,400,000
    c. Litigation Costs: $20,000
    d. Service Award for S.H.: $20,000
        i. Total Costs/Fees/Service Award = $1,535,000

    This yields a total net settlement fund of $2,665,000. When divided equally among 375 class members, this results in a pro rata payment amount of $7,106.67.

27. Pro rata distribution of the net settlement fund is appropriate in this case because it is consistent with Plaintiffs' legal theory that JCPD discriminated on the basis of sex through a pattern of department-wide practices carried out consistently during the class period. The equal shares division will also ensure efficient settlement administration.

28. In my opinion and experience, and that of my colleagues and partners, the consideration secured under the proposed Settlement provides reasonable, adequate, and fair relief to the members of the class and is in their best interest. The monetary relief is equal to or larger than similar cases involving constitutional claims against law enforcement agencies and represents meaningful recovery. The equitable relief will also benefit class members—as well as other members of the public who might be sexually assaulted in the future—by helping to ensure the JCPD identifies and eliminates gender bias.

29. <u>Risks of Continued Litigation.</u> In analyzing the adequacy of the Settlement, my colleagues and I carefully considered the risks, costs, and delay of proceeding with litigation. These were significant. To begin with, the former individual defendants

denied all allegations and claims asserted against them. Absent settlement, all defendants would have vigorously opposed class certification and would likely have pursued interlocutory appellate review of an order certifying the class. While we were confident in the Daigle Report's findings of discriminatory practices within the JCPD, even if they were adopted by the Court, the City could still argue that analyzing the sufficiency of the violations to warrant constructive notice—both in terms of similarity, quantity, and the lack of action by the City—would require individualized inquiries based on the point in time when each class member reported her individual assault. This posed a significant risk to class certification.

30. Additionally, the parties would have continued to aggressively litigate the Reporter Class's §1983 claims, including filing consolidated and individual summary judgment motions, *Daubert* motions, and appealing an adverse judgment. The former individual defendants anticipated moving for summary judgment as to the § 1983 claims on the merits, as well as on the grounds of qualified immunity. No matter the Court's ruling on the issue of qualified immunity, at least one party would likely have sought interlocutory appeal on the issue in the Sixth Circuit.

31. Finally, the Settlement avoids significant uncertainties, including the risk of establishing liability and damages. For example, we faced a material risk of not establishing that JCPD's discriminatory practices did, in fact, violate class members' constitutional rights and were so widespread and obvious that City decision makers were on constructive notice of the constitutional violations occurring yet refused to act.

32. Even if we were successful at all stages, successful litigation would take years and impose heavy financial and emotional burdens. In my experience and that of my colleagues, lawsuits alleging misconduct related to sex-based discrimination and sexual assault are notoriously hard on the victims who are forced to relive a traumatic event for years on end and divulge sensitive and embarrassing details. In light of this, it is highly unlikely that many members of the class would bring individual lawsuits,

let alone successfully. One of the greatest appeals of a class settlement, especially under these circumstances, is that it offers victims a meaningful recovery without first exacting a hefty emotional toll.

33. <u>Qualifications of Plaintiffs' Counsel</u>: My co-counsel, partners, and I have decades of experience representing plaintiffs in complex class action litigation, including in cases involving sexual misconduct. Heather Moore Collins, of HMC Civil Rights Law, PLLC, has been successfully litigating civil rights cases raising constitutional claims on behalf of individuals and groups for approximately thirty years and has expertise in Tennessee tort claims and claims brought against Tennessee municipalities. HMC's full qualifications are described in **Exhibit 1** attached hereto, which is a true and correct copy of the firm resume for HMC Civil Rights Law. Vanessa Baehr-Jones, of Advocates for Survivors of Abuse PC, served as a federal prosecutor for nearly a decade and has extensive experience representing survivors of sex crimes in both federal and state court and in both civil and criminal practice. Ms. Baehr-Jones' full qualifications are described in **Exhibit 2** attached hereto, which is a true and correct copy of her firm's resume. My firm, Erickson Kramer Osborne LLP ("EKO"), has litigated dozens of complex and class actions and is among the small number of firms nationwide with significant experience litigating class action cases involving claims of sexual assault and abuse. Attached hereto as **Exhibit 3** is a true and correct copy of EKO's firm resume, which describes the full qualifications of EKO's attorneys.

This document was executed in San Mateo, California. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and based upon my own personal knowledge, and that if called upon to testify, I could verify the accuracy of the same.

Respectfully submitted this 19th day of May 2025     */s/ Julie C. Erickson*
                                                                                    Julie C. Erickson

# CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on May 19, 2025 to counsel of record:

K. Erickson Herrin
HERRIN, McPEAK & ASSOCIATES
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
erick@hbm-lawfirm.com
rachel@hbm-lawfirm.com

Emily C. Taylor
Maria Ashburn
WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
etaylor@watsonroach.com
mashburn@watsonroach.com

*Attorneys to Defendant Johnson City, Tennessee*

Jonathan P. Lakey
Burch, Porter, & Johnson, PLLC
130 N. Court Ave.
Memphis, TN 38103
901-524-5000
jlakey@bpjlaw.com
mchrisman@bpjlaw.com

*Attorney to Defendant City of Johnson City, Tennessee*

>                                        /s/ Julie C. Erickson
>                                        Julie C. Erickson