UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| S.H., individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF JOHNSON CITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 2:23-CV-71-TRM-JEM<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On July 25, 2025, Minor Victim 1 ("Minor") filed the Unopposed Petition to Approve Minor Settlement ("Petition") [Doc. 526]. Later, United States Chief District Judge Travis R. McDonough entered an Order referring the Petition to the undersigned pursuant to 28 U.S.C. § 636(b) [Doc. 530]. The Petition requests that the Court approve the settlement agreement reached by the parties with respect to the claims of the Minor [*Id*.]. On September 22, 2025, the parties appeared before the Court for a hearing. Attorney Vanessa Baehr-Jones appeared on behalf of the Minor. Attorneys Jonathan Lakey and Emily Taylor appeared on behalf of Defendant Johnson City, Tennessee ("Defendant Johnson City"). The Minor's mother and legal guardian, A.A., was also in attendance.

Having reviewed the Petition and having heard from the parties, the undersigned finds that the settlement agreement is within the best interests of the Minor and that the attorneys' fees and costs are reasonable under the circumstances of this case.

I.   **BACKGROUND**

Several plaintiffs originally filed this action on June 21, 2023 [Doc. 1] and filed the Second Amended Class Action Complaint ("Amended Complaint") on March 1, 2024 [*See* Doc. 121]. The

Amended Complaint alleged that "[b]eginning in at least 2018 and continuing to 2021, Sean Williams, a known drug dealer and convicted felon, conspired with Alvaro Fernando Diaz-Vargas and others to drug and rape women, and sexually exploit children, in his apartment in downtown Johnson City" [*Id.* ¶ 18]. They stated that Johnson City Police Department ("JCPD") officers were aware of the complaints that Sean Williams had raped women and that "officers took overt acts in furtherance of Williams'[s] sex trafficking venture" [*Id.* ¶¶ 95–143]. Despite being aware of such complaints, the plaintiffs alleged that the JCPD failed to investigate them [*Id.* ¶¶ 232–33]. This failure, according to the plaintiffs, "was motivated, in part, by the officers' discriminatory animus towards women" [*Id.* ¶ 242].

The plaintiffs represented three classes: (1) "All individuals, including minors, who were sexually abused, drugged, or trafficked by Sean Williams or Alvaro Fernando Diaz-Vargas" ("Sex Trafficking Survivor Class"); (2) "All members of the Sex Trafficking Survivor Class who were sexually assaulted by Sean Williams following the first report to the JCPD of Sean Williams'[s] alleged sexual violence on or about November 7, 2019" ("Williams Survivor Subclass"); and (3) "All women, including minors, who reported sexual abuse or trafficking by any person to JCPD from January 1, 2018, to April 25, 2023" ("Reporter Survivor Class") [*Id.* ¶ 298]. They alleged (1) sex trafficking claims, 18 U.S.C. §§ 1591, 1594, and 1595; (2) obstruction of enforcement, 18 U.S.C. §§ 1594, 1595, and 1591(d); (3) aiding and abetting a sex-trafficking venture, 18 U.S.C. §§ 2, 1591(a)(1) & (2), and 1595; (4) conspiracy to commit violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1594(c), 1591, and 1595; (5) violations of 42 U.S.C. § 1983; (6) liability under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205; (7) negligence for the failure to train; and (8) negligence for the failure to supervise [*Id.* ¶¶ 311–423].

The parties engaged in a healthy motion practice over the course of 2023–2024. On December 9, 2024, the plaintiffs and Defendant Johnson City attended mediation [Doc. 489 p. 3]. Following mediation, the parties continued to engage in settlement discussions, and they reached a settlement [*Id*.]. On February 13, 2025, the City Commission of Johnson City voted to approve the settlement [*Id*.]. The effective date of the Minor's Settlement and Release Agreement [SEALED Doc. 528-5] is February 13, 2025.

In light of the parties' settlement agreement, the plaintiffs agreed to dismiss Counts I, II, III, IV, V, VI, VIII, IX, X, and all remaining claims brought by Plaintiffs B.P. and H.A., individually under the TVPA and 42 U.S.C. § 1983 [Doc. 489 pp. 3–4]. The only claim that remains is the claim asserted by Plaintiff S.H. on behalf of the Reporter Survivor Class against Defendant Johnson City—Count V [*Id*. at 4]. Consistent with the parties' agreement, on March 6, 2025, Plaintiff S.H. filed the Third Amended Class Action Complaint [Doc. 508].

