IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

S.H., individually, and on behalf
of all others similarly situated,

    Plaintiffs,

v.                                        No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY, TENNESSEE,

    Defendant.

_____/

## MOTION FOR ATTORNEY'S FEES, REIMBURSEMENT OF LITIGATION EXPENSES, & SERVICE AWARD FOR CLASS REPRESENTATIVE

COMES NOW Plaintiff S.H., individually and as a proposed class representative for all those similarly situated ("Plaintiffs"), to respectfully submit this Motion for Attorney's Fees, Reimbursement of Litigation Expenses, and Service Award for Class Representative. Filed in support of this motion is the Joint Declaration of Class Counsel ("Joint Decl."). Defendant City of Johnson City, Tennessee ("City") consents to the relief requested herein.

## INTRODUCTION

After years of hard-fought litigation, Plaintiff and Class Counsel succeeded in obtaining a non-reversionary $4.2 million cash settlement. In addition to substantial payments to class members, the Settlement ensures lasting equitable relief in the form of improved policies and procedures aimed at preventing sex-based discrimination by the Johnson City Police Department ("JCPD"). The Court carefully analyzed the Settlement and granted preliminary approval on

1

July 2, 2025. ECF 521. Pursuant to that Order and to the Settlement Agreement (ECF 515)[1], Plaintiffs now respectfully move for an order awarding (1) one-third of the total Settlement Amount in attorney's fees, or $1,400,000; (2) $39,783.66 for reimbursement of litigation expenses; and (3) a service award to the Class Representative of $20,000.

As demonstrated herein, Class Counsel's fee request is appropriate under the "percentage of the fund" method, which is the preferred approach for determining a reasonable fee in a common fund case such as this one. The requested percentage is well within the range typically approved across the country, in the Sixth Circuit, and in this District. Class Counsel's expenses are also reasonable considering the length and intensity of the litigation, as is the request for a $20,000 service award to the Class Representative, whose dedicated pursuit of justice resulted in an excellent outcome for the Class.

## I. LEGAL STANDARD FOR ATTORNEY'S FEE AWARDS

In considering whether to approve a request for fees to class counsel, the award need only be "reasonable under the circumstances." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). District courts in the Sixth Circuit often apply the percentage method, endorsed by the Sixth Circuit in *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993), in awarding fees in common fund cases. *See also Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022) (percentage-of-the-fund is "the preferred method where, as here, a substantial common fund has been established for the benefit of class members through the efforts of class counsel") (citation omitted).

---

[1] All defined terms in this motion have the same meaning ascribed to them in the Settlement.

In the Sixth Circuit, attorneys' fees awarded under the percentage method "typically range from 20 to 50 percent of the common fund." *Lott v. Louisville Metro Gov't*, 2023 WL 2562407, at *3 (W.D. Ky. Mar. 17, 2023) (collecting cases); *see also Hunter v. Booz Allen Hamilton Inc.*, 2023 WL 3204684, at *8 (S.D. Ohio May 2, 2023) ("When using the percentage-of-the-fund method, courts in the Sixth Circuit generally approve of awards that are one-third (1/3) of the total settlement"). Ultimately, the Court has broad discretion, and the touchstone is reasonableness under the circumstances.

The Sixth Circuit has identified several factors for this analysis (referred to as the *Ramey* factors): the results achieved for the class; society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; whether the services were undertaken on a contingent fee basis; the comparison of the lodestar cross-check; the complexity of the litigation; and the professional skill and standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Each of these factors supports Class Counsel's request.

## II. ARGUMENT

### A. The Settlement Merits Final Approval

#### 1. The Settlement is an Excellent Result for the Class

The first *Ramey* factor focuses on the benefit to the Class and is often cited as the most important factor. *See Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996). The Settlement secures a $4.2 million common fund as well as equitable relief requiring ongoing, audit-based monitoring of JCPD's sexual assault investigations. Each class member will receive a monetary payment of at least $7,000 (Joint Decl. ¶ 4), and critically, the payments are going to women and girls who have already been

3

identified through JCPD records, thus avoiding any onerous, retraumatizing, or invasive process to receive compensation.

