IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

S.H., individually, and on behalf
of all others similarly situated,

    Plaintiff,

v.                                                    No: 2:23-cv-00071-TRM-JEM

CITY OF JOHNSON CITY, TENNESSEE,

    Defendant.

_____/

## MINOR VICTIM 2'S UNOPPOSED PETITION TO APPROVE MINOR SETTLEMENT

Minor Victim 2, by and through undersigned counsel and through her mother and legal guardian F.H., brings this unopposed petition to seek Court approval of the proposed settlement entered into on her behalf. This motion is based upon the sealed Declarations of Vanessa Baehr-Jones, Heather Collins, Elizabeth Kramer, the sealed Declaration of F.H., the Proposed Order Granting Motion to Approve Minor Settlement, and all pleadings and papers on file in this action.

//

//

1

# LEGAL STANDARD

**I.   Jurisdiction to Approve the Minor Victim 2's Settlement Properly Rests with this Court**

As an initial matter, this Court has authority to exercise jurisdiction to approve Minor Victim 2's settlement. Minor Victim 2 is similarly situated to Minor Victim 1, whose settlement this Court approved on November 12, 2025: Minor Victim 2 was also a putative class member in the matter *B.P., et al. v. City of Johnson City, Tennessee, et al.*, No. 2:23-cv-00071-TRM-JEM (E.D. Tenn.) (the "Sex Trafficking Class Case"), the facts of which are well known to the Court and are not repeated here. Just as with Minor Victim 1, Minor Victim 2's settlement agreement arises from a common nucleus of operative facts as the Sex Trafficking Class Case, namely, the allegations set forth in the Second Amended Class Complaint which state claims under the Trafficking Victims Protections Act ("TVPA"), 18 U.S.C. §§ 1591(a)(1) & (2), 1591(d), and 1595, among other claims. The facts giving rise to Minor Victim 2's settlement are interdependent with and logically related to the facts that form the basis of the Sex Trafficking Class Case. Specifically, Plaintiffs contend that Minor Victim 2 was a sex trafficking victim of Sean Williams during the time period of the alleged conspiracy, and therefore liability existed against Defendant Johnson City either under a beneficiary liability theory or an obstruction of a sex trafficking prosecution under § 1591(d). *See* ECF 121, Second Amended Complaint, ¶¶ 298-300; Baehr-Jones Decl. ¶ 3.[1] The Sex Trafficking Class Case was/is properly before the Court under federal question jurisdiction.

---

[1] Defendant Johnson City does not concede that Minor Victim 2 was a sex trafficking victim of Williams, and Defendant Johnson City denies it violated the TVPA under any theory of recovery; however, Defendant Johnson City does not oppose the relief requested in the motion for approval of minor settlement.

As set forth in Plaintiffs' supplemental brief in support of Minor Victim 1's motion to approve minor settlement, *see* ECF 533, this Court has ancillary jurisdiction over this collateral matter as the determination of the motion depends on the record already before the Court in this case. In deciding whether Minor Victim 2's settlement is fair and the attorneys' fees and costs appropriate, the Court must consider the types of claims alleged, the risk involved in litigating the claims, the fairness of the settlement, and the attorneys' role in the case—all factors which required review and knowledge of the extensive record here. *See, e.g.*, *Thrivent Fin. for Lutherans v. Camp*, 1:15-cv-146-SKL, 2015 WL 9587725 at *1 (E.D. Tenn. Dec. 30, 2015). This is precisely the type of collateral matter where courts have found ancillary jurisdiction is proper. *See* ECF 533 at 5-6 (citing *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 963-66 (9th Cir. 2014); *Foretich v. Am. Broad. Companies, Inc.*, 198 F.3d 270, 273 (D.C. Cir. 1999); *Smith v. Phillips*, 881 F.2d 902, 905 n.9 (10th Cir.1989) ("Even after an appeal has been taken the district court may consider applications for attorneys' fees because they are considered wholly collateral to the merits . . . ."); *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 167 (1939) (explaining the many case-specific factors that the court needed to consider in deciding the appropriateness of an award of attorneys' fees in a case over which it had presided)).