On July 2, 2025, Chief Judge McDonough preliminary approved the class action settlement and retained jurisdiction to consider matters arising out of the settlement [Doc. 521]. The final approval hearing is set for January 6, 2026 [*Id*. at 9].

On July 25, 2025, the Minor filed the Petition [Doc. 526]. It states that "Federal Rule of Civil Procedure 17(c) empowers a district court to make such order[s] as it deems proper for the protection of a minor" [*Id*. at 2 (citation and footnote omitted)]. The Petition asserts, "The settlement amount achieved on behalf of [the] Minor . . . will be a significant source of stability and support for [him] when he reaches the age of majority" [*Id*. at 3 (citation omitted)]. Defendant Johnson City contested this matter, the Petition submits, and "it intended to dispute liability, damages, and the appropriateness of the certification of a class in this matter" [*Id*. at 4]. Moreover, the Petition states, "This settlement eliminated the risk for [the] Minor . . . that he ultimately would

3

have received nothing related to his claim" [*Id*.]. But even if had succeeded on his lawsuit, the Petition provides that "the settlement is appropriate . . . considering comparable damages awards in Tennessee federal court[s] arising out of claims involving the sexual abuse of a minor" [*Id*. (citations omitted)].

Although the Minor was "too young to participate in this litigation in any way," the Petition notes that he "has benefited significantly from his counsel's representation of his interests during settlement negotiations with [d]efendants, and from the settlement reached on his behalf" [*Id*.]. According to the Petition, the settlement "represents a fair and reasonable outcome considering the nature of the claims [the Minor] could have brought against Defendant [Johnson City]" [*Id*.].

Further, the Petition provides that the attorneys' fees and costs are fair and reasonable [*Id*.]. According to the Petition, "[C]ounsel for [the] Minor . . . expended an extraordinary amount of time, effort, and resources litigating this action" and "began representing clients in this case in July 2022" [*Id*. (citation omitted)]. "[T]he settlement reached on [the] Minor['s] behalf represents the culmination of over two and half years of effort on counsel's part to investigate and litigate this case to a successful end" [*Id*. at 4–5]. The Petition notes that "counsel's fees are contingent" and that they have "not yet received any fees for their work on [the] Minor['s] behalf and have fronted all litigation costs associated with his claims" [*Id*. at 5 (citation omitted)]. It states that the attorneys' fees are reasonable according to the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct [*Id*. at 4–8].

Further, the Petition provides that the Minor will receive a structured settlement, which his parents have approved [*Id*. at 9]. It states, "This structure ensures that no one will be able to access the funds other than [the] Minor . . . once he turns 18 years old. It will preserve the funds and provide interest on the net settlement amount and will provide long-term stability for [him] once

4

he reaches the age of majority" [*Id.*]. In addition, "The structure also balances payments to [the] Minor . . . immediately upon turning 18 with maximizing the interest accumulated over the life of the structure and providing [the] Minor . . . with large pay-outs as he gains maturity" [*Id.*]. His counsel and next friend submit that this settlement "is fair, reasonable, and in [his] best interests" and that his counsel will verify that any TennCare subrogation interest "has been, or will be, resolved" [*Id.*].

In support of the Petition, the Minor filed the Declaration of Vanessa Baehr-Jones [SEALED Doc. 528], the Declaration of Elizabeth A. Kramer [SEALED Doc. 528-1], the Declaration of Heather Collins [SEALED Doc. 528-2], the Declaration of H.H. [SEALED Doc. 528-3], the Declaration of A.A. [SEALED Doc. 528-4], the Settlement and Release Agreement [SEALED Doc. 528-5], the Attorney-Client Agreement [SEALED Doc. 528-6], the Payment Illustration [SEALED Doc. 528-7], and the Attachment to Petition and/or for Minor's Compromise [SEALED Doc. 528-8].