The amount per person compares favorably to settlements in other civil rights class actions alleging violations of the Equal Protection Clause by law enforcement entities. *See, e.g., Snead v. CoreCivic of Tennessee, LLC*, Case No. 3:17-cv-00949, Dkt. 131, Order Granting Final Approval of Class Action Settlement (M.D. Tenn. Nov. 30, 2021) (individual payments of approximately $4,000); *Zelaya v. Hammer*, Case No. 3:19-cv-00062-TRM-CHS, Dkt. 780, Motion for Preliminary Approval of Class Settlement (E.D. Tenn. Oct. 12, 2022) (individual payments of $5,000 to $6,000).

Additionally, the equitable relief achieves a key goal of this lawsuit—preventing sex-based discrimination at JCPD. Without Class Counsel's vigorous prosecution of these claims, it is unlikely that such robust institutional improvements would be implemented, and the Settlement also ensures genuine compliance and efficacy by requiring an audit of JCPD's sexual assault investigations and monitoring by Class Counsel.

2. Society Has a Strong Interest in Incentivizing Civil Rights Advocacy

"Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003). This is exactly the kind of case that attorneys decline. The evidentiary hurdles alone are daunting: proving that a police department discriminated against female reporters of sex crimes, as a matter of unform pattern and practice on a class-wide basis, and that the discrimination was so severe and widespread that the overseeing municipal government was aware and liable. Even where marshalling such evidence is feasible, the expense, time investment, uncertainty of success at trial and through appeal, and prospect of low or no monetary recovery further disincentivize counsel from taking on cases like this one.

Moreover, if Class Counsel had not pursued this case, the class members would likely be without recourse. On an individual basis, the cost of the lawsuit would almost certainly exceed damages, a single plaintiff might never obtain the quantum of evidence necessary to support a pattern and practice discrimination claim, and a one-off judgment or settlement would be unlikely to include broad, prospective equitable relief. Society at large therefore benefits significantly from private enforcement of civil rights, particularly in class actions. *Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, 2022 WL 4079559, at *6 (S.D. Ohio Sept. 6, 2022) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.").

    3.    <u>Class Counsel Undertook the Matter on Contingency and the Requested Fee Is Substantially Lower than Their Lodestar</u>

Class Counsel undertook this case on a wholly contingent fee and cost basis. To meet the challenges and complexity presented by this matter, Class Counsel dedicated over 9,000 hours and advanced over $250,000 in litigation expenses. Joint Decl. ¶¶ 11, 14. The requested fee of $1.4 million is reasonable considering that Class Counsel—knowing from the outset that this case may take years and could result in zero compensation for their clients or themselves—risked immense resources and brought the matter to a successful conclusion. Although performing a lodestar cross check is optional and solely within the Court's discretion, courts may perform this analysis to ensure counsel does not receive a windfall. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. App'x 496, 500 (6th Cir. 2011). There is no risk of a windfall here, as Class Counsel's lodestar far exceeds the $1.4 million requested. Joint Decl. ¶ 12.

    4.    <u>The Complexity of the Litigation Supports the Requested Fee</u>

This case involved numerous novel legal questions, including issues of first impression regarding the scope of 18 U.S.C. §§ 1595 and 1591(d) as applied to obstruction of justice civil

claims; whether beneficiary liability under 18 U.S.C. §§ 1595 and 1591(a) extended to the alleged conduct of police officers; whether the officers were entitled to sovereign immunity; and whether a police department's discriminatory treatment of women who reported sexual violence stated a cognizable claim under the Equal Protection Clause. Expertise was necessary in several disparate areas of law, including criminal procedure and practice, constitutional policing, class action litigation, Tennessee municipality law, and constitutional law, among others.