The Court's exercise of ancillary jurisdiction here is also necessary to the fair administration of justice for Minor Victim 2. If the Court declines to exercise its ancillary jurisdiction, Minor Victim 2 would be left without a forum in which to seek approval for her settlement under Federal Rule of Civil Procedure 17(c). The requirement for court approval of a

3

Case 2:23-cv-00071-TRM-JEM   Document 556   Filed 02/04/26   Page 3 of 14
PageID #: 12279

minor's settlement is meant to ensure judicial oversight and promote fairness—to the benefit of the minor. *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997).[2] *See also* ECF 533 at 6-8.

## II. Tennessee Law Applies in Determining the Fairness and Reasonableness of Minor Victim 2's Settlement

Federal Rule of Civil Procedure 17(c) empowers a district court to make such order as it deems proper for the protection of a minor. Fed. R. Civ. P. 17(c). While the local rules do not specifically address minor settlements, courts in this district routinely approve such settlements which have been reached as part of a federal civil action. *See, e.g.*, *Thrivent Fin. for Lutherans v. Camp*, 1:15-cv-146-SKL, 2015 WL 9587725 at *1 (E.D. Tenn. Dec. 30, 2015). In reviewing a settlement, the Court applies Tennessee law. *See, e.g.*, *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law."). In doing so, the Court "must make an independent determination that the settlement is in the minor's best interest." *Thrivent Fin. for Lutherans*, 2015 WL 9587725 at *1.

Courts also "must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988). The Tennessee Supreme Court provides that "a trial court should apply the factors set forth in [Rules of Professional Conduct ("RPC")] 1.5(a)(1)-(10) when determining a reasonable attorney's fee

---

[2] Indeed, *Green* supports the proposition that a district court has an obligation to use its authority to ensure fair outcomes for minors' claims—even after a dismissal request from the parties. *See Green*, 111 F.3d at 1301 ("Even if the attorney had signed the stipulation on behalf of Jacqueline's mother and next friend, the court would have been remiss if it had not made an independent determination that the settlement was in the minor's best interest.").

4

regardless of the client's age." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185 (Tenn. 2011). The RPC 1.5(a)(1)-(10) factors are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent;
>
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1)-(10). These factors are not exclusive, and each factor may not be relevant in every case. *Wright* at 177 n.17.

## ARGUMENT

### I. The Proposed Settlement Reached on Behalf of Minor Victim 2 Is Fair and Reasonable

The settlement amount achieved on behalf of Minor Victim 2 will be a significant source of stability and support for Minor Victim 2 when she reaches the age of majority. *See* Baehr-Jones Decl., Exh. 3, Attachment to Petition and/or Order for Minor's Compromise (setting forth periodic payments under the structured settlement for Minor Victim 2) (filed under seal); *id.* ¶ 11 (describing structure). The proposed settlement amount and the structure are filed under seal to protect Minor Victim 2's privacy.

5

This settlement represents an excellent outcome for Minor Victim 2 given the complexity and risk of this litigation. This has been a contested case from its filing through settlement, and Defendant has demonstrated through its filings that it intended to dispute liability, damages, and the appropriateness of the certification of a class in this matter. This settlement eliminated the risk for Minor Victim 2 that she ultimately would have received nothing related to her claims. Moreover, the settlement award is appropriate even if she had succeeded in a lawsuit against Defendant, considering comparable damages awards in Tennessee federal court arising out of claims involving the sexual abuse of a minor. *See, e.g.*, *Mathis v. Wayne County Board of Education*, No. 09-cv-0034 (M.D. Tenn. 2009) ($200,000 verdict divided between two minor victims of sexual abuse and sexual assault); *Richards v. Williamson County Board of Education*, No. 3:14-cv-0730 (M.D. Tenn. 2015) ($100,000 judgment for minor victim of sexual harassment and assault).

Counsel was able to achieve this outcome even though Minor Victim 2 is too young to participate in this litigation in any way. Thus, Minor Victim 2 has benefited significantly from her counsel's representation of her interests during settlement negotiations with Defendants, and from the settlement reached on her behalf. The Court should approve the settlement as it is in the best interest of Minor Victim 2 and represents a fair and reasonable outcome considering the nature of the claims she could have brought against Defendant.