On September 22, 2025, the parties appeared before the Court for a hearing. Attorney Baehr-Jones presented the terms of the settlement agreement, noting that the Minor's settlement amount will be placed in a structured settlement that will grow and be distributed to him throughout his lifetime. She also explained the amount of attorneys' fees requested, stating that three law firms worked on this case mostly full time. With respect to costs in the amount of ███████, Attorney Baher-Jones stated that the costs are proportional to the compensation received. Defendant submitted that it does not oppose the motion, the settlement was reached through negotiations, and that it had no position on how the settlement amount is allocated. Following the hearing, the parties filed supplemental briefs [Docs. 533 & 534].[1]

---

[1] As noted above, the Court granted the motion to dismiss certain parties and claims and allowed the filing of the current operative pleading, the Third Amended Class Action Complaint

5

## II. ANALYSIS

"When minors are involved in a settlement, the district court must make an independent determination that the settlement is in the minor's best interest." *Thrivent Fin. for Lutherans v. Camp*, No. 1:15-CV-146, 2015 WL 9587725, at *1 (E.D. Tenn. Dec. 30, 2015) (citation omitted). "The Court must review and approve of the settlement in accordance with Tennessee law." *J.O. by Obitts v. Bledsoe Cnty. Bd. of Educ.*, No. 1:15-CV-329, 2017 WL 1533541, at *1 (E.D. Tenn. Apr. 4, 2017) (citation omitted), *report and recommendation adopted sub nom. J.O. v. Bledsoe Cnty. Bd. of Educ.*, No. 1:15-CV-329, 2017 WL 1533452 (E.D. Tenn. Apr. 27, 2017). Tennessee Code Annotated § 29-34-105 states:

> (a)(1) In any tort claim settlement involving a minor, the court shall conduct a hearing at which the minor and legal guardian are present if the tort claim settlement:
>
> (A) Is a settlement of ten thousand dollars ($10,000) or more;
>
> (B) Is a structured settlement; or
>
> (C) Involves a minor who is not represented by an attorney licensed to practice in this state.

Tenn. Code Ann. § 29-34-105(a)(1). The Court has the discretion to "excuse the minor from attending this hearing." Tenn. Code Ann. § 29-34-105(a)(2). In addition, the Court must also determine whether the attorney's fees are reasonable. *Thrivent Fin. for Lutherans*, 2015 WL 9587725, at *1 (citation omitted).

---

[Doc. 526 p. 2 n.1 (citing Doc. 505)]. Considering this and information set forth in the Petition [*see id.*], at the hearing, the undersigned inquired about the Court's jurisdiction to approve the minor settlement and allowed the parties to file supplemental briefs to address the issue [Docs. 533 & 534]. For purposes of this Report and Recommendation, the undersigned notes that Chief Judge McDonough has retained jurisdiction to consider matters arising out of the settlement [Doc. 521], and that the Minor's Settlement and Release Agreement [SEALED Doc. 528-5] became effective on February 13, 2025, while the Second Amended Complaint [Doc. 121] was the operative pleading.

6

As an initial matter, the Minor did not appear at the hearing. The undersigned excused his attendance considering his age and inability to understand the proceedings, he is represented by counsel, and his mother and legal guardian, A.A., was present. *See* Tenn. Code Ann. § 29-34-105(a)(1)(2).

During the hearing, the parties explained the settlement amount and how the settlement proceeds will be distributed [*See* SEALED Docs. 528, 528-5, 528-7, 528-8]. Specifically, the parties agreed to a gross settlement amount of ▮ [SEALED Doc. 528-5 p. 3]. The attorneys' fees in this matter are ▮ and costs are ▮ [SEALED Doc. 528 ¶¶ 6, 8 (citation omitted)]. The Minor's net settlement amount, ▮, will be placed in a structured settlement account, wherein he will receive lump sum payments starting at the age of 18 and throughout his life [SEALED Docs. 527-7 & Doc. 527-8]. The Minor's mother and legal guardian, A.A., stated that she understood the settlement agreement and that she reviewed different financial institutions to determine where the settlement funds should be placed. She further stated that the settlement agreement was within the Minor's best interests.

Based on the testimony at the hearing and the filings of the parties, the Court waives the appointment of a guardian ad litem. *See* Tenn. Code Ann. § 34-1-107(a)(3). Waiver is in the best interests of the Minor given his counsel's services in this matter and the settlement proceeds will be placed in a structured account *See id*. The Court also finds that the settlement agreement is fair and reasonable and is in his best interests.