These complex issues demanded specialized, rigorous advocacy. And Class Counsel rose to the challenge, litigating discovery disputes, issuing over 70 subpoenas, reviewing over 200,000 documents, taking dozens of depositions, and engaging in rounds of motion practice. *See* ECF 516, Declaration of Julie C. Erickson in Support of Motion for Preliminary Approval of Class Action Settlement, ¶¶ 4-9. It was Class Counsel's ability to navigate major legal and factual obstacles and prepare and trial-ready case that led the City to agree to a settlement providing both equitable relief and significant monetary compensation.

5. <u>Counsel on Both Sides Are Highly Skilled and Highly Regarded</u>

Class Counsel all have significant experience and expertise that proved necessary to meet the demands of this litigation. Ms. Baehr-Jones served as a federal prosecutor for nearly a decade before opening her civil practice in 2021; has experience investigating, indicting, and preparing for trial federal sex trafficking cases; and has approximately 15 years of experience working with victims of sexual violence. Joint Decl. ¶ 6.a. Ms. Erickson, Ms. Kramer, and Mr. Osborne are among the small number of attorneys nationwide with significant experience litigating class action cases involving claims of sexual assault and abuse. They also bring specialized skill in planning and supervising the class notice and claims administration processes appropriate for settlements involving such highly sensitive subject matter. *Id.* at. ¶ 6.b. Ms. Collins is a stalwart civil rights advocate who has been litigating constitutional claims in this

6

Case 2:23-cv-00071-TRM-JEM Document 543 Filed 11/11/25 Page 6 of 11
PageID #: 12168

region for nearly thirty years and has expertise in Tennessee tort claims and cases brought against Tennessee municipalities. *Id.* ¶6.c. *See also*, ECF 516-1, 516-2, 516-3 (Class Counsel's firm resumes).

The City, and each of the police officers named as defendants, engaged seasoned, accomplished litigators. Multiple attorneys from six well-resourced law firms coordinated to vigorously defend the case at every turn. All counsel demonstrated skilled advocacy and the docket reflects the intensity of the litigation, spanning well over 500 entries. In this context, Class Counsel secured an excellent result for the Class through the proposed Settlement.

The *Ramey* factors all support approving Class Counsel's requested attorney's fees.

**B. The Litigation Expenses Are Reasonable and Should Be Reimbursed**

Similarly, Class Counsel should be reimbursed in the amount $39,783.66 for their reasonable out-of-pocket litigation costs. Expenses are compensable from a common fund if they are of the type typically billed by attorneys to paying clients in the marketplace. *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases'"), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

Class Counsel's Joint Declaration at ¶ 14 includes a chart of the expenses, by category, advanced during this litigation. They are of the type reasonably and necessarily incurred in the "prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *Cosby*, 2022 WL 4129703, at *3 (citation omitted).

7

Class Counsel's total costs to date are $265,224.39. Class Counsel respectfully submit that requesting approximately 15% of that total from the Settlement Amount is fair and reasonable because the $4.2 million Settlement Amount is 15% of the total $28 million dollars obtained from the City to resolve all aspects of the litigation. Joint Decl. ¶ 15. In other words, $4.2 million is 15% of $28 million, and the requested $39,783.66 reimbursement is 15% of the $265,224.39. With this approach, the Class contributes to the costs of litigation equitably along with the group of individuals who previously settled their individual claims. Class Counsel maintain all underlying documentation in their books and records, and Class Counsel has ensured that the total reimbursement from the Settlement Amount and from prior individual settlements is <u>less</u> than the amount actually paid by Class Counsel. Joint Decl. ¶ 16.

### C. Class Representative S.H. Deserves a $20,000 Service Award

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2012 WL 12875983, at *5 (E.D. Tenn. July 11, 2012) (quoting *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

S.H. submits a declaration contemporaneously with this motion, describing her experience of serving as a representative for the Class ("S.H. Decl."). S.H. devoted considerable time and effort to her role participating in discovery, responding to written requests, producing documents, and sitting for a full-day deposition. S.H. Decl. ¶ 5. Her document production included sensitive communications to friends and family about her sexual assault, and her deposition involved being questioned by multiple defense counsel about the most traumatic events of her life, including those unrelated to the case. *Id*.