## II. The Attorneys' Fees and Costs Reimbursement Requested Are Fair and Reasonable

As set forth in the Declarations of counsel, counsel for Minor Victim 2 expended an extraordinary amount of time, effort, and resources litigating this action. As a Williams' survivor, Minor Victim 2 was a putative class member of the Sex Trafficking Survivor Class and Williams Survivor Subclass, classes first alleged in September 2023 with the filing of the Second Amended Class Complaint. *See* ECF 23. While Plaintiffs' counsel's representation of Minor

6

Victim 2 on an individual basis began in May 2025, counsel began investigating the claims at issue in Minor Victim 2's settlement with Defendant—Trafficking Victims Protection Act ("TVPA") claims alleged on behalf of Williams' survivors—in July 2022. Baehr-Jones Decl. ¶ 9. Absent nearly three years of hard-fought litigation against Defendant, Plaintiffs' counsel would not have been positioned to negotiate such a beneficial outcome for Minor Victim 2. *Id.* Thus, the settlement reached on Minor Victim 2's behalf represents the culmination of nearly three years of work on counsel's part to investigate, litigate, and negotiate Minor Victim 2's potential TVPA claims to a successful end.

Because counsel's fees are contingent, counsel has not yet received any fees from Minor Victim 2. *See id.*, Exh. 1, Attorney Client Agreement with Minor Victim 2 (filed under seal). Minor Victim 2's costs are set forth in counsel's declaration and are minimal as a proportion of her settlement. *Id.* ¶ 10. The attorneys' fees and costs reimbursements are fair and reasonable, applying the RPC 1.5(a)(1)-(10) factors here.

Considering the RPC 1.5(a)(1)-(10) factors in turn:

(1) The time and effort expended in litigating TVPA claims on behalf of Williams' survivors was considerable. Counsel for Minor Victim 2 included seven lawyers from three separate law firms, with total billable attorney time of over 8,700 hours as of March 2025. *See* Baehr-Jones Decl. ¶¶ 6-8; Decl. of Heather M. Collins ("Collins Decl.") ¶¶ 4-5; Decl. of Elizabeth Kramer ("Kramer Decl.") ¶¶ 4-6. Plaintiffs' counsel subsequently expended considerable effort investigating, negotiating, and resolving Minor Victim 2's potential claims between May to November 2025 with total billable attorney time now exceeding 10,000 hours. *Id.*

The claims alleged for Williams' survivors presented a host of novel legal issues, including questions of first impression on the scope of 18 U.S.C. §§ 1595, 1591(d), as applied to obstruction of justice civil claims; whether beneficiary liability applied to the alleged police officers' conduct under 18 U.S.C. §§ 1595, 1591(a); whether officers were protected by sovereign immunity from such claims; and whether a police department's discriminatory conduct towards women reporters of sexual violence gave rise to constitutional claims under the Equal Protection Clause, among the myriad of thorny legal issues presented during the litigation of this case. The docket illustrates the extent of counsel's work here: litigation spanned nearly 500 docket entries before the parties entered mediation.

This was also a case that demanded highly skilled counsel to brief the complex and novel legal issues presented; conduct depositions of police officers, as well as an expert in constitutional policing; and maintain a trauma-informed, victim-centered practice to minimize retraumatizing the victims and their family members. Expertise was necessary in several disparate areas of law, including criminal procedure and practice, class action litigation, Tennessee municipality law, and constitutional law, among others.

Accordingly, factor one weighs heavily in favor of approving counsel's attorneys' fees.

(2) There was a high likelihood that this case would require nearly full-time effort from the attorneys litigating on behalf of Williams' survivors. By the time that counsel alleged claims on behalf of the Sex Trafficking Class and Williams Survivor Subclass in September 2023, there had already been two amended complaints filed on behalf of the survivors, and motion practice with Defendants had already begun. *See, e.g.*, ECF 12, 23, 17, 26, 27. Each of these complaints was lengthy and complex, and required large amounts of legal research and investigation on the part of counsel. Thus, it would have been apparent to any potential client by May 2025 that

8

representation against Defendant would require significant effort on Plaintiffs' counsel's part given the history of this case and the extent of the litigation here.

Plaintiffs' counsel also agreed to represent Minor Victim 2 in any federal proceeding arising out of sexual assaults and/or child sexual exploitation committed by Sean Williams against her, including any claims for restitution she may be entitled to in any federal criminal matters charging Sean Williams and/or officers of the Johnson City Police Department with crimes in which she was legally a victim. Baehr-Jones Decl, Exh. 1, at 1. Thus, there was a high likelihood that the acceptance of Minor Victim 2 as a client in this matter would result in significant time and resources from Minor Victim 2's counsel going forward. This factor also weighs in favor of approving counsel's attorneys' fees here.