With respect to attorneys' fees, counsel "seeks approval [of] the ▮ contingency fee [agreement]" [SEALED Doc. 528-1 p. 2 (citation omitted)]. "Courts should not consider any fee agreement because it is not binding on the minor but rather 'should review the case on the premise that there is no enforceable fee contract' and determine 'what the reasonable fee would be in the

7

Case 2:23-cv-00071-TRM-JEM   Document 536   Filed 10/16/25   Page 7 of 13
PageID #: 12058

absence of a [fee] contract.'" *Thrivent Fin. for Lutherans*, 2015 WL 9587725, at *2 (quoting *Wright v. Wright*, 337 S.W.3d 183 (Tenn. 2011)) (alteration in original). Instead, the Court has "balance[d] the determination of what is a reasonable fee to ensure that attorneys have the necessary incentive to accept cases involving minors in the future and what is in the best interest of the minor considering the minor's present and future needs." *Id*. (citation omitted).

"In determining what constitutes fair and reasonable compensation to an attorney, a trial court must consider the ten factors set out in Tennessee Rule of Professional Conduct 1.5, which apply regardless of the age of the client." *Sherrard v. City of E. Ridge*, No. 1:22-CV-200, 2023 WL 6166463, at *2 (E.D. Tenn. Sept. 21, 2023) (citations omitted). The factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent;
>
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1)–(10). "These factors are not exclusive and each factor may not be relevant in every case." *Thrivent Fin. for Lutherans*, 2015 WL 9587725, at *2.

The first considerations, time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, weigh in favor of the fee request. As noted in the Petition, "Counsel for [the] Minor . . . included seven lawyers from three separate law firms, with total billable attorney time of over 8,700 hours" [Doc. 526 p. 5 (citations omitted)].[2] "The case presented a host of novel legal issues" and the "litigation spanned nearly 500 docket entries before counsel reached a settlement on [the] Minor[']s . . . behalf" [*Id*.]. In addition, the Petition states that this case "demanded highly skilled counsel to brief the complex and novel legal issues presented;" counsel "conduct[ed] depositions of police officers, as well as an expert in constitutional policing;" and they "maintain[ed] a trauma-informed, victim-centered practice to minimize retraumatizing the victims and their family members" [*Id*. at 5–6]. Finally, it states, "Expertise was necessary in several disparate areas of [the] law, including criminal procedure and practice, class action litigation, Tennessee municipality law, and constitutional law, among others" [*Id*. at 6].

With respect to the second factor, the preclusion of other employment, the Petition states, "There was a high likelihood that this case would require nearly full-time effort from the attorneys litigating on behalf of [the] Williams'[s] survivors" [*Id*.]. The Petition points to the multiple amended pleadings and the motion practice from both parties [*Id*.]. Further, it notes that "counsel for [the] Williams'[s] survivors were concurrently advocating on behalf of [the] Minor . . . and

---

[2] Counsel did not submit their billing entries for review. But the Court is familiar with the time spent in this case having presided over multiple hearings and adjudicated many motions. In light of the time involved and complexity of this matter, the attorneys' fees are proper. *See Thrivent Fin. for Lutherans v. Camp*, 2015 WL 9587725, at *3 (finding an award of attorney's fees proper "[i]n spite of the lack of contemporaneous time records").

9

Case 2:23-cv-00071-TRM-JEM   Document 536   Filed 10/16/25   Page 9 of 13
PageID #: 12060

other Williams'[s] survivors in two ongoing federal criminal investigations and the state criminal investigations into Williams" [*Id.* (citation omitted)]. This factor therefore weighs in favor of the fee request.

The third factor is the fee that is customarily charged in the locality for similar legal services. "This factor includes consideration of the degree of risk to the attorney." *Sherrard*, 2023 WL 6166463, at *5, "[W]hile the Court cannot consider the reasonableness of the contingency-fee arrangement in this particular case, the fact that such cases are typically taken on a contingent basis indicates a higher degree of risk in such cases in general." *Id.* (citation omitted). Further, while the hourly rates requested are generally higher than what this Court typically awards, the undersigned notes that counsel billed over 8,700 hours [*see* Doc. 526 p. 5], and this case required legal expertise in many different areas of the law. This factor favors the fee request.

The fourth factor considers the amount involved and the results obtained. As the Petition notes, "The amount involved here related to significant economic and noneconomic damages resulting from childhood sexual abuse" [*Id.* at 7]. And here, "[t]he results obtained represent a significant settlement amount for [the] Minor" [*Id.*]. This factor supports the fee requested.