8

Serving as representative took a significant toll, given the stress of bringing claims against a police department in a city where she maintains ties, and the underlying report involving a perpetrator who remains prominent in her community. Although she used a pseudonym, S.H. ultimately disclosed her involvement in the lawsuit to several people due to the time commitment and emotional burden. *Id*. at ¶ 6.

Throughout the litigation, she maintained consistent communication with Class Counsel about the progress of the case, the legal and factual issues asserted against the City, and the potential ramifications for the class. She took the time to review pleadings, learn about the legal process, and provide thoughtful input on significant decisions affecting the Class, including the evaluation and approval of the proposed Settlement. Joint Decl. ¶ 18. Class Counsel respectfully submit that, in their experience, S.H. capably fulfilled all responsibilities of a class representative and that her perseverance and commitment were critical to securing the Settlement. *Id*. at ¶ 19.

The nature of S.H.'s claims, her significant participation in discovery and supervising the litigation despite the personal risk and burden, and the excellent result for the Class justify the $20,000 service award, which is within the range approved by other courts in the Sixth Circuit. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc*., 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000 each from a $3 million settlement); *Davidson v. Henkel Corp*., 2015 WL 13034891, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant this motion.

9

Case 2:23-cv-00071-TRM-JEM   Document 543   Filed 11/11/25   Page 9 of 11
PageID #: 12171

Date: November 11, 2025                /s/ Elizabeth A. Kramer
                                       Julie C. Erickson (California Bar # 293111)
                                       Elizabeth A. Kramer (California Bar # 293129)
                                       Kevin M. Osborne (California Bar #261367)
                                       *Pro Hac Vice*
                                       Erickson Kramer Osborne LLP
                                       959 Natoma St.
                                       San Francisco, CA 94103
                                       415-635-0631
                                       julie@eko.law
                                       elizabeth@eko.law
                                       kevin@eko.law

                                       /s/ Vanessa Baehr-Jones
                                       Vanessa Baehr-Jones (California Bar # 281715)
                                       *Pro Hac Vice*
                                       Advocates for Survivors of Abuse PC
                                       4200 Park Boulevard No. 413
                                       Oakland, CA 94602
                                       510-500-9634
                                       vanessa@advocatesforsurvivors.com

                                       /s/ Heather Moore Collins
                                       Heather Moore Collins (# 026099)
                                       Ashley Shoemaker Walter (#037651)
                                       HMC Civil Rights Law, PLLC
                                       7000 Executive Center Dr., Suite 320
                                       Brentwood, TN 37027
                                       615-724-1996
                                       615-691-7019 FAX
                                       heather@hmccivilrights.com
                                       ashley@hmccivilrights.com

                                       *Attorneys for Plaintiff and the Proposed Class*

10

**CERTIFICATE OF SERVICE**

       I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on November 11, 2025 to counsel of record:

K. Erickson Herrin
HERRIN, McPEAK & ASSOCIATES
515 East Unaka Avenue
P. O. Box 629
Johnson City, TN 37605-0629
erick@hbm-lawfirm.com
rachel@hbm-lawfirm.com

Emily C. Taylor
WATSON, ROACH, BATSON &
LAUDERBACK, P.L.C.
P.O. Box 131
Knoxville, TN 37901-0131
etaylor@watsonroach.com

*Attorneys to Defendant Johnson City, Tennessee*

Jonathan P. Lakey
Burch, Porter, & Johnson, PLLC
130 N. Court Ave.
Memphis, TN 38103
901-524-5000
jlakey@bpjlaw.com
mchrisman@bpjlaw.com

*Attorney to Defendant City of Johnson City, Tennessee*

                                            */s/ Elizabeth A. Kramer*
                                            Elizabeth A. Kramer