(3) As set forth in the Declarations of counsel, their billing records in this case have been based off a national lodestar model, the Laffey Matrix, http://www.laffeymatrix.com, which accounts for local variability in setting standard billing rates for lawyers of similar experience levels nationwide. Given the complexity of this matter, and the fact that it required specialized skills in federal criminal investigations, constitutional law, and class action litigation, applying the Laffey Matrix is fair and appropriate here. All counsel for Minor Victim 2 have calculated their fees based on this standard. *See* Baehr-Jones Decl. ¶ 7; Collins Decl. ¶ 5; Kramer Decl. ¶ 7. These billing rates show that the contingency award is fair and reasonable considering the value of the total number of hours the attorneys worked over the course of litigating claims on behalf of Williams' survivors and resolving claims following mediation with Defendant. Moreover, Plaintiffs' counsel's contingency rate is also standard based on the experience of counsel. *Id.*

(4) The amount involved here related to significant economic and noneconomic damages resulting from childhood sexual abuse. Although these amounts can vary depending on a number

9

Case 2:23-cv-00071-TRM-JEM    Document 556    Filed 02/04/26    Page 9 of 14
PageID #: 12285

of factors, these damage calculations are often high given the lifelong nature of the harm. The results obtained represent a significant settlement amount for Minor Victim 2. This factor weighs in favor of approving counsel's fees, as the amounts at issue are significant and warrant the attorneys' fees contemplated under the attorney client contract.

(5) This factor does not apply here as the attorney client agreement between counsel and Minor Victim 2 does not impose any time limit on the scope of representation. While Plaintiffs' counsel has successfully negotiated Minor Victim 2's claims against Defendant, Plaintiffs' counsel's representation of Minor Victim 2 in any federal criminal proceeding continues.

(6) This factor weighs in favor of the attorneys' fees sought as counsel have been investigating the claims of Williams' survivors since July 2022 and began representing Minor Victim 2 in May 2025. At this point, counsel has been continuously advocating for Williams' survivors in this case for nearly four years. The nature of this advocacy and the relationship between counsel and clients like Minor Victim 2 also weigh in favor of the fees sought: these are relationships that require extraordinary amounts of time and trauma-informed care for the victims and their family members.

(7) Counsel all have significant experience and expertise in their areas of practice. Ms. Baehr-Jones served as a federal prosecutor for nearly a decade before opening her civil practice in 2021; has experience investigating, indicting, and preparing for trial federal sex trafficking cases; and has approximately 15 years of experience working with victims of sexual violence. Baehr-Jones Decl. ¶ 5. Ms. Kramer and her partners Julie Erickson and Kevin Osborne are among the small number of attorneys nationwide with significant experience litigating class action cases involving claims of sexual assault and abuse. Kramer Decl. ¶ 7. Ms. Collins has been litigating civil rights cases which raise constitutional claims for approximately thirty years

and has expertise in Tennessee tort claims and claims brought against Tennessee municipalities. Collins Decl. ¶ 6. This factor weighs in favor of approval of the attorneys' fees here.

(8) Here, the fee is contingent. A contingency fee arrangement permits plaintiffs' attorneys to take on high-risk, high-demand cases such as this, which otherwise would not be funded or pursued. As a practical matter, Minor Victim 2 would not have been able to pay attorneys' fees if a contingency fee arrangement had not been available. Given the benefit of this model in vindicating the rights of Williams' survivors here, this factor weighs in favor of approving the contingent fees sought.

(9) Counsel for Minor Victim 2 do not advertise their fees. All three plaintiffs' firms rely solely on contingency models for collecting attorneys' fees. The rate applied here is standard in their practices for personal injury cases (including those involving sexual abuse) brought by individual plaintiffs. Baehr-Jones Decl. ¶ 8; Collins Decl. ¶ 4; Kramer Decl. ¶ 4.

(10) Finally, the fee agreement is in writing, which weighs in favor of approval of the fees, as the contingency rate was clearly set forth at the outset of the attorney client relationship.

Accordingly, most of the RPC 1.5(a)(1)-(10) factors weigh in favor of approval of counsel's fees, and the remainder are neutral and/or do not apply. The fees sought are reasonable and fair given the length and extent of the representation; the nature and complexity of the case; the high risk undertaken by Minor Victim 2's counsel in pursuing novel claims and expending significant resources without any guarantee of payment; and the expertise required to achieve such a successful outcome for Minor Victim 2. Finally, Minor Victim 2's share of the costs of litigation is comparatively small given the length and extent of litigation to advance claims for Williams' survivors against Defendant, and reimbursement of the costs to counsel's law firms is reasonable and fair.

**III.   The Provision for Deposit of Funds for Minor Victim 2 into a Structured Settlement Is Reasonable**

The structured settlement proposed by Minor Victim 2 and approved by the parent and sole legal guardian of Minor Victim 2 is a reasonable method of preserving and disbursing the settlement funds to her. This structure ensures that no one will be able to access the funds other than Minor Victim 2 once she turns 18 years old. It will preserve the funds and provide interest on the net settlement amount and will provide long-term stability for Minor Victim 2 once she reaches the age of majority. The structure also balances payments to Minor Victim 2 immediately upon turning 18 with maximizing the interest accumulated over the life of the structure, including taking advantage of market-based growth, and providing Minor Victim 2 with large pay-outs as she gains maturity. This is a reasonable method of structuring Minor Victim 2's settlement.

**IV.   Representations by Plaintiff, her Next Friend, and Counsel**

The Court should be advised Plaintiff, her Next Friend, and counsel believe the settlement, including all terms thereof, is fair, reasonable, and in the best interests of Plaintiff, pursuant to the provisions of T.C.A. §34-1-121. And counsel for Plaintiff verifies in accordance with T.C.A. §71-5-117(g) that any TennCare subrogation interest in this matter has been, or will be, resolved.

**V.   Request for the Court to Excuse the Minor's Presence and Conduct a Remote Hearing**

Finally, counsel for Minor Victim 2 requests that the Court excuse the minor's presence at any hearing on this motion pursuant to T.C.A. § 29-34-105(a)(2), as Minor Victim 2 is too young to meaningfully participate in the proceedings. Moreover, her mother and legal guardian F.H. will be present and will be able to speak on her behalf. Counsel further requests that the Court exercise its discretion to hold the hearing by remote communication pursuant to

T.C.A. § 29-34-105(a)(2), as this will save costs otherwise incurred by counsel and all counsel and Minor Victim 2's legal guardian are able to appear remotely. These requests are unopposed.

## CONCLUSION

For the reasons set forth above, the Court should grant Minor Victim 2's unopposed petition for Court approval of minor settlement.

Dated February 4, 2026.	Respectfully submitted,

Advocates for Survivors of Abuse PC

*/s Vanessa Baehr-Jones*
Vanessa Baehr-Jones (*pro hac vice*)
4200 Park Boulevard No. 413
Oakland, CA 94602
510-500-9634
vanessa@advocatesforsurvivors.com

*s/ Heather Moore Collins*
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

*/s/ Elizabeth A. Kramer*
Julie C. Erickson (*pro hac vice*)
Elizabeth A. Kramer (*pro hac vice*)
Kevin M. Osborne (*pro hac vice*)
Erickson Kramer Osborne LLP
595 Tehama Street.
San Francisco, CA 94103
415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed and served via the court's electronic filing system on February 4, 2026 to counsel of record:

| | |
|---|---|
| K. Erickson Herrin<br>HERRIN, McPEAK & ASSOCIATES<br>515 East Unaka Avenue<br>P. O. Box 629<br>Johnson City, TN 37605-0629<br>rachel@hbm-lawfirm.com<br><br>Emily C. Taylor<br>Maria Ashburn<br>WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.<br>P.O. Box 131<br>Knoxville, TN 37901-0131<br>etaylor@watsonroach.com<br>mashburn@watsonroach.com<br><br>Jonathan P. Lakey<br>Burch, Porter, & Johnson, PLLC<br>130 N. Court Ave.<br>Memphis, TN 38103<br>901-524-5000<br>jlakey@bpjlaw.com<br>mchrisman@bpjlaw.com<br><br>*Attorneys to Defendant City of Johnson City, Tennessee* | |

       */s  Vanessa Baehr-Jones*
       Vanessa Baehr-Jones