The fifth factor is the time limitation. The Petition states that this factor is inapplicable because counsel agreed to "provide[] unlimited representation as part of this class action litigation as well as representation in ongoing criminal investigations" [*Id.*]. This factor is therefore neutral.

With respect to the sixth factor, the nature and length of professional relationship, the Petition states that "counsel has represented [the] Minor . . . since September 2023 and have been investigating the claims at issue since July 2022" [*Id.*]. Given that this is counsel's first time representing the Minor, the Court finds that "[t]his factor is neutral on the fee amount that would be reasonable for the representation." *Sherrard*, 2023 WL 6166463, at *6.

10

Turning to the seventh factor, the experience, reputation, and ability of the lawyers, the Petition states, "Counsel all have significant experience and expertise in their areas of practice" [Doc. 526 p. 7]. Attorney Baehr-Jones has "served as a federal prosecutor for nearly a decade before opening her civil practice in 2021" [*Id*.]. In that regard, she obtained "experience investigating, indicting, and preparing for trial federal sex trafficking cases" and "has approximately 15 years of experience working with victims of sexual violence" [*Id*. (citation omitted)]. Further, "[Attorney] Kramer and her partners[,] Julie Erickson and Kevin Osborne[,] are among the small number of attorneys nationwide with significant experience litigating class action cases involving claims of sexual assault and abuse" [*Id*. (citation omitted)]. And finally, "[Attorney] Collins has been litigating civil rights cases [that] raise constitutional claims for approximately thirty years and has expertise in Tennessee tort claims and claims against Tennessee municipalities" [*Id*. at 7–8 (citation omitted)]. The Court finds this factor supports the fee request.

With respect to the eighth factor, whether the fee is fixed or contingent, the Petition states that the fee is contingent and that such an "arrangement permits plaintiffs' attorney to take on high-risk, high demand cases" [*Id*. at 8]. "As a practical matter," the Petition states, "[the] Minor . . . would not have been able to pay attorneys' fees or the costs of the litigation if a contingency fee arrangement had not been available" [*Id*.]. The Court has already considered counsels' risk in taking this case, and "[b]ecause the Tennessee Supreme Court has stated that a contingency-fee agreement is not binding and should not be considered, it appears this factor should receive little to no weight in the analysis." *Sherrard*, 2023 WL 6166463, at *6 (internal citation omitted).

The ninth factor is prior advertisements or statements by the lawyers with respect to the fees the lawyers charge. The Petition states, "Counsel for [the] Minor . . . do not advertise their fees. All three plaintiffs' firms rely solely on contingency models for collecting attorneys' fees"

11

[Doc. 526 p. 8]. Further, it submits, "The rate applied here is standard in their practices for personal injury cases (including those involving sexual abuse) brought by individual plaintiffs" [*Id.*]. Given that this is the standard rate, the Court finds this factor weighs in favor of the fee request.

The final factor considers whether the fee agreement in in writing. The Petition states that it is and that "the contingency rate was clearly set forth at the outset of the attorney-client relationship" [*Id.*]. Even so, "because a contingency-fee agreement is not binding on a minor, this factor is entitled to little weight." *Sherrard*, 2023 WL 6166463, at *6

After weighing the above factors, the undersigned finds the requested amount of attorneys' fees reasonable under the particular circumstances of this case. *See Wood v. Van Over*, No. 3:18-CV-380, 2019 WL 7882568, at *4 (E.D. Tenn. Nov. 26, 2019) (approving a minor settlement agreement that included a similar contingency agreement after considering the reasonableness and the best interest of the minor), *report and recommendation adopted*, No. 3:18-CV-380, 2020 WL 620277 (E.D. Tenn. Feb. 10, 2020).

The costs in this case are ▮▮▮▮▮▮▮▮. Attorney Baehr-Jones explained that she calculated the costs to mirror the compensation that a class member received. In other words, the Minor's costs are proportional to the compensation he received. Considering Attorney Baehr-Jones's representation, the undersigned finds these costs reasonable.

## III. CONCLUSION

Accordingly, for the reasons set forth above, the undersigned finds that the settlement agreement is within the best interests of the Minor and that the attorneys' fees and costs are reasonable under the circumstances of this case.[3]

